Michael W. Sewright
BURR, PEASE & KURTZ
810 N Street
Anchorage, AK  99501-3293
Telephone:   (907) 276-6100
Fax No.:        (907) 258-2530
Attorneys for North Star

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>    Plaintiffs,<br> and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf,<br><br>    Intervening Plaintiffs,<br> and<br><br>METCO, INC.,<br><br>    Intervening Plaintiff,<br> vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>    Defendants. | Case No. A98-009 CIV (HRH)<br><br>**REPLY TO OPPOSITION TO NORKTH STAR'S MOTION TO <u>COMPEL DISCOVERY</u>** |

REPLY TO OPPOSITION TO NORTH STAR'S MOTION TO COMPEL DISCOVERY
*North Star v. Nugget, et al.*; Case No. A98-009 CIV (HRH)
Page 1 of 17                                     45-40/ # 81372

Plaintiff and Use-Plaintiff North Star Terminal and Stevedore Company ("North Star") replies to the Opposition memorandum of defendant Nugget Construction, Inc. ("Nugget") to North Star's Motion to Compel Discovery, as follows:

## I. THE REQUESTED INFORMATION ABOUT NUGGET'S FINANCIAL CONDITION IS DISCOVERABLE.

### A. North Star's Discovery Requests Are Neither Overly Broad Or Unduly Burdensome.

Nugget alleges, without showing, that North Star's discovery requests seeking financial information are "overly broad" and "unduly burdensome". North Star disagrees.

As was shown in North Star's opening memorandum in support of its December 14, 2005 Motion to Compel Discovery, information concerning a defendant's finances is relevant and discoverable where a claim for punitive damages has been stated. *See, e.g., CEH, Inc. v. F/V SEAFARER,* 153 F.R.D. 491, 498-99 (D.R.I. 1994) (pretrial discovery of defendants' financial information required where claim for punitive damages stated);[1] *Norcon, Inc. v. Kotowski*, 971 P.2d 158, 173-177 (Alaska 1999) (listing relevant considerations for punitive damages under Alaska law, including defendants' financial condition on or about the date of the offense and subsequently); Alaska Proposed Jury Instruction 20.20 Punitive Damages, revised 1999, attached as

---

[1] This case was correctly cited by name, volume and page at page 4 of North Star's December 14, 2005 memorandum. It was also correctly cited by volume and page but incorrectly cited by name at pages 7-8 of that memorandum.

North Star's Exhibit 6 hereto[2] (the wealth of the defendant is a factor in assessing punitive damages); *Fretz v. Keltner*, 109 F.R.D. 303, 310-11 (D.Kan. 1986) (same); *American Benefit Life Ins. Co. v. Ille*, 87 F.R.D. 540, 542-43 (W.D. Okla. 1978) (same); *Holliman v. Redmond Dev. Corp.*, 61 F.R.D. 488, 490-92 (D.S.C. 1973) (same).

As this court no doubt knows from its experience, including the *EXXON VALDEZ* litigation, a company's financial condition, or wealth, is commonly shown through its assets, financial and income tax statements, and statements of net income, gross revenue, pre-tax profit, and equity – just as North Star requested. That was precisely the sort of financial information considered by the court in *Norcon*, 971 P.2d at 174-76 incl. n. 20, and also in, for example, *St. Joseph Hospital v. INA Underwriters Insurance Company*, 117 F.R.D. 24, 25-26 (D.Me 1987).

Accordingly, North Star's interrogatories, production requests and inquiries at the Rule 30(b)(6) deposition of Nugget seeking that information are proper. Since Nugget's tortious offenses supporting the punitive damages claim occurred during the spring and summer of 1977 (before August 7, 1997), that financial information immediately prior, during and after those offenses is relevant. As was pointed out in *Norcon*, any profit or gain obtained by the defendant through the wrongful conduct is also relevant to assessing punitive damages. 971 P.2d at 176. Therefore, "before and after" information as to defendant's financial condition is relevant and discoverable.

---

[2] Exhibits 1-5 were attached to North Star's opening memorandum dated December 14, 2005.

In any event, this Court can tailor the order to compel discovery to ensure that North Star and the other plaintiffs are able to obtain sufficient financial information while at the same time not being overly intrusive, should it wish to do so. North Star considers the requests appropriate as they are.

In addition, Nugget argues that its financial information is "proprietary" and "confidential". However, it does not demonstrate that should prevent discovery of the information, nor seek or show good cause for a protective order based on confidentiality, as is required of it. *American Ben. Life Ins. Co.*, 87 F.R.D. at 543. In any event, that concern can be handled, as it normally is, by a common protective order stipulated to by the parties and aimed at protecting the confidentiality of documents and information. This Court can make its order compelling discovery contingent upon such protection. As was stated by the court in *CEH, Inc.*:

> Finally, while a party does have an interest in nondisclosure and confidentiality of its financial records, this interest can be adequately protected by a protective order. *In re Bergeson,* 112 F.R.D. at 696; *Vollert,* 389 F.Supp. at 1351.

*CEH, Inc.,* 153 F.R.D. at 499. Although not requested by Nugget, undersigned counsel will prepare a standard stipulation and proposed order to that effect and submit it to court and counsel before the Court is required to rule on this motion. That should resolve any such issue.

**B. A Prerequisite Showing of Liability for Punitive Damages Is Not Required Before Pretrial Discovery of Financial Information Is Allowed.**

Nugget argues, for the first time, that the Alaska punitive damages statute effective as of August 7, 1997, applies to North Star's discovery requests because North Star "asserted" its claims for punitive damages after that date. However, as the Alaska Supreme Court ruled in *Norcon*, that statute applies only to cases <u>accruing</u> under state law after that statute's effective date of August 7, 1997. 971 P.2d at 175 n. 21. <u>Accrual</u> of such claims does not depend upon when those claims were actually asserted by a plaintiff, or upon when the plaintiff became aware "of the basis for such claims".

Rather, it depends upon when the defendant's initial offense or breach giving rise to the claim, and the plaintiff's resulting loss, occurred. *See, e.g*, *Blake v. Gilbert*, 702 P.2d 631, 639-40 (Alaska 1985); *Austin v. Fulton Ins. Co.*, 444 P.2d 536, 539 (Alaska 1968). Under Alaska law punitive damages are a remedy and not an independent cause of action. *Doe v. Colligan*, 753 P.2d 144, 145 n.2 (Alaska 1988). The remedy depends upon the proof of separate causes of action, such as tortious misrepresentation or material omission, negligence, or deceit. *Id.*; *Blake*, 702 P.2d at 639-40; *Austin*, 444 P.2d at 539.

In this case, Nugget's offenses and North Star's losses giving rise to such claims as alleged in North Star's Amended Complaint <u>occurred</u> and therefore <u>accrued</u> before August 7, 1997. That much is evident from this Court's previous Orders dated August 30, 2002 and January 22, 2003 finding and dating the strong evidence of Nugget's subterfuge, deceit, control over and interposition of Spencer Rock as a strawman, and

business interference well before August 7, 1997. *See* Clerk's Docket Nos. 310 at 5-15, 19-25 & 356 at 10-13. Much the same evidence supports North Star's tort claims under state law as set out in detail in North Star's Amended Complaint.

When a plaintiff became aware or should have become aware of the basis for such claims, such as where that basis has been concealed from it, can extend the period for running of the statute of limitations, where no previous lawsuit has been filed relating to the same transaction. *See, e.g., Sharrow v. Archer*, 658 P.2d 1331 (Alaska 1983); *Groseth v. Ness*, 421 P.2d 624, 630 (Alaska 1966). However, where that lawsuit has already been filed, as in this case, there is no need to extend that time and the amended claims relate back, as North Star pointed out in its July 13, 2005 motion to amend and August 8, 2005 reply memorandum and as this Court determined in its previous Order dated August 11, 2005 allowing amendments in this case. *See* Clerk's Docket No. 401. At least in that instance, and probably in all instances, the date for accrual of the case remains the date the offense and injury first <u>occurred,</u> not the date the plaintiff actually filed its complaint, or first "asserted" the claim, or amended its complaint to assert the claim. *Austin*, 444 P.2d at 539; *Silverton v. Marler*, 389 P.2d 3, 5-6 (Alaska 1964). Nugget alleges to the contrary, but cites no authority in support. Accordingly, AS 09.17.020 as amended effective August 7, 1997, does not apply to this case.

Nugget correctly notes that <u>if</u> AS 09.17.020 as enacted effective August 7, 1997 applied, subsection (e) of that statute provides that the discovery of evidence relevant to

the amount of punitive damages shall be conducted after the fact finder has determined that an award of punitive damages is allowed.[3]  However, as just addressed in this memorandum and also in North Star's opening memorandum, that statute is not applicable to this case.

Furthermore, as was observed in North Star's opening memorandum (*see* pp. 7-8), even were AS 09.17.020 as effective August 7, 1997 applicable to this case, subsection (e) of that statute timing the discovery of financial information relevant to the amount of punitive damages would not apply.  As was stated by the court in *CEH, Inc.*:

> As a preliminary matter, it should be noted that discovery is a procedural matter governed in the federal courts by the Federal Rules of Civil Procedure. Thus, state discovery practices are usually irrelevant.  *American Ben. Life Ins. Co. v. Ille,* 87 F.R.D. 540, 542 (W.D. Okla. 1978); *see also* 8 Wright & Miller, Federal Practice and Procedure:  Civil § 2005 (1970) (state law will govern only when the Federal Rules so indicate).

153 F.R.D. at 497-98.  As was stated by the court in *American Benefit Life Insurance Co.*,

> Though a federal court in a diversity action is to apply the substantive law of the forum in which it sits, discovery, as a procedural matter, is governed in a federal court only by the Federal Rules of Civil Procedure and state discovery practices are irrelevant.

---

[3] North Star was incorrect in that regard in its opening memorandum.  However, North Star addressed that point in a short paragraph less than one-half page in its opening memorandum (*see* p. 6), and Nugget addresses the matter in less than a page in its memorandum.

87 F.R.D. at 542.  *Accord,* 8 Wright Miller & Marcus, Federal Practice and Procedure, Civil § 2005 at p. 64, incl. n.7 citing authorities (1994)[4].  As was further noted in *CEH, Inc.*, the federal courts permit pretrial discovery of financial information about the defendant without requiring the plaintiff to establish a *prima facie* case on the issue of punitive damages.  *Id.* at 498-99.  Nugget does not at all address that point in its Opposition.

Finally, Nugget argues that if AS 09.17.020 as effective August 7, 1997 does not apply, still discovery of a party's financial condition as a relevant factor in a claim for punitive damages should be allowed only after the plaintiff first proves by clear and convincing evidence that the wrongdoer's conduct was outrageous, citing *Sturm, Ruger & Co. Inc. v. Day*, 594 P.2d 38 (Alaska 1979), and the *Norcon* decision, 971 P.2d 158.  However, those Alaska decisions, which predated AS 09.17.020 as effective August 7, 1997, do not stand at all for that proposition.  They do stand for the proposition that <u>at trial</u> a plaintiff must prove by clear and convincing evidence that the wrongdoer's conduct was outrageous.[5]  However, they do not hold or suggest that <u>discovery</u> relevant

---

[4] Furthermore, even in a state court action the timing of that discovery would likely be considered a procedural matter committed to the Alaska courts and not the Legislature. *Silverton v. Marler*, 389 P.2d 3, 5-6 (Alaska 1964).

[5] As the Alaska Supreme Court has made clear, such proof at trial is not an insurmountable obstacle.  Actual malice need not be proved.  Rather, reckless indifference to the rights of others and conscious action and deliberate disregard of them can provide the necessary state of mind to justify punitive damage, as is the case with Nugget in this case.  *See Sturm, Ruger & Co.*, 594 P.2d at 46.  *See also* Exh. 6 attached hereto.  Furthermore, according to the Alaska court evidence which induces a belief in the jury's minds that the alleged fact is highly probable is clear and convincing; it is not

REPLY TO OPPOSITION TO NORTH STAR'S MOTION TO COMPEL DISCOVERY
*North Star v. Nugget, et al.*; Case No. A98-009 CIV (HRH)
Page 8 of 17                                                                                                          45-40/ # 81372

to the issue of outrageous behavior, or <u>discovery</u> relevant to a party's financial condition where a claim for punitive damages is alleged, cannot be had until it is first demonstrated that the wrongdoer's conduct was outrageous, even as a *prima facie* consideration.

      Neither does Nugget show that in those decisions the trial court "allowed the jury to consider the amount of the award" only after "the jury had already rendered a verdict on punitive damages", as Nugget merely alleges (Opp. At pp. 6-7), and those decisions do not hold that.

      To the contrary, as was noted in *CEH, Inc.*, most state courts, as well most federal courts, have permitted pretrial discovery of a defendant's financial condition without requiring even a *prima facie* showing of entitlement to punitive damages. *CEH, Inc.*, 153 F.R.D. at 498 (citing authorities). There is no reason to believe Alaska case law, which has always allowed pretrial discovery at least as liberal and extensive as the federal discovery, would be any different, at least as to claims accruing before August 7, 1997, and, as noted earlier, this court should apply the federal discovery rules and procedure in any event.

      As was observed in North Star's opening memorandum, this Court's present pretrial order in this matter dated October 12, 2005 provides for the close of discovery by the end of March of this year, and, further, that Order shall be changed only for good

---

necessary that the alleged fact be certainly true or true beyond a reasonable doubt or conclusively true. *See* Exh. 6; *Saxton v. Harris*, 395 P.2d 71, 72 (Alaska 1964).

REPLY TO OPPOSITION TO NORTH STAR'S MOTION TO COMPEL DISCOVERY
*North Star v. Nugget, et al.*; Case No. A98-009 CIV (HRH)
Page 9 of 17                                              45-40/ # 81372

cause shown.  Clerk's Docket No. 415.  Nugget does not show good cause to depart from that Order on the subject of Nugget's financial information.

### C. North Star Does Not Have To Show Prejudice In Order To Be Allowed The Discovery Into Financial Information It Seeks; But If It Does, It Has Shown That.

Nugget argues that even without applying AS 09.17.020, North Star has failed to make a showing "of any need to learn of Nugget's financial conditions at this point in time."  Nugget Opp. at 8.  However, Nugget has not shown that such a showing of "prejudice" must be made in order to obtain that discovery, and North Star counsel is certainly unaware of none.  To the contrary, North Star has cited federal authority to the effect that no such showing is required.  *See, e.g., CEH, Inc.,* 153 F.R.D. at 497-99; *Holliman*, 61 F.R.D. at 490-91.

Nugget also argues that North Star has cited no law to support the discoverability of that information as being pertinent to a realistic appraisal of the settlement value of the case.  However, North Star also cited federal authority on that point in its opening memorandum.  *Id.*, cited at pp. 7-8 of North Star's opening memorandum.

Furthermore, preventing that discovery at this time would negatively impact North Star's preparation of its case, both in time and expense, as the protracted history of this case and the resulting expense to date already shows.  Doing so would be contrary to this Court's present pretrial order providing for the close of discovery, thus resulting in additional delay and expense.  In its opening memorandum, North Star demonstrated that the delayed procedure which Nugget seeks "would only lead to delay

and confusion". *See* North Star's opening memorandum at pp. 7-8, quoting, *inter alia,* from *CEH, Inc.*, 153 F.R.D. at 499 (in turn citing *St. Joseph Hospital v. INA Underwriters Ins. Co.*, 117 F.R.D. 24, 25-26 (D.Me. 1987).

Accordingly, North Star will be prejudiced if it is presently denied the requested discovery and instead must first obtain such information after the liability phase of the trial. Nugget's proposed approach does <u>not</u> save the judicial system time, at least as to a matter of <u>discovery</u>, and as noted earlier, Nugget's interest in such information as "confidential and proprietary" can be otherwise protected.

## II. THE REQUESTED INFORMATION ABOUT NUGGET'S INSURANCE IS DISCOVERABLE.

### A. Nugget's Insurance and Indemnity Agreements are Discoverable.

Nugget's argument on this point, although covering two pages, is basically to the effect that although Nugget does not dispute that the federal rules of discovery allow for the inspection and copying of insurance agreements, including reinsurance agreements, that may apply to all or part of a judgment, Nugget does not have to produce any insurance agreements or policies because Nugget and its insurance agent believe that Nugget's insurance policies do not apply. In effect, Nugget demands that the court and plaintiffs' counsel simply accept Nugget's opinion on the matter – or more precisely, the opinion of its insurance broker.

However, there is nothing in the federal rules or case law that requires such blind devotion or acquiescence. Nugget cites no case law to that effect.

Without producing or identifying which policies it has, Nugget also argues that "[t]his is a claim for economic loss, not property damage, personal injury or wrongful death. Consequently, there are not any insurance policies that apply to this type of claim." Nugget Opp. at 10-11. Nugget is wrong on all counts.

First, Nugget mistakenly assumes that because part of the plaintiffs' claims in this case are for economic loss, all of the claims are, none are for "injury", and that economic loss claims are irrelevant where a claim for recovery of punitive damages is also made. In *Haskins v. Shelden*, 558 P.2d 487, 492-93 (Alaska 1976), a claim for punitive damages was allowed upon a claim for economic loss and "injury" due to the wrongful repossession of a tractor. Furthermore, the Alaska court has held that punitive damages may be awarded upon any number of torts, including intentional interference of economic relations or misrepresentation or fraud, just as alleged in this case. *See, e.g., Oaksmith v. Brusich*, 774 P.2d 191, 201 (Alaska 1989); *Great Western Savings Bank v. George W. Easley Co., J.V.*, 778 P.2d 569, 580 (Alaska 1989). The Alaska Supreme Court and federal district court sitting in Alaska have also held that liability insurance policies may be construed to cover punitive damages. *See, e.g. LeDoux v. Continental Insurance Co.*, 666 F.Supp. 178 (D. Alaska 1987); *Providence Washington Ins. Co. v. City of Valdez,* 684 P.2d 861 (Alaska 1984). In addition, there are a great number of Alaska and federal cases finding insurance coverage where insurers, and even some insureds, have claimed it did not exist , including in the event of "personal injuries" for fraud, advertising injury (including misrepresentation), etc.

Contrary to Nugget's assertion, North Star need not develop a basis why Nugget's insurance policies would provide coverage for claims asserted by North Star in this case, but if so North Star has developed a sufficient basis. How can the plaintiffs be expected to develop more of a "basis" connecting Nugget's policies with plaintiffs' claims if Nugget is not required to produce the policies, so that their coverage language can be inspected? Federal Civil Rule 26(a)(1)(D) and North Star's several discovery requests, including its Notice of Nugget's Rule 30(b)(6) Deposition, require that Nugget and its insurance broker/agent produce for inspection and copying all of Nugget's insurance agreements and reinsurance agreements, since any one of those may provide coverage as to North Star's various claims. Neither the court nor the plaintiffs should be required to depend upon Nugget's views as to which of those agreements is "applicable".

### B.  Information and Documents Regarding Nugget's Claims Against Insurance Are Discoverable.

Nugget also argues that it should not be required to produce any information or documents regarding Nugget claims against insurance, although such information is relevant for <u>discovery</u> purposes at least to Nugget's claim that none of its insurance policies are applicable to plaintiffs' claims. Nugget's Opp. at 12-14. As noted previously, it is unnecessary that it also be admissible at trial.

In any event, in its discussion on the issue Nugget mistakenly confuses that discovery request with a discovery request for Nugget's <u>applications</u> for insurance

---

coverage, such as with its broker. North Star did not seek Nugget's insurance <u>applications</u>. It sought any of Nugget's <u>claims</u> against insurance, under the policies it has held, regardless of whether those claims were made to its broker, agent, or insurer.

Nugget mixes apples and oranges. The requested discovery is proper and should be permitted.

### C. Nugget's Employees And Agents Identified By It As Most Knowledgeable On The Subject Of Nugget's Insurance And Financial Information Should Be Identified By It By Name And Made To Testify On Those Subjects At The Rule 30(b)(6) Deposition Of Nugget Identifying Those Subjects Of Inquiry.

In response to North Star's written interrogatories requesting Nugget to identify the "person or <u>persons</u>" (emphasis added) most knowledgeable as to Nugget's insurance information and financial condition, Nugget identified only Nugget's president and 100% owner, John Terwilliger. *See* previously filed Exh. 2 at pp. 15-17 (North Star Interrogatory Nos. 4 and 5). In response to North Star's Notice of Taking Nugget's Rule 30(b)(6) Deposition listing those subjects as matters of inquiry at the deposition, Nugget produced only John Smithson, a project engineer for Nugget, and Mr. Smithson testified that Mr. Terwilliger, his son Cliff, and Nugget's insurance agent were the individuals most knowledgeable on those subjects and that he (Mr. Smithson) did not know about those subjects. *See* previously filed Exhs. 3 and 4.

Clearly, John Terwilliger is "an officer, director or managing agent" of Nugget identified by Nugget as being most knowledgeable on those subjects who could (and should) have testified for Nugget at Nugget's Rule 30(b)(6) deposition. Mr. Smithson is

neither.  Furthermore, as testified to by Mr. Smithson, Nugget's unidentified insurance agent is an "other person" who could "consent to testify on [Nugget's] behalf" according to the Rule.  *See* Fed. R. Civ. P. 30(b)(6).  According to Mr. Smithson that insurance person, is, after all, Nugget's agent on the subject, and the person on whom Nugget and apparently Nugget's legal counsel are relying for their refusal to produce documents or give information regarding Nugget's insurance coverage and claims against insurance.

It is ingenuous and evasive for Nugget, when given the opportunity to identify more than one person as "knowledgeable" on those subjects, to instead identify only one, John Terwilliger, and then produce someone else, Mr. Smithson, who professes to have no knowledge and instead, on the subject of insurance, professes to rely solely upon Nugget's unidentified insurance agent.  It is equally inappropriate and incomplete for Nugget, after naming John Terwilliger on those subjects, to then take the position that Mr. Terwilliger's "deteriorating health" prevents him from testifying, and to assert that North Star is being "callous" in its request for his testimony – especially after Mr. Smithson testified that Mr. Terwilliger is well enough to come into the office generally and also well enough to hang out at Tok and go hunting with his "hunting buddies".  *See* previously filed Exh. 4, at pp. 9a, 20-24.  *See also* Exhibit 7 attached hereto (additional deposition transcript).

Accordingly, Nugget should also be required to provide that discovery.[6]

---

[6] As to Nugget's added request, that the Court limit the deposition time allowed for

### III.  CONCLUSION

For the foregoing reasons, and such other reasons as the Court may consider, North Star requests that its Motion to Compel Discovery be granted, in accordance with the proposed Order which North Star submitted with that Motion, and that the Court award North Star its reasonable expenses and any sanctions that the Court determines appropriate in this matter.

Dated at Anchorage, Alaska, this 4th day of January 2006.

> s/ Michael W. Sewright
> Burr, Pease & Kurtz
> 810 N Street
> Anchorage, Alaska 99501
> Phone: (907) 276-6100
> Fax: (907) 258-2530
> E-mail: bpk@bpk.com
> Alaska Bar No. 7510090

---

North Star's recommencement of its 30(b)(6) deposition so as not to exceed seven hours, it should be noted that the actual time expended on the first deposition was about 5 ½ hours and about 1 ½ hours of that was expended on establishing that Nugget's designated deponent, Mr. Smithson, did not have knowledge on either the insurance or financial information issues (in addition to other designated items) and that Nugget refused to provide information on those matters in any event.  Three hours should be sufficient, assuming Nugget provides appropriate designees at the recommencement.

CERTIFICATE OF SERVICE
I certify that on the 4th day of January, 2006, a copy of the above and foregoing **REPLY TO OPPOSITION TO NORTH STAR'S MOTION TO COMPEL DISCOVERY** was served electronically to Steven S. Shamburek and by **mail** on:

Traeger Machetanz, Esq.
Gloria Y. Ho, Esq.
OLES MORRISON & RINKER
745 West Fourth Avenue, Suite 502
Anchorage, AK  99501

Herbert A. Viergutz
Barokas Martin & Tomlinson
1029 W. 3rd Ave., Suite 280
Anchorage, AK 99501

Paul D. Stockler, Esq.
1309 W. 16th Ave
Anchorage, AK 99501

C. Patrick Stoll, Esq.
HERRIG VOGT & STOLL LLP
4210 Douglas Blvd., Ste. 100
Granite Bay, CA  95746-5902

s/ Michael W. Sewright