20.20     PUNITIVE DAMAGES  [Actions Accruing on or after June 11, 1986 and before August 7, 1997]

The plaintiff has requested that you award (him) (her) (it) a separate amount of money in order to punish the defendant and to deter the defendant and others from repeating similar acts. You may award the plaintiff such an amount of money only if you decide that the defendant's conduct which forms the basis of your verdict was outrageous. The defendant's conduct was outrageous if it was the result of maliciousness or hostile feelings toward the plaintiff, or was undertaken with reckless indifference to the interests, rights or safety of others.

Plaintiff must prove the outrageousness of defendant's conduct by clear and convincing evidence. I will now define what it means to prove something by clear and convincing evidence. An alleged fact is established by clear and convincing evidence if the evidence induces belief in your minds that the alleged fact is highly probable. It is not necessary that the alleged fact be certainly true or true beyond a reasonable doubt or conclusively true. However, it is not enough to show that the alleged fact is more likely true than not true.

The law provides no fixed measure as to the amount of such damages, but leaves it to you to decide an amount that will fairly accomplish the purposes of punishment and deterrence. In assessing such damages you may consider the magnitude and flagrancy of the defendant's offense, the importance of the policy violated, the wealth of the defendant, and the amount of compensatory damages.

<u>Use Note</u>

This instruction should be used only in personal injury cases in which the cause of action accrued on or after June 11, 1986 and before August 7, 1997.

This instruction is for use when punitive damages are claimed.

For defamation cases see Instruction 16.06.

Revised 1999                                                                                           Article 20.20 - 1

*Exhibit 6*
*Page 1 of 1*

```
 1            that was in writing?
 2   A        I can't recall if I did or not.
 3   Q        You say it's possible that agreements were not in
 4            writing.  In fact, sir, based on your experience, is it
 5            true that at least some of the agreements are not in
 6            writing?
 7   A        Yeah, that's possible, yeah.
 8   Q        Possible or is it, in fact, the case?
 9   A        Yeah, it's the case.
10   Q        Okay.  Now John Terwilliger isn't in Tok just because
11            he likes it, right?
12   A        Well, actually it is right now because it's slow,
13            because he does like it in Tok.
14   Q        You've already testified Nugget has a shop there,.....
15   A        That's correct.
16   Q        .....correct?  And that is Nugget's only shop, correct?
17   A        That's correct.
18   Q        Does Nugget Construction have an office there?
19   A        Only when -- yes, we do have an office there, yes.
20   Q        And does John Terwilliger go into that office?
21   A        Yes.
22   Q        He works there, right?
23   A        I guess you could say it's work, he'll pick up a fax or
24            answer the phone if he's -- he's -- it -- it's.....
25   Q        Well, he's still the owner of the company, isn't he?
```

R & R COURT REPORTERS
810 N STREET
(907) 277-0572/Fax 274-8982
ANCHORAGE, ALASKA  99501

Exhibit 7
Page 1 of 2

58

| | | |
|---|---|---|
| 1 | A | Yeah.  Yeah, but he's not -- it's not a -- our normal business is taken care of in Anchorage and he goes to Tok when we're not busy in Anchorage 'cause he likes -- that's where all his hunting buddies are, he goes up there to go hunting. |
| 6 | Q | And where do you work out of? |
| 7 | A | Anchorage. |
| 8 | Q | Where does Greg Poynor work out of? |
| 9 | A | Anchorage. |
| 10 | Q | Cliff Terwilliger? |
| 11 | A | Anchorage. |
| 12 | Q | So is it fair to say that when John Terwilliger is in Tok, he's in charge of the Tok office? |
| 14 | A | I guess you could say that,..... |
| 15 | Q | Well,..... |
| 16 | A | .....he's in charge of both offices. |
| 17 | Q | Okay.  Now turning to Exhibit 5, entitled Nugget's Responses to North Star's First Set of Discovery Requests.  You've already testified you've read this document before,..... |
| 21 | A | Uh-hum.  (Affirmative) |
| 22 | Q | .....correct? |
| 23 | A | Yes. |
| 24 | Q | Directing your attention to page 7, and this is a response starting at page 6, you don't need to go to |

R & R  COURT  REPORTERS

810 N STREET
(907) 277-0572/Fax 274-8982
ANCHORAGE, ALASKA  99501

*Exhibit* 7
*Page* 2 *of* 2