Law Offices
of
## William Grant Callow
A Professional Corporation
425 G Street, Suite 610, Anchorage, Alaska 99501
Tel (907) 276-1221    Fax (907) 258-7329

North Star Terminal & Stevedoring, et al. v. Nugget Construction, Inc., et al.
A98-009 (HRH)
United States District Court for the District of Alaska

Expert Report of William Grant Callow

Introduction

I understand that this case involves a construction project undertaken by the United States Army Corps of Engineers for repair and revetment work for the Homer spit in Homer, Alaska ("Homer Project") from about March until about October, 1997. Nugget Construction, Inc. was the general contractor. United Stated Fidelity and Guaranty ("USF&G") provided the payment and performance bonds required to undertake work on federal projects pursuant to the Miller Act. Spencer Rock Products, Inc. entered into a contract with Nugget to provide the rock for the Homer Project. North Star Terminal and Stevedoring provided stevedoring work (about $125,000), Metco, Inc. provided other labor (about $34,000), and Shoreside Petroleum, Inc d/b/a Marathon Fuel provided fuel and lube (about $53,000) for the Homer Project. A lawsuit was filed in early January, 1998 by North Star in the United States District Court for the District of Alaska and joined by Shoreside and Metco. There have been two major summary judgment decisions by the district judge and two appeals to the Ninth Circuit Court of Appeals and remands. The three claimants filed amended complaints on or about August 31, 2005 asserting among other claims bad faith causes of action against USF&G. I have been requested to opine as to the treatment of the claims by USF&G. I reviewed documents provided to me by the attorneys for the claimants and discussed this case with them.

Correspondence From The Claimants and the Corps of Engineers
To Nugget Construction and USF&G

In a letter from the Corps of Engineers dated August 6, 1997 to Nugget Construction, the Corps states in pertinent part:

SUBJECT:  Letter from METCO, Incorporated, Contract DACW85-96-C-0020, Homer Spit Repair and Extension, Homer, Alaska

. . .

Attached is a letter we received from METCO, Incorporated, dated July 31, 1997, regarding non-payment for work that they have conducted for the

1

Exhibit __1__
__1__ of __14__

above project.   METCO states that they have not been
paid for loading rock from the rail cars to the barges
in Seward.


     .  .  .


     METCO's letter claims that Spencer Quarry has not
paid them because Spencer Quarry has not received
payment from Nugget Construction.


     .  .  .


     We remind you that under Contract Clause I.55,
Payments Under Fixed-Price Construction Contracts,
Paragraph c.3 states: "This request for progress
payment does not include any amounts which the prime
contractor intends to withhold or retain from a
subcontractor or supplier in accordance with the terms
and conditions of the subcontract."

(RRO/33; Nugget 001583 - 001586).  The letter attaches a copy of the letter from Metco, Inc.
dated July 31, 1997 demanding payment.

In a letter from the Corps of Engineers dated August 21, 1997 to Nugget Construction,
the Corps states in pertinent part:

SUBJECT:     Letter from Northern Stevedoring and
Handling Corporation, Contract DACW85-96-C-0020, Homer
Spit Repair and Extension, Homer, Alaska


     .  .  .


     Attached is a letter we received from Northern
Stevedoring & Handling Corporation regarding work that
they have conducted for the above project which they
have not received payments.   Northern Stevedoring
claims that they have not been paid for loading five
barges in Seward.


     .  .  .


     We request an immediate explanation of why
Northern Stevedoring has not been paid for the
services that they have provided to the Homer project.

Exhibit  _1_
_2_ of _14_

> We remind you that under Contract Clause I.55, <u>Payments Under Fixed-Price Construction Contracts</u>, you are not to request for progress payments that which you intend to withhold from a subcontractor or supplier.

(RRO/38; Nugget 001563 - 001565). The letter attaches a copy of the letter from Northern Stevedoring and Handling dated August 4, 1997 demanding payment.

In a letter from the Corps of Engineers dated August 26, 1997 to Nugget Construction, the Corps states in pertinent part:

> SUBJECT:    Spencer Quarry, Contract DACW85-96-C-0020, Homer Spit Repair and Extension, Homer, Alaska
>
> . . .
>
> We acknowledge receipt of Serial Letter 611-19, dated August 6, 1997 and Serial Letter 611-21, dated August 11, 1997.  We do not necessarily agree that Spencer Rock Products is only a "vendor" for Miller Act purposes.
>
> Based on the supporting costs that you outlined in Serial Letter 611-21, it appears that Nugget Construction has assumed full responsibility for operations at Spencer Quarry for the subject project. Therefore, as primary operator at Spencer Quarry, we believe Nugget Construction is responsible for prompt payment to suppliers and subcontractors who contracted with Spencer Rock Products on this project.
>
> We request that you clarify what support and project management services Nugget Construction provided to Spencer Rock Products to account for the support cost that you have shown in Serial Letter 611-21.  Further, please provide information showing what work, if any, has been performed by Spencer Rock Products under its subcontract with Nugget Construction.

(RRO/40; Nugget 001561). The letter states that it was courtesy copied to "United States Fidelity and Guarantee Co., Attn: Bill Wells, 4220 B Street, Anchorage, AK 99503."

Exhibit ___1___
___3___ of ___14___

In a letter from the Corps of Engineers dated September 9, 1997 to Nugget Construction, the Corps states in pertinent part:

> SUBJECT:    Letter    from    Northern    Stevedoring    and
> Handling    Corporation    [Northern    Stevedoring    is
> scratched    out    and    Shoreside    Petroleum    handwritten    on
> the    copy],    Contract    DACW85-96-C-0020,    Homer    Spit
> Repair    and    Extension,    Homer,    Alaska
>
> .   .   .
>
> Attached    is    a    letter    we    received    from    Shoreside
> Petroleum,    Incorporated,    dated    August    28,    1997.    This
> letter    is    regarding    services    that    they    have    provided
> for    the    above    project    for    which    they have    not    received
> payment.
>
> .   .   .
>
> We    request    an    immediate    explanation    of    why
> Shoreside    Petroleum    Incorporated    has    not    been    paid for
> the    services    that    they    have    provided    to    the    Homer
> project.

(RRO/44; Nugget 001554 - 001555).  The letter attaches a copy of the letter from Shoreside Petroleum dated August 28, 1997 demanding payment.

## Early Correspondence

A handwritten note from a person identified as "Jim Ferguson" of the Anchorage office of the brokerage firm Willis Corroon dated August 28, 1997 to Bill Wells of USF&G states: "Nugget is handling + will continue to handle to keep us clean + out of this.  Thanks.  [signed Jim]."  (WEL000051).  A facsimile transmission from James L. Ferguson, Senior Vice President, Alaska Surety Manager of Willis Corroon Corporation of Anchorage dated September 2, 1997 to Bill Wells with USF&G re:  Nugget/Spencer Quarry Northern Stevedoring states in handwriting: "Bill, We will get back up from Nugget + a letter from their Attorney.  Spencer Rock Products was a Vender <u>Not</u> a Sub + as I said Nugget is handling this.  Thanks.  [signed Jim]." (WEL000056).   Another note from Jim Ferguson with Willis Corroon in Anchorage dated September 10, 1997 to Bill Wells with USF&G states: "Again - Nugget is handling – We are to get a letter from his attorney this week.  Thanks.  [signed Jim]."  (WEL000060).

Attorney Michael W. Sewright, counsel for Northern Stevedoring and Terminal, sent a letter to Nugget Construction dated August 29, 1997 with a courtesy copy to "U.S. Fidelity & Guaranty Co, 4220 B Street, Anchorage, AK  99503" referencing the August 4, 1997 letter from Northern Stevedoring and again demanding payment.  (Unmarked document).  Attorney John Lukjanowicz of Oles, Morrison & Rinker, counsel for Nugget Construction, Inc., sent a letter to

Exhibit ___1___
___4___ of ___14___

Mr. Sewright dated September 12, 1997 discussing his letter dated August 29, 1997 regarding the North Star Terminal claim. (WEL000064). Mr. Sewright responded by letter dated September 19, 1997 and noted among other observations that Nugget had a direct relationship with Northern Stevedoring. (Unmarked document). Robert LaPore with Spencer Rock Products discussed the problems with Nugget Construction's operation of the quarry in detail in a letter dated October 20, 1997 and stated that at the end of his letter that it was also sent to the "Bonding Co." (Unmarked document). Shoreside also noted that it had a direct relationship with Nugget Construction. (Shoreside's Third Supplemental Discovery Response, p. 2).

A copy of an e-mail from Jane Poling employed by USF&G dated "10/24/97 at 05:27 PM" to "Bill Wells/USFG" with a courtesy copy to "Bryan Martin/USFG, John Phinney/USFG" and with the subject line referring to the "Principal: Nugget Construction, Inc.," states:

> Please be advised that I received a claim from underwriting on the above principal. At this time there are the following claims:
>
> (1) Spencer Rock - $1,426,707.84
> (2) Northern Stevedoring - $124,724.98
> (3) Chugach Rock Corporation - $86,444.00
> (4) Shoreside d/b/a Marathon Fuel - $53,062.00
> (5) Metco – undisclosed amount
>
> At this time, I would appreciate it if you could provide me with any information regarding whether this is an on-going account, **because based on the information available to me at this time some of the defenses of the principal may be questionable**. Also, please provide me with any status reports if you have any, and I will keep you advised of this matter as it progresses.

(USF&G 001013; Emphasis added). USF&G acknowledged the questionable defenses of Nugget at least by October, 1997.

I understand that Nugget Construction and Spencer Rock Products entered into a Support Agreement dated April 23, 1997. In the Decision of the Ninth Circuit Court of Appeals dated March 3, 2005, the panel stated in pertinent part:

> On the record before us, the appellees have presented sufficient evidence to create a material issue of fact as to subterfuge or collusion. The evidence, although not conclusive, tends to show that Nugget secretly converted Spencer Rock into a strawman in its ongoing dealings with the appellees. The support agreement with Spencer Rock on its face purports to insulate Nugget from Miller Act liability, yet Nugget directed Spencer Rock to conceal the terms of this agreement and keep secret Nugget's arrangements with Spencer Rock relating to the project. Nugget also began performing some of Spencer Rock's functions at the quarry and interacted directly with some of the appellees – the extent to which remains in dispute.

Exhibit __1__
__5__ of __14__

(Decision dated March 3, 2005 at docket entry no. 383 at p. 6). Judge Holland previously found: "None of the parties that Spencer contracted with for goods and services (North Star, Shoreside, or Metco) were made aware of the support agreement because Nugget insisted that Spencer not inform those parties of it." (Order dated August 30, 2002 at docket entry no. 310 at p. 6). USF&G knew or should have known that Nugget was attempting to prevent this evidence from being disclosed as early as September or October, 1997 and should have undertaken greater scrutiny of Nugget's representations to it.

### Proofs of Claim

Ms. Poling of USF&G sent a letter dated October 28, 1997 to Robert LaPore, President of Spencer Rock Products, Inc. acknowledging the claim for $1,426,707.84. (USF&G 001637). Ms. Poling sent a letter dated January 14, 1998 to Robert LaPore, President of Spencer Rock Products, Inc. acknowledging that Spencer provided a proof of claim and supporting documents but denying the claim. (USF&G 001636).

Shoreside Petroleum, Inc. submitted a letter to Ms. Poling and a formal USF&G Proof of Claim dated December 16, 1997 with supporting documents to USF&G (Nugget 009113 - 009152). Ms. Poling sent a letter to Nugget dated January 5, 1998 asking Nugget to explain its position in the matter. (Nugget 009112). There is no response from Nugget in the materials I reviewed. USF&G does not appear to have undertaken any more investigation of the claim or to have sought any additional information from Shoreside.

The records do not indicate whether USF&G ever asked Metco, Inc. to provide a Proof of Claim even though USF&G was aware that Metco asserted a claim as indicated in the e-mail note from Ms. Poling. (USF&G 001013).

### Correspondence from Oles, Morrison

Attorney Lukjanowicz of Oles, Morrison & Rinker sent two letters to Ms. Poling dated December 16 and 17, 1997 discussing the North Star Terminal and Stevedoring claim and the Chugach Rock Corporation claims, respectively. (USF&G unmarked document). Mr. Lukjanowicz also sent a letter to Ms. Poling dated February 17, 1998 discussing the Chugach Rock Corporation claim again. (USF&G 001413 - 001415). There does not appear ever to have been a discussion of the possible liability for the claims of Shoreside Petroleum, Inc. and/or Metco, Inc., although I understand that their claims, and the defenses to them, are similar to the ones involving North Star Terminal and Stevedoring. The three claimants contend that the one letter that relates to their claims does not completely and candidly discuss the exposure of Nugget Construction and USF&G to the claims of the three claimants. USF&G does not appear to have sought additional information from these three claimants. Instead, USF&G simply tendered its defense to Nugget Construction in a letter dated February 13, 1998. (Nugget 008466 - 008467).

Nugget Construction accepted USF&G's tender of defense in February, 1998 in accordance with a contract provision that states in pertinent part:

Exhibit ___1___
___6___ of _14_

Should you agree to accept the surety's tender of defense you will be required to provide a copy of all pleadings. Those pleadings filed on behalf of the surety must be reviewed and approved by the surety prior to such filing. We also request that your attorney provide us with regular status reports concerning the litigation. It is also a condition of this tender of defense that we have the right with reasonable notice, to have full access to all of your files concerning this matter. We also specifically reserve the right to revoke the tender of this defense at any time and for any reason.

(USF&G 001535). In the records I reviewed, there are some facsimile transmittal sheets, but not documents indicating that there was any review and/or written approval of pleadings by USF&G prior to their filing. I also have not seen any evidence to suggest that USF&G ever revoked the tender of defense.

## Settlement Efforts

Shoreside Petroleum filed a motion seeking a settlement conference on April 6, 1998 at docket entry no. 24. North Star Terminal and Stevedoring filed a joinder on April 9, 1998 at docket entry no. 25. Neither Nugget nor USF&G joined the motion or pursued the opportunity to discuss settlement. The court denied the motion on April 14, 1998 at docket entry no. 27. Shoreside Petroleum filed a renewed motion seeking a settlement conference on June 18, 1998 at docket entry no. 42. Spencer Rock filed an opposition on June 29, 1998 at docket entry no. 44. Shoreside filed a reply on July 1, 1998 at docket entry no. 47. The court denied the motion on July 1, 1998 at docket entry no. 46. North Star filed a Joinder in the renewed motion for a settlement conference at docket entry no. 48. USF&G disregarded another opportunity to discuss settlement of the claims.

Steven W. Schoenhaar of USF&G sent a letter dated November 18, 1998 to Mr. Lukjanowicz acknowledging a voicemail message from Mr. Schoenhaar that Nugget Construction was unable to settle the claims of the three claimants and requesting a copy of the settlement offers made to each of these three (3) entities. (USF&G unmarked document). There is nothing in the file to indicate that Nugget made any settlement offers or otherwise responded to this request by Mr. Schoenhaar. The three claimants contend that Nugget did not make any settlement offers at this time.

In September, 1999, the parties were encouraged by the Court to explore settlement as noted by the Order at docket entry no. 139. I understand that the three claimants carefully prepared settlement offers and presented them to Nugget. I understand that Nugget rejected all of them and made no counteroffers.

The Court ordered a settlement conference for on June 7, 2005 as indicated by the Order at docket entry no. 385. Another judge conducted the settlement conference as indicated by the Order at docket entry no. 386. I understand that prior to the settlement conference, Nugget offered to settle North Star's claim for $20,000, Shoreside's claim for $5,000, and Metco's claim for $10,000. The three claimants made higher settlement offers for the principal sums with interest and attorney's fees. The settlement conference was terminated because the settlement

Exhibit ____/____
___7___ of __/4__

judge concluded that the parties were too far apart to reach a resolution as indicated by the Order at docket entry no. 388.

## Later Correspondence Between USF&G And Oles, Morrison

Mr. Schoenhaar sent a letter dated November 15, 2002 to attorney William K. Renno of Oles Morrison Rinker & Baker requesting copies of all briefs filed by any party in connection with the appeal. (Unmarked document). There is no evidence any copies of those requested documents were ever ailed to Mr. Schoenhaar or anyone else at UDF&G.

Janice S. Smith with USF&G sent a letter dated March 24, 2005 to attorney Traeger Machetanz of Oles Morrison Rinker & Baker requesting in pertinent part: "Please provide a brief history of the case as well as a written status of the referenced suit. Please provide me with all relevant dates set, including, but not limited to, trial dates, hearing dates, arbitration/mediation, etc. Also, please provide me with a written update of the current positions of the parties to this action, including the most current settlement demands made, if any." (USF&G unmarked document). Attorney Christine V. Williams of Oles Morrison Rinker & Baker sent a three page letter to Ms. Smith dated March 29, 2005 providing some information concerning the status of the case. (USF&G unmarked document). In Ms. William's letter, the principal amounts of two of the claims (Shoreside and Metco) were understated, the possible exposure of Nugget and USF&G was not even acknowledged, and there was no discussion of settlement offers by the parties. This appears to be the only discussion of the case of any substance in writing since the first complaint was filed in January, 1998 by North Star.

## Claimaints' Challenges To USF&G's Actions And Inactions

All three claimants assert causes of action for bad faith against UFS&G in paragraph 38 of the three Amended Complaints at docket entry numbers 406, 407, and 409. In Shoreside's Third Supplemental Discovery Responses, Shoreside states:

> USF&G knew or should have known that Nugget was requesting progress payments from the United States Government through the Corps of Engineers in violation of Nugget's contract with the Corps and after written reminder of its obligations by the Corps of Engineers. The Corps expressly stated that Nugget could not request progress payments if it was withholding any payments to suppliers and subcontractors. The obligation to pay did not depend on the narrower definitions of suppliers and subcontractors in the Miller Act.
>
> USF&G knew or should have known that Nugget was secretly structuring its transactions so that Nugget could deceive the Corps of Engineers and the three claimants regarding the actual relationship between

Exhibit  1
  1  of  14

and obligations of Nugget and Spencer Rock.  USF&G
should have inquired into the reasons that Nugget was
engaging in this deception and subterfuge.

USF&G knew or should have known that Oles,
Morrison may have been involved in structuring the
transactions to create a straw man relationship with
Spencer Rock and a hollow shell constituting a
subterfuge under the Miller Act in order to seek to
excuse Nugget's willful non-payment to the three
claimants.

USF&G appears to have relied exclusively or
primarily on representations from Oles, Morrison,
Nugget's attorneys, regarding the facts and the
defenses of Nugget and of USF&G.  USF&G should have
undertaken its own independent investigation of the
facts and law and its own analysis and handling of the
claims.

After the lawsuits were filed, Nugget filed a
motion to declare that this federal project was not a
federal project.  USF&G did not file an opposition or
any response to the Nugget motion.  USF&G provided
Miller Act bonding for a federal project and should
have filed an opposition or response to the Nugget
motion because Nugget's motion was contrary to the
unchallenged facts including the written statements of
the Corps of Engineers.  The claimants expended
additional attorney's fees to challenge and defeat the
unfounded Nugget motion.

The decision by the District Judge in this case
finding that Spencer Rock Products was a subcontractor
to Nugget under the Miller Act was and is a correct
interpretation of the relevant decisions of the United
States Supreme Court.  USF&G also agreed or should
have agreed that the decision was correct as a matter
of law based on the same decisions.  However, USF&G
joined with Nugget and appealed the decision of the
District Court.  Nugget's election to appeal was a
shrewd gamble that proved fortuitous for Nugget based
on the brief, unpublished decision of the Ninth
Circuit panel citing no Supreme Court authority.  The
decision of the Ninth Circuit is in conflict with

9

Exhibit ___/___
_9_ of _/4_

settled Supreme Court authority. There were and are substantial costs to the claimants to defend the appeal and to continue this litigation after remand.

(Shoreside's Third Supplemental Discovery Responses, pp. 2 – 4). In Metco's Supplemental Discovery Responses, Metco states:

USF&G's records indicate that it never did anything with the information it had regarding the three claims. If USF&G did anything, there is no record of what it did.

USF&G may have made demands on Nugget to review the claims candidly and in good faith. If it did, it has not produced any supporting documents.

There were a number of settlement opportunities in this case. The three claimants each expended resources preparing settlement offers in earnest throughout this litigation which appear never to have been considered in good faith by the defendants. In any other case like this one that spanned eight years, one or more of the defendants individually or jointly should have made at least a reasonable settlement offer or offers. In the alternative, USF&G should have made an offer in good faith or required Nugget to make an offer in good faith.

When an insurance company provides coverage for an automobile owner, it is committing to defend and indemnify claims by the entire world against the insured subject to terms and conditions of the policy. In this case, USF&G provided a payment bond that answered the claims of only a small number of known claimants. USF&G was aware of the three claimants and could have required Nugget to satisfy the claims asserted by the three claimants. USF&G appears to have obtained personal guaranties and other indemnity guaranties from John Terwilliger and Nugget and thus has always been able to protect itself.

The Alaska Supreme Court discusses some of the duties of a surety in Loyal Order of Moose, Lodge 1392 v. International Fidelity Ins. Co., 797 P.2d 622 (Alaska 1990). State law causes of action for bad faith are

10

Exhibit ___/___
_10_ of _14_

not preempted by the Miller Act.  K-W Industries v.
National Surety Corp., 855 F.2d 640 (9th Cir. 1988).
USF&G had and has responsibilities as set forth by law
and pursuant to its payment bond provided for the use
and benefit of the claimants.  The duty of good faith
attaches under Alaska law and contemplates awards of
compensatory and punitive damages when the duty is
breached.

## Conclusion

After it became aware of these three claims in September, 1997, USF&G was on notice
that both it and Nugget faced substantial exposure.  USF&G was on notice that the three
claimants had performed services and provided goods for the use and benefit of the bonded
Homer Project.  Neither Nugget nor USF&G contested those assertions, and the district court
found that the claimants had in fact performed services and provided goods in a timely and
conforming manner for the use and benefit of the Homer Project.

The three claimants performed services and provided goods in reliance on the protection
afforded by the Miller Act payment bond.  USF&G knew or should have known that Nugget was
not being candid with the Corps of Engineers and the claimants in particular when Nugget
sought to conceal the Support Agreement dated April 23, 1997.  USF&G knew or should have
known that the Support Agreement and subsequent activities changed the legal relationship of
the parties.

USF&G owed a duty to the three claimants to investigate the claims with due care.
USF&G breached that duty.  USF&G tendered defense of the claims to Nugget without first
fulfilling its duty to undertake a reasonable investigation of the claims.  After acceptance of the
tender by Nugget, USF&G appears to have done little if anything to review and approve
pleadings before they were filed or to monitor the case.  USF&G appears to have done little if
anything to discuss settlement of the claims.  Figuratively speaking, USF&G allowed the fox into
the hen house and then abandoned the three hens it had a duty reasonably to protect.

USF&G has a right to defend against invalid or reasonably questionable claims and a
right not to settle such claims.  However, USF&G must fairly balance these rights with its duties
to the three claimants who are its intended contract beneficiaries.  The three claimants relied on
the fact that the Homer Project was a bonded project and continue to seek the coverage
reasonably expected by that protection.  USF&G acted in bad faith by failing to investigate the
claims with reasonable care, by failing to engage seriously in settlement efforts, and by failing to
monitor and actively assert the rights it had to participate in the case.

Litigating a case that involves less than $100,000 is often uneconomical for all involved.
A party can defend against any claim, but committing a disproportionate sum to challenge well-
founded claims is problematic and usually economically irrational.  A party that commits
resources that are disproportionate to the amount in controversy and appeals every unfavorable
trial court ruling, no matter how clearly that ruling may be based on evidence or within the ambit

11

Exhibit ___/___
_11_ of _14_

of the reasonable discretion accorded the trial court, employs a strategy that seeks to win not upon the merits but by economic coercion. I understand that the cost of bringing and maintaining the claims in this case has been staggering. The litigation tactics of Nugget and USF&G have reportedly escalated the costs unreasonably. Nugget and USF&G have apparently committed enormous sums to litigate this case which are far out of line with the total amount in controversy.

Shoreside contends that Nugget drove up the costs of litigation by raising and litigating frivolous issues, such as whether this federal project is a federal project and whether the notice discussed above was adequate. The record reveals that Nugget and USF&G have enlisted at least eight (8) lawyers in this eight (8) year defense campaign.

A strategy of trying to economically overwhelm an intended contract beneficiary that asserts a valid claim by trying to force that party into submission by litigating frivolous issues and defenses that cause the claimants to incur inordinate legal fees is bad faith.

This report is subject to further amendment as other discovery documents and information are brought to my attention.

### Other Testimony

I have not served as an expert witness regarding bad faith practices of an insured or surety. However, I have undertaken many cases involving conduct and/or claims of bad faith against insurers in the past twenty (20) years. I also have taught a continuing legal education course on the subject of discovering and proving insurance bad faith.

### Compensation

I am charging my hourly rate of $200 per hour.

Dated this 14th day of February, 2006 at Anchorage, Alaska.

William Grant Callow

12

Exhibit ___/___
__12__ of __14__

SHAMBUREK LAW OFFICE, LLC DBA
LAW OFFICE OF
# STEVEN J. SHAMBUREK
SUITE 630
425 G STREET
ANCHORAGE, ALASKA
99501
shamburek@gci.net
www.shamburek.com

DIRECT:       (907) 522-5339
CELL PHONE: (907) 250-0044

FACSIMILE: (907) 522-5393

February 8, 2006

William Grant Callow
425 G Street, Suite 610
Anchorage, Alaska  99501

Dear Grant:

I am enclosing a number of documents for your review.  The Docket
Sheet is attached and the pleadings include:

Pleadings and Orders at Docket Entry Numbers 24, 25, 27, 42, 44
and 46;
Order dated June 3, 1999 at Docket Entry No. 124;
Memorandum Decision of the Ninth Circuit dated September 27, 2001
at Docket Entry No. 255;
Order dated August 30, 2002 at Docket Entry No. 310;
Memorandum Decision of the Ninth Circuit dated March 3, 2005 at
Docket Entry No. 383;
Shoreside Amended Complaint dated August 31, 2005 at Docket Entry
No. 406;
Metco Amended Complaint dated August 31, 2005 at Docket Entry No.
407;
North Star Amended Complaint dated August 31, 2005 at Docket
Entry No. 409.

The discovery documents include:

Documents produced by USF&G and marked "USF&G" with some blank
documents;
Documents produced by Nugget and marked "WEL";
Documents produced by Nugget and marked "Nugget";
Metco's Discovery Responses dated November 14, 2005;
Metco's Supplemental Discovery Response dated November 28, 2005;
Shoreside's Third Supplemental Discovery Responses dated December
9, 2005.

     All of the pleadings, discovery, disclosures and transcribed
depositions are readily available for your review.  Please let me
know what you would like to review.  If you have any questions,
please contact me.  Thank you for your attention to this matter.
Best wishes.

Exhibit _____1_____
_13_ of _14_

Sincerely,

THE LAW OFFICE OF STEVEN J. SHAMBUREK


By: _Steven J. Shamburek_
    Steven J. Shamburek

Enclosures as noted

Exhibit ___/___
_14_ of _14_