1  Traeger Machetanz, Esq.
   Thomas R. Krider, Esq.
2  OLES MORRISON RINKER & BAKER, LLP
   745 Fourth Avenue, Suite 502
3  Anchorage, AK  99501-2136
   Telephone:  (907) 258-0106
4  Telecopier:  (907) 258-5519

5
   Attorneys for Nugget Construction Co.,Inc.,
6  and USF&G, Defendants

7              IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF ALASKA AT ANCHORAGE
8
   UNITED STATES OF AMERICA for the      )
9  use of NORTH STAR TERMINAL &          )
   STEVEDORING COMPANY, d/b/a NORTHERN   )
   STEVEDORING & HANDLING, and NORTH     )  No. A98-009 CIV (HRH)
10 STAR TERMINAL & STEVEDORE COMPANY,    )
   d/b/a Northern Stevedoring &          )
11 Handling, on its own behalf,          )
                                         )
12              Plaintiffs,              )
           and                          )
13                                       )
   UNITED STATES OF AMERICA for the      )
14 use of SHORESIDE PETROLEUM, INC.,     )
   d/b/a Marathon Fuel Service, and      )
15 SHORESIDE PETROLEUM, INC., d/b/a      )
   Marathon Fuel Service, on its own     )
16 behalf,                               )  MEMORANDUM IN SUPPORT OF
                                         )  NUGGET CONSTRUCTION,
17              Intervening Plaintiffs,  )  INC.'S AND UNITED STATES
           and                          )  FIDELITY & GUARANTY
18                                       )  CO., INC.'S MOTION FOR
   METCO, INC.,                          )  SUMMARY JUDGMENT AGAINST
19                                       )  METCO, INC.
                Intervening Plaintiff,   )
20                                       )
           vs.                          )
21                                       )
   NUGGET CONSTRUCTION, INC.; SPENCER    )
22 ROCK PRODUCTS, INC.,; UNITED          )
   STATES FIDELITY AND GUARANTY          )
23 COMPANY; and ROBERT A. LAPORE,        )
                                         )
24              Defendants.              )
   ─────────────────────────────────────)
25

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

TABLE OF CONTENTS

Introduction ........................................................ 1

I. Statement of Facts

    A.  The contract between Nugget and Spencer Rock ................ 5

    B.  The Support Agreement between Nugget
        and Spencer Rock ......................................... 6

    C.  The contract between Spencer Rock and Metco ................ 8

    D.  The absence of interaction between Nugget and Metco ........ 9

    E.  Circumstances surrounding Spencer Rock's
        failure to pay Metco ..................................... 11

II.  Legal Argument

    A.  Summary judgment standard of review ...................... 14

    B.  Because there was no contract between
        Nugget and Metco, express or implied-in-fact,
        Metco's breach of contract claim must fail ............... 15

    C.  Because Nugget and Metco did not have any
        substantial interaction during the course
        of Metco's performance, and because Nugget
        get was not required to disclose the Support Agreement,
        Metco's promissory estoppel, detrimental
        reliance and misrepresentation and nondisclosure claims
        must fail ................................................ 19

        i.   Nugget never made an actual promise or
            affirmative act ..................................... 21

        ii.  There is no duty to disclose the
            Support Agreement ................................... 22

    D.  Nugget never owed Metco any duty of care,
        thus, Metco's negligence claims must fail ................ 26

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

E.  Metco is not entitled to any remedy under
    unjust enrichment and restitution, quantum
    meruit, equitable subordination or constructive
    trust because Nugget has not improperly
    intercepted funds due Metco or otherwise
    been unjustly enriched  ...................................32

F.  Nugget and Spencer Rock are distinct entities
    and Spencer Rock was never vested with any
    authority to act as Nugget's agent .........................35

G.  Punitive damages are not only inappropriate
    but, also, unallowable .....................................41

Conclusion ....................................................45

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco

Pursuant to Federal Rule of Civil Procedure 56, Defendant Nugget Construction, Inc. ("Nugget") respectfully moves for summary judgment on all state law claims and causes of action alleged by Intervening Plaintiff/Use-Plaintiff Metco, Inc. ("Metco") in its Amended Complaint filed September 22, 2005.[1] As Nugget demonstrates herein, there is no genuine issue as to any material fact and Nugget is entitled to summary judgment as a matter of law.

## Introduction

Following the Ninth Circuit's March 3, 2005 decision in the above-captioned matter denying summary judgment to all parties and remanding the matter for further proceedings, Metco amended its complaint to include not only its several allegations based on a "telescoping" of the relationship between Metco and Nugget under the Miller Act,[2] but also to include an exhausting number of claims under Alaska state law.  Metco was subsequently afforded considerable

[1] To the extent that Metco asserts state law claims against Nugget's surety, United States Fidelity & Guaranty Company ("USF&G"), USF&G also moves for summary judgment on all grounds raised by Nugget herein.

[2] In its amended complaint, Metco alleges that Nugget orchestrated a remarkable conspiracy involving Nugget, USF&G, Spencer Rock Products, Inc. ("Spencer Rock"), and Spencer Rock's bank for the express purpose of avoiding payments to Spencer Rock's vendors.  What makes this allegation even more remarkable is that Metco disregards the significant and established fact that, although Spencer Rock's material suppliers may have lost tens of thousands of dollars as a result of Spencer Rock's financial downfall, Nugget sustained losses in excess of $1.5 million as a result of its dealings with Spencer Rock.  Although not the subject of the instant motion, Nugget will show that Metco's allegations under the federal Miller Act are as baseless as its state law claims addressed herein.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 1 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

latitude to conduct additional discovery for the purpose of substantiating these allegations and developing its claims.

One need not reflect too long upon Metco's amended complaint to conclude that Metco's separate but largely overlapping state law claims were plead so that it could inflate its potential recovery from Nugget with a grossly disproportionate $1,000,000 punitive damages claim. Metco is certainly well aware that its punitive damages claim would not be permissible if Metco were proceeding under the federal Miller Act alone. Thus, to say that Metco's state law claims are untimely raised is a considerable understatement, as there is absolutely no reason why Metco could not have included these claims in its original complaint filed approximately eight years ago.

Why then were these claims not included as part of Metco's original complaint? The plain answer is that, at the time Metco filed its original complaint, Metco believed that there were no facts to substantiate such claims. Metco's inclusion of these state law claims can thus reflect only an opportunistic and last-ditch effort to have yet another (and much bigger) bite at the apple by continuing to reinvent its theory of recovery in the wake of adverse decisions from the Ninth Circuit.

The undisputed facts establish that: (i) Metco did not enter into a contract with Nugget; (ii) Metco always believed its contract was with Spencer Rock, and not Nugget; (iii) but for one insignificant conversation, Metco did not have any dealings, direct or indirect,

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 2 of 47

with Nugget during the course of Metco's performance; (iv) Metco never pursued payment from Nugget during the course of performance; and (v) Metco was never induced to perform by any act or statement of a Nugget employee or representative.   Nevertheless, Metco urges the Court to embrace its theories based on breach of contract, promissory estoppel, quasi-contract, agency, detrimental reliance, quantum meruit, misrepresentation and nondisclosure, negligence, equitable subordination, and constructive trust.[3]

The logical disconnect between the undisputed facts and Metco's state law claims begs the following questions:  How can Nugget be in breach of contract when there was no express contract between Nugget and Metco?  How can Nugget be held to an implied-in-fact contract when there was literally no interaction between Nugget and Metco during the course of Metco's performance but for a single insignificant conversation?  Similarly, how could Metco have relied upon an act or an alleged misrepresentation of Nugget, to Metco's detriment, if there were literally no substantial interactions between Metco and Nugget but for a single conversation?  Further, how could Nugget have been

[3] Metco's Amended Complaint also includes a bad faith claim that appears to be directed solely at USF&G.  Metco's Amended Complaint, ¶ 38.  To the extent that Metco's bad faith claim is directed at Nugget, such claim is completely without merit.  Nugget has every right to legally defend itself against claims that are baseless and allegations that are unfounded in the manner Nugget so chooses.  To date, the Ninth Circuit has confirmed the propriety of Nugget's position in this matter, when it found Spencer to be a supplier, a fact that Metco conveniently ignores.  Nugget's unwillingness to subject itself to further burden and expense under such circumstances is unequivocally within its legal right, and is not an act of bad faith.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 3 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

unjustly enriched in view of the undisputed fact that Nugget sustained

losses in excess of $1.5 million resulting from Nugget's contract with

Spencer Rock?

Even a cursory review of Metco's state law claims in full view of

the undisputed facts establish that these claims are both factually

and legally baseless.  To be sure, Metco's laundry list of state law

claims reflects its mulish insistence that Nugget should pay Metco the

money that Spencer Rock did not for Metco's work on the Project (as

well as over 27 times that amount in punitive damages) because the

Homer Spit Project was a federally-bonded job.  Metco remains

unwilling to accept the Ninth Circuit's September 21, 2001 decision

that firmly established that Metco's position was flatly wrong.  Metco

remains equally oblivious to the notion that its insistence in this

regard does not render its position any more credible, or any less

erroneous over time.  The alleged factual and legal substance behind

Metco's state law claims are belied by their conspicuous absence at

the outset of this litigation, as well as the undisputed facts to the

contrary that are discussed herein.  Accordingly, in the absence of

any genuine issue of material fact, Nugget is entitled to summary

judgment as a matter of law.

///

///

///

///

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 4 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

I.   STATEMENT OF FACTS[4]

A.   THE CONTRACT BETWEEN NUGGET AND SPENCER ROCK

1.   On or about September 28, 1996, the U.S. Corps of Engineers ("USCOE") awarded Nugget Contract DACW85-96-C-0020 to repair and extend the Homer Spit in Seward, Alaska (the "Project"). *See* Contract No. DACW85-96-C-0020, Lynn D. "Randy" Randolph Affidavit ("Randolph Aff."), April 20, 2006, Ex. 1, ¶ 2.  USF&G provided a payment bond on the Project. *See* Payment Bond 99-0120-50298-96-5, Randolph Aff., Ex. 2, ¶ 2.

2.   On January 15, 1997, Nugget entered into a Material Contract with Spencer Rock for the supply and transport of armor, toe and filter stone rock from the Spencer Quarry, located in Seward, Alaska, to a barge docked in Seward. *See* Material Contract, December 18, 1996, Randolph Aff., Ex. 3 ¶ 3.

3.   Between the Spencer Quarry and the Seward dock, the rock traveled in four distinct segments.  First, after blasting, rocks were gathered and loaded into trucks at the Spencer Quarry.  These trucks transported the rock from the Spencer Quarry to the Alaska Railroad Corporation ("ARRC") station, where the rock was loaded into ARRC rail cars.  This work was performed by Spencer Rock (which was later assisted by Nugget).  Second, the rock traveled by ARRC rail car to Seward, where it was unloaded from the rail cars onto a "siding" at

---

[4] The facts set forth herein are supported by the accompanying Affidavits of Lynn "Randy" Randolph, Nugget's Project Manager for this contract, and Thomas R. Krider.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 5 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

the ARRC rail yard in Seward.  Third, the rock was transported by truck from the siding at the ARRC rail yard in Seward to the Seward dock. This is the segment in which Metco performed its work.  Fourth, and finally, the rock was loaded by North Star into "skip boxes" and from the boxes at the Seward dock onto barges, which carried the rock to the Homer Spit.  *See* Randolph Aff., ¶ 3.

B.    THE SUPPORT AGREEMENT BETWEEN NUGGET AND SPENCER ROCK

4.    Spencer Rock commenced performance on or about January 15, 1997.  In April 1997, Nugget became concerned that Spencer Rock was not producing enough quantities of conforming rock for the Project. First, Nugget visited the Spencer Quarry and found large stockpiles of nonconforming rock.  Second, Spencer Rock's major pieces of equipment for operating the Spencer Quarry had been repossessed by Spencer Rock's bank.  In light of these developments, in early April 1997, Spencer Rock approached Nugget for assistance in carrying out Spencer Rock's duties under the Material Contract.  Spencer Rock and Nugget subsequently executed a Support Agreement on April 23, 1997.  *See* Support Agreement, April 23, 1997, Randolph Aff., Ex. 4, ¶ 4.  Per this agreement, the parties agreed that, in exchange for Nugget's support of Spencer Rock's work under the Material Contract, Nugget would recover from Spencer Rock, or "backcharge," the amounts owed to Nugget by Spencer Rock per the Material Contract.  *Id.*

5.    Nugget's support efforts to Spencer Rock were provided exclusively to Spencer Rock.  Nugget never offered or provided its

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 6 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

support services to Metco, Shoreside or North Star.  *See* Randolph

Aff., ¶ 6.

6.    During the third segment of work (transport of rock from

the railcar to the dockside), Nugget never provided support services,

in the way of manpower, equipment, trucks, loaders, direction or

otherwise, to Metco.  Further, Nugget's support services never

extended to the fourth segment, which involved the loading of rocks

from the skip boxes onto the barges.  Although Nugget personnel were

present to facilitate loading of rock from the skip boxes to the

barges, this would have occurred in the normal course even if the

Support Agreement had never been executed.  Metco never sought

Nugget's guidance, direction or assistance during the course of

Metco's performance.  *See id.*, ¶ 7.

7.    The total amount of rock that Spencer Rock was

contractually obligated to transport, and that was in fact transported

with Nugget's assistance, from the Spencer Quarry to the Nugget barges

in Seward was equal to ten barge loads.  *See id.*, ¶ 8.

8.    From May 8 through August 8, 1997, Nugget paid Spencer Rock

$197,184.66 for work performed under the Material Contract.  *See id.*,

¶ 9.

9.    Based on the total quantity of rock delivered for the

project at the rates and terms set forth in the Material Contract, the

total value of rock produced by Spencer Rock was $1,623,892.50.

Nugget's costs associated with rendering assistance to Spencer Rock

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 7 of 47

pursuant to the Support Agreement were $1,878,138.  In addition, as a direct result of Spencer Rock's failure to provide rock that conformed to the Material Contract, Nugget incurred additional expenses in excess of $1,213,380.  Thus, the total amount of costs and expenses that Nugget incurred resulting from its dealings with Spencer Rock exceeded the amount that Nugget agreed to pay Spencer Rock under the Material Contract by $1,664,811.  *See id.*, ¶ 10.

C.    THE CONTRACT BETWEEN SPENCER ROCK AND METCO

10.    In early May, 1997 Robert A. LaPore, co-owner of Spencer Rock, entered into a verbal contract with Frank Dieckgraeff, President of Metco, to transport rock from the ARRC siding to the skip boxes at the Seward dock.  *See* Krider Aff., Ex. 1, Deposition of Barbara Dieckgraeff, November 29, 2005 ("Dieckgraeff Dep."), p. 9, lines 19-25, p. 10, lines 1-9.

11.    Metco provided services under its contract with Spencer Rock between May 3, 1997 and June 26, 1997.  *See id.*, p. 10, lines 9-10, p. 30, lines 12-30.  Because Metco's offices were situated directly across from the railroad such that it could observe when rock was deposited onto the siding, Metco was "always aware" of when rock was ready for transport to the boxes at the Seward dock.  Metco was also instructed by Mr. LaPore or a Spencer Rock employee when rock was ready for transport from the siding to the Seward dock.  *See id.*, p. 14, lines 9-14.

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 8 of 47

12.   Several days after Metco commenced performance, LaPore requested that Metco provide oil, lubrication and maintenance services on Spencer Rock trucks and loaders that had transported rock from the siding to the Seward dock prior to Metco's engagement, and that continued to transport rock from the siding to the Seward dock during the same period that Metco was also transporting rock.  *See id.*, p. 13, lines 13-25.  Metco agreed, wanting to "offer Bob [LaPore] as much support as possible," because Metco "knew he had a deadline to meet." *Id.,* p. 14, lines 1-2.  Also at the request of Mr. LaPore or Spencer Rock employees, Metco agreed to provide truck drivers and loader operators to operate Spencer Rock trucks and loaders when Spencer Rock was unable to staff its trucks and loaders with Spencer Rock employees.  *See id.*, p. 14, lines 20-25, p. 15, lines 1-6.  This was provided on a time and materials basis.

D.   THE ABSENCE OF INTERACTION BETWEEN NUGGET AND METCO

13.   No representative of Nugget was present during the conversation or conversations in which Spencer Rock formed its verbal contract with Metco.  *See id.*, p. 11, lines 18-20, p. 13, lines 3-6. Nugget never made any oral or written promise to be contractually bound to Metco.  Moreover, Nugget never exhibited any conduct to manifest the intent to be contractually bound to Metco.  *See* Randolph Aff., ¶ 12.

14.   It has always been Metco's understanding that Metco entered into a contract with Spencer Rock, and not Nugget.  Further, it has

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 9 of 47

always been Metco's understanding that the services it provided under its contract with Spencer Rock were to Spencer Rock, and not Nugget. *See* Krider Aff., Ex. 1, Dieckgraeff Dep., p.10, lines 13-19, p.12, lines 20-25, p. 13, lines 1-3, p. 32, lines 5-13.

15.    During the course of Metco's performance, Frank Dieckgraeff had a conversation with L.D. "Randy" Randolph, then Project Manager for Nugget, most likely at the Seward dock, during which Randolph expressed his desire that Metco support Spencer Rock during the course of performance on the project. *See id.*, p. 11, lines 20-25, p. 12, lines 1-15. With the exception of this one conversation, there were no other communications, verbal, written, express, implied or otherwise, between any representative of Nugget and any representative of Metco during the course of Metco's performance on the Project. *See* Randolph Aff., ¶ 11.

16.    Neither Mr. Randolph nor any Nugget representative ever indicated to Metco that Nugget would cover Spencer Rock's outstanding debts to Metco. Further, there was never any express agreement between Nugget and Mr. LaPore that Mr. LaPore or Spencer Rock would act as Nugget's agent in the prosecution of Spencer Rock's work under the Material Contract. Moreover, there was never a manifestation on the part of Nugget that Spencer Rock may act on Nugget's account. *See id.*, ¶¶ 13, 14.

///

///

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 10 of 47

17.   Nugget's payments for work under the Material Contract, which included the work that Metco performed for Spencer Rock, were made exclusively to Spencer Rock and never to Metco.  *See id.*, ¶ 14.

E.   CIRCUMSTANCES SURROUNDING SPENCER ROCK'S FAILURE TO PAY METCO

18.   Generally, Metco prepared "invoices" at the end of each day that Metco provided services to Spencer Rock, and then forwarded these invoices the following day to Spencer Rock for payment.  Krider Aff. Ex. 1, Dieckgraeff Dep., p. 20, lines 13-24.  In addition, Metco also prepared and forwarded to Spencer Rock "statements," which consolidated days of work that appeared on the various invoices that were sent to Spencer Rock.  *Id.*, p. 19, lines 16-25, p. 20 lines 1-12.

19.   Spencer Rock's first payment to Metco for services performed by Metco under its verbal contract with Spencer Rock became due on June 15, 1997.  *See id.*, p. 21, lines 15-17.  On this same day, LaPore misinformed Metco representatives that Spencer Rock had not been paid by Nugget for services performed by Spencer Rock for work under the Material Contract, and that he would pay Metco "just as soon as he could."  *Id.*, p. 26, line 21.[5]  During this discussion, Mr. LaPore also complained to Metco about overtime charged to Spencer Rock for Metco's work under its contract with Spencer Rock.  *See id.*, p. 27, line 7.

//

---

[5] In fact, Nugget paid Mr. LaPore $147,184.66 on May 8, 1997 for the first two barge loads or rock.  *See* Randolph Aff., ¶ 8.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 11 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

20.    Following Metco's June 15, 1997 conversation with Mr. LaPore, Metco became concerned for the first time that Spencer Rock might not pay Metco for its work. *See id.*, p. 21, lines 15-17, p. 26, line 15. Nevertheless, Metco continued to perform services for Spencer Rock "[b]ecause it was a bonded job and [Metco was] sure [LaPore] would get paid." *Id.*, p. 28, lines 17-18. Metco also continued its performance during this period upon the belief that Metco was "covered by [Nugget's bond]" and that, "because it was a bonded job, [Metco] could get the payment from Nugget," in the event that Spencer Rock did not pay Metco. *Id.*, p. 33, line 22, p. 28, lines 20-21. Notably, Metco's continued performance was not based on any statements or conduct of Nugget representatives.

21.    Metco's last day of performance was on June 26, 1997. The following day, Ms. Dieckgraeff contacted Mr. Randolph, during which conversation Ms. Dieckgraeff discussed Spencer Rock's nonpayment to Metco. Following this conversation, Ms. Dieckgraeff faxed to Mr. Randolph the invoices for its work under Metco's contract with Spencer Rock that were outstanding and overdue. *See id.*, p. 21, lines 4-8, p. 29, lines 15-23. At no time during the conversation between Ms. Dieckgraeff and Mr. Randolph did Mr. Randolph indicate that Nugget would pay Metco for the services Metco performed under its contract with Spencer Rock. *See id.*, p. 31, lines 8-11. Further, prior to June 27, 1997, Metco had neither spoken with, nor provided invoices or statements to, any Nugget representative regarding Spencer Rock's

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 12 of 47

nonpayment to Metco.  *See id.*, p. 21, lines 9-17.  Metco's last day of performance under its contract with Spencer Rock was June 26, 1997.

22.  On June 30, 1997, Metco credited Spencer Rock $371.00 in overtime charges for Metco's work under its contract with Spencer Rock.  *See id*, p. 20, line 20; Krider Aff. Ex. 2, Metco's Discovery Responses, Nov. 14, 2005, Metco, Inc. Statement dated 12/31/97.  Metco credited Spencer Rock this overtime because Metco believed that such credit would ease Spencer Rock's ability to pay Metco.  *See* Krider Aff., Ex. 1, Dieckgraeff Dep., p. 18, lines 24-25.

23.  By letter dated July 31, 1997, Metco provided notice to Walter D. ("Doug") Wood, Administrative Contracting Officer, U.S. Army, that:  "Metco, Inc. was hired by Spencer Rock to help in Seward with unloading and stacking the rock from the rail and hauling rock to the barges.  This work went through May and June amounting to $31,508.56.  To date we have received no payment for this work."  Krider Aff., Ex. 1, Metco's Discovery Responses, Nov. 14, 2005, Letter from Barbara Dieckgraeff to Doug Wood, July 31, 1997, p. 44 of 50.

24.  Metco's December 31, 1997 statement to Spencer Rock indicates that the total amount due Metco is $33,068.27.  This amount includes the $371.00 credit to Spencer Rock for overtime, as well as six separate monthly "Finance Charges" totaling $1559.71 for the months of July 1997 through December 1997.  *See id.* Metco, Inc. Statement dated 12/31/97.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 13 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

25.    Spencer Rock has still not paid Metco any amounts due pursuant to the verbal agreement between Spencer Rock and Metco.  On May 8, 1997 Nugget paid Spencer Rock $147,184.66 for the first two barge loads of rock and, between May 8, 1997 and August 8, 1997, Nugget paid Spencer Rock an additional $50,000, totaling $197,184.66.

## II.    LEGAL ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure instructs that a motion for summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c). Federal summary judgment procedure requires the piercing through the pleadings and their adroit craftsmanship to reach the substance of the claim.  *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial.  *See id.*  Accordingly, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 14 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

B.   <u>BECAUSE THERE WAS NO CONTRACT BETWEEN NUGGET AND METCO, EXPRESS
     OR IMPLIED-IN-FACT, METCO'S BREACH OF CONTRACT CLAIM MUST FAIL</u>

Metco alleges that Nugget was aware or should have been aware that Metco "entered into a written contract and/or oral agreement with Spencer committing [Metco] to supply goods to or to perform services for the Homer Project," and that "Nugget breached the contract and/or agreement by repeatedly refusing to pay the undisputed legal consideration for the goods and/or services."  Metco's Amended Complaint, ¶ 26.

It is established law of the case that Metco "never entered into express contracts with Nugget."  *North Star Terminal & Stevedore Co. ex rel. v. Nugget Construction Inc., et al. v. Shoreside Petroleum Inc. ex rel; Metco, Inc.*, Slip Op. No. 02-35887 at 4 (9th Cir., March 3, 2005).  Thus, in the absence of an express contract, such contract must be implied-in-fact if Nugget is to be held in breach.

Under Alaska law,[6] an implied-in-fact contract requires all of the elements of an express contract and, significantly, an intent to be bound.  *See Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1140 (Alaska 1996).  An implied-in-fact contract "arises where the court finds from the surrounding facts and circumstances that the

---

[6] It bears noting that the legal elements necessary to establish the existence of a contract implied-in-fact under Alaska state law are distinct from the elements necessary to establish federal Miller Act liability under a "strawman" theory; significantly, even if Metco could substantiate its Miller Act claims, which it cannot, this fact alone would not indicate the existence of an implied-in-fact contract between Nugget and Metco without additional evidence of a meeting of the minds.  As discussed herein, Metco's implied-in-fact contract claim must fail because there is no such evidence.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 15 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

parties intended to make a contract but failed to articulate their promises and the court merely implies what it feels the parties intended." *Id.* at 1140. "[I]mplied-in-fact contracts are closely related to express contracts" whereby "each requires the parties to form an intent to enter into a contract." *Id.* at 1142; *see also Altman v. Alaska Truss & Mfg.*, 677 P.2d 1215, 1226 (Alaska 1983) ("an implied-in-fact contract only exists where there is mutual assent between the parties").

The material and undisputed facts establish that there was never any objective manifestation of an intent to be bound, either on the part of Nugget or Metco. Nugget never made any oral or written promise to be bound contractually to Metco. Moreover, Nugget never exhibited any conduct to manifest the intent to be bound to Metco. Nugget was not present at the contractual negotiations between Spencer Rock and Mr. LaPore. But for a single conversation between Mr. Randolph and Mr. Dieckgraeff, there was no interaction or communication, direct or indirect, between Nugget and Metco during the course of Metco's performance. Nugget never provided support services, in the way of manpower, equipment, trucks, loaders, direction or otherwise, to Spencer Rock or Metco for work in the third segment, or during the transport of rock between the siding at the Seward rail yard and the skip boxes at the Seward dock.

Equally clear, Metco never sought Nugget's guidance, direction or assistance during the course of Metco's performance. All direction

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 16 of 47

that Metco received over the course of performance was provided by Mr. LaPore or a representative of Spencer Rock. Metco assisted Spencer Rock, not Nugget, by providing maintenance and operators for Spencer Rock equipment. Further, during the course of Metco's performance, Metco submitted its invoices to Spencer Rock, not Nugget, which is consistent with the conversations that transpired during the course of performance regarding Metco's payment between Metco and Spencer Rock, and not between Metco and Nugget. Metco did not inform Nugget of Spencer Rock's non-payment until June 27, 1997, when Ms. Dieckgraeff faxed Mr. Randolph the invoices that Metco sent to Spencer Rock for services through June 11, 1997. Before June 27, 1997, Metco did not communicate with anyone from Nugget about Spencer Rock's nonpayment. *See* Krider Aff., Ex. 1, Dieckgraeff deposition, p. 20, line 25; p. 21, lines 1-17. By the time of this communication, Metco had concluded its performance for Spencer Rock.

Further, during Metco's course of performance, neither Spencer Rock nor Nugget expressly or impliedly obligated Nugget to pay for any of Metco's services that were invoiced to Spencer Rock. *See id.*, Dieckgraeff deposition, p. 31, lines 8-14, lines 22-25. Even after Metco informed Nugget of Spencer Rock's non-payment, Nugget never indicated to Metco that it would cover Spencer Rock's outstanding debts to Metco.

These objective indicia are wholly consistent with Metco's subjective understanding that it executed a contract with Spencer Rock

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 17 of 47

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

and not Nugget.  Significantly, these indicia are consistent with

Metco's belief that Nugget is liable to Metco, not because it entered

into a contract with Nugget but, because the Homer Spit Project was a

"federally-bonded job":

> Q.    Okay.  During the time of performance, did anyone from
>        Spencer – from Spencer tell you that Nugget would pay
>        your bills?
>
> A.    No.
>
> Q.    But you were comfortable that you would ultimately be
>        paid because this was a bonded project?
>
> A.    Yes, we were.  It was Nugget's barge and they were a
>        federally-bonded job.
>
> Q.    And during this period of time until you last provided
>        services on the 26th [of June 1997], you believed you
>        had a contract with Spencer?
>
> A.    Yes.
>
> Q.    And you had no contract negotiations with Nugget?
>
> A.    No, we didn't contract with Nugget.  We contracted
>        with Spencer, but it was Nugget's barge and it was
>        ultimately going to be their rock.

*Id.,* Dieckgraeff dep., p. 31, lines 22-25, p. 32, lines 1-13; *see also*

*id.* p. 10, lines 14-15 (Q. . . . "[D]id you believe your contract was

with Spencer Rock?  A.  "We believed our contract was with Spencer

Rock, but we expected [LaPore] to get paid by Nugget and Nugget would

be responsible."); p.12, lines 20-23 ("Q.  At the point your husband

///

///

///

///

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 18 of 47

and Bob [LaPore] finished these discussions, did your husband or did

Metco believe it had a contract with Spencer?  A.  Yes.").[7]

A balanced and objective consideration of the facts and

circumstances surrounding Metco's negotiation and performance of its

contract with Spencer Rock establishes that there was never any

contract between Metco and Nugget, express or implied-in-fact.

Metco's empty and after-the-fact allegations to the contrary do not

affect this conclusion.  Consequently, because there was no contract

between Metco and Nugget, Nugget is entitled to summary judgment as a

matter of law that Nugget never breached any alleged express or

implied-in-fact contract with Metco.

C.    Because Nugget and Metco did not have any substantial interaction
      during the course of Metco's performance, and because Nugget was
      not required to disclose the Support Agreement, Metco's
      promissory estoppel, detrimental reliance and misrepresentation
      and nondisclosure claims must fail

Although identified as three separate causes of action, Metco

raises essentially the same allegations to support its promissory

estoppel, detrimental reliance, and misrepresentation and

---

[7] In her recent deposition, Ms. Dieckgraeff articulated what is, and what has
been since the inception of Metco's lawsuit, the essence of Metco's theory of
liability against Nugget:  Because Metco provided labor and services to a
federally bonded project, Metco can seek payment from the bond surety, USF&G,
and Nugget as the prime contractor.  *See* Krider Aff., Ex. 1, Dieckgraeff
dep., p. 28, lines 15-23, p. 34, lines 7-15.  If Metco were entitled to any
recovery, which it is not, such recovery would be under the federal Miller
Act, and not under the Alaska state law contract, tort, or equitable theories
alleged in its Amended Complaint.  However, because the Ninth Circuit found
Spencer Rock to be a supplier, which meant Metco's assumption about the
bond's coverage was in error, Metco has now attempted to create claims that
simply do not exist.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 19 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

nondisclosure claims.  In support of its promissory estoppel claim,

Metco alleges that, "[d]espite [Nugget's] statements that its

inducements were carefully presented to [Metco] to avoid any

obligations, the inducements and surrounding circumstances reasonably

caused [Metco] to provide goods or perform services."  Metco's Amended

Complaint, ¶ 27.  Similarly, in support of its detrimental reliance

theory, Metco asserts:

> During the prosecution of the Homer Project, [Metco] was
> aware that the Project was a government project of the Army
> Corps of Engineers and that Nugget posted a bond to provide
> payment for any unpaid goods or services.  [Metco] placed
> substantial reliance on this understanding as an inducement
> for [Metco] to continue performing.  [Metco] also was aware
> that individuals who had worked for or were working for
> Spencer also had worked for or were working with Nugget.
> [Metco] detrimentally relied and did reasonably rely to its
> detriment on these and other facts and circumstances to
> furnish valuable goods or services in the prosecution of
> the work on the Homer Project.

*Id.*, ¶ 30.  Finally, Metco's detrimental reliance claim resembles

strongly its misrepresentation and nondisclosure claim:  "By such

words, conduct and/or omissions, [Nugget] misled [Metco], the Federal

Government and other companies similarly situated to [Metco],

regarding the true relationships between Spencer and Nugget, the

security of the payment bond, and Nugget's dominance and control over

Spencer and LaPore and rechanneling payments to itself for its own

benefit."  *Id.*, ¶ 33.  The common thread running through each of these

causes of action is the assertion that Metco's performance was induced

upon reliance of some act or omission on the part of Nugget.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 20 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

i.  Nugget never made an actual promise or affirmative act

Under Alaska law, there are four requirements for a promissory estoppel claim: "(1) the action induced amounts to a substantial change of position; (2) it was either actually foreseen or reasonably foreseeable by the promissor; (3) an actual promise was made and itself induced the action or forbearance in reliance thereon; and (4) enforcement is necessary in the interest of justice."  *Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1142 (Alaska 1996). Significantly, Alaska courts have long held that promissory estoppel requires that "an actual promise was made."  *Brady v. State*, 965 P.2d 1, 10 (Alaska 1998).

Similarly, detrimental reliance can only occur, legally speaking, when the party seeking to invoke the doctrine of equitable estoppel has relied reasonably on the representation of the adverse party.  *See State Dept. of Revenue v. Northern TV, Inc.*, 670 P.2d 367, 370 (Alaska 1983).  A party claiming equitable estoppel must prove four elements: "(1) assertion of a position by conduct or word; (2) reasonable reliance thereon; (3) resulting prejudice; and (4) the estoppel will be enforced only to the extent that justice so requires."  *Ogar v. City of Haines,* 51 P.3d 333, 335 (Alaska 2002).

Metco's promissory estoppel and detrimental reliance claims suffer from numerous and considerable shortcomings; most significant, Nugget never made an "actual promise" to Metco, much less an actual promise that "itself induced the action or forbearance in reliance

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 21 of 47

thereon" on the part of Metco. *Reeves*, 56 P.3d at 670; *see Brady*, 965 P.2d at 10. Similarly, Nugget never affirmatively asserted "a position by conduct or word." *Ogar*, 51 P.3d at 335. But for one insignificant conversation, there was literally no interaction of significance between Metco and Nugget either before or during the course of Metco's performance. Metco therefore cannot claim to have been induced to rely upon any affirmative act or statement regarding either (i) Metco's decision to enter into its agreement with Spencer Rock, or (ii) Metco's continued performance under its contract with Spencer Rock. For this reason alone, Metco's promissory estoppel and detrimental reliance claims must fail.

    ii.   <u>There is no duty to disclose the Support Agreement</u>

In the absence of any affirmative act, the only conceivable fact on which Metco could rely in support of its remaining misrepresentation and nondisclosure claims[8] is that it detrimentally

---

[8] In addition to fraudulent and negligent misrepresentation, Metco also makes a claim for "innocent" misrepresentation. Innocent representation occurs when "one who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently." *Bevins v. Ballard,* 655 P.2d 757, 762 (Alaska 1982) (citing section 552C(1) of the Restatement (Second) of Torts (1977)). In addition to the reasons discussed herein why Metco's misrepresentation claim must fail, because there is no "sale rental or exchange transaction," Metco's innocent representation claim is inapposite. *See also Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148, 1153-54 (Alaska 1984) (relying on *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E. 2d 443 (Ill. 1982), which held that a food processor could not recovery against a manufacturer of a defective grain storage tank for economic loss under the tort theories of strict liability, or negligence or innocent misrepresentation).

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 22 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

relied upon, and was induced to act by, Nugget's nondisclosure of its

Support Agreement with Spencer Rock.   These remaining theories of

recovery thus turn on one single and dispositive question of law:   Was

Nugget legally required to disclose its Support Agreement with Spencer

Rock to Metco?

        If the answer is yes, then there is a genuine issue of

material fact regarding the nature of the relationship between Nugget

and Spencer Rock and whether Metco would have relied upon the

information in the Support Agreement in connection with the

prosecution of its work under its contract with Spencer Rock.   If the

answer is no, then it does not matter whether Metco would have changed

its position with the knowledge of information in the Support

Agreement because Metco was not entitled to such information in the

first instance.

        Negligent misrepresentation arises when: (1) a party

accused of misrepresentation made a statement in the course of his

business, profession, or employment, or in any other transaction in

which he has pecuniary interest, (2) the representation supplied false

information, (3) there was justifiable reliance on the false

information and (4) the accused party failed to exercise reasonable

care or competence in obtaining or communicating information.   *See*

*Reeves v. Alyeska Pipeline Serv. Co.*, 56 P.3d 660, 670-671 (Alaska

2002).   Further, "[n]ot every casual response, not every idle word,

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 23 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

gives rise to a cause of action," and, significantly, liability arises only where there is a duty, if one speaks at all, to give correct information. *Howarth v. Pfeifer,* 443 P.2d 39, 42 (Alaska 1968) (citing *International Prods. Co. v. Erie R.R.,* 155 N.E. 662, 663, *cert. denied*, 275 U.S. 527 (1927)).

Significantly, "[t]o prevail in an action for fraudulent or negligent misrepresentation the plaintiff must prove the existence of either an affirmative misrepresentation or an omission where there is a duty to disclose." *Hagans, Brown & Gibbs v. First Nat. Bank of Anchorage*, 810 P.2d 1015, 1019 (Alaska 1991). The duty to disclose arises when facts are concealed or unlikely to be discovered because of the special relationship between the parties, the course of their dealings, or the nature of the fact itself. *See Matthews v. Kincaid*, 746 P.2d 470, 471-472 (Alaska 1987). Nondisclosure similarly requires a failure to disclose information when there is an affirmative duty to do so. *Turnbull v. LaRose*, 702 P.2d 1331, 1334 (Alaska 1985) (citing factors for disclosure of information for parties in a business transaction as set forth in Restatement (Second) of Torts, § 551 (1977)).

As a threshold matter, Metco fails to recognize that the Support Agreement is a legal and binding agreement between Nugget and Spencer Rock. There is no rule or maxim, no statute or regulation, no principle or guideline, under either Alaska state law or federal law, that would preclude Spencer Rock from accepting Nugget's assistance in

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 24 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

completing Spencer Rock's work under its contract with Nugget and, in

full fair consideration therefor, allowing Nugget to backcharge

Spencer Rock for the time, labor and materials associated with that

assistance.  Indeed, even if Nugget and Spencer Rock had not entered

into the Support Agreement, Nugget would be well within its legal

right to withhold from Spencer Rock payments for work within the scope

of the Material Contract that Nugget had to perform itself:

> A general contractor may be justified in refusing to make a
> progress payment to the subcontractor when the latter has
> failed to substantially perform his contractual obligations
> entitling him to the payment.  *See* 3A Corbin on Contracts
> § 708 (1960); *see also id.* § 692 at 273; Restatement
> (Second) of Contracts § 237, comment d (1981).  It follows
> that the general contractor is entitled to withhold from a
> progress payment a valid backcharge for work within the
> scope of the subcontract which the general contractor has
> had to perform itself.

*Howard S. Lease Constr. Co. & Assoc. v. Holly*, 725 P.2d 712, 715-716

(Alaska 1986).  Metco may have raised a host of inapposite legal

theories and baseless factual allegations in its amended complaint,

but Metco has never alleged that the Support Agreement was illegal or

otherwise void, nor can it as a matter of law.

Second, Metco has not identified any statutory or common

law duty under Alaska state or federal law that contracts such as the

Support Agreement must be disclosed or published for public review.

As Nugget has stated time and again, it entered into the Support

Agreement with Spencer Rock to ensure that its performance on its

contract with the Federal Government would not suffer from anticipated

difficulties in Spencer Rock's performance of its contract with

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 25 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Nugget.  There was no other purpose.  Regardless, even if Metco

disputes this fact, whether Metco may have altered its course of

performance of its contract with Spencer Rock, if it had knowledge of

the Support Agreement, is a moot point.  Nugget was not bound by law

or by duty to disclose the Support Agreement to anyone;[9] therefore,

Metco may not assert that it detrimentally relied upon Nugget's

nondisclosure of the Support Agreement, under any theory.

Consequently, in the absence of any genuine issue of material fact,

Nugget is entitled to summary judgment as a matter of law on Metco's

promissory estoppel, detrimental reliance, and misrepresentation and

nondisclosure claims.[10]

 D.    Nugget never owed Metco any duty of care, thus, Metco's
       negligence claims must fail

 Metco's negligence claim appears pulled out of thin air:  "Under

the circumstances, [Nugget] owed [Metco] . . . a duty of care,

---

[9] Indeed, if Nugget had disclosed to Spencer Rock's material suppliers the
substance of the Support Agreement prior to date Spencer Rock executed its
contract with Metco, Nugget may well have exposed itself to suit by Spencer
Rock on a theory of tortious interference with contract or economic
relations.  Please see Section II.D, *infra*, for a further explanation of why
Nugget did not owe Metco any duty that would have compelled the disclosure of
the Support Agreement.

[10] In addition to the foregoing, it does not matter that Metco was aware "that
the Project was a government project of the Army Corps of Engineers and that
Nugget posted a bond to provide payment for any unpaid goods or services," or
that "[Metco] placed substantial reliance on this understanding as an
inducement for [Metco] to continue performing."  Metco's Amended Complaint, ¶
30.  Despite its insistence to the contrary, the Ninth Circuit previously
established that Metco, a second-tier vendor, was in error in its
understanding and may not recover against Nugget simply because the Homer
Spit Project was a "bonded job."  Thus, Metco's awareness of Nugget's posting
of the bond does nothing to support Metco's claims.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 26 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

including a statutory duty.  Nugget breached the duty which breach legally caused harm and damages to [Metco].  Metco is entitled to recover such damages, plus interest and attorney's fees, from [Nugget]."  Metco's Amended Complaint, ¶ 34.  Metco does not identify the nature of the supposed duty of care that was allegedly breached by Nugget or any statute that might support such a theory.

Under Alaska law, "[t]he initial step in deciding whether an action for negligence can be maintained is to consider whether a duty exists."  *Mesiar v. Heckman*, 964 P.2d 445, 448 (Alaska 1998).  "Whether an actionable duty exists is a question of law and public policy."  *Id.*  "'Duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."  *Id.* (quoting *City of Kotzebue v. McLean*, 702 P.2d 1309, 1313 (Alaska 1985) and William L. Prosser, *The Law of Torts* § 53, at 325 (4th ed. 1971)).  Alaska courts will "first define the class of cases to which [its] rulings apply, then weigh the factors which support and oppose the imposition of liability in that class of cases."  *Id.*  "In the first phase of duty analysis . . . duty is at heart a question of policy centering on the basic relationship between the parties rather than the nature of their conduct on a given occasion.  Particular conduct becomes important only when a duty is imposed; the conduct then helps to determine the applicable standard of care."  *Id.* (citing W. Page Keeton et al., *Prosser and Keeton on*

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 27 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

1   *the Law of Torts* § 53, at 356 (5th ed. 1984)).  Notably, in

2   circumstances in which a negligence claim is predicated upon an

3   inaction or omission, there must be "some definite relation between

4   the parties, of such a character that social policy justifies the

5   imposition of a duty to act," or "a special relationship creating that

6   duty," for negligence liability to attach.  *Ballum v. Weinrick's,*

7   *Inc.*, 633 P.2d 272, 273, 276 (Alaska 1981) (citing W. Prosser, *The Law*

8   *of Torts*, § 56 at 339 (4th ed. 1971)).

9        If the court can identify a class of cases to which its ruling

10  would apply, only then need it turn to the second phase of its

11  analysis, which involves a weighing of the factors that support and

12  oppose the imposition of liability:

13       [1] The foreseeability of harm to the plaintiff, [2] the
         degree of certainty that the plaintiff suffered injury, [3]
14       the closeness of the connection between the defendant's
         conduct and the injury suffered, [4] the moral blame
15       attached to the defendant's conduct, [5] the policy of
         preventing future harm, [6] the extent of the burden to the
16       defendant and consequences to the community of imposing a
         duty to exercise care with resulting liability for breach,
17       and [7] the availability, cost and prevalence of insurance
         for the risk involved.

18

19  *Kooly v. State*, 958 P.2d 1106, 1108 (Alaska 1998); *see also D.S.W. v.*

20  *Fairbanks North Star Borough School District*, 628 P.2d 554, 555

21  (Alaska 1981).

22       Here, the relationship between Nugget and Metco is one of prime

23  contractor and second-tier vendor that witnessed no substantial

24  interaction during the course of performance.  The only connection

25  between Nugget and Metco is that both parties worked on the Homer Spit

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 28 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

Project, a fact that was not brought about by Nugget, and that was entirely dependent upon Mr. LaPore's decision to approach Metco for assistance on the project and Metco's decision to accept Mr. LaPore's invitation.  Further, there is no privity of contract between Nugget and Metco.

This is not the sort of relationship, much less a special relationship, that can define a class of cases to which a court could apply a ruling or, specifically, impose a duty under a negligence theory.  Such relationships (to the extent that the word "relationship" applies to the limited interaction between Nugget and Metco) are not bound by any duty under statute or common law, or as a matter of public policy, that gives rise to a cause of action in negligence.  Metco has never identified any such duty.  In fact, the Alaska Supreme Court has specifically held that a lack of privity will preclude recovery for pure economic loss upon a negligence theory, which follows the longstanding and majority rule in most jurisdictions.  *See Smith v. Tyonek Timber, Inc., H&S Constr., Inc.*, 680 P.2d 1148, 1153-1154 (Alaska 1984); *see also Moorman Manufacturing Co.* v. *National Tank Co.*, 435 N.E.2d 443 (Ill. 1982) (cited in *Smith*).[11]  The Court should not indulge Metco's request to impose upon

---

[11] *Smith* involved a claim by a subcontractor, Smith, against a concrete supplier, Tyonek, that was selected by the prime contractor, H&S.  The court held, *inter alia*, that "Smith's lack of privity with Tyonek precludes his recovery for pure economic loss based on a negligence theory."  *Smith*, 680 P.2d at 1154.  The same reasoning applies here:  Because Metco is not in privity with Nugget, Metco should be precluded from recovering from Nugget for pure economic loss based upon a theory of negligence.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 29 of 47

the attenuated relationship between a prime contractor and second-tier vendor not in privity with one another a duty that has never before been applied under Alaska (or any) law. *Cf. State v. Osborne*, 607 P.2d 369, 371 (Alaska 1980) (holding that homeowner did not owe any duty to carpenter hired by homeowner's builder when builder failed to compensate carpenter for work on homeowner's project).

Even if there were privity between Nugget and Metco, recovery of purely economic losses on a theory of negligence would require a showing that "the defendants knew or reasonably should have foreseen both that particular plaintiffs or an identifiable class of plaintiffs were at risk and that ascertainable economic damages would ensue from the conduct." *Mattingly v. Sheldon Jackson College*, 743 P.2d 356, 360 (Alaska 1987). Here, there is an utter absence of "conduct" attributable to Nugget that could support the imposition of a duty; Metco may complain that the circumstances surrounding the Support Agreement constitute actionable conduct but, as the Alaska courts have expressly recognized, there is nothing improper about providing support to contractor and then backcharging that contractor for the value of the support. *See Howard S. Lease Constr. Co. & Assoc. v. Holly*, 725 P.2d 712, 715-716 (Alaska 1986). Moreover, there is absolutely no way that Nugget could have foreseen that Mr. LaPore would fail to pay Spencer Rock's suppliers, including Metco.

It is for these same reasons that the "tortuous walk" through the often-cited factors set forth in *Kooly* would be an exercise in

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 30 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

futility, assuming a court determined that the relationship between a Nugget and Metco was sufficiently ascertainable as to apply a ruling. *See Smith*, 680 P.2d at 1153 (describing attempt to apply factors similar to those set forth in *Kooly* in case in which parties lacked privity as "futile"); *Kooly*, 958 P.2d at 1109-1111; *Mattingly*, 743 P.2d at 360 (emphasizing "the role of foreseeability as it relates to duty owed and to proximate cause" in adopting rule permitting recovery for purely economic losses).  To be sure, attempting to analyze the [1] foreseeability and [2] certainty of Metco's losses would have required an understanding of the motivations underlying Mr. LaPore's decision to breach his agreement with Metco.  In the same vein, analyzing:  [3] the closeness of the connection between Nugget's conduct and Metco's injury when there was neither a closeness nor a connection; [4] the moral blame attached to Nugget's conduct, when there was no conduct on which to assess moral blame; [5] the policy of preventing future harm when the future harm cannot be readily ascertained; [6] the burden to Nugget and the consequences to the Alaska contracting community by imposing a duty never before known in the history of contract or tort law, or; [7] the availability, cost and prevalence of insurance for the risk involved when there has never been in fact, and likely never been contemplated, a need for such insurance, would be a futile exercise indeed.  *See Kooly*, 958 P.2d at 1108

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 31 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

In light of the foregoing, Metco's bald assertion that Nugget owed Metco a duty of care is not enough to make it so. Moreover, Metco has also failed to cite any federal or state law that imposes a statutory duty between a prime contractor and a second-tier vendor of a supplier to one another. In fact, as the Ninth Circuit held in its first decision, the statutory law is to the contrary. In the absence of any genuine issue of material fact, Nugget is entitled to summary judgment dismissal of Metco's negligence claims as a matter of law.

E.    Metco is not entitled to any remedy under unjust enrichment and restitution, quantum meruit, equitable subordination or constructive trust because Nugget has not improperly intercepted funds due Metco or otherwise been unjustly enriched

Metco also alleges a number of equitable causes of action, including unjust enrichment and restitution, quantum meruit, equitable subordination and constructive trust. At the center of these claims is the allegation that, through the Support Agreement, Nugget improperly exercised its influence over Spencer Rock to intercept and unjustly retain funds that are due Metco.

The concepts of quasi-contract, unjust enrichment, contract implied-in-law, and quantum meruit are very similar and interrelated; courts generally treat actions brought upon these theories as essentially the same. *See Alaska Sales and Serv., Inc. v. Millet*, 735 P.2d 743, 746, fn. 6 (Alaska 1987). The three elements for a quasi-contract or quantum-meruit claim are as follows: 1) a benefit was conferred upon the defendant by the plaintiff; 2) an appreciation by the defendant of such benefit; and 3) acceptance and retention by the

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 32 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof. *See Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1143 (Alaska 1996). The courts are in accord in stressing that the most significant requirement for recovery in quasi-contract is that the enrichment to the defendant must be unjust; that is, the defendant must receive a true windfall or "something for nothing." *Alaska Sales and Serv., Inc.*, 735 P.2d at 746.

A constructive trust will be ordered to "compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. When a court finds that a defendant is the holder of a property interest which he retains by reason of unjust, unconscionable, or unlawful means, it takes such interest from the defendant and vests it in the wronged party. *See McKnight v. Rice, Hoppner Brown & Brunner*, 678 P.2d 1330, 1335 (Alaska 1984). Similarly, outside of the standard bankruptcy context in which it is typically applied, the doctrine of equitable subordination will apply in order to "undo or offset any inequity in the claim position of a creditor that would produce injustice or unfairness to other creditors." *Nerox Power Systems, Inc. v. M-B Contracting Co., Inc.*, 54 P.3d 791, 795 (Alaska 2002) (citations omitted).

Here, the undisputed facts establish that Nugget paid Spencer Rock $197,184.66 and that Nugget sustained losses in excess of $1.5 million in connection with its dealings with Spencer Rock. This is

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 33 of 47

not a situation in which Nugget received a windfall or retained

something for nothing, or, specifically, improperly retained money

that was due Spencer Rock, which in turn precluded Spencer Rock from

discharging its obligation to Metco.  Quite to the contrary, Nugget

fully and fairly compensated Spencer Rock per the Material Contract as

modified by the Support Agreement and, for reasons that are not yet

clear, Spencer Rock then blatantly lied to Metco by withholding

Metco's payment on the basis that Spencer Rock was never paid by

Nugget.  There is no principle in equity that would permit Metco to

recover money paid by the United States to Nugget that was rightfully

earned on the ground that Spencer Rock breached its contract with

Metco.  If anyone has been unjustly enriched, it is Mr. LaPore and

Spencer Rock, whose conduct resulted in the nonpayment of Spencer

Rock's suppliers, as well a breach of its contract with Nugget that

resulted in Nugget's loss of over $1.5 million dollars.

Further, it is well-established under Alaska law that a party to

an express contract may not seek recovery on extra-contractual

theories such as quantum meruit or implied contract.  *See Mitford v.*

*de Lasala*, 666 P.2d 1000, 1006 n.1 (Alaska 1983); *Fairbanks North Star*

*Borough v. Kandik Const., Inc. & Assoc.*, 795 P.2d 793, 799 (Alaska

1990), *opinion vacated in part on rehearing on other grounds*, 823 P.2d

632 (Alaska 1991).  Nevertheless, Metco unabashedly seeks to avoid or

ignore this rule by attempting to recover from Nugget the very same

quantum that is covered by Metco's contract with Spencer Rock.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 34 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

The conclusion that Metco cannot recover under its equitable theories remains true even if Metco should attempt to create a genuine issue of material fact regarding Nugget's intentions behind the execution of the Support Agreement.  Regardless of the intent that Metco ascribes to Nugget, the fact would remain that Nugget has not been unjustly enriched, and that Spencer Rock was compensated by Nugget per the Material Contract, as modified by the Support Agreement.  To the extent that Metco would contend that Nugget received value for Metco's delivery of rock across the third segment, such value was wholly eliminated by Spencer Rock's failure to perform and breach of its contract with Nugget and, consequently, the losses that Nugget sustained therefrom.  Accordingly, because there is no genuine issue of material fact Nugget is entitled to summary judgment on Metco's equitable claims.

F.   **Nugget and Spencer Rock are distinct entities and Spencer Rock was never vested with any authority to act as Nugget's agent**

In support of its agency claim, Metco alleges:

Nugget through its actions and inactions took over complete control over the Homer Project and in effect directed all the activities of Spencer and LaPore.  Nugget exercised complete control and dominion with respect to Spencer and LaPore's operations and affairs.  Nugget through the support arrangement and other actions indebted Spencer and LaPore to Nugget in an amount that overwhelmed and undermined Spencer and LaPore.  Nugget intercepted and rechanneled funds to itself otherwise owed Spencer and LaPore and became Spencer's and LaPore's principal, whether disclosed or undisclosed to [Metco].  Nugget thus became liable to [Metco] for the acts of its agents, Spencer and LaPore, especially those of which Nugget took advantage such as Spencer's and LaPore's arrangements with [Metco] for the provision of goods and services in connection with

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 35 of 47

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

> the Homer Project. The contractual arrangements and
> obligations of the agents Spencer and LaPore became the
> arrangements and obligations of the principal Nugget for
> which Nugget is legally responsible.

Metco's Amended Complaint, ¶ 29.  Not only do these factual

allegations fail to support a claim of agency between Nugget and

Spencer Rock on their face; these allegations also evidence Metco's

fundamental misunderstanding of the governing law regarding the

relationship between a principal and its agent.

"Under Alaska law, an agency relation exists only if there has

been a manifestation of the principal to the agent that the agent may

act on his account and consent by the agent so to act."  *Harris v.*

*Keys*, 948 P.2d 460, 464 (Alaska 1997) (citations omitted) (relying

upon, *inter alia*, Restatement (Second) of Agency § 15).

Significantly, "the Restatement's requirement that an agent act 'on

the principal's account' should be interpreted as requiring action

under the principal's control, rather than merely action which serves

the principal's purposes."  *Id.* at 465.

Further, "in order for an agency relationship to exist, the agent

must have 'a power to alter the legal relations between the principal

and third persons.'"  *Manes v. Coats*, 941 P.2d 120, 123-24 (Alaska

1997) (quoting Restatement (Second) of Agency § 12).  "The principal,

in turn, must have 'the right to control the conduct of the agent with

respect to matters entrusted to him.'"  *Id.* at 124 (quoting

Restatement (Second) of Agency § 14).  "If an agency relationship does

exist, the 'extent of the duties of the agent to the principal are

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 36 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

determined by the terms of the agreement between the parties,
interpreted in light of the circumstances under which it is made.'"
*Id.* at 124 (quoting Restatement (Second) of Agency § 376).

The existence of an agency relationship may be proved by
circumstantial evidence that shows a course of dealing between two
parties; however, "when an agency relationship is to be proven by
circumstantial evidence, the principal must be shown to have consented
to the agency since one cannot be the agent of another except by
consent of the latter." *A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309
N.W.2d 285, 290 (Minn. 1981). As between an agent and a supplier,
"[o]ne who contracts to acquire property from a third person and
convey it to another is the agent of the other only if it is agreed
that he is to act primarily for the benefit of the other and not for
himself. *Id.* at 291 (quoting Restatement (Second) of Agency § 14K
(1958)). Factors indicating that one is a supplier, rather than an
agent, are: "(1) That he is to receive a fixed price for the property
irrespective of the price paid by him. This is most important. (2)
That he acts in his own name and receives the title to the property
which he thereafter is to transfer. (3) That he has an independent
business in buying and selling similar property." *Id.* at 291-292
(quoting Restatement (Second) of Agency § 14K, Comment a (1958)).

The undisputed facts establish that there was never a
manifestation on the part of Nugget that Spencer Rock may act on
Nugget's account. Certainly, there was never any express agreement

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 37 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106  Fax: (907) 258-5519

between Nugget and LaPore that LaPore or Spencer Rock would act as Nugget's agent in the prosecution of Spencer Rock's work under the Material Contract.  In fact, the Material Contract, as modified by the Support Agreement, on which Metco so extensively relies, details only a legal, arms-length contractual relationship between two distinct corporate entities and nowhere indicates that Spencer Rock or Mr. LaPore may act on behalf of Nugget or otherwise empowers Spencer Rock or LaPore to act on Nugget's behalf.

Significantly, Mr. Lapore was always at the helm of Spencer Rock's operations and exclusively responsible for Spencer Rock's finances, including during the period in which Nugget was assisting Spencer Rock under the Support Agreement.  Nugget's payments for work under the Material Contract, which would have included a portion of the work that Metco performed for Spencer Rock, were made exclusively to Spencer Rock and never to Metco.  Even when Metco approached Nugget at the conclusion of Metco's performance regarding Spencer Rock's nonpayment, Nugget never indicated that Nugget would be responsible for Spencer Rock's debts to Metco.  Mr. Lapore alone decided the companies, including Metco, with which he would enter into contracts, not Nugget.  Mr. Lapore alone decided the means by which Spencer Rock would be financed to facilitate Spencer Rock's performance, not Nugget.  Mr. Lapore alone was the sole beneficiary of Metco's assistance to Spencer Rock – by way of maintenance services and operators for Spencer Rock equipment and writing off all of the

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 38 of 47

incurred overtime charges chargeable to Spencer Rock – during the course of Metco's performance, not Nugget.  And perhaps most significant, Mr. Lapore alone determined that he would retain the $197,184.66 that Nugget paid Spencer Rock rather than disburse from those funds the amount that Spencer Rock owed Metco for Metco's work under its contract with Spencer Rock.  Based on the guidance in the Restatement and the relevant caselaw, these facts and circumstances describe a relationship between Nugget and Spencer Rock as buyer-supplier, and not principal-agent.  *See, e.g., M.S.P. Indus., Inc. v. Diversified Mortgage Servs.*, Inc., 777 P.2d 237 (Colo. App. 1989) (finding absence of agency relationship under circumstances similar to the relationship between Nugget and Spencer Rock).

This is consistent with the clear record, which establishes that Metco's own understanding of the relationship between Nugget and Spencer Rock was not one of principal and agent.  Metco's own admission in its July 31, 1997, letter to the U.S. Corps of Engineers acknowledges that it was hired by Spencer Rock, not Nugget, to assist Spencer Rock in handling and transporting rock materials.  Metco never asserted in that letter that Mr. LaPore or Spencer Rock acted on behalf of Nugget in hiring Metco.  Indeed, Metco does not seek payment directly from Nugget; Metco instead advises that Spencer Rock cannot pay Metco until Nugget pays Spencer Rock.  This is consistent with Metco's conduct during performance, during which Metco dealt directly and only with Mr. LaPore and Spencer Rock, and never Nugget.  *See*

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 39 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

Krider Aff., Ex. 1, Dieckgraeff Dep., p. 10, lines 13-15, p. 11, lines 18-20, p. 12, lines 16-23, p. 13, lines 3-6, p. 32, lines 5-13.

Even in the absence of the foregoing, which unequivocally establishes that Spencer Rock was never Nugget's agent, Metco would still not be able to recover from Nugget on a theory of agency because, under Alaska law, an undisclosed principal is not liable for the acts of its agent. [12]  *See Jensen v. Alaska Valuation Serv., Inc.*, 688 P.2d 161, 162-63 (Alaska 1984).  Although an agent will not liable if the principal is disclosed to a third party, when the principal is not disclosed, liability rests on the agent, not the principal.  *See Vienna v. Scott Wetzel Servs., Inc.*, 740 P.2d 447, 452 (Alaska 1987).  Thus, to the extent that Metco's agency claim is predicated upon Nugget's or Mr. LaPore's nondisclosure of the Support Agreement, such claim would be squarely foreclosed by Metco's contemporaneous and accurate understanding that Spencer Rock and LaPore were never agents of Nugget, and that (as one would expect) no one informed Metco to the contrary.

In sum, there was never an agency relationship between Nugget and Spencer Rock, which is consistent not only with the facts and circumstances surrounding the relationship between Nugget and Spencer Rock, but also Metco's understanding of its relationship to Nugget and

---

[12] This conclusion is entirely consistent with the Court's prior findings in this case.  See *United States ex rel. North Star Terminal & Stevedore Co., et al. v. Nugget Construction, Inc., et al.*, Slip Op. No. A98-0009-CV (filed Aug. 30, 2002), at 24, n. 38.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 40 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Spencer Rock.  Beyond its empty allegations, Metco has not alleged a single fact to support its claim that Nugget vested Spencer Rock or LaPore with the necessary authority to act as Nugget's agent, or that LaPore ceded control or responsibility of Spencer Rock to Nugget in such a way as to sustain a claim that Spencer Rock became Nugget's agent.  Notably, the Support Agreement memorialized an arrangement between Nugget and Spencer Rock in which the parties in effect agreed to modify the Material Contract such that Nugget would be fairly compensated for its assistance to Metco, nothing more.

Accordingly, in the absence of any genuine issue of material fact, Nugget is entitled to summary judgment as a matter of law that neither Spencer Rock nor LaPore acted as Nugget's agent.

G.    Punitive damages are not only inappropriate but, also, unallowable

Under Alaska law, punitive damages serve two purposes:  "to punish the wrongdoer and to deter the wrongdoer and others like him from repeating the offensive act." *State Farm Mut. Auto. Ins. Co. v. Weiford,* 831 P.2d 1264, 1266 (Alaska 1992) (citation omitted).  The availability of such damages "turn[s] on the wrongdoer's motive, state of mind, and degree of culpability." *Alyeska Pipeline Serv. Co. v. O'Kelley,* 645 P.2d 767, 774 (Alaska 1982).  Punitive damages are a harsh remedy "not favored in law.  They are to be allowed only with caution and within narrow limits." *State Farm,* 831 P.2d at 1266; *Alyeska Pipeline Serv. Co. v. Beadles,* 731 P.2d 572, 574 (Alaska 1987).

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 41 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

A plaintiff seeking punitive damages must "prove by clear and convincing evidence that the defendant's conduct was outrageous, such as acts done with malice, bad motive, or reckless indifference to the interests of another." *Lee Houston & Assocs. v. Racine,* 806 P.2d 848, 856 (Alaska 1991).  A showing of actual malice is not required, *Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 46 (Alaska 1979), *cert. denied,* 454 U.S. 894, (1981), *overruled on other grounds, Dura Corp. v. Harned,* 703 P.2d 396 (Alaska 1985)); however, the plaintiff must establish, at a minimum, that the defendant's conduct "amounted to reckless indifference to the rights of others, and conscious action in deliberate disregard of [those rights]." *State v. Haley,* 687 P.2d 305, 320 (Alaska 1984) (quoting *Sturm,* 594 P.2d at 47); *see also State Farm,* 831 P.2d at 1266 ("Malice may be inferred if the acts exhibit 'a callous disregard for the rights of others.'") (quoting *Alyeska Pipeline Serv. Co.,* 645 P.2d at 774);  *Hayes v. Xerox Corp.,* 718 P.2d 929, 934-35 (Alaska 1986) ("Conscious action in 'deliberate disregard of [others] ... may provide the necessary state of mind to justify punitive damages.'") (citation omitted).

Even if it is proven that wrongdoing was intentionally committed, this mere fact alone is not enough to sustain an award of punitive damages.  *See Alyeska Pipeline Serv. Co.,* 645 P.2d at 773-74.  "By their very nature, such damages turn on the wrongdoer's motive, state of mind, and degree of culpability, rather than the particular tort committed." *Id.* (citing K. Redden, Punitive Damages § 4.2 (1980)).

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 42 of 47

Whether malice is present is a question of fact, and the trier of fact is given broad discretion to grant or withhold punitive damages. *See Haskins v. Shelden*, 558 P.2d 487, 494 (Alaska 1976); *Schafer v. Schnabel*, 494 P.2d 802, 805 (Alaska 1972). "But where there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, the trial court need not submit the punitive damages issue to the jury. Indeed, submitting the issue to the jury in such a situation may constitute reversible error." *Alyeska Pipeline Serv. Co.*, 645 P.2d at 774.

Metco boldly alleges that it is entitled to $1,000,000 in punitive damages – an amount staggeringly disproportionate to Metco's prayer for $36,785.27 in actual damages – from "each of the defendants," and "especially Nugget." Metco's Amended Complaint, ¶ 39. Yet, Metco has not offered any fact that would "prove by clear and convincing evidence that [Nugget's] conduct was outrageous, such as acts done with malice, bad motive, or reckless indifference to the interests of another." *Lee Houston & Assocs.,* 806 P.2d at 856. Nugget entered into an arms-length agreement with Spencer Rock, the purpose and terms of which are clear from the face of the document, and then conducted itself consistent with that agreement. Even if Metco takes issue with this fact, the testimony of Metco's own corporate designee belies the sort of outrageous or malicious conduct alleged by Metco in its Amended Complaint:

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 43 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Q.   If Nugget, in fact, paid LaPore for the rock, do you
     believe they should have to pay twice for that rock?

A.   Well, they should have – if Nugget did pay LaPore,
     which Randy told me they did not, but if they had paid
     LaPore, then they should have insisted on getting
     something from LaPore saying he paid his bills.  He
     didn't.

Q.   You don't believe that he did that?

A.   I don't think he got the money.

Q.   Okay.  If he got the money, would that change your
     view towards Nugget?

A.   Not really, because it was Nugget's responsibility to
     make sure the bills were paid.  They were the big guy
     and they had to make sure that all this stuff was
     handled in a kosher way.

Q.   Do you have any other reasons why you believe Nugget
     acted improperly in this entire process?

A.   That says it all, the fact that they did not follow
     through with anything and that they were aware of it.

Krider Aff., Ex. 1, Dieckgraeff Dep., p. 36, lines 8-25, p. 37, line

1.  This exchange demonstrates that the essence of Metco's claim

against Nugget lies in Metco's belief that it was Nugget's

responsibility to ensure that Spencer Rock paid Metco, and not that

Nugget orchestrated a complex conspiracy to avoid liability to Spencer

Rock's suppliers.

       As previously discussed, Metco's belief in this regard was and is

directly linked to its erroneous understanding that Nugget should be

liable to Metco because the Homer Spit project was a bonded job.

There is no factual allegation, much less clear and convincing

evidence, of outrageous conduct, or conduct recklessly indifferent to

Metco's interests.  Rather, there is only the unfounded belief that it

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 44 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

was "Nugget's responsibility to make sure the bills were paid." *Id*. In fact and at law, Nugget bears no such responsibility; the discharge of Spencer Rock's debts to Metco is a responsibility that Spencer Rock bears alone.

## Conclusion

Metco is certainly within its rights to pursue payment for the work it performed on the Project. Metco refuses to acknowledge, however, that it should not be pointing its finger in Nugget's direction; rather it should be pointing at Mr. LaPore and Spencer Rock. The undisputed facts demonstrate that Metco never relied to its detriment on any act or omission of Nugget in entering into and performing its contract with Spencer Rock, as well as that Nugget sits similarly situated to Metco, in that Nugget also sustained significant financial losses as a result of its dealings with Spencer Rock.

Metco may have once occupied a sympathetic position, but this position has since been overshadowed by Metco's overtly opportunistic conduct in these proceedings. There can be only one reason why Metco's current state law claims were not raised back in 1998, which is that Metco knew then, as it knows now, that such claims were groundless. The testimony of Metco's corporate designee, as well as Metco's recent discovery responses, tell the same story: despite the Ninth Circuit's prior ruling, Metco nevertheless clutches to the belief that Nugget is liable to Metco simply because the Homer Spit Project was a bonded job. Rather than accept the law of the case and

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 45 of 47

redirect its efforts toward more constructive ends, Metco instead

alleges unsupported facts on which to posit inapposite theories, while

also attempting to grossly inflate its recovery with allegations of

outrageous conduct and reckless indifference that have no place in

these proceedings whatsoever.

Metco has had its day in court and lost when Spencer was

determined to be a supplier.  Metco may have another opportunity to

prove yet another lately-conceived and alternative theory of recovery

under the federal Miller Act.  Metco's state law claims, however, are

clearly not burdened by any genuine issues of material fact; as such,

for the reasons stated herein, Nugget is entitled to summary judgment

as a matter of law.

Dated:  April 24, 2006              OLES MORRISON RINKER & BAKER LLP
                                    Attorneys for Nugget Construction,
                                    Inc., and United States
                                    Fidelity and Guaranty Co.


                                    By: s/Thomas R. Krider
                                        Thomas R. Krider
                                        krider@oles.com
                                        Washington Bar No. 29490
                                        745 West 4th Avenue, Suite 502
                                        Anchorage, AK 99501
                                        Phone: (907) 258-0106
                                        Fax:   (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 46 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

CERTIFICATE OF SERVICE

I hereby certify that on this 24th
day of April, 2006, a true and correct
copy of the foregoing was served

 electronically, via ECF on:

Michael W. Sewright, Esq.
mws@bpk.com
Burr, Pease & Kurtz
810 N Street
Anchorage, AK  99501

Steven J. Shamburek, Esq.
shamburek@gci.net
Law Office of Steven J. Shamburek
425 G Street, Suite 630
Anchorage, AK  99501-5872

Paul Stockler, Esq.
paulstockler@aol.com
1309 West 16th Avenue
Anchorage, AK  99501

Herbert A. Viergutz, Esq.
barmar@gci.net
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501

 and by U.S. Mail on:

C. Patrick Stoll, Esq.
Herrig Vogt & Stoll LLP
4210 Douglas Bay Blvd., Suite 100
Granite Bay, CA 95746-5902

OLES MORRISON RINKER & BAKER LLP


By:   s/Thomas R. Krider


P JAD Memo in Support of MSJ Metco State Law 99310.0002


*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction,
Inc.'s Motion for Summary Judgment Against Metco-- Page 47 of 47

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519