Traeger Machetanz, Esq.
Thomas R. Krider, Esq.
OLES MORRISON RINKER & BAKER, LLP
745 Fourth Avenue, Suite 502
Anchorage, AK  99501-2136
Telephone:  (907) 258-0106
Telecopier:  (907) 258-5519

Attorneys for Nugget Construction Co.,Inc.,
and USF&G, Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

UNITED STATES OF AMERICA for the      )
use of NORTH STAR TERMINAL &          )
STEVEDORE COMPANY, d/b/a NORTHERN     )
STEVEDORING & HANDLING, and NORTH     )   No. A98-009 CIV (HRH)
STAR TERMINAL & STEVEDORE COMPANY,    )
d/b/a Northern Stevedoring &          )
Handling, on its own behalf,          )
                                      )
              Plaintiffs,             )
         and                          )
                                      )
UNITED STATES OF AMERICA for the      )
use of SHORESIDE PETROLEUM, INC.,     )
d/b/a Marathon Fuel Service, and      )
SHORESIDE PETROLEUM, INC., d/b/a      )
Marathon Fuel Service, on its own     )
behalf,                               )   MEMORANDUM IN SUPPORT OF
                                      )   NUGGET CONSTRUCTION,
              Intervening Plaintiffs, )   INC.'S AND UNITED STATES
         and                          )   FIDELITY & GUARANTY
                                      )   CO., INC.'S MOTION FOR
METCO, INC.,                          )   SUMMARY JUDGMENT AGAINST
                                      )   SHORESIDE PETROLEUM, INC.
              Intervening Plaintiff,  )
                                      )
         vs.                          )
                                      )
NUGGET CONSTRUCTION, INC.; SPENCER    )
ROCK PRODUCTS, INC.,; UNITED          )
STATES FIDELITY AND GUARANTY          )
COMPANY; and ROBERT A. LAPORE,        )
                                      )
              Defendants.             )
_____)

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

1

2

TABLE OF CONTENTS

3

Introduction ...................................................... 1

4

I. Statement of Facts

5

    A.  The contract between Nugget and Spencer Rock ............... 7

6

    B.  The Support Agreement between Nugget
        and Spencer Rock ........................................ 8

7

8

    C. The contract between Spencer Rock and Shoreside ........... 10

9

    D.  Circumstances surrounding Spencer Rock's
        failure to pay Shoreside ................................ 11

10

11

    E.  Shoreside's understanding of the relationship
        between Nugget and Spencer Rock ......................... 14

12

II.  Legal Argument

13

    A.  Summary judgment standard of review ...................... 16

14

    B.  Because there was no contract between
        Nugget and Shoreside, express or implied-in-fact,
        Shoreside's breach of contract claim must fail ............ 17

15

16

    C.  Because Nugget and Shoreside did not have
        any substantial interaction during the
        course of Shoreside's performance, and because

17

        Nugget was not required to disclose the Support Agreement,
        Shoreside's promissory estoppel,

18

        detrimental reliance and misrepresentation and nondisclosure

19

        claims must fail ........................................ 21

20

        i.   Nugget never made an actual promise or
            affirmative act ..................................... 22

21

        ii. There is no duty to disclose the
           Support Agreement ................................... 24

22

23

24

25

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

D. Nugget never owed Shoreside any duty of care, thus, Shoreside's negligence claims must fail .............. 29

E. Shoreside is not entitled to any remedy under unjust enrichment and restitution, quantum meruit, equitable subordination or constructive trust because Nugget has not improperly intercepted funds due Shoreside or otherwise been unjustly enriched .................................. 35

F. Nugget and Spencer Rock are distinct entities and Spencer Rock was never vested with any authority to act as Nugget's agent ........................ 38

G. Punitive damages are not only inappropriate but, also, unallowable .................................. 44

Conclusion .................................................... 48

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside

Pursuant to Federal Rule of Civil Procedure 56, Defendant Nugget Construction, Inc. ("Nugget") respectfully moves for summary judgment on all state law claims and causes of action alleged by Intervening Plaintiff/Use-Plaintiff Shoreside Petroleum, Inc. ("Shoreside") in its Amended Complaint filed September 22, 2005.[1] As Nugget demonstrates herein, there is no genuine issue as to any material fact and Nugget is entitled to summary judgment as a matter of law.

## Introduction

Following the Ninth Circuit's March 3, 2005 decision in the above-captioned matter denying summary judgment to all parties and remanding the matter for further proceedings, Shoreside amended its complaint to include not only its several allegations based on a "telescoping" of the relationship between Shoreside and Nugget under the Miller Act,[2] but also to include an exhausting number of claims under Alaska state law.  Shoreside was subsequently afforded

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106  Fax: (907) 258-5519

---

[1] To the extent that Shoreside asserts state law claims against Nugget's surety, United States Fidelity & Guaranty Company ("USF&G"), USF&G also moves for summary judgment on all grounds raised by Nugget herein.

[2] In its amended complaint, Shoreside alleges that Nugget orchestrated a remarkable conspiracy involving Nugget, USF&G, Spencer Rock Products, Inc. ("Spencer Rock"), and Spencer Rock's bank for the express purpose of avoiding payments to Spencer Rock's vendors.  What makes this allegation even more remarkable is that Shoreside disregards the significant and established fact that, although Spencer Rock's material suppliers may have lost tens of thousands of dollars as a result of Spencer Rock's financial downfall, Nugget sustained losses in excess of $1.5 million as a result of its dealings with Spencer Rock.  Although not the subject of the instant motion, Nugget will show that Shoreside's allegations under the federal Miller Act are as baseless as its state law claims addressed herein.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary Judgment Against Shoreside-- Page 1 of 49

considerable latitude to conduct additional discovery for the purpose of substantiating these allegations and developing its claims.

One need not reflect too long upon Shoreside's amended complaint to conclude that Shoreside's separate but largely overlapping state law claims were plead so that it could inflate its potential recovery from Nugget with a grossly disproportionate $1,000,000 punitive damages claim.[3]  Shoreside is certainly well aware that its punitive damages claim would not be permissible if Shoreside were proceeding under the federal Miller Act alone.  Thus, to say that Shoreside's state law claims are untimely raised is a considerable understatement, as there is absolutely no reason why Shoreside could not have included these claims in its original complaint filed approximately eight years ago.

Why then were these claims not included as part of Shoreside's original complaint?  The plain answer is that, at the time Shoreside filed its original complaint, Shoreside believed that there were no facts to substantiate such claims.  Shoreside's inclusion of these state law claims can thus reflect only an opportunistic and last-ditch effort to have yet another (and much bigger) bite at the apple by continuing to reinvent its theory of recovery in the wake of adverse decisions from the Ninth Circuit.

---

[3] Given this Court's prior ruling that no fees are available under the Miller Act claims, Shoreside's demand for punitive damages is nothing more than a thinly veiled attempt ot recover the large fees it has undoubtedly incurred hoping to find Nugget responsible for its claims.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary Judgment Against Shoreside-- Page 2 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

Here, the record could not be more clear that the damages Shoreside now attempts to recover from Nugget were caused solely by Shoreside's decision to permit Spencer Rock to vastly exceed its credit limit during a period in which Spencer Rock's account was also seriously delinquent.  Shoreside's decision in this regard was based upon its misunderstanding that: (i) Spencer Rock was a subcontractor of Nugget, as opposed to a material supplier, and (ii) if Spencer Rock did not pay its debts to Shoreside, Nugget or USF&G would be liable to Shoreside because the Homer Spit project was a bonded project.  As discussed herein, Shoreside's own words, in contemporaneous correspondence, establish that Shoreside always understood that its contractual relationship was with Spencer Rock, and that Spencer Rock had a contractual relationship with Nugget and, further, that Shoreside's "granting Spencer Rock such a sizeable credit limit" had nothing to do with any alleged reliance upon the actions or assertions of Nugget.  Rather, the record shows that Shoreside put itself in a precarious financial position with Spencer Rock based on the erroneous belief that any debt with Spencer Rock could be recovered from Nugget or USF&G because the Homer Spit Project was a bonded project.

Specifically, Shoreside does not dispute that:  (i) in the winter of 1996-1997, Shoreside entered into an agreement with Spencer Rock to provide fuel, oil and lubrications services to Spencer Rock; (ii) the damages now sought from Nugget in excess of $53,501 were for services that were personally ordered by Robert A. LaPore, President of Spencer

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 3 of 49

Rock, exclusively on behalf of Spencer Rock; (iii) Shoreside provided services directly to Spencer Rock and not Nugget, for which Shoreside invoiced Spencer Rock, and not Nugget; (iv) Shoreside always believed that its contract with Spencer Rock, and not Nugget, a belief which is confirmed in contemporaneous, as well as subsequent, Shoreside documentation, and; (v) Shoreside continued service to Spencer Rock, despite an account past due and in excess of its credit limit, based on Shoreside's erroneous belief that it would be covered by Nugget's bond, and not for any other reason involving reliance upon Nugget's actions or inactions throughout the period between the winter of 1996-1997 and June 26, 1997, when Shoreside discontinued service to Spencer Rock.

Despite these facts, Shoreside continues to insist, beyond the bounds of logic and common sense, and in contravention of the established law of the case, that it is nonetheless entitled to recovery from Nugget for amounts that Spencer Rock failed to pay to Shoreside under a contract between Shoreside and Spencer Rock, based on theories of breach of contract, promissory estoppel, quasi-contract, agency, detrimental reliance, quantum meruit, misrepresentation and nondisclosure, negligence, equitable

///

///

///

///

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 4 of 49

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

subordination, and constructive trust.[4]

Perhaps more so than its companion plaintiffs Metco, Inc. and North Star, Shoreside's amended complaint reflects an overt and unapologetically distorted revision of history. Indeed, how can Nugget be in breach of contract when Shoreside acknowledges that there was no express contract between Nugget and Shoreside? How can Nugget be held to an implied-in-fact contract when Shoreside itself acknowledges that there was a clear demarcation between the end of its relationship with Spencer Rock under which all of Shoreside's damages were incurred, and the commencement of a relationship in which it provided services directly to Nugget, for which Shoreside admits it was fully and fairly compensated? How can Shoreside honestly argue that its observation of Nugget's activities at the Spencer Quarry was the reason behind its decision to allow Spencer Rock to so vastly exceed its credit limit when the undisputed facts show that Nugget expressly and previously advised Shoreside of problems with Spencer Rock's performance? Similarly, how can Shoreside credibly contend that it would not have permitted Spencer Rock to exceed its credit

---

[4] Shoreside's Amended Complaint also includes a bad faith claim that appears to be directed solely at USF&G. Shoreside's Amended Complaint, ¶ 38. To the extent that Shoreside's bad faith claim is directed at Nugget, such claim is completely without merit. Nugget has every right to legally defend itself against claims that are baseless and allegations that are unfounded in the manner Nugget so chooses. To date, the Ninth Circuit has confirmed the propriety of Nugget's position in this matter, when it found Spencer to be a supplier, a fact that Shoreside conveniently ignores. Nugget's unwillingness to subject itself to further burden and expense under such circumstances is unequivocally within its legal right, and is not an act of bad faith.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 5 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

limit if it had known about the Support Agreement, when Shoreside specifically indicated in its own correspondence that this obviously risky decision was predicated solely upon its misunderstanding that, even if Spencer Rock did not pay, Nugget was obligated to pay because the Homer Spit project was a bonded project? Finally, how could Nugget have been unjustly enriched in view of the undisputed fact that Nugget sustained losses in excess of $1.5 million resulting from Nugget's contract with Spencer Rock?

Even a cursory review of Shoreside's state law claims in full view of the undisputed facts establish that these claims are both factually and legally baseless. To be sure, Shoreside's laundry list of state law claims reflects its mulish insistence that Nugget should pay Shoreside the money that Spencer Rock did not for Shoreside's work on the Project (as well as over 27 times that amount in punitive damages) because the Homer Spit Project was a federally-bonded project. Shoreside remains unwilling to accept the Ninth Circuit's September 21, 2001 decision that firmly established that Shoreside's position was flatly wrong. Shoreside also remains equally oblivious to the notion that its insistence in this regard does not render its position any more credible, or any less erroneous, over time. The alleged factual and legal substance behind Shoreside's state law claims are belied by their conspicuous absence at the outset of this litigation, as well as the undisputed facts to the contrary that are discussed herein. Accordingly, in the absence of any genuine issue of

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 6 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106  Fax: (907) 258-5519

material fact, Nugget is entitled to summary judgment as a matter of law.

I.    STATEMENT OF FACTS[5]

A.    <u>THE CONTRACT BETWEEN NUGGET AND SPENCER ROCK</u>

1.    On or about September 28, 1996, the U.S. Corps of Engineers ("USCOE") awarded Nugget Contract DACW85-96-C-0020 to repair and extend the Homer Spit in Seward, Alaska (the "Project"). *See* Contract No. DACW85-96-C-0020, Lynn D. "Randy" Randolph Affidavit, April 20, 2006, ("Randolph Aff."), Ex. 1, ¶ 2.  USF&G provided a payment bond on the Project. *See* Payment Bond 99-0120-50298-96-5, Randolph Aff., Ex. 2, ¶ 2.

2.    On January 15, 1997, Nugget entered into a Material Contract with Spencer Rock for the supply and transport of armor, toe and filter stone rock from the Spencer Quarry, located in Seward, Alaska, to a barge docked in Seward.  *See* Material Contract, December 18, 1996, Randolph Aff., Ex. 3, ¶ 3.

3.    Between the Spencer Quarry and the Seward dock, the rock traveled in four distinct segments.  First, after blasting, rocks were gathered and loaded into trucks at the Spencer Quarry.  These trucks transported the rock from the Spencer Quarry to the Alaska Railroad Corporation ("ARRC") station, where the rock was loaded into ARRC rail cars.  This work was performed by Spencer Rock (which was later assisted by Nugget).  Second, the rock traveled by ARRC rail car to

[5] The facts set forth herein are supported by the accompanying Affidavits of Lynn D. "Randy" Randolph, Nugget's Project Manager for this contract, and Thomas R. Krider.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary Judgment Against Shoreside-- Page 7 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Seward, where it was unloaded from the rail cars onto a "siding" at the ARRC rail yard in Seward.  Third, the rock was transported by truck from the siding at the ARRC rail yard in Seward to the Seward dock.  Fourth, and finally, the rock was loaded by North Star into "skip boxes" and from the boxes at the Seward dock onto barges, which carried the rock to the Homer Spit.  *See* Randolph Aff., ¶ 3.  Between February 1997 and June 26, 1997 Shoreside provided fuel and lubrication services to Spencer Rock in connection with these efforts. *See* Krider Aff., Ex. 1., Deposition of Doug Lechner, Dec. 2, 2005 ("2005 Lechner Dep."), p. 7, lines 18-22, p. 49, lines 6-9.

B.    THE SUPPORT AGREEMENT BETWEEN NUGGET AND SPENCER ROCK

4.    Spencer Rock commenced performance on or about January 15, 1997.  In April 1997, Nugget became concerned that Spencer Rock was not producing enough quantities of conforming rock for the Project. First, Nugget visited the Spencer Quarry and found large stockpiles of nonconforming rock.  Second, Spencer Rock's major pieces of equipment for operating the Spencer Quarry had been repossessed by Spencer Rock's bank.  In light of these developments, in early April 1997, Spencer Rock approached Nugget for assistance in carrying out Spencer Rock's duties under the Material Contract.  Spencer Rock and Nugget subsequently executed a Support Agreement on April 23, 1997.  *See* Support Agreement, April 23, 1997, Randolph Aff., Ex. 4, ¶ 4.  Per this agreement, the parties agreed that, in exchange for Nugget's support of Spencer Rock's work under the Material Contract, Nugget would recover from Spencer Rock, or "backcharge," the amounts owed to

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 8 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Nugget by Spencer Rock per the Material Contract; it thus memorialized an arrangement between Nugget and Spencer Rock in which the parties in effect agreed to modify the Material Contract such that Nugget would be fairly compensated for its assistance to Shoreside, nothing more. *Id*.

5.     Nugget's support efforts to Spencer Rock were provided exclusively to Spencer Rock. Nugget never offered or provided its support services to Shoreside, Metco or North Star. *See* Randolph Aff., ¶ 5.

6.     The total amount of rock that Spencer Rock was contractually obligated to transport, and that was in fact transported with Nugget's assistance, from the Spencer Quarry to the Nugget barges in Seward was equal to ten barge loads. *See id.*, ¶ 6.

7.     Between May 8 through August 8, 1997, Nugget paid Spencer Rock $197,184.66 for work performed under the Material Contract. *See id.*, ¶ 7.

8.     Based on the total quantity of rock delivered for the project at the rates and terms set forth in the Material Contract, the total value of rock produced by Spencer Rock was $1,623,892.50. Nugget's costs associated with rendering assistance to Spencer Rock pursuant to the Support Agreement were $1,878,138. In addition, as a direct result of Spencer Rock's failure to provide rock that conformed to the Material Contract, Nugget incurred additional expenses in excess of $1,213,380. Thus, the total amount of costs and expenses that Nugget incurred resulting from its dealings with Spencer Rock

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 9 of 49

exceeded the amount that Nugget agreed to pay Spencer Rock under the Material Contract by $1,664,811.  *See id.*, ¶ 8.

C.   THE CONTRACT BETWEEN SPENCER ROCK AND SHORESIDE

9.   In the winter of 1996-1997, pursuant to one or more conversations between Doug Lechner, then Vice President of Marketing for Shoreside, and Robert A. LaPore, then President of Spencer Rock, Shoreside entered into a contract with Spencer Rock to supply fuel, oil and lubrication services to Spencer Rock for the Homer Spit Project.  *See* Krider Aff., Ex. 1 2005 Lechner Dep., p. 16, lines 5-10.

10.   In connection with the contract between Shoreside and Spencer Rock, Shoreside delivered three diesel fuel cars to the Spencer Quarry at the personal request of Mr. LaPore, and for the exclusive use, of Spencer Rock.  *See id.*, p. 26, lines 14-22.  The first fuel car was filled and ready for shipment to the Spencer Quarry on February 4, 1997; the second fuel car was filled and ready for shipment on April 8, 1997, and the third on May, 21, 1997.  *See id.*, p. 28, lines 24-25, p. 29, lines 1-4; Affidavit of Doug Lechner, Feb. 18, 1999, ("1999 Lechner Aff.") ¶ 5, attached as Ex. 6 to 2005 Lechner Dep.  Within ten days of being filled and prepared for shipment, each of these three fuel cars was delivered to the Spencer Quarry.  *See* Krider Aff., Ex. 1., 2005 Lechner Dep., p. 29, lines 10-14.

11.   In addition to the delivery of these three fuel cars to the Spencer Quarry, Shoreside also provided related fuel, oil and lubrication services to Spencer Rock.  For these services, Spencer

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 10 of 49

Rock would take delivery from a location in either Seward or Anchorage. *See id.*, p. 23, lines 4-9.

12.   Spencer Rock purchased services from Shoreside pursuant to a credit agreement between Spencer Rock and Shoreside that was executed on April 25, 1995. *See* Krider Aff. Ex. 1, Marathon Fuel Service Credit Application, attached as Ex. 1 to 2005 Lechner Dep. Spencer Rock's credit limit per its credit agreement with Shoreside was $20,000. *See id.*, 2005 Lechner Dep., p. 35, line 24.   Prior to its contract with Shoreside for work on the Homer Spit Project, Spencer Rock had purchased and paid for at least several thousand dollars in fuel and/or related services under this credit agreement with Shoreside. *See id.*, 2005 Lechner Dep., p. 11, lines 12-21.

D.    CIRCUMSTANCES SURROUNDING SPENCER ROCK'S FAILURE TO PAY SHORESIDE

13.   In connection with the three fuel cars of diesel fuel ordered by Spencer Rock, "[i]mmediately upon completion of each individual rail tank car billing, a copy of the invoice was faxed directly to Spencer Rock Product's office."  Further "[a] statement which itemized all rail tank car deliveries of diesel fuel and any other items purchased were mailed every month to Spencer Rock Product's office."  Krider Aff. Ex. 1, 1999 Lechner Aff., ¶¶ 6, 7, attached as Ex. 6 to 2005 Lechner Dep.  This is consistent with Shoreside's general invoicing procedure, which "is to invoice the customer from the first of the month through the 31st of the month. And at the 1st of the following month . . . send out a statement to the customer for full payment."  *Id.*, 2005 Lechner Dep., p. 14, lines 4-

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 11 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

24.  In accordance with this practice, Shoreside sent to Spencer Rock an invoice dated April 8, 1998 in the amount of $21,503 for the second fuel car, which was followed by a statement dated May 1, 1997, that consolidated all services provided by Shoreside to Spencer Rock during the month of April, which Spencer Rock was required to pay by May 31, 1997.  *See* Krider Aff., Ex. 1, Marathon Fuel Service Statement and Invoices, attached as Exhibits, 1, 3 to 2005 Lechner Dep.

14.  Shoreside's February 4, 1997 invoice in the amount of $24,028.73, for the first of the three fuel cars that was delivered to the Spencer Quarry, was paid in full by Spencer Rock.  *See id.;* 1999 Lechner Aff., ¶5, attached as Ex. 6 to 2005 Lechner Dep.

15.  Shoreside delivered the second fuel car to the Spencer Quarry within ten days of April 8, 1997 and invoiced Spencer Rock immediately for $21,503; thus, as of the delivery of this second fuel car, Spencer Rock was at least $1,503 over its $20,000 credit limit, not accounting for additional services rendered by Shoreside during April 1997.  *See id.,* 2005 Lechner Dep., p. 32, lines 16-19.

16.  Spencer Rock failed to pay Shoreside within thirty days of Shoreside's May 1, 1997 statement.  Thus, as of June 1, 1997, Spencer Rock's account with Shoreside was approximately $23,000 in arrears, and approximately $3000 over its credit limit.  *See id.,* p. 34, lines 12-15.

17.  In mid- to late May, Mr. Lechner had several conversations with Mr. Randolph during which Mr. Randolph voiced concerns regarding Spencer Rock's performance; specifically, Mr. Lechner recalls Mr.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 12 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

Randolph indicating that Spencer Rock's performance at the Spencer Quarry was both "poor" and "slow." *See id.*, p. 38, lines 7-9; p. 40, lines 4-7.

18.    Despite Spencer Rock's account being past due and significantly over its credit limit, and despite Mr. Randolph's concerns regarding Spencer Rock's performance of which Mr. Lechner was fully aware, on or about June 1, 1997 Mr. Lechner authorized the delivery of the third fuel car to the Spencer Quarry. *See id.*, p. 34, lines 24-25; p. 35, lines 1-2.  Consequently, as of June 1, 1997, Spencer Rock's account with Shoreside was approximately $23,000 past due and approximately $45,000, or "twice above [Spencer Rock's] credit limit." *Id.*, p. 34, lines 12-23; p. 37, lines 7-9.  Shoreside considered such an amount of money as past due and over limit to be "significant." *Id.*, p. 34, lines 1-3; p. 35, lines 3-6.

19.    Shoreside's continued providing service to Spencer Rock in connection with the Homer Spit Project through June 26, 1997 before declining to further extend Spencer Rock's credit.  *See* Krider Aff. Ex.1, Letter from Ron Neibrugge to Greg Poynor, Oct. 1, 1997, attached as Ex. 1 to 2005 Lechner Dep.

20.    In June 1997, Mr. Randolph contacted Mr. Lechner by telephone.  Mr. Lechner understood that Mr. Randolph was calling in his capacity as "head project engineer/coordinator for Nugget Construction's Homer Armor Rock project."  During this conversation, Mr. Randolph informed Mr. Lechner that "all future fuel and lube purchases were to be billed directly to Nugget Construction."  Mr.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 13 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

1  Lechner advised Mr. Randolph of Spencer Rock's arrearages with

2  Shoreside and requested that Nugget pay Shoreside for Spencer Rock's

3  past due amounts.  Mr. Randolph responded that "Nugget Construction

4  would not pay for past purchases by Spencer Rock and that Spencer Rock

5  would have to pay for those purchases."  Following this call,

6  Shoreside continued to fuel equipment as requested by Nugget and

7  billed all invoices thereafter to Nugget Construction's account, all

8  of which Nugget timely and fully paid.  *See* Krider Aff., Ex. 1,

9  Affidavit of Doug Lechner, July 30, 1998 ("1998 Lechner Aff."), ¶¶ 3-

10 7, attached as Ex. 4 to 2005 Lechner Dep.; Letter from Ron Neibrugge

   to Jane Poling, Dec. 16, 1997, attached as Ex. 2 to 2005 Lechner Dep.

11 E.   SHORESIDE'S UNDERSTANDING OF THE RELATIONSHIP BETWEEN NUGGET
12      AND SPENCER ROCK

13      21.  Nugget never manifested any intention, either in direct

14 statements, oral or written, to Shoreside representatives, or

15 indirectly in its conduct and activities in performing its work in

16 connection with the Homer Spit Project, to be contractually bound to

17 Shoreside for purchases made by Spencer Rock from Shoreside, which

18 includes the April 8, 1997 and May 21, 1997 fuel car purchases that

19 were specifically ordered by Mr. LaPore on behalf of Spencer Rock.

20 Mr. Randolph expressly informed Mr. Lechner that Nugget would not pay,

21 or otherwise guarantee payment, for such services.  *See* Randolph Aff.,

22 ¶ 9.

23      22.  It was always Shoreside's impression that the fuel it

24 provided to Spencer Rock was ordered per a contractual agreement with

   Spencer Rock, and not Nugget.  Further, it was always Shoreside's

25 *U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
   Case No. A98-009 CIV (HRH)
   Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
   Judgment Against Shoreside-- Page 14 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

understanding that the relationship between Nugget and Spencer Rock was one of general contractor and subcontractor, respectively. *See* Krider Aff., Ex. 1, Letter from Ron Neibrugge to Greg Poynor, Oct. 1, 1997, attached as Ex. 1 to 2005 Lechner Dep.; Letter from Ron Neibrugge to Jane Poling, Nov. 26, 1997, attached as Ex. 1 to 2005 Lechner Dep.  Significantly, Shoreside's observations of Nugget's involvement at the Spencer Quarry further confirmed Shoreside's understanding in this regard.  *See id.,* Letter from Ron Neibrugge to Jane Poling, Dec. 16, 1997, attached as Ex. 2 to 2005 Lechner Dep. There is no contemporaneous evidence to suggest that Shoreside believed it was in privity with Nugget for services provided to Spencer Rock.  This is consistent with the fact that there was never any express agreement between Nugget and Mr. LaPore that Mr. LaPore or Spencer Rock would act as Nugget's agent in the prosecution of Spencer Rock's work under the Material Contract.  *See* Randolph Aff., ¶ 10.

23.  Nugget's payments to Spencer Rock for its work under the Material Contract were made exclusively to Spencer Rock and never to Shoreside.  *See id.*, ¶ 11.

24.  The foundation of Shoreside's belief that it is entitled to recovery from Nugget has always been based on its misunderstanding that Spencer Rock was a subcontractor to Nugget and not a material supplier and further, that, because the Homer Spit project was a bonded project, Shoreside could proceed directly against Nugget under its bond.  *See* Krider Aff., Ex. 1, Letter from Ron Neibrugge to Jane Poling, Dec. 16, 1997, attached as Ex. 2 to 2005 Lechner Dep.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 15 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

25.    Spencer Rock has still not paid Shoreside any amounts due pursuant to the verbal agreement between Spencer Rock and Shoreside. On May 8, 1997 Nugget paid Spencer Rock $147,184.66 for the first two barge loads of rock and, between May 8, 1997 and August 8, 1997, Nugget paid Spencer Rock an additional $50,000, totaling $197,184.66. *See* Randolph Aff., ¶ 12.  Despite these payments, by letter dated September 5, 1997, Mr. LaPore informed Shoreside that "Spencer Rock has been placed in an awkward position as to our payables on the Homer Spit Project.  We have not been paid for our delivery of materials although the materials are on the job site."  Krider Aff., Ex. 1, Letter from Robert A. LaPore to Suppliers of the Homer Spit Project, Sept. 5, 1997, attached as Ex. 1 to 2005 Lechner Dep.  Nevertheless, Mr. LaPore specifically "acknowledges that it owes Shoreside/Marathon for the railcar of fuel ordered in April 1997."  *Id.,* Affidavit of Robert A. LaPore, Feb. 10, 1999, ¶ 4, attached as Ex. 5 to 2005 Lechner Dep.

## II.    Legal Argument

A.    SUMMARY JUDGMENT STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure instructs that a motion for summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Federal summary judgment procedure requires the piercing through the

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 16 of 49

pleadings and their adroit craftsmanship to reach the substance of the claim. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. *See id.* Accordingly, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

B.   BECAUSE THERE WAS NO CONTRACT BETWEEN NUGGET AND SHORESIDE, EXPRESS OR IMPLIED-IN-FACT, SHORESIDE'S BREACH OF CONTRACT CLAIM MUST FAIL

Shoreside alleges that Nugget was aware or should have been aware that Shoreside "entered into a written contract and/or oral agreement with Spencer committing [Shoreside] to supply goods to or to perform services for the Homer Project," and that "Nugget and USF&G breached the contract and/or agreement by repeatedly refusing to pay the undisputed legal consideration for the goods and/or services." Shoreside's Amended Complaint, ¶ 26.

It is established law of the case that Shoreside "never entered into express contracts with Nugget." *North Star Terminal & Stevedore Co. ex rel. v. Nugget Construction Inc., et al. v. Shoreside Petroleum Inc. ex rel; Shoreside, Inc.*, Slip Op. No. 02-35887 at 4 (9th Cir., March 3, 2005). Thus, in the absence of an express contract, such contract must be implied-in-fact if Nugget is to be held in breach.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 17 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

Under Alaska law,[6] an implied-in-fact contract requires all of the elements of an express contract and, significantly, an intent to be bound. *See Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1140 (Alaska 1996). An implied-in-fact contract "arises where the court finds from the surrounding facts and circumstances that the parties intended to make a contract but failed to articulate their promises and the court merely implies what it feels the parties intended." *Id.* at 1140. "[I]mplied-in-fact contracts are closely related to express contracts" whereby "each requires the parties to form an intent to enter into a contract." *Id.* at 1142; *see also Altman v. Alaska Truss & Mfg.*, 677 P.2d 1215, 1226 (Alaska 1983) ("an implied-in-fact contract only exists where there is mutual assent between the parties").

The material and undisputed facts establish that there was never any objective manifestation of an intent to be bound, either on the part of Nugget or Shoreside for the services that Shoreside provided to Spencer Rock. Nugget never made any oral or written promise to be bound contractually to Shoreside for these services; in fact, Mr. Randolph expressly informed Mr. Lechner that Nugget would not pay, or otherwise guarantee payment, for such services. Moreover, Nugget

---

[6] It bears noting that the legal elements necessary to establish the existence of a contract implied-in-fact under Alaska state law are distinct from the elements necessary to establish federal Miller Act liability under a "strawman" theory; significantly, even if Shoreside could substantiate its Miller Act claims, which it cannot, this fact alone would not indicate the existence of an implied-in-fact contract between Nugget and Shoreside without additional evidence of a meeting of the minds. As discussed herein, Shoreside's implied-in-fact contract claim must fail because there is no such evidence.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 18 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

never exhibited any conduct to manifest the intent to be bound to Shoreside. In fact, Shoreside's observations of Nugget's activities in the Spencer Quarry furthered Shoreside's understanding that Spencer Rock was a subcontractor to Nugget, and there is nothing in the contemporaneous record to suggest that any activity or statement of Nugget led Shoreside to believe that the services it provided to Spencer Rock were in any way connected to an express or implied in fact agreement with Nugget.

Shoreside's direct dealings with Spencer Rock further confirm these conclusions. The orders for the all three fuel cars of diesel were placed by telephone personally by Mr. LaPore to Mr. Lechner, on behalf of Spencer Rock. Fuel provided in response to these requests were delivered to the Spencer Quarry for the use of Spencer Rock. Shoreside's invoices and statements for these services were sent to Spencer Rock; only after Spencer Rock failed to pay did Shoreside bring Spencer Rock's nonpayment to Nugget's attention.

These objective indicia are wholly consistent with Shoreside's contemporaneous, subjective understanding that it executed and performed under a contract with Spencer Rock and not Nugget. Significantly, these indicia are consistent with Shoreside's belief that Nugget is liable to Shoreside, not because it entered into a contract with Nugget but, because the Homer Spit Project was a federally bonded project:

> Q.    . . . And during that initial phase, you believed that your agreement was with Spencer Rock, to pay for [gas, diesel, fuel and lubricants]?

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 19 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

> A.    Our agreement was with – Spencer Rock was the one we were providing fuel to; that is correct. We were still looking – we view the project as a bonded job. It's a federal project. So we still know that there is still some coverage, as well
>
> Q.    So in other words, in your mind, your contract was with Spencer Rock, but you had a bond in place in case Spencer Rock failed to pay you. Is that a fair summary?
>
> A.    I think that's a fair assessment.

Krider Aff., Ex. 1, 2005 Lechner Dep., p. 24, lines 1-11; *see also*

*id.*, p. 42, lines 3-7 ("Q:  Now when you agreed to provide the next

rail car in May of '97, did the fact that this was a bonded job have

any influence on that decision?  A:  We definitely had some comfort

that Nugget was the general contractor, and that it was a bonded

job.").  Shoreside's contemporaneous correspondence reflects the same

sentiments:

> It was our understanding all along that Spencer Rock was a subcontractor to Nugget Construction, and the fuel was used for the preparation and transportation of rock for the Homer Spit Repair and Extension project. Nugget Construction's involvement at Spencer Rock's pit, and in transportation of the rock further confirmed our understanding. We also believed this was a bonded project. This was our basis for granting Spencer Rock such a sizeable credit limit.

*Id.,* Letter from Ron Neibrugge to Jane Poling, Dec. 16, 1997, attached

as Ex. 2 to 2005 Lechner Dep. [7]

---

[7] These exchanges during Mr. Lechner's recent deposition demonstrate what is, and what has been since the inception of Shoreside's lawsuit, the essence of Shoreside's theory of liability against Nugget:  Because Shoreside provided labor and services to a federally bonded project, Shoreside can seek payment from the bond surety, USF&G, and Nugget as the prime contractor.  If Shoreside were entitled to any recovery, which it is not, such recovery would be under the federal Miller Act, and not under the Alaska state law contract, tort, or equitable theories alleged in its Amended Complaint.  However,

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 20 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
(907) 258-0106    Fax: (907) 258-5519

A balanced and objective consideration of the facts and circumstances surrounding Shoreside's negotiation and performance of its contract with Spencer Rock establishes that there was never any contract between Shoreside and Nugget, express or implied-in-fact. Shoreside's empty and after-the-fact allegations to the contrary do not affect this conclusion.  Consequently, because there was no contract between Shoreside and Nugget, Nugget is entitled to summary judgment as a matter of law that Nugget never breached any alleged express or implied-in-fact contract with Shoreside.

C.    <u>Because Nugget and Shoreside's conduct with Spencer Rock was not influenced by Nugget, and because Nugget was not required to disclose the Support Agreement, Shoreside's promissory estoppel, detrimental reliance and misrepresentation and nondisclosure claims must fail</u>

Although identified as three separate causes of action, Shoreside raises essentially the same allegations to support its promissory estoppel, detrimental reliance, and misrepresentation and nondisclosure claims.  In support of its promissory estoppel claim, Shoreside alleges that, "[d]espite [Nugget's] statements that its inducements were carefully presented to [Shoreside] to avoid any obligations, the inducements and surrounding circumstances reasonably caused [Shoreside] to provide goods or perform services."  Shoreside's Amended Complaint, ¶ 27.  Similarly, in support of its detrimental reliance theory, Shoreside asserts:

because the Ninth Circuit found Spencer Rock to be a supplier, which meant Shoreside's assumption about the bond's coverage was in error, Shoreside has now attempted to create claims that simply do not exist.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 21 of 49

> During the prosecution of the Homer Project, [Shoreside]
> was aware that the Project was a government project of the
> Army Corps of Engineers and that Nugget posted a bond to
> provide payment for any unpaid goods or services.
> [Shoreside] placed substantial reliance on this
> understanding as an inducement for [Shoreside] to continue
> performing.  [Shoreside] also was aware that individuals
> who had worked for or were working for Spencer also had
> worked for or were working with Nugget.  [Shoreside]
> detrimentally relied and did reasonably rely to its
> detriment on these and other facts and circumstances to
> furnish valuable goods or services in the prosecution of
> the work on the Homer Project.

*Id.*, ¶ 30.  Finally, Shoreside's detrimental reliance claim resembles strongly its misrepresentation and nondisclosure claim:  "By such words, conduct and/or omissions, [Nugget] misled [Shoreside], the Federal Government and other companies similarly situated to [Shoreside], regarding the true relationships between Spencer and Nugget, the security of the payment bond, and Nugget's dominance and control over Spencer and LaPore and rechanneling payments to itself for its own benefit."  *Id.*, ¶ 33.  The common thread running through each of these causes of action is the assertion that Shoreside's performance was induced upon reliance of some act or omission on the part of Nugget.

i.   Nugget never made an actual promise or affirmative act

Under Alaska law, there are four requirements for a promissory estoppel claim:  "(1) the action induced amounts to a substantial change of position; (2) it was either actually foreseen or reasonably foreseeable by the promissor; (3) an actual promise was made and itself induced the action or forbearance in reliance thereon; and (4) enforcement is necessary in the interest of justice."  *Reeves v.*

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 22 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1142 (Alaska 1996).

Significantly, Alaska courts have long held that promissory estoppel

requires that "an actual promise was made." *Brady v. State*, 965 P.2d

1, 10 (Alaska 1998).

Similarly, detrimental reliance can only occur, legally speaking,

when the party seeking to invoke the doctrine of equitable estoppel

has relied reasonably on the representation of the adverse party. *See*

*State Dept. of Revenue v. Northern TV, Inc.*, 670 P.2d 367, 370 (Alaska

1983). A party claiming equitable estoppel must prove four elements:

"(1) assertion of a position by conduct or word; (2) reasonable

reliance thereon; (3) resulting prejudice; and (4) the estoppel will

be enforced only to the extent that justice so requires." *Ogar v.*

*City of Haines,* 51 P.3d 333, 335 (Alaska 2002).

Shoreside's promissory estoppel and detrimental reliance claims

suffer from numerous and considerable shortcomings; most significant,

Nugget never made an "actual promise" to Shoreside, much less an

actual promise that "itself induced the action or forbearance in

reliance thereon" on the part of Shoreside. *Reeves*, 56 P.3d at 670;

*see Brady*, 965 P.2d at 10. Similarly, Nugget never affirmatively

asserted "a position by conduct or word." *Ogar*, 51 P.3d at 335. The

only conduct of Nugget that Shoreside observed let Shoreside to

believe that Spencer Rock was a subcontractor of Nugget; even though

Shoreside was incorrect in this regard, such belief, incorrect as it

was, would not offer any factual foundation for Shoreside's current

position that Shoreside may recover from Nugget the moneys that

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 23 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Spencer Rock owes Shoreside, yet has failed to ever pay.  Shoreside therefore cannot claim to have been induced to rely upon any affirmative act or statement regarding either (i) Shoreside's decision to enter into its agreement with Spencer Rock, or (ii) Shoreside's continued performance under its contract with Spencer Rock.  For this reason alone, Shoreside's promissory estoppel and detrimental reliance claims must fail.

ii.   There is no duty to disclose the Support Agreement

In the absence of any affirmative act, the only conceivable fact on which Shoreside could rely in support of its remaining misrepresentation and nondisclosure claims[8] is that it detrimentally relied upon, and was induced to act by, Nugget's nondisclosure of its Support Agreement with Spencer Rock.  These remaining theories of recovery thus turn on one single and dispositive question of law:  Was

_____

[8] In addition to fraudulent and negligent misrepresentation, Shoreside also makes a claim for "innocent" misrepresentation. Innocent representation occurs when "one who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently." *Bevins v. Ballard*, 655 P.2d 757, 762 (Alaska 1982) (citing section 552C(1) of the Restatement (Second) of Torts (1977)).  In addition to the reasons discussed herein why Shoreside's misrepresentation claim must fail, because there is no "sale rental or exchange transaction," Shoreside's innocent representation claim is inapposite. *See also Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148, 1153-54 (Alaska 1984) (relying on *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E. 2d 443 (Ill. 1982), which held that a food processor could not recovery against a manufacturer of a defective grain storage tank for economic loss under the tort theories of strict liability, or negligence or innocent misrepresentation).

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 24 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Nugget legally required to disclose its Support Agreement with Spencer Rock to Shoreside?

If the answer is yes, then there is a genuine issue of material fact regarding the nature of the relationship between Nugget and Spencer Rock and whether Shoreside would have relied upon the information in the Support Agreement in connection with the prosecution of its work under its contract with Spencer Rock.  If the answer is no, then it does not matter whether Shoreside would have changed its position with the knowledge of information in the Support Agreement because Shoreside was not entitled to such information in the first instance.

Negligent misrepresentation arises when: (1) a party accused of misrepresentation made a statement in the course of his business, profession, or employment, or in any other transaction in which he has pecuniary interest, (2) the representation supplied false information, (3) there was justifiable reliance on the false information and (4) the accused party failed to exercise reasonable care or competence in obtaining or communicating information.  *See Reeves v. Alyeska Pipeline Serv. Co.*, 56 P.3d 660, 670-671 (Alaska 2002).  Further, "[n]ot every casual response, not every idle word, gives rise to a cause of action," and, significantly, liability arises only where there is a duty, if one speaks at all, to give correct information.  *Howarth v. Pfeifer,* 443 P.2d 39, 42 (Alaska 1968) (citing *International Prods. Co. v. Erie R.R.,* 155 N.E. 662, 663, *cert. denied*, 275 U.S. 527 (1927)).

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 25 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

Significantly, "[t]o prevail in an action for fraudulent or negligent misrepresentation the plaintiff must prove the existence of either an affirmative misrepresentation or an omission where there is a duty to disclose." *Hagans, Brown & Gibbs v. First Nat. Bank of Anchorage*, 810 P.2d 1015, 1019 (Alaska 1991). The duty to disclose arises when facts are concealed or unlikely to be discovered because of the special relationship between the parties, the course of their dealings, or the nature of the fact itself. *See Matthews v. Kincaid*, 746 P.2d 470, 471-472 (Alaska 1987). Nondisclosure similarly requires a failure to disclose information when there is an affirmative duty to do so. *Turnbull v. LaRose*, 702 P.2d 1331, 1334 (Alaska 1985) (citing factors for disclosure of information for parties in a business transaction as set forth in Restatement (Second) of Torts, § 551 (1977)).

As a threshold matter, Shoreside fails to recognize that the Support Agreement is a legal and binding agreement between Nugget and Spencer Rock. There is no rule or maxim, no statute or regulation, no principle or guideline, under either Alaska state law or federal law, that would preclude Spencer Rock from accepting Nugget's assistance in completing Spencer Rock's work under its contract with Nugget and, in full fair consideration therefor, allowing Nugget to backcharge Spencer Rock for the time, labor and materials associated with that assistance. Indeed, even if Nugget and Spencer Rock had not entered into the Support Agreement, Nugget would be well within its legal

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 26 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

right to withhold from Spencer Rock payments for work within the scope of the Material Contract that Nugget had to perform itself:

> A general contractor may be justified in refusing to make a progress payment to the subcontractor when the latter has failed to substantially perform his contractual obligations entitling him to the payment.  *See* 3A Corbin on Contracts § 708 (1960); *see also id.* § 692 at 273; Restatement (Second) of Contracts § 237, comment d (1981).  It follows that the general contractor is entitled to withhold from a progress payment a valid backcharge for work within the scope of the subcontract which the general contractor has had to perform itself.

*Howard S. Lease Constr. Co. & Assoc. v. Holly*, 725 P.2d 712, 715-716 (Alaska 1986).  Shoreside may have raised a host of inapposite legal theories and baseless factual allegations in its amended complaint, but Shoreside has never alleged that the Support Agreement was illegal or otherwise void, nor can it as a matter of law.

Second, Shoreside has not identified any statutory or common law duty under Alaska state or federal law that contracts such as the Support Agreement must be disclosed or published for public review. As Nugget has stated time and again, it entered into the Support Agreement with Spencer Rock to ensure that its performance on its contract with the Federal Government would not suffer from anticipated difficulties in Spencer Rock's performance of its contract with Nugget.  There was no other purpose.  Regardless, even if Shoreside disputes this fact, whether Shoreside may have altered its course of performance of its contract with Spencer Rock, if it had knowledge of the Support Agreement, is a moot point.  Nugget was not bound by law

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 27 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

or by duty to disclose the Support Agreement to anyone;[9] therefore,
Shoreside may not assert that it detrimentally relied upon Nugget's
nondisclosure of the Support Agreement, under any theory.
Consequently, in the absence of any genuine issue of material fact,
Nugget is entitled to summary judgment as a matter of law on
Shoreside's promissory estoppel, detrimental reliance, and
misrepresentation and nondisclosure claims.[10]

D.  Nugget never owed Shoreside any duty of care, thus, Shoreside's
    negligence claims must fail

Shoreside's negligence claim appears pulled out of thin air:
"Under the circumstances, [Nugget] owed [Shoreside] . . . a duty of
care, including a statutory duty.  Nugget breached the duty which
breach legally caused harm and damages to [Shoreside].  Shoreside is
entitled to recover such damages, plus interest and attorney's fees,
from [Nugget]."  Shoreside's Amended Complaint, ¶ 34.  Shoreside does

---

[9] Indeed, if Nugget had disclosed to Spencer Rock's material suppliers the
substance of the Support Agreement prior to date Spencer Rock executed its
contract with Shoreside, Nugget may well have exposed itself to suit by
Spencer Rock on a theory of tortious interference with contract or economic
relations.  Please see Section II.D, *infra*, for a further explanation of why
Nugget did not owe Shoreside any duty that would have compelled the
disclosure of the Support Agreement.

[10] In addition to the foregoing, it does not matter that Shoreside was aware
"that the Project was a government project of the Army Corps of Engineers and
that Nugget posted a bond to provide payment for any unpaid goods or
services," or that "[Shoreside] placed substantial reliance on this
understanding as an inducement for [Shoreside] to continue performing."
Shoreside's Amended Complaint, ¶ 30.  Despite its insistence to the contrary,
the Ninth Circuit previously established that Shoreside, a second-tier
vendor, was in error in its understanding and may not recover against Nugget
simply because the Homer Spit Project was a bonded job.  Thus, Shoreside's
awareness of Nugget's posting of the bond does nothing to support Shoreside's
claims.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 28 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

not identify the nature of the supposed duty of care that was allegedly breached by Nugget or any statute that might support such a theory.

Under Alaska law, "[t]he initial step in deciding whether an action for negligence can be maintained is to consider whether a duty exists." *Mesiar v. Heckman*, 964 P.2d 445, 448 (Alaska 1998). "Whether an actionable duty exists is a question of law and public policy." *Id.* "'Duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Id.* (quoting *City of Kotzebue v. McLean*, 702 P.2d 1309, 1313 (Alaska 1985) and William L. Prosser, *The Law of Torts* § 53, at 325 (4th ed. 1971)). Alaska courts will "first define the class of cases to which [its] rulings apply, then weigh the factors which support and oppose the imposition of liability in that class of cases." *Id.* "In the first phase of duty analysis . . . duty is at heart a question of policy centering on the basic relationship between the parties rather than the nature of their conduct on a given occasion. Particular conduct becomes important only when a duty is imposed; the conduct then helps to determine the applicable standard of care." *Id.* (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 356 (5th ed. 1984)). Notably, in circumstances in which a negligence claim is predicated upon an inaction or omission, there must be "some definite relation between the parties, of such a character that social policy justifies the

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 29 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

imposition of a duty to act," or "a special relationship creating that duty," for negligence liability to attach. *Ballum v. Weinrick's, Inc.*, 633 P.2d 272, 273, 276 (Alaska 1981) (citing W. Prosser, *The Law of Torts*, § 56 at 339 (4th ed. 1971)).

If the court can identify a class of cases to which its ruling would apply, only then need it turn to the second phase of its analysis, which involves a weighing of the factors that support and oppose the imposition of liability:

> [1] The foreseeability of harm to the plaintiff, [2] the degree of certainty that the plaintiff suffered injury, [3] the closeness of the connection between the defendant's conduct and the injury suffered, [4] the moral blame attached to the defendant's conduct, [5] the policy of preventing future harm, [6] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [7] the availability, cost and prevalence of insurance for the risk involved.

*Kooly v. State*, 958 P.2d 1106, 1108 (Alaska 1998); *see also D.S.W. v. Fairbanks North Star Borough School District*, 628 P.2d 554, 555 (Alaska 1981).

Here, the relationship between Nugget and Shoreside is one of prime contractor and second-tier vendor that witnessed no substantial interaction during the course of performance. The only connection between Nugget and Shoreside is that both parties worked on the Homer Spit Project, a fact that was not brought about by Nugget, and that was entirely dependent upon Mr. LaPore's decision to approach Shoreside for assistance on the project and Shoreside's decision to accept Mr. LaPore's invitation. Further, there is no privity of contract between Nugget and Shoreside.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 30 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

This is not the sort of relationship, much less a special relationship, that can define a class of cases to which a court could apply a ruling or, specifically, impose a duty under a negligence theory.  Such relationships (to the extent that the word "relationship" applies to the limited interaction between Nugget and Shoreside) are not bound by any duty under statute or common law, or as a matter of public policy, that gives rise to a cause of action in negligence.  Shoreside has never identified any such duty.  In fact, the Alaska Supreme Court has specifically held that a lack of privity will preclude recovery for pure economic loss upon a negligence theory, which follows the longstanding and majority rule in most jurisdictions.  *See Smith v. Tyonek Timber, Inc., H&S Constr., Inc.*, 680 P.2d 1148, 1153-1154 (Alaska 1984); *see also Moorman Manufacturing Co.* v. *National Tank Co.*, 435 N.E.2d 443 (Ill. 1982) (cited in *Smith*).[11]  The Court should not indulge Shoreside's request to impose upon the attenuated relationship between a prime contractor and second-tier vendor not in privity with one another a duty that has never before been applied under Alaska (or any) law.  *Cf. State v. Osborne*, 607 P.2d 369, 371 (Alaska 1980) (holding that homeowner did not owe any duty to carpenter hired by homeowner's builder when

---

[11] *Smith* involved a claim by a subcontractor, Smith, against a concrete supplier, Tyonek, that was selected by the prime contractor, H&S.  The court held, *inter alia*, that "Smith's lack of privity with Tyonek precludes his recovery for pure economic loss based on a negligence theory."  Smith, 680 P.2d at 1154.  The same reasoning applies here:  because Shoreside is not in privity with Nugget, Shoreside should be precluded from recovering from Nugget for pure economic loss based upon a theory of negligence.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 31 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

builder failed to compensate carpenter for work on homeowner's project).

Even if there were privity between Nugget and Shoreside, recovery of purely economic losses on a theory of negligence would require a showing that "the defendants knew or reasonably should have foreseen both that particular plaintiffs or an identifiable class of plaintiffs were at risk and that ascertainable economic damages would ensue from the conduct." *Mattingly v. Sheldon Jackson College*, 743 P.2d 356, 360 (Alaska 1987). Here, there is an utter absence of "conduct" attributable to Nugget that could support the imposition of a duty; Shoreside may complain that the circumstances surrounding the Support Agreement constitute actionable conduct but, as the Alaska courts have expressly recognized, there is nothing improper about providing support to contractor and then backcharging that contractor for the value of the support. *See Howard S. Lease Constr. Co. & Assoc. v. Holly*, 725 P.2d 712, 715-716 (Alaska 1986). Moreover, there is absolutely no way that Nugget could have foreseen that Mr. LaPore would fail to pay Spencer Rock's suppliers, including Shoreside.

It is for these same reasons that the "tortuous walk" through the often-cited factors set forth in *Kooly* would be an exercise in futility, assuming a court determined that the relationship between a Nugget and Shoreside was sufficiently ascertainable as to apply a ruling. *See Smith*, 680 P.2d at 1153 (describing attempt to apply factors similar to those set forth in *Kooly* in case in which parties lacked privity as "futile"); *Kooly*, 958 P.2d at 1109-1111; *Mattingly*,

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 32 of 49

743 P.2d at 360 (emphasizing "the role of foreseeability as it relates to duty owed and to proximate cause" in adopting rule permitting recovery for purely economic losses).  To be sure, attempting to analyze the [1] foreseeability and [2] certainty of Shoreside's losses would have required an understanding of the motivations underlying Mr. LaPore's decision to breach his agreement with Shoreside.  In the same vein, analyzing:  [3] the closeness of the connection between Nugget's conduct and Shoreside's injury when there was neither a closeness nor a connection; [4] the moral blame attached to Nugget's conduct, when there was no conduct on which to assess moral blame; [5] the policy of preventing future harm when the future harm cannot be readily ascertained; [6] the burden to Nugget and the consequences to the Alaska contracting community by imposing a duty never before known in the history of contract or tort law, or; [7] the availability, cost and prevalence of insurance for the risk involved when there has never been in fact, and likely never been contemplated, a need for such insurance, would be a futile exercise indeed.  *See Kooly*, 958 P.2d at 1108.

In light of the foregoing, Shoreside's bald assertion that Nugget owed Shoreside a duty of care is not enough to make it so. Moreover, Shoreside has also failed to cite any federal or state law that imposes a statutory duty between a prime contractor and a second-tier vendor of a supplier to one another.  In fact, as the Ninth Circuit held in its first decision, the statutory law is to the contrary.  In the absence of any genuine issue of material fact,

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 33 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Nugget is entitled to summary judgment dismissal of Shoreside's negligence claims as a matter of law.

E.    <u>Shoreside is not entitled to any remedy under unjust enrichment and restitution, quantum meruit, equitable subordination or constructive trust because Nugget has not improperly intercepted funds due Shoreside or otherwise been unjustly enriched</u>

Shoreside also alleges a number of equitable causes of action, including unjust enrichment and restitution, quantum meruit, equitable subordination and constructive trust.  At the center of these claims is the allegation that, through the Support Agreement, Nugget improperly exercised its influence over Spencer Rock to intercept and unjustly retain funds that are due Shoreside.

The concepts of quasi-contract, unjust enrichment, contract implied-in-law, and quantum meruit are very similar and interrelated; courts generally treat actions brought upon these theories as essentially the same.  *See Alaska Sales and Serv., Inc. v. Millet*, 735 P.2d 743, 746, fn. 6 (Alaska 1987).  The three elements for a quasi-contract or quantum-meruit claim are as follows:  1) a benefit was conferred upon the defendant by the plaintiff; 2) an appreciation by the defendant of such benefit; and 3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof. *See Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1143 (Alaska 1996).  The courts are in accord in stressing that the most significant requirement for recovery in quasi-contract is that the enrichment to the defendant must be unjust; that is, the defendant

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 34 of 49

must receive a true windfall or "something for nothing." *Alaska Sales and Serv., Inc.*, 735 P.2d at 746.

A constructive trust will be ordered to "compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. When a court finds that a defendant is the holder of a property interest which he retains by reason of unjust, unconscionable, or unlawful means, it takes such interest from the defendant and vests it in the wronged party. *See McKnight v. Rice, Hoppner Brown & Brunner*, 678 P.2d 1330, 1335 (Alaska 1984). Similarly, outside of the standard bankruptcy context in which it is typically applied, the doctrine of equitable subordination will apply in order to "undo or offset any inequity in the claim position of a creditor that would produce injustice or unfairness to other creditors." *Nerox Power Systems, Inc. v. M-B Contracting Co., Inc.*, 54 P.3d 791, 795 (Alaska 2002) (citations omitted).

Here, the undisputed facts establish that Nugget paid Spencer Rock $197,184.66 and that Nugget sustained losses in excess of $1.5 million in connection with its dealings with Spencer Rock. This is not a situation in which Nugget received a windfall or retained something for nothing, or, specifically, improperly retained money that was due Spencer Rock, which in turn precluded Spencer Rock from discharging its obligation to Shoreside. Quite to the contrary, Nugget fully and fairly compensated Spencer Rock per the Material Contract as modified by the Support Agreement and, for reasons that are not yet clear, Spencer Rock then blatantly lied to Shoreside by

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 35 of 49

withholding Shoreside's payment on the basis that Spencer Rock was never paid by Nugget. There is no principle in equity that would permit Shoreside to recover money paid by the United States to Nugget that was rightfully earned on the ground that Spencer Rock breached its contract with Shoreside. If anyone has been unjustly enriched, it is Mr. LaPore and Spencer Rock, whose conduct resulted in the nonpayment of Spencer Rock's suppliers, as well a breach of its contract with Nugget that resulted in Nugget's loss of over $1.5 million dollars.

Further, it is well-established under Alaska law that a party to an express contract may not seek recovery on extra-contractual theories such as quantum meruit or implied contract. *See Mitford v. de Lasala*, 666 P.2d 1000, 1006 n.1 (Alaska 1983); *Fairbanks North Star Borough v. Kandik Const., Inc. & Assoc.*, 795 P.2d 793, 799 (Alaska 1990), *opinion vacated in part on rehearing on other grounds*, 823 P.2d 632 (Alaska 1991). Nevertheless, Shoreside unabashedly seeks to avoid or ignore this rule by attempting to recover from Nugget the very same quantum that is covered by Shoreside's contract with Spencer Rock.

The conclusion that Shoreside cannot recover under its equitable theories remains true even if Shoreside should attempt to create a genuine issue of material fact regarding Nugget's intentions behind the execution of the Support Agreement. Regardless of the intent that Shoreside ascribes to Nugget, the fact would remain that Nugget has not been unjustly enriched, and that Spencer Rock was compensated by Nugget per the Material Contract, as modified by the Support

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 36 of 49

Agreement.  To the extent that Shoreside would contend that Nugget

received value for Shoreside's provision of fuel and related services

to Spencer Rock's vehicles, such value was wholly offset by Spencer

Rock's failure to perform and breach of its contract with Nugget and,

consequently, the losses that Nugget sustained therefrom.

Accordingly, because there is no genuine issue of material fact Nugget

is entitled to summary judgment on Shoreside's equitable claims.

F.    Nugget and Spencer Rock are distinct entities and Spencer Rock
      was never vested with any authority to act as Nugget's agent[12]

      In support of its agency claim, Shoreside alleges:

      Nugget through its actions and inactions took over complete
      control over the Homer Project and in effect directed all
      the activities of Spencer and LaPore.  Nugget exercised
      complete control and dominion with respect to Spencer and
      LaPore's operations and affairs.  Nugget through the
      support arrangement and other actions indebted Spencer and
      LaPore to Nugget in an amount that overwhelmed and
      undermined Spencer and LaPore.  Nugget intercepted and
      rechanneled funds to itself otherwise owed Spencer and
      LaPore and became Spencer's and LaPore's principal, whether
      disclosed or undisclosed to [Shoreside].  Nugget thus
      became liable to [Shoreside] for the acts of its agents,
      Spencer and LaPore, especially those of which Nugget took
      advantage such as Spencer's and LaPore's arrangements with
      [Shoreside] for the provision of goods and services in
      connection with the Homer Project. The contractual
      arrangements and obligations of the agents Spencer and
      LaPore became the arrangements and obligations of the
      principal Nugget for which Nugget is legally responsible.

---

[12] It should be noted that the Court previously held that "[t]here are no
facts in the record supporting the inference that Spencer acted as an agent
of Nugget at the time that Spencer hired North Star, Shoreside, or [sic]
Nugget." *United States of America d/b/a North Star Terminal & Stevedore Co.,
et al. v. Nugget Construction, Inc., et al.*, Slip Op. No. A98-0009-CV (filed
Aug. 30, 2002), at 5.  The Court further held that: "Nothing in the [Support]
agreement expresses that Nugget and Spencer are joint venturers, partners, or
intended to act as principal and agent."  *Id.* at 6.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 37 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Shoreside's Amended Complaint, ¶ 29.  Not only do these factual allegations fail to support a claim of agency between Nugget and Spencer Rock on their face; these allegations also evidence Shoreside's fundamental misunderstanding of the governing law regarding the relationship between a principal and its agent.

"Under Alaska law, an agency relation exists only if there has been a manifestation of the principal to the agent that the agent may act on his account and consent by the agent so to act." *Harris v. Keys*, 948 P.2d 460, 464 (Alaska 1997) (citations omitted) (relying upon, *inter alia*, Restatement (Second) of Agency § 15). Significantly, "the Restatement's requirement that an agent act 'on the principal's account' should be interpreted as requiring action under the principal's control, rather than merely action which serves the principal's purposes." *Id.* at 465.

Further, "in order for an agency relationship to exist, the agent must have 'a power to alter the legal relations between the principal and third persons.'" *Manes v. Coats*, 941 P.2d 120, 123-24 (Alaska 1997) (quoting Restatement (Second) of Agency § 12).  "The principal, in turn, must have 'the right to control the conduct of the agent with respect to matters entrusted to him.'" *Id.* at 124 (quoting Restatement (Second) of Agency § 14).  "If an agency relationship does exist, the 'extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties, interpreted in light of the circumstances under which it is made.'" *Id.* at 124 (quoting Restatement (Second) of Agency § 376).

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 38 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

The existence of an agency relationship may be proved by circumstantial evidence that shows a course of dealing between two parties; however, "when an agency relationship is to be proven by circumstantial evidence, the principal must be shown to have consented to the agency since one cannot be the agent of another except by consent of the latter." *A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285, 290 (Minn. 1981). As between an agent and a supplier, "[o]ne who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself. *Id.* at 291 (quoting Restatement (Second) of Agency § 14K (1958)). Factors indicating that one is a supplier, rather than an agent, are: "(1) That he is to receive a fixed price for the property irrespective of the price paid by him. This is most important. (2) That he acts in his own name and receives the title to the property which he thereafter is to transfer. (3) That he has an independent business in buying and selling similar property." *Id.* at 291-292 (quoting Restatement (Second) of Agency § 14K, Comment a (1958)).

The undisputed facts establish that there was never a manifestation on the part of Nugget that Spencer Rock may act on Nugget's account. Certainly, there was never any express agreement between Nugget and Mr. LaPore that Mr. LaPore or Spencer Rock would act as Nugget's agent in the prosecution of Spencer Rock's work under the Material Contract. In fact, the Material Contract, as modified by the Support Agreement, on which Shoreside so extensively relies,

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 39 of 49

details only a legal, arms-length contractual relationship between two distinct corporate entities and nowhere indicates that Spencer Rock or Mr. LaPore may act on behalf of Nugget or otherwise empowers Spencer Rock or Mr. LaPore to act on Nugget's behalf.

Significantly, Mr. Lapore was always at the helm of Spencer Rock's operations and exclusively responsible for Spencer Rock's finances, including during the period in which Nugget was assisting Spencer Rock under the Support Agreement. Nugget's payments for work under the Material Contract were made exclusively to Spencer Rock and never to Shoreside. Throughout Shoreside's relationship with Spencer Rock, Nugget never indicated that Nugget would be responsible for Spencer Rock's debts to Shoreside. Mr. Lapore alone decided the companies, including Shoreside, with which he would enter into contracts, not Nugget. Mr. Lapore alone decided the means by which Spencer Rock would be financed to facilitate Spencer Rock's performance, not Nugget. Mr. Lapore alone was the sole beneficiary of Shoreside's decision to allow Spencer Rock to so vastly exceed its credit limit and continue service well into a period of delinquency, not Nugget. And perhaps most significant, Mr. Lapore alone determined that he would retain the $197,184.66 that Nugget paid Spencer Rock rather than disburse from those funds the amount that Spencer Rock owed Shoreside for Shoreside's work under its contract with Spencer Rock. Based on the guidance in the Restatement and the relevant caselaw, these facts and circumstances describe a relationship between Nugget and Spencer Rock as buyer-supplier, and not principal-agent.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 40 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*See, e.g., M.S.P. Indus., Inc. v. Diversified Mortgage Servs.*, Inc., 777 P.2d 237 (Colo. App. 1989) (finding absence of agency relationship under circumstances similar to the relationship between Nugget and Spencer Rock).

This is consistent with the clear record, which establishes that Shoreside's own understanding of the relationship between Nugget and Spencer Rock was not one of principal and agent. *See* Krider Aff. Ex. 1, Letter from Ron Neibrugge to Jane Poling, Dec. 16, 1997, attached as Ex. 2 to 2005 Lechner Dep. ("It was our understanding all along that Spencer Rock was a subcontractor of Nugget"); Letter from Ron Neibrugge to Jane Poling, Nov. 26, 1997, attached as Ex. 1 to 2005 Lechner Dep. ("It was Shoreside Petroleum's understanding from the beginning that Spencer Rock was a subcontractor for Nugget Construction on the above referenced bonded project"); Letter from Ron Neibrugge to Greg Poynor, Oct. 1, 1997, attached as Ex. 1 to 2005 Lechner Dep. ("Shoreside was always under the impression that it was dealing with one of [Nugget's] subcontractors").

Even in the absence of the foregoing, which unequivocally establishes that Spencer Rock was never Nugget's agent, Shoreside would still not be able to recover from Nugget on a theory of agency because, under Alaska law, an undisclosed principal is not liable for the acts of its agent.[13]  *See Jensen v. Alaska Valuation Serv., Inc.*,

---

[13] This conclusion is entirely consistent with the Court's prior findings in this case.  See *United States ex rel. North Star Terminal & Stevedore Co., et al. v. Nugget Construction, Inc., et al.*, Slip Op. No. A98-0009-CV (filed Aug. 30, 2002), at 24, n. 38.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary Judgment Against Shoreside-- Page 41 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

688 P.2d 161, 162-63 (Alaska 1984).  Although an agent will not liable if the principal is disclosed to a third party, when the principal is not disclosed, liability rests on the agent, not the principal.  *See Vienna v. Scott Wetzel Servs., Inc.*, 740 P.2d 447, 452 (Alaska 1987).  Thus, to the extent that Shoreside's agency claim is predicated upon Nugget's or Mr. LaPore's nondisclosure of the Support Agreement, such claim would be squarely foreclosed by Shoreside's contemporaneous and accurate understanding that Spencer Rock and LaPore were never agents of Nugget, and that (as one would expect) no one informed Shoreside to the contrary.

In sum, there was never an agency relationship between Nugget and Spencer Rock, which is consistent not only with the facts and circumstances surrounding the relationship between Nugget and Spencer Rock, but also Shoreside's understanding of its relationship to Nugget and Spencer Rock.  Beyond its empty allegations, Shoreside has not alleged a single fact to support its claim that Nugget vested Spencer Rock or Mr. LaPore with the necessary authority to act as Nugget's agent, or that Mr. LaPore ceded control or responsibility of Spencer Rock to Nugget in such a way as to sustain a claim that Spencer Rock became Nugget's agent.  Notably, the Support Agreement memorialized an arrangement between Nugget and Spencer Rock in which the parties in effect agreed to modify the Material Contract such that Nugget would be fairly compensated for its assistance to Spencer Rock, nothing more.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 42 of 49

Accordingly, in the absence of any genuine issue of material fact, Nugget is entitled to summary judgment as a matter of law that neither Spencer Rock nor Mr. LaPore acted as Nugget's agent.

G. Punitive damages are not only inappropriate but, also, unallowable

Under Alaska law, punitive damages serve two purposes: "to punish the wrongdoer and to deter the wrongdoer and others like him from repeating the offensive act." *State Farm Mut. Auto. Ins. Co. v. Weiford,* 831 P.2d 1264, 1266 (Alaska 1992) (citation omitted). The availability of such damages "turn[s] on the wrongdoer's motive, state of mind, and degree of culpability." *Alyeska Pipeline Serv. Co. v. O'Kelley,* 645 P.2d 767, 774 (Alaska 1982). Punitive damages are a harsh remedy "not favored in law. They are to be allowed only with caution and within narrow limits." *State Farm,* 831 P.2d at 1266; *Alyeska Pipeline Serv. Co. v. Beadles,* 731 P.2d 572, 574 (Alaska 1987).

A plaintiff seeking punitive damages must "prove by clear and convincing evidence that the defendant's conduct was outrageous, such as acts done with malice, bad motive, or reckless indifference to the interests of another." *Lee Houston & Assocs. v. Racine,* 806 P.2d 848, 856 (Alaska 1991). A showing of actual malice is not required, *Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 46 (Alaska 1979), *cert. denied,* 454 U.S. 894, (1981), *overruled on other grounds, Dura Corp. v. Harned,* 703 P.2d 396 (Alaska 1985)); however, the plaintiff must establish, at a minimum, that the defendant's conduct "amounted to reckless indifference to the rights of others, and conscious action in

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 43 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

deliberate disregard of [those rights]." *State v. Haley,* 687 P.2d 305, 320 (Alaska 1984) (quoting *Sturm,* 594 P.2d at 47); *see also State Farm,* 831 P.2d at 1266 ("Malice may be inferred if the acts exhibit 'a callous disregard for the rights of others.'") (quoting *Alyeska Pipeline Serv. Co.,* 645 P.2d at 774); *Hayes v. Xerox Corp.,* 718 P.2d 929, 934-35 (Alaska 1986) ("Conscious action in 'deliberate disregard of [others] ... may provide the necessary state of mind to justify punitive damages.'") (citation omitted).

Even if it is proven that wrongdoing was intentionally committed, this mere fact alone is not enough to sustain an award of punitive damages. *See Alyeska Pipeline Serv. Co.,* 645 P.2d at 773-74. "By their very nature, such damages turn on the wrongdoer's motive, state of mind, and degree of culpability, rather than the particular tort committed." *Id.* (citing K. Redden, Punitive Damages § 4.2 (1980)).

Whether malice is present is a question of fact, and the trier of fact is given broad discretion to grant or withhold punitive damages. *See Haskins v. Shelden*, 558 P.2d 487, 494 (Alaska 1976); *Schafer v. Schnabel*, 494 P.2d 802, 805 (Alaska 1972). "But where there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, the trial court need not submit the punitive damages issue to the jury. Indeed, submitting the issue to the jury in such a situation may constitute reversible error." *Alyeska Pipeline Serv. Co.,* 645 P.2d at 774.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 44 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Shoreside boldly alleges that it is entitled to $1,000,000 in punitive damages – an amount staggeringly disproportionate to Shoreside's prayer for $53,501.01 in actual damages – from "each of the defendants," and "especially Nugget." Shoreside's Amended Complaint, ¶ 39. Yet, Shoreside has not offered any fact that would "prove by clear and convincing evidence that [Nugget's] conduct was outrageous, such as acts done with malice, bad motive, or reckless indifference to the interests of another." *Lee Houston & Assocs.,* 806 P.2d at 856. Nugget entered into an arms-length agreement with Spencer Rock, the purpose and terms of which are clear from the face of the document, and then conducted itself consistent with that agreement. Even if Shoreside takes issue with this fact, the testimony of Shoreside's own corporate designee belies the sort of outrageous or malicious conduct alleged by Shoreside in its Amended Complaint:

> Q.  What was it that specifically Nugget misrepresented to
>     you – as in Shoreside?
>
> A.  Payment.
>
> Q.  And how did Nugget represent to you that they would
>     pay you?
>
> A.  Again, it's a bonded job through their bond. And as a
>     general contractor, they have an obligation to all
>     subcontractors to make sure we're paid in whole and in
>     full.
>
> . . .
>
> Q.  Other than the fact that this was a bonded project and
>     that you haven't been paid on a bonded project, how
>     has Nugget defrauded you?
>
> . . .

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 45 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

1
2
3
4
5
6

```
        A.    Again, by not paying.

        . . .

        Q.    Other than nonpayment to Shoreside, what actions by
              Nugget were taken in bad faith and/or were deliberate
              reckless, malicious, outrageous, and or with reckless
              indifference to Shoreside's rights?

        . . .

        A.    Well, again, if you didn't get paid for something, I
              think that all those could sum that up.
```

7

Krider Aff., Ex. 1, 2005 Lechner Dep., p. 54, lines 23-25; p. 55,

8

lines 1-6; 13-22; p. 58, lines 15-23.  These exchanges demonstrate

9

that the essence of Shoreside's claim against Nugget lies in

10

Shoreside's belief that it was Nugget's responsibility to ensure that

11

Spencer Rock paid Shoreside, and not that Nugget orchestrated a

12

complex conspiracy to avoid liability to Spencer Rock's suppliers.

13

    As previously discussed, Shoreside's belief in this regard was

14

and is directly linked to its erroneous understanding that Nugget

15

should be liable to Shoreside because the Homer Spit project was a

16

bonded project.  There is no factual allegation, much less clear and

17

convincing evidence, of outrageous conduct, or conduct recklessly

18

indifferent to Shoreside's interests.  Rather, there is only the

19

unfounded belief that Nugget had "an obligation to all subcontractors

20

to make sure [they were] paid in whole and in full."  *Id.*  In fact and

21

at law, Nugget bears no such responsibility; the discharge of Spencer

22

Rock's debts to Shoreside is a responsibility that Spencer Rock bears

23

alone.

24
25

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 46 of 49

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Conclusion

Shoreside is certainly within its rights to pursue payment for the work it performed on the Project.  Shoreside refuses to acknowledge, however, that it should not be pointing its finger in Nugget's direction; rather it should be pointing at Mr. LaPore and Spencer Rock.  The undisputed facts demonstrate that Shoreside never relied to its detriment on any act or omission of Nugget in entering into and performing its contract with Spencer Rock, as well as that Nugget sits similarly situated to Shoreside, in that Nugget also sustained significant financial losses as a result of its dealings with Spencer Rock.

Shoreside may have once occupied a sympathetic position, but this position has since been overshadowed by Shoreside's overtly opportunistic conduct in these proceedings.  There can be only one reason why Shoreside's current state law claims were not raised back in 1998, which is that Shoreside knew then, as it knows now, that such claims were groundless.  The testimony of Shoreside's corporate designee, as well as Shoreside's recent discovery responses, tell the same story:  despite the Ninth Circuit's prior ruling, Shoreside nevertheless clutches to the belief that Nugget is liable to Shoreside simply because the Homer Spit Project was a bonded job.  Krider Aff., Ex. 2.  Rather than accept the law of the case and redirect its efforts toward more constructive ends, Shoreside instead alleges unsupported facts on which to posit inapposite theories, while also attempting to grossly inflate its recovery with allegations of

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 47 of 49

outrageous conduct and reckless indifference that have no place in these proceedings whatsoever.

Shoreside has had its day in court and lost when Spencer was determined to be a supplier. Shoreside may have another opportunity to prove yet another lately-conceived and alternative theory of recovery under the federal Miller Act. Shoreside's state law claims, however, are clearly not burdened by any genuine issues of material fact; as such, for the reasons stated herein, Nugget is entitled to summary judgment as a matter of law.

Dated:  April 24, 2006          OLES MORRISON RINKER & BAKER LLP
                                Attorneys for Nugget Construction,
                                Inc., and United States
                                Fidelity and Guaranty Co.


                                By: s/Thomas R. Krider
                                    Thomas R. Krider
                                    krider@oles.com
                                    Washington Bar No. 29490
                                    745 West 4th Avenue, Suite 502
                                    Anchorage, AK 99501
                                    Phone: (907) 258-0106
                                    Fax:   (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 48 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106  Fax: (907) 258-5519

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on this 24th
3    day of April, 2006, a true and correct
copy of the foregoing was served

4

electronically, via ECF on:

5

Michael W. Sewright, Esq.
6    <u>mws@bpk.com</u>
Burr, Pease & Kurtz
7    810 N Street
Anchorage, AK  99501

8

Steven J. Shamburek, Esq.
9    <u>shamburek@gci.net</u>
Law Office of Steven J. Shamburek
10    425 G Street, Suite 630
Anchorage, AK  99501-5872

11

Paul Stockler, Esq.
12    <u>paulstockler@aol.com</u>
1309 West 16th Avenue
13    Anchorage, AK  99501

14    Herbert A. Viergutz, Esq.
<u>barmar@gci.net</u>
15    Barokas Martin & Tomlinson
1029 West Third, Suite 280
16    Anchorage, AK 99501

17    and by U.S. Mail on:

18    C. Patrick Stoll, Esq.
Herrig Vogt & Stoll LLP
19    4210 Douglas Bay Blvd., Suite 100
Granite Bay, CA 95746-5902

20

OLES MORRISON RINKER & BAKER LLP

21

22    By:   s/Thomas R. Krider

23

24    P JAD Memo in Support of MSJ Shoreside State Law 99310.0002

25

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against Shoreside-- Page 49 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519