Steven J. Shamburek
Alaska Bar No. 8606063
LAW OFFICE OF STEVEN J. SHAMBUREK
425 G Street, Suite 630
Anchorage, Alaska 99501
(907) 522-5339 Direct
(907) 522-5393 Fax

Attorney for Plaintiffs
Shoreside Petroleum, Inc.,
d/b/a Marathon Fuel Service
and Metco, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf, <br><br> Plaintiffs, <br><br> and <br><br> UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, on its own behalf, <br><br> Intervening Plaintiffs, <br><br> and <br><br> METCO, INC., <br><br> Intervening Plaintiff, <br><br> vs. <br><br> NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE, <br><br> Defendants. | **SHORESIDE'S DISCOVERY RESPONSES** <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> Case No. A98-0009-CV (HRH) |

1

EXHIBIT 2
Page 1 of 13

COMES NOW Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service ("Shoreside" or "Claimant"), by and through counsel, and provides the following discovery responses to Nugget Construction, Inc. and USF&G's first discovery requests.

Response To Interrogatory No. 1: Douglas Lechner with Shoreside Petroleum was aware that Lynn D. ("Randy") Randolph had worked with Trecon in 1992 and with Spencer Rock Products in 1996 or 1997. Randy Randolph also worked with Nugget in 1997. Doug Lechner received or acquired a business card from Randy Randolph stating that Randolph worked for or was affiliated with Spencer Rock. Doug Lechner was aware as early as late 1996 or early 1997 that the Homer Project was a federal project of the Corps of Engineers. Doug Lechner knew or believed that Shoreside would be paid if Spencer Rock could not pay. Shoreside's decisions were undertaken with this understanding and assumption.

Nugget appears to have structured all its activities from the outset with the goal of using Spencer Rock as a shield to avoid paying North Star, Shoreside, and Metco. Some of the Nugget documents state expressly that they are being courtesy copied to Oles, Morrison which suggests that the law firm assisted in the effort to create impediments to payment.

The District Court previously found: "It is undisputed that Shoreside made it known to Nugget that it sought payment from Nugget Construction for past fuel and lubricant delivered to the quarry and not paid for by Spencer." [ER 341 at l. 18 - 342, l. 2] Nugget has never suggested that it was unaware of the contractual relationships between Spencer and the three use

plaintiffs at the time they were performing services and providing goods to the Project.

Shoreside made a delivery of fuel on April 8, 1997 and was never paid for the delivery. [ER 340 at ll. 2 - 3 and n. 32 to the most recent appeal to the Ninth Circuit] The fuel was not completely consumed in the prosecution of the work on the Homer Project until late April and the first three weeks of May because the next delivery of fuel was not made until May 21, 1997. [ER 340 at l. 3 and n. 32] In addition, the terms of the Support Agreement were discussed and negotiated by Nugget and Spencer in March, 1997 before the April delivery of fuel by Shoreside.

Shoreside notes the statements of Randy Randolph, the central individual who worked with both Nugget and Spencer. He admitted: "The [Support] Agreement was a consensual agreement between Nugget and SRP, and SRP was free to disavow it at any point during the project. The Agreement lasted a limited duration, **specifically between April and July 1997**, and SRP did not disavow the Agreement during that duration." [ER 325, Affidavit of Lynn D. ("Randy") Randolph dated May 14, 2002, p. 2, para. 2 (Emphasis added)].

In addition, Nugget frankly admits this undisputed fact in an Opening Brief filed with the Ninth Circuit in 2003. "**Thus, in March or April 1997 (ER 107), Nugget began providing support services to Spencer Rock pursuant to a Support Agreement formally executed on April 15, 1997. (ER 7-10.)**" (Emphasis added). Nugget Opening Brief, p. 11 at ll. 9 - 11.

In addition, the deposition referenced by Nugget in Nugget's Opening Brief in the Ninth Circuit refers to the deposition of Randy Randolph taken on October 30, 1998. He stated:

> Q. **Was Nugget Construction providing Nugget employees and/or equipment to Spencer Rock in the Spencer Quarry prior to April 23, 1997, which is the date of this support agreement?**
>
> A. Yes
>
> Q. **And when did that type of cost to Nugget first occur?**
>
> A. **Late March, early April.**

[ER 107, p. 121, ll. 1 - 7 (Emphasis added)]

In addition, the Court found that Mr. Randolph was involved with both Nugget and Spencer. The Court found:

> Other significant undisputed facts in the record show that Nugget was ideally situated to take over operations at the Spencer quarry. For five years preceding his position as Nugget's project manager, Lynn D. Randolph worked as the project manager and job estimator in the Spencer quarry under its previous owner, Trecon (for whom Nugget's general manager and corporate secretary Greg Poyner also worked as a general manager). Randolph also worked as senior engineer, bid estimator, and project manager for Spencer after Robert LaPore purchases the quarry in 1994. In fact, prior to the Homer Spit project, Randolph worked for Nugget as a consultant, bid estimator, and project manager at the same time he worked for LaPore at Spencer. According to Randolph and LaPore, most of the calculations resulting in Spencer's pricing to Nugget on the Homer Spit bid were prepared by Randolph as a bid estimator and consultant for Spencer (while he also worked as a project manager for Nugget).

[ER 334 at l. 11 - 335, l. 6]

In response to a letter from Doug Lechner with Shoreside dated August 28, 1997, the Corps states in pertinent part in a

letter to Nugget dated September 9, 1997 (RRO/44):

> SUBJECT: Letter from Northern Stevedoring and Handling Corporation [Northern Stevedoring is scratched out and Shoreside Petroleum handwritten on some copies], Contract DACW85-96-C-0020, Homer Spit Repair and Extension, Homer, Alaska
>
> . . .
>
> Attached is a letter we received from Shoreside Petroleum, Incorporated, dated August 28, 1997. This letter is regarding services that they have provided for the above project for which they have not received payment.
>
> . . .
>
> We request an immediate explanation of why Shoreside Petroleum Incorporated has not been paid for the services that they have provided to the Homer project.

In response to two letters from Nugget, the Corps states in pertinent part in a letter to Nugget in August, 1997 (RRO/40):

> SUBJECT: Spencer Quarry, Contract DACW85-96-C-0020, Homer Spit Repair and Extension, Homer, Alaska
>
> . . .
>
> We acknowledge receipt of Serial Letter 611-19, dated August 6, 1997 and Serial Letter 611-21, dated August 11, 1997. We do not necessarily agree that Spencer Rock Products is only a "vendor" for Miller Act purposes.
>
> Based on the supporting costs that you outlined in Serial Letter 611-21, it appears that Nugget Construction has assumed full responsibility for operations at Spencer Quarry for the subject project. Therefore, as primary operator at Spencer Quarry, we believe Nugget Construction is responsible for prompt payment to suppliers and subcontractors who contracted with Spencer Rock Products on this project.
>
> We request that you clarify what support and project management services Nugget Construction provided to Spencer Rock Products to account for the support cost that you have shown in Serial Letter 611-21. Further, please provide information showing what work, if any, has been performed by Spencer Rock Products under its subcontract with Nugget

5

EXHIBIT 2
Page 5 of 13

Construction.

The letter states that it was courtesy copied to "United States Fidelity and Guarantee Co., Attn: Bill Wells, 4220 B Street, Anchorage, AK 99503." USF&G was on clear written notice. Nugget was preoccupied with the status of Spencer Rock. However, the Corps of Engineers notes that Nugget was obligated "not to request for progress payments that which you intend to withhold from a subcontractor or supplier." Nugget may have been successful in the first appeal to the Ninth Circuit in characterizing Spencer Rock Products as a supplier rather than a subcontractor. However, that does not relieve Nugget of paying all the suppliers and subcontractors pursuant to this contract as construed by the agency charged with administering the contract. Nugget continued to request progress payments and nonetheless withheld payment to the three claimants. Documents from the Corps noted as RRO/33, RRO/38, RRO/40, RRO/44, RRO/48 and Nugget documents 611-11, 611-21, 611-25, 611-30 and 611/33 are also responsive.

The following individuals have possible information: John Terwilliger, Randy Randolph, Greg Poyner, John Smithson and Bob Fox with Nugget Construction; Robert LaPore, Vernon Rush, Herschell Hall and Randy Randolph with Spencer Rock Products; Jane Bennett Poling and perhaps Janice Smith with USF&G; Douglas Lechner and Ron Niebrugge with Shoreside; Frank Dieckgraeff, Barbara Dieckgraeff and Dave Dieckgraeff with Metco; Jack Goodwill and Jeff Bentz and others with North Star; John Dennis Stacey with Chugach Rock Corporation; and the individuals who

worked with the U.S. Army Corps of Engineers on the Homer Project. Their respective addresses and contact numbers are noted in prior discovery responses and disclosures.

Response To Interrogatory No. 2: Nugget was a large construction company that dictated the activities of Spencer Rock/Robert LaPore almost from the outset of the relationship. Nugget created a secret Support Agreement that effectively gave Nugget complete control of Spencer Rock/Robert LaPore and the Homer Project. Nugget required that the terms of the support agreement not be disclosed to the U.S. Corps of Engineers or to the claimants. Nugget did not pay Spencer Rock which precluded Spencer Rock from paying the three claimants. Nugget knew or should have known that this was the likely consequence of its actions and inactions.

See the Responses To Interrogatory No. 1.

Response To Interrogatory No. 3: See the Responses To Interrogatory Nos. 1 and 2.

Response To Interrogatory No. 4: Spencer Rock, North Star, Shoreside and Metco were actively involved in the prosecution of the Homer Project as major suppliers of goods and services. Nugget knew about the identity and activities of each of these entities almost from the outset of the Homer Project. Nugget and USF&G each owed a duty of care not to act negligently toward the claimants. Nugget acted carelessly in its dealing with and treatment of the three claimants. Nugget deliberately and/or intentionally requested progress payments from the Corps of Engineers without and after not paying the three claimants in

contravention of the contract with the Corps. USF&G negligently handled the resolution of the three claims. Absent some documents or disclosures to the contrary, USF&G requested proofs of claim but appears not to have reviewed or addressed the claims.

Response To Interrogatory No. 5: Claimant already proved its contract-based damages and was awarded judgment for those damages by the court in 1999. In reaching this conclusion, the court also found that the goods were provided and the services performed for the benefit of the Homer Project. Those findings were not challenged on appeal and thus any challenge has been waived. Kesselring v. F/T Arctic Hero, 95 F.3d 23, 24-25 (9th Cir. 1996). The amount of the damages for the other causes of action may be more substantial. The actual attorney's fees expended may be awarded as damages based on the conduct of the defendants including fraud, misrepresentation, negligence, and/or breach of the covenant of good faith and fair dealing. These additional damages may also be awarded against USF&G under state law causes of action. Claimant also seeks punitive damages in a sum of $1,000,000.000 as deemed appropriate by the trier of fact. The claim for punitive damages arose prior to August 7, 1997 and thus is governed by the statute in effect prior to the amendment. Everyone involved in the Homer Project has some information pertinent to the performance of the work and the computation of the damages.

Response To Request For Production No. 1: Claimant incorporates all the documents that were disclosed previously including

documents attached to prior motions, oppositions, and replies. The letter from Douglas Lechner to Doug Wood with the U.S. Army Corps of Engineers dated August 28, 1997 with enclosures, the letter from Ron Niebrugge to Greg Poyner with Nugget Construction dated October 1, 1997, and the letter from Ron Niebrugge to Jane Poling with USF&G dated December 16, 1997 with attachments (Nugget Nos. 009112 - 009152) are specifically noted and incorporated.

Response To Request For Production No. 2:   See the Response To Interrogatory No. 5.

Response To Request For Production No. 3:   The letter to the Corps of Engineers with attachments dated August 28, 1997 noted above.

Response To Request For Production No. 4:   There is no written agreement.

Response To Request For Production No. 5:   Claimant has already produced any notes, correspondence, memoranda or communications it sent or received during the prosecution of the Homer Project. Claimants agreed early in the this case to cooperate in the pursuit of the claims and coordinate their activities with the understanding and expectation that any notes, correspondence, memoranda or communications produced or exchanged are protected by the joint defense privilege, the attorney/client privilege and/or other common law privileges.  See Federal Rule of Evidence 503 generally and subsections (a)(5) and (b)(3) specifically.

Response To Request For Production No. 6:   There is no written agreement.

Response To Request For Production No. 7: See the Response To Request For Production No. 5.

Response To Request For Production No. 8: There is no written agreement.

Response To Request For Production No. 9: Any communications are privileged for reasons similar to those in the Response To Request For Production No. 5. Notwithstanding this objection, claimant is not aware of any responsive documents.

Response To Request For Production No. 10: There is no written agreement.

Response To Request For Production No. 11: Any communications are privileged for reasons similar to those in the Response To Request For Production No. 5. Notwithstanding this objection, claimant is not aware of any responsive documents.

Response To Request For Production No. 12: Claimant objects that this request is overbroad and burdensome. Without waiving these objections, claimant responds that it has produced documents to all the parties in a timely manner throughout this litigation regarding the indicia of work it performed on the Homer Project. See the Response To Interrogatory No. 5.

Response To Request For Production No. 13: See the Response To Request For Production No. 12.

Response To Request For Production No. 14: There are no known photographs.

Response To Request For Production No. 15: See the Response To Interrogatory No. 5.

Response To Request For Production No. 16: Claimant objects that

this question is overbroad. Notwithstanding this objection, claimant incorporates all the documents previously produced.

Response To Request For Production No. 17: Claimant is not aware of any responsive documents.

Response To Request For Production No. 18: Claimant objects that this question is overbroad. Notwithstanding this objection, claimant incorporates all the documents previously produced.

Response To Request For Production No. 19: Shoreside produced the written agreement with Spencer Rock as an exhibit to a prior pleading. Shoreside also produced a copy of a personal guaranty executed by Robert LaPore as an exhibit to a prior pleading.

Response To Request For Production No. 20: Claimant objects that this question is overbroad. Notwithstanding this objection, claimant incorporates all the documents previously produced.

The foregoing objections to these discovery requests were made on the recommendation and advice of the undersigned.

DATED this 14th day of November, 2005 at Anchorage, Alaska.

THE LAW OFFICE OF STEVEN J. SHAMBUREK
Attorney for Plaintiff
Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service and Metco, Inc.

By: /s/ Steven J. Shamburek
Steven J. Shamburek
ABA: 8606063

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 14th day of November, 2005, a copy of the foregoing was served by mail upon the following:

Gloria Y. Ho, Esq.
Oles Morrison Rinker & Baker LLP
745 W. 4th Avenue, Suite 502
Anchorage, Alaska 99501

Paul Stockler, Esq.
Law Offices of Paul Stockler
1309 W. 16th Avenue
Anchorage, Alaska 99501

Michael W. Sewright, Esq.
Burr, Pease & Kurtz
810 N Street
Anchorage, AK 99501

*/s/ Steven J. Shamburek*
Steven J. Shamburek

## VERIFICATION

STATE OF _____ )
) ss
COUNTY OF _____ )

I, _Doug Lachner_, being first duly sworn upon oath, depose and state that: I am the _V.P./Marketing_ of Shoreside Petroleum Inc, d/b/a Marathon Fuel Service, Plaintiff/Use Plaintiff in the above-captioned action. I have read the foregoing Responses to Defendants Nugget Construction Company, Inc., and United States Fidelity and Guaranty Company discovery requests, know the contents thereof, and believe the same to be true and complete.

Name: _Doug Lachner_

Title: _V.P./Marketing_

SUBSCRIBED AND SWORN to before me this _14TH_ day of _November_ 2005.



Notary Public in and for _ALASKA_
My Commission Expires: _5/22/07_

U.S. ex rel. North Star, et al. v. Nugget Construction, et al.
A98-009 CIV (HRH)
Nugget Construction, Inc. and United States Fidelity and
Guaranty Company's First Set of Discovery Requests to
Plaintiff/Use-Plaintiff Shoreside -- Page 25 of 26

EXHIBIT 2