Traeger Machetanz, Esq.
Thomas R. Krider, Esq.
OLES MORRISON RINKER & BAKER, LLP
745 Fourth Avenue, Suite 502
Anchorage, AK  99501-2136
Telephone:  (907) 258-0106
Telecopier:  (907) 258-5519

Attorneys for Nugget Construction Co.,Inc.,
and USF&G, Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf, ) ) ) ) ) ) ) ) | No. A98-009 CIV (HRH) |
| Plaintiffs, ) ) | |
| and ) ) | |
| UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, on its own behalf, ) ) ) ) ) ) | |
| Intervening Plaintiffs, ) ) | MEMORANDUM IN SUPPORT OF NUGGET CONSTRUCTION, INC.'S AND UNITED STATES FIDELITY & GUARANTY CO., INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST NORTH STAR TERMINAL & STEVEDORE CO. |
| and ) ) | |
| METCO, INC., ) ) | |
| Intervening Plaintiff, ) ) | |
| vs. ) ) | |
| NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.,; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE, ) ) ) ) ) | |
| Defendants. ) ) | |

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

1

2                           TABLE OF CONTENTS

3    Introduction ....................................................... 1

4    I. Statement of Facts

5         A.  The contract between Nugget and Spencer Rock ............... 6

6         B.  The Support Agreement between Nugget
              and Spencer Rock ......................................... 8
7
              C.  The contract between Spencer Rock and North Star ............. 9
8
         D.  Circumstances surrounding Spencer Rock's
9            failure to pay North Star ................................. 11

10        E.  Interaction between Nugget and North Star ................. 14

11   II.  Legal Argument

12        A.  Summary judgment standard of review ...................... 17

13        B.  Because there was no contract between
14           Nugget and North Star, express or implied-in-fact,
             North Star's breach of contract claim must fail ........... 18
15
         C.  Because North Star's performance was not influenced
16           by Nugget, and because Nugget was not required to
             disclose the Support Agreement, North Star's promissory
17           estoppel, detrimental reliance and misrepresentation and
             nondisclosure claims must fail ............................ 23
18
              i.  Nugget never made an actual promise or
19                affirmative act ..................................... 24

20            ii. There is no duty to disclose the
                  Support Agreement ................................... 25
21
         D.  Nugget never owed North Star any duty of care,
22           thus, North Star's negligence claims must fail ............ 30

23        E.  North Star is not entitled to any remedy under
24           unjust enrichment and restitution, quantum
             meruit, equitable subordination or constructive
             trust because Nugget has not improperly
25

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

1

          intercepted funds due North Star or otherwise
          been unjustly enriched ................................... <u>35</u>

2

    F.  Nugget and Spencer Rock are distinct entities

3
        and Spencer Rock was never vested with any
        authority to act as Nugget's agent ........................ <u>39</u>

4

    G.  Punitive damages are not only inappropriate

5
        but, also, unallowable ................................... <u>44</u>

6
Conclusion ..................................................... <u>47</u>

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star

Pursuant to Federal Rule of Civil Procedure 56, Defendant Nugget Construction, Inc. ("Nugget") respectfully moves for summary judgment on all state law claims and causes of action alleged by Intervening Plaintiff/Use-Plaintiff North Star Terminal & Stevedore Co. ("North Star") in its Amended Complaint filed August 31, 2005.[1]  As Nugget demonstrates herein, there is no genuine issue as to any material fact and Nugget is entitled to summary judgment as a matter of law.

<u>Introduction</u>

Following the Ninth Circuit's March 3, 2005 decision in the above-captioned matter denying summary judgment to all parties and remanding the matter for further proceedings, North Star amended its complaint to include not only its several allegations based on a "telescoping" of the relationship between North Star and Nugget under the Miller Act,[2] but also to include an exhausting number of claims under Alaska state law.  North Star was subsequently afforded considerable latitude to conduct additional discovery for the purpose of substantiating these allegations and developing its claims.

---

[1] To the extent that North Star asserts state law claims against Nugget's surety, United States Fidelity & Guaranty Company ("USF&G"), USF&G also moves for summary judgment on all grounds raised by Nugget herein.

[2] In its amended complaint, North Star alleges that Nugget orchestrated a remarkable conspiracy involving Nugget, USF&G, Spencer Rock Products, Inc. ("Spencer Rock"), and Spencer Rock's bank for the express purpose of avoiding payments to Spencer Rock's vendors.  What makes this allegation even more remarkable is that North Star disregards the significant and established fact that, although Spencer Rock's material suppliers may have lost tens of thousands of dollars as a result of Spencer Rock's financial downfall, Nugget sustained losses in excess of $1.5 million as a result of its dealings with Spencer Rock.  Although not the subject of the instant motion, Nugget will show that North Star's allegations under the federal Miller Act are as baseless as its state law claims addressed herein.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary Judgment Against North Star-- Page 1 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

One need not reflect too long upon North Star's amended complaint to conclude that North Star's separate but largely overlapping state law claims were plead so that it could inflate its potential recovery from Nugget with a grossly disproportionate $1,000,000 punitive damages claim.[3]  North Star is certainly well aware that its punitive damages claim would not be permissible if North Star were proceeding under the federal Miller Act alone.  Thus, to say that North Star's state law claims are untimely raised is a considerable understatement, as there is absolutely no reason why North Star could not have included these claims in its original complaint filed approximately eight years ago.

Why then were these claims not included as part of North Star's original complaint?  The plain answer is that, at the time North Star filed its original complaint, North Star believed that there were no facts to substantiate such claims.  North Star's inclusion of these state law claims can thus reflect only an opportunistic and last-ditch effort to have yet another (and much bigger) bite at the apple by continuing to reinvent its theory of recovery in the wake of adverse decisions from the Ninth Circuit.

Here, the record is devoid of any factual bases to support North Star's demand upon Nugget.  North Star entered into a contract with Spencer Rock and rendered services under that contract, for which

---

[3] Given this Court's prior ruling that no fees are available under the Miller Act claims, North Star's demand for punitive damages is nothing more than a thinly veiled attempt to recover the large fees it has undoubtedly incurred hoping to find Nugget responsible for its claims.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 2 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

North Star invoiced Spencer Rock.  North Star extended credit to
Spencer Rock per a written credit agreement with Spencer Rock, which
was supported by a personal guarantee signed and executed by Spencer
Rock's President, Robert A. LaPore.  When Mr. LaPore indicated that he
was unable to pay North Star for its services, North Star credited
Spencer Rock's account $7,500 in consideration for a "skip bucket"
owned by Spencer Rock and used by North Star during its performance.
Jeffrey Bentz, North Star's corporate designee, expressly admitted
that North Star commenced performance per a contract with Spencer Rock
and North Star's contemporaneous correspondence confirms that North
Star's services were rendered per a contract with Spencer Rock.  The
record is also clear that Mr. LaPore acknowledged his and Spencer
Rock's responsibility to pay North Star for his arrearages, and that
North Star continues to pursue Mr. LaPore and Spencer Rock for
payment.

    North Star makes much of the fact that L.D. "Randy" Randolph,
Nugget's project manager, whose duties included overseeing the loading
of rock on to Nugget's barges, provided direction and instruction to
North Star employees.  It is a strange claim indeed to think that Mr.
Randolph, tasked with such responsibility, would not want to
communicate clearly and directly to the parties physically handling
and loading the rock onto barges for which he was responsible.  Jack
Goodwill, North Star's primary point of contact with Mr. Randolph
during performance, confirmed that Mr. Randolph's instruction and

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 3 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

direction constituted nothing out of the ordinary and that, in fact, Mr. Randolph did a good job overseeing barge loading and scheduling.

Although there may be subtle differences among their particular circumstances, North Star's story is essentially the same as its companion plaintiffs, Metco and Shoreside.  North Star entered into a contract with Spencer Rock, extended significant amounts of credit to Spencer Rock, and continued performance with only the promise of payment from Mr. LaPore, upon the belief that North Star was protected by Nugget's bond.  North Star's belief was founded upon the express advice of its legal counsel and, as will be discussed herein, when North Star was confronted with the possibility that the bond's coverage did not extend as far as North Star had anticipated, North Star began a process of historical revisionism, first and foremost by attempting to create a record after-the-fact that would show it was "protected contractually" with Nugget.  North Star's historical revisionism has since continued, evidenced by its patently manufactured and baseless charges of conspiracy, as well as and its insistence, beyond the bounds of logic and common sense, and in contravention of the established law of the case, that it is entitled to recovery from Nugget for amounts that Spencer Rock failed to pay to North Star under a contract between North Star and Spencer Rock, based on theories of breach of contract, promissory estoppel, quasi-contract, agency, detrimental reliance, quantum meruit,

///

///

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 4 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

misrepresentation and nondisclosure, negligence, equitable

subordination, and constructive trust.[4]

North Star's conduct begs the following questions:  How can

Nugget be in breach of contract when North Star acknowledges that

there was no express contract between Nugget and North Star?  How can

Nugget be held to an implied-in-fact contract in the absence of any

evidence on the part of North Star or Nugget to be bound to one

another, and upon a record that unequivocally establishes a

contractual agreement between North Star and Spencer Rock?  How can

North Star honestly argue that it relied on Nugget's actions to its

detriment, when North Star's senior employee overseeing North Star's

work indicated that Nugget's conduct during barge loading was nothing

out of the ordinary?  How can North Star allege that Nugget's

backcharging of Spencer Rock was illicit or improper, or that it was

detrimentally affected by the non-disclosure of the Support Agreement,

when North Star has been party to such agreements?  Finally, how could

Nugget have been unjustly enriched in view of the undisputed fact that

Nugget sustained losses in excess of $1.5 million resulting from

Nugget's contract with Spencer Rock?

---

[4] North Star's Amended Complaint also includes a bad faith claim that appears
to be directed solely at USF&G.  North Star's Amended Complaint, ¶ 38.  To
the extent that North Star's bad faith claim is directed at Nugget, such
claim is completely without merit.  Nugget has every right to legally defend
itself against claims that are baseless and allegations that are unfounded in
the manner Nugget so chooses.  To date, the Ninth Circuit has confirmed the
propriety of Nugget's position in this matter, when it found Spencer to be a
supplier, a fact that North Star conveniently ignores.  Nugget's
unwillingness to subject itself to further burden and expense under such
circumstances is unequivocally within its legal right, and is not an act of
bad faith.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 5 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

Even a cursory review of North Star's state law claims in full view of the undisputed facts establishes that these claims are both factually and legally baseless.  To be sure, North Star's laundry list of state law claims reflects its mulish insistence that Nugget should pay North Star the money that Spencer Rock did not for North Star's work for Spencer Rock (as well as over eight times that amount in punitive damages) because the Homer Spit Project was a federally-bonded project.  North Star remains unwilling to accept the Ninth Circuit's September 21, 2001 decision that firmly established that North Star's position was flatly wrong.  North Star also remains equally oblivious to the notion that its insistence in this regard does not render its position any more credible, or any less erroneous, over time.  The alleged factual and legal substance behind North Star's state law claims are belied by their conspicuous absence at the outset of this litigation, as well as the undisputed facts to the contrary that are discussed herein.  Accordingly, in the absence of any genuine issue of material fact, Nugget is entitled to summary judgment as a matter of law.

I.   STATEMENT OF FACTS[5]

A.   THE CONTRACT BETWEEN NUGGET AND SPENCER ROCK

1.   On or about September 28, 1996, the U.S. Corps of Engineers ("USCOE") awarded Nugget Contract DACW85-96-C-0020 to repair and extend the Homer Spit in Seward, Alaska (the "Project").  *See* Contract

---

[5] The facts set forth herein are supported by the accompanying Affidavits of Lynn D. "Randy" Randolph, Nugget's Project Manager for this contract, and Thomas P. Krider.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 6 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

No. DACW85-96-C-0020, attached as Ex. 1 to Affidavit of Lynn D. "Randy" Randolph, April 28, 2006, ("Randolph Aff."), Ex. 1, ¶ 2. USF&G provided a payment bond on the Project. *See* Payment Bond 99-0120-50298-96-5, attached as Ex. 2 to Randolph Aff., ¶ 2.

2.    On January 15, 1997, Nugget entered into a Material Contract with Spencer Rock for the supply and transport of armor, toe and filter stone rock from the Spencer Quarry, located in Seward, Alaska, to a barge docked in Seward. *See* Material Contract, December 18, 1996, attached as Ex. 3 to Randolph Aff., ¶ 3.

3.    Between the Spencer Quarry and the Seward dock, the rock traveled in four distinct segments. First, after blasting, rocks were gathered and loaded into trucks at the Spencer Quarry. These trucks transported the rock from the Spencer Quarry to the Alaska Railroad Corporation ("ARRC") station, where the rock was loaded into ARRC rail cars. This work was performed by Spencer Rock (which was later assisted by Nugget). Second, the rock traveled by ARRC rail car to Seward, where it was unloaded from the rail cars onto a "siding" at the ARRC rail yard in Seward. Third, the rock was transported by truck from the siding at the ARRC rail yard in Seward to the Seward dock. Fourth, and finally, the rock was loaded by North Star into "skip boxes" and from the boxes at the Seward dock onto barges, which carried the rock to the Homer Spit; North Star's involvement in the Project was limited to this fourth and final segment. *See* Randolph Aff., ¶ 3.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary Judgment Against North Star-- Page 7 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

B.    THE SUPPORT AGREEMENT BETWEEN NUGGET AND SPENCER ROCK

4.    Spencer Rock commenced performance on or about January 15, 1997. In April 1997, Nugget became concerned that Spencer Rock was not producing enough quantities of conforming rock for the Project. First, Nugget visited the Spencer Quarry and found large stockpiles of nonconforming rock. Second, Spencer Rock's major pieces of equipment for operating the Spencer Quarry had been repossessed by Spencer Rock's bank. In light of these developments, in early April 1997, Spencer Rock approached Nugget for assistance in carrying out Spencer Rock's duties under the Material Contract. Spencer Rock and Nugget subsequently executed a Support Agreement on April 23, 1997. *See* Support Agreement, April 23, 1997, attached as Ex. 4 to Randolph Aff., ¶ 4. Per this agreement, the parties agreed that, in exchange for Nugget's support of Spencer Rock's work under the Material Supply Contract ("Material Contract"), Nugget would recover from Spencer Rock, or "backcharge," the amounts owed to Nugget by Spencer Rock per the Material Contract; it thus memorialized an arrangement between Nugget and Spencer Rock in which the parties in effect agreed to modify the Material Contract such that Nugget would be fairly compensated for its assistance to Spencer Rock, nothing more. *Id.*

5.    Nugget's support efforts to Spencer Rock were provided exclusively to Spencer Rock. Nugget never offered or provided its support services to North Star, Shoreside or Metco. *See* Randolph Aff., ¶ 5.

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 8 of 50

6.    The total amount of rock that Spencer Rock was contractually obligated to transport, and that was in fact transported with Nugget's assistance, from the Spencer Quarry to the Nugget barges in Seward was equal to ten barge loads. *See id.*, ¶ 6.

7.    Between May 8 through August 8, 1997, Nugget paid Spencer Rock $197,184.66 for work performed under the Material Contract. *See id.*, ¶ 7.

8.    Based on the total quantity of rock delivered for the project at the rates and terms set forth in the Material Contract, the total value of rock produced by Spencer Rock was $1,623,892.50. Nugget's costs associated with rendering assistance to Spencer Rock pursuant to the Support Agreement were $1,878,138. In addition, as a direct result of Spencer Rock's failure to provide rock that conformed to the Material Contract, Nugget incurred additional expenses in excess of $1,213,380. Thus, the total amount of costs and expenses that Nugget incurred resulting from its dealings with Spencer Rock exceeded the amount that Nugget agreed to pay Spencer Rock under the Material Contract by $1,664,811. *See id.*, ¶ 8.

C.    THE CONTRACT BETWEEN SPENCER ROCK AND NORTH STAR

9.    In mid-August 1996, Robert A. LaPore, then President of Spencer Rock, approached Jack Goodwill, then Vice President for Northern Stevedore and Handling Corp., regarding North Star's potential involvement in the Homer Spit Project. *See* Krider Aff., Ex. 1, Deposition of Jack Goodwill, March 16, 2006 ("Goodwill Dep."), p. 14, lines 22-25, p. 15, lines 1-4, Ex. 3; Affidavit of Jack Goodwill,

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 9 of 50

Dec. 7, 1998, ("1998 Goodwill Aff.") ¶ 3, attached as Ex. 5 to
Goodwill Dep.  Afterward, Mr. LaPore had a conversation with Mr.
Goodwill in which Mr. LaPore requested that North Star load rock on to
Nugget's barges that would be transporting rock to the Homer Spit.
*See id.,* 1998 Goodwill Aff., ¶ 4, attached as Ex. 5 to Goodwill Dep.;
Krider Aff., Ex. 2, Deposition of Jeffrey Bentz, November 21, 2005,
("2005 Bentz Dep."), p. 136, lines 3-19, p. 137, lines 6-16.  "It was
orally agreed that [North Star] was to bill Spencer Rock for the
loading based on the labor and equipment used, on a time and material
basis, according to [North Star]'s standard rates for labor and
equipment usages in 1997."  *Id.*, 1998 Goodwill Aff., ¶ 3, attached as
Ex. 5 to Goodwill Dep.

10.  As a consequence of these discussions, "on January 28,
1997, Spencer Rock agreed to credit terms with [North Star]."  Krider
Aff., Ex. 1, 1998 Goodwill Aff., ¶ 4, attached as Ex. 5 to Goodwill
Dep.  By the terms of the credit agreement, Spencer Rock agreed to
"pay the full amount of the invoice(s) when due, which is defined to
be thirty (30) days from the invoice date unless otherwise specified
on the invoice."  *Id.*, North Star Terminal & Stevedore Co. Commercial
Credit Application, attached as Ex. 2 to Goodwill Dep.  The agreement
also specified that: "[Spencer Rock] agrees to notify [North Star]
promptly of any changes in ownership of the business conducted under
the account name, and agrees to liability for all charges to the
business  conducted under the account name unless and until [North

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 10 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Star] receives written notice of a change in ownership of that business." *Id.*

11.   In connection with the agreement, Mr. LaPore also executed an "Individual Personal Guarantee" to North Star dated January 28, 1997, in which Mr. LaPore agreed that:  "In consideration of extension of credit to applicant and/or forbearance from immediate collection of any existing indebtedness to you, I/we hereby unconditionally guarantee, jointly and severally, punctual payment and performance of all applicant's obligations, present and future, to North Star."  *Id.*

D.   CIRCUMSTANCES SURROUNDING SPENCER ROCK'S FAILURE TO PAY NORTH STAR

12.   North Star provided barge loading services to Spencer Rock between May 1, 1997 and June 26, 1997, and billed Spencer Rock a total amount of $124,724.98 for services rendered.  *See* Krider Aff., Ex. 1, 1998 Goodwill Aff., ¶ 8, attached as Ex. 5 to Goodwill Dep.  Mr. Goodwill was North Star's senior employee, and most directly involved in day-to-day operations for North Star's work, on the Homer Spit project.  *See* Krider Aff., Ex. 2, 2005 Bentz Dep., p. 124, lines 1-6.

13.   The end of North Star's involvement in the Homer Spit project coincident with Nugget's decision to relocate barge loading operations to the "City Dock."  1998 Goodwill Aff., ¶ 10, attached as Ex. 5 to Goodwill Dep., Ex. 3.

14.   By letter dated August 4, 1997 addressed to Mr. Dave Scott and Mr. Doug Wood, Army Corps of Engineers, Mr. Goodwill asked the Army Corps of Engineers to assist North Star's recovery of $124,724.98 for services rendered to Spencer Rock on the Homer Spit project.  In

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 11 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

this letter, Mr. Goodwill specifically and expressly indicates that: (i) North Star negotiated a contract for services exclusively with Spencer Rock in August 1996; (ii) under said contract, "[North Star] was to bill Spencer for the loading based on labor and equipment used;" (iii) North Star loaded five barges for the Homer Spit under said contract; (iv) North Star timely invoiced Spencer Rock for services rendered; (v) no payment has been received from Spencer Rock for services rendered, and; (vi) Mr. LaPore had stated North Star would be paid when Spencer Rock received payment from Nugget.  Mr. Goodwill also expressed his understanding that Mr. Randolph worked for Nugget, and that Mr. Randolph had contacted North Star in late April 1997, prior to North Star's commencement of work, regarding the arrival dates for the first barge and the need for the barge to fitted with wear deck.  Mr. Goodwill also stated that Mr. Randolph was responsible for "all the decisions on the loading of the barges; what type of rock to load, the quantity to load, arrival and departure of the barges."  Krider Aff., Ex. 2, Letter from Jack Goodwill to Dave Scott and Doug Wood, August 4, 1997, attached as Ex. 14 to 2005 Bentz Dep.

15.  On September 3, 1997, John Armstrong of North Star indicated in an email to Mr. Goodwill, Mr. Brazier and Scott Francis, North Star, that: "I received a call from Bob at Spencer Rock yesterday regarding the money that was owed us from the Nugget Construction Rock Job in Seward.  Bob is suggesting that he give us the skip bucket that he built for this job, in exchange for $7,400

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 12 of 50

credit on his account with us." The following day, Mr. Goodwill responded: "Sounds like a good idea, but is the bucket paid for? Who really owns the bucket? I would wait until we are paid in full, then approach Spencer on giving us the bucket in lieu of passing on our lawyers fees to Spencer." Mr. Francis also responded, directing Mr. Francis and Mr. Goodwill to "tell Spencer that we will purchase the bucket subject to inspection and a clear 'Bill of Sale.' However we will not transfer funds or issue a credit until the current outstanding account is brought back to good standing." Krider Aff., Ex. 3, Email from Scott Francis, Sept. 4, 1997, attached as Ex. 4 to March 28, 2006 Deposition of Jeffrey Bentz ("2006 Bentz Dep.").

16. On September 30, 1997, North Star and Spencer Rock executed a bill of sale in which North Star agreed to purchase from Spencer Rock the "bulk product handling skip bucket and all attachments necessary (FOB Seward Alaska)" in consideration for $7,500 "to be applied to moneys owed [North Star]." Krider Aff., Ex. 2, Bill of Sale, attached as Ex. 13 to 2005 Bentz Dep.

17. Despite its insistence that Nugget is responsible for Spencer Rock's arrearages to North Star in connection with the Project, North Star has continued to pursue both Spencer Rock and Mr. LaPore "to get paid what's due [North Star] on the job." Krider Aff., Ex. 2, 2005 Bentz Dep., p. 88, lines 5-11. This is consistent with Mr. LaPore's express acknowledgement to North Star that both he and Spencer Rock are responsible for these arrearages. *See* Krider Aff., Ex. 1, 1998 Goodwill Aff., ¶ 10, attached as Ex. 5 to Goodwill Dep.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 13 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

E.    <u>INTERACTION BETWEEN NUGGET AND NORTH STAR</u>

18.    In April 1997, prior to the commencement of North Star's loading of rock, Mr. Randolph contacted North Star regarding scheduling for the barge loading, as well as the need for a certificate of insurance from North Star, in the event that a barge was damaged during the loading.  *See* Randolph Aff., ¶ 8; Krider Aff., Ex. 1, Transmittal from Jack Goodwill to George Palmer, April 30, 1997, attached as Ex. 4 to Goodwill Dep.

19.    The barges used to transport the rock to the Homer Spit were under Nugget's responsibility and control.  Consequently, Mr. Randolph was tasked with the responsibility to coordinate scheduling and loading of the barges, including the type and quantity of rock loaded and the arrival and departure of the barges; this required direct communication between Mr. Randolph and Mr. Goodwill to ensure that loading proceeded smoothly.  Mr. Randolph's direction to North Star regarding the loading and scheduling of the barges was expressly authorized by Mr. LaPore and Spencer Rock, per the Support Agreement. *See* Randolph Aff., ¶ 9.  Based on his experience, Mr. Goodwill did not believe Mr. Randolph's actions in this regard unusual for an individual responsible for a vessel; in fact, Mr. Goodwill believed that Mr. Randolph "did a very good job" and "stayed right on top of it."  Krider Aff., Ex. 1, Goodwill Dep., p. 80, lines 23-25; p. 81, lines 1-2.  Further, Mr. Randolph's involvement or direction did not affect how North Star performed its work.  *See id.* at 84, lines 7-9.

**OLES MORRISON RINKER & BAKER** LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 14 of 50

("Q. So Mr. Randolph's involvement didn't cause you to change how you were performing your work, did it? A.  No.").

20.  Mr. Goodwill was aware that the skip bucket that North Star used to load the rock onto the barges was owned by Spencer Rock, not Nugget.  *See id.*, p. 81, lines 9-11.

21.  On August 7, 1997, Mr. Brazier had a conversation with Mr. Randolph during which Mr. Randolph explained the basis for Nugget's decision to load the barges from the City Dock, and also explained that that Spencer Rock is not a subcontractor to Nugget and, therefore, North Star was not covered by Nugget's bond.  In reference to this conversation, Mr. Francis subsequently stated that, "we can still do business with [Mr. Randolph] on a cash basis.  However, we have to make sure we are protected contractually with this character. Also, we have to be careful that we don't just black list someone." Krider Aff., Ex. 3, Email from Scott Francis, August 7, 1997, attached as Ex. 6 to 2006 Bentz Dep.

22.  No Nugget representative was present during, or otherwise involved in, the negotiations between Mr. LaPore and Mr. Goodwill that led to the contract under which North Star agreed to provide services to Spencer Rock on the Homer Spit project.  *See* Randolph Aff., ¶ 10. This is consistent with North Star's understanding that it entered into a contract with Spencer Rock, not Nugget.  *See* Krider Aff., Ex. 2, 2005 Bentz Dep., p. 150, lines 10-22, Ex. 4.

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 15 of 50

23.   Nugget never entered into a written or oral contract, express or implied, with North Star to provide services in connection with the Homer Spit project.  *See* Randolph Aff., ¶ 11.

24.   Nugget never received invoices from North Star during the course of North Star's performance and Nugget never agreed to pay North Star for any services that it provided to Spencer Rock in connection with the Homer Spit project.  *See* Randolph Aff., ¶ 12; Goodwill Dep., p. 49, lines 3-5; p. 57, lines 17-19.

25.   Nugget's payments to Spencer Rock for its work under the Material Contract were made exclusively to Spencer Rock and never to North Star.  *See* Randolph Aff., ¶ 13.

26.   Nugget never manifested any intention, directly or indirectly, by word or conduct, that Spencer Rock was an agent of Nugget, or otherwise authorized Spencer Rock or Mr. LaPore to speak on behalf of Nugget.  Further, Mr. Randolph never indicated to anyone by word or conduct that he worked for Spencer Rock, in any capacity, while he was employed by Nugget during the Homer Spit project.  *See* Randolph Aff., ¶ 15; Krider Aff., Ex. 1, Goodwill Dep., p. 34, lines 18-22.

27.   The only specific evidence that North Star has identified to support an oral contract between North Star and Spencer Rock is "Mr. Randolph's instruction on where to send [North Star's] bill." Krider Aff., Ex. 1, Goodwill Dep., p. 83, lines 1-5, Ex. 3; *see also id.*, p. 82, lines 12-25.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 16 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

28.   Mr. Goodwill is familiar with the concept of backcharging, because, among other reasons, North Star has been involved in backcharging arrangements prior to its work on the Homer Spit project. *See id.,* Goodwill Dep., p. 84, lines 10-25; p. 85 lines 1-11.

29.   The foundation of North Star's belief that it is entitled to recovery from Nugget has always been based on its misunderstanding that Spencer Rock was a subcontractor to Nugget and not a material supplier and further, that, because the Homer Spit project was a bonded project, North Star could proceed directly against Nugget under its bond.  *See* Krider Aff., Ex. 1, 1998 Goodwill Aff., ¶ 9, attached as Ex. 5 to Goodwill Dep.; Krider Aff., Ex. 2, 2005 Bentz Dep., p. 151, lines 23-25; p. 152, line 1.

II.   <u>LEGAL ARGUMENT</u>

A.   <u>SUMMARY JUDGMENT STANDARD OF REVIEW</u>

Rule 56(c) of the Federal Rules of Civil Procedure instructs that a motion for summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c). Federal summary judgment procedure requires the piercing through the pleadings and their adroit craftsmanship to reach the substance of the claim.  *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 17 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

1    Where the record taken as a whole could not lead a rational trier

2    of fact to find for the non-moving party, then there is no genuine

3    issue for trial.  *See id.*  Accordingly, "an adverse party may not rest

4    upon the mere allegations or denials of his pleading, but his

5    response, by affidavits or as otherwise provided in this rule, must

6    set forth specific facts showing that there is a genuine issue for

7    trial."  Fed. R. Civ. P. 56(e).

8    B.   BECAUSE THERE WAS NO CONTRACT BETWEEN NUGGET AND NORTH STAR,
         EXPRESS OR IMPLIED-IN-FACT, NORTH STAR'S BREACH OF CONTRACT CLAIM
9        MUST FAIL

10   At the heart of North Star's implied in fact contract claim is

11   the allegation that that North Star worked directly for Nugget and,

12   specifically, that the direct communications between Mr. Goodwill and

13   Mr. Randolph during the loading of the barges created an implied-in-

14   fact contractual relationship.  As Nugget will show herein, Mr.

15   Randolph's direct dealings with Mr. Goodwill, as is true of all of Mr.

16   Randolph's dealings with North Star, does not evidence a meeting of

17   the minds between Nugget and North Star.  Indeed, the undisputed

18   evidence shows that Mr. Randolph acted as would any prudent person

19   responsible for the safe, smooth and efficient loading of rock onto a

20   barge, by communicating directly with the individuals who were charged

21   with physically loading that rock.  These communications do not

22   evidence the intent necessary to establish the existence of an

23   implied-in-fact contract.

24   It is established law of the case that North Star "never entered

25   into express contracts with Nugget."  *North Star Terminal & Stevedore*

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 18 of 50

*Co. ex rel. v. Nugget Construction Inc., et al. v. North Star Petroleum Inc. ex rel; North Star, Inc.*, Slip Op. No. 02-35887 at 4 (9th Cir., March 3, 2005). Thus, in the absence of an express contract, such contract must be implied-in-fact if Nugget is to be held in breach.

Under Alaska law,[6] an implied-in-fact contract requires all of the elements of an express contract and, significantly, an intent to be bound. *See Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1140 (Alaska 1996). An implied-in-fact contract "arises where the court finds from the surrounding facts and circumstances that the parties intended to make a contract but failed to articulate their promises and the court merely implies what it feels the parties intended." *Id.* at 1140. "[I]mplied-in-fact contracts are closely related to express contracts" whereby "each requires the parties to form an intent to enter into a contract." *Id.* at 1142; *see also Altman v. Alaska Truss & Mfg.*, 677 P.2d 1215, 1226 (Alaska 1983) ("an implied-in-fact contract only exists where there is mutual assent between the parties").

The material and undisputed facts establish that North Star entered into and performed under a contract with Spencer Rock, and only Spencer Rock, and that there was never any claim of a contractual

---

[6] It bears noting that the legal elements necessary to establish the existence of a contract implied-in-fact under Alaska state law are distinct from the elements necessary to establish federal Miller Act liability under a "strawman" theory; significantly, even if North Star could substantiate its Miller Act claims, which it cannot, this fact alone would not indicate the existence of an implied-in-fact contract under Alaska law between Nugget and North Star without additional evidence of a meeting of the minds.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 19 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

relationship between North Star and Nugget until North Star realized that Spencer Rock and Mr. LaPore did not intend to pay North Star for its services.  North Star's penchant for historical revisionism could not be more evident:  After realizing that Nugget's bond would not protect North Star from Spencer Rock's nonpayment, North Star's Scott Francis advised that:  "We can still do business with Mr. Randolph on a cash basis.  However, [w]e have to make sure we are protected contractually with this character."  Krider Aff., Ex. 3, Email from Scott Francis, August 7, 1997, attached as Ex. 6 to 2006 Bentz Dep. North Star's insistence on being "contractual protected" in its further dealings with Nugget, utterly belie its revisionist assertion that it had a contractual relationship with Nugget from the outset of its work for Spencer Rock.

North Star's affinity for shrouding fact with fiction is equaled only by the disturbing ease with which it can assert positions entirely inconsistent with one another.  North Star's claim of a contract with Nugget and demand for payment thereunder does not stop North Star from also arguing that:  "North Star had valid agreements with Spencer and LaPore to provide services, labor and equipment in connection with the Homer Project under set terms, prices and conditions."  North Star's Amended Complaint, ¶ 35.  It is difficult to understand how claims against Nugget based upon implied-in-fact contract can co-exist in such proximity with an assertion that renders such claims both factually and legally impossible.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 20 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

1    Notwithstanding these observations that cast serious doubt upon

2    North Star's credibility, the undisputed facts establish independently

3    that there was never a meeting of the minds between North Star and

4    Nugget sufficient to impose an implied-in-fact contract.  North Star's

5    contract for work was negotiated between Mr. Goodwill and Mr. LaPore

6    and involved no one from Nugget.  North Star and Spencer Rock

7    thereafter entered into a credit agreement that was supported by a

8    personal guarantee by Mr. LaPore, which did not involve Nugget in any

9    capacity.  North Star invoiced Spencer Rock, not Nugget, during North

10   Star's period of performance.  North Star was fully aware that the

11   skip box into which it was loading rock was owned by Spencer Rock and

12   not Nugget.  After Mr. LaPore and Spencer Rock failed to pay North

13   Star, it was Spencer Rock's account, not a Nugget account, that was

14   credited for the sale of the skip box; further, North Star has

15   continued to pursue Spencer Rock and LaPore for payment from the date

16   of nonpayment to the present, which is consistent with North Star's

17   understanding at the time that "it ha[d] been working for Spencer Rock

18   Products from May 1, to June 26, 1997," as well as its current claim

19   that "North Star had valid agreements with Spencer and LaPore to

20   provide services, labor and equipment in connection with the Homer

21   Project under set terms, prices and conditions."  Krider Aff., Ex. 1,

22   Letter from Jack Goodwill to Dave Scott and Doug Wood, Aug. 4, 1997,

23   attached as Ex. 14 to 2005 Bentz Dep.; *Id.*, North Star's Amended

24   Complaint, attached as Ex. 5 to 2005 Bentz Dep.  Moreover, the

25   foregoing undisputed facts are entirely consistent with Mr. LaPore's

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 21 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

express admission of liability to North Star for his breach of contract, the truth of which is untainted by Mr. LaPore's patently false assertion that Spencer Rock was never paid by Nugget, which in turn, affected Spencer Rock's ability to pay North Star. *See* Krider Aff., Ex. 1, 1998 Goodwill Aff., ¶ 10, attached as Ex. 5 to Goodwill Dep.

North Star's insistence that Mr. Randolph's direction to Mr. Goodwill was sufficient to create an implied-in-fact contract is nothing more than a red herring, designed to draw the Court's attention from the complete absence of evidence suggesting that North Star believed it had a contract with Nugget – at least until North Star determined, ultimately following the Ninth Court's earlier decision in this matter, that North Star was not protected by Nugget's bond.  It was a Nugget barge onto which rock was being loaded; therefore, it was a Nugget representative, Mr. Randolph, who naturally provided direction regarding barge scheduling and loading.  For the same reason, it can only be regarded as a prudent decision on Mr. Randolph's part to ensure that the barge deck would not be damaged by the loading operations by requesting a certificate of insurance from the company physically responsible for dropping the rock onto the barge deck.  As Mr. Goodwill indicated, Mr. Randolph's directions and conduct in this regard were nothing out of the ordinary.

The undisputed facts show that, Nugget's interaction with North Star was the natural and ordinary consequence of the type of work performed by North Star, and necessary to ensure smooth, efficient and

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 22 of 50

safe progress.  Nugget never expressed an intent to be bound to North Star; similarly, North Star cannot point to any contemporaneous evidence demonstrating that North Star believed its contract was with Nugget and not Spencer Rock.  Consequently, North Star's implied-in-fact contract claim must fail.

C.   <u>Because North Star's performance was not influenced by Nugget, and because Nugget was not required to disclose the Support Agreement, North Star's promissory estoppel, detrimental reliance and misrepresentation and nondisclosure claims must fail</u>

Although identified as three separate causes of action, North Star raises essentially the same allegations to support its promissory estoppel, detrimental reliance, and misrepresentation and nondisclosure claims.  In support of its promissory estoppel claim, North Star alleges that Nugget's words and conduct induced North Star to provide services to the Homer Spit Project. *See* North Star's Amended Complaint, ¶ 27.  Similarly, in support of its detrimental reliance claim, North Star asserts that the bond posted by Nugget and USF&G was "an additional inducement for it to continue performing." *Id.*, ¶ 30.  Finally, North Star's detrimental reliance claim resembles strongly its misrepresentation and nondisclosure claim:  "By such words, conduct and/or omissions, [Nugget] misled North Star, the Federal Government and other companies similarly situated to North Star, regarding the true relationships between Spencer and Nugget, the security of the payment bond, and Nugget's dominance and control over Spencer and LaPore and rechanneling payments to itself for its own benefit." *Id.*, ¶ 33.  The common thread running through each of these

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 23 of 50

causes of action is the assertion that North Star's performance was induced upon reliance of some act or omission on the part of Nugget.

i.    Nugget never made an actual promise or affirmative act

Under Alaska law, there are four requirements for a promissory estoppel claim: "(1) the action induced amounts to a substantial change of position; (2) it was either actually foreseen or reasonably foreseeable by the promissor; (3) an actual promise was made and itself induced the action or forbearance in reliance thereon; and (4) enforcement is necessary in the interest of justice." *Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1142 (Alaska 1996). Significantly, Alaska courts have long held that promissory estoppel requires that "an actual promise was made." *Brady v. State*, 965 P.2d 1, 10 (Alaska 1998).

Similarly, detrimental reliance can only occur, legally speaking, when the party seeking to invoke the doctrine of equitable estoppel has relied reasonably on the representation of the adverse party. *See State Dept. of Revenue v. Northern TV, Inc.*, 670 P.2d 367, 370 (Alaska 1983). A party claiming equitable estoppel must prove four elements: "(1) assertion of a position by conduct or word; (2) reasonable reliance thereon; (3) resulting prejudice; and (4) the estoppel will be enforced only to the extent that justice so requires." *Ogar v. City of Haines,* 51 P.3d 333, 335 (Alaska 2002).

North Star's promissory estoppel and detrimental reliance claims suffer from numerous and considerable shortcomings; most significant, Nugget never made an "actual promise" to North Star, much less an

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 24 of 50

actual promise that "itself induced the action or forbearance in reliance thereon" on the part of North Star. *Reeves*, 56 P.3d at 670; *see Brady*, 965 P.2d at 10. Neither Mr. Randolph nor anyone from Nugget promised anything to North Star; moreover, North Star was never induced to perform or render services by any act of Nugget; indeed, Mr. Goodwill expressly confirmed that Mr. Randolph's involvement in the Homer Spit Project – including Mr. Randolph's confirmation that North Star's invoices should be sent to Spencer Rock – did not change how North Star performed its work. *See* Krider Aff., Ex. 1, Goodwill Dep., p. 84, lines, 7-9. Because Mr. Randolph was not present at contract negotiations between Mr. Goodwill and Mr. LaPore, and because Mr. Randolph's directions and instructions to Mr. Goodwill and others at North Star did not affect the way in which North Star conducted itself during performance, there could not have been an actual promise that induced any action or forbearance in connection with either: (i) North Star's decision to enter into its agreement with Spencer Rock, or (ii) North Star's continued performance under its contract with Spencer Rock. For this reason alone, North Star's promissory estoppel and detrimental reliance claims must fail.

    ii.   <u>There is no duty to disclose the Support Agreement</u>

In the absence of any affirmative act, the only conceivable fact on which North Star could rely in support of its remaining

///

///

///

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 25 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

misrepresentation and nondisclosure claims[7] is that it detrimentally relied upon, and was induced to act by, Nugget's nondisclosure of its Support Agreement with Spencer Rock.  These remaining theories of recovery thus turn on one single and dispositive question of law:  Was Nugget legally required to disclose its Support Agreement with Spencer Rock to North Star?

If the answer is yes, then there is a genuine issue of material fact regarding the nature of the relationship between Nugget and Spencer Rock and whether North Star would have relied upon the information in the Support Agreement in connection with the prosecution of its work under its contract with Spencer Rock.  If the answer is no, then it does not matter whether North Star would have changed its position with the knowledge of information in the Support Agreement because North Star was not entitled to such information in the first instance.

---

[7] In addition to fraudulent and negligent misrepresentation, North Star also makes a claim for "innocent" misrepresentation.  Innocent representation occurs when "one who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently."  *Bevins v. Ballard*, 655 P.2d 757, 762 (Alaska 1982) (citing section 552C(1) of the Restatement (Second) of Torts (1977)).  In addition to the reasons discussed herein why North Star's misrepresentation claim must fail, because there is no "sale rental or exchange transaction," North Star's innocent representation claim is inapposite.  *See also Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148, 1153-54 (Alaska 1984) (relying on *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E. 2d 443 (Ill. 1982), which held that a food processor could not recovery against a manufacturer of a defective grain storage tank for economic loss under the tort theories of strict liability, or negligence or innocent misrepresentation).

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 26 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

1    Negligent misrepresentation arises when: (1) a party accused of
2    misrepresentation made a statement in the course of his business,
3    profession, or employment, or in any other transaction in which he has
4    pecuniary interest, (2) the representation supplied false information,
5    (3) there was justifiable reliance on the false information and (4)
6    the accused party failed to exercise reasonable care or competence in
7    obtaining or communicating information. *See Reeves v. Alyeska*
8    *Pipeline Serv. Co.*, 56 P.3d 660, 670-671 (Alaska 2002). Further,
9    "[n]ot every casual response, not every idle word, gives rise to a
10   cause of action," and, significantly, liability arises only where
11   there is a duty, if one speaks at all, to give correct information.
12   *Howarth v. Pfeifer,* 443 P.2d 39, 42 (Alaska 1968) (citing
13   *International Prods. Co. v. Erie R.R.,* 155 N.E. 662, 663, *cert.*
14   *denied*, 275 U.S. 527 (1927)).

     Significantly, "[t]o prevail in an action for fraudulent or
15   negligent misrepresentation the plaintiff must prove the existence of
16   either an affirmative misrepresentation or an omission where there is
17   a duty to disclose." *Hagans, Brown & Gibbs v. First Nat. Bank of*
18   *Anchorage*, 810 P.2d 1015, 1019 (Alaska 1991). The duty to disclose
19   arises when facts are concealed or unlikely to be discovered because
20   of the special relationship between the parties, the course of their
21   dealings, or the nature of the fact itself. *See Matthews v. Kincaid*,
22   746 P.2d 470, 471-472 (Alaska 1987). Nondisclosure similarly requires
23   a failure to disclose information when there is an affirmative duty to
24   do so. *Turnbull v. LaRose*, 702 P.2d 1331, 1334 (Alaska 1985) (citing

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 27 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

factors for disclosure of information for parties in a business transaction as set forth in Restatement (Second) of Torts, § 551 (1977)).

As a threshold matter, North Star fails to acknowledge that the Support Agreement is a legal and binding agreement between Nugget and Spencer Rock.  There is no rule or maxim, no statute or regulation, no principle or guideline, under either Alaska state law or federal law, that would preclude Spencer Rock from accepting Nugget's assistance in completing Spencer Rock's work under its contract with Nugget and, in full fair consideration therefor, allowing Nugget to backcharge Spencer Rock for the time, labor and materials associated with that assistance.  Indeed, even if Nugget and Spencer Rock had not entered into the Support Agreement, Nugget would be well within its legal right to withhold from Spencer Rock payments for work within the scope of the Material Contract that Nugget had to perform itself:

> A general contractor may be justified in refusing to make a progress payment to the subcontractor when the latter has failed to substantially perform his contractual obligations entitling him to the payment.  *See* 3A Corbin on Contracts § 708 (1960); *see also id.* § 692 at 273; Restatement (Second) of Contracts § 237, comment d (1981).  It follows that the general contractor is entitled to withhold from a progress payment a valid backcharge for work within the scope of the subcontract which the general contractor has had to perform itself.

*Howard S. Lease Constr. Co. & Assoc. v. Holly*, 725 P.2d 712, 715-716 (Alaska 1986).  Considering that North Star is not only familiar with the concept of backcharging, but has itself been party to such agreements in which North Star was backcharged for damages it caused during performance, North Star's objection to the Support Agreement

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 28 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

certainly rings hollow.  In short, although North Star may have raised a host of inapposite legal theories and baseless factual allegations in its amended complaint, North Star has never alleged that the Support Agreement was illegal or otherwise void, nor can it as a matter of law.

Second, North Star has not identified any statutory or common law duty under Alaska state or federal law that contracts such as the Support Agreement must be disclosed or published for public review. As Nugget has stated time and again, it entered into the Support Agreement with Spencer Rock to ensure that its performance on its contract with the Federal Government would not suffer from anticipated difficulties in Spencer Rock's performance of its contract with Nugget.  There was no other purpose.  Regardless, even if North Star disputes this fact, whether North Star may have altered its course of performance of its contract with Spencer Rock, if it had knowledge of the Support Agreement, is a moot point.  Nugget was not bound by law or by duty to disclose the Support Agreement to anyone;[8] therefore, North Star may not assert that it detrimentally relied upon Nugget's nondisclosure of the Support Agreement, under any theory. Consequently, in the absence of any genuine issue of material fact, Nugget is entitled to summary judgment as a matter of law on North

---

[8] Indeed, if Nugget had disclosed to Spencer Rock's material suppliers the substance of the Support Agreement prior to date Spencer Rock executed its contract with North Star, Nugget may well have exposed itself to suit by Spencer Rock on a theory of tortious interference with contract or economic relations.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 29 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Star's promissory estoppel, detrimental reliance, and

misrepresentation and nondisclosure claims.[9]

D. **Nugget never owed North Star any duty of care, thus, North Star's negligence claims must fail**

North Star's negligence claim appears pulled out of thin air:

"Under the circumstances, [Nugget] owed [North Star] . . . a duty of

care, including statutory duties, which [Nugget] breached, legally

causing harm and damages to North Star . . . including nonpayment of

the principal sum due, interest, late payment charges, and attorney

fees."  North Star's Amended Complaint, ¶ 34.  North Star does not

identify the nature of the supposed duty of care that was allegedly

breached by Nugget or any statute that might support such a theory.

Under Alaska law, "[t]he initial step in deciding whether an

action for negligence can be maintained is to consider whether a duty

exists."  *Mesiar v. Heckman*, 964 P.2d 445, 448 (Alaska 1998).

"Whether an actionable duty exists is a question of law and public

policy."  *Id.*  "'Duty' is not sacrosanct in itself, but is only an

expression of the sum total of those considerations of policy which

lead the law to say that the particular plaintiff is entitled to

---

[9] It does not matter that North Star understood "that the Homer Project was a
government project of the Army Corps of Engineers and that Nugget and its
surety posted a bond to provide payment for any unpaid goods or services," or
that "[North Star] relied on this understanding as an inducement for [North
Star] to continue performing."  North Star's Amended Complaint, ¶ 30.
Despite its insistence to the contrary, the Ninth Circuit previously
established that North Star, a second-tier vendor, was in error in its
understanding and may not recover against Nugget simply because the Homer
Spit Project was a bonded job.  Thus, North Star's awareness of Nugget's
posting of the bond does nothing to support North Star's claims.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 30 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

protection." *Id.* (quoting *City of Kotzebue v. McLean*, 702 P.2d 1309, 1313 (Alaska 1985) and William L. Prosser, *The Law of Torts* § 53, at 325 (4th ed. 1971)). Alaska courts will "first define the class of cases to which [its] rulings apply, then weigh the factors which support and oppose the imposition of liability in that class of cases." *Id.* "In the first phase of duty analysis . . . duty is at heart a question of policy centering on the basic relationship between the parties rather than the nature of their conduct on a given occasion. Particular conduct becomes important only when a duty is imposed; the conduct then helps to determine the applicable standard of care." *Id.* (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 356 (5th ed. 1984)). Notably, in circumstances in which a negligence claim is predicated upon an inaction or omission, there must be "some definite relation between the parties, of such a character that social policy justifies the imposition of a duty to act," or "a special relationship creating that duty," for negligence liability to attach. *Ballum v. Weinrick's, Inc.*, 633 P.2d 272, 273, 276 (Alaska 1981) (citing W. Prosser, *The Law of Torts*, § 56 at 339 (4th ed. 1971)).

If the court can identify a class of cases to which its ruling would apply, only then need it turn to the second phase of its analysis, which involves a weighing of the factors that support and oppose the imposition of liability:

> [1] The foreseeability of harm to the plaintiff, [2] the
> degree of certainty that the plaintiff suffered injury, [3]
> the closeness of the connection between the defendant's
> conduct and the injury suffered, [4] the moral blame

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 31 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

attached to the defendant's conduct, [5] the policy of
preventing future harm, [6] the extent of the burden to the
defendant and consequences to the community of imposing a
duty to exercise care with resulting liability for breach,
and [7] the availability, cost and prevalence of insurance
for the risk involved.

*Kooly v. State*, 958 P.2d 1106, 1108 (Alaska 1998); *see also D.S.W. v.*

*Fairbanks North Star Borough School District*, 628 P.2d 554, 555

(Alaska 1981).

Here, the relationship between Nugget and North Star is one of

prime contractor and second-tier vendor.  The only connection between

Nugget and North Star is that both parties worked on the Homer Spit

Project during the same period, a fact that was not brought about by

Nugget, and that was entirely dependent upon Mr. LaPore's decision to

approach North Star for assistance on the project and North Star's

decision to accept Mr. LaPore's invitation.  Further, for reasons

discussed earlier, there is no privity of contract between Nugget and

North Star.

This is not the sort of relationship, much less a special

relationship that can define a class of cases to which a court could

apply a ruling or, specifically, impose a duty under a negligence

theory.  Such relationships are not bound by any duty under statute or

common law, or as a matter of public policy, that gives rise to a

cause of action in negligence.  North Star has never identified any

such duty.  In fact, the Alaska Supreme Court has specifically held

that a lack of privity will preclude recovery for pure economic loss

upon a negligence theory, which follows the longstanding and majority

rule in most jurisdictions.  *See Smith v. Tyonek Timber, Inc.,*

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 32 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*Constr., Inc.*, 680 P.2d 1148, 1153-1154 (Alaska 1984); *see also Moorman Manufacturing Co.* v. *National Tank Co.*, 435 N.E.2d 443 (Ill. 1982) (cited in *Smith*).[10]  The Court should not indulge North Star's request to impose upon the attenuated relationship between a prime contractor and second-tier vendor not in privity with one another a duty that has never before been applied under Alaska (or any) law. *Cf. State v. Osborne*, 607 P.2d 369, 371 (Alaska 1980) (holding that homeowner did not owe any duty to carpenter hired by homeowner's builder when builder failed to compensate carpenter for work on homeowner's project).

Even if there were privity between Nugget and North Star, recovery of purely economic losses on a theory of negligence would require a showing that "the defendants knew or reasonably should have foreseen both that particular plaintiffs or an identifiable class of plaintiffs were at risk and that ascertainable economic damages would ensue from the conduct." *Mattingly v. Sheldon Jackson College*, 743 P.2d 356, 360 (Alaska 1987).  Here, there is a complete absence of "conduct" attributable to Nugget that could support the imposition of a duty; North Star may complain that the circumstances surrounding the Support Agreement constitute actionable conduct but, as the Alaska courts, as well as North Star itself, have expressly recognized, there

[10] *Smith* involved a claim by a subcontractor, Smith, against a concrete supplier, Tyonek, that was selected by the prime contractor, H&S.  The court held, *inter alia*, that "Smith's lack of privity with Tyonek precludes his recovery for pure economic loss based on a negligence theory."  Smith, 680 P.2d at 1154.  The same reasoning applies here:  because North Star is not in privity with Nugget, North Star should be precluded from recovering from Nugget for pure economic loss based upon a theory of negligence.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary Judgment Against North Star-- Page 33 of 50

is nothing improper about providing support to contractor and then backcharging that contractor for the value of the support.  *See Howard S. Lease Constr. Co. & Assoc. v. Holly*, 725 P.2d 712, 715-716 (Alaska 1986); Krider Aff., Ex. 1, Goodwill Dep., p. 84, lines 10-25, p. 85 lines 1-11.  Moreover, there is absolutely no way that Nugget could have foreseen that Mr. LaPore would fail to pay Spencer Rock's suppliers, including North Star.

It is for these same reasons that the "tortuous walk" through the often-cited factors set forth in *Kooly* would be an exercise in futility, assuming a court determined that the relationship between a Nugget and North Star was sufficiently ascertainable as to apply a ruling.  *See Smith*, 680 P.2d at 1153 (describing attempt to apply factors similar to those set forth in *Kooly* in case in which parties lacked privity as "futile"); *Kooly*, 958 P.2d at 1109-1111; *Mattingly*, 743 P.2d at 360 (emphasizing "the role of foreseeability as it relates to duty owed and to proximate cause" in adopting rule permitting recovery for purely economic losses).  To be sure, attempting to analyze the [1] foreseeability and [2] certainty of North Star's losses would have required an understanding of the motivations underlying Mr. LaPore's decision to breach his agreement with North Star.  In the same vein, analyzing:  [3] the closeness of the connection between Nugget's conduct and North Star's injury when there was neither a closeness nor a connection; [4] the moral blame attached to Nugget's conduct, when there was no conduct on which to assess moral blame; [5] the policy of preventing future harm when the future

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 34 of 50

harm cannot be readily ascertained; [6] the burden to Nugget and the consequences to the Alaska contracting community by imposing a duty never before known in the history of contract or tort law, or; [7] the availability, cost and prevalence of insurance for the risk involved when there has never been in fact, and likely never been contemplated, a need for such insurance, would be a futile exercise indeed. *See Kooly*, 958 P.2d at 1108.

In light of the foregoing, North Star's bald assertion that Nugget owed North Star a duty of care is not enough to make it so. Moreover, North Star has also failed to cite any federal or state law that imposes a statutory duty between a prime contractor and a second-tier vendor of a supplier to one another. In fact, as the Ninth Circuit held in its first decision, the statutory law is to the contrary. In the absence of any genuine issue of material fact, Nugget is entitled to summary judgment dismissal of North Star's negligence claims as a matter of law.

E.    North Star is not entitled to any remedy under unjust enrichment and restitution, quantum meruit, equitable subordination or constructive trust because Nugget has not improperly intercepted funds due North Star or otherwise been unjustly enriched

North Star also alleges a number of equitable causes of action, including unjust enrichment and restitution, quantum meruit, equitable subordination and constructive trust. At the center of these claims is the allegation that, through the Support Agreement, Nugget improperly exercised its influence over Spencer Rock to intercept and unjustly retain funds that are due North Star.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 35 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

The concepts of quasi-contract, unjust enrichment, contract implied-in-law, and quantum meruit are very similar and interrelated; courts generally treat actions brought upon these theories as essentially the same.  *See Alaska Sales and Serv., Inc. v. Millet*, 735 P.2d 743, 746, fn. 6 (Alaska 1987).  The three elements for a quasi-contract or quantum-meruit claim are as follows:  1) a benefit was conferred upon the defendant by the plaintiff; 2) an appreciation by the defendant of such benefit; and 3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof. *See Reeves v. Alyeska Pipeline Serv. Co*., 926 P.2d 1130, 1143 (Alaska 1996).  The courts are in accord in stressing that the most significant requirement for recovery in quasi-contract is that the enrichment to the defendant must be unjust; that is, the defendant must receive a true windfall or "something for nothing."  *Alaska Sales and Serv., Inc.*, 735 P.2d at 746.

A constructive trust will be ordered to "compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs.  When a court finds that a defendant is the holder of a property interest which he retains by reason of unjust, unconscionable, or unlawful means, it takes such interest from the defendant and vests it in the wronged party.  *See McKnight v. Rice, Hoppner Brown & Brunner*, 678 P.2d 1330, 1335 (Alaska 1984).  Similarly, outside of the standard bankruptcy context in which it is typically applied, the doctrine of equitable subordination will apply

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 36 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

in order to "undo or offset any inequity in the claim position of a creditor that would produce injustice or unfairness to other creditors." *Nerox Power Systems, Inc. v. M-B Contracting Co., Inc.*, 54 P.3d 791, 795 (Alaska 2002) (citations omitted).

Here, the undisputed facts establish that Nugget paid Spencer Rock $197,184.66 and that Nugget sustained losses in excess of $1.5 million in connection with its dealings with Spencer Rock. This is not a situation in which Nugget received a windfall or retained something for nothing, or, specifically, improperly retained money that was due Spencer Rock, which in turn precluded Spencer Rock from discharging its obligation to North Star. Quite to the contrary, Nugget fully and fairly compensated Spencer Rock per the Material Contract as modified by the Support Agreement and, for reasons that are not yet clear, Spencer Rock then blatantly lied to North Star by withholding North Star's payment on the basis that Spencer Rock was never paid by Nugget. There is no principle in equity that would permit North Star to recover money paid by the United States to Nugget that was rightfully earned on the ground that Spencer Rock breached its contract with North Star. If anyone has been unjustly enriched, it is Mr. LaPore and Spencer Rock, whose conduct resulted in the nonpayment of Spencer Rock's suppliers, as well a breach of its contract with Nugget that resulted in Nugget's loss of over $1.5 million dollars.

Further, it is well-established under Alaska law that a party to an express contract may not seek recovery on extra-contractual

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 37 of 50

theories such as quantum meruit or implied contract.  *See Mitford v. de Lasala*, 666 P.2d 1000, 1006 n.1 (Alaska 1983); *Fairbanks North Star Borough v. Kandik Const., Inc. & Assoc.*, 795 P.2d 793, 799 (Alaska 1990), *opinion vacated in part on rehearing on other grounds*, 823 P.2d 632 (Alaska 1991).  Nevertheless, North Star unabashedly seeks to avoid or ignore this rule by attempting to recover from Nugget the very same quantum that is covered by North Star's contract with Spencer Rock.

The conclusion that North Star cannot recover under its equitable theories remains true even if North Star should attempt to create a genuine issue of material fact regarding Nugget's intentions behind the execution of the Support Agreement.  Regardless of the intent that North Star ascribes to Nugget, the fact would remain that Nugget has not been unjustly enriched, and that Spencer Rock was compensated by Nugget per the Material Contract, as modified by the Support Agreement.  To the extent that North Star would contend that Nugget received value for North Star's loading of the barges, such value was wholly offset by Spencer Rock's failure to perform and breach of its contract with Nugget and, consequently, the losses that Nugget sustained therefrom.  Accordingly, because there is no genuine issue of material fact Nugget is entitled to summary judgment on North Star's equitable claims.

///

///

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary Judgment Against North Star-- Page 38 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

F.    <u>Nugget and Spencer Rock are distinct entities and Spencer Rock was never vested with any authority to act as Nugget's agent[11]</u>

In support of its agency claim, North Star alleges that Mr. LaPore and Spencer Rock became agents of Nugget through Nugget's "dominion, control and overreaching with respect to Spencer and LaPore's operations and affairs, its indebting Spencer and LaPore, and its interception and rechannleing of funds to itself otherwise owed Spencer and LaPore and [North Star]." North Star's Amended Complaint, ¶ 29. North Star alleges further that "Nugget, through its so-called 'support' arrangements and otherwise, overwhelmed, undermined, and effectively took over Spencer and LaPore and took advantage of North Star and its services." *Id.* Not only do these factual allegations fail to support a claim of agency between Nugget and Spencer Rock on their face; these allegations also evidence North Star's fundamental misunderstanding of the governing law regarding the relationship between a principal and its agent.

"Under Alaska law, an agency relation exists only if there has been a manifestation of the principal to the agent that the agent may act on his account and consent by the agent so to act." *Harris v. Keys*, 948 P.2d 460, 464 (Alaska 1997) (citations omitted) (relying upon, *inter alia*, Restatement (Second) of Agency § 15).

[11] It should be noted that the Court previously held that "[t]here are no facts in the record supporting the inference that Spencer acted as an agent of Nugget at the time that Spencer hired North Star, North Star, or [sic] Nugget." *United States of America d/b/a North Star Terminal & Stevedore Co., et al. v. Nugget Construction, Inc., et al.*, Slip Op. No. A98-0009-CV (filed Aug. 30, 2002), at 5. The Court further held that: "Nothing in the [Support] agreement expresses that Nugget and Spencer are joint venturers, partners, or intended to act as principal and agent." *Id.* at 6.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary Judgment Against North Star-- Page 39 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

Significantly, "the Restatement's requirement that an agent act 'on the principal's account' should be interpreted as requiring action under the principal's control, rather than merely action which serves the principal's purposes." *Id.* at 465.

Further, "in order for an agency relationship to exist, the agent must have 'a power to alter the legal relations between the principal and third persons.'" *Manes v. Coats*, 941 P.2d 120, 123-24 (Alaska 1997) (quoting Restatement (Second) of Agency § 12). "The principal, in turn, must have 'the right to control the conduct of the agent with respect to matters entrusted to him.'" *Id.* at 124 (quoting Restatement (Second) of Agency § 14). "If an agency relationship does exist, the 'extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties, interpreted in light of the circumstances under which it is made.'" *Id.* at 124 (quoting Restatement (Second) of Agency § 376).

The existence of an agency relationship may be proved by circumstantial evidence that shows a course of dealing between two parties; however, "when an agency relationship is to be proven by circumstantial evidence, the principal must be shown to have consented to the agency since one cannot be the agent of another except by consent of the latter." *A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285, 290 (Minn. 1981). As between an agent and a supplier, "[o]ne who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 40 of 50

himself. *Id.* at 291 (quoting Restatement (Second) of Agency § 14K (1958)). Factors indicating that one is a supplier, rather than an agent, are: "(1) That he is to receive a fixed price for the property irrespective of the price paid by him. This is most important. (2) That he acts in his own name and receives the title to the property which he thereafter is to transfer. (3) That he has an independent business in buying and selling similar property." *Id.* at 291-292 (quoting Restatement (Second) of Agency § 14K, Comment a (1958)).

The undisputed facts establish that there was never a manifestation on the part of Nugget that Spencer Rock may act on Nugget's account. Certainly, there was never any express agreement between Nugget and Mr. LaPore that Mr. LaPore or Spencer Rock would act as Nugget's agent in the prosecution of Spencer Rock's work under the Material Contract. In fact, the Material Contract, as modified by the Support Agreement, on which North Star so extensively relies, details only a legal, arms-length contractual relationship between two distinct corporate entities and nowhere indicates that Spencer Rock or Mr. LaPore may act on behalf of Nugget or otherwise empowers Spencer Rock or Mr. LaPore to act on Nugget's behalf.

Significantly, Mr. Lapore was always at the helm of Spencer Rock's operations and exclusively responsible for Spencer Rock's finances, including during the period in which Nugget was assisting Spencer Rock under the Support Agreement. Nugget's payments for work under the Material Contract were made exclusively to Spencer Rock and never to North Star. Throughout North Star's relationship with

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 41 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

Spencer Rock, Nugget never indicated that Nugget would be responsible for Spencer Rock's debts to North Star. Mr. Lapore alone decided the companies, including North Star, with which he would enter into contracts, not Nugget. Mr. Lapore alone decided the means by which Spencer Rock would be financed to facilitate Spencer Rock's performance, not Nugget. Mr. Lapore alone was the sole beneficiary of North Star's extension of credit, which Mr. LaPore failed to honor, violating not only Spencer Rock's agreement with North Star but also Mr. LaPore's personal guarantee to honor Spencer Rock's obligations to North Star. And perhaps most significant, Mr. Lapore alone determined that he would retain the $197,184.66 that Nugget paid Spencer Rock rather than disburse from those funds the amount that Spencer Rock owed North Star for North Star's work under its contract with Spencer Rock. Based on the guidance in the Restatement and the relevant caselaw, these facts and circumstances describe a relationship between Nugget and Spencer Rock as buyer-supplier, and not principal-agent. *See, e.g., M.S.P. Indus., Inc. v. Diversified Mortgage Servs.*, Inc., 777 P.2d 237 (Colo. App. 1989) (finding absence of agency relationship under circumstances similar to the relationship between Nugget and Spencer Rock).

This is consistent with the clear record, which establishes that North Star understood that its payment was to come from Spencer Rock alone, and that the relationship between Nugget and Spencer Rock was one of two separate and independent companies in contract with one another, and not a relationship between principal and agent. *See*

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 42 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

Krider Aff., Ex. 1, 1998 Goodwill Aff., ¶ 4, attached as Ex. 5 to
Goodwill Dep. ("Mr. LaPore informed me that Nugget Construction had
obtained the award of contract from the federal government.  He told
me that he and his company, Spencer Rock Products, would be supplying
rock for the job."); Krider Aff., Ex. 2, Letter from Jack Goodwill to
Dave Scott and Doug Wood, Aug. 4, 1997, attached as Ex. 14 to 2005
Bentz Dep. ("[North Star] has been working for Spencer Rock Products,
Inc.  From May 1 to June 26, 1997. . . .  No payment has been received
from Spencer Rock for loading the barges.  Mr. Bob LaPore . . . has
stated that he would pay [North Star] after he receives payment from
Nugget.").

Even in the absence of the foregoing, which unequivocally
establishes that Spencer Rock was never Nugget's agent, North Star
would still not be able to recover from Nugget on a theory of agency
because, under Alaska law, an undisclosed principal is not be liable
for the acts of its agent.[12]  *See Jensen v. Alaska Valuation Serv.,
Inc.*, 688 P.2d 161, 162-63 (Alaska 1984).  Although an agent will not
liable if the principal is disclosed to a third party, when the
principal is not disclosed, liability rests on the agent, not the
principal.  *See Vienna v. Scott Wetzel Servs., Inc.*, 740 P.2d 447, 452
(Alaska 1987).  Thus, to the extent that North Star's agency claim is
predicated upon Nugget's or Mr. LaPore's nondisclosure of the Support

---

[12] This conclusion is entirely consistent with the Court's prior findings in
this case.  See *United States ex rel. North Star Terminal & Stevedore Co., et
al. v. Nugget Construction, Inc., et al.*, Slip Op. No. A98-0009-CV (filed
Aug. 30, 2002), at 24, n. 38.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 43 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Agreement, such claim would be squarely foreclosed by North Star's contemporaneous and accurate understanding that Spencer Rock and LaPore were never agents of Nugget, and that (as one would expect) no one informed North Star to the contrary.

In sum, there was never an agency relationship between Nugget and Spencer Rock, which is consistent not only with the facts and circumstances surrounding the relationship between Nugget and Spencer Rock, but also North Star's understanding of its relationship to Nugget and Spencer Rock.  Beyond its empty allegations, North Star has not alleged a single fact to support its claim that Nugget vested Spencer Rock or Mr. LaPore with the necessary authority to act as Nugget's agent, or that Mr. LaPore ceded control or responsibility of Spencer Rock to Nugget in such a way as to sustain a claim that Spencer Rock became Nugget's agent.  Notably, the Support Agreement memorialized an arrangement between Nugget and Spencer Rock in which the parties in effect agreed to modify the Material Contract such that Nugget would be fairly compensated for its assistance to Spencer Rock, nothing more.

Accordingly, in the absence of any genuine issue of material fact, Nugget is entitled to summary judgment as a matter of law that neither Spencer Rock nor Mr. LaPore acted as Nugget's agent.

G.  Punitive damages are not only inappropriate but, also, unallowable

Under Alaska law, punitive damages serve two purposes:  "to punish the wrongdoer and to deter the wrongdoer and others like him from repeating the offensive act."  *State Farm Mut. Auto. Ins. Co. v.*

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 44 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*Weiford,* 831 P.2d 1264, 1266 (Alaska 1992) (citation omitted).  The

availability of such damages "turn[s] on the wrongdoer's motive, state

of mind, and degree of culpability." *Alyeska Pipeline Serv. Co. v.*

*O'Kelley,* 645 P.2d 767, 774 (Alaska 1982).  Punitive damages are a

harsh remedy "not favored in law.  They are to be allowed only with

caution and within narrow limits." *State Farm,* 831 P.2d at 1266;

*Alyeska Pipeline Serv. Co. v. Beadles,* 731 P.2d 572, 574 (Alaska

1987).

A plaintiff seeking punitive damages must "prove by clear and

convincing evidence that the defendant's conduct was outrageous, such

as acts done with malice, bad motive, or reckless indifference to the

interests of another." *Lee Houston & Assocs. v. Racine,* 806 P.2d 848,

856 (Alaska 1991).  A showing of actual malice is not required, *Sturm,*

*Ruger & Co. v. Day,* 594 P.2d 38, 46 (Alaska 1979), *cert. denied,* 454

U.S. 894, (1981), *overruled on other grounds, Dura Corp. v. Harned,*

703 P.2d 396 (Alaska 1985)); however, the plaintiff must establish, at

a minimum, that the defendant's conduct "amounted to reckless

indifference to the rights of others, and conscious action in

deliberate disregard of [those rights]." *State v. Haley,* 687 P.2d

305, 320 (Alaska 1984) (quoting *Sturm,* 594 P.2d at 47);  *see also*

*State Farm,* 831 P.2d at 1266 ("Malice may be inferred if the acts

exhibit 'a callous disregard for the rights of others.'") (quoting

*Alyeska Pipeline Serv. Co.,* 645 P.2d at 774);  *Hayes v. Xerox Corp.,*

718 P.2d 929, 934-35 (Alaska 1986) ("Conscious action in 'deliberate

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 45 of 50

disregard of [others] ... may provide the necessary state of mind to justify punitive damages.'") (citation omitted).

Even if it is proven that wrongdoing was intentionally committed, this mere fact alone is not enough to sustain an award of punitive damages. *See Alyeska Pipeline Serv. Co.,* 645 P.2d at 773-74. "By their very nature, such damages turn on the wrongdoer's motive, state of mind, and degree of culpability, rather than the particular tort committed." *Id.* (citing K. Redden, Punitive Damages § 4.2 (1980)).

Whether malice is present is a question of fact, and the trier of fact is given broad discretion to grant or withhold punitive damages. *See Haskins v. Shelden*, 558 P.2d 487, 494 (Alaska 1976); *Schafer v. Schnabel*, 494 P.2d 802, 805 (Alaska 1972). "But where there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, the trial court need not submit the punitive damages issue to the jury. Indeed, submitting the issue to the jury in such a situation may constitute reversible error." *Alyeska Pipeline Serv. Co.*, 645 P.2d at 774.

North Star boldly alleges that it is entitled to $1,000,000 in punitive damages – an amount staggeringly disproportionate to North Star's prayer for $124.724.98 in actual damages – from "each of the defendants," and "especially Nugget." North Star's Amended Complaint, ¶ 39. Yet, North Star has not offered any fact that would "prove by clear and convincing evidence that [Nugget's] conduct was outrageous, such as acts done with malice, bad motive, or reckless indifference to

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 46 of 50

the interests of another." *Lee Houston & Assocs.,* 806 P.2d at 856.
Nugget entered into an arms-length agreement with Spencer Rock, the
purpose and terms of which are clear from the face of the document,
and then conducted itself consistent with that agreement.

Like Shoreside and Metco, North Star entered into its agreement
with Spencer Rock upon the understanding that it would be protected by
Nugget's bond. From there grew trumped-up allegations of conspiracy,
despite legitimate backcharges for the work that either Spencer did
not perform or performed poorly under its contract with Nugget, and
despite the fact that North Star itself has been party to such
backcharging arrangements. Aside from North Star's inventions and
unsupported allegations, this is a record absent any factual
allegation, much less clear and convincing evidence, of outrageous
conduct, or conduct recklessly indifferent to North Star's interests.
Rather, there is only the unfounded belief that Nugget had an
obligation to pay North Star for its work under contract with Spencer
Rock. *Id.* In fact and at law, Nugget bears no such responsibility;
the discharge of Spencer Rock's debts to North Star is a
responsibility that Spencer Rock bears alone.

<u>Conclusion</u>

North Star is certainly within its rights to pursue payment for
the work it performed on the Project. North Star refuses to
acknowledge, however, that it should not be pointing its finger in
Nugget's direction; rather it should be pointing at Mr. LaPore and
Spencer Rock. The undisputed facts demonstrate that North Star never

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 47 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

relied to its detriment on any act or omission of Nugget in entering into and performing its contract with Spencer Rock, as well as that Nugget sits similarly situated to North Star, in that Nugget also sustained significant financial losses as a result of its dealings with Spencer Rock.

North Star may have once occupied a sympathetic position, but this position has since been overshadowed by North Star's overtly opportunistic conduct in these proceedings.  There can be only one reason why North Star's current state law claims were not raised back in 1998, which is that North Star knew then, as it knows now, that such claims were groundless.  The testimony of North Star's corporate designee tells the same story:  despite the Ninth Circuit's prior ruling, North Star nevertheless clutches to the belief that Nugget is liable to North Star simply because the Homer Spit Project was a bonded job.  Rather than accept the law of the case and redirect its efforts toward more constructive ends, North Star instead alleges unsupported facts on which to posit inapposite theories, while also attempting to grossly inflate its recovery with allegations of outrageous conduct and reckless indifference that have no place in these proceedings whatsoever.

North Star has had its day in court and lost when Spencer was determined to be a supplier.  North Star may have another opportunity to prove yet another lately-conceived and alternative theory of recovery under the federal Miller Act.  North Star's state law claims, however, are clearly not burdened by any genuine issues of material

*OLES MORRISON RINKER & BAKER LLP*
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 48 of 50

1  fact; as such, for the reasons stated herein, Nugget is entitled to

2  summary judgment as a matter of law.

3  Dated:  April 28, 2006            OLES MORRISON RINKER & BAKER LLP
                                     Attorneys for Nugget Construction,
4                                    Inc., and United States
                                     Fidelity and Guaranty Co.

5

6                                    By:  s/Thomas R. Krider
                                         Thomas R. Krider
7                                        krider@oles.com
                                         Washington Bar No. 29490
8                                        745 West 4th Avenue, Suite 502
                                         Anchorage, AK 99501
9                                        Phone: (907) 258-0106
                                         Fax:   (907) 258-5519
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 49 of 50

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th
day of April, 2006, a true and correct
copy of the foregoing was served

 electronically, via ECF on:

Michael W. Sewright, Esq.
mws@bpk.com
Burr, Pease & Kurtz
810 N Street
Anchorage, AK  99501

Steven J. Shamburek, Esq.
shamburek@gci.net
Law Office of Steven J. Shamburek
425 G Street, Suite 630
Anchorage, AK  99501-5872

Paul Stockler, Esq.
paulstockler@aol.com
1309 West 16th Avenue
Anchorage, AK  99501

Herbert A. Viergutz, Esq.
barmar@gci.net
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501

 and by U.S. Mail on:

C. Patrick Stoll, Esq.
Herrig Vogt & Stoll LLP
4210 Douglas Bay Blvd., Suite 100
Granite Bay, CA 95746-5902

OLES MORRISON RINKER & BAKER LLP


By:  s/Thomas R. Krider

P JAD Memo in Support of MSJ North Star State Law 99310.0002.doc

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Memorandum in Support of Nugget Construction, Inc.'s Motion for Summary
Judgment Against North Star-- Page 50 of 50