Traeger Machetanz, Esq.
Thomas R. Krider, Esq.
OLES MORRISON RINKER & BAKER, LLP
745 Fourth Avenue, Suite 502
Anchorage, AK  99501-2136
Telephone:  (907) 258-0106
Telecopier:  (907) 258-5519

Attorneys for Nugget Construction Co., Inc.,
and USF&G, Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf, <br><br>          Plaintiffs,<br>     and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, on its own behalf,<br><br>          Intervening Plaintiffs,<br>     and<br><br>METCO, INC.,<br><br>          Intervening Plaintiff,<br><br>     vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.,; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>          Defendants. | No. A98-009 CIV (HRH)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>AFFIDAVIT OF<br>L.D. "RANDY" RANDOLPH<br>IN SUPPORT OF NUGGET'S<br>MOTION FOR SUMMARY JUDGMENT<br>ON NORTH STAR'S STATE<br>LAW CLAIMS |

STATE OF ALASKA          )
                         )
                         )

L.D. "Randy" RANDOLPH, being first duly sworn upon oath, deposes and states as follows:

1. I am the owner of LDR Engineering Services, Inc. LDR was hired by Nugget Construction, Inc. to perform Project Management services for Nugget on the Homer Spit repair and extension project. During all times relevant to the events at issue in the present litigation, I acted in that capacity on behalf of Nugget. I am over the age of eighteen and am competent to testify in this matter.

2. On or about September 28, 1996, the U.S. Army Corps of Engineers ("USACOE") awarded Nugget Contract DACW85-96-C-0020 to repair and extend the Homer Spit in Seward, Alaska (the "Project"). Attached hereto as Exhibit 1 is a true and correct copy of Contract No. DACW85-96-C-0020. USF&G provided a payment bond on the Project. Attached hereto as Exhibit 2 is a true and correct copy of Payment Bond 99-0120-50298-96-5.

3. On January 15, 1997, Nugget entered into a Material Contract with Spencer Rock for the supply and transport of armor, toe and filter stone rock from the Spencer Quarry, located in Seward, Alaska, to a barge docked in Seward. Attached hereto as Exhibit 3 is a true and correct copy of the Material Contract, December 18, 1996. Between the Spencer Quarry and the Seward dock, the rock traveled in

U.S. ex rel. North Star, et al. v. Nugget Construction, et al.
Case No. A98-009 CIV (HRH)
Affidavit of L.D. "Randy" Randolph -- Page 2 of 6

four distinct segments. First, after blasting, rocks were gathered and loaded into trucks at the Spencer Quarry. These trucks transported the rock from the Spencer Quarry to the Alaska Railroad Corporation ("ARRC") station, where the rock was loaded into ARRC rail cars. This work was performed by Spencer Rock (which was later assisted by Nugget). Second, the rock traveled by ARRC rail car to Seward, where it was unloaded from the rail cars onto a "siding" at the ARRC rail yard in Seward. Third, the rock was transported by truck from the siding at the ARRC rail yard in Seward to the Seward dock. Fourth, and finally, the rock was loaded by North Star into "skip boxes" and from the boxes at the Seward dock onto barges, which carried the rock to the Homer Spit; North Star's involvement in the Project was limited to this fourth and final segment.

4. Spencer Rock commenced performance on or about January 15, 1997. In April 1997, Nugget became concerned that Spencer Rock was not producing enough quantities of conforming rock for the Project. First, Nugget visited the Spencer Quarry and found large stockpiles of nonconforming rock. Second, Spencer Rock's major pieces of equipment for operating the Spencer Quarry had been repossessed by Spencer Rock's bank. In light of these developments, in early April 1997, Spencer Rock approached Nugget for assistance in carrying out Spencer Rock's duties under the Material Contract. Spencer Rock and Nugget subsequently executed a Support Agreement on April 23, 1997. Attached hereto as Exhibit 4 is a true and correct copy of the Support Agreement, April 23, 1997. Per this agreement, the parties agreed

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Affidavit of L.D. "Randy" Randolph -- Page 3 of 6

that, in exchange for Nugget's support of Spencer Rock's work under the Material Contract, Nugget would recover from Spencer Rock, or "backcharge," the amounts owed to Nugget by Spencer Rock per the Material Contract. Nugget entered into the Support Agreement with Spencer Rock to ensure that its performance on its contract with the Federal Government would not suffer from anticipated difficulties in Spencer Rock's performance of its contract with Nugget. There was no other purpose.

5. Nugget's support efforts to Spencer Rock were provided exclusively to Spencer Rock. Nugget never offered or provided its support services to Shoreside, Metco or North Star.

6. The total amount of rock that Spencer Rock was contractually obligated to transport, and that was in fact transported with Nugget's assistance, from the Spencer Quarry to the Nugget barges in Seward was equal to ten barge loads.

7. On May 8, 1997 Nugget paid Spencer Rock $147,184.66 for the first two barge loads of rock and, between May 8, 1997 and August 8, 1997, Nugget paid Spencer Rock an additional $50,000, totaling $197,184.66, for work performed under the Material Contract.

8. Based on the total quantity of rock delivered for the project at the rates and terms set forth in the Material Contract, the total value of rock produced by Spencer Rock was $1,623,892.50. Nugget's costs associated with rendering assistance to Spencer Rock pursuant to the Support Agreement were $1,878,138. In addition, as a direct result of Spencer Rock's failure to provide rock that conformed

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Affidavit of L.D. "Randy" Randolph -- Page 4 of 6

to the Material Contract, Nugget incurred additional expenses in excess of $1,213,380. Thus, the total amount of costs and expenses that Nugget incurred resulting from its dealings with Spencer Rock exceeded the amount that Nugget agreed to pay Spencer Rock under the Material Contract by $1,664,811.

9. In April 1997, prior to the commencement of North Star's loading of rock, I contacted Jack Goodwill regarding scheduling for the barge loading, as well as the need for a certificate of insurance from North Star in the event that a barge was damaged during the loading. The barges used to transport the rock to the Homer Spit were under Nugget's responsibility and control. I was tasked with the responsibility to coordinate scheduling and loading of the barges, including the type and quantity of rock loaded and the arrival and departure of the barges; this required that I communicate directly with Mr. Goodwill in order to ensure that loading proceeded smoothly. My direction to North Star regarding the loading and scheduling of the barges was expressly authorized by Mr. LaPore and Spencer Rock, per the Support Agreement.

10. Neither I nor any Nugget representative was present during, or otherwise involved in, the negotiations between Mr. LaPore and Mr. Goodwill that led to the contract under which North Star agreed to provide services to Spencer Rock on the Homer Spit project.

11. Nugget never entered into a written or oral contract, express or implied, with North Star to provide services in connection with the Homer Spit project.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Affidavit of L.D. "Randy" Randolph -- Page 5 of 6

12. Nugget never received invoices from North Star during the course of North Star's performance and Nugget never agreed to pay North Star for any services that it provided to Spencer Rock in connection with the Homer Spit project.

13. Nugget's payments to Spencer Rock for its work under the Material Contract were made exclusively to Spencer Rock and never to North Star.

14. Nugget never manifested any intention, directly or indirectly, by word or conduct, that Spencer Rock was an agent of Nugget, or otherwise authorized Spencer Rock or Mr. LaPore to speak on behalf of Nugget. Further, I never indicated to anyone by word or conduct that I worked for Spencer Rock, in any capacity, while I was employed by Nugget during the Homer Spit project.

FURTHER your affiant saith not.

_____
L.D. RANDOLPH

SUBSCRIBED AND SWORN to before me this 28th day of April, 2006.

[OFFICIAL SEAL
TERESA R. FOECHTERLE
NOTARY PUBLIC, STATE OF ALASKA
My Commission Expires: March 10, 2009]

Printed Name: Teresa R. Foechterle
NOTARY PUBLIC in and for the State of Alaska, residing at Wasilla
My Appointment Expires March 10, 2009

P JAD Randolph Affidavit North Star MSJ State Law 99310.0002

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (HRH)
Affidavit of L.D. "Randy" Randolph -- Page 6 of 6