Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA for the
Use of SHORESIDE PETROLEUM, INC.,
d/b/a Marathon Fuel Service, on its
own behalf,

   Plaintiffs,

 vs.

NUGGET CONSTRUCTION, INC.; SPENCER
ROCK PRODUCTS INC.; UNITED STATES
FIDELITY AND GUARANTY COMPANY; and
ROBERT A. LAPORE,

   Defendants.

Case No. A98-009 CV (HRH)

30(b)(6) DEPOSITION OF SHORESIDE PETROLEUM, INC.

Doug Lechner

Taken December 2, 2005
Commencing at 8:45 a.m.

Volume I - Pages 1 - 82, inclusive

Taken by the Defendant
at
OLES, MORRISON, RINKER & BAKER
745 W. Fourth Av., Suite 502
Anchorage, AK 99501

Reported by: Susan J. Warnick, RPR

Case No. A98-009 Civil (HRH)                                    Doug Lechner

### Page 62

1  information and belief and subject to further evidence as
2  is provided by disclosure and in discovery, USF&G is also
3  liable to claimant under Alaska law for the bad faith
4  nonpayment, nonsettlement, and/or refusal to discuss
5  settlement of claimant's claims brought under the Miller
6  Act and Stateline herein of which USF&G was notified.
7  USF&G has repeatedly failed to address payment to the
8  claimant for the goods and services despite demand.
9  Claimant is entitled to recover such damages plus interest
10 and attorney fees from USF&G." And that's paragraph 38.
11       Is it your position that the nonpayment of your
12 invoices is the bad faith nonpayment that's referred to in
13 this paragraph?
14       MR. SEWRIGHT: Object as to form.
15       THE WITNESS: We do feel either way, either
16 through nonpayment by Nugget or USF&G, they're
17 similarly -- feel the same.
18 BY MR. VIERGUTZ:
19 Q  And other than the nonpayment, has USF&G committed
20 any other act of bad faith that you're aware of? You
21 personally.
22       MR. SEWRIGHT: Continuing objection as to form
23 of the question. Also calls for legal conclusions.
24       THE WITNESS: It certainly -- as it relates to
25 this, we felt with all the disclosure, through everything

### Page 63

1  that's on the table, that there should have been more
2  representation by the bondholder if the general contractor
3  was not taking action. And with the information that we
4  had and what has been put in front of everyone, we
5  certainly felt and still feel that, through the acts of
6  some of the officers of Nugget Construction that were tied
7  in with Spencer Rock somehow through this port agreement,
8  we certainly felt that there is that issue, I guess.
9  BY MR. VIERGUTZ:
10 Q  You're not aware personally of any communications
11 between USF&G and Nugget, correct?
12 A  No.
13 Q  You don't have any idea what communications existed
14 or didn't exist between those entities; is that correct?
15 A  That is --
16       MR. SHAMBUREK: I would just observe that all of
17 those documents were marked as privileged, so none of them
18 would be available. But he can answer from there.
19       THE WITNESS: No.
20 BY MR. VIERGUTZ:
21 Q  And USF&G was not, to your knowledge, on site or on
22 the project; is that correct?
23 A  That's correct.
24 Q  So what they did not do properly is pay you?
25 A  That is correct.

### Page 64

1  Q  And you were here for the other depositions, Mapco
2  and North Star, correct?
3  A  Yes, I was.
4  Q  And you heard me ask the same questions I'm going to
5  ask you, that, if I sue you, you do not have to settle
6  that case; isn't that correct?
7  A  It's, I guess, your prerogative.
8  Q  And if you choose not to settle that case, that's
9  entirely your decision; isn't it?
10       MR. SEWRIGHT: Continuing objection as to form.
11       THE WITNESS: It certainly could be, yes.
12 BY MR. VIERGUTZ:
13 Q  And if you choose not to discuss settlement with me,
14 is that also your choice?
15 A  That could be, but that's not our choice.
16 Q  In this case?
17 A  Yes.
18 Q  But it's my choice; is that correct?
19 A  Yes, it can be your choice.
20       MR. VIERGUTZ: I have no further questions.
21       MR. MACHETANZ: Mike?
22       MR. SEWRIGHT: No.
23       MR. SHAMBUREK: I do have some questions.
24            EXAMINATION
25 BY MR. SHAMBUREK:

### Page 65

1  Q  You sent a letter to the Army Corps of Engineers and
2  stated that Shoreside hadn't been paid for the product,
3  correct?
4  A  That is correct.
5  Q  And you received a response or a copy of a response
6  from the Corps of Engineers to Nugget?
7  A  That is correct.
8  Q  Were you aware from that letter that the contract
9  between Nugget and the Corps of Engineers included a
10 provision that Nugget not ask for any future progress
11 payments unless all suppliers and subcontractors were
12 paid?
13 A  That is correct.
14 Q  And are you aware if Nugget made requests for
15 progress payments after that letter?
16       MR. MACHETANZ: Leading. Foundation.
17       THE WITNESS: Meaning that --
18 BY MR. SHAMBUREK:
19 Q  They requested payments from the Corps of Engineers
20 after you had made demand for payment?
21       MR. MACHETANZ: Same objection.
22 BY MR. SHAMBUREK:
23 Q  You can answer.
24 A  Could you repeat the first --
25 Q  Is it your understanding that Shoreside sent a letter

17 (Pages 62 to 65)

Midnight Sun Court Reporters     (907) 258-7100

535b24d7-81!          Exhibit E
                      Page 2 of 2