Herbert A. Viergutz, Esq.
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501
Phone: (907) 276-8010
Facsimile: (907) 276-5334

Attorneys for United States Fidelity and Guaranty Company

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, on its own behalf,<br><br>   Plaintiffs,<br><br>         and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a MARATHON FUEL SERVICE, and SHORESIDE PETROLEUM, INC., d/b/a MARATHON FUEL SERVICE, on its own behalf,<br><br>Intervening Plaintiffs,<br><br>         and<br><br>METCO, INC.,<br><br>   Intervening Plaintiff,<br><br>         vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>   Defendants. | No. 3:98-cv-9 (HRH) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT USF&G s MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF S BAD FAITH CLAIM

## I.

## FACTS RELEVANT TO THIS MOTION

The construction project underlying this lawsuit was performed in 1997.  Plaintiffs, North Star Terminal and Stevedore Company ("North Star"), Shoreside Petroleum, Inc., ("Shoreside") and Metco, Inc. ("Metco") filed their Complaints in January, 1998.  However, it was not until August 31, 2005, 7½ years later, that Plaintiffs Amended their Complaints to add bad faith claims against USF&G.  North Star's bad faith claim alleges as follows:

> Upon information and belief, and subject to further evidence as disclosed by discovery, USF&G is also liable to North Star under Alaska law for the bad faith nonpayment, non-settlement and/or refusal to discuss settlement of North Star's claim previously brought under the Miller Act herein, of which USF&G was notified.  (Amended Complaint, Para 38)

Shoreside's and Metco's bad faith allegations are identical and allege as follows:

> Plaintiff realleges and incorporates the other allegations herein.  Upon information and belief, and subject to such further evidence as is provided by disclosure and in discovery, USF&G is also liable to claimant under Alaska law, for the bad faith non payment, non settlement and/or refusal to discuss settlement of Claimant's claims brought under the Miller Act and State law herein, of which USF&G was notified.  USF&G has repeatedly failed to address payment to the Claimant for the payment of goods or services despite demand.  Claimant is entitled to recover such damages, plus interest, attorney's fees, from USF&G.  (Amended Complaint, Para 38)

As a matter of law, USF&G is entitled to the entry of Summary Judgment in its favor as to all three plaintiffs' claims of bad faith.

## II.

## STANDARD FOR GRANTING SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." If the party moving for summary judgment meets its initial burden of identifying the portions

of the materials on file it believes demonstrate the absence of any genuine issue of material fact, the non-moving party may not rely on the mere allegations in the pleadings to preclude the entry of summary judgment.   Instead, the non-moving party must set forth "<u>specific facts</u> showing that there is a genuine issue for trial." Federal Rule of Civil Procedure 56(e) (emphasis added)

The United States Supreme Court has suggested that there is a subjective aspect to consideration of a motion for summary judgment.

> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.    The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict - - whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the <u>onus</u> of proof is imposed.

<u>Anderson v. Liberty Lobby, Inc.</u> 106 S. Ct. 2505 (1986) at 2512.

This provides the pattern and mold against which the form and substance of USF&G's Motion, and any Opposition, are tested:

> First, the Court has made it clear that the non-moving party will bear the burden of proof at trial as to an <u>element essential to its case</u>, and if that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the <u>existence of that element</u>, then summary judgment is appropriate.  Second, to withstand a motion for summary judgment, the non-moving party must show that there is "genuine factual issues that properly can be resolved only by a finder of fact because <u>they may reasonably be resolved in favor of either party</u>." (emphasis added).  Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial.  No longer can it be argued that any disagreement about a material fact precludes the use of summary judgment.

<u>California Architecture & building Products, Inc., v. Franciscan Ceramics, Inc.</u>, 818 F. 2d 1466, (9th Cir., 1987), at 1468 (emphasis added).

Thus, to avoid summary judgment, Plaintiffs must bring forth significant probative

evidence which is relevant to dispute a factual issue which is truly material to this litigation. O.S.C. Corp., v. Apple Computer, Inc., 601 F. Supp. 1274, Aff. 793 F. 2d 1464 (D.C. Cal. 1985); Richards v. Nielson Freight Lines, 602 F. Supp. 1224 (D.C. Cal 1985). Not only do the Plaintiffs have the burden to raise genuine issues of material fact, they must also produce significant evidence to establish such genuine issues of material fact. They must do more than simply show that there is some physical doubt as to the material facts.

### III. LEGAL ANALYSIS

### USF&G IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS BAD FAITH CLAIMS

Bad faith has become the battle cry of innumerable desperate debtors. However, merely alleging "bad faith" does not make it so. The terms "good faith" and "bad faith" have been defined in various cases. One court described good faith as encompassing the absence of malice, or the design to defraud, or to seek an unconscionable advantage. (CITE) Other courts have described good faith as denoting honesty of purpose, freedom of intention to defraud, and generally being faithful to one's duty or obligation. USF&G's actions in this case clearly meet the standards for good faith described above. USF&G engaged in no conduct which even approaches these bad faith parameters.

Alaska is among the few States that have expressly recognized a claim of bad faith against a performance bond surety. See, Loyal Order of Moose, Lodge 1392 v. International Fidelity Insurance Co., 797 P. 2d 622 (Alaska, 1990). The court did so by analogizing the relationship between the insured and insurer in the insurance context with that of the relationship between the surety and the obligee in the surety context. Id at 628. The conclusion that a claim of bad faith may lie against a performance bond surety, however, does not impart into the relationship any fiduciary duty on the part of the surety, such that they would be liable for any purported bad faith.

The fiduciary is a person in whom another has placed special confidence and trust. Cummings v. Sea Lion Corporation, 924 P. 2d 1011 (Alaska 1996). A fiduciary relationship exits when one places "special confidence" in another. It encompasses a level of trust

4

"beyond that in ordinary business relationships," such that the fiduciary disavows its self-interest. <u>Munn v. Thorton</u>, 956 P. 2d 1214, 1220 (Alaska 1998). In the insurance context, Alaska recognizes a fiduciary duty between an insured and an insurer. <u>Washington Ins. Guarantee Assn. v. Ramsey</u>, 922 P. 2d 237 (Alaska 1996), (quoting <u>Tank v. State Farm Fire & Cas. Co.</u>, 715 P. 2d 1133, 1136 (Wa. 1986)). Such a relationship has not been recognized in the surety context. While <u>Loyal Order of Moose, Lodge 1392</u> established that in Alaska, a surety has a duty of good faith and fair dealing in discharging its bond obligations, the court did not address whether there existed in the surety relationship any fiduciary duties on the part of the surety.

The nature and function of surety bonds involve a relationship that differs from those in which the courts find fiduciary obligations. Unlike generally acknowledged fiduciary relationships, such as lawyer/client and trusts and guardianships, no "special confidence" is placed on the surety in a surety relationship. Suretyship is a credit transaction. By providing bonds to its principal, the surety, in reality, is providing surety credit to the principal so that the principal can enter into a contract with the obligee. The surety is indemnified, and expects to incur no loss as a result of that extension of credit. The surety simply guarantees payment or performance to the obligee in the event of its principal's default. A surety's obligations are limited by the bond undertaking. There is no duty requiring the surety to disavow its self-interest in handling the bond claims. Accordingly, the heightened level of trust which is a hallmark of the fiduciary relationship does not exist, and ought not be per se found, in the surety context (see <u>Munn</u>, <u>supra</u>, at 1220).

There are significant differences between the "special" relationship used to describe the insurer-insured relationship and the relationship between a surety and a bond obligee in a surety relationship. Case law recognizes these differences and, accordingly, has created a different level of rights and duties in a surety relationship than in an insured-insurer relationship. For example:

- The principal does not seek protection against calamity from the surety, but instead seeks the commercial advantage of obtaining a contract with the obligee. The principal does not repose trust or confidence in the surety but tenders the surety to the obligee an assurance of the principal's performance.

5

- The surety does not undertake a fiduciary responsibility to the principal or to the indemnitor.

- The relationship between the principal and the surety does not involve the degree of public interest generally found in the insured-insurer relationship.

- The consideration of "unequal bargaining power or adhesion contract" that is often cited as a factor in finding liability as between an insurer and an insured does not exist in the surety-principal/indemnitor relationship.

The duty of good faith and fair dealing is an obligation owed mutually by contracting parties in every situation.  It is not particular to suretyship.  But, the duty of good faith is not equivalent, or even tantamount, to the existence of a fiduciary relationship.  Whether one owes fiduciary obligations to another requires a wholly separate and independent analysis.  (CITE) The reasoning underlying the conclusion that an insurer is a fiduciary to its insured does not apply to the surety - bond oblige relationship.  The only inference that can be drawn from writing a surety bond is that the surety is of the opinion that the principal is financially sound so as to merit extension of credit to it. The only factual representation issuing a bond implies is what is contained within the four corners of the bond instrument. The scope of that undertaking, reduced to its essential terms, is that if the surety has been wrong in its evaluation of the surety's ability to perform its contractual obligations, then the surety must perform its bond obligation.  There is no authority to support Plaintiffs efforts to expand that credit obligation beyond the scope of the bond.  Such authority does not exist.  Plaintiffs read more into the <u>Loyal Order of Moose, Lodge 1392</u> decision than is warranted.  The fiduciary duty addressed in that case comes into play only in relation to performance of the surety's credit obligation. The allegation in the <u>Moose</u> case was that the surety failed to respond to the obligee commensurate with the bond obligation.  The bond principal did not perform pursuant to its contract and the gravamen of the claim against the surety was that it failed to timely respond to the obligee's request for assistance. These facts have absolutely no bearing on the instant case.  Broad references to fiduciary obligations, and to good faith and fair dealing, do not impose a duty where none exists and are insufficient to withstand a motion for summary judgment.

Moreover, although the court in <u>Loyal Order of Moose, Lodge 1392</u> recognized a

claim of bad faith against a performance bond surety, the only instances where this duty has been imposed are in matters where the allegation is used defensively rather than affirmatively; whether the indemnitor is obligated to reimburse a surety. It is exclusively a matter of defense against the surety's claim for indemnification.

It is well established that the General Agreement of Indemnity (GAI) permits a surety to make payments to eliminate a risk of loss, requiring the indemnitor to reimburse the surety. The GAI places upon the indemnitor the risk of loss, as well as costs and fees arising out of a dispute. Absent fraud or bad faith, the indemnitor, must reimburse the surety for payments made on behalf of the principal. The primary defense typically inserted by indenmitors is that the surety did not resolve the particular claim in "good faith".

The cases where the principal or indemnitor argue that the surety breached the implied covenant of good faith and fair dealing have uniformly dealt with the claim as a defense by the principal/indemnitor, to the surety's claim for indemnification. The cases do not support the existence of an affirmative right to recover damages from a surety for breach of such a duty and/or exercising its indemnity rights pursuant to the GAI. Therefore, in accordance with the above, a breach of the duty of good faith and fair dealing that prejudices the right of the principal/indemnitor will release their obligation to the extent of the prejudice but will not support a cause of action allowing them to recover damages from the surety.

Attempts to expand the duties of a surety beyond the terms of the bond have been rejected:

> Law of surety's generally holds that a contract of suretyship must be strictly construed in the interests of the surety, and the surety cannot in law or equity, be bound further than the very terms of his contract.

Winston Corp., v. Continental Cas. Co., 36 F. Supp. 1023, 1030 (S.D. Ohio 1973), reversed on other grounds, 508 A. 2d 1298 (6 Cir. 1975), Cert Denied, 423 U.S. 914 (1975). The court concluded that because the bond (and contract incorporated therein) did not articulate a duty on the part of the surety to disclose information concerning the principals, the surety was not liable for any breach of its bond obligations.

**There are no facts which allow Plaintiffs to meet their burden of proof with regard to their bad faith claims. As a result, these claims must be dismissed by summary judgment.   The nature of a surety s undertaking to its obligee is indemnification . That duty is described in, and limited by, the four corners of the bond (see Payment and Performance Bonds attached as Exhibit A).  Apart from the imposing on the surety a duty of good faith and fair dealing (see <u>Moose</u>, <u>supra</u>) the law neither constructs nor implies additional indemnity obligations**

Even if bad faith can be alleged affirmatively (which USF&G claims it cannot), the facts in the present case do not rise to the level of bad faith.[1]  Although the surety has an obligation to act in good faith toward the principal and obligee during the claims process, not every purported wrongful act will support a claim for bad faith.   Rather, only "unreasonable" conduct under the circumstances subjects a surety to liability for breach of the implied covenant.  "So long as a surety acts reasonably in response to a claim made by its obligee, the surety does not risk bad faith tort liability."  <u>Moose</u>, <u>supra</u>, at 629.  See also, <u>Dodge v. Fidelity & Deposit Company of Maryland</u>, 778 P. 2d 1240, 1241 (Ariz. 1989); and <u>Hillman v. Nationwide Mutual Fire Ins. Co.</u>, 855 P. 2d 1321, (Alaska 1993).

> To show a claim for bad faith, plaintiff must show the absence of a reasonable basis for denying benefits of the policy <u>and</u> the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. <u>Hillman</u>, <u>supra</u>, at 1324.  (emphasis added).

Moreover, it is axiomatic that the Plaintiff's must identify the contract containing the implied covenant of good faith and fair dealing that they claim USF&G has tortiously breach.  In this case, the contract can only be the Bonds (Attached as Exhibit A).  As will

---

1 The question of whether bad faith exists is a question of that can be adjudicated through summary judgment. <u>Hillman</u>, <u>supra</u>, at 1325.  To acknowledge that in some jurisdictions bad faith constitutes a separate cause of action does not concede that it exists as a cause of action independent of the requisite factual predicate.

be set forth below, the Plaintiffs have not presented any evidence to establish that USF&G failed to act reasonably in discharging its obligations under the Bonds.  Boilerplate "bad faith" allegations cannot withstand a motion for summary judgment.  See FRCP 56(e); and Celotex Corp., supra.  All alleged wrongdoing or breaches of contract do not rise to the level of tortious breach of the implied covenant of good faith.  Accordingly, plaintiffs cannot support their claim and summary judgment must be entered in favor of USF&G.

## IV.
## THERE IS NO EVIDENCE TO SUPPORT PLAINTIFFS ALLEGATIONS OF BAD FAITH

If the court concludes that, in the context of the present case, a claim for bad faith can be brought, defendant submits that the plaintiffs' allegations and the facts that plaintiffs can prove do not rise to the level of bad faith.  All alleged wrongdoing or breaches of contract do not rise to the level of tortious breach of the implied covenant of good faith. Plaintiffs cannot support their claim.  The allegations of bad faith are contained in paragraph 38 of each plaintiff's amended complaint.  North Star claims USF&G is liable to it for bad faith due to its "nonpayment, non-settlement and/or refusal to discuss settlement of North Star's claim previously brought under the Miller Act herein, of which USF&G was notified."  Similarly, Shoreside and Metco claim USF&G is liable to each for bad faith due to "non payment, non settlement and/or refusal to discuss settlement of Claimant's claims brought under the Miller Act and State law herein, of which USF&G was notified.  USF&G has repeatedly failed to address payment to the Claimant for the payment of goods or services despite demand."  Plaintiffs however, failed to provide requested documents to USF&G to establish their claims (Exhibit C), while the bond principal provided sound and valid reasoning for USF&G not to pay the claims advanced by Plaintiffs (see Exhibit B). [2]

---

[2]  There is no claim made by Plaintiff's in their Complaints for failure to investigate, as being a basis for bad faith by USF&G.  Even assuming such unplead cause of action exits, it is Plaintiffs' burden of proof to establish that USF&G failed to reasonably investigate the claims, a burden which Plaintiffs have not and can not meet.

Plaintiff's have neither alleged nor attempted to muster any proof that USF&G conduct in its "relationship with plaintiffs," supports an independent bad faith cause of action. To the contrary, any allegations that suggest bad faith simply mirror the breach of contract claims. Additionally, none of the evidence that has been produced through discovery supports a finding that, if an affirmative bad faith claim legally exists, USF&G engaged in any conduct that was not "reasonabl[e] in response to a claim made by its obligee," Excepts quoted below from individuals designated as bad faith "experts" demonstrate the total absence of any factual predicate to support Plaintiffs' bad faith claims.

Barbara Dieckgeraeff , Metco principal, testified at her 30(b)(6) deposition in relevant part as follows3:

Q. All right, if I sue you, do you believe that I have to settle a case with you?
A. If you sue me?
Q. Yes.
A. Well, usually something was settled, either it's decided you don't have to pay or you do have to pay.
Q. But during the lawsuit, if you believe in your position, do you believe you have to settle with me?
A. No.
Q. You can take it to be bitter end if you choose?
A. You can, yes.
Q. You don't have any idea why USF&G has chosen not to settle this case, do you?
A. No, I don't. I assumed they would.
Q. And you don't have any knowledge of any communications or lack of communications between Nugget and USF&G?
A. No, not really.

Doug Lechaner, on behalf of Shoreside Petroluem, testified at his 30(b)(6) deposition in relevant part as follows4:

---

3 (Page 42 - Attached as Exhibit D).

4 (Pages 63-64 - Attached as Exhibit E)

Q.      You're not aware personally of any communications between USF&G and Nugget, correct?
A.      No.
Q.      You don't have any idea what communications existed or didn't exist between those entities; is that correct?
A.      That is - - no.
Q.      And USF&G was not, to your knowledge, on site, on the project; is that correct?
A.      That's correct.
Q.      So what they did not do properly is pay you?
A.      That is correct.
Q.      And you were here for the other deposition of Matco and North Star, correct?
A.      Yes, I was.
Q.      And you heard me ask the same questions I'm going to ask you, that, if I sue you, you do not have to settle that case; isn't that correct?
A.      It's, I guess, your prerogative.
Q.      And if you choose not to settle that case, that's entirely your decision; isn't it?

The witness: It certainly could be, yes.
Q.      And if you choose not to discuss settlement with me, is that also your choice?
A.      That could be, but that's not our choice.
Q.      In this case?
A.      Yes.
Q.      But it's my choice; if that correct?
A.      Yes, it can be your choice.


Jeffrey Bentz, on behalf of North Star, testified at his 30(b)(6) deposition in relevant part

as follows[5]:

Q.      I don't want any legal conclusions, I just want your understanding, your own personal understanding as a layman.    If I sue you in business - - your a businessman.  If I sue you, do you have a right to go to trial, or do you have to settle that case?
A.      I have a right to go to trial. . .
Q.      In reviewing your files, did you see any communication written between you and USF&G?
A.      Not that I recall. . .
Q.      What is your understanding of bad faith nonpayment?
A.      Depends on the circumstance.
Q.      In this circumstance.
A.      What's meant by this?
Q.      Yes.
A.      From a laymans terms, from me?
Q.      Yeah.
A.      I believe that USF&G is probably fully aware that there was a problem at the time that they were bonding Nugget because of the various correspondence that was going on, and they did absolutely nothing and I believe that was negligent. . .

_____

[5] (Pages 209-218 of Exhibit F).

11

Q.     Why should they push their client to settle it?
A.     Depends.  Could depend on a number of factors. .
Q.     Could one possibility be that they believe that you're wrong and Nugget's right?
A.     It could be a possibility.
Q.     Then we go to nonsettlement.   What do you mean - - what's your understanding again? . . .
A.     We haven't got paid.  We haven't got squat.
Q.     And is it correct that USF&G does not have to settle the case just like you don't have to settle it if you choose not to; isn't that correct?
A.     We can take it all the way.
Q.     You bet.  Why can't they?
A.     They can. . .
Q.     And then it says, "and/or refusal to discuss settlement".  Again, you are a businessman.  If you get sued, you don't have to settle; you and I have agreed on that?
A.     Correct.
Q.     And so you don't even have to discuss settlement with me if sue you, do you?
A.     Don't have to.

Thus, not even those individuals who have been designated as expert witnesses with respect to USF&G's purported bad faith can prove the requisite evidence to meet the Plaintiffs' burden of proof.

**V.**

**CONCLUSION**

Plaintiffs have utterly failed to meet that burden of proof to establish a bad faith claim against USF&G.  As a result, summary judgment as to the Plaintiff's bad faith claims must be granted in favor of defendant USF&G.


Dated this 1st day of May, 2006.

/s Herbert A. Viergutz

_____

Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501
Phone:  (907) 276-8010Facsimile:  (907) 276-5334
**barmar@gci.net**
Alaska Bar No. 8506088


**CERTIFICATE OF SERVICE**
I HEREBY CERTIFY that a copy of this document
was served by electronic notification on this 1st
day of May, 2006, to:

Michael W. Sewright, Esq.
Burr, Pease & Kurtz
810 N Street
Anchorage, AK  99501

Paul Stockler, Esq.
1309 West 16th Avenue
Anchorage, AK  99501

Traeger Machetanz, Esq/Tom Krider, Esq.
Oles Morrison Rinker & Baker, LLP
745 4th Avenue, Suite 502
Anchorage, AK 99501-2136

Steven J. Shamburek, Esq.
Law Office of Steven J. Shamburek
425 G Street, Suite 630
Anchorage, AK  99501-5872

/s Herbert A. Viergutz