Steven J. Shamburek
Alaska Bar No. 8606063
LAW OFFICE OF STEVEN J. SHAMBUREK
425 G Street, Suite 630
Anchorage, Alaska 99501
(907) 522-5339 Direct
(907) 522-5393 Fax

Attorney for Plaintiffs
Shoreside Petroleum, Inc.,
d/b/a Marathon Fuel Service
and Metco, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf, <br><br>    Plaintiffs, <br><br>    and <br><br> UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, on its own behalf, <br><br>    Intervening Plaintiffs, <br><br>    and <br><br> METCO, INC., <br><br>    Intervening Plaintiff, <br><br>    vs. <br><br> NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE, <br><br>    Defendants. | **METCO'S SUPPLEMENTAL DISCOVERY RESPONSES** <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> Case No. A98-0009-CV (HRH) |

1

COMES NOW Metco, Inc. ("Metco" or "Claimant"), by and through counsel, and provides the following supplemental discovery responses to Nugget Construction, Inc.'s and USF&G's first discovery requests.

<u>Supplemental Response To Interrogatory Nos. 1, 2, 3, 4 and 5</u>:

This answer also supplements claimant's allegations in paragraph 38 of the Amended Complaint.

 The "Material Agreement" entered into between Nugget Construction, Inc. and Spencer Rock Products, Inc. dated January 15, 1997 states in Section 3 that the agreement is to start approximately March 15, 1997.  Nugget and Spencer then entered into an oral support agreement in late March, 1997.  Nugget and Spencer entered into the written "Support Agreement" dated April 23, 1997 that provides in pertinent part:  "SRP agrees to indemnify and save harmless NCI and the Owner . . . from and against any and all suits, claims, actions, losses, costs, penalties and damages of whatever kind of nature . . . ."  Nugget imposed an adhesion contract on Spencer and afforded itself the absolute right to run the Spencer Quarry and bring an action against Spencer for the type of claims asserted by the three claimants in this case.  In addition, the three claimants are third-party beneficiaries of this Support Agreement.  Nugget already brought that legal action against Spencer in Alaska state court with knowledge of the three claimants and their claims.  In that action, Nugget either asserted or waived the opportunity to assert the claims and resulting damages against Spencer.

 In addition, the District Court found that Mr. Randolph, the signatory on both the "Material Agreement" and "Support Agreement" on behalf of Nugget, was involved with Nugget, Spencer and Trecon.  The District Court found:

> Other significant undisputed facts in the record show that Nugget was ideally situated to take over operations at the Spencer quarry.  For five years preceding his position as Nugget's project manager, Lynn D. Randolph worked as the project manager and job estimator in the Spencer quarry under its previous owner, Trecon (for whom Nugget's general manager and corporate secretary Greg Poyner also worked as a general manager).  Randolph also worked as senior engineer, bid estimator, and project manager for Spencer after Robert LaPore purchased the quarry in 1994.  In fact, prior to the Homer Spit project, Randolph worked for Nugget as a consultant, bid

2

estimator, and project manager at the same time he worked for LaPore at Spencer. According to Randolph and LaPore, most of the calculations resulting in Spencer's pricing to Nugget on the Homer Spit bid were prepared by Randolph as a bid estimator and consultant for Spencer (while he also worked as a project manager for Nugget).

[ER 334 at l. 11 – 335, l. 6 in the second appeal to the Ninth Circuit Court of Appeals] A copy of a business card stating that Mr. Randolph works for Spencer, another one stating that he works for Nugget, and another one stating that he works for LDR have been produced in this litigation. None of the cards state any periods of employment and/or engagement on them.

Mr. Randolph, the central individual who worked with Nugget, Spencer and Trecon, admitted: "The [Support]Agreement lasted a limited duration, **specifically between April and July 1997**, and SRP did not disavow the Agreement during that duration." [ER 325, Affidavit of Lynn D. ("Randy") Randolph dated May 14, 2002, p. 2, para. 2 (Emphasis added)].

In addition, Nugget frankly admits this undisputed fact in an Opening Brief filed with the Ninth Circuit in 2003. **"Thus, in March or April 1997 (ER 107), Nugget began providing support services to Spencer Rock pursuant to a Support Agreement formally executed on April 15, 1997. (ER 7-10.)"** (Emphasis added). Nugget Opening Brief, p. 11 at ll. 9 – 11. (Note: The Agreement states a date of "April 23, 1997.")

In addition, Nugget's Opening Brief in the Ninth Circuit refers to the deposition of Randy Randolph taken in this case on October 30, 1998. Mr. Randolph states:

> **Q. Was Nugget Construction providing Nugget employees and/or equipment to Spencer Rock in the Spencer Quarry prior to April 23, 1997, which is the date of this support agreement?**
>
> **A. Yes**
>
> **Q. And when did that type of cost to Nugget first occur?**
>
> **A. Late March, early April.**

[ER 107, p. 121, ll. 1 – 7 (Emphasis added)]. By Nugget's actions and own admissions, Nugget also was responsible for all obligations of Spencer after "late March, 1997."

Shoreside made a delivery of fuel in relation to the Spencer and Nugget rock work on April 8, 1997 and was never paid for the delivery of fuel. [ER 340 at ll. 2 – 3 and n. 32 to the most recent appeal to the Ninth Circuit] That fuel was not consumed in the prosecution of the work for the Homer Project until after April 8 and into the first three weeks of May because the next delivery of fuel was not made until May 21, 1997. [ER 340 at l. 3 and n. 32] As noted above, the terms of the Support Agreement were imposed by Nugget in March, 1997 before the April delivery of fuel by Shoreside. Metco and North Star, the other claimants, provided their respective services after April 23 and thus all of their respective invoices are the responsibility of Nugget.

Nugget directed Spencer not to disclose the terms of the Support Agreement to the claimants and the owner of the Homer Project, namely the Corps of Engineers. Nugget was hiding its scheme from the parties who could be hurt by it. Nugget has suggested that the claimants should have disclosed their contracts and/or personal guaranties. The claimants had nothing to hide. Nugget never requested any contracts because it sought to contend that it was unaware of the contracts. However, Nugget was aware of the three claimants and their contracts to provide goods to and perform services for the Homer Project.

The District Court previously found: "It is undisputed that Shoreside made it known to Nugget that it sought payment from Nugget Construction for past fuel and lubricant delivered to the quarry and not paid for by Spencer." [ER 341 at l. 18 – 342, l. 2] Nugget was aware of the contractual relationships between Spencer and the three claimants at the time the claimants were providing goods and performing services to the Homer Project. The District Court also previously found that the three claimants provided goods to and performed services for the use and benefit of the Homer Project. This finding and the other findings noted above were never appealed by Nugget and USF&G and are binding on the parties.

USF&G knew or should have known of the problems Nugget was creating with respect to the claimants in this case by the summer of 1997. However, Nugget may have withheld and/or deliberately concealed some of this information and its secretive arrangements with Spencer from USF&G much like it did the claimants and the Corps of Engineers. For example, in response to two letters from Nugget to the Corps of Engineers, the Corps states in pertinent part in a letter to Nugget dated August 26, 1997 (RRO/40):

> SUBJECT: Spencer Quarry, Contract DACW85-96-C-0020, Homer Spit Repair and Extension, Homer, Alaska
>
> Nugget Construction, Incorporated
> Attn: Mr. Randolph
> 8726 Corbin Drive
> Anchorage, Alaska  99507-3411

4

> Gentlemen:
>
> We acknowledge receipt of [Nugget's] Serial Letter 611-19, dated August 6, 1997 and [Nugget's] Serial Letter 611-21, dated August 11, 1997. We do not necessarily agree that Spencer Rock Products is only a "vendor" for Miller Act purposes.
>
> Based on the supporting costs that you outlined in Serial Letter 611-21, it appears that Nugget Construction has assumed full responsibility for operations at Spencer Quarry for the subject project. Therefore, as primary operator at Spencer Quarry, we believe Nugget Construction is responsible for prompt payment to suppliers and subcontractors who contracted with Spencer Rock Products on this project.
>
> We request that you clarify what support and project management services Nugget Construction provided to Spencer Rock Products to account for the support cost that you have shown in Serial Letter 611-21. Further, please provide information showing what work, if any, has been performed by Spencer Rock Products under its subcontract with Nugget Construction.

The letter states in the lower left corner that it was courtesy copied to "United States Fidelity and Guarantee Co., Attn: Bill Wells, 4220 B Street, Anchorage, AK 99503." USF&G was on clear written notice of the unpaid claims and of Nugget's assumption of Spencer's responsibilities. Mr. Bill Wells appears to be or to have been affiliated with Willis Corroon insurance company. He may have been an agent of USF&G and/or of Nugget, but he was not an agent of any one of the three claimants in this proceeding. There are other letters that state that they were courtesy copied to USF&G and/or Willis Corroon.

The letter from the Corps of Engineers references Serial Letter 611-19, dated August 6, 1997 and Serial Letter 611-21, dated August 11, 1997. These letters reference the letters from claimants noting that they have not been paid and demanding payment.

Nugget was preoccupied with its paperwork scheme to insulate itself from responsibility and liability for its and Spencer Rock's actions while taking over Spencer. Nugget was the paymaster of the Homer Project. The Corps of Engineers notes in other correspondence that Nugget was obligated "not to request for progress payments that which you intend to withhold from a subcontractor or supplier." Nugget, however, withheld payments from the three claimants who were either subcontractors and/or suppliers. In addition, Nugget continued to request progress payments from the Corps of Engineers in complete disregard of

5

this contract requirement. Nugget's strained rationalization of its decisions to withhold payment is inadequate to excuse its failure to pay.

Nugget may have been successful in the first appeal to the Ninth Circuit in characterizing Spencer Rock Products as a supplier rather than a subcontractor. The Ninth Circuit decision opted to disregard the clear United States Supreme Court decisions relied on by the District Court and instead to place weight on a prior decision written by one of the judges on the panel. However, that does not relieve Nugget of paying all the subcontractors and suppliers pursuant to the contract as construed by the agency charged with administering the contract. Nugget continued to request progress payments and nonetheless withheld payment to the three claimants. Documents from the Corps noted as RRO/33, RRO/38, RRO/40, RRO/44, RRO/48 and Nugget documents 611-11, 611-21, 611-25, 611-30 and 611/33 are also responsive.

USF&G's records indicate that it never did anything with the information it had regarding the three claims. If USF&G did anything, there is no record of what it did.

USF&G may have made demands on Nugget to review the claims candidly and in good faith. If it did, it has not produced any supporting documents.

There were a number of settlement opportunities in this case. The three claimants each expended resources preparing settlement offers in earnest throughout this litigation which appear never to have been considered in good faith by the defendants. In any other case like this one that spanned eight years, one or more of the defendants individually or jointly should have made at least a reasonable settlement offer or offers. In the alternative, USF&G should have made an offer in good faith or required Nugget to make an offer in good faith.

When an insurance company provides coverage for an automobile owner, it is committing to defend and indemnify claims by the entire world against the insured subject to terms and conditions of the policy. In this case, USF&G provided a payment bond that answered the claims of only a small number of known claimants. USF&G was aware of the three claimants and could have required Nugget to satisfy the claims asserted by the three claimants. USF&G appears to have obtained personal guaranties and other indemnity guaranties from John Terwilliger and Nugget and thus has always been able to protect itself.

The Alaska Supreme Court discusses some of the duties of a surety in <u>Loyal Order of Moose, Lodge 1392 v. International Fidelity Ins. Co.</u>, 797 P.2d 622 (Alaska 1990). State law causes of action for bad faith are not preempted by the Miller Act. <u>K-W Industries v. National Surety Corp.</u>, 855 F.2d 640 (9th Cir. 1988). USF&G had and has responsibilities as set forth by law

and pursuant to its payment bond provided for the use and benefit of the claimants. The duty of good faith attaches under Alaska law and contemplates awards of compensatory and punitive damages when the duty is breached.

DATED this ___ day of November, 2005 at Anchorage, Alaska.

THE LAW OFFICE OF STEVEN J. SHAMBUREK
Attorney for Plaintiff
Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service and Metco, Inc.


By:_____
    Steven J. Shamburek
    ABA: 8606063


### CERTIFICATE OF SERVICE

The undersigned certifies that on the ____ day of November, 2005, a copy of the foregoing was served by mail upon the following:

Gloria Y. Ho, Esq.
Oles Morrison Rinker & Baker LLP
745 W. 4th Avenue, Suite 502
Anchorage, Alaska  99501

Mr. Herbert A. Viergutz, Esq.
Barokas Martin & Tomlinson
1029 W. 3rd Ave., Suite 280
Anchorage, Alaska  99501

Paul Stockler, Esq.
Law Offices of Paul Stockler
1309 W. 16th Avenue
Anchorage, Alaska  99501

Michael W. Sewright, Esq.
Burr, Pease & Kurtz
810 N Street
Anchorage, AK  99501


_____
Steven J. Shamburek