Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF ALASKA
 3
 4   UNITED STATES OF AMERICA for the
     Use of SHORESIDE PETROLEUM, INC.,
 5   d/b/a Marathon Fuel Service, on its
     own behalf,
 6
              Plaintiffs,                          COPY
 7
        vs.
 8
     NUGGET CONSTRUCTION, INC.; SPENCER
 9   ROCK PRODUCTS INC.; UNITED STATES
     FIDELITY AND GUARANTY COMPANY; and
10   ROBERT A. LAPORE,
11            Defendants.
     _____
12
     Case No. A98-009 CV (HRH)
13
14                    CONFIDENTIAL
15         30(B)(6) DEPOSITION OF NORTH STAR
16                     Jeff Bentz
17               Taken March 28, 2006
                 Commencing at 1:00 p.m.
18
          Volume I - Pages 1 - 55, inclusive
19
20
                 Taken by the Defendant
21                         at
              OLES, MORRISON, RINKER & BAKER
22            745 W. Fourth Av., Suite 502
                  Anchorage, AK  99501
23
24
25
     Reported by: Susan J. Warnick, RPR
```

Page 2

```
 1  APPEARANCES
 2  For Plaintiff - Shoreside Petroleum, Inc.:
 3      LAW OFFICES OF STEVEN J. SHAMBUREK
        BY: Steven J. Shamburek
 4      425 G Street, Suite 630
        Anchorage, AK 99501
 5      (907) 522-5339
 6  For Defendant - Nugget Construction:
 7      OLES, MORRISON, RINKER & BAKER
        BY: Thomas Krider
 8      745 W. Fourth Avenue, Suite 502
        Anchorage, AK 99501
 9      (907) 258-0106
10  For ADF&G:
11      BAROKAS, MARTIN & TOMLINSON
        BY: Herbert A. Viergutz
12      1029 W. Third Av., Suite 280
        Anchorage, AK 99501
13      (907) 277-3533
14  For North Star:
15      BURR, PEASE & KURTZ
        BY: Michael Sewright
16      810 N Street
        Anchorage, AK 99501
17      (907) 276-6100
18
19  BE IT KNOWN that the aforementioned deposition was taken
20  at the time and place duly noted on the title page, before
21  Susan J. Warnick, Registered Professional Reporter and
22  Notary Public within and for the State of Alaska.
23
24
25
```

Page 3

```
 1      (Exhibit 1 marked.)
 2           PROCEEDINGS
 3           JEFF BENTZ,
 4  called as a witness herein, being first duly sworn to
 5  state the truth, the whole truth and nothing but the truth
 6  by the Notary, testified under oath as follows:
 7           EXAMINATION
 8  BY MR. KRIDER:
 9  Q  Mr. Bentz, would you please state and spell your name
10  for the record?
11  A  Jeff Bentz, B-e-n-t-z.
12  Q  Mr. Bentz, my name is Tom Krider. I'm the attorney
13  for Nugget and U.S. F&G in this matter, and I'm going to
14  hand you what was previously marked as Exhibit No. 1 and
15  ask you whether or not you have seen that document before?
16      MR. SEWRIGHT: Mr. Krider, the document you have
17  handed the witness is Notice of a 30(b)(6) Deposition of
18  Plaintiff North Star, and I want to point out that the
19  subject matter or the inquiry areas in that notice of
20  deposition have all been designated confidential, so this
21  deposition should be designated confidential.
22      And part of the reason I mention that is when
23  the damages calculations was provided, I did send an
24  e-mail --
25      MR. KRIDER: Correct.
```

Page 4

```
 1      MR. SEWRIGHT: -- designating it confidential.
 2  And then the second inquiry area of that notice is the
 3  documents attached as Exhibit A.
 4      MR. KRIDER: Correct.
 5      MR. SEWRIGHT: And those documents also had --
 6  they actually had a confidential sticker on them, and
 7  somehow it's disappeared in your copies of these
 8  documents. I don't know how that happened. But here's
 9  how it was provided. Let's see, for example, the first
10  page had confidential on it (indicating). So all I'm
11  saying is how those confidential stamps disappeared is not
12  the issue. What I'm pointing out is that they were
13  stamped confidential, so I would assume since that the
14  subject matter of the deposition that's the whole
15  deposition should just be designated confidential.
16      MR. KRIDER: I have no objection to that.
17  BY MR. KRIDER:
18  Q  So, Mr. Bentz, the original question was: Have you
19  seen the notice of deposition before?
20  A  I believe so.
21  Q  And have you been designated today on behalf of
22  plaintiffs to testify with regard to item number one in
23  the notice of deposition?
24      MR. SEWRIGHT: Object to the characterization.
25  You said plaintiffs.
```

Page 5

```
 1  BY MR. KRIDER:
 2  Q  By plaintiff North Star, to respond and testify with
 3  regard to item number one?
 4  A  Yes.
 5  Q  And have you been designated by plaintiff North Star
 6  to testify today with regard to item number two?
 7  A  Yes.
 8  Q  Mr. Bentz, what did you do in preparation for your
 9  deposition today with regard to item number one?
10  A  Well, I didn't receive this until yesterday, and I
11  read this.
12  Q  Did you do anything else in preparation for your
13  deposition today?
14  A  I read the attached document. And I believe that's
15  about all. Had lunch with Mike.
16  Q  Did you speak to anybody other than counsel about the
17  items listed in number one to be testified to today?
18  A  Did I talk to anybody? How so?
19  Q  Other than counsel?
20      MR. SEWRIGHT: You mean, since he received the
21  notice?
22      MR. KRIDER: Correct.
23      THE WITNESS: No.
24  BY MR. KRIDER:
25  Q  Item number one requests somebody available today to
```

2 (Pages 2 to 5)

Midnight Sun Court Reporters (907) 258-7100

Exhibit 3
Page 2 of 3

### Page 10

1  MR. KRIDER: Are you instructing him not to
2  answer?
3  MR. SEWRIGHT: Let's take a break. I may.
4  Let's take a break. You had that opportunity; your law
5  firm did. Let's take a break.
6  MR. KRIDER: Off the record.
7  (Recess taken.)
8  MR. SEWRIGHT: Mr. Krider, I'm going to allow
9  the witness to respond, but I make these two objections:
10  One, you're taking an item out of context. It's hard for
11  the witness to relate, but I believe he does have an
12  understanding.
13  Secondly, this is definitely -- other than for
14  the more definite calculation, this is clearly an area
15  that your law firm had an opportunity to inquire into back
16  in November -- and did inquire into, I might add.
17  BY MR. KRIDER:
18  Q  Mr. Bentz, for your damages calculation on tortious
19  interference of North Star's agreements, I would like to
20  know what agreements you're referring to.
21  MR. SEWRIGHT: Also object to form of question,
22  calls for a legal conclusion. This is a calculation of
23  damages.
24  THE WITNESS: The agreements that we feel we had
25  to do the work.

### Page 11

1  BY MR. KRIDER:
2  Q  The agreements with whom?
3  A  Well, we feel we had agreements with Nugget, but
4  obviously that's why we're here. So if not on our
5  assumption with our having contracts with Nugget, then
6  interference with the contracts that we had in place with
7  Spencer.
8  Q  And if you think there was a contract with Nugget,
9  what were the terms of that agreement?
10  A  No different than that of Spencer.
11  MR. SEWRIGHT: Counsel, I'm going to have a
12  continuing objection to this for the reasons stated
13  before. And at some point I will instruct the witness not
14  to answer. You're getting into the whole status of the
15  basis of the claim as opposed to the calculation of
16  damages, which is the only new information.
17  MR. KRIDER: And it applies exactly to how
18  damages are calculated
19  MR. SEWRIGHT: I disagree, but...
20  BY MR. KRIDER:
21  Q  And so what was your understanding of the terms of
22  the agreement with Spencer?
23  A  That we would get paid for the work, for moving the
24  rock.
25  Q  How much?

### Page 12

1  A  It was on time and materials.
2  Q  It says here that you are seeking a principal sum of
3  $51,926.16 [sic]; is that correct?
4  MR. SEWRIGHT: $27.
5  BY MR. KRIDER:
6  Q  $51,927.16; is that correct?
7  A  That's correct.
8  Q  Is that still the amount as we sit here today?
9  A  Yes. No, not necessarily.
10  Q  How so not necessarily?
11  A  Time is going by. Interest, attorney fees.
12  Q  Is the principal sum changing?
13  A  No.
14  Q  That was my question, Mr. Bentz: Is the principal
15  sum, as we sit here today, from what it was when this was
16  issued?
17  A  No.
18  Q  It says that essentially you want the principal sum
19  plus statutory prejudgment interest on that principal sum
20  at a rate of 10 and a half percent per annum and Rule 82
21  court-awarded attorneys' fees upon those sums.
22  Do you see that?
23  A  I see that.
24  Q  Do you have any other basis to believe that you'd be
25  entitled to attorneys' fees on this principal amount,

### Page 13

1  other than the Rule 82 court-awarded fees?
2  MR. SEWRIGHT: Object to the form of the
3  question, foundation, calls for a legal conclusion. I'm
4  the attorney here; Mr. Bentz is not.
5  MR. KRIDER: I'm asking if he has any
6  understanding as to another basis for an award of
7  attorneys' fees.
8  THE WITNESS: I'm not certain. This is what I'm
9  aware of. There may be.
10  BY MR. KRIDER:
11  Q  So is it North Star's position, Mr. Bentz, that it is
12  entitled to be paid profit for the 35,866 tons of rock
13  that were loaded at the other dock in Seward?
14  A  Want to rephrase that?
15  Q  Is it North Star's position that it is entitled to
16  its lost profits on 35,866 tons of rock that were loaded
17  out at the other dock?
18  A  Yes.
19  Q  And what's your basis for believing that you're
20  entitled to those lost profits?
21  MR. SEWRIGHT: Objection to the form of the
22  question, calls for a legal conclusion.
23  THE WITNESS: We were hired to load the rock
24  onto the barges. And at some point in time during the
25  process we no longer were loading the rock on the barges.