Michael W. Sewright
BURR, PEASE & KURTZ
810 N Street
Anchorage, AK  99501-3293
Telephone:    (907) 276-6100
Fax No.:       (907) 258-2530
Attorneys for North Star

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf, | |
| Plaintiffs, | |
| and | Case No. 3:98-cv-009-HRH |
| UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf, | **NORTH STAR'S JOINDER IN SHORESIDE AND METCO'S MOTIONS FOR SUMMARY JUDGMENT AND DETERMINATIONS OF LAW REGARDING USF&G** |
| Intervening Plaintiffs, | |
| and | |
| METCO, INC., | |
| Intervening Plaintiff, | |
| vs. | |
| NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE, | |
| Defendants. | |

North Star's Joinder in Shoreside and Metco's
Motions for Summary Judgment and Determinations
of Law Regarding USF&G
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 1 of 9

45-40 / #83440

Plaintiff and Use Plaintiff North Star Terminal & Stevedore Company ("North Star") hereby joins in Shoreside's and Metco's Motion for Summary Judgment and Determination of Law Regarding USF&G filed at Clerk's Docket No. 510.  The grounds for that motion also apply to North Star.

In *Loyal Order of Moose, Lodge 1392 v. International Fidelity Insurance Company*, 797 P.2d 622 (Alaska 1990), the Alaska Supreme Court recognized the right of the intended beneficiaries under a payment or performance bond to bring a tort claim of bad faith dealing against the surety on that bond.  797 P.2d at 626-28.[1]

In *K-W Industries v. National Surety Corporation*, 855 F.2d 640 (9th Cir. 1988), the United States Ninth Circuit Court of Appeals held that such a cause of action under state law applies to claimants like North Star having claims against the surety and its payment bond under the federal Miller Act.  855 F.2d at 643.

> Indeed, the Congressional purpose of protecting suppliers of
> goods and services for federal projects is advanced if sureties

---

[1]    In reaching that conclusion the Alaska court chiefly relied upon its previous holding in *State Farm Fire & Casualty Co. v. Nicholson*, 777 P.2d 1152 (Alaska 1989), and the Arizona Supreme Court's decision in *Dodge v. Fidelity & Deposit Co. of Maryland*, 778 P.2d 1240 (Ariz. 1989).  *Id.*  The Alaska court adopted the analysis from *Dodge*, which it quoted from as follows:

> Plaintiff's position is simple:  Sureties are insurers, insurers are subject to bad faith tort liability; therefore, sureties are subject to bad faith tort liability . . . . [T]his proposition is supported by our statutes, case law and sound policy reasons.

*Loyal Order of Moose*, 797 P.2d at 627.

North Star's Joinder in Shoreside and Metco's
Motions for Summary Judgment and Determinations
of Law Regarding USF&G
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                        45-40 / #83440
Page 2 of 9

>  are deterred by state tort law from bad faith practices in
>  responding to claims on Miller Act payment bonds.

*Id.*  The purpose of the Miller Act is to protect persons supplying materials and labor for

federal projects.  *Id.* at 642-43.  That Act gives those intended beneficiaries a direct cause

of action against the surety and payment bond intended specifically "for the use and

benefit" of those protected persons.  *Id.*

In his report previously submitted to the Court, Mr. Grant Callow notes some of

the actions and inactions of USF&G amounting to a bad faith failure to properly and

independently investigate, handle and settle the claims of the claimants.  *See*

Mr. Callow's report, Clerk's Docket No. 460, Exh. 1.  He refers to documents first

disclosed to these plaintiffs in November of 2005 and in a subsequent set of production

through Mr. Viergutz's office on or about January 10 of this year.  *Id.*  *See also* Exhibit 1

attached hereto, transcript pp. 3, 94-95, 108, & exh. pp. 19-33.

More information was revealed through the deposition taken on March 8, 2006, of

Mr. James Ferguson, wherein many of the same documents were used.  Mr. Ferguson

testified that he is the Alaska area surety manager for Willis of Alaska.  *See* excerpts of

James Ferguson's deposition transcript attached hereto as Exhibit 1, at tr. pp. 6-7.  He

also testified that he has been the agent and broker for both USF&G and Nugget in

relation to the Homer Spit Repair and Revetment project herein pertinent.  *Id*. at tr. pp.

11-12, 90.  He confirmed that he was USF&G's attorney-in-fact listed on the payment

_____
North Star's Joinder in Shoreside and Metco's
Motions for Summary Judgment and Determinations
of Law Regarding USF&G
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                             45-40 / #83440
Page 3 of 9

bond for that project to whom notice regarding project claims and developments relating
to the bond was to be addressed, at his address.  *Id.* at tr. pp. 16-17, 60, 64, 67, 85, 89-90,
100-108.

Undisputed from that deposition and from the previous record established in this
case is that USF&G knew, or at least had written notice, at least as early as August 1997,
of North Star and the other claimants' claims and of Nugget's takeover of Spencer
Rock's operations and interception of Spencer Rock's funds through a secret arrangement
that none of the claimants or even the project owner Corps of Engineers had known
about.  *See, e.g.*, this Court's August 30, 2002 Order—Motions for Summary Judgment,
Clerk's Docket No. 310 at 11-12 and record on file referenced there.  *See also* discussion
*infra*.  USF&G knew or should have known at least by then, through such
correspondence between Nugget and the U. S. Army Corps of Engineers and USF&G,
that the Corps, which was the project owner, considered Nugget fully and directly
responsible "for prompt payment to suppliers and subcontractors who contracted with
Spencer Rock Products on this project" as a result of Nugget's assumption of those
operations.  *Id*. & attached Exhibit 1 at tr. pp. 89-90 & exh. p. 29.  That direct
responsibility was the basis for liability echoed later in this Court's August 30, 2002
summary judgment Order.  Clerk's Docket No. 310.

Because immediately copied with it, USF&G also had notice of the letter of
September 19, 1997 from North Star's attorney to Nugget's attorney, Mr. Lukjanowicz,

North Star's Joinder in Shoreside and Metco's
Motions for Summary Judgment and Determinations
of Law Regarding USF&G
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                        45-40 / #83440
Page 4 of 9

that North Star asserted Miller Act claims against Nugget partly on the basis of a direct relationship between North Star and Nugget, as confirmed later by this Court's August 30, 2002 Order.  *See* Exhibit 2 attached hereto; Exhibit 1 tr. pp. 106-107.

As a result of the situation, USF&G should have known that a conflict of interest existed between it and Nugget, the principal on the bond, as regards the claimants' claims.  Nevertheless, instead of independently investigating and handling those claims, and challenging Nugget regarding them, USF&G turned the matter over to Nugget to "handle" and keep USF&G "clean out of this."  *See* Exhibit 1 at tr. pp. 100-101, 104-108 & exh. p. 20.  Furthermore, USF&G, once sued on those claims in mid-January 1998, immediately turned the entire defense of them over to Nugget, in February 1998, and with that USF&G's duties of good faith and fair dealing toward the bond's intended beneficiaries, the claimants, through a tender of defense which Nugget accepted.  *Id*. at tr. pp. 63-64 & exh. pp. 30-35.  By doing so, USF&G acceded to the wishes of its principal, Nugget, and also saved itself the expense of defense, under a separate indemnity agreement it had with Nugget which was not part of the payment bond—a situation Mr. Callow in his report likened to "putting the fox in charge of the henhouse."  *See* Clerk's

_____
North Star's Joinder in Shoreside and Metco's
Motions for Summary Judgment and Determinations
of Law Regarding USF&G
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 5 of 9

45-40 / #83440

Docket No. 460, Exh. 1 at 11.[2]

USF&G also ignored the representations in the March 12, 1998 letter and exhibits

of J. Dennis Stacey, President of Chugach Rock Corporation, another claimant, which

were sent directly to USF&G's designated Surety Claims Specialist, attorney Jane

Bennett Poling.  *See* Exh. 1 attached hereto at tr. pp. 109-113 & exh. pp. 23-28.  That

letter contained insider information detailing Nugget's takeover, control, and subterfuge

bleeding Spencer Rock of funds and the ability to pay others.  *Id*.  That letter, which was

only recently revealed to these claimants, is attached as an exhibit to Mr. Stacey's

affidavit filed herein with Shoreside and Metco's separate motion for summary judgment

against Nugget, at Clerk's Docket Nos. 508 and 514.  That letter was also received by

USF&G in March 1998, as shown by its receipt stamp, but not produced to these

claimants until November 2005, and used as an exhibit at Mr. Ferguson's deposition.  *See*

---

[2]     *In Loyal Order of Moose, Lodge 1392*, the Alaska Supreme Court emphasized the "appositional" situation such split loyalties can put the surety in, wherein the surety often finds it difficult to decide whether to accede to the demands of the claimant or abide by the position desired by the principal.  797 P.2d at 627-28 n.8.

> Given the nature of a corporate surety's business, and its knowledge
> of the inherent risk it entails, it can have no real confidence that a
> "middle man" plea on its part . . . will find a favorable reception with
> the court.

*Id*., quoting from Brumley, *Duty of A Shielded Surety to Investigate*, 17 Forum 266, 280 (1981), and *Dodge v. Fidelity & Deposit Co. of Md.*, 778 P.2d 1240, 1243-44 (Ariz. 1989).

North Star's Joinder in Shoreside and Metco's
Motions for Summary Judgment and Determinations
of Law Regarding USF&G
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                      45-40 / #83440
Page 6 of 9

Exhibit 1 attached hereto at tr. pp. 109-113 & exh. pp. 21-23.

In that letter, Mr. Stacey gave clear, unmistakable warning of the ultimate facts and principles constituting USF&G's obligation to pay the claims in this case. *Id*. In that letter he notified Ms. Poling early on of key facts these plaintiffs have since had to ferret out through long, expensive discovery and litigation, but which USF&G already knew (and the claimants did not know USF&G knew), including:

> After Spencer began quarrying rock, its operations were taken over by Nugget (see enclosed Support Agreement). At that point, Nugget became <u>directly</u> responsible for payment for all rock removed from the quarry for the prime contract. * * * <u>By its actions, Nugget implicitly accepted Spencer's obligations to pay for the rock it took to its job from the quarry</u> . . . .
>
> Nugget stepped into the sub-contractor's role in operating the quarry, and Nugget and its surety must accept the payment obligations for the quarry material shipped to the project. Nugget has asserted offsetting claims against Spencer Rock and for this reason has not paid Spencer . . . .

*Id*. at exh. pp. 23-24 (emphasis in original).

It is striking how much that notice by Mr. Stacey to USF&G's Surety Claims Specialist sounds like the material facts North Star and the other claimants herein were able to ultimately develop against Nugget and USF&G four years later, mostly as a result of information ultimately provided to them in 2002, not by Nugget or USF&G but by Spencer Rock and Robert LaPore. *See, e.g.*, Clerk's Docket Nos. 282, 399 at 7-8 & 17-18 & 401 at 2-4. Mr. Stacey's notice also sounds very much like that notice the Corps

_____
North Star's Joinder in Shoreside and Metco's
Motions for Summary Judgment and Determinations
of Law Regarding USF&G
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83440
Page 7 of 9

of Engineers gave USF&G in correspondence on August 26, 1997 which USF&G received.  *See* Exhibit 1 attached hereto at tr. pp. 104-107 & exh. p. 29.  It sounds very much like the ultimate findings of this Court in its August 30, 2002 Order (Clerk's Docket No. 310), of which USF&G also obviously had notice, and in the conclusion last year of the Ninth Circuit Court of Appeals finding evidence of Nugget's control and subterfuge in this matter.  (Clerk's Docket No. 383 at 6.)

Thus, USF&G has known for almost nine years of the basis of the present claims and has not yet undertaken to fulfill its duties.  It has instead turned the interests of these claimants, its insured beneficiaries under the payment bond, over to Nugget entirely to "handle."  It did so in those words, as correspondence between Mr. Ferguson and his principal, USF&G, confirms.  Exhibit 1 at tr. pp. 100-101, 104-108 & exh. p. 20.

Other recently produced correspondence addressed by Mr. Callow and at Mr. Ferguson's deposition reveals that USF&G questioned Nugget's defenses and yet, throughout this matter, blindly accepted the representations of Nugget and Nugget's attorneys, also representing USF&G, that they were "unable" to settle the claims brought against Nugget and USF&G by these claimants.  *See, e.g.,* Clerk's Docket No. 460, Exh. 1 at 5, 7.  USF&G did so without ascertaining the truth (nor apparently seeking the truth) that Nugget and its attorneys had in fact made no offers to settle, at least until their first offer in June 2005 (of only $35,000 to settle all claims).  Until then, they also ignored the claimants' own repeated settlement efforts.  Exhibit 1 at tr. pp. 124-125.

---

North Star's Joinder in Shoreside and Metco's
Motions for Summary Judgment and Determinations
of Law Regarding USF&G
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83440
Page 8 of 9

When USF&G should have independently investigated and seriously considered paying the claims, its records demonstrate that it breached and disregarded its duties toward the claimants instead.

Respectfully submitted at Anchorage, Alaska, on May 9, 2006.

s/ Michael W. Sewright
Burr, Pease & Kurtz
810 N Street
Anchorage, Alaska 99501
Phone: (907) 276-6100
Fax: (907) 258-2530
E-mail: bpk@bpk.com
Alaska Bar No. 7510090

CERTIFICATE OF SERVICE
I certify that on the 9th day of May, 2006, a copy of the foregoing NORTH STAR'S JOINDER IN SHORESIDE AND METCO'S MOTIONS FOR SUMMARY JUDGMENT AND DETERMINATIONS OF LAW REGARDING USF&G was served electronically to:

    Steven S. Shamburek, Esq.
    Traeger Machetanz, Esq.
    Paul D. Stockler
    Herbert A. Viergutz
    C. Patrick Stoll, Esq.


s/ Michael W. Sewright

_____
North Star's Joinder in Shoreside and Metco's
Motions for Summary Judgment and Determinations
of Law Regarding USF&G
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                     45-40 / #83440
Page 9 of 9