Herbert A. Viergutz, Esq.
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501
Phone: (907) 276-8010
Facsimile: (907) 276-5334

Attorneys for United States Fidelity and Guaranty Company

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA AT ANCHORAGE**

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, on its own behalf,<br><br>Plaintiffs,<br><br>and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a MARATHON FUEL SERVICE, and SHORESIDE PETROLEUM, INC., d/b/a MARATHON FUEL SERVICE, on its own behalf,<br><br>Intervening Plaintiffs,<br><br>and<br><br>METCO, INC.,<br><br>Intervening Plaintiff,<br><br>vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>Defendants. | No. 3:98-cv-9 (HRH) |

**OPPOSITION TO PLAINTIFF S, SHORESIDE AND METCO, MOTION FOR SUMMARY JUDGMENT AND DETERMINATION OF LAW REGARDING USF&G**

I.

**INTRODUCTION**

Defendant, USF&G, herein opposes Plaintiff's above referenced Motion. However, the content of the Motion is indecipherable, as it is a mishmash and hodgepodge of argument, with either no requests or conflicting requests for relief. For example, at page 2 of Plaintiff's Motion, they state:

> The claimants seek a determination of law regarding the bad faith cause of action. The quantum of punitive damages against USF&G should be the only remaining issue to present to the trier of fact.

However, the final sentence, at page 36 of Plaintiff's instant Motion, states:
> The claim for bad faith and the amount of punitive damages should be presented to the trier of fact.

What relief are Plaintiff's seeking?  USF&G does not know but, out of an abundance of caution, will attempt to respond to the potpourri of assertions forwarded by Plaintiffs.

II.

**CLAIMANTS HAVE PROVIDED NO FACTUAL BASIS FOR THEIR CLAIMS**

Plaintiff's claim for bad faith are to be found at paragraph 38 of the three Amended Complaints filed August 31, 2005.  North Star's bad faith claim alleges as follows:

> Upon information and belief and subject to further evidence as disclosed by Discovery, USF&G is also liable to North Star under Alaska law for the bad faith non payment, non-settlement and/or refusal to discuss settlement of North Star=s claim previously brought under the Miller Act herein of which USF&G was notified (Amended Complaint, para 38).

Shoreside's and Metco's bad faith allegations are identical, and allege as follows:

> Plaintiff realleges and incorporates the other allegations herein. Upon information and belief and subject to such further evidence as is provided by disclosure and in discovery, USF&G is also liable to claimant under Alaska law, for the bad faith nonpayment, nonsettlement and/or refusal to discuss settlement of Claimant=s claims brought under the Miller Act and State law herein, of which USF&G was notified.  USF&G has repeatedly failed to address payment to the claimant, for the payment of goods and services

despite demand. Claimant is entitled to recover such damages, plus interest and attorney fees, from USF&G. (Amended Complaint para 38).

Beginning at page 2 of their instant Motion, Plaintiffs begin a rambling discourse, quoting verbatim Interrogatory Responses for the next 23 pages. Almost none of the content therein relates to, references, or alleges bad faith actions of USF&G, consistent with the allegations contained within Plaintiff's respective Amended Complaints, at paragraphs 38.

Plaintiff's first cite Metco's Discovery Responses dealing with paragraph 27 of its Amended Complaint. None of the content of that Interrogatory Response references, nor relates to any conduct of USF&G.

At page 3 of Plaintiff's Motion, Plaintiffs quote the deposition transcript of Nugget deponent, Randy Randolph, with the content thereof in no way relating to any conduct of USF&G.

Plaintiffs then quote findings of the Court related to Nugget and Randolph, none of which reference any conduct of USF&G.

Next, Plaintiffs begin quoting a letter from the Corps of Engineers dated August 16, 1997 (which is inadmissable heresay not in Affidavit form), through page 5 of their Motion, with the content therein once again failing in total to reference any conduct of USF&G. Finally, at page 6 of its Motion, Plaintiff's first reference USF&G by stating:

> The letter [Corps letter dated August 16, 1997] states that it was courtesy copied to United States Fidelity and Guaranty Co., attention: Bill Wells, 4220 B Street, Anchorage, AK 99503. USF&G was on clear written notice.[1]

Plaintiff's Interrogatory Response continues with counsel's heresay declarations, absent factual basis, and clearly inappropriate content for a Discovery Response, e.g.

---

[1] Plaintiffs fail to advise the Court that Bill Wells is in the Underwriting Department of USF&G, with his office being in Seattle, Washington.

> Nugget may have been successful in the first Appeal to the Ninth Circuit in characterizing Spencer Rock Products as a supplier rather than a subcontractor. However, that does not relieve Nugget of paying all the suppliers and subcontractors pursuant to this contract as construed by the agency charged with administering the contract. . .

These baseless, incorrect legal conclusions hardly lend support to Plaintiff=s Summary Judgment Motion.

Plaintiff's then cite Response to Interrogatory No. 2 of Metco's Discovery Request, relating to paragraph 29 of its Amended Complaint. Once again, no conduct of USF&G is referenced therein, with the same also being true for Response to Interrogatory No. 3, relating to paragraph 33 of its Amended Complaint, found at pages 6 and 7 of Plaintiff's instant Motion. Likewise, Response to Interrogatory No. 4, relating to paragraph 34 of its Amended Complaint, alleges conduct by Nugget, but fails to reference any conduct by USF&G. Response to Interrogatory No. 5, also found at page 7, is inadmissable in the instant Motion, as not relating to any facts whatsoever, but simply legal conclusions of counsel for Metco found within a Discovery Response. The only reference to USF&G therein is that "these additional damages may also be awarded against USF&G under state law causes of action. . .". Such a statement does not provide a factual basis for this Court granting summary judgment under the standard which it must apply, as discussed in greater detail hereinbelow.

Plaintiff's then take four pages (7-10) of their instant Motion in quoting Responses to Requests for Production, which are totally irrelevant to the instant Motion.

At page 10 of Plaintiff's instant Motion, they begin quoting verbatim Metco's Supplemental Discovery Response, as follows:

> Supplemental Response to Interrogatory Nos. 1, 2, 3, 4 and 5: This answer also supplements claimant's allegations in paragraph 38 of the Amended Complaint.

However the next four pages [through page 13 of their instant Motion] nowhere reference any conduct of USF&G, other than providing support to USF&G that it was not guilty of any bad faith conduct:

> USF&G knew or should have known of the problems Nugget was creating with respect to the claimants in this case in the Summer of 1997. <u>However, Nugget may have withheld and/or deliberately concealed some of this information and its secretive arrangements with Spencer Rock from USF&G much like it did the claimants and the Corps of Engineers</u>. . . (emphasis added).
>
> Obviously, Plaintiffs do not meet their burden of proof.
>
> To show a claim for bad faith, plaintiff must show the absence of a reasonable basis for denying benefits of the policy <u>and</u> the defendant=s knowledge or reckless disregard of a reasonable basis for denying the claim.

<u>Hillman v. Nationwide Mutual Fire Ins. Co.</u>, 855 P. 2d 1321, 1324 (Alaska 1993).

Clearly, Plaintiff's Supplemental Discovery Response constitutes an admission that USF&G neither knew or had reason to know anything. Further, the Supplemental Discovery Response totally destroys Plaintiff's claim for punitive damages against USF&G. A.S. 09.17.020 requires that Plaintiffs establish:

> (b). . . <u>by clear and convincing evidence</u> that the defendant=s conduct (1) was outrageous, including acts done with malice or bad motive; or (2) evidenced reckless indifference to the interests of another person (emphasis added).

<u>Sturm, Roger & Co., Inc., v. Day</u>, 594 P. 2d 38, 46 (Alaska 1979).

Plaintiff's then continue with more inadmissable counsel heresay legal argument, totally unsupported, in their rambling adnaseam verbatim Discovery Response recitation, at page 14 of their Motion, as follows:

> The letter states in the lower left corner that it was courtesy copied to United States Fidelity and Guaranty Co., Attn: Bill Wells, 4220 B Street, Anchorage, AK 99503. USF&G was on clear written notice of the unpaid claims and of

Nugget's assumption of Spencer's responsibilities. Mr. Bill Wells appears to be or to have been affiliated with Willis Corroon Insurance Company. He may have been an agent of USF&G and/or Nugget. He was not an agent of any of the three claimants in these proceedings. There are other correspondence that state that they were courtesy copied to USF&G and/or Willis Corroon.[2]

The fact that USF&G and/or Willis Corroon were copied on letters is proof of nothing, as are counsel's legal conclusions and counsel's statements within Discovery Responses. How the following statement, at page 14 of Plaintiff's instant Motion, contained within the adnaseam quote of its Discovery Response is relevant, and/or supportive of a summary judgment Motion, is a mystery:

> Nugget may have been successful in the first appeal to the Ninth Circuit in characterizing Spencer Rock Products as a supplier rather than a subcontractor. The Ninth Circuit Decision opted to disregard the clear United States Supreme Court Decisions relied on by the District Court and instead to place weight on a prior Decision written by one of the Judges on the panel. However, that does not relieve Nugget of paying all the subcontractors and suppliers pursuant to the contract as construed by the agency charged with administering the contract. . .

It surely does. The Ninth Circuit Opinion is the law of the land, so to speak, until and unless reversed.

Finally, page 15 of Plaintiff's instant Motion, references USF&G, but the content thereof is once again not factual in nature, and constitutes an inappropriate forwarding of legal conclusions and legal argument by counsel within a Discovery Response, which fails in all respects as being an appropriate supportive factual basis in accordance with the standard for granting summary judgment. <u>Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough</u>, 5271 P. 2d 447 (Alaska 1974); and <u>Brock v. Rogers & Babler,</u>

---

[2] The Court is reminded that Bill Wells is an Underwriter for USF&G, with his offices in Seattle, Washington.

Inc., 536 P. 2d 778 (Alaska 1975).  Plaintiffs state:

> USF&G's records indicate that it never did anything with the information it had regarding the three claims.  If USF&G did anything, there was no record of what it did.
> USF&G may have made demands on Nugget to review the clams candidly and in good faith.  If it did, it has not produced any supporting documents. . .  In the alternative, USF&G should have made an offer in good faith [settlement offer] or required Nugget to make an offer in good faith. . .  In this case, USF&G provided a payment bond that answered the claims of only a small number of known claimants.  USF&G was aware of the three claimants and could have required Nugget to satisfy the claims asserted by the three claimants.  USF&G appears to have obtained personal guaranties and other indemnity guarantee's from John Terwilliger of Nugget and thus has always been able to protect itself. . .[3]

The remainder of Plaintiff's "Factual Basis For Their Claims" section of their Motion, i.e., pages 15-25, are for the most part a verbatim recitation by Shoreside of its Discovery Responses, which are a verbatim recitation of the Metco Discovery Responses found in the pervious 13 pages of the instant Motion.

Plaintiff's end their 24 page Discovery Response quotation in their "Factual Basis For Their Claims"  section of the instant Motion by stating:

> The claimants assert additional facts in the companion Motion against Nugget that are incorporated by reference.

---

[3] None of Plaintiff's wild accusations are supported by any admissible evidence.  Plaintiff's chose not to take any depositions of USF&G personnel, and clearly have no idea whatsoever what USF&G did do or may have done.  The speculation and paranoia of Plaintiffs is unsupported by the record, as there is not one scintilla of factual evidence to back up the accusations of Plaintiffs.

USF&G knows of no Federal Rule of Civil Procedure allowing such an incorporation by reference of a companion Motion that was not brought against this Defendant, USF&G. USF&G will not address issues which are not properly brought within the instant Motion. Obviously, Plaintiff's have provided absolutely no factual basis whatsoever for the instant Motion to be granted, whatever that Motion may be, as USF&G is uncertain of the relief Plaintiffs are seeking.

### III.

**USF&G DOES NOT ADMIT THAT THERE WAS NO FACTUAL BASIS TO ITS AFFIRMATIVE DEFENSES.**

Plaintiff's have brought a separate and distinct Motion against USF&G titled "North Star's Motion for Summary Judgment Against USF&G Upon Its Affirmative Defenses". In its Opposition, USF&G provides a basis for this Court to deny that Motion. As a result, USF&G will not spend time within the instant Motion arguing what has been the subject of a separate Motion brought by a companion Plaintiff. Suffice it to say that USF&G fully responded to Plaintiff=s Discovery Requests regarding its Affirmative Defenses. As such, this Court would clearly be within its power to sanction Shoreside and Metco in the instant Motion for asserting, at page 25 of the instant Motion, the following:

> In its response dated March 14, 2006, USF&G does not state any factual basis to support any of its affirmative defenses. USF&G does not provide a factual basis to challenge the claims of bad faith maintained by the claimants or to support the statute of limitations defense by USF&G.[4] Therefore, the claimants and this Court can conclude that USF&G by its own responses admits that there is no factual basis underpinning its defenses.

In fact, USF&G fully responded to Plaintiff's Interrogatory No. 10, through incorporating by reference the Discovery Response of Nugget relating to the identical Affirmative Defenses, and by also responding within its own Discovery Response, with

---

[4] USF&G has filed separate Motions for Summary Judgment on the statute of limitation defense, as well as the bad faith claim.

copies of the USF&G Discovery Responses attached hereto as Exhibit A; and a copy of the Nugget Discovery Response attached hereto as Exhibit B.

North Star fails to set forth that the only affirmative defenses USF&G did not specifically answer, as relates to Interrogatory No. 10 are No's. 12 and 13, as there is no "factual basis" to support them. Affirmative Defense No. 12 is simply a legal proposition that the surety cannot be liable for more than the penal sum of the bond. Affirmative Defense No. 13 simply states that the surety is entitled to assert and does assert on its own behalf any affirmative defenses that could have been asserted by its principal. Those Affirmative Defenses are as follows:

> 12. Assuming, arguendo, that North Star is in privity with Nugget, the surety has no liability in excess of the penal sum of the bond.
> 13. Assuming, arguendo, that North Star is in privity with Nugget, the surety is entitled to assert and hereby asserts on its own behalf and for its own benefit all defenses that could be asserted by its principal, whether or not such defenses are actually asserted by its principal.

What factual basis do Plaintiff's expect to support such affirmative defenses. They are simply legal propositions.

Finally, as argued more fully in USF&G's Opposition to Plaintiff=s Motion for Summary Judgment against USF&G upon its Affirmative Defenses, that Motion is not properly brought, as it is in essence a Discovery Motion, prior to required compliance procedures under Rule 37. USF&G has no clue as to what this portion of Plaintiff's brief relates to, or concerns, or what, if any, relief is requested.

**IV.**

**USF&G S LIABILITY ON ITS PAYMENT BOND IS DICTATED BY THE TERMS OF THE BOND AND THE MILLER ACT.**

The case law quoted by Plaintiffs, at page 26 of their brief, is dispositive of the issue they address at Section II of their Motion, whatever that issue may be:

> . . . thus, the liability of a surety and its principal on a Miller Act Payment Bond is coextensive with the contractual liability of the principal only to the extent that it is consistent with the rights and obligations created under the Miller Act.

9

Attempts to expand the duties of the surety under the terms of the bond have been rejected:

> Law of surety=s generally holds that a contract of suretyship must be strictly construed in the interests of the surety, and the surety cannot in law or equity be bound further than the very terms of his contract.

Winston Corp. v. Continental Cas. Co., 36 F. Supp. 1023, 1030 (S.D. Ohio 1973), reversed on other grounds, 508 A. 2d 1298 (6 cir. 1975) Cert. Denied, 423 U.S. 914 (1975). The Payment Bond is attached hereto as Exhibit C. The nature of a surety"s undertaking to its obligee is to ensure that the job is completed. That duty is described in, and limited by the four corners of the bond instrument. Winston, supra, 1030. Plaintiff's argument, at page 28 of their Motion, is contrary to the Ninth Circuit Decisions in this case:

> The Corps of Engineers did not make the hypertechnical distinction concocted by counsel by Nugget to try to justify Nugget's refusal to pay.

Contrary to Plaintiff's assertion that claimants were awarded judgment in 1999, the Ninth Circuit, at page 6 of its Opinion, clearly stated: "We reviewed the District Court=s Judgment de novo and reverse." Thus, there is no Miller Act judgment, nor any other judgment entered in this case, and the only liability of USF&G that may be established would be pursuant to its Bond (Exhibit C hereto) under the Miller Act.[5] Until such time as liability against the principal is established, if at all, which is unlikely, then and only then does USF&G have any obligation to discharge.[6]

---

[5] Counsel's unsupported argument to the contrary at pages 27-31 of its Motion does not establish the absence of a genuine issue of material fact, as no admissible evidence is presented.

[6] The Court is reminded that Plaintiff's chose not to take the deposition of any employee of USF&G during the entire tenure of this litigation. Hence, they have never established, nor will they establish, that USF&G simply sat on its hands and did nothing, as Plaintiff's chose not to question the relevant USF&G witnesses who were involved at the relevant times. Plaintiff's entire case against USF&G is built

At page 31 of Plaintiff's instant Motion, the Court is presented with evidence as to why Plaintiff's should be sanctioned. Plaintiffs, contrary to the Rules of Federal Civil Procedure, disclosed the existence of a recent Offer of Judgment forwarded by USF&G, and somehow contend that this Offer is indicative of bad faith. It is not evidence of bad, faith, but will be used as a basis for USF&G to be awarded enhanced attorney fees. Nonetheless, Plaintiff's disclosure of this Offer of Judgment violates Evidence Rule 408, and Plaintiffs should be sanctioned.[7]

USF&G stands dumbfounded in reviewing Section II of Plaintiff's Motion, titled "Legal Basis Miller Act Claims", as no relief is requested in the Motion vis a vis the briefing contained therein. Other than using this section of Plaintiff's Motion as its stage for propounding more heresay, undocumented, and inadmissable assertions against USF&G, it is absent purpose.

## V.

## PLAINTIFF S BAD FAITH CLAIM HAS NO MERIT.

As articulated hereinabove, paragraph 38 of the respective Plaintiff's Amended Complaint allege a bad faith cause of action against USF&G. USF&G has filed a Motion

---

upon speculation, supposition, and paranoia.

[7]

At the very least, Plaintiffs should have been candid enough to also advise the Court that Nugget recently forwarded Offers of Judgment for the full value of the principal amounts of Metco and Shoreside's claims, plus Civil Rule 82 fees and interest. Obviously, this case is not about Defendant's bad faith, but really concerns Plaintiff's efforts to recover their actual attorney fees.

for Summary Judgment on Plaintiff's Bad Faith Claim. That Motion should be granted for the reasons articulated therein.

USF&G is uncertain what the section entitled "bad faith claims", beginning at page 32, and ending at page 34 of Plaintiff's Motion, is all about. Certainly, Plaintiff's cannot be requesting that the Court enter summary judgment against USF&G on their bad faith claims, as the relief they request in their conclusion is one that the "claim for bad faith and the amount of punitive damages should be presented to the trier of fact". Apparently, Plaintiffs are moving that their bad faith claim not be stricken as a matter of procedure. However, USF&G has filed a separate and distinct Motion for Summary Judgment on Plaintiff's Bad Faith Claim. The Court is herein requested to grant summary judgment to USF&G based upon that separate and distinct filing.

There is one critical flaw as a matter of law in Plaintiff's argument, at pages 33 and 34 of its Motion, i.e., that the Alaska Unfair Claims Settlement Practices Act, A.S. 21.36.125 could be considered as evidence of bad faith investigation in handling the settlement of the claim in the instant case, as <u>O.K. Lumber Co., v. Providence Washington Ins. Co.</u>, 759 P. 2d 523, 527 (Alaska 1988) specifically held that the Act did not create a private right of action for damages. As the Court in <u>State Farm Mut. Auto. Ins., v. Weiford</u>, 831 P. 2d 1264. 1269 (Alaska 1992) clearly pointed out:

> That question was of importance in <u>O.K. Lumber</u> because that case was brought by a third-party claimant having no contractual relationship with the insurance company. Without such a relationship, the claimant was not able to sue for breach of the covenant of good faith and fair dealing. Id. at 526. Thus the claimant was forced to rely on the Act if he was to have a cause of action for bad faith against the insurance company. Similarly, in the instant case, the claim is brought by third-party claimants having no contractual relationship with the surety. As a result, the Act does not provide for the relief suggested by plaintiffs herein but holds, as a matter of law, that since they are not first-party claimants, they are not entitled to relief under the Act.

Likewise, the Section titled "Expert Report of William Grant Callow" is submitted for no known reason. There exits no claim for relief within that section, and it appears it has

no purpose other than to introduce Mr. Callow's opinions. Those opinions are inadmissible heresay. USF&G has filed a separate Motion to exclude Mr. Callow's report, testimony, and opinions. That Motion should also be granted. Not knowing what else to say with regard to this section, USF&G therefore attaches the Report of its Expert, John George, hereto as Exhibit D.

**VI.**

**PLAINTIFFS HAVE NOT MET THEIR BURDEN FOR THE GRANTING OF SUMMARY JUDGMENT.**

Plaintiffs have not demonstrated whatsoever that there are no genuine issues as to any material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505 (1986). Plaintiffs have not moved for summary judgment regarding Miller Act claims, as no such request for relief was made in the instant Motion. Summary judgment cannot therefore be granted to Plaintiffs on Miller Act liability.

Secondly, USF&G has moved for summary judgment on Plaintiff's bad faith claim. On the otherhand, Plaintiffs have not moved for summary judgment on their bad faith claim, as their own pleading, at page 36 states: "the claim for bad faith and the amount of punitive damages should be presented to the trier of fact." Hence, no such relief is requested in the instant Motion and, therefore, Plaintiff's Motion for Summary Judgment and Determination of Law Regarding USF&G should be denied. <u>California Architecture and Building Products, Inc., v. Franciscan Ceramics, Inc.</u>, 818 F. 2nd 1466 (9 Cir. 1987).

Dated this 15th day of May, 2006.

/s Herbert A. Viergutz
_____
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501
Phone: (907) 276-8010 Facsimile: (907) 276-5334
barmar@gci.net
Alaska Bar No. 8506088

**CERTIFICATE OF SERVICE**
I HEREBY CERTIFY that a copy of this document was served by electronic notification on this 15th day of May, 2006, to:

Michael W. Sewright, Esq.
Burr, Pease & Kurtz
810 N Street
Anchorage, AK  99501

Paul Stockler, Esq.
1309 West 16th Avenue
Anchorage, AK  99501

Traeger Machetanz, Esq/Tom Krider, Esq.
Oles Morrison Rinker & Baker, LLP
745 4th Avenue, Suite 502
Anchorage, AK 99501-2136

Steven J. Shamburek, Esq.
Law Office of Steven J. Shamburek
425 G Street, Suite 630
Anchorage, AK  99501-5872

/s Herbert A. Viergutz