Michael W. Sewright
BURR, PEASE & KURTZ
810 N Street
Anchorage, AK  99501-3293
Telephone:    (907) 276-6100
Fax No.:       (907) 258-2530
Attorneys for North Star

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>            Plaintiffs,<br>   and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf,<br><br>            Intervening Plaintiffs,<br>   and<br><br>METCO, INC.,<br><br>            Intervening Plaintiff,<br>    vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>            Defendants. | Case No. 3:98-cv-009-HRH<br><br><br>**MEMORANDUM IN SUPPORT OF NORTH STAR'S OPPOSITION AND CROSS-MOTION TO NUGGET AND USF&G'S APRIL 28, 2006 MOTION FOR SUMMARY JUDGMENT AGAINST NORTH STAR [Clerk's Docket No. 488]** |

# I. INTRODUCTION

Defendant Nugget Construction, Inc. ("Nugget") and, to a lesser degree, defendant United States Fidelity & Guaranty Company ("USF&G"), by and through the law firm of Oles Morrison Rinker & Baker LLP, purport to move for summary judgment against "all" state law claims and causes of action alleged by North Star in its Amended Complaint.[1]  The defendants' motion, memorandum, and other filings associated with that motion are filed at Clerk's Docket Nos. 488-491.  North Star's Amended Complaint is filed at Clerk's Docket Nos. 408 & 409.

A few introductory observations about those defendants' filings are in order.

First, they do not actually address all of North Star's state law claims.  They do not at all address North Star's tortious interference of business relations or bad faith claims set out at paragraphs 35 and 38 of North Star's Amended Complaint.[2]

Second, those filings misstate and fail to completely address at least most of North Star's state law claims that they do address.  Nugget's memorandum (Clerk's Docket No. 489) presents incorrect "strawman" representations of North Star's claims and then proceeds to try to knock down those strawman arguments therein created.  A good example of that is the treatment given North Star's agency claim at Section II.F. of that memorandum (Clerk's Docket No. 489 at 42-

---

[1]    USF&G moves for summary judgment through the above-referenced filings only as to one state law claim set forth in North Star's Amended Complaint also alleged against USF&G on which Oles Morrison Rinker & Baker still represents that defendant, the negligence cause of action.  *See* North Star's Opposition and Cross-motion being filed herewith.

[2]    As has been previously noted, Oles Morrison Rinker & Baker is not even counsel of record with respect to the bad faith claim, stated only against USF&G.  Rather, it withdrew and was substituted for by the Law Office of Barokas Martin & Tomlinson upon that claim by order of this Court.  *See* Clerk's Docket No. 418.  Barokas Martin & Tomlinson have filed a separate motion and memorandum for summary judgment as to that claim (Clerk's Docket Nos. 500 & 502), which will be addressed in due course.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83541
Page 1

47).[3]  Those arguments do not address the basis of that claim for Nugget's liability as set out at

paragraph 29 of North Star's Amended Complaint, or in North Star's previous filings on that

subject in this case and in this Court's Order four years ago.[4]  The true, correct basis of that

agency by control claim, both under state law and under the Miller Act, is set forth in those

previous filings and summarized in North Star's recent Motion and Memorandum for Summary

Judgment or for Determinations of Law of the Case Against Nugget and USF&G on the Basis of

Contract by Agency (Clerk's Docket No. 504).  For years Nugget and USF&G have known the

true basis of that claim, which is amply supported by the evidence presented in those previous

filings.  Indeed, Nugget and USF&G sought once before to mischaracterize and defeat that

claim, four years ago in their court filing on that subject, just as they try to do now.[5]

Third, those same defendants moved for summary judgment before as to other causes of

action of the claimants now specified more fully in the Amended Complaint ordered by the

Court (Clerk's Docket No. 401) but previously alleged.  They did so before through the same law

firm, using virtually the same arguments, Randy Randolph statements, and citations of law as

---

[3]   Page references to that memorandum in this memorandum are to the Clerk's docket page numbers.

[4]   *See, e.g.*, Clerk's Docket No. 282, North Star's Memo for Summary Judgment dated April 8, 2002, at pp. 29-33; Clerk's Docket No. 300, North Star's Reply Memo dated May 31, 2002, at pp. 2-21; Clerk's Docket No. 306, North Star's Supplemental Authorities dated July 26, 2002; Clerk's Docket No. 307, Errata; and Clerk's Docket No. 315, North Star's Motion and Memorandum for Reconsideration dated September 9, 2002, including the exhibits and facts addressed within those filings.  *See also* this Court's Order - Motions for Summary Judgment dated August 30, 2002 (Clerk's Docket No. 310), especially at pp. 4-15, 19-24.

[5]   *See, e.g.*, Clerk's Docket No. 298, Nugget Memo at pp. 5-9 & Clerk's Docket No. 300, North Star Reply Memo at pp. 2-21, & No. 307.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83541
Page 2

they use now in support of their recent filings.[6]  Those motions for summary judgment by Nugget and USF&G were denied by this Court in 1999 (Clerk's Docket No. 124 at pp. 2-5, 15) and again in 2002 (Clerk's Docket No. 310 at p. 25) and should be denied yet again.  There is no justification or merit in repackaging and re-presenting them now or re-burdening the court and the other parties to this litigation with them.[7]

Fourth, as Nugget admits, its present motion is not at all directed against North Star's claims under the federal Miller Act.  Clerk's Docket No. 489 at p. 4 n.2.

Fifth, Nugget's memorandum, much like the previous summary judgment filings on behalf of Nugget and USF&G, is full of unsupported and mostly irrelevant allegations of purported "fact", innuendo, speculation, hyperbole and exaggeration, apparently aimed at misleading and prejudicing the reader.  For example, there is reference to "an exhausting number" of state law claims in the amended complaints, without noting that most of those claims were presented and many addressed by the Court before in this case, or noting that any additional legal theories stated by amendment have already been addressed and allowed by this Court.[8] There is also the unsupported allegation that North Star "was subsequently afforded considerable latitude to conduct additional discovery," but Nugget and USF&G have instead resisted and

_____

[6]    *Compare* Clerk's Docket Nos. 270 & 298 four years ago *with* recent Clerk's Docket Nos. 489 & 490.

[7]    As this Court has noted on more than one occasion, this case has a history of unnecessary, protracted litigation, which could be viewed as being aimed at forcing the claimants into submission and denying the purposes of justice.  *See, e.g.*, Court Order Compelling Discovery dated January 18, 2006, Clerk's Docket No. 430 at p. 3.

[8]    For discussion of previously presented claims, allowed amendments, and further specification of state claims by Court Order, *see* Clerk's Docket Nos. 124 & 310 (Court Orders), 389, 391, 393, 398, 399, 401 (Court Order), & 405-409.

_____
Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83541
Page 3

attempted to thwart the claimants' discovery efforts at almost every turn since this Court's Pretrial Order in October (*see, e.g.*, Clerk's Docket No. 430) -- including preventing the claimants from even taking a Rule 30(b)(6) deposition of USF&G as provided by that Order (Clerk's Docket Nos. 414 & 415).

Nugget and USF&G's Introduction section in particular, including footnotes, contains many mischaracterizations of North Star's claims, much incorrect and baseless speculation as to established "Nugget losses" and other "factual" representations not in fact established. There is much emphasis on alleged facts, half-truths, and selective excerpts from deposition testimony taken out of context and usually having very little to do with the material facts in this case or North Star's actual claims. That Introduction ends (Clerk's Docket No. 489 at 8-9) with a series of rhetorical questions based upon inaccurate strawman assumptions disguised as "fact." Perhaps those filings, including their introductory section, give some preview of what Nugget's argument to the jury will be at trial, but it is not the stuff upon which summary judgment can be based.

Sixth, Nugget's arguments, including its Legal Argument, are virtually identical to those repeated in its recent summary judgment filings in this case against the other claimants, Shoreside Petroleum and Metco, Inc. *Compare, e.g.*, the Table of Contents, Introduction, Statement of Facts, and Legal Argument sections of Oles Morrison Rinker & Baker's instant filings against North Star *with* the filings directed against Shoreside and Metco at Clerk's Docket Nos. 476-483. Accordingly, much of this response also applies to the claims of those claimants.

## II.  FACTUAL RESPONSE

Virtually all of the factual background of this case that is material has already been set

_____

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                           45-40 / #83541
Page 4

forth, in substantial detail and by admissible evidence, in previous filings in support of North Star's previous motions for summary judgment and in this Court's previous orders detailing those facts and evidence. *See, e.g.,* Clerk's Docket Nos. 68, 69, 73-75, 96, 124 (Court's first Summary Judgment Order dated June 3, 1999), 282, 300, 306, 307 & 310 (Court's second Summary Judgment Order dated August 30, 2002). Rather than use up more print and paper, North Star herein incorporates those previous filings, including the statements of fact, exhibits, affidavits, and deposition testimony filed therewith, in their entirety.[9] Those include the significant, detailed affidavit and deposition testimony of Robert LaPore filed four years ago at Clerk's Docket No. 282 and relied on by this Court at Clerk's Docket No. 310. Although conveniently ignored by Nugget and USF&G in their most recent filings, those documents should be read again for their importance. The facts material to North Star's claims, at least insofar as addressed by Nugget's recent filings, have not significantly changed between then and now. Any new evidence only strengthens those claims. *See, e.g.,* Clerk's Docket Nos. 507-510, 514, 518, 519 & 525.

Also incorporated herein is the conclusion of the Ninth Circuit Court of Appeals stated in its March 3, 2005 decision:

> On the record before us, the appellees have presented sufficient evidence to create a material issue of fact as to subterfuge or collusion. The evidence, although not conclusive, tends to show that Nugget secretly converted Spencer Rock into a straw man in its ongoing dealings with the appellees. The support agreement with Spencer Rock on its face purports to insulate Nugget from Miller Act liability, yet Nugget directed Spencer Rock to conceal the terms of this agreement and keep secret Nugget's arrangements with Spencer Rock relating to the project.

---

[9]    *Cf.* Alaska USDC Local Rule 10.1(h)(1).

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83541
Page 5

Clerk's Docket No. 383, p. 6. This District Court reached many findings of fact in its detailed Order dated August 30, 2002 (Clerk's Docket No. 310) that are more generally incorporated into that decision of the Ninth Circuit Court. Together, those two Orders provide that there exists, at the very least, sufficient evidence for the claimants to proceed upon their claims.

The reconstituted Statement of Facts set out in Nugget's recent memorandum for summary judgment against North Star is a much more general, less complete and less reliable restatement of facts than that already presented and relied upon by this Court in previous rulings. That Statement of Facts relies heavily upon the very conclusory Affidavit of L. D. "Randy" Randolph submitted therewith (Clerk's Docket No. 490). Many of the broad statements contained in that affidavit are essentially conclusions of law, which should be the province of this court, and opinions and conclusions of Mr. Randolph on ultimate facts, which should be the province of the jury. As has been shown before in past filings, several of his most significant representations are plain wrong, including his representations as to what work Nugget paid Spencer Rock for (none of it was for North Star's barge loadings) and as to what amount of costs and damages Nugget claimed (but has never proved) against Spencer and why. Indeed, the only new representation contained in Mr. Randolph's affidavit of any value is his admission that he and Nugget directed the barge loadings in replacement of Mr. LaPore. He says that happened with LaPore's express "authorization," but Mr. LaPore has previously testified that it occurred as the result of Randolph and Nugget's takeover and usurpation of his authority. *Compare* Randolph's 4/28/06 Aff. ¶ 9 at Clerk's Docket No. 490 *with* LaPore's 4/4/02 Aff. at Clerk's Docket No. 282.

_____
Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 6

It should also be remembered that Mr. Randolph has been solidly identified before in this case as the man at the center of Nugget's manic subterfuge, coercion, deceptions, and control over others which are at the heart of this case. *See, e.g.*, discussion in this Court's prior Order at Clerk's Docket No. 310 and LaPore's 4/4/02 Affidavit. His credibility and veracity are seriously in question. *Id.* His statements such as those contained in his most recent affidavit (Clerk's Docket No. 490) cannot be relied upon for any form of summary judgment, especially where so blatantly self-serving, conclusory, and subjectively stated on what are essentially questions of law and ultimate conclusions of "fact."

Nugget's new Statement of Facts provides no new information or facts warranting summary judgment in its favor, misstates facts, and leaves out substantial material facts previously **established** in this case regarding: the full contractual relationship and actions between Nugget and Spencer Rock; the so-called "support" arrangement between those parties and its surrounding circumstances; Nugget's use of that situation to take over Spencer Rock's operations and deceive North Star and the other claimants; the initial contractual arrangements between Spencer Rock and North Star which Nugget subsequently stepped into through its takeover; and the true, complete circumstances surrounding Spencer Rock and Nugget's failure to pay North Star.

Instead, Nugget, in its new Statement of Facts, focuses on relatively trivial or debatable pieces of evidence which it incompletely states or overinflates. What does it matter whether or not North Star agreed to purchase a skipbox from Spencer Rock at the end of September (three months after the work had been done and Nugget had refused to pay), in order to defray North

_____

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 7

Star's attorney fees[10] and other collection costs?  That type of evidence should come at the end of this case, not at the beginning, and not as a matter of summary judgment.

Neither does it matter that North Star also alleges that Spencer Rock and Mr. LaPore are legally liable.  That does not excuse Nugget or USF&G of its legal liabilities, or at all determine North Star's claims against Nugget and USF&G, or constitute a subject for summary judgment.  That is another Nugget argument that has also been addressed before and denied by this Court.  *See* Clerk's Docket Nos. 96, 97, & 124 at pp. 4 & 15.

Other allegations of "fact" alleged in Nugget's new Statement of Facts, regarding interactions between Nugget and North Star, are also incomplete and rely upon the most conclusory representations of Mr. Randolph's most recent affidavit for their most significant representations.  Insofar as there is any new evidence or testimony presented within those paragraphs relating to recent discovery, it is mostly misstated, mischaracterized, unduly inflated, or taken out of context.  Ignored is the much more material "rest of the story" previously presented to and considered by this Court and incorporated herein by reference.  *See, e.g.,* Clerk's Docket No. 310.  Mr. Goodwill may have testified, on one occasion in his recent deposition, that some of Mr. Randolph's actions regarding the barge would not seem "unusual" for an individual responsible for a vessel, but he also testified to much more, both in that

---

[10]    Nugget's suggestion elsewhere in its memorandum (Clerk's Docket No. 489 at p. 7), that North Star's understandings and beliefs before and during the work it did in May and June 1997 "was founded upon the express advice of its legal counsel" is more pure fantasy.  In fact, North Star did not involve its legal counsel in this matter until August of 1997, resulting in the August 29, 1997 demand letter from undersigned counsel to Nugget and USF&G previously admitted as evidence in these proceedings.  See Clerk's Docket No. 69, Memo Exh. 16 & Clerk's Docket No. 74, Corrected Memo at pp. 2-19.

Memorandum in Support of Opposition and Cross-Motion to Nugget and USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83541
Page 8

deposition attached as Exhibit 1 to Mr. Krider's affidavit (Clerk's Docket No. 491)[11] and in Mr.

Goodwill's previous affidavits presented to this Court (Clerk's Docket Nos. 69, 75, 96-97).

Nugget's selective use of one short deposition response ignores the rest of that evidence, and

saying something is "not unusual" is not the same as saying it is common, or that payment was

not expected for the work. As Mr. Goodwill testified, Mr. Randolph (rather than Spencer Rock)

was also the one who directed Mr. Goodwill to send the invoices to Spencer Rock,[12] although

Mr. Goodwill viewed the work as really being done for Nugget at the time. Clerk's Docket No.

518.

        Of course, Mr. Goodwill and North Star did not know then about the so-called "support"

arrangements between Nugget and Spencer Rock, which Nugget made sure was kept secret from

them.[13] Mr. Goodwill only knew that when it came time to do the work pursuant to the

established contractual arrangements, Mr. Randolph and Nugget substituted themselves for Mr.

LaPore and Spencer Rock, directed all operations in place of Mr. LaPore, and instructed Mr.

Goodwill to send the invoices to Spencer Rock as the procedure to follow for payment (and at a

---

[11]    *See* Clerk's Docket Nos. 518 & 521, incorporated herein by reference. It should also be noted that on April 26, 2006, after his deposition was taken but before Nugget filed its motion, Mr. Goodwill corrected or clarified some portions of his deposition, including areas referred to in Oles Morrison's filings. Clerk's Docket No. 518 at Exh. 2, pp. 7 & 8.

[12]    Mr. LaPore has testified to the same effect. Clerk's Docket No. 282, LaPore 4/8/02 Aff. at ¶ 4 ("If someone told North Star to send its bills for that loading work to 'Nugget Construction c/o Spencer Rock Products', I think it would have been Randy Randolph. I do not recall doing that. I recall forwarding whatever bills I received from North Star to Nugget.")

[13]    *See* Clerk's Docket No. 310 at pp. 6, 22 & No. 282 LaPore Affidavit at ¶ 9 ("Nugget, through Randy Randolph, also directed me in 1997 to keep Nugget's arrangements with SRP related to the project a secret. That included the terms of the April 1997 'support' agreement between Nugget and SRP. Randy Randolph told me not to disclose that information to anyone.")

---

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 9

time when Mr. Goodwill, as he testified, understood Nugget and Spencer Rock to be working

together as one, had no reason to distrust Mr. Randolph yet,[14] and also felt a reasonable sense of

security in the understanding that it was a federally bonded project).  Clerk's Docket No. 518.

Nugget's new Statement of Facts also mixes apples and oranges in its attempted

comparison of Nugget's dishonest "backcharging" practices and direct interception of Spencer

Rock funds to the business practices to which Mr. Goodwill testified having been familiar with

from his work experience.  The practices to which he testified were much more up-front, honest,

and customary than the surreptitious control and interception of Spencer Rock funds engaged in

by Nugget in this case.  *See* Clerk's Docket No. 491 at Exh. 1 tr. pp. 84-86 & discussion *infra*.

In addition, as already noted, Nugget ignores much of Mr. Goodwill's other, more material

testimony by affidavit and deposition.

The emails of former North Star employees in August and September of 1997 referred to

in Nugget's new arguments are also taken out of context and could be interpreted much

differently than Nugget does.  They are certainly no basis for summary judgment.

Much more pertinent are the findings this Court reached in its August 30, 2002 Order,

after considering and summarizing the material facts at pp. 4-15 of that Order:

> Although at the time of contract with plaintiffs [before April 1997] Spencer
> was not a "paper" party, the terms of the support agreement, and Nugget's acts
> subsequent to it, rendered it so.  By virtue of the support agreement and Nugget's
> own subsequent actions, Nugget stepped into the shoes of Spencer, acting from
> that point onward as its own material supplier, directly accepting and using the
> labor, equipment, and services provided by North Star, Shoreside, and Metco.

---

[14]    As shown by other invoices, North Star had billed Nugget before, which knew its billing charges and practices.  *See* Clerk's Docket No. 75, 96 & 97 (Goodwill and Bentz Affidavits) and invoices attached hereto as Exhibit 1.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 10

Nugget argues that the terms of the support agreement should control. Nugget argues that the support agreement states that Nugget and Spencer are neither partners nor joint venturers and that Nugget cannot be held liable for Spencer's debts. Nugget asserts that Spencer, not it, negotiated with plaintiffs for the supply of labor, equipment, and services. Nugget asserts that in turn plaintiffs expected Spencer to pay them, and did not even seek payment from Nugget until after it became apparent that Spencer could not pay. Nugget argues that accordingly no implied-in-fact contracts exist between it and any of the plaintiffs in this suit.

What is apparent to this court is that Nugget's acts far surpass what can be deemed mere "support" of Spencer in its role as a material supplier. Nugget actually overtook Spencer, providing itself with rock from the Spencer quarry, assuming the responsibility of moving the rock from the quarry to Seward, and controlling the means by which that rock was loaded onto its own barges bound for Homer. All the while Nugget did this, it directly received the goods and services from North Star, Metco, and Shoreside in the furtherance of its own operation while ostensibly insulating itself from liability to those entities by the terms of the support agreement and by those entities' appearance of remoteness in the Miller Act chain.

That Nugget took over the quarry operation and not merely supported Spencer's efforts is evidenced by undisputed facts. Nugget provided its own supervisor, shooter, and equipment, as well as its own labor force—not only in addition to Spencer's work force *but in replacement of it*. Nugget did not heed the instruction of Spencer's owner LaPore in terms of quarry operations. Nugget acted of its own accord and under its own supervision and management. As previously stated, this conclusion is supported by the fact that high ranking Nugget personnel such as Randolph used to work at the quarry and were more than familiar with its operation.

Likewise, the undisputed facts support the conclusion that Nugget oversaw the loading of its barges in Seward, a task originally contracted to Spencer. Nugget informed North Star of the arrival of each new shipment of rock from the quarry. Nugget's supervisor Randolph then directed traffic at the loading dock. . . . [W]hat is relevant in this instance is not that Nugget provided guidance and direction, but that Nugget *did so in the place of Spencer*, the party originally charged with that obligation. Any doubt as to what occurred by virtue of the support agreement is dispelled by the fact that Spencer owner Robert LaPore's role in the unloading process was reduced to driving a truck and the fact that Nugget moved the loading operations to the other side of Resurrection Bay once North Star delivered its ultimatum to Nugget. Moving operations is unquestioningly a decision that Spencer would have never made on its own, since the move not only inconvenienced Spencer but also cost it far more than staying would have done. Put another way, Spencer contemplated paying North Star as

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83541
Page 11

part of its contractual obligation as a material supplier to Nugget. Once Nugget
took over, Nugget completely disregarded that obligation.

Moreover, Nugget engaged in *subterfuge* in its desire to keep the terms of the
support agreement *secret*. Not only did Nugget [attempt to] insulate itself from
liability for payment to Spencer's labor and material suppliers under the terms of
the support agreement, it also required Spencer to keep the terms of the support
agreement secret *so as to prevent the parties from demanding payment directly
from Nugget*. Nugget, which by virtue of its position as prime contractor,
controlled the flow of money to Spencer, *also put itself first in line as a creditor
of Spencer, unbeknownst to and ahead of the very same parties that it was
accepting labor and services from in Spencer's stead*. . . .

Whether deeming Spencer a "straw" party or deeming Nugget as stepping into
the shoes of Spencer, once Nugget took over for Spencer as its own material
supplier, North Star, Shoreside, and Metco directly supplied Nugget with labor,
equipment, and services . . . .

This court is [also] persuaded that the substantive principles behind finding an
agency relationship from the facts in Cargill[15] are very similar to the principle
which the court adopts and applies in this instance. Like Cargill in the Minnesota
case, Nugget *controlled* Spencer Rock *completely and to its own advantage*.
Nugget took over virtually all aspects of the work that Spencer Rock had
contracted with it to perform. Moreover, the rock production and loading
decisions made by Nugget and Randy Randolph after Nugget took over the
Spencer quarry in April of 1991 were made to benefit Nugget and to the
disadvantage of Spencer. Nugget did what it wanted to do, and then simply
charged the added cost to Spencer. It did so in an apparent effort to meet its own
deadline, but it acted in its own best interests, not in the interest of the party it was
intended to "support."

Clerk's Docket No. 310 at pp. 19-24, incl. n.38 (emphasis added).

Certainly those conclusions, which were based on the full evidence presented at that time,

establish a more complete backdrop against which Nugget and USF&G's present recycled

arguments should be measured. That evidence and conclusions are unaltered materially by

Nugget's new sprinklings of excerpts of "evidence" and reused arguments. Those past findings

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 12

based on admissible evidence caution against any summary judgment ruling now in favor of either Nugget or USF&G.

### III. LEGAL DISCUSSION

### A. Summary Judgment Standards

The applicable summary judgment standard is stated in this Court's previous summary judgment Order, Clerk's Docket No. 310 at pp. 15-16. It is well established that summary judgment can only be demonstrated by specific facts supported by admissible evidence. Conclusory, self-serving, or subjective representations, even by affidavit, are insufficient. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992, 996-97 (9th Cir. 2001). When a motion for summary judgment is made, the court, following briefing, may grant it, in whole or in part, or grant summary judgment to the party opposing it in whole or in part. Fed. R. Civ. P. 56.

### B. There Is More than Sufficient Evidence of an Express and/or Implied Contract, in Fact and/or at Law, by Action, Word and/or Conduct, to Defeat Summary Judgment upon that Claim.

Before considering this portion of Nugget's argument, as contained at Clerk's Docket No. 489 at pp. 21-26, the Court should review the entirety of North Star's Breach of Contract claims contained at paragraph 26 of its Amended Complaint. The allegations contained therein are much more specific and complete than the treatment of them contained in Nugget's filings. They are also sufficiently supported by the facts and evidence previously submitted to this Court as regards that claim, incorporated herein by reference, and in the previous rulings of this Court denying Nugget & USF&G summary judgment upon that very subject.

---

[15]   *A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W. 2d 285 (Minn. 1981).

Memorandum in Support of Opposition and Cross-Motion to Nugget and USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83541
Page 13

In its present filings, Nugget first assumes, based upon a statement taken out of context from the March 3, 2005 unpublished decision of the Ninth Circuit Court in this matter, that North Star never "entered into" an express contract with Nugget. North Star disagrees. That brief statement was made on appeal from a decision of this Court not at all based upon North Star's contract by agency analysis. As set forth in the previous arguments presented to this Court, and by North Star's recent Motion and Memorandum for Summary Judgment or for Determinations of Law of the Case Against Nugget and USF&G on the Basis of Contract by Agency (Clerk's Docket No. 504),[16] there are sufficient admissible facts and legal grounds to conclude that Nugget, by controlling, intercepting funds, taking over, and otherwise "stepping into the shoes" of Spencer Rock, became bound by Spencer Rock's express contractual arrangements with North Star into which Nugget stepped. *See* discussion and evidence on that issue elsewhere in this memorandum, in the prior filings with this Court four years ago referenced herein, and at Clerk's Docket No. 504. As that analysis demonstrates, a direct, express contractual relationship existed between North Star and Nugget as a result of Nugget's takeover of Spencer Rock, including its express contract arrangements with North Star which Nugget assumed.

Beyond that, Nugget's new arguments—like its previous summary judgment arguments in this case on the claimants' contract-based claims—rely solely upon whether "mutual assent" or a "meeting of the minds" existed between Nugget and North Star. Clearly, there is such evidence, preventing summary judgment to Nugget on the subject, as set out in North Star's previous filings (*see, e.g.*, Clerk's Docket Nos. 68, 69, 74, 75, 96-97, and 282) and in this Court's previous findings and orders denying summary judgment to Nugget and USF&G on that

---

[16]    Those filings are incorporated herein by reference in support of this response.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83541
Page 14

very issue (*see* Clerk's Docket No. 124 at p. 4 & Clerk's Docket No. 310 at p. 25). Nugget made this same argument before, and the claimants including North Star responded such as at Clerk's Docket No. 282 at pp. 33-35.

For one thing, direct mutual assent between Nugget and North Star is entirely unnecessary to find Nugget liable to North Star under the legal principle of contract by agency through control.

In addition, the allegations of paragraph 26 of North Star's Amended Complaint go beyond an implied-in-fact contractual relationship, which is all that is addressed in this portion of Nugget's new filings. Those allegations are also supported by sufficient admissible evidence previously presented of record to this Court.

Clearly, there are exceptions to any requirement of "mutual assent," as demonstrated by the implied-in-fact analysis of this Court in relation to the federal telescoping cause of action addressed at Clerk's Docket No. 310 and approved by the Ninth Circuit Court in its March 3, 2005 decision. Obviously, it would be Nugget's position that it did not "assent" to that direct relationship which has already been applied by those courts to this case. That cause of action exists instead as a result of evidence or circumstances indicating subterfuge or collusion or the imposition of a strawman like Spencer Rock, i.e., the very opposite of "assent." A party like Nugget structuring its relationships in a manner to avoid responsibility as part of a shell game or a deceptive practice of "hiding the ball" can be expected to take the position that it did not "assent," at least in its mind, for the very reason it is trying to avoid "assent."

However, such subjective intent, or direct evidence of "mutual assent," is not the test, even under a more traditional analysis and without exceptions such as the federal telescoping

_____
Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 15

cause of action or the agency by control right of action.  As Nugget has previously conceded, assent sufficient to form a contract may arise from the conduct or actions of the parties, or more specifically how one party interprets the actions or words of another party.  *See* Nugget S. J. Memo dated February 28, 2002, Clerk's Docket No. 270 at pp. 16-17.  It is the objective meaning of those words, actions, or conduct which control, not one party's subjective intent (or what it later professes was its subjective intent).  As was stated in *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1281 (Alaska 1985), "A party cannot rely on its subjective intent to defeat the existence of a contract if its words and actions objectively and reasonably led another to believe a contract had been entered."[17]

Of course, in the context of a summary judgment motion, determining whether there is sufficient evidence of words, conduct or actions which could reasonably lead one party to believe that a contract had been entered requires the court to consider all reasonable inferences of fact from the proffered materials in the light most favorable to the non-moving party, in this case North Star.  *Id.* at 1280.  As the Alaska court has observed, if the moving party, like Nugget in this instance, were allowed to point only to that evidence of the parties' "intentions" that it wants to in arguing no mutual assent existed, a case for summary judgment might be more tenable.  *Id.* at 1281.  However, where the evidence, objectively tested and seen in the light most favorable to the non-moving party is at least ambiguous or could lead a jury to a different conclusion than

---

[17]    As this Court also observed in its August 30, 2002 Summary Judgment Order in this case:

>    . . . [A]n implied-in-fact contract is one in which an agreement is implied from some intelligible conduct, act, or sign.  Baltimore & O.R. Co. v. United States, 261 U.S. 592, 597 (U.S. 1923); Restatement (Second) of Contracts, § 4 (1981).

Clerk's Docket No. 310 at p. 17 n.37.

---

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83541
Page 16

that of the moving party, the issue presents a question of fact which should not be resolved by means of a motion for summary judgment. *Id.* at 1281-82.

That is this case. Nugget argues, based upon its selective presentation and portrayal of *some* of the evidence, including *some* of the deposition testimony and documents and *mostly* on the basis of Mr. Randolph's conclusory, subjective statements, that it did not mutually assent, in its opinion. However, when seen in a different light, consideration of that same evidence, together with consideration of the evidence previously presented and additional evidence included within the most recent deposition testimony, permits the determination that there was mutual assent in the objective sense. The Court should allow all of the admissible evidence on this subject to be presented at trial and then submit the question to the jury under appropriate legal instructions. Summary judgment should be denied Nugget and USF&G as to this claim.

### C. There is More than Sufficient Evidence to Support North Star's Claims for Promissory Estoppel, Detrimental Reliance, and Intentional or Negligent Misrepresentation and Nondisclosure to Defeat Summary Judgment upon Those Claims.

Once again, before considering this portion of Nugget's argument, the Court should review the entirety of the allegations supporting North Star's Promissory Estoppel, Detrimental Reliance, and Misrepresentation and Nondisclosure claims as set out in paragraphs 27, 30, and 33 of North Star's Amended Complaint. Once again, the Court will find that those allegations are much more specific and complete than the treatment of them contained in Nugget's argument. They are also strongly supported by the facts and evidence previously submitted to this Court as regards those claims, incorporated herein by reference, and in the previous rulings of this Court denying Nugget and USF&G summary judgment upon those and similar claims.

_____
Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83541
Page 17

In its argument, Nugget contends that those separate claims and North Star's allegations as to each of them are "essentially the same." That is an incorrect over-simplification, especially as between promissory estoppel and detrimental reliance, on the one hand, and North Star's claims for damages in tort based upon Nugget's "foregoing misrepresentations, nondisclosures, and omissions of material fact . . . made falsely, knowingly, deliberately, deceitfully and/or fraudulently, either actually or constructively, or negligently or innocently." That portion of North Star's Amended Complaint, which by its terms realleges and incorporates all other allegations contained in that pleading, further alleges that:

> By such words, conduct and/or omissions, the defendants misled North Star, the Federal Government and other companies similarly situated to North Star, regarding the true relationships between Spencer and Nugget, the security of the payment bond, and Nugget's dominance and control over Spencer and LaPore and rechanneling of payments to itself for its own benefit. Such acts, conduct and omissions resulted in nonpayment, prejudice and other damages to North Star, as previously alleged herein.

Clerk's Docket No. 409 at ¶ 33.

## 1. Promissory Estoppel

Nugget first appears to argue that North Star can have no promissory estoppel claim if Nugget made no "actual promise" to it or did not influence North Star's "performance". Clerk's Docket No. 488 at 27-28. However, that argument fails, at least in the context of Nugget's motion for summary judgment.

First off, conduct or actions including directions or deliberate silence, especially under circumstances wherein one should speak up, can constitute a "promise" on which others may reasonably rely. *Zeman*, 699 P.2d at 1281-82; *Reeves v. Alyeska Pipeline Service Co.*, 926 P.2d 1130, 1142 (Alaska 1996). The previously referenced and incorporated evidence marshalled

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83541
Page 18

before in this case in relation to the parties' past summary judgment motions strongly belies

Nugget's argument.  As this Court previously noted, upon considering that evidence:

> Moreover, Nugget engaged in subterfuge in its desire to keep the terms of the support agreement secret.  Not only did Nugget [attempt to] insulate itself from liability for payment to Spencer's labor and material suppliers under the terms of the support agreement, *it also required Spencer to keep the terms of the support agreement secret so as to prevent the parties from demanding payment directly from Nugget*.  Nugget, which by virtue of its position as prime contractor, *controlled* the flow of money to Spencer, also put itself *first in line* as a creditor of Spencer, *unbeknownst to and ahead of the very same parties that it was accepting labor and services from in Spencer's stead* . . . .

> Whether deeming Spencer a "straw" party or deeming Nugget as stepping into the shoes of Spencer, once Nugget *took over* for Spencer as its own material supplier, North Star, Shoreside, and Metco *directly supplied* Nugget with labor, equipment, and services . . . .

Clerk's Docket No. 310 at 22 (emphasis added).

Likewise, the Ninth Circuit Court of Appeals concluded in its March 3, 2005 decision

that the claimants in this case had presented, at the very least, "sufficient evidence to create a

material issue of fact" as to subterfuge, collusion, and the secret conversion of Spencer Rock into

a "strawman" rendered unable, by that conversion, to pay the claimants, while at the same time

Nugget induced these claimants, by its conduct and silence, to do the work that Nugget needed

done in order to perform its contract with the Federal Government, get paid for that work, and

thereby siphon off more money into its own pocket without paying Spencer Rock or the

claimants.  Clerk's Docket No. 383 at p. 6.  As the appellate court also observed, the evidence

tended to show that, while engaged in this deceptive behavior benefitting only itself and

detrimentally and surreptitiously impacting these claimants and others, "Nugget directed Spencer

Rock to conceal the terms of this agreement and keep secret Nugget's [self-serving arrangements

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 19

with Spencer Rock]" from these claimants and others, even including the Federal Government, the project owner. *Id.*

Certainly, those findings sufficiently establish that the evidence, seen in the light most favorable to the claimants, support findings that Nugget, by action, word or conduct also "influenced" the actions and legal relations of the claimants, including their willingness to do the work at all. As has been demonstrated in North Star's previous filings in this case opposing Nugget's previous motions for summary judgment based on similar arguments, North Star did not commence loading, or have any duty to commence loading, the Nugget barge with rock until the first week in May 1997, and it was then Nugget's representative, Randy Randolph, who directed North Star to do so. *See, e.g.,* Clerk's Docket No. 282. That was at least a ***month after*** Nugget had taken control of Spencer and had effectively substituted itself for Spencer and usurped Spencer's ability to receive income from the project, without telling anyone, according to the previous testimony of both Mr. Randolph and Mr. LaPore. *Id.*

Despite that secret change in circumstances promising to impact North Star severely (alongside which Nugget worked), Nugget deliberately withheld that very material information from North Star, which depended upon Nugget for the truth and depended upon protection under the payment bond. *Id.*[18] The evidence at least permits the reasonable inference that Mr. Randolph, rather than tell the truth, deliberately and fraudulently withheld the truth and engaged in a sort of shell game of which Nugget has sought to take advantage to North Star's resulting prejudice. Clerk's Docket No. 282. Mr. Goodwill had no reason under the circumstances to

---

[18]    As Jack Goodwill testified by affidavit, he felt confident North Star would get paid, because he was dealing directly with the general contractor's representative, Mr. Randolph, and knew it was a federally funded and bonded project. Clerk's Docket No. 75.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83541
Page 20

believe other than at the time of actual loading of the barge loads onto Nugget's barge North Star was working for and under contract with Nugget, or both Nugget and Spencer Rock, perhaps by authority of Spencer Rock, and under the arrangements made initially by Spencer Rock. *See* Clerk's Docket Nos. 75, 518, & 491 at Exh. 1 tr. pp. 17-18, 34, 45-46 & 55.

Moreover, in his very recent affidavit, Mr. Randolph asserts he and Nugget were in fact directing that loading, which Nugget also asserts had been contracted to Spencer Rock to do, under "express authority" from Spencer Rock to Nugget to do that work "in furtherance of the Support Agreement". However, that was not disclosed to Mr. Goodwill or North Star. Thus, in addition to promissory estoppel by action, word or conduct, there is strong evidence in this case that Spencer Rock, after having been transformed into an agent for Nugget due to Nugget's so-called "support" agreement and takeover (*see* discussion *infra* and at Clerk's Docket No. 504), became the agent for Spencer Rock, an undisclosed principal, through its Project Manager Randy Randolph, during the loading stage of the operation which Nugget insists it had originally contracted to Spencer. Although that might sound slightly confusing, and certainly ironic, it should not be surprising. Even the operator of a shell game can get confused by his own game, and the trickster can end up tricking himself.

Accordingly, Nugget must be denied summary judgment as to this cause of action.

## 2. Detrimental Reliance

Nugget's argument now as to this claim for detrimental reliance was also made by Nugget four years ago by motion for summary judgment denied by this Court. *See* Nugget's S. J. Memo, Clerk's Docket No. 270 at p. 22 & No. 310 at p. 25. As Nugget's citations to legal authority then and now reveal, detrimental reliance can also be established under Alaska law by

Memorandum in Support of Opposition and Cross-Motion to Nugget and USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83541
Page 21

representations made by conduct or word, together with reasonable reliance thereon by another party and resulting prejudice. *Id.*; *Marathon Oil Co. v. ARCO of Alaska, Inc.*, 972 P.2d 595, 604 n.2 (Alaska 1999); *State Dept. of Revenue v. Northern TV, Inc.*, 670 P.2d 367, 370 (Alaska 1983). For the reasons previously stated and evidenced in connection with this memorandum, North Star's prior memoranda, and the previous observations of this Court and the Ninth Circuit Court, there is more than enough evidence, especially seen in the light most favorably to the claimants, to deny summary judgment to Nugget upon this claim of detrimental reliance.

In this case Nugget, through its conduct and directions taking charge of Spencer Rock's operations and North Star's loading activities and by its surreptitious silence withholding the true relationship between it and Spencer, affirmatively portrayed a false and deceptive situation to North Star upon which North Star reasonably relied, obviously to its resulting prejudice given nonpayment to this very day and the protracted, expensive litigation through which Nugget and USF&G have put it. While controlling Spencer Rock, billing it heavily for "support" services chiefly benefitting Nugget, and intercepting all funds otherwise due Spencer to pay for those services, Nugget's representative on the scene, Mr. Randolph, directed North Star, by word, to send its invoices instead to Spencer Rock—fully knowing that Spencer Rock could not pay those bills because Nugget had secretly made sure it would be paid first.[19]

---

[19]    The evidence already presented in this case requires the conclusion, or at least the reasonable inference, that Randy Randolph also worked for Robert LaPore and Spencer Rock, had been made a 20% owner of Spencer Rock, prepared bids for Spencer Rock (including Spencer Rock's bid to Nugget for the rock on this project), and was intimately aware of Spencer Rock's operations and financial condition, including its inability to pay these claimants if not paid by Nugget. *See, e.g.,* Clerk's Docket No. 74 & No. 282 at pp. 2-24. While on the other hand Nugget required progress payments from the Federal Government in order to finance its own project operations, it denied such payments to Spencer Rock and now arrogantly proclaims that Spencer Rock should have obtained enough income to operate and pay project debts from elsewhere.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                     45-40 / #83541
Page 22

The detrimental reliance cause of action is intended to prevent such injustices. North Star has a solid claim for detrimental reliance. There is no basis to dismiss North Star's detrimental reliance claim, particularly not as a summary judgment matter.

### 3. Misrepresentation and Nondisclosure Including Fraud

Nugget argues that North Star can have no claim for fraudulent or negligent misrepresentation or nondisclosure under the factual circumstances alleged at paragraph 33 of North Star's Amended Complaint. According to Nugget, its so-called "support" agreement with Spencer Rock and its actions toward Spencer Rock and the claimants were proper. It also argues that, as a matter of law, Nugget had no duty to disclose that subterfuge or its impact to anyone, including North Star. *See* Clerk's Docket No. 489 at pp. 31-32.

Those arguments fail, at least for purposes of summary judgment. They are incorrect according to the circumstances, factual evidence, and legal principles already found by this Court and the Ninth Circuit Court in this case. In addition, they do not respond completely to North Star's allegations supporting those claims.

A cause of action for knowing misrepresentation or deceit under Alaska law may be shown by a false representation of fact, scienter, intention to induce reliance, justifiable reliance, and damages. *Barber v. National Bank of Alaska*, 815 P.2d 857, 862 (Alaska 1991). Negligent misrepresentation may be shown where one breaches a duty to provide accurate information. *Id.* In *Barber* the Alaska Supreme Court reversed a direct verdict against a claim of knowing or negligent misrepresentation.

To prevail in an action for fraudulent or negligent misrepresentation the plaintiff must prove the existence of either an affirmative misrepresentation ***or an omission where there is a***

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83541
Page 23

*duty to disclose*, such as "*when facts are concealed or unlikely to be discovered because of the special relationship between the parties, the course of their dealings, or the nature of the fact itself*." *Hagans Brown & Gibbs v. First National Bank of Anchorage*, 810 P.2d 1015, 1019 (Alaska 1991). In that case, under circumstances analogous to this case, the Alaska Supreme Court reversed summary judgment against the plaintiff's fraudulent and negligent misrepresentation claims that the defendant's concealment of the true relationship between it and another party had induced the plaintiff, to its detriment, to do work under a pre-existing fee arrangement when not honored by the successor party. *Id.*

In *Carter v. Hoblit*, 755 P.2d 1084, 1086-89 (Alaska 1988), the Alaska Supreme Court ruled that fraud could be committed where the defendant's statements or omissions constitute half truths, or true remarks which omit material information.

> [A] literally true statement may be fraudulent if omits *additional qualifying information likely to affect the listener's conduct*.

*Id.* (Emphasis added). In that case too summary judgment upon the claim was reversed. *Id.* at 1089.

In *Turnbull v. LaRose*, 702 P.2d 1331, 1334-35, another case cited by Nugget in its memorandum, the Alaska Supreme Court evaluated the case as involving a failure to disclose information. *Id.* at 1334. It stated that one who:

> . . . fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other *as though he had represented the nonexistence of the matter* that he has failed to disclose [where] he is under a duty to the other to exercise reasonable care to disclose the matter in question.

*Id.* (Emphasis added). In that case too, the court concluded that "the evidence and reasonable inferences therefrom, looked at in the light most favorable to appellants, leads us to conclude that

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 24

there were genuine issues of material fact regarding whether appellees breached their duty to

disclose information". *Id.* at 1335. The court added:

> Courts must be cautious in granting a motion for summary judgment when
> resolution of the dispositive issues requires, as in this case, determination of state
> of mind. In such circumstances, the fact finder should be given the opportunity to
> observe the demeanor of the witnesses whose states of mind are at issue.

*Id., citing Croley v. Matson Navigation Co.,* 434 F.2d 73, 77 (5th Cir. 1970).

As has also been observed by the Alaska Supreme Court, fraud may be actual or

constructive. *Adams v. Adams,* 89 P.3d 743, 750 (Alaska 2004).

> "Constructive fraud exists in cases in which conduct, although not actually
> fraudulent, ought to be so treated, — that is, in which such conduct is a
> constructive . . . fraud, having all the actual consequences and all the legal effects
> of actual fraud." Stated otherwise, constructive fraud is a breach of a duty, which
> while not intentionally deceptive or actually dishonest, "the law declares
> fraudulent because of its tendency to deceive others."

*Id.* (citations omitted). The court went on to state:

> Alaska Rubber's conduct here was a constructive fraud. While neither
> Higgins, nor Don Adams, nor Viergutz, may have intended to deceive Michael
> Adams, *the failure* of Alaska Rubber *to notify* Michael Adams of the *change*
> have the same effect as an *intentional deception*. Viewed corporately, Alaska
> Rubber 'had the obligation to bring the . . . change to the attention of' Michael
> Adams. *Its breach of this duty was a constructive fraud because of the powerful
> tendency to deceive that such conduct carries with it.*

*Id.* (citations omitted).

Likewise, as Nugget's Project Manager, Randy Randolph had a duty to bring to the

attention of North Star the unusual and undisclosed change in the relationship between Spencer

Rock and Nugget, whereby Nugget insured its payment rather than payment to Spencer Rock or

North Star for the work North Star did. The reasonable inference can be drawn that North Star,

had it known the true circumstances withheld from it, would have taken steps to make sure both

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                            45-40 / #83541
Page 25

Nugget and Spencer Rock very clearly bound themselves to pay for the work, likely by prepayment or payment immediately upon doing the work (rather than extend credit as North Star did).  Neither would North Star likely have followed Mr. Randolph's direction to just address the bills to Spencer Rock, had it been told the truth.

Randolph and Nugget failed to disclose that information to North Star.  Instead, they deliberately kept it a secret and directed Mr. LaPore to keep it a secret as well.  The evidence so far considered by this Court permits at least the reasonable inference that Mr. Randolph and Nugget also did so deliberately and intentionally, or at least with a reckless indifference to North Star's interests.[20]  A jury could reasonably find that Nugget did so intending to defraud North Star, or that its omissions and misrepresentations through its conduct taking advantage of North Star constitute constructive fraud, or were, at the very least, negligent.

Under the circumstances of this case, wherein Nugget worked alongside North Star day-to-day in a business relationship of which Nugget took advantage, benefitted from, and was paid for, Nugget had a duty to disclose the true circumstances and control it had over Spencer Rock jeopardizing and actually eliminating Spencer Rock's ability to pay North Star, rather than "stiff" North Star.  Randy Randolph knew Spencer Rock's financial situation.  If, in Randolph and Nugget's minds, it was necessary for Nugget to provide "support" services to Spencer Rock due to a precarious financial situation, as Nugget alleges, then they also knew that by intercepting the money otherwise due it Spencer Rock would not be able to pay North Star.  Nugget defrauded North Star.  Under different circumstances it might be permissible for Nugget to keep its

---

[20]    *Cf., Zeman v. Lufthansa German Airlines,* 699 P.2d at 1285.  That inference also supports North Star's punitive damages claim against Nugget.  *See* discussion *infra.*

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83541
Page 26

"support" arrangements resulting in the control and takeover of Spencer Rock from others.

However, under these circumstances where Nugget itself received the benefit of those other

parties' services, like North Star's, and at the same time ensured those parties' nonpayment

through its so-called "support", Nugget had the duty to disclose that situation putting these

claimants at risk, or ensure their payment for those services.  Under the legal principles just

discussed, Nugget becomes responsible for that payment by not having done so.  *Accord, DCD*

*Programs, Ltd. v. Leighton*, 833 F.2d 183, 189-90 (9th Cir. 1987) (deliberate failure to

communicate information which defendant knew or should have known would be material to

plaintiffs' decisions establishes that the defendant possessed the requisite "scienter" supporting

misrepresentation claim).

Citing *Howard S. Lease Construction Company & Associates v. Holly*, 725 P.2d 712

(Alaska 1986),[21] Nugget also argues that, because a general contractor *may* be justified in

refusing to withhold a progress payment to a *subcontractor* where the latter has failed to

substantially perform contractual obligations entitling him to payment which the general

---

[21]    Notably, the facts in that case were very different than in this case.  In that case, the prime contractor did not at all enter into a "support" arrangement with the subcontractor or inject itself into or control or take over the subcontractor's operations.  Not did it substitute its own personnel and equipment for the subcontractor's personnel and equipment or bleed the subcontractor dry of funding and its own identity, as in this case.  *See* Clerk's Docket No. 310 at pp. 6-10, 19-24.

Furthermore, Nugget's "support" agreement and how Nugget used that to charge and intercept all funding to Spencer Rock and then sue Spencer Rock for an additional $2,700,000 is a very different situation than Mr. Goodwill recently testified that North Star had some familiarity with.  The situations Mr. Goodwill testified to involved a few instances during his 25 years of working for North Star of damages to cargo during handling operations for which North Star might receive a "whole separate bill" for damages, normally after the customer paid the invoice for North Star's services.  That bill would then be submitted as a claim against insurance.  That is not at all like the control situation, heavy charges, and interception of funds Nugget exerted against Spencer Rock through its so-called "support" agreement.  Nugget's attempts at comparing the two distorts the truth.  *See* Clerk's Docket No. 491 at Exh. 1 tr. pp. 84, l. 10 - 85, l. 14.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                          45-40 / #83541
Page 27

contractor has had to perform itself, Nugget had every right to intercept the funds otherwise due Spencer Rock and pay itself instead, even without the terms of the "support" agreement.

It is wrong. There are several problems with its argument. First, Nugget has taken the position throughout this litigation that Nugget was not its "subcontractor", and the first panel of the Ninth Circuit Court so ruled. Secondly, and more importantly, Nugget has not established, and cannot hope to establish before trial, that it *had* to perform the work contracted by it to Spencer Rock or that Spencer Rock was unable to substantially perform its contractual obligations.

Indeed, the prevailing evidence, including Mr. LaPore's detailed affidavit and deposition testimony previously considered by this Court (*e.g.* Clerk's Docket Nos. 282 and 310), is to the contrary. That evidence supports the conclusions that Nugget imposed its "support" arrangements on Spencer Rock very early on, to suit itself, without *having* to perform them, and never permitted Spencer Rock to perform on its own. Clerk's Docket No. 310 at pp. 7-9, 19-24. Based on the evidence from Mr. LaPore (and now also Mr. Stacey), the jury could also reasonably conclude that Nugget and Mr. Randolph did so as part of a plan to take over the Spencer quarry (with which Randolph and Nugget's General Manager Greg Poynor were very familiar, *id.*) in order to either facilitate Randolph's and Poynor's designs or to facilitate Nugget's long-term need for valuable rock and gravel materials at a captive price in its construction business. Although Nugget states, as it has time and again in prior summary judgment filings in this case, that it entered into the "support" arrangement with Spencer Rock "to ensure that its performance on its contract with the Federal Government would not suffer from anticipated difficulties in Spencer Rock's performance of its contract with Nugget" and that

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83541
Page 28

there "was no other purpose" (Clerk's Docket No. 489 at 32), a jury could definitely disagree.

The federal telescoping remedy applied by this Court and the Ninth Circuit Court requires evidence of subterfuge, collusion, or circumstances indicating the interposition of a strawman, presumably for purposes of circumventing the Miller Act and the strong public policy for the protection of labors and suppliers like North Star. Those decisions found more than sufficient evidence of subterfuge, collusion, interposition of a strawman, secret dealings, direction, and deliberate concealment of the true situation from the claimants to support that claim, and thus to support North Star's state law claims of misrepresentation and nondisclosure. Nugget has presented nothing new to materially change those findings, or to warrant summary judgment against those claims. Accordingly, this part of Nugget's summary judgment motion must also be denied.[22]

### D. Nugget and USF&G Owed North Star a Duty of Due Care Supporting North Star's Negligence Claims.

The foregoing discussion also applies to North Star's negligence claims set out in paragraph 34 of its Amended Complaint. In its memorandum, Nugget repeats only part of North Star's negligence claim. Part of that claim also refers to Nugget's misleading actions and conduct. It stands to reason that where there is sufficient duty owed to support a negligent

---

[22]   It should also be observed that, contrary to Nugget's assertion (Clerk's Docket No. 489 at p. 33 n.9), neither of the two Ninth Circuit Court decisions in this case have determined that North Star is only a "second tier vendor" unentitled to recover against or rely upon the payment bond for this project as an inducement to perform services in relation to the project. To the contrary, this Court and the Ninth Circuit Court have both recognized that North Star and the other claimants have viable claims remaining under the Miller Act and against the payment bond. Both courts have also recognized there is strong evidence indicating that Nugget structured its arrangements with Spencer Rock and its dealings and nondisclosures with the claimants in a manner seeking to avoid responsibility under the Miller Act, contrary to strong public policy.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 29

misrepresentation claim, a negligence claim also exists.    In addition, after realleging and incorporating by reference all other allegations stated in the Amended Complaint, the claim goes on to allege that the defendants (including but not limited to Nugget) owed North Star and others similarly situated a duty of due care, including statutory duties, which defendants breached. Clerk's Docket No. 409 at ¶ 34.

As regards Nugget, those statutory provisions include the federal Miller Act and the federal Prompt Pay Act and incorporate the strong public policies for secure and prompt payment of subcontractors, laborers and suppliers with which those statutes are imbued.[23]   As this Court has previously noted, the purpose of the Miller Act is to protect those who furnish labor or materials in relation to federal public works projects.  *See, e.g.*, Clerk's Docket No. 310 at p. 16. The Miller Act is highly remedial in nature and entitled to a liberal construction and application in order to properly effectuate the Congressional intent to protect those whose labor and materials go into public projects.  *Id., citing United States ex rel. Walton Technology, Inc. v. Weststar Engineering, Inc*., 290 F.3d 1199, 1205-06 (9th Cir. 2000).  As this Court and the Ninth Circuit Court have previously held, Nugget had a duty at law not to seek to circumvent or insulate itself or its surety from their affirmative responsibilities to secure payment and deal honestly, fairly and in good faith, and in the manner consistent with that Act, toward persons like these claimants intended to be protected by that Act.  Clerk's Docket Nos. 310 & 383.  That is the purpose and policy behind, among other things, the "telescoping" remedy provided for in *Fidelity & Deposit Co. of Maryland v. Harris*, 360 F.2d 402 (9th Cir. 1966), applied by those

---

[23]   *Cf., Barber*, 815 P.2d at 864 (allowing punitive damages claim and directing the superior court to consider the public policy implications of conduct at issue).

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                    45-40 / #83541
Page 30

courts to this case, *id.*, and in such other Ninth Circuit decisions such as *Walton* and *K-W Industries v. National Surety Corporation*, 855 F.2d 640, 642-43 (9th Cir. 1988).[24]

That strong public purpose and policy and concomitant affirmative responsibilities of the prime contractor and its surety are reflected in the correspondence of the U. S. Army Corps of Engineers to Nugget and USF&G, stating that as a result of Nugget's actions in this matter Nugget had, in the opinion of the Corps, "assumed full responsibility . . . for the subject project" including responsibility "for prompt payment to suppliers and subcontractors who contracted with Spencer Rock Products on this project." Further, the Corps, as project administrator of the contract terms and applicable law, advised Nugget and USF&G that Nugget should not have sought or obtained progress payments from the Corps where Nugget withheld or intended to withhold payment from a supplier or subcontractor. That correspondence is discussed in this Court's prior Order at Clerk's Docket No. 310 at pp. 11-12.[25]

Those responsibilities are supported by the Miller Act as construed by the courts and the requirements of Nugget's contract with the federal government referred to in that correspondence. *Id.* They are also supported by the related Federal Prompt Pay Act, 31 U.S.C. §§ 3903(b) and 3905(b)-(h), as further discussed in this case four years ago by, among other

---

[24]     The significance of the decision in *K-W Industries v. National Surety Corporation* to this case is more fully discussed in North Star's Joinder in Shoreside and Metco's Motions for Summary Judgment and Determinations of Law Regarding USF&G, filed at Clerk's Docket No. 519 and incorporated by reference herein in its entirety. Among other things, the court in that case held that the Miller Act does not preempt state law causes of action but instead encourages state law to supplement and fulfill the purposes of the Act. 855 F.2d at 642-43.

[25]     A signed copy of one of those letters, dated August 26, 1997, was subsequently filed with the Court, at Clerk's Docket No. 321, to replace the unsigned copy to which the Court referred at Clerk's Docket No. 310, p. 12 n.31.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 31

filings, North Star's Notice of Supplemental Authorities at Clerk's Docket No. 306. As

discussed there, the Prompt Pay Act and Nugget's responsibilities under it referenced in the

correspondence of the Corps of Engineers effectively served to amend and supplement the Miller

Act, particularly in its provisions for the prompt payment and protection of suppliers and

subcontractors. *United States ex rel. Cal's A/C & Electric v. Famous Const. Corp. & Capitol

Indemnity Corp.*, 34 F. Supp. 2d 1042, 1043-44 (W.D. La. 1999).

USF&G's duties, as surety on the payment bond, include the duties to address and pay

valid claims promptly. Those duties arise under the applicable contracts, including the payment

bond, and under the Miller Act, the Prompt Pay Act, and the statutory and common law duties of

a surety applicable to this case. As is more fully discussed in North Star's previously-referenced

Joinder (Clerk's Docket No. 519), in *Loyal Order of Moose, Lodge 1392 v. International Fidelity

Insurance Company*, 797 P.2d 622 (Alaska 1990), the Alaska Supreme Court recognized the

right of the intended beneficiaries under a payment or performance bond to bring a tort claim of

bad faith dealing against the surety on that bond. 797 P.2d at 626-28.[26] In *K-W Industries*, the

---

[26]    The Alaska court adopted the analysis of the Arizona Supreme Court in *Dodge v. Fidelity & Deposit
Co. of Maryland*, 778 P.2d 1240 (Ariz. 1989), *id.*, from which it quoted as follows:

> Plaintiff's position is simple: Sureties are insurers, insurers are subject to bad faith tort
> liability; therefore, sureties are subject to bad faith tort liability . . . . This proposition is
> supported by our statutes, case law and sound policy reasons.

*Loyal Order of Moose*, 797 P.2d at 627. The Alaska Supreme Court also stated, "[I]n our view, the
relationship of a surety to its obligee -- an intended creditor third-party beneficiary -- is . . . analogous to
that of an insurer to its insured . . . ." *Id.* at 628. In Alaska, that relationship between insurer and insured
is a fiduciary relationship. *Alyeska Pipeline Service Co. v. H. C. Price Co.*, 694 P.2d 782, 788 (Alaska
1985).

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                        45-40 / #83541
Page 32

United States Ninth Circuit Court of Appeals held that such a cause of action under state law

applies to claimants like North Star having claims against the surety and its payment bond under

the Miller Act. 855 F.2d at 643. The court stated:

> Indeed, the congressional purpose of protecting suppliers of goods and services
> for federal projects is advanced if sureties are deterred by state tort law from bad
> faith practices in responding to claims on Miller Act payment bonds.

*Id.*

The purpose of the Miller Act is to protect persons supplying materials and labor for

federal projects. *Id.* at 642-43. Much like that Act gives the Federal Government a direct cause

of action against the surety on the performance bond, which is intended for the use and benefit of

the United States as the project owner, the Act gives the persons who provided labor, equipment

or materials for the project a direct cause of action against the surety and the payment bond,

which is intended by law specifically "for the use and benefit" of those protected persons. *Id.*

In addition, under Alaska law, those persons are within the class of persons intended to

be protected by the standards of conduct contained in the Alaska Unfair Claims Settlement

Practices Act, AS 21.36.125, as well as regulations promulgated pursuant to that Act.[27] *State*

---

[27]  *See, e.g.*, 3 AAC 26.010-.070 (regarding the investigation, handling, and settlement claims against insurers including sureties) & AS 21.90.900(24), (26).

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 33

*Farm Mutual Automobile Insurance Co. v. Weiford*, 831 P.2d 1264, 1269 (Alaska 1992).[28]

Given those definite relationships between the parties and the strong statutory and other legal policies and standards governing them applicable to this case, it seems strange indeed that Nugget or USF&G would take the position that they owe the claimants no legal duty of due care. It also seems strange that Nugget and USF&G would take the position that there would not be evidence of the "lesser-included" concept of negligence in this case where the Court has already determined there exists strong evidence of Nugget's subterfuge and deception and secretive interposition of a strawman in a manner harming the claimants, including North Star. In addition to Nugget's actionable inactions or omissions, there is strong evidence that Nugget's affirmative actions in its relations with Spencer Rock, including its takeover and interception of funds for itself and subsequent refusal to pay the claimants for the work they did for which Nugget was paid, set into motion the circumstances resulting in the claimant's injuries.

North Star agrees with Nugget and USF&G that whether an actionable duty of due care exists is a question of law and public policy. However, in this instance, that question has been answered, by the applicable state and federal statutes and other law and the strong public policies and purposes supporting them discussed above. This is not a close question. It is unnecessary to

---

[28]     Under Alaska law (as well as federal law), even where the statute or regulation expressing a rule of conduct does not create a private cause of action in the plaintiff, such as traffic laws or fire code or OSHA violations, the standards apply if the claimant is within the class of persons intended to be protected by that law. *See, e.g., Weiford*, 831 P.2d at 1269; *Northern Lights Motel, Inc. v. Sweaney*, 563 P.2d 256 (Alaska 1977); *McLinn v. Kodiak Elec. Assn. Inc.*, 546 P.2d 1305 (Alaska 1976); *Ferrell v. Baxter*, 484 P.2d 250 (Alaska 1971). In that situation, the court may also treat the violation as negligence per se or at least relevant evidence bearing on the issue of negligence. *Id., see also* Alaska Pattern Civil Jury Instructions 3.04A, 3.04B, and 3.04C including Use Notes and Comments.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                    45-40 / #83541
Page 34

apply the seven "*D.S.W.*" factors listed in Nugget and USF&G's memorandum and addressed in

*Kooly v. State*, 958 P.2d 1106 (Alaska 1998), one of the court decisions Nugget and USF&G cite

in their memorandum.[29]

Based upon the foregoing discussion, neither is there a "lack of privity" between Nugget

and USF&G and North Star for purposes of imposing a duty of due care, as Nugget also

suggests.  Moreover, more than sufficient evidence exists to permit the conclusion that North

Star was a particular plaintiff or within an identifiable class of plaintiffs at risk which Nugget and

---

[29]    However, were it necessary, the answers would be simple:  (1) the foreseeability of harm to North Star as a result of Nugget and USF&G's acts, conduct and omissions in this matter is strong, as North Star is within that distinct class of persons who are intended beneficiaries under the payment bond and worked alongside Nugget, which knew of its work, and USF&G knew that claims for nonpayment were foreseeable (as that is the purpose of the bond by statute) and knew of North Star's claim at least by early August 1997 through correspondence; (2) the degree of certainty that North Star suffered injury is obvious and uncontested; (3) the closeness of the connection between Nugget and USF&G's conduct and North Star's injury is set out, among other places, in the long history of this case, in this Court's Orders at Clerk's Docket Nos. 310, 401 & 430, and in Mr. Callow's report at Clerk's Docket No. 460 Exh. 1 & Clerk's Docket Nos. 510 & 519; (4) the moral blame attached to the defendants' conduct, although probably one of the lesser factors in the context of a negligence cause of action, is set forth sufficiently in those same previous filings, this filing, and in the public policies and purposes of the above-referenced statutes as well as in the federal telescoping cause of action already held applicable to this case; (5) the policy of preventing future harm of a similar nature is strong, as evidenced by those same references; (6) the extent of the burden to the defendants of imposing a duty of exercise care is slight and favored based on the public policies already addressed; and (7) insurance for the risk involved is available and not cost-prohibitive (or, alternatively, the defendant's net worth is such it does not need insurance for the risk or self-insures).

On that last point, James Ferguson, Nugget & USF&G's broker and agent for liability insurance and bonds, testified at his deposition taken March 8, 2006 that professional services liability policy coverage, which would appear to apply to the claimants' claims concerning Nugget's negligent management of the project causing the plaintiffs harm, is available and not cost-prohibitive and indeed existed among Nugget's liability policies and was retroactive to 1995 and these events.  *See* summary of Ferguson testimony and exhibits at Clerk's Docket No. 519, incorporated herein by reference, and the excerpts of Mr. Ferguson's deposition transcript (tr. pp. 118-123) attached hereto as Exhibit 2.  In any event, USF&G is itself a large insurance company with a net worth of $1.7 billion, meaning it self-insures or does not need insurance for the risk at issue.  Even Nugget has a net worth over $2,500,000 according to its financial statements, and it is actually worth several million dollars more according to Cliff Terwilliger, who eventually testified as Nugget's Rule 30(b)(6) designee on those subjects (following this Court's January 18, 2006 Order compelling that discovery, Clerk's Docket No. 430).

---

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 35

USF&G knew or reasonably should have foreseen under the rule adopted by the Alaska Supreme

Court in *Mattingly v. Sheldon Jackson College*, 743 P.2d 356, 360-61 (Alaska 1987), also cited

by Nugget and USF&G[30] and that ascertainable economic damages would ensue from their

conduct.  *See also In Re Beverages International Ltd.*, 50 B.R. 273, 282 (U.S. Bank. Ct., D.

Mass. 1985) (holding that "Where a creditor has taken control of the debtor, he assumes the

fiduciary duties of management and a duty to deal fairly with other creditors).

        In their memorandum, Nugget and USF&G argue that "there is absolutely no way that

Nugget could have foreseen that Mr. LaPore would fail to pay Spencer Rock's suppliers,

including North Star," but as has been previously evidenced nothing could be further from the

truth.  According to Mr. LaPore's previous affidavits and deposition testimony submitted to the

court in this matter, as well as other evidence and inferences to be drawn against Nugget (and

USF&G through it), Nugget was in a unique position to know, and did know, of Spencer Rock

and LaPore's limited financial circumstances and the likely disastrous impact Nugget's onerous

---

[30]     In *Mattingly*, the Alaska court reversed summary judgment against that plaintiff's negligence claim
and held that the plaintiff was entitled to proceed to trial upon his claim of negligently caused economic
losses of business income, profit, and increases in expenses.  743 P.2d at 361.  In this case, those losses
would be measured in the same or similar manner as North Star's previous calculation of losses due to
Nugget's breach of contract or, alternatively, tortious interference of North Star's preexisting business
relations with Spencer Rock.  There are two categories of loss: (1) non-payment under the contract or
Nugget's tortious interference with Spencer Rock's ability to pay for the five barge loads North Star did
load; and (2) breach of the rest of the contract or Nugget's tortious interference with Spencer Rock's
continuation of it due to Nugget's moving the loading work across Resurrection Bay to suit Nugget's own
purposes and charges against Spencer Rock, as referenced in the Court's previous Order at Clerk's
Docket No. 310.  Those losses, in the principal sums of (1) $125,000 and (2) $52,000 (lost profits),
respectively, which are set out in prior discovery disclosures, also apply to North Star's negligence
claims.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 36

demands and chokehold on Spencer Rock would have on that company's ability to pay the

claimants. [31]  *See, e.g.,* Clerk's Docket Nos. 282 & 310.  Accordingly, Nugget and USF&G

should be denied summary judgment as to this claim as well, and the Court should instead issue

rulings on the law of the case supporting North Star's position.

### E.  North Star, Not Nugget, is Entitled to Summary Judgment Upon North Star's Claims for Quasi-Contract, Unjust Enrichment, <u>Contract Implied in Law, and/or Quantum Meruit.</u>

At the outset, it is to be noted that the factual characterizations and various arguments,

legal and otherwise, that Nugget makes regarding this portion of its motion are also

characterizations and arguments Nugget made before in its summary judgment motion four years

ago which was denied by this Court.  *See* Clerk's Docket Nos. 270 at pp. 22-26 & 298 at pp.

12-13; Order, Clerk's Docket No. 310 at p. 25.  Nugget's characterizations and arguments are

incorrect.  They were answered fully by North Star four years ago.  *See, e.g.*, Clerk's Docket No.

282, North Star Memo at pp. 2-24 & 37-41; Clerk's Docket No. 300, North Star's Reply Memo

---

[31]    Of course, there are ways in which Nugget could have properly protected itself, but did not, such as requiring a payment bond from Spencer Rock.  As the United States Supreme Court noted in *MacEvoy Company v. United States, ex rel., Tomkins Company*, 322 U.S. 102, 110 (1944):

> The relatively few subcontractors who perform part of the original contract represent in a sense the prime contractor and are well known to him.  It is easy for the prime contractor to secure himself against loss by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractors.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                              45-40 / #83541
Page 37

at pp. 2-11 & 23-24. There is nothing new under the sun on this point, except for two items.[32] The court should again deny summary judgment to Nugget. Instead, as was urged four years ago but not reached by the court, summary judgment should be granted to North Star on this point, in the established reasonable sum of North Star's invoices of $124,724.98 for the work it did.[33]

The parties can agree that the Alaska Supreme Court generally treats actions brought upon the theories of unjust enrichment, quasi-contract, contracts implied-in-law, and quantum meruit as essentially the same. *See Old Harbor Native Corp. v. Afognak Joint Venture*, 30 P.3d 101, 107 (Alaska 2001); *Alaska Sales & Service, Inc. v. Millet*, 735 P.2d 743, 746 n. 6 (Alaska 1987). *Also compare* Clerk's Docket No. 488 at p. 39 *with* Clerk's Docket No. 508 at p. 14. There is also agreement that there are three elements to a quasi-contract or unjust enrichment claim under Alaska law. As applied to North Star's interest in this case, they are: (1) a benefit conferred upon Nugget by North Star; (2) appreciation by Nugget of that benefit; and (3) acceptance and retention by Nugget of that benefit under such circumstances that it would be inequitable for Nugget to retain it without paying the value thereof. *Bennett v. Artus*, 20 P.3d 560, 563-67 (Alaska 2001); *Reeves v. Alyeska Pipeline*, 926 P.2d at 1143; *Alaska Sales*, 735 P.2d

---

[32]   Four years ago, Nugget represented that it paid Spencer the total sum of $192,184.66 of the $1,600,000 Nugget admits was owed Spencer Rock under the material contract (Clerk's Docket No. 298, Nugget Memo at p. 24) but it now claims, based upon the new, unsupported affidavit of Mr. Randolph, that it paid Spencer the sum of $197,184.66 (Clerk's Docket No. 489 at p. 40). Nugget further represents, based on that same unsupported statement, that it sustained additional "losses" of over $1,500,000 "in connection with its dealings with Spencer Rock," whereas four years ago it was shown Nugget *claimed* $2.7 million extra in its lawsuit driving Spencer Rock out of business. Clerk's Docket Nos. 282 & 300 & LaPore 4/4/02 Affidavit at pp. 5-7.

[33]   This Court has ruled, as a matter of summary judgment, that North Star provided those services for the use and benefit of the federal public project and that its charges in that amount were reasonable and not seriously contested. *See, e.g.,* Clerk's Docket Nos. 124 & 310 at p. 25. Those findings and others were not challenged on appeal, and any challenge to them has been waived. *Kesselring v. F/V Arctic Hero*, 95 F.3d 23, 24-25 (9th Cir. 1996); *Munoz v. County of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982).

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83541
Page 38

at 747. Quasi-contracts are "judicially-created obligations to do justice." *Reeves* at 1143; *Alaska Sales* at 746. "Consequently, the obligation to make restitution that arises in quasi-contract **is not based upon any agreement between the parties, objective or subjective**." *Id.* (emphasis added).

The main argument that Nugget makes now is that there could be no "unjust enrichment" in this case unless Nugget received "a true windfall 'or something for nothing.'" It is an argument it made four years ago. North Star fully responded and showed that argument's total absence of merit then. *See, e.g.*, Clerk's Docket No. 282 Memo at pp. 38-41. Rather than repeat all of it now, North Star incorporates that response in its entirety herein and requests the Court to review and consider that response now, as part of what the Court has already considered in this case.

As was demonstrated there, including the accompanying factual presentation (*id.* at 2-24), all three elements of the claim are established. Nugget's argument that it paid Spencer Rock some money for some rock delivered early on in the project is insignificant. It is quite shallow when considered against the true facts, including the total amount otherwise due Spencer. As was demonstrated in North Star's previous memoranda and supporting papers, that small payment of $147,000 which Nugget paid to Spencer Rock on May 8, 1997, was only partly for rock and then only for rock produced and stockpiled by Spencer **before** mid-April 1997, while Nugget was in the process of taking over Spencer's work but had not yet entirely. *Id.* Contrary to the suggestion contained in Mr. Randolph's recent affidavit (Clerk's Docket No. 490 at ¶ 7), **none** of that payment was for **loading** that rock upon Nugget's barge, as Spencer Rock had also contracted with Nugget to do according to Nugget. All of the loading work that North Star did

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                                    45-40 / #83541
Page 39

was in May and June of 1997, *after* Nugget had succeeded in taking control of Spencer's

operation.  The barge only arrived for the first time in early May.  The only additional sums that

Nugget allowed Spencer over the next several months, in the ***total*** amount of $45,000, were for

essential payroll advances in very small amounts, and Mr. LaPore, as set out in his affidavit and

deposition at Clerk's Docket No. 282, had to "beg" for those funds.  Nugget's suggestion now

that it paid Spencer Rock for the work North Star did in relation to the first two barge loads, and

that Spencer Rock should have thus had money to pay North Star, is just another deception in a

series of deceptions by Nugget.  As has been observed before:

> Certainly, North Star would not have done the loading work if it had been
> truthfully informed that the circumstances between Nugget and Spencer had
> dramatically changed since at least mid-April—to the point where Nugget would
> be intercepting all future funds due Spencer under their "materials contract," but
> that North Star would still have to look to Spencer for payment.  In other words,
> Nugget's "support" agreement with Spencer, control of Spencer, ability to
> intercept the funds otherwise due Spencer and apply them to itself as the true
> principal, deceptive withholding of that true information from North Star, and
> "stiffing" of North Star after the work was performed by North Star constitute the
> "windfall" which Nugget received from North Star's services.  As the true facts
> demonstrate, those services were not "to Spencer"; they were to Nugget.

Clerk's Docket No. 282 Memo at p. 39 (emphasis in original).

Nugget's further argues now that, because North Star claims it had an express contract

(with Spencer Rock and with Nugget through Spencer Rock), it "may not seek recovery on extra-

contractual theories such as quantum meruit or implied contract."  Clerk's Docket No. 489 at pp.

40-41.  That argument has also been made before by Nugget and has been addressed by North

Star.  *See, e.g.,* Clerk's Docket No. 282 Memo at p. 41.  As was stated before, only in the event

that it is found after trial that the arrangement which Spencer Rock made with North Star is not

enforceable against Nugget, as Spencer's principal or otherwise, would North Star seek to collect

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83541
Page 40

upon these alternative claims based in quasi-contract. *Id.* As Shoreside and Metco recently pointed out, Nugget is engaging in sophistry. It is "denying that there is a direct express contract and then is defending the claim for quantum meruit on the ground that there is a direct express contract." Clerk's Docket No. 525 at p. 25.

Accordingly, Nugget should be denied summary judgment and North Star granted summary judgment upon these claims.[34] Nugget has been unjustly enriched.

### F. Nugget is Not Entitled to Summary Judgment Upon North Star's Equitable Subordination and Constructive Trust Claims

Whereas Nugget briefly cites some law at pp. 39-40 of its memorandum regarding equitable principles applicable to the related claims for constructive trust and equitable subordination, it does not discuss that law or apply it to any facts in this case, yet seeks summary judgment upon those claims. It demonstrates no basis for summary judgment upon those claims. On the other hand, North Star presented a legal basis and factual basis for those claims in writing to this Court four years ago. *See, e.g.*, Clerk's Docket No. 282 Memo at pp. 32-33, which is incorporated herein by reference. *See also Nerox Power Systems, Inc. v. M-B Contracting Co., Inc.*, 54 P.3d 791, 794-95, 797 (Alaska 2002) (cause of action exists to undo or offset inequity among creditors, such as between Nugget and North Star, especially where there is evidence of

---

[34]    It should also be noted that, in connection with its argument on this subject, Nugget twice refers to its early material contract "as modified" by the subsequent so-called "support" agreement. *See* Clerk's Docket No. 489 at pp. 40-41. However, Nugget argued in its first appeal to the Ninth Circuit Court that they were two entirely separate agreements and that the "support" agreement should not be considered in conjunction with the earlier material contract as part of the court's consideration of the "total relationship" between Nugget and Spencer Rock when evaluating whether Spencer Rock was a subcontractor to Nugget under the Miller Act. Unfortunately, that panel of the Ninth Circuit Court accepted that argument. *See* Clerk's Docket No. 255. Nugget now seeks to change that characterization, where it thinks doing so will suit its present purposes.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83541
Page 41

"badges of fraud").  Nugget's non-showing as to those two claims now is far too thin a reed upon

which to support summary judgment in its favor, especially at this juncture before the Court and

jury have had the opportunity to fully consider the matter.  The motion should be denied.

### G.  North Star Should be Granted Summary Judgment Upon Its Agency by Control Claim and, Further, Upon Nugget's New Representation that It was Acting as an Agent for Spencer Rock, as an Undisclosed Principal, During the Barge Loadings.

As previously explained in this memorandum, Nugget does not really address the state

law based agency cause of action stated at paragraph 29 of North Star's Amended Complaint.

As summarized in Shoreside and Metco's recent Opposition, filed at Clerk's Docket No. 525 at

p. 32, Nugget's argument (and USF&G's insofar as included there by the Oles Morrison firm)

does not address that claim as actually alleged or the law applicable to that claim.  Nugget and

USF&G instead seek to avoid that claim and argue against their own "strawman diversion."

They argue that the Amended Complaints' "factual allegations fail to support a claim of agency

between Nugget and Spencer Rock on their face" (*see* Clerk's Docket No. 489 at p. 42), but only

by ignoring the established law applicable to those allegations.  They try to sidestep the real

claim.

As previously observed in this memorandum, the agency cause of action actually alleged

in North Star's Amended Complaint was factually and legally supported in detail in North Star's

filings for summary judgment in this case four years ago.  *See, e.g.*, Clerk's Docket Nos. 282 &

300.  At that time, North Star addressed and demonstrated the invalidity of all of the arguments

which Nugget makes now, because the arguments Nugget makes now are the same arguments,

using the same citations to law, that Nugget used then.  *See* Clerk's Docket No. 300, North Star

Reply Memo at pp. 2-21 incl. accompanying exhibits; *compare* Clerk's Docket No. 298, Nugget

_____
Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83541
Page 42

Memo at pp. 5-9 *with* Clerk's Docket No. 489 at pp. 42-47.  That cause of action is also addressed in North Star's recent filing for summary judgment on that subject at Clerk's Docket No. 504.  Those filings are incorporated by reference in response to Nugget's motion.  They demonstrate that Nugget's motion should be denied on this point and that North Star should be granted summary judgment on this cause of action instead.

The quotation, which Nugget purports to lift from the *Cargill* decision at Clerk's Docket No. 489 at p. 43, was not the holding of that court.  This Court recognized the true holding in *Cargill* in its August 30, 2002 Order herein, Clerk's Docket No. 310 at pp. 23-24 n.38.  As this Court stated there, it was "inclined" to apply that principle of law "to find that a principal/agent relationship existed between Nugget and Spencer" except for the Court's understanding that under Alaska law "contracts entered into by an agent cannot be construed as binding an undisclosed principal," *citing Jensen v. Alaska Valuation Service, Inc.*, 688 P.2d 161 (Alaska 1984).[35]

Taking a cue from that judicial comment four years ago, Nugget argues in its present filing that under Alaska law an undisclosed principal cannot be held liable for the acts of its agent.  It cites two cases in purported support, namely *Jensen, supra*, and *Vienna v. Scott Wetzel Services, Inc.*, 740 P.2d 447 (Alaska 1987).

---

[35]    That question, whether contracts entered into by an agent can be construed as binding an undisclosed principal under Alaska or federal law, first appeared in the court's decision.  It was not raised in the parties' summary judgment submittals.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                 45-40 / #83541
Page 43

However, that is not what those cases hold.  *Jensen*, which North Star addressed in a motion for reconsideration to this Court four years ago,[36] did not hold that.  *Jensen* held that an agent is liable upon an agreement for a principal where the principal is not timely disclosed, ***not*** that the undisclosed principal is not liable.  *Jensen* at 162-65.  *See also* discussion at Clerk's Docket No. 315.  The Alaska court's decision in *Vienna*, which Nugget also cites, is to the same effect.  *Vienna* held only that an agent is not personally liable when the principal ***is*** disclosed.  *Vienna* at 452-53.  It did ***not*** hold, as Nugget mistakenly adds to its memorandum (Clerk's Docket No. 489 at p. 46), that "when the principal is not disclosed, liability rests on the agent, not the principal."

The situation in this case is quite different.  Here it is not Spencer, as agent, which is seeking to avoid liability.  Instead, Nugget, as the principal, is seeking to do so.  In this case, the rule which was applied in *Cargill*, that the principal is liable regardless of whether undisclosed, applies instead.  309 N.W.2d at 293-94; *Restatement (Second) of Agency*, § 208 (1958) (*cited* and applied in *Cargill*).  *See also Poretta v. Superior Dowel Co.*, 137 A.2d 361, 368 (Me. 1957), *cited* in *Cargill*.  As was noted in North Star's previous filings with this Court, the effect of that rule is that the principal is liable to the claimant in North Star's situation where the claimant remains unpaid—*even* (unlike this case) where the principal has mistakenly paid its agent for the claimant's services.  *Id.*

Because the *Restatement (Second) of Agency*, which expresses the modern view and is presently in effect, is commonly relied upon to determine agency principles by both the Alaska

---

[36]    *See* Clerk's Docket No. 315 at pp. 1-4, incorporated herein by reference, and Clerk's Docket Nos. 316 & 317.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83541
Page 44

court and under federal law, the *Cargill* analysis, also applied in other cases,[37] should be applied to this case, both under state law and under the Miller Act.[38]

 In its previous above-referenced filings considered by this Court, North Star also distinguished and showed inapplicable Nugget's reliance on the *Manes* and *M.S.P. Industries* cases and other legal citations, including *Restatement (Second) of Agency* sections, upon which Nugget again relies. In its present memorandum, Nugget also takes partial quotes out of context from Mr. Goodwill's August 4, 1997 correspondence to the Corps of Engineers and Mr. Goodwill's affidavit signed in 1998, in a manner mischaracterizing the full content of those documents, previously filed and considered by this Court in reaching its own conclusions. The Court should again consider that full letter and affidavit and not just Nugget's partial "sound bites" from them. It should also consider the fuller facts from those and other summary judgment filings and Court decisions, as previously referenced and incorporated herein, going back to 1998. They amply support North Star's position as to the existence of an agency relationship between Nugget and Spencer Rock as a result of Nugget's control of Spencer Rock's operations and funding.

---

[37]  *See also, e.g., Save Way Oil Co. v. Mehlman*, 496 N.Y.S. 2d 537 (N.Y. App. Div. 1985); *Indosuez v. Rush Farms*, 1996 W.L. 307, 120 (Ark. Ct. App. 1976) (unpublished decision).

 As has also previously been observed, many of North Star's other legal theories for recovery recognized in state law also form a basis for recovery under the Miller Act, including filling that Act's "interstices." *See, e.g.*, Clerk's Docket No. 316 at p. 5; Clerk's Docket No. 310 at p. 24 n.38.

[38]  *See, e.g., Jensen*, 688 P.2d at 165 (*citing Restatement (Second) of Agency*); *Mullen v. Christiansen*, 642 P.2d 1345, 1350 n.5 (Alaska 1982) (same); *United States v. Everett Monte Cristo Hotel, Inc.*, 524 F.2d 127, 140 (9th Cir. 1975) (same); *Solar Intern. Shipping Ag., Inc. v. Eastern Proteins Export, Inc.*, 778 F.2d 922, 925 (2nd Cir. 1985) (same).

---

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV             45-40 / #83541
Page 45

Finally, there is a second basis for finding an agency relationship between Nugget and Spencer Rock, as a matter of law. As earlier observed, it exists in Mr. Randolph's recent representation, for the first time, that "[m]y direction to North Star regarding the loading and scheduling of the barges was expressly authorized by Mr. LaPore and Spencer Rock, per the Support Agreement." Clerk's Docket No. 490 at p. 5, ¶ 9. Although Robert LaPore has a different take on how that direction by takeover occurred, *see* 4/4/02 Affidavit of Robert LaPore at Clerk's Docket No. 282, esp. ¶¶ 4, 6, & 7, even Mr. Randolph's rendition demonstrates that he substituted himself and Nugget for Spencer Rock for that part of the work. Insofar as he was the agent of an undisclosed principal, which he appears to admit, the rule in *Jensen v. Alaska Valuation Service*, that an agent is liable where the principal is not timely disclosed, appears to apply.

### H. North Star's Punitive Damages Claims Should Not be Dismissed.

Nugget and USF&G also argue that North Star's punitive damages claims stated at paragraph 39 of its Amended Complaint should be dismissed. They seem to argue that there is insufficient evidence from which a jury, considering all inferences in the light most favorable to North Star, could conclude that either of those defendant's conduct was outrageous. [39] North

---

[39] Negligence is the only claim against USF&G upon which punitive damages could be awarded and in which Oles Morrison Rinker & Baker still represent USF&G. The other claim that is stated in the Amended Complaint against USF&G which could support an award of punitive damages is the bad faith claim stated at paragraph 38 and only Mr. Viergutz's law firm represents USF&G as to that claim. Other claims in tort stated against Nugget to which the remedy of punitive damages applies are North Star's misrepresentation and nondisclosure claims, including fraud (¶ 33), negligence (¶ 34), and tortious interference (¶ 35). Oles Morrison Rinker & Baker is the only legal counsel representing Nugget in this case and, therefore, as to those claims. The argument contained in that law firm's memorandum on this subject applies only to those claims against Nugget and the negligence claim against USF&G. As noted earlier, Mr. Viergutz's law firm has filed a separate motion for summary judgment against the punitive damages claim stemming from the bad faith claim against USF&G.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                              45-40 / #83541
Page 46

Star disagrees.

As Nugget's memorandum recognizes, a claim for punitive damages must be submitted to the jury if there is sufficient clear and convincing evidence from which the jury could conclude that the defendant's conduct was outrageous, such as acts done with malice, ***bad motive, or reckless indifference to the interest of another***. *See* Clerk's Docket No. 489 at p. 48 (emphasis added). It is enough that the jury can reasonably conclude, from the evidence and reasonable inferences to be drawn therefrom, that the defendant's acts exhibit a callus disregard for the rights of others. *Id*. Evidence supporting a finding of conscious action by the defendant in deliberate disregard of others is sufficient. *Id*. at 48-49. Furthermore, when considering the issue upon a motion for summary judgment, as in this instance, the court must draw all inferences upon the evidence in the light most favorable to the non-moving party, in this case North Star, without it or the jury having had the advantage of hearing all of the evidence from the witnesses at trial. Thus, the warning of the Alaska Supreme Court in the previously discussed case of *Turnbull v. LaRose* is apt:

> Courts must be cautious in granting a motion for summary judgment when resolution of the dispositive issues requires, as in this case, determination of state of mind. In such circumstances, the fact finder should be given the opportunity to observe the demeanor of the witnesses whose states of mind are at issue.

702 P.2d at 1335. In that regard, it is to be remembered that the standard of conduct, *i.e*., outrageous behavior, which the jury is to consider for punitive damages, is not the same standard as applies to the independent tort claim that may support a claim for punitive damages, such as negligence or product liability (*Sturm Ruger & Co., Inc. v. Day*, 594 P.2d 38, 46-47 (Alaska 1979)), negligent or intentional misrepresentation (*Barber*, 815 P.2d at 861-64), fraud (*Great Western Savings Bank v. George W. Easley Co., J.V.*, 778 P.2d 569 (Alaska 1989)), or

_____
Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                              45-40 / #83541
Page 47

intentional interference with business relations (*Oaksmith v. Brusich*, 774 P.2d 191 (Alaska 1989)).

On the subject of USF&G's outrageous conduct, the court is requested to consider the evidence and arguments contained in Shoreside and Metco's May 1, 2006 filing herein at Clerk's Docket Nos. 509 & 510, North Star's Joinder therein at Clerk's Docket No. 519, and the claimants' future filings in response to USF&G's separate motion for summary judgment against punitive damages filed by Mr. Viergutz's office (Clerk's Docket Nos. 496 & 515).[40]  Those filings are incorporated herein by reference.

With regard to evidence of Nugget's outrageous behavior, it can only be concluded that the evidence of Nugget's disregard toward Spencer Rock's interests, as part of a takeover including an apparent master plan to gain future rights to the quarry, together with the subterfuge, secrecy, deception, and interposition of a strawman in which Nugget engaged in its dealings with these claimants and others, including Chugach Rock Corporation, as determined by this Court in its Order at Clerk's Docket No. 310, could support a jury finding of outrageous conduct and punitive damages.  As the Ninth Circuit Court also held, evidence exists in this case of coercion and subterfuge, constituting misrepresentation and possibly fraud, which definitely can support a finding of punitive damages.  As Nugget acknowledges (Clerk's Docket No. 489 at p. 49), whether outrageous conduct exists is a question of fact and the trier of fact should be given broad discretion to grant or withhold punitive damages.

---

[40]    Nugget's argument in support of its motion for summary judgment does not at all address the behavior or conduct of USF&G.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                        45-40 / #83541
Page 48

That being the case, and based on the evidence and reasonable inferences therefrom that are presented herein and that evidence which was considered and found by this Court previously, the question of whether punitive damages are warranted in this case should be presented to the trier of fact, or at least not foreclosed at this relatively early juncture by motion for summary judgment.  The jury should be allowed to decide whether Nugget simply "entered into an arm's length agreement with Spencer Rock . . . and then conducted itself consistent with that agreement," as Nugget contends (*id*. at 50), or whether Nugget instead had a more deceptive design in mind to coerce Spencer Rock and disregard the rights of North Star and others similarly situated, presumably for the purpose of avoiding Nugget's responsibilities under the Miller Act and otherwise, as this Court concluded in its previous Order and the Ninth Circuit Court agreed the evidence supported.

Therefore, the defendants should be denied summary judgment upon North Star's punitive damages claims.[41]

---

[41]  Nugget's additional opinions that the amount of punitive damages claimed by North Star are "staggeringly disproportionate" and that those allegations are "trumped-up," "invented," "opportunistic" and the like can be dismissed as hyperbolic rantings adding nothing constructive to the discussion.  As this Court has previously ruled, any limitations on punitive damages contained in AS 09.17.020 enacted effective August 7, 1997 do not apply to this case.  Clerk's Docket No. 430 at p. 2.  *Accord, Norcon, Inc. v. Kotowski*, 971 P.2d 158, 175-77 (Alaska 1999).  Absent that statutory limitation, punitive damages 50 times and 70 times the award of compensatory damages have been awarded under Alaska law.  *Kotowski*, 971 P.2d at 175-77 (50 times); *Cameron v. Beard*, 864 P.2d 538, 554, 550-51 (Alaska 1993) (70 times). In any event, the proportional relationship between compensatory damages and the amount of punitive damages is only one factor to be considered in arriving at a proper punitive damages award.  Other factors exist, including whether the amount awarded is sufficient to send the necessary message to the perpetrator that its conduct is blameworthy and not to be repeated, a consideration to be measured in part by the defendant's net worth.  According to Nugget's financial statement, its net worth is over $2,500,000, and Cliff Terwilliger, who testified on Nugget's behalf on that subject, opined that Nugget is actually worth several million dollars more and could readily satisfy a judgment of $1,000,000 against it within 90 days. As earlier noted, USF&G's net worth is $1.7 billion, meaning that getting its attention would likely require a punitive damages award well in excess of $1,000,000.

Memorandum in Support of Opposition and Cross-Motion to Nugget and
USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83541
Page 49

## IV.  CONCLUSION

Therefore, Nugget's (and USF&G's) motion for summary judgment should be denied in its entirety and North Star's cross-motion for summary judgment upon its agency and quasi-contract, contract implied in law, restitution and quantum meruit causes of action should be granted, together with rulings upon the law of the case as the Court determines appropriate.

Dated at Anchorage, Alaska, on May 17, 2006.

s/ Michael W. Sewright
Burr, Pease & Kurtz
810 N Street
Anchorage, Alaska 99501
Phone: (907) 276-6100
Fax: (907) 258-2530
E-mail: bpk@bpk.com
Alaska Bar No. 7510090

CERTIFICATE OF SERVICE

I certify that on the 17th day of May, 2006, a copy of the foregoing MEMORANDUM IN SUPPORT OF NORTH STAR'S OPPOSITION AND CROSS-MOTION TO NUGGET AND USF&G'S APRIL 28, 2006 MOTION FOR SUMMARY JUDGMENT AGAINST NORTH STAR was served electronically to:

    Steven S. Shamburek, Esq.
    Traeger Machetanz, Esq.
    Paul D. Stockler
    Herbert A. Viergutz
    C. Patrick Stoll, Esq.

    s/ Michael W. Sewright

Memorandum in Support of Opposition and Cross-Motion to Nugget and USF&G's April 28, 2006 Motion for Summary Judgment Against North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                                          45-40 / #83541
Page 50