```
 1              IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF ALASKA
 2
    UNITED STATES OF AMERICA for the use  )
 3  of NORTH STAR TERMINAL & STEVEDORE    )
    COMPANY d/b/a Northern Stevedoring &  )
 4  Handling, and NORTH STAR TERMINAL &   )
    STEVEDORE COMPANY, d/b/a Northern     )
 5  Stevedoring & Handling, on its own    )
    behalf,                               )
 6                                        )
                    Plaintiffs,           )
 7                                        )
        and                               )
 8                                        )
    UNITED STATES OF AMERICA for the use  )
 9  of SHORESIDE PETROLEUM, INC., d/b/a   )
    Marathon Fuel Services, and SHORESIDE )
10  PETROLEUM, INC., d/b/a Marathon Fuel  )
    Services, on its own behalf,          )
11                                        )
                Intervening Plaintiffs,   )
12                                        )
        and                               )
13                                        )
    METCO, INC.,                          )
14                                        )
                 Intervening Plaintiff,   )
15                                        )
        vs.                               )
16                                        )
    NUGGET CONSTRUCTION, INC.; SPENCER    )
17  ROCK PRODUCTS, INC.; UNITED STATES    )
    FIDELITY AND GUARANTY COMPANY;        )
18  and ROBERT A. LAPORE,                 )
                                          )
19                    Defendants.         )
    _____)
20  Case No. A98-009 CIV (HRH)

21           DEPOSITION OF JAMES LEROY FERGUSON

22  APPEARANCES:
       FOR THE PLAINTIFF NORTH STAR       MR. MICHAEL W. SEWRIGHT
23     TERMINAL & STEVEDORE CO.:          Burr, Pease & Kurtz
                                          Attorneys at Law
24                                        810 N Street
                                          Anchorage, Alaska  99501
25                                        (907) 276-6100
```

R & R COURT REPORTERS
810 N STREET
(907) 277-0572/Fax 274-8982
ANCHORAGE, ALASKA 99501

Exhibit 2
Page 1 of 7

```
 1  APPEARANCES (CONTINUED):

 2      FOR THE DEFENDANT SHORESIDE        MR. STEVEN J. SHAMBUREK
        PETROLEUM, INC & METCO, INC.:      Attorney at Law
 3                                         425 G Street, Suite 630
                                           Anchorage, Alaska  99501
 4                                         (907) 522-5339

 5      FOR THE DEFENDANT NUGGET           MR. THOMAS KRIDER
        CONSTRUCTION, INC., and UNITED     Oles, Morrison & Rinker
 6      STATES FIDELITY AND GUARANTY:      Attorneys at Law
                                           745 West Fourth Avenue
 7                                         Suite 502
                                           Anchorage, Alaska 99501
 8                                         (907) 258-0106

 9      FOR USF&G:                         MR. HERBERT A. VIERGUTZ
                                           Barokas Martin & Tomlinson
10                                         Attorneys at Law
                                           1029 West Third Avenue
11                                         Suite 280
                                           Anchorage, Alaska 99501
12                                         (907) 276-8010

13      FOR THE WITNESS:                   MR. DOUGLAS R. DAVIS
                                           Keesal, Young & Logan
14                                         Attorneys at Law
                                           1029 West Third Avenue
15                                         Suite 650
                                           Anchorage, Alaska 99501
16                                         (907) 279-9696

17                          * * * * *

18

19

20

21

22

23

24

25
```

R & R COURT REPORTERS
810 N STREET
(907) 277-0572/Fax 274-8982
ANCHORAGE, ALASKA 99501

Exhibit 2
Page 2 of 7

```
 1        PURSUANT TO NOTICE, the Deposition of JAMES LEROY
 2   FERGUSON, was taken on behalf of the Plaintiff North Star
 3   Terminal & Stevedore Company before William Rice, Notary Public
 4   in and for the State of Alaska, and Reporter for R & R Court
 5   Reporters, at the offices of Keesal, Young and Logan at 1029
 6   West Third, Suite 650, Anchorage, Alaska, on the 8th day of
 7   March, 2006, commencing at the hour of 9:00 o'clock a.m.
 8                         * * * * * *
 9                       TABLE OF CONTENTS
```

| | |
|---|---:|
| Direct Examination by Mr. Sewright | 05 |
| Cross Examination by Mr. Shamburek | 126 |
| Cross Examination by Mr. Krider | 135 |
| Redirect Examination by Mr. Sewright | 136 |

EXHIBITS MARKED:

| | | |
|---|---|---:|
| 1 | (Amended Notice of Deposition of James Ferguson) | 04 |
| 2 | (Fax from D. Davis to M. Sewright dated 3/7/06) | 04 |
| 3 | (Memo from April Lee to Staci White dated 3/6/06) | 28 |
| 4 | (North Star's Amended Complaint) | 38 |
| 5 | (Documents produced on or about 1/10/06 by Mr. Viergutz' office) | 94 |
| 6 | (Compilation of documents) | 103 |
| 7 | (Compilation of documents) | 108 |

                         * * * * * *

R & R COURT REPORTERS
810 N STREET
(907) 277-0572/Fax 274-8982
ANCHORAGE, ALASKA 99501

Exhibit 2
Page 3 of 7

Page 4
(1) PROCEEDINGS
(2)     (Deposition Exhibits 1 and 2 marked)
(3)     (On record)
(4)     COURT REPORTER:    The time is approximately 9:12
(5) a.m. Today is March 8th, 2006. We're at the offices of
(6) Keesal, Young and Logan at 1029 West Third, Suite 650 for the
(7) deposition of James Ferguson taken on behalf of the Plaintiff
(8) in the United States District Court case, United States of
(9) America for the use of North Star Terminal & Stevedore Company,
(10) et al and United States of America for the use of Shoreside
(11) Petroleum, et al and Metco, Inc. versus Nugget Construction,
(12) Incorporated, et al. Case number A98-009 Civil. My name is
(13) Bill Rice. I'm a court reporter for R & R Court Reporters at
(14) 810 N Street and Notary Public for the State of Alaska.
(15) Sir, would you raise your right hand, please?
(16)     (Oath administered)
(17)     MR. FERGUSON:    I do.
(18)     JAMES LEROY FERGUSON
(19) having been first duly sworn under Oath, testified as follows
(20) on:
(21) DIRECT EXAMINATION
(22)     COURT REPORTER:    Will you state your full name
(23) for the record, please, and spell your last?
(24)     A    Okay. It's James Leroy Ferguson, F-e-r-g-u-s-o-n.
(25)     COURT REPORTER:    Do you have a telephone number

Page 5
(1) where you can be reached during the daytime?
(2)     A    Direct line at the office is 273-4133.
(3)     COURT REPORTER:    And a mailing address, please?
(4)     A    4220 B Street, Anchorage, 99503.
(5)     COURT REPORTER:    Thank you. Counselors, if
(6) you'll identify yourselves for the record you may proceed.
(7)     MR. SEWRIGHT:    Mike Sewright representing the
(8) Plaintiff and Use Plaintiff North Star Terminal & Stevedore
(9) Company.
(10)    MR. SHAMBUREK:    Steve Shamburek representing
(11) Shoreside Petroleum, Inc. and Metco, Inc.
(12)    MR. KRIDER:    Tom Krider representing Nugget
(13) Construction and USF&G.
(14)    MR. VIERGUTZ:    Herb Viergutz USF&G.
(15)    MR. DAVIS:    Doug Davis representing the witness.
(16)    COURT REPORTER:    Thank you.
(17)    BY MR. SEWRIGHT:
(18)    Q    Good morning, Mr. Ferguson.
(19)    A    Good morning.
(20)    Q    I just introduced myself to you a little earlier. I'm
(21) Mike Sewright. I will begin the questioning this
(22) morning. First, sir, let me hand you your witness fee
(23) check for the deposition.
(24)    A    Okay.
(25)    Q    Thank you for coming here today. Sir, are you

Page 6
(1) presently employed?
(2)     A    Yes, I am.
(3)     Q    And who are you employed by?
(4)     A    Willis of Alaska, Inc.
(5)     Q    And how long have you been employed by that company?
(6)     A    January, 1992.
(7)     Q    Is Willis of Alaska some how affiliated with Willis of
(8) North America?
(9)     A    Yes.
(10)    Q    Please explain how or at least your understanding as to
(11) how the two companies are affiliated?
(12)    A    We are part of Willis which is the way I understand it
(13) the third largest broker in the world. We've got
(14) offices all over the world, several in the United
(15) States. And as far as Willis of Alaska versus Wil- --
(16) the big Willis it's -- it's a legal thing. I have no
(17) idea what the legal relationship is other than we're
(18) part of Willis.
(19)    Q    Does Willis of Alaska report to Willis of North
(20) America?
(21)    A    Yes.
(22)    Q    What is your position with Willis of Alaska?
(23)    A    I'm the Alaska surety manager.
(24)    Q    Please explain what that position entails?
(25)    A    Basically I have a three person department. I have two

Page 7
(1) people working for me within the Surety Department at
(2) Willis and I handle the -- me or my department handle
(3) the surety bonds written for Willis' business in the
(4) State of Alaska. Well, I shouldn't even say that
(5) really, the Anchorage office. I help out the Fairbanks
(6) office. They do a lot of their own surety in the
(7) Fairbanks office.
(8)     Q    Is there a surety manager in the Fairbanks office?
(9)     A    No.
(10)    Q    Do you also oversee the surety operations of Willis of
(11) Alaska in the Fairbanks office?
(12)    A    Not really. My title says Alaska surety manager, but I
(13) really don't oversee anything in the Fairbanks office.
(14) Again, they will call me for advice and consultation
(15) maybe.
(16)    Q    Are you manager over the Fairbanks operations?
(17)    A    No.
(18)    Q    When I say Fairbanks operations, I mean, the surety
(19) operations, sorry.
(20)    A    No.
(21)    Q    Okay.
(22)    A    No.
(23)    Q    When you refer to surety bonds what do you mean?
(24)    A    Primarily contractor payment performance bonds, but we
(25) also deal with notary bonds, court bonds, license and

Exhibit 2
Page 4 of 7

## Page 116

(1) memory. I know it's been a while,.....
(2)  A   Yeah.
(3)  Q   .....do you understand?
(4)  A   Yeah, and it.....
(5)  Q   Directing your attention to the facsimile cover sheet
(6) to James Ferguson, USF&G 001639, that's the.....
(7)  A   Okay.
(8)  Q   .....Bates number at the bottom?
(9)  A   Yup.
(10) MR. DAVIS:   I'm sorry, 539 or – what was the
(11) number?
(12) A   1639.
(13) MR. SEWRIGHT:   1639.
(14) MR. DAVIS:   1639, okay.
(15) Q   (By Mr. Sewright) Do you know what was faxed to you
(16) with this facsimile cover sheet?
(17) A   No, I don't.
(18) Q   Was the document immediately following that, USF&G
(19) 001640, those are the Bates numbers, through 001646 the
(20) document?
(21) A   I have no idea.
(22) Q   And I'm asking to see.....
(23) A   Yeah, but I have no idea.
(24) Q   .....if you – if you recall?
(25) A   No, I don't.

## Page 117

(1) Q   Do you recall getting any faxes or correspondence from
(2) Jane Poling?
(3) A   Not really, no, I don't. The number of accounts I
(4) handle and the stuff I go through unless I figure
(5) there's a real problem I'm probably not going to pay a
(6) whole lot of attention to it. I'm just going to pass
(7) it through.
(8) Q   Well, if it was sent to you by Jane Poling – if
(9) something were – let's ask this, if something were
(10) sent to you by Jane Poling who would you pass it
(11) through to? She's already with USF&G. She's an
(12) attorney with USF&G. Would you pass it through to your
(13) client Nugget Construction?
(14) A   It would depend on what it was, I can't even answer
(15) that without knowing what it was.
(16) Q   Sir, in looking through the insurance policies which
(17) Mr. Davis has probably all collected on the floor over
(18) there behind him, if we could have – oh, actually, Mr.
(19) Shamburek has them over here, would you please find the
(20) folders numbered 14 and 15 and we'll help you in any
(21) way we can.
(22) A   There's 14 and 15.
(23) MR. SEWRIGHT:   Actually I may have the wrong
(24) ones, hold a second. I apologize, off the record.
(25) (Off record - 3:04 p.m.)

## Page 118

(1) (On record - 3:16 p.m.)
(2) Q   (By Mr. Sewright) Sir, I did find the two policies I
(3) wanted to ask you about.
(4) A   Okay.
(5) Q   Directing your attention to the one within folder
(6) number 9.
(7) A   All right.
(8) Q   Is that a commercial general liability policy for
(9) Nugget Construction?
(10) A   Yes, it is.
(11) Q   And is that the one with the policy number
04PK600888?
(12) A   No, there's no 6 in there. There is policy number
(13) 04PKG00888.
(14) Q   Thank you. We're talking about the right policy. I
(15) just – as I've warned Mr. Davis.....
(16) MR. DAVIS:   It's just your (simultaneous
(17) speech).....
(18) Q   .....I've read my handwriting wrong.
(19) MR. DAVIS:   It's just your (indiscernible)
(20) kicking in.
(21) MR. SEWRIGHT:   We will take that in jest.
(22) A   Okay.
(23) Q   (By Mr. Sewright) In any event, do you see where on
(24) this cover sheet there's a note retroactive date
(25) applicable to CPL and PL 06/12/95?

## Page 119

(1) A   Yes, I see that.
(2) Q   Can you tell me what that means?
(3) A   No, I really honestly can't. I mean, I could suppose
(4) what it means, but I can't really tell you 'cause I'm
(5) not.....
(6) Q   Can you give me your understanding of what it is?
(7) A   CPL would probably be contractor's pollution liability
(8) and the PL would be professional liability.
(9) Q   That's the professional services liability policy
(10) coverage?
(11) A   Yes, yes.
(12) Q   And what would retroactive date back to 1995 mean?
(13) A   It is probably referring to those being claims made
(14) type policies and if the occurrence occurred prior to
(15) those dates the – the current claims made policy –
(16) there might be a coverage problem and, again, I'm not a
(17) coverage expert and I would just turn it into the
(18) company and let them make the determination, but on a
(19) claims made type format a lot of times they will put a
(20) retro date on there which they say we won't go back any
(21) further than this.
(22) Q   Okay. So as to occurrences after that June 12, 1995
(23) date the claims made policy probably would apply?
(24) MR. DAVIS:   Object to the form of the question.
(25) I think the witness –.....

Exhibit 2
Page 5 of 7

Page 120

(1) Q Is that correct?
(2) MR. DAVIS: .....the witness has testified that
(3) he is not an expert in what is covered and not covered under
(4) this type of insurance.
(5) Q (By Mr. Sewright) Please give me your understanding
(6) and I understand the preface?
(7) A Pretty much what I said before, that would be my
(8) indication, that's why I would give it to a claims
(9) expert and let them look at it.
(10) Q Okay. But your indication would be that occurrences
(11) after that date, June 12, 1995, are at least within the
(12) ballpark of coverage?
(13) A Yeah, but I don't know what this EBL 123102 right
(14) behind it means either.
(15) Q Well, doesn't the EBL: 12/31/02 refer to some other
(16) policy or.....
(17) A Don't know.
(18) Q Okay. And that is at – and the language we've been
(19) looking at is at the first page of the documents
(20) contained within that folder 9 for that policy,
(21) correct?
(22) A That's correct.
(23) Q Now, look to folder 8?
(24) A Okay.
(25) Q Is that the excess policy for the same period of time?

Page 121

(1) A Yes, it is.
(2) Q Do you know whether the retroactive language on the
(3) underlying commercial liability policy would apply to
(4) the excess policy?
(5) A No, I do not.
(6) Q Okay. You don't know whether the excess policy would
(7) be retroactive at all?
(8) A No, I do not.
(9) Q Do you have any understanding in that area from your
(10) years in the insurance business, understanding that you
(11) have a particular role in that business as you've
(12) described, a limited role.
(13) MR. DAVIS: An understanding of what, in.....
(14) Q (By Mr. Sewright) Do you have a.....
(15) MR. DAVIS: .....general or this policy or what
(16) are you talking about? Object.....
(17) Q Do you have an.....
(18) MR. DAVIS: .....to the form of the question.
(19) Q .....understanding as to whether the retroactive date
(20) in the general policy would apply to the excess policy?
(21) A You would literally have to read the entire policy and
(22) all exclusions to find that out. I really – I really
(23) don't know.
(24) Q I appreciate that, sir. Tell me this, and maybe this
(25) does fit within your agent/broker experience as you've

Page 122

(1) testified to, does an insured, such as Nugget
(2) Construction, pay an extra amount of money to obtain
(3) retroactive coverage in a claims made policy?
(4) A Yes, it is normally a – when they do the underwriting
(5) of a policy they look at all the potential exposure and
(6) that would include how far back we might have to go.
(7) Q And as.....
(8) A And by the way, they may determine they aren't going to
(9) go back at all.
(10) Q As an agent/broker for Nugget Construction would you
(11) recommend to Nugget Construction that it obtain
(12) retroactive coverage like that? Or let me ask this,
(13) did you?
(14) A I don't recall. We.....
(15) Q Is it a good idea?
(16) A Yes, it's a good idea.
(17) Q If you're willing to pay for it?
(18) A Up to a certain point. There again, you're in a vague
(19) question because if – if you buy insurance – I had
(20) somebody tell me once years ago and it's the truth, if
(21) you buy insurance to – to cover anything that can
(22) happen it's going to take two times what you made in a
(23) year to buy it. You have to make a judgment call on
(24) what you need and what you don't.
(25) Q Are you aware of the 10 year statute of repose on

Page 123

(1) construction projects and consulting in Alaska?
(2) A No.
(3) Q I asked because I was going to ask you next if that
(4) entered into your thinking at all. I'll move on.
(5) Actually tell me this, would Nugget Construction have
(6) obtained that roughly 10 year retroactive coverage
(7) without your recommending it?
(8) MR. KRIDER: Objection, calls for speculation.
(9) Q (By Mr. Sewright) Yeah, and I'm asking if you recall,
(10) you know, any conversation you had with them or
(11) anything like that?
(12) A I don't recall any conversation, no.
(13) Q Okay. Sir, remember that letter we went over a while
(14) ago wherein USF&G basically tendered the defense of
(15) this lawsuit to Nugget Construction soon after being
(16) sued?
(17) A Yes.
(18) Q Did you notice that in that tender and acceptance of
(19) defense USF&G retained a right to revoke the tender?
(20) A I don't recall that.
(21) Q Assuming that the letter did contain that right to
(22) revoke and the letter will speak for itself,.....
(23) A Um-hum. (Affirmative)
(24) Q .....have you heard of USF&G ever revoking that tender
(25) of defense in this case?

Exhibit 2
Page 6 of 7

Page 120 to Page 123

Page 136

(1) depositions coming. We knew there were attorneys
(2) involved. Whenever there's attorneys involved I advise
(3) corporate that there's attorneys involved and my
(4) corporate in-house attorney said do not give anybody
(5) inf- – any information. Don't let any information
(6) leave this office without subpoena.
(7)  Q   I have no further questions.
(8)  MR. SEWRIGHT:   I have a – do you have any,
(9) Doug?
(10) MR. DAVIS:   No.
(11) MR. SEWRIGHT:   I have a follow-up question.
(12) REDIRECT EXAMINATION
(13) BY MR. SEWRIGHT:
(14) Q   Again, wasn't it somebody at Nugget or Nugget's
(15) attorney who represented to you that you were going to
(16) be deposed?
(17) A   Yes.
(18) Q   That's the – they were the first people who did that?
(19) A   That's my recollection, yes.
(20) Q   Did they request any insurance policies or any copies
(21) of insurance policies from you prior to informing you
(22) of that, that you were going to be deposed?
(23) A   Not that I recall, no.
(24) Q   Are you aware that it was Nugget's attorney's idea that
(25) you be subpoenaed and deposed and it's in writing?

Page 137

(1) A   No.
(2) Q   He didn't tell you that, huh?
(3) A   No.
(4) Q   Thank you, sir, no further questions.
(5) (END OF PROCEEDINGS)
(6) * * * * *

Page 138

(1) SIGNATURE
(2)
(3) UNITED STATES OF AMERICA)
(4) )ss.
(5) STATE OF ALASKA )
(6)
(7) I, JAMES LEROY FERGUSON, having read the
(8) foregoing deposition testimony, do hereby certify it to be true
(9) and accurate, subject to corrections, if any, as indicated on
(10) the attached errata sheet.
(11)
(12) JAMES LEROY FERGUSON
(13)   DATE:

Page 139

(1) CERTIFICATE
(2) I, Suzan Kay Olson, Notary Public in and for the State
(3) of Alaska, and Reporter for R & R Court Reporters, Inc., do
(4) hereby certify:
(5) THAT the annexed and foregoing Deposition of JAMES
(6) LEROY FERGUSON, was taken before William Rise on the 8th day of
(7) March, 2006, commencing at the hour of 9:00 o'clock a.m. at the
(8) offices of Keesal, Young & Logan, Attorneys at Law, 1029 West
(9) Third Avenue, Suite 650, Anchorage, Alaska, pursuant to Notice
(10) to take said Deposition of said Witness on behalf of the
(11) Plaintiff;
(12) THAT this Deposition, has heretofore annexed, is a true
(13) and correct transcription of the testimony of said Witness,
(14) taken by William Rice and thereafter transcribed by me to the
(15) best of my ability;
(16) THAT the original of the Deposition will be loaded in a
(17) sealed envelope, and lodged with the attorney requesting
(18) transcription of same, as required by Civil Rule 30(f)(1)
(19) amended, that being: MR. MICHAEL SEWRIGHT, Attorney at Law,
(20) Burr, Pease & Kurtz, Attorneys at Law, 810 N Street, Anchorage,
(21) Alaska.
(22) IN WITNESS WHEREOF, I have hereunto set my hand and
(23) affixed my seal this 24th day of April, 2006.
(24) Notary Public in and for Alaska
(25) My Commission expires: 08/01/07

Exhibit 2
Page 7 of 7