Court of Appeals Nos. 9: 9-35371 (Lead Number)
03-35168, 03-35175-30, 35-12

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

NUGGET CONSTRUCTION, INC.,
UNITED STATES FIDELITY &
GUARANTY COMPANY,

      Defendants/Appellants/
        Cross-Appellees,

UNITED STATES OF AMERICA *ex rel.*
NORTH STAR TERMINAL &
STEVEDORE COMPANY d/b/a
NORTHERN STEVEDORING &
HANDLING, *et al.*,

      Plaintiffs/Appellees/
        Cross-Appellants.

## OPENING BRIEF FOR APPELLEE/CROSS-APPELLANT
## NORTH STAR/NORTH STAR *EX REL.*

On Appeal from a Judgment filed September 4, 2002 as amended and
redistributed through March 4, 2003 and related orders, in the United
States District Court for the District of Alaska, The Honorable H. Russel
Holland Presiding, Case No. A98-009 Civil (HRH)

Michael A. Severin
BURR PEASE & KERTZ
Attorneys for North Star, North Star *ex rel.*
811 N Street
Anchorage, AK 99501

EXHIBIT 1
Page 1 of 83

13

## I. CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, it is hereby declared that North Star Terminal & Stevedore Company ("North Star") has no parent corporation and that no publicly held corporation owns 10% or more of North Star's stock.

EXHIBIT 1
Page 2 of 83

i

#60571

## II. TABLE OF CONTENTS

| Section | Subject | Page No. |
|---|---|---|

I.    CORPORATE DISCLOSURE STATEMENT ............................................... i

II.   TABLE OF CONTENTS .................................................................. ii

III.  TABLE OF AUTHORITIES ............................................................. iv

IV.   JURISDICTIONAL STATEMENT .................................................. 1

V.    STATEMENT OF ISSUES PRESENTED ...................................... 2

    A.   BY NUGGET AND USF&G'S APPEAL .......................... 2

    B.   BY NORTH STAR'S CROSS-APPEAL ............................ 3

VI.   STATEMENT OF THE CASE ........................................................ 3

    A.   NATURE OF THE CASE ................................................... 3

    B.   COURSE OF PROCEEDINGS ...................................... 13

    C.   DISPOSITION BELOW .................................................. 18

VII.  STATEMENT OF FACTS ............................................................. 18

VIII. SUMMARY OF ARGUMENT ....................................................... 23

IX.   ARGUMENT .................................................................................. 25

    A.   STANDARD OF REVIEW ............................................. 25
        1.   Upon the Issue Raised by Nugget and USF&G's Appeal........... 25
        2.   Upon the Issues Raised by North Star's Cross-Appeal................ 27

    B.   THE DISTRICT COURT CORRECTLY DETERMINED THAT NUGGET AND USF&G ARE DIRECTLY LIABLE TO NORTH STAR.............................................................. 28
        1.   The District Court Correctly Applied Federal Law to Its Construction and Application of the Miller Act........................... 28
        2.   An Express, Implied-In-Fact, and/or Quasi-Contract Also Existed According to State Law and General Contract Principles Applicable to the Miller Act......................................... 31

EXHIBIT 1
Page 3 of 83

ii

#60571

15

3.    The District Court Correctly Determined the *Material Facts Not Genuinely* In Dispute and Correctly Applied the Federal "Telescoping" Cause of Action to Those Undisputed Material Facts to Find Nugget and USF&G Liable................................................................. 36

    a.    The District Court Correctly Decided the Material Facts Not Genuinely in Dispute............................................. 36

    b.    The District Court Properly Applied the Telescoping Cause of Action to This Case ................................................ 40

4.    Any Principle Against Coexisting Express and Implied Contracts Does Not Apply........................................................... 45

C.  THE DISTRICT COURT SHOULD HAVE AWARDED THE ATTORNEY FEES, LATE PAYMENT CHARGES AND PREJUDGMENT AND POSTJUDGMENT INTEREST REQUESTED BY NORTH STAR ...................................................... 47

1.    North Star Should Have Been Awarded Its Full Attorney Fees............................................................................... 47

2.    North Star Should Have Been Awarded Its Late Payment Charges Upon the Principal Sum Overdue ................... 51

3.    The District Court Incorrectly Applied the Alaska Interest Statute .............................................................................. 53

D.  THE ALTERNATIVE BASES FOR LIABILITY THE DISTRICT COURT DID NOT APPLY ALSO ENTITLED NORTH STAR TO RECOVER ITS ATTORNEY FEES, LATE PAYMENT CHARGES AND INTEREST AS REQUESTED ................................................... 56

X.    CONCLUSION ........................................................................................... 59

XI.    CERTIFICATE OF COMPLIANCE ........................................................... 61

XII.    STATEMENT OF RELATED CASES ........................................................ 62

EXHIBIT 1
Page 4 of 83

iii

#60571

16

## III. TABLE OF AUTHORITIES

**Authorities**                                           **Page No.**

## Cases

*A. Gay Jenson Farms Company v. Cargill, Inc.*, 309 N.W. 2d 285
(Minn. 1981)............................................................................... 32, 33, 56

*American Surety Co. of New York v. United States ex rel. B & B
Drilling Co.*, 368 F.2d 475 (9th Cir. 1966).................................... 46, 50

*Bushman Construction Company v. Connor*, 307 F.2d 888 (10th Cir. 1962)........ 43

*Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026 (9th Cir. 2001).... 25

*Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) ................. 26

*Central Steel Erection Co. v. Will*, 304 F.2d 548 (9th Cir. 1962) ......................... 36

*Colorado Laborers Health & Welfare Trust Fund v. Expert Environmental
Controls, Inc.*, 785 F. Supp 895 (D. Colo. 1992)............................................. 50, 52

*Continental Casualty Co. v. Schaefer*, 173 F.2d 5 (9th Cir. 1949)................... 30, 36

*Continental Casualty Company v. United States ex rel. Conroe
Creosoting Company*, 308 F.2d 846 (5th Cir. 1962) ......................................... 42

*Executive Software North America, Inc. v. U. S. Dist. Court*,
24 F.3d 1545 (9th Cir. 1994)....................................................................... 28, 57

*F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*,
417 U.S. 116, 94 S. Ct. 2157, 2164 (1974)........................................................ 30

*Fair Housing Counsel of Riverside County, Inc. v. Riverside Two*,
249 F.3d 1132 (9th Cir. 2001)............................................................................ 25

*Fairbanks Borough v. Kandik*, 795 P.2d 793, 799 (Alaska 1990).......................... 46

*Far Out Productions, Inc. v. Oskar*, 247 F.3d 986 (9th Cir. 2001) ............ 26, 27, 37

*Fidelity & Deposit Co. of Maryland v. Harris*, 360 F.2d 402
(9th Cir. 1966)............................................... 28, 29, 30, 35, 36, 37, 40, 45

*Gamble v. Northstore Partnership*, 28 P.3d 286 (Alaska 2001)...................... 48, 51

*Hymel v. UNC, Inc.*, 994 F.2d 260 (5th Cir. 1993)................................................. 53

*In re Connaught Properties, Inc.*, 176 B.R. 678 (Bankr. Ct. D. Conn. 1995)........ 53

*Interform Company v. Mitchell*, 575 F.2d 1270 (9th Cir. 1978)........... 35, 36, 46, 49

EXHIBIT 1
Page 5 of 83

#60571

17

*J. W. Bateson Company v. United States ex rel. Board of Trustees,*
  434 U.S. 586, 98 S. Ct. 873 (1978) ................................................................... 36

*Jensen v. Alaska Valuation Service, Inc.*, 688 P.2d 161 (Alaska 1984) ................. 33

*Lee v. Burlington Northern Santa Fe Railway,* 245 F.3d 1102
  (9th Cir. 2001) ....................................................................................... 33, 34, 57

*Margolis v. Ryan,* 140 F.3d 850 (9th Cir. 1990) ....................................... 25, 26

*Matthews v. Kincaid,* 746 P.2d 470, 472 (Alaska 1987) ........................................ 40

*McDonough v. Lee,* 420 P.2d 459 (Alaska 1966 ..................................................... 59

*Mitford v. de LaSalla,* 666 P.2d 1000 (Alaska 1983) ............................................. 46

*Newbery Corporation v. Firemen's Fund Insurance Company,*
  95 F.3d 1392 (9th Cir. 1996) ............................................................................. 46

*R. W. Fine v. Silverblatt,* 233 F. Supp. 672 (W.D. Mo. 1964) ............................... 42

*Riley v. Northern Commercial Co., Machinery Div.,* 648 P.2d 961
  (Alaska 1982) ........................................................................................ 50, 52, 58

*Sherman v. British Leyland Motors, Ltd,* 601 F.2d 429 (9th Cir. 1979) ................ 27

*Stanisfer v. Chrysler Motors Corporation,* 487 F.2d 59 (9th Cir. 1973) ............... 44

*Traveler's Indemnity Co. v. United States ex rel. Western Steel Co.,*
  362 F.2d 896 (9th Cir. 1966) ............................................................................. 50

*United States ex rel. A. V. DeBlasio Const., Inc. v. Mountain States
  Const. Co.,* 588 F.2d 259 (9th Cir. 1978) ......................................................... 29

*United States ex rel. Cal's A/C & Electric v. Sustamos Const. Corp. &
  Capitol Indemnity Corp.,* 34 F. Supp. 2d 1042 (W. Dist. La. 1999) ................. 39

*United States ex rel. Chicago Bldg. Restoration, Inc. v. Tazzioli Constr.
  Co.,* 796 F. Supp. 1130 (N.D. Ill. 1992) ...................................................... 28, 57

*United States ex rel. Leno v. Summit Constr. Co.,* 892 F.2d 788
  (9th Cir. 1989) ........................................................... 27, 28, 50, 57, 58

*United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine
  Ins. Co.,* 86 F.3d 332 (4th Cir. 1996) ...................................................... 27, 50, 52

*United States ex rel. Reed v. Callahan,* 884 F.2d 1180 (9th Cir. 1989) ..... 27, 50, 51

*United States ex rel. Walton Technology, Inc. v. Weststar Engineering,
  Inc.,* 290 F.3d 1199 (9th Cir. 2000) ................................................................... 36

EXHIBIT 1
Page 6 of 83
#60571

## Statutes

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. § 1367 (enacted 1990) ........................................ 1, 35, 57

28 U.S.C. § 1961 ............................................................................. 53

31 U.S.C. § 3903(b) ........................................................................ 39

31 U.S.C. § 3905(b)-(h) (as amended 1988) ................................. 39

40 U.S.C. § 270a(a)(2) ............................................................... 4, 30

40 U.S.C. § 270b(a) ........................................................................ 30

40 U.S.C. § 270b(b) .......................................................................... 1

40 U.S.C. §§ 270a-270d .................................................................... 1

AS 09.30.070(a) .............................................................................. 53

## Rules

Federal Rule of Appellate Procedure 4(a)(1)(A) and (B) ............................. 2

Federal Rule of Appellate Procedure 4(a)(3) ............................................. 2

Federal Rule of Appellate Procedure 4(a)(1), (3) and (4) ........................... 2

Federal Rule of Appellate Procedure 26.1 .................................................. i

Alaska Rule of Civil Procedure 82 ............................................................ 58

## Other Authorities

10 A Wright, Miller & Kane, Federal Practice & Procedure, § 2712 (1998 ed.)... 26

10 A Wright, Miller & Kane, Federal Practice & Procedure, § 2727 (1998 ed.)... 26

25 C.J.S. Damages § 50(c) (1966) ........................................................ 48

Restatement (Second) of Agency § 14 O ................................................. 32

Restatement (Second) of Agency § 208 ................................................... 32

Webster's New World Dictionary (Second College ed. 1974) ..................... 44

EXHIBIT 1
Page 7 of 83
#60571

19

## **STATUTES**

### 28 U.S.C. § 1291. Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

### 28 U.S.C. § 1367. Supplemental jurisdiction

(a)   Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b)   In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c)   The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

>   (1) the claim raises a novel or complex issue of State law,

>   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

>   (3) the district court has dismissed all claims over which it has original jurisdiction, or

>   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(d)   The period of limitations for any claim asserted under subsection (a), and

#60571
EXHIBIT 1
Page 8 of 83

for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(e)   As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

## 28 U.S.C. § 1961.  Interest

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.  Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State.  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. [FN1] the date of the judgment.  The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

(b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.

(c)     (1) This section shall not apply in any judgment of any court with respect to any internal revenue tax case. Interest shall be allowed in such cases at the underpayment rate or overpayment rate (whichever is appropriate) established under section 6621 of the Internal Revenue Code of 1986.

(2) Except as otherwise provided in paragraph (1) of this subsection, interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal circuit, [FN2] at the rate provided in subsection (a) and as provided in subsection (b).

(3) Interest shall be allowed, computed, and paid on judgments of the United States Court of Federal Claims only as provided in paragraph (1) of this subsection or in any other provision of law.

(4) This section shall not be construed to affect the interest on any judgment of any court not specified in this section.

## 31 U.S.C. § 3903. Regulations

(b)  (1) A payment request may not be approved under subsection (a)(6)(A) of

viii

this section unless the application for such payment includes-- (A) substantiation of the amounts requested; and (B) a certification by the prime contractor, to the best of the contractor's knowledge and belief, that--

      (i) the amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

      (ii) payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by the certification, in accordance with their subcontract agreements and the requirements of this chapter; and

      (iii) the application does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of their subcontract.

    (2) The agency shall return any such payment request which is defective to the contractor within 7 days after receipt, with a statement identifying the defect.

## 31 U.S.C. § 3905. Payment provisions relating to construction contracts

    (b) Each construction contract awarded by an agency shall include a clause that requires the prime contractor to include in each subcontract for property or services entered into by the prime contractor and a subcontractor (including a material supplier) for the purpose of performing such construction contract—

      (1) a payment clause which obligates the prime contractor to pay the subcontractor for satisfactory performance under its subcontract within 7 days  out of such amounts as are paid to the prime contractor by the agency under such contract; and

      (2) an interest penalty clause which obligates the prime contractor to pay to the subcontractor an interest penalty on amounts due in the case of each payment not made in accordance with the payment clause included in the subcontract pursuant to paragraph (1) of this subsection--

        (A) for the period beginning on the day after the required payment date and ending on the date on which payment of the amount due is made; and

        (B) computed at the rate specified by section 3902(a) of this title.

    (c) The construction contract awarded by the agency shall further require  the prime contractor to include in each of its subcontracts (for the purpose of performance of such construction contract) a provision requiring the subcontractor to include a payment clause and an interest penalty clause conforming to the standards of subsection (b) of this section in each of its subcontracts and to require each of its subcontractors to include such clauses in their subcontracts with each

22

lower-tier subcontractor or supplier.

(d) The clauses required by subsections (b) and (c) of this section shall not be construed to impair the right of a prime contractor or a subcontractor at any tier to negotiate, and to include in their subcontract, provisions which—

(1) permit the prime contractor or a subcontractor to retain (without cause) a specified percentage of each progress payment otherwise due to a subcontractor for satisfactory performance under the subcontract, without incurring any obligation to pay a late payment interest penalty, in accordance with terms and conditions agreed to by the parties to the subcontract, giving such recognition as the parties deem appropriate to the ability of a subcontractor to furnish a performance bond and a payment bond;

(2) permit the contractor or subcontractor to make a determination that part or all of the subcontractor's request for payment may be withheld in accordance with the subcontract agreement; and

(3) permit such withholding without incurring any obligation to pay a late payment penalty if--

(A) a notice conforming to the standards of subsection (g) of this section has been previously furnished to the subcontractor; and

(B) a copy of any notice issued by a prime contractor pursuant to subparagraph (A) of this paragraph has been furnished to the Government.

(e) If a prime contractor, after making application to an agency for payment under a contract but before making a payment to a subcontractor for the subcontractor's performance covered by such application, discovers that all or a portion of the payment otherwise due such subcontractor is subject to withholding from the subcontractor in accordance with the subcontract agreement, then the prime contractor shall--

(1) furnish to the subcontractor a notice conforming to the standards of subsection (g) of this section as soon as practicable upon ascertaining the cause giving rise to a withholding, but prior to the due date for subcontractor payment;

(2) furnish to the Government, as soon as practicable, a copy of the notice furnished to the subcontractor pursuant to paragraph (1) of this subsection;

(3) reduce the subcontractor's progress payment by an amount not to exceed the amount specified in the notice of withholding furnished under paragraph (1) of this subsection;

(4) pay the subcontractor as soon as practicable after the correction of the identified subcontract performance deficiency, and—

(A) make such payment within-- (i) 7 days after correction of the identified subcontract performance deficiency (unless the funds therefor must be recovered from the Government because of a reduction under paragraph (5)(A)); or (ii) 7 days after the contractor recovers such funds

x

from the Government; or

      (B) incur an obligation to pay a late payment interest penalty computed at the rate specified by section 3902(a) of this title;

(5) notify the Government, upon--

      (A) reduction of the amount of any subsequent certified application for payment; or

      (B) payment to the subcontractor of any withheld amounts of a progress payment, specifying-- (i) the amounts of the progress payments withheld under paragraph (1) of this subsection; and (ii) the dates that such withholding began and ended; and

(6) be obligated to pay to the Government an amount equal to interest on the withheld payments (computed in the manner provided in section 3903(c) of this title), from the 8th day after receipt of the withheld amounts from the Government until—

      (A) the day the identified subcontractor performance deficiency is corrected; or

      (B) the date that any subsequent payment is reduced under paragraph (5)(A).

(f) (1) If a prime contractor, after making payment to a first-tier subcontractor, receives from a supplier or subcontractor of the first-tier subcontractor (hereafter referred to as a "second-tier subcontractor") a written notice in accordance with section 3133(b) of title 40, asserting a deficiency in such first-tier subcontractor's performance under the contract for which the prime contractor may be ultimately liable, and the prime contractor determines that all or a portion of future payments otherwise due such first-tier subcontractor is subject to withholding in accordance with the subcontract agreement, then the prime contractor may, without incurring an obligation to pay an interest penalty under subsection (e)(6) of this section--

      (A) furnish to the first-tier subcontractor a notice conforming to the standards of subsection (g) of this section as soon as practicable upon making such determination; and

      (B) withhold from the first-tier subcontractor's next available progress payment or payments an amount not to exceed the amount specified in the notice of withholding furnished under subparagraph (A) of this paragraph.

(2) As soon as practicable, but not later than 7 days after receipt of satisfactory written notification that the identified subcontract performance deficiency has been corrected, the prime contractor shall pay the amount withheld under paragraph (1)(B) of this subsection to such first-tier subcontractor, or shall incur an obligation to pay a late payment interest penalty to such first-tier subcontractor computed at the rate specified by section 3902(a) of this title.

(g) A written notice of any withholding shall be issued to a subcontractor (with

xi

#60571

EXHIBIT 1
Page 12 of 83

a copy to the Government of any such notice issued by a prime contractor), specifying--

(1) the amount to be withheld;

(2) the specific causes for the withholding under the terms of the subcontract; and

(3) the remedial actions to be taken by the subcontractor in order to receive payment of the amounts withheld.

(h) A prime contractor may not request payment from the agency of any amount withheld or retained in accordance with subsection (d) of this section until such time as the prime contractor has determined and certified to the agency that the subcontractor is entitled to the payment of such amount.

**40 U.S.C. 270a    Bonds of contractors of public buildings or works**

**(a)  Type of bonds required**

Before any contract for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as "contractor":

(1)    A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

(2)    A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. The amount of the payment bond shall be equal to the total amount payable by the terms of the contract unless the contracting officer awarding the contract makes a written determination supported by specific findings that a payment bond in that amount is impractical, in which case the amount of the payment bond shall be set by the contracting officer. In no case shall the amount of the payment bond be less than the amount of the performance bond.

**(b)  Waiver of bonds for contracts performed in foreign countries**

The contracting officer in respect of any contract is authorized to waive the

25

requirement of a performance bond and payment bond for so much of the work under such contract as is to be performed in a foreign country if he finds that it is impracticable for the contractor to furnish such bonds.

**(c)    Authority to require additional bonds**

Nothing in this section shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to those, or in cases other than the cases specified in subsection (a) of this section.

**(d)    Coverage for taxes in performance bond**

Every performance bond required under this section shall specifically provide coverage for taxes imposed by the United States which are collected, deducted, or withheld from wages paid by the contractor in carrying out the contract with respect to which such bond is furnished. However, the United States shall give the surety or sureties on such bond written notice, with respect to any such unpaid taxes attributable to any period, within ninety days after the date when such contractor files a return for such period, except that no such notice shall be given more than one hundred and eighty days from the date when a return for the period was required to be filed under Title 26. No suit on such bond for such taxes shall be commenced by the United States unless notice is given as provided in the preceding sentence, and no such suit shall be commenced after the expiration of one year after the day on which such notice is given.

**40 U.S.C. 270b.    Rights of persons furnishing labor or material**

**(a)**    Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a to 270d-1 of this title and who has not been paid in full therfor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed

#60571
EXHIBIT 1
Page 14 of 83

the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by any means which provides written, third-party verification of delivery.[1] to the contractor at an place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.

   **(b)**  Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him. The United States shall not be liable for the payment of any costs or expenses of any such suit.

   **(c)**   Any waiver of the right to sue on the payment bond required by sections 270a to 270d of this title shall be void unless it is in writing, signed by the person whose right is waived, and executed after such person has first furnished labor or material for use in the performance of the contract.

[1] So in original. The period probably should not appear.

## 40 U.S.C. 270c.  Right of person furnishing labor or material to copy of bond

   The department secretary or agency head of the contracting agency is authorized and directed to furnish, to any person making application therefor who submits an affidavit that he has supplied labor or materials for such work and payment therefor has not been made or that he is being sued on any such bond, a certified copy of such bond and the contract for which it was given, which copy shall be prima facie evidence of the contents, execution, and delivery of the original. Applicants shall pay for such certified copies such fees as the department secretary or agency head of the contracting agency fixes to cover the cost of preparation thereof.

## 40 U.S.C. 270d.  "Person defined

   The term "person" and the masculine pronouns as used in sections 27a to 270d-1 of this title shall include all persons whether individuals, associations,

copartnerships, or corporations.

**Alaska Statues § 09.30.070, before August 7, 1997:**

**Sec. 09.30.070.  Interest on judgments; prejudgment interest.**  (a) The rate of interest on judgments and decrees for the payment of money is 10.5 percent a year, except that a judgment or decree founded on a contract in writing, providing for the payment of interest until paid at a specified rate not exceeding the legal rate of interest for that type of contract, bears interest at the rate specified in the contract if the interest rate is set out in the judgment or decree.

(b) Except when the court finds that the parties have agreed otherwise, prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier. The written notification must be of a nature that would lead a prudent person to believe that a claim will be made against the person receiving the notification, for personal injury, death, or damage to property.  (§ 4.07 ch 101 SLA 1962; am § 1 ch 69 SLA 1969; am § 1 ch 107 SLA 1980; am § 3 ch 139 SLA 1986)

**Alaska Statues § 09.30.070, starting August 7, 1997:**

**Sec. 09.30.070.  Interest on judgments; prejudgment interest.**

(a) Notwithstanding AS 45.45.010, the rate of interest on judgments and decrees for the payment of money, including prejudgment interest, is three percentage points above the 12th Federal Reserve District discount rate in effect on January 2 of the year in which the judgment or decree is entered, except that a judgment or decree founded on a contract in writing, providing for the payment of interest until paid at a specified rate not exceeding the legal rate of interest for that type of contract, bears interest at the rate specified in the contract if the interest rate is set out in the judgment or decree.

(b) Except when the court finds that the parties have agreed otherwise and except as provided by AS 45.05.111 (d), prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier.  The written notification must be of a nature that would lead a prudent person to believe that a claim will be made against the person receiving the notification, for personal injury, death, or damage to property.

(c) Prejudgment interest may not be awarded for future economic damages,

#60571

EXHIBIT 1
Page 16 of 83

future noneconomic damages, or punitive damages. (§ 4.07 ch 101 SLA 1962; am § 1 ch 69 SLA 1969; am § 1 ch 107 SLA 1980; am § 3 ch 139 SLA 1986; am §§18, 19 ch 26 SLA 1997; am § 1 ch 75 SLA 1999)

## RULES

### Federal Rule of Appellate Procedure 4(a)(1)-(a)(4)
### APPEAL AS OF RIGHT - WHEN TAKEN

(a)  **Appeal in a Civil Case.**

    (1)  **Time for Filing a Notice of Appeal.**

        (A)  In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered.

        (B)  When the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered.

        (C)  An appeal from an order granting or denying an application for a writ of error coram nobis is an appeal in a civil case for purposes of Rule 4(a).

    (2)  **Filing Before Entry of Judgment.**  A notice of appeal filed after the court announces a decision or order – but before the entry of the judgment or order – is treated as filed on the date of and after the entry.

    (3)  **Multiple Appeals.**  If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

    (4)  **Effect of a Motion on a Notice of Appeal.**

        (A)  If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

            (i)  for judgment under Rule 50(b);

#60571
EXHIBIT 1
Page 17 of 83

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 10 days (computed using Federal Rule of Civil Procedure 6(a)) after the judgment is entered.

(B) (i) If a party files a notice of appeal after the court announces or enters a judgment – but before it disposes of any motion listed in Rule 4(a)(4)(A) - the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment altered or amended upon such a motion, must file a notice of appeal, or an amended notice of appeal - in compliance with Rule 3(c) - within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(iii) No additional fee is required to file an amended notice.

## FRAP 26.1
## CORPORATE DISCLOSURE STATEMENT

(a) <u>Who Must File</u>. Any nongovernmental corporate party to a proceeding in a court of appeals must file a statement that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation.

(b) <u>Time for Filing; Supplemental Filing</u>. A party must file the Rule 26.1(a) statement with the principal brief or upon filing a motion, response, petition, or answer in the court of appeals, whichever occurs first, unless a local rule requires earlier filing. Even if the statement has already been filed, the party's principal brief must include the statement before the table of contents. A party must supplement its statement whenever the information that must be

30

disclosed under Rule 26.1(a) changes.

(c) Number of Copies. If the Rule 26.1(a) statement is filed before the principal brief, or if a supplemental statement is filed, the party must file an original and 3 copies unless the court requires a different number by local rule or by order in a particular case.

**Alaska Rule of Civil Procedure 82. Attorney's Fees.**

(a) **Allowance to Prevailing Party**. Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.

(b) **Amount of Award.**

(1) The court shall adhere to the following schedule in fixing the award of attorney's fees to a party recovering a money judgment in a case:

Judgment and, if awarded,

|  | Contested With Trial | Contested Without Trial | Non Contested |
|---|---|---|---|
| Prejudgment Interest |  |  |  |
| First $ 25,000 | 20% | 18% | 10% |
| Next $ 75,000 | 10% | 8% | 3% |
| Next $400,000 | 10% | 6% | 2% |
| Over $500,000 | 10% | 2% | 1% |

(2) In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred, and shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred. The actual fees shall include fees for legal work customarily performed by an attorney but which was delegated to and performed by an investigator, paralegal or law clerk.

(3) The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:

31

(A) the complexity of the litigation;

(B) the length of trial;

(C) the reasonableness of the attorneys' hourly rates and the number of hours expended;

(D) the reasonableness of the number of attorneys used;

(E) the attorneys' efforts to minimize fees;

(F) the reasonableness of the claims and defenses pursued by each side;

(G) vexatious or bad faith conduct;

(H) the relationship between the amount of work performed and the significance of the matters at stake;

(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;

(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and

(K) other equitable factors deemed relevant. If the court varies an award, the court shall explain the reasons for the variation.

(4) Upon entry of judgment by default, the plaintiff may recover an award calculated under subparagraph (b)(1) or its reasonable actual fees which were necessarily incurred, whichever is less. Actual fees include fees for legal work performed by an investigator, paralegal, or law clerk, as provided in subparagraph (b)(2).

(c) **Motions for Attorney's Fees.** A motion is required for an award of attorney's fees under this rule or pursuant to contract, statute, regulation, or law. The motion must be filed within 10 days after the date shown in the clerk's certificate of distribution on the judgment as defined by Civil Rule 58.1. Failure to move for attorney's fees within 10 days, or such additional time as the court may allow, shall be construed as a waiver of the party's right to recover attorney's fees. A motion for attorney's fees in a default case must specify actual fees.

(d) **Determination of Award.** Attorney's fees upon entry of judgment by default may be determined by the clerk. In all other matters the court shall determine attorney's fees.

(e) **Equitable Apportionment Under AS 09.17.080.** In a case in which damages are apportioned among the parties under AS 09.17.080, the fees awarded to the plaintiff under (b)(1) of this rule must also be apportioned among the parties

xix

32

according to their respective percentages of fault. If the plaintiff did not assert a direct claim against a third-party defendant brought into the action under Civil Rule 14(c), then (1) the plaintiff is not entitled to recover the portion of the fee award apportioned to that party; and (2) the court shall award attorney's fees between the third-party plaintiff and the third-party defendant as follows:
(A) if no fault was apportioned to the third-party defendant, the third-party defendant is entitled to recover attorney's fees calculated under (b)(2) of this rule;
(B) if fault was apportioned to the third-party defendant, the third-party plaintiff is entitled to recover under (b)(2) of this rule 30 or 20 percent of that party's actual attorney's fees incurred in asserting

(f) **Effect of Rule.** The allowance of attorney's fees by the court in conformance with this rule shall not be construed as fixing the fees between attorney and client.

(Adopted by SCO 5 October 9, 1959; amended by SCO 497 effective January 18, 1982; by SCO 712 effective September 15, 1986; by SCO 921 effective January 15, 1989; by SCO 1006 effective January 15, 1990; by SCO 1066 effective July 15, 1991; repealed and reenacted by SCO 1118am effective July 15, 1993; amended by SCO 1195 effective July 15, 1995; by SCO 1200 effective July 15, 1995; by SCO 1241 effective July 15, 1996; and by SCO 1281 effective August 7, 1997; and by SCO 1340 effective January 15, 1998)

xx

33

#60571

EXHIBIT 1
Page 21 of 83

## IV.  JURISDICTIONAL STATEMENT

Appellee and Cross-Appellants United States of America for the use of

North Star Terminal & Stevedore Company d/b/a Northern Stevedoring &

Handling and North Star Terminal & Stevedore Company d/b/a Northern

Stevedoring & Handling on its own behalf (hereinafter "North Star") mostly accept

the statement of Appellants Nugget Construction, Inc. ("Nugget") and United

States Fidelity & Guaranty Company ("USF&G"), also hereinafter collectively

referred to as "Nugget", with respect to the bases of the district court's subject

matter jurisdiction in this matter, including its supplemental jurisdiction pursuant

to 28 U.S.C. § 1367.  North Star adds 40 U.S.C. § 270b(b) as a basis of

jurisdiction.  The same bases apply to the issues raised by North Star on cross-

appeal.  North Star's claims in the district court arise from the federal Miller Act,

40 U.S.C. §§ 270a-270d, and from related state law causes of action within the

district court's supplemental jurisdiction.

North Star accepts Nugget and USF&G's conclusion that this court has

appellate jurisdiction and their reliance on 28 U.S.C. § 1291.  In this case the

district court affirmatively concluded that it considered all claims between the

parties to be effectively and finally determined by its resolution of the parties'

Miller Act claims.  It did so in its summary judgment order entered August 30,

2002 (ER 328-53), by its immediate Judgment thereon entered September 4, 2002

1

(ER 354), in its orders denying reconsideration entered September 9 and 13, 2002

(ER 716; USDC Docket No. 314), in its orders regarding attorney fees, costs,

charges and interest entered January 22, 2003 (ER 357-69), February 18, 2003

(ER 782-83), and February 28, 2003 (ER 791), and by its revisions to its

September 4, 2002 Judgment through March 4, 2003 (ER 707).

North Star accepts Nugget and USF&G's representation that their appeal is

timely under the circumstances. North Star's cross-appeal is also timely, pursuant

to Federal Rule of Appellate Procedure 4(a)(1)(A) and (B), 4(a)(3), and 4(a)(4).

North Star timely filed its notice, amended notice, and second amended notice of

appeal on February 21, February 27, and April 3, 2003 (ER 784-88, 792-97),

following appropriate motions to amend judgment and for reconsideration

(ER 708-16, 783) and a district court-approved (ER 740-42)motion for attorney's

fees, interest, costs and charges finally concluded on March 4, 2003 (ER 707).

Those motions resulted in district court orders and amendments to and

redistribution of the Judgment extending the time for appeal pursuant to Federal

Rules of Appellate Procedure 4(a)(1), (3) and (4).

## V. STATEMENT OF ISSUES PRESENTED

### A.    BY NUGGET AND USF&G'S APPEAL

1.    <u>Issue</u>. Did the district court correctly determine that Nugget

and its surety USF&G are directly liable to North Star for North Star's services

2

35

originally arranged by Spencer Rock and rendered in relation to this Miller Act

project, due to Nugget's undisclosed control and takeover of Spencer Rock,

Nugget's contractor? <u>Answer</u>: Yes.

### B.    BY NORTH STAR'S CROSS-APPEAL

2.    <u>Issue</u>. Should the district court have awarded North Star the

attorney fees, contracted late payment charges and measures of prejudgment and

postjudgment interest North Star requested, rather than denying those fees, charges

and interest?[1] <u>Answer</u>: Yes.

3.    <u>Issue</u>. Should the district court have applied the alternative

bases for liability North Star requested under the Miller Act and under North Star's

other claims coming within the court's supplemental jurisdiction, so as to award

North Star the attorney fees, late payment charges and interest not otherwise

awarded? <u>Answer</u>: Yes.

## VI. STATEMENT OF THE CASE

### A.    NATURE OF THE CASE

As Nugget and USF&G note, they have appealed from the district

court's summary judgment order determining them liable to North Star based on

the existence of a direct relationship between Nugget and North Star. North Star

---

[1]    North Star initially included the district court's failure to award it costs
within Issues 2 and 3 of its cross-appeal (ER 787-88), but that matter was remedied
by district court referral of it to the court clerk, and the costs North Star had

3

36

has cross-appealed the district court's denial in subsequent orders of North Star's

motions for attorney fees, late payment charges and interest.[2]

This case arises from a federal project to extend a rock revetment

protecting a public highway and ocean spit in the port city of Homer, Alaska.

ER 2-6, 331. Nugget, as prime contractor, and its surety USF&G posted a

payment bond with the United States as required by the Miller Act, "for the

protection of all persons and companies supplying labor or materials, or both," in

connection with that project. ER 1, 331. *See also* 40 U.S.C. § 270a(a)(2).

The rock was the chief component of that project. The detailed

federal specifications required approximately 68,000 tons of it — specifically,

huge armor, toe and filter "stones" of several different specified shape and weight

classifications, from the lowest at "300 to 500 Pounds" to the highest at "6,200 to

6,800 Pounds" ER 2-6, 406–17, 455. It was necessary that those "stones" be

specially quarried from a source in reasonable proximity to the project site; as

Nugget's chief witness Randy Randolph testified, they were not available from a

"rock store". ER 131.

Nugget contracted with Spencer Rock Products ("Spencer") to provide

---

requested were awarded. ER 361, 778-79, 782-83, 789-91, 707.

[2]    Intervening plaintiffs Shoreside Petroleum, Inc. ("Shoreside") and Metco, Inc. ("Metco"), who are represented by separate legal counsel, also cross-appealed. They are submitting their own brief.

4

37

all of that rock, according to the precise specifications of the project. ER 7-10, 331-32. Spencer operated a quarry in the mountains several miles from the port city of Seward, Alaska, located on the other side of the peninsula from Homer. ER 81, 85. Under the terms of their January 15, 1997 contract, Spencer was required to provide "approximately 68,000 tons of suitable rock. . . at a rate of approximately 700 tons of rock per day" for about 100 days, "under a fairly rigorous schedule" commencing about March 15, 1997. ER 332, 7-8. To satisfy the terms of that contract, Spencer was required to quarry those precise "stones", load and transport them to Seward by railcars and trucks, unload and stack them, and then have them loaded again upon Nugget's barge, for transportation from Seward to Homer. *Id.* Spencer agreed to do so for $22.50 per ton, meaning $1,530,000 for 68,000 tons, whereas Nugget's bid to the federal government for the total project was $3,378,491.60, or just over twice the sum Nugget had contracted to pay Spencer. ER 2-10.

Spencer contracted with North Star to perform the stevedoring operations loading the rock onto Nugget's barge in Seward. ER 332, 140C. Under the terms of hire North Star extended its services on credit, under express conditions providing for the addition of late payment charges, in the event payment was not made within 30 days of invoice, and payment of North Star's attorney fees and costs of collection if collection efforts became necessary. ER 438, 491-92.

5

Although Spencer began supplying rock to Nugget in mid-March 1997, as it was supposed to, Nugget very quickly substituted its own personnel, equipment, management and resources for Spencer's and back-charged Spencer for that expense. ER 596-601. Nugget did so acting under color of a so-called "support" arrangement between it and Spencer dated April 23, 1997 which actually commenced at least three weeks before that date, according to Nugget's project manager, Randy Randolph.[3] ER 332-334, 107. Nugget concedes this. Nugget Br. at 11. North Star did not commence its work in furtherance of the project until the first week of May, 1997, but it was not made aware of those pre-existing "support" arrangements, because Nugget did not tell it or the Government and insisted that Spencer keep that information secret. ER 333, 140F, 426, 600.

In its 26-page decision granting summary judgment to North Star upon the undisputed facts presented to it, the district court determined that Nugget, as a result of that arrangement and Nugget's own actions pursuant to it, "stepped into the shoes of Spencer, acting from that point onward as its own material supplier, directly accepting and using the labor, equipment, and services provided by North Star, Shoreside, and Metco." ER 346-47. The court concluded that,

---

[3]     Indeed, according to LaPore, Nugget's promise to lend "support" was made very early on, within a week of signing their January 15, 1997 written "material" agreement (ER 148, 214-15), but the district court did not rely on that. Instead, it selected a bright demarcation point which Nugget could not possibly deny, the April 23, 1997 written agreement.

6

based on the undisputed facts:

> Nugget did not merely provide labor and equipment, but also took significant measures to control the operations at the quarry. Nugget placed its own supervisor and its own explosives expert (known as a shooter) on site at the Spencer quarry, effectively replacing the Spencer supervisor and shooter. Nugget also brought in several pieces of equipment and had its own people exclusively operate that equipment. ... Spencer's own input on how to run the quarry was largely ignored, and ... Nugget essentially did things its own way."

ER 334, 348. In addition, "Nugget took significant control over the loading operations in Seward", including taking "the barge loading operation away from [North Star's location]" to another dock on the other side of the bay several miles away when North Star, after working two months without being paid, demanded payment. ER 335-36, 348-49. *Id.* The role of Spencer's owner and president, Robert LaPore, was reduced to driving a truck, but Nugget mostly used its trucks instead of Spencer's trucks at "greater expense" to Spencer, "which Nugget merely back-charged to Spencer". ER 334-36, 348-49. Concluded the court:

> Nugget actually overtook Spencer, providing itself with rock from the Spencer quarry, assuming the responsibility of moving the rock from the quarry to Seward, and controlling the means by which that rock was loaded onto its own barges bound for Homer.    * * *
>
> Moreover, Nugget engaged in subterfuge in its desire to keep the terms of the support agreement secret.
>     * * *    Nugget, which by virtue of its position as prime contractor controlled the flow of money to Spencer, also put itself first in line as a creditor of Spencer,

7

40

> unbeknownst to and ahead of the very same parties that it
> was accepting labor and services from in Spencer's stead.
> . . . [T]hrough the terms of the support agreement, and
> Nugget's actions subsequent to it, . . . Spencer was
> rendered a "straw" party in the chain of parties relevant to
> this federal project.

ER 347, 349.

The facts establish, and the lower court determined, that "In the end,

Spencer did not receive any money from Nugget for work or services rendered

after [mid-April] 1997." ER 342, 596-97, 602-28.

> Accordingly, none of the parties that Spencer contracted
> with — North Star, Shoreside, or Metco — received
> payment for the goods and services they had provided.
> Nugget withheld over $1.4 million from Spencer in order
> to pay itself and its employees for work performed under
> the support agreement.

ER 342.  Concluded the court:

> Whether deeming Spencer a "straw" party or deeming
> Nugget as stepping into the shoes of Spencer, once
> Nugget took over for Spencer as its own material
> supplier, North Star, Shoreside, and Metco directly
> supplied Nugget with labor, equipment, and services.
> Accordingly, it would be contrary to the remedial
> purposes of the Miller Act to ignore that and to deny
> plaintiffs' [relief] under the Act.

ER 349-50.

Those *material* facts and that analysis relied on by the district court in

its summary judgment determination are in stark contrast to Nugget and USF&G's

characterization of this case in their brief.  There they misstate the facts.  More

8

41

importantly, the matters they emphasize were immaterial to the district court's ruling.

For example, whereas Nugget and USF&G characterize Spencer as a "corporation wholly owned by Robert A. LaPore" (Br. at 3), that was actually a matter in factual dispute. ER 85-86, 131-32, 255-56, 334-35. The district court ignored the matter in its decision.

Likewise, whereas Nugget represents that the relationship between it and Spencer involved no more than a "single supply contract for a single project" (Br. at 3), that was not the case. As outlined above, Nugget and Spencer's relationship on even the instant project involved a "support" contract, as well as a "supply" contract. Indeed, it was the subsequent "support" relationship which created Nugget's liability in the district court's determination under appeal.

Furthermore, as the district court concluded, the undisputed facts in the record established a longstanding relationship between Randolph and key Nugget personnel, Spencer, LaPore and Spencer's quarry. ER 334-35, 456-57, 418-24, 544-46, 589-91.

> In fact, prior to the Homer Spit project, Randolph worked for Nugget as a consultant, bid estimator, and project manager at the same time he worked for LaPore at Spencer. According to Randolph and LaPore, most of the calculations resulting in Spencer's pricing to Nugget on the Homer Spit bid were prepared by Randolph as a bid estimator and a consultant for Spencer (while he also worked as a project manager for Nugget).

9