unusual, self-serving terms of its "support" agreement with Spencer to North Star,

is both incorrect and beside the point. Unlike the situation cited by Nugget in

*Matthews v. Kincaid*, 746 P.2d 470, 472 (Alaska 1987), this is not yet an action for

fraudulent or negligent misrepresentation brought under state law. If it were, a

duty to disclose would probably arise also according to that decision — given the

nature, timing and implementation of Nugget's "support" arrangement with

Spencer effectively cutting North Star off from payment by Spencer while at the

same time directing and taking advantage of the services North Star provided to

Nugget. *Matthews*, 746 at 471-72.

At the very least, Nugget owed a duty to disclose that "support"

arrangement and Nugget's withholding of payments for the project work from

Spencer to the federal government, pursuant to the terms of the prime contract and

the Prompt Pay Act. Certainly the federal government, which would have in turn

informed North Star, thought so. ER 436.

Accordingly, contrary to Nugget's unsupported assertions, there was

no *genuine* or *material* issue as to Nugget's control, and it was unnecessary to

show fraudulent intent.

> b.  The District Court Properly Applied the
> Telescoping Cause of Action to This Case.

Neither has Nugget demonstrated that the district court misapplied the

*Fidelity* telescoping cause of action on which it relied.

40

73

First, it is not the case, as Nugget argues, that the district court below should not have applied the telescoping remedy to *this* case because the court in *Fidelity* declined to do so in *that* case. The undisputed circumstances of this case were different than the circumstances presented in *Fidelity*. As North Star demonstrated (ER 547-51, 557-60, 660-62) and the district court concluded (ER 348-49), Nugget's direction of North Star and the loading operations at the dock through its project manager, Randy Randolph, went far beyond the mere "dealings" the prime contractor's project manager had with the equipment supplier in *Fidelity* to which the "inference" that Nugget quotes from at length in its brief relates. *Fidelity* did not involve the prime contractor's control, substitution, self-dealing and subterfuge that in fact occurred in this case.

Furthermore, that discussion from *Fidelity* which Nugget quotes was in the context of evaluating the applicability of an implied-in-fact "assent" cause of action, *not* the telescoping cause of action which the district court applied in this case *or* the quasi-contractual remedy which the court applied in *Fidelity*. *Cf. Fidelity*, 360 F.2d at 409-11. As the district court in the proceedings below also concluded:

> . . . [W]hat is [most] relevant in this instance is not that Nugget provided guidance and direction, but that Nugget did so in the place of Spencer, the party originally charged with that obligation.

ER 348-49.

41

74

Nor is the telescoping cause of action acknowledged in *Fidelity*
inapplicable to this case because, as Nugget and USF&G further contend (Br. 32-
33), one of the cases cited by the court in *Fidelity* in support of that remedy, *R. W.
Fine v. Silverblatt*, 233 F. Supp. 672 (W.D. Mo. 1964), is distinguishable factually
from this case. It should not be necessary that this case be the same case factually
as one or the other of the cases cited by the court in *Fidelity* in support of the
telescoping remedy, where the principles and elements of that federal cause of
action *do* apply to the facts of this case.

For example, one of the opinions cited in *Fidelity* for the telescoping
cause of action was *Continental Casualty Company v. United States ex rel. Conroe
Creosoting Company*, 308 F.2d 846 (5th Cir. 1962). There the appellate court held
that the circumstances warranting the telescoping remedy exist where the company
like Spencer is used as "a subterfuge and a tool" by the prime contractor "for its
[the prime's] own benefit and protection". 308 F.2d at 848. The district court
below found that such circumstances undisputably existed in this case, based not
on Nugget's initial "material" contract with Spencer but on its subsequent
"support" arrangement. ER 333-36, 346-49, 351 n. 38. That subsequent
arrangement preceded North Star's work, yet Nugget hid its existence, whereby
Spencer became a "tool" of Nugget for Nugget's "own benefit and protection".

In another case mentioned in the *Fine* decision, *Bushman*

42

*Construction Company v. Connor*, 307 F.2d 888 (10th Cir. 1962), the telescoping remedy was applied to an arrangement, not unlike the arrangement in this case, whereby a prime contractor advanced the money to pay the bills of another company working for it in return for the right to receive that other company's progress payments. The appellate court in that case held that, where that arrangement was kept secret from a third party contracting with the company which would otherwise have the right to the progress payment income, that third party contract must be telescoped into a direct relationship with the prime contractor which, like Nugget, had entered into the secret arrangement putting itself first in line to that money.

Those principles apply to this case, although the facts may not be precisely the same. Although it may be argued that no formal joint venture agreement existed between Nugget and Spencer under the terms of their so-called "support" arrangement, in fact Nugget's implementation of that arrangement exceeded the normal joint venture agreement. Under it, Spencer turned out to receive no benefit.

Nugget and USF&G's additional argument (Br. at 34) that the district court "straw" man finding is "internally inconsistent" with other district court determinations is also incorrect. First, contrary to their representation, the district court did not determine that Spencer was not an agent for Nugget. To the contrary,

43

as addressed previously in this brief, the district court stated that it was inclined to find Spencer was Nugget's agent "by virtue of the support arrangement" and Nugget's control over Spencer. ER 351. It declined to do so only because the court had an "unanswered" question as to the significance, if any, of an undisclosed principal under the applicable law, which was then answered (in support of finding an agency relationship). *Id.*; ER 708-711.

Furthermore, contrary to Nugget's representation, this Court did <u>not</u> hold in *Stanisfer v. Chrysler Motors Corporation*, 487 F.2d 59, 64-64 (9th Cir. 1973), that a party must be the agent of another to qualify as the other's "straw" man. According to the dictionary, a "straw man" is a person rendered insignificant or "used to disguise another's intentions, activities, etc." <u>Webster's New World Dictionary</u> (Second College ed. 1974). One need not be another's agent (although Spencer was Nugget's) in order to qualify as a "straw" man, and nothing in *Stanisfer* is to the contrary. There was no inconsistency, "internal" or otherwise, in the district court's decision.

The district court correctly applied the telescoping remedy to this case. Furthermore, as set out previously in this brief, the district court could have reached the same result — just as this Court may upon reviewing the matter *de novo* — by applying the alternative bases for liability under state and federal law which North Star urged in the proceedings below but the district court did not

77

apply, given its application of the telescoping remedy.

>    4.    Any Principle Against Coexisting Express and
>         Implied Contracts Does Not Apply.

Nugget and USF&G argue that North Star could not have express arrangements with Spencer and an implied contract with Nugget "for the same thing at the same time" and that the district court's award of *quantum meruit* relief is inconsistent with that purported principle. Br. at 34-36. However, those arguments are incorrect. They take legal principles out of context. They also incorrectly assume that *quantum meruit* relief is the only form of recovery available to a party under the telescoping cause of action applied by the court below, just because that is the remedy the claimant in *Fidelity* happened to seek in relation to that claim. 360 F.2d at 410. In addition, they incorrectly assume that the telescoping cause of action selected by the district court is the only applicable cause of action and that it is "implied-in-fact", because the court below characterized it as such.

As previously demonstrated, those assumptions are incorrect. Instead, North Star had express arrangements with Spencer which Nugget assumed when it made and implemented its so-called "support" arrangements with Spencer in the way it did. The result is the same regardless of whether Spencer, at that point, became viewed as Nugget's agent or whether North Star's arrangements with Spencer became "telescoped" directly to Nugget. Either way, Nugget impliedly

45

#60571

EXHIBIT 1
Page 66 of 83

assumed the express arrangements Spencer had made but was not permitted to perform when Nugget stepped into Spencer's shoes in order to serve its own purposes.

Furthermore, there was no inconsistency between the Spencer express and the Nugget implied relationships. This is not the situation like that presented in the two Alaska cases cited by Nugget, *Mitford v. de LaSalla*, 666 P.2d 1000, 1006 n. 1 (Alaska 1983), and *Fairbanks Borough v. Kandik*, 795 P.2d 793, 799 (Alaska 1990). In those cases it was determined that, where an express contract already existed between the same two parties covering the same services, *quantum meruit* relief could not be recovered for those services. To the contrary, this case is more analogous to those cases where preexisting express contractual arrangements become the measure for even *quantum meruit* relief for subsequent work performed arising from those preexisting arrangements, from which a continuing duty to pay is implied. *See, e.g., Interform*, 575 F.2d at 1278; *American Surety*, 368 F.2d at 479.

This situation is also very different from the one presented in *Newbery Corporation v. Firemen's Fund Insurance Company*, 95 F.3d 1392 (9th Cir. 1996), on which Nugget relies. In that case, ESSCO (unlike Nugget in this case) neither hired the party to do the work nor then came in and controlled or effectively took over the work. Nugget and USF&G mix apples and oranges in that argument,

46

79

which might explain why the district court ignored it in the decision below.

C.    THE DISTRICT COURT SHOULD HAVE AWARDED THE
      ATTORNEY FEES, LATE PAYMENT CHARGES AND
      PREJUDGMENT AND POSTJUDGMENT INTEREST
      REQUESTED BY NORTH STAR.

Following the district court's favorable August 30, 2002 Order and

September 4, 2002 entry of Judgment, North Star moved for an award of attorney

fees, costs, and late payment charges including prejudgment and postjudgment

interest against Nugget and USF&G. ER 721-22. It incorporated previous

motions and related filings and previous court orders in the case on the subject. *Id.*

1.    North Star Should Have Been Awarded Its Full Attorney Fees.

On the subject of attorney fees, the district court had previously held

that:

> . . . the Ninth Circuit (as well as other circuits) holds that
> full reasonable attorney's fees are recoverable in Miller
> Act cases when the claimant's contract so provides.
> *United States ex rel. Reed v. Callahan*, 884 F.2d 1180,
> 1184-86 (9th Cir. 1989); *United States ex rel. Maddux
> Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 86 F.3d
> 332, 336 (4th Cir. 1996).    *  *  *    As a matter of
> federal law, those fees become a part of North Star's
> claim and are recoverable from the general contractor,
> defendant Nugget Construction, Inc., and its surety,
> United States Fidelity & Guaranty Company (USF&G).
> *Travelers Indemnity Co. v. United States ex rel. Western
> Steel Co.*, 362 F.2d 896, 899 (9th Cir. 1966).

ER 491–92.

Whereas the court's previous focus resulting in an award to North Star

47

#60571

EXHIBIT 1
Page 68 of 83

of its full attorney fees had been upon the terms of the agreement between North

Star and Spencer, the same principles apply to the federal cause of action

"telescoping" that agreement directly to Nugget. As North Star observed:

> The same principle applies where Nugget, as recently
> held by this Court, "stepped into the shoes of Spencer"
> and surreptitiously rendered Spencer a "paper" party
> while disguising the true situation from North Star and
> other similarly situated claimants. As recognized by the
> Court, in such a case involving "subterfuge" or
> "circumstances indicating the interposition of straw
> men", the Court should telescope Spencer's contractual
> relationship directly to the prime contractor, Nugget.
>
> \*   \*   \*
>
> Accordingly, the express terms of the Spencer/North
> Star arrangement became the terms of the Nugget/North
> Star implied arrangement. As this Court recently
> observed . . . Nugget acted, as a result of its own
> subterfuge, "*in the place of Spencer. . . once Nugget took
> over for Spencer as its own material supplier*".
>
> \*   \*   \*

ER 723-26 (emphasis in original; citations and additional quotations from the

district court's August 30, 2002 Order at ER 346-50 omitted). North Star also

cited Alaska state law, including *Gamble v. Northstore Partnership*, 28 P.3d 286,

288-91 (Alaska 2001), and general contract law, 25 C.J.S. *Damages* sec. 50(c)

(1966) (relied on in *Gamble*, 28 P.3d at 290 n. 10), as being consistent with the

federal rule entitling North Star to its "full measure of attorney's fees" under these

circumstances. ER 728, 750-51 n. 5.

However, the district court determined that whereas Spencer's

48

contractual obligations were indeed "telescoped" to Nugget, the remedy upon such

a contract lay solely in *quantum meruit*, and that *quantum meruit* relief could not

include liability for the attorney's fees provided for in the telescoped contract.

ER 362-63.

The district court erred. As discussed previously in this brief, the

federal telescoping cause of action should not be limited to *quantum meruit* relief

simply because that was the remedy sought by the claimant in *Fidelity*, 360 F.2d at

410. Quite the contrary, the Miller Act's overriding remedial policy of protecting

laborers and materialmen from loss for their services rendered on a public project

and the liberal construction of the Act dictate that Spencer's entire contractual

obligation be telescoped onto Nugget. That includes the express obligation to

make North Star whole by paying its real costs of collection incurred as a result of

the credit it extended for the payment of its services it has still not received, thanks

to Nugget.

Moreover, as North Star also demonstrated, even the application of

*quantum meruit* relief warranted application of Spencer's entire preexisting,

express arrangements for North Star's services, which had most benefitted Nugget,

to the telescoped contract, as the "just and more precise" method of determining

the damages owed North Star. *See, e.g.,* ER 746-49; *Interform,* 575 F.2d at 1278;

*American Surety Co. of New York v. United States ex rel. B & B Drilling Co.,* 368

#60571

EXHIBIT 1
Page 70 of 83

F.2d 475, 479 (9th Cir. 1966) (Miller Act case). The reasonable value of the services rendered by North Star included the rendering of services on credit. ER 747. As the Alaska Supreme Court has recognized, such credit provisions, common to the commercial context, are important, substantive services warranting enforcement by the courts. *Riley v. Northern Commercial Co., Machinery Div.,* 648 P.2d 961, 968 (Alaska 1982); ER 748. Other courts are in accord. *See, e.g., Traveler's Indemnity Co. v. United States ex rel. Western Steel Co.,* 362 F.2d 896, 899 (9th Cir. 1966); *Hawaiian Rock Products Corp.,* 74 F.3d at 975-76; *Maddux Supply,* 86 F.3d at 336; *Colorado Laborers Health & Welfare Trust Fund v. Expert Environmental Controls, Inc.,* 785 F. Supp 895, 897-98 (D. Colo. 1992).

North Star's request for reconsideration on these points (ER 779-80) was denied (ER 783).

The district court's disallowance of attorney fees was based solely upon its interpretation of the applicable law. ER 362-65. That interpretation is subject to this Court's *de novo* review and correction. *Leno,* 892 F.2d at 790-91; *Reed,* 884 F.2d at 1184-85. The reasonableness or calculation of the fees, while normally factual matters reviewable for abuse of discretion, *id.,* were not in issue below, either in the parties' filings or in the court's decision. In previous decisions the district court had ruled, after careful consideration, that North Star's attorney fees were reasonable and its submittals correct. *See* ER 493-94, 500. North Star

50

#60571

EXHIBIT 1
Page 71 of 83

submitted additional detailed records supporting the reasonableness of its

additional attorney fee requests through November 6, 2002, which were the subject

of the court's January 22, 2003 order. ER 360-61, 726-28, 735-39, 751, 774-77;

U.S.D.C. Docket Nos. 326, 327, 342. The accuracy or reasonableness of those fees

was not challenged by Nugget or the court. ER 750, 360-64. Rather, the district

court January 22, 2003 order denying those fees was based solely upon the

determination that the law did not permit them. ER 362-65. That determination

was in error and should be corrected on appeal.[17]

> 2.  North Star Should Have Been Awarded Its Late
>     Payment Charges Upon the Principal Sum Overdue.

In its previous orders entered February 23 and April 12, 2000, before

the first appeal of this case, the district court had also awarded North Star the late

payment charges upon the principal sum overdue, as provided by contract,

inclusive of prejudgment interest, citing *Hawaiian Rock Products Corp.*, 74 F.3d at

976 (9th Cir. 1996).[18] ER 495. It had disallowed them post-judgment, even

though the arrangements for North Star's services clearly provided that the late fee

of 1.5% per month was "on all unpaid balances" until paid.

---

[17]    On remand North Star should be awarded the sum of its attorney fees
considered by the district court order, together with its additional attorney fees
subsequently incurred. *Reed*, 884 F.2d at 1185-86; *Gamble*, 28 P.3d at 290-91.

[18]    *Accord, United States ex rel. Sherman v. Carter*, 353 U.S. 210, 220-21, 77
S. Ct. 793, 799 (1957); *Maddux Supply Co.*, 86 F.3d at 336; *Colorado Laborers,*

#60571

EXHIBIT 1
Page 72 of 83

In its January 22, 2003 order, the district court, while acknowledging

North Star's position (ER 360-61), disallowed the charges altogether, both pre-

judgment and post-judgment, for the same reasons it rejected North Star's claim

for attorney fees. ER 365. It instead held that North Star should be allowed

prejudgment interest only at the rate set by Alaska statute and postjudgment

interest set at the federal statutory rate. ER 366, 369. Those determinations were

both based solely upon the district court's interpretation of the applicable law and,

as previously noted, are subject to this Court's *de novo* review. *Maddux*, 86 F.3d

at 334; *cf. Bartec Industries*, 976 F.2d at 1279, *amended by Bartec Industries*, 15

F.3d at 856.

For the reasons already stated in connection with North Star's

entitlement to attorney fees and based on the above-stated authorities, the district

court should have awarded the total sum of late charges inclusive of prejudgment

interest North Star requested through the entry of judgment. That condition was

part of the express arrangements for North Star's services which Nugget assumed

when it took over Spencer. According to the case law and argument already

presented by North Star, those precise terms for the payment of late charges

including interest apply — whether viewed as having been incorporated (*i.e.*,

"telescoped") into the arrangement implied-in-fact by Nugget's conduct and

---

785 F. Supp. at 897-98; *Riley*, 648 P.2d at 968.

#60571

EXHIBIT 1
Page 73 of 83

actions or viewed as an appropriate measure of restitution or *quantum meruit* relief.

Similarly, the district court should have applied that prearranged rate post-judgment, rather than the federal statutory post-judgment rate provided by 28 U.S.C. § 1961. Under federal law, like Alaska state law, parties can agree to a different rate of postjudgment interest than the federal statute provides. *See, e.g., Hymel v. UNC, Inc.*, 994 F.2d 260, 265-66 (5th Cir. 1993); *In re Connaught Properties, Inc.*, 176 B.R. 678, 684-85 (Bankr. Ct. D. Conn. 1995). In this case, they did so by stipulating to a late payment charge applying to all unpaid balances *until payment is made, not* just until the date of judgment, which, as this case demonstrates, is not the same as payment.

3.    The District Court Incorrectly Applied the Alaska
       Interest Statute.

As set out above, the district court erred, in the first instance, by not applying the preexisting contract rate providing for late payment charges inclusive of interest. The court instead applied the Alaska statute on prejudgment interest, AS 09.30.070(a), to determine the rate to be applied to the one Miller Act cause of action it recognized. ER 365-66.

However, the district court applied that statute incorrectly, so as to result in a substantially lower prejudgment interest rate than the 10.5% per annum rate that had existed under that statute during the time period properly applying to North Star's claim. As the district court observed, prior to August 7, 1997 the

53

Alaska statute had specified a 10.5% prejudgment (and postjudgment) interest rate. ER 366. The statute was amended effective August 7, 1997 to specify a different method for calculating interest which is applicable only to causes of action which accrue on or after that date.[19] ER 366-67.

The court correctly concluded that: "In an action such as this *based upon contract*, the critical date is that upon which the contract was *breached*." ER 367 (citing Alaska law). That breach, according to the court and the undisputed evidence, occurred as to North Star well before August 7, 1997. Thus the action should have accrued before the amendment date under the state law. ER 367.

The district court also concluded that this Circuit looks to that state law on the subject of interest "as a matter of convenience and practicality" in Miller Act actions. ER 365. Despite that, the district court concluded, based on Nugget's supplemental briefing (ER 761), that accrual of the Miller Act cause of action which was "considered by this court" occurred 90 days later than a cause of action under state law, and that therefore the court would apply the state law 90

---

[19]    The different texts of that statute before and after that amendment are reproduced at the beginning of this brief. The text of that statute as existed before the effective date of the amendment was also provided to the district court (ER 753-54, 759-60), together with the official word from the Alaska Court System on how to determine pre- and post-judgment interest rates under Alaska law (ER 753-54, 757-58).

54

days later, as it existed after August 7, 1997. ER 364, 367-68.

As North Star demonstrated below (ER 762-771), that application of the Alaska statute was contrary to state law and in error. Alaska law provides that the correct date of accrual is when the "damage occurs" or "the agreement is breached." ER 767-68. That occurred in this case before August 7, 1997. If the district court would not apply the agreed upon rate, the statutory rate of 10.5% should have been applied.

North Star alternatively urged the district court to apply the Alaska statute, if it must, in a manner similar to that utilized in *United States ex rel. C. J. C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1544-45 (10th Cir. 1987). ER 769-70, 780-81. Faced with a similar situation, that court, rather than slavishly adhere to a technical application of an amendment to the prejudgment interest rate provided by New Mexico's statute, concluded that the higher rate better accomplished the purpose of "fairly compensating the plaintiff for the delay in the receipt of payment". 834 F.2 at 1544-45. As North Star urged, applying the higher rate to this case would be far fairer than applying the abnormally low 4.25% rate which Nugget advocated. ER 769-70.

The district court rejected that practical approach, or any "blending" of the two statutory rates. ER 368, 783. ER 368, 780-81, 783. That too is a matter subject to correction upon *de novo* review by this Court.

55

D.    THE ALTERNATIVE BASES FOR LIABILITY THE
      DISTRICT COURT DID NOT APPLY ALSO ENTITLED
      NORTH STAR TO RECOVER ITS ATTORNEY FEES, LATE
      PAYMENT CHARGES AND INTEREST AS REQUESTED.

Whereas the district court based its determination of Nugget's liability

upon North Star's claims-in-chief solely upon one theory for recovery under the

Miller Act (ER 346-51), North Star alleged and continually pursued other,

alternative bases for recovery under the Miller Act, and separate state claims

coming within the district court's supplemental jurisdiction.  ER 401-402, 712-714,

750-51, 765-66.  North Star repeatedly reminded the court below of its position in

that regard.  The district court acknowledged that position several times in its

orders. ER 350-51, 364, 716.  Nevertheless, the court declined to consider any

"alternative theory upon which the use plaintiff [North Star] might have prevailed"

under the Miller Act, such as the *Cargill* agency-by-control cause of action.

ER 716.  Although it acknowledged its supplemental jurisdiction over related state

law claims which might entitle North Star to additional recovery, the court

declined to determine them as well, simply declaring "no such claims were

considered by this court." ER 364.

The district court had a responsibility to consider those claims.  As

this Court has held, alternative legal bases for liability which would serve to

"enlarge" North Star's rights by increasing "its monetary recovery", such as

alternative theories supporting recovery of a party's attorney fees, late charges and

56

interest, should be considered at the trial court level. *Lee*, 245 F.3d at 1107. As

this Court has also held, enactment of 28 U.S.C. § 1367 in 1990 made the federal

district court's supplemental jurisdiction over state law claims related to federal

claims mandatory with few exceptions. *Executive Software*, 24 F.3d 1545, 1555-

60 (9th Cir. 1994). *Accord, Itar-Tass Russian News Agency v. Russian Kurier,*

*Inc.*, 140 F.3d 442, 447 (2nd Cir. 1998). Jurisdiction of a case brought under the

Miller Act is exclusively in the federal district court. *United States ex rel. Owens-*

*Corning Fiberglass Corp. v. Brandt Constr. Co.*, 826 F.2d 643, 645-46 (7th Cir.

1987). For that reason, federal supplemental jurisdiction over state law claims

related to Miller Act claims filed in federal district court is especially appropriate.

*Chicago Bldg. Restoration*, 796 F. Supp. at 1132. Although they preexisted the

enactment of 28 U.S.C. § 1367 making the federal district court's supplemental

jurisdiction mandatory, this Court's decisions in *Leno*, 892 F.2d at 791, and

*Fidelity*, 360 F.2d at 411, are in accord.

Once the district court declined to award North Star the requested

attorney fees, late charges and interest based on a telescoping cause of action, it

also erred by declining to determine those alternative theories materially affecting

North Star's rights to that additional recovery which North Star had pled and

pursued.[20]

---

[20]    The fact that the separate claims were pursued by North Star at the trial level

57

For example, court application of the agent/principal or equitable

subordination alternative claims for recovery which North Star advanced both

under the Miller Act and state law would enable recovery of the attorney fees, late

charges and interest North Star sought, since Nugget would be bound as the

imputed principal by Spencer's arrangements.  Under the law applying to

alternative claims arising under Alaska law, contractual provisions for full attorney

fees, late payment charges and/or prejudgment and postjudgment interest are to be

enforced.  *See, e.g., Riley*, 648 P.2d at 966-68; *Gamble*, 28 P.3d at 290-91.  Such

alternative causes of action based on state law justify recovery, at least against

Nugget Construction, "wholly apart from the Miller Act." *Fidelity*, 360 F.2d at

411.[21]

Likewise, application of that theory, or the application of any of the

other claims North Star pursued based on state law, would overcome the district

court's unique application of Alaska's amended interest statute to the peculiarities

---

also distinguishes this case from the district court's reliance (ER 364) on *Leno*, 892
F.2d at 791.  In *Leno*, unlike this case, no such claims separate from the Miller Act
were pursued, and it was indicated in that decision that had they been pursued they
would have been considered.  892 F.2d at 790-91.

[21]    As also urged below, recovery under such state-based theories at least
entitles North Star to Alaska Civil Rule 82 attorney fees against Nugget, in the
alternative.  That is a substantive right to be applied to claims based on Alaska
state law over which the federal court has supplemental jurisdiction, as it does in
this case.  *See, e.g., Fidelity*, 360 F.2d at 411; *City & Borough of Juneau v.
Commercial Union Ins. Co.*, 598 P.2d 957, 959-60 (Alaska 1979); *McDonough v.*

58

#60571

EXHIBIT 1
Page 79 of 83

of a Miller Act cause of action as perceived by the district court in its January 22, 2003 order. Recovery upon the state law claims would dispose of any perceived 90-day "waiting period" for accrual of a cause of action under the Miller Act, since the court would not be relying solely upon the Miller Act and the state law causes of action alternatively relied upon contain no such provision.

Therefore, if on appellate review North Star is not awarded its requested attorney fees, late payment charges and interest by application of the telescoping remedy, then this Court, as part of its *de novo* review, should determine North Star's right to those fees, charges and interest based upon the alternative federal and state claims North Star pursued below, or reverse and remand the matter to the district court with appropriate instructions to do so.

## X. CONCLUSION

This litigation has been long, hard and expensive. It needs to be resolved. After almost six years, North Star remains unpaid, contrary to the intention of the federal Miller Act. The district court's application of the telescoping cause of action to secure North Star's entitlement to the principal sums owed it should be upheld. For the reasons herein stated, the district court's denial of attorney fees, late payment charges and interest to North Star should be reversed and remanded with appropriate instructions from this Court.

*Lee*, 420 P.2d 459 (Alaska 1966); ER 751.

59

Respectfully submitted this 19th day of May, 2003.

BURR, PEASE & KURTZ
Attorneys for North Star, North Star *ex rel.*


By _____
Michael W. Sewright
Alaska Bar # 7510090

60

93

## XI. CERTIFICATE OF COMPLIANCE

I certify, pursuant to Circuit Rule 35-4 and 40-1, that the attached Opening

Brief for Appellee/Cross-Appellant of Appellee/Cross-Appellant United States of

America *Ex Rel.* North Star, In Case Nos. 02-35887 (Lead Number), 03-35168, 03-

35174, 03-35715, is proportionately spaced, has a typeface of 14 points or more

and contains 14,444 words.

Respectfully submitted this 19th day of May, 2003.

BURR, PEASE & KURTZ
Attorneys for North Star, North Star *ex rel.*


By _____
Michael W. Sewright
Alaska Bar # 7510090

61

# XII.  STATEMENT OF RELATED CASES

North Star accepts Nugget and USF&G's statement.

95