Michael W. Sewright
BURR, PEASE & KURTZ
810 N Street
Anchorage, AK  99501-3293
Telephone:     (907) 276-6100
Fax No.:        (907) 258-2530
Attorneys for North Star

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>               Plaintiffs,<br>    and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf,<br><br>             Intervening Plaintiffs,<br>    and<br><br>METCO, INC.,<br><br>             Intervening Plaintiff,<br>    vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>             Defendants. | Case No. 3:98-cv-009-TMB<br><br>**NORTH STAR'S OPPOSITION IN RESPONSE TO USF&G'S MOTIONS REGARDING STATUTE OF LIMITATIONS, BAD FAITH, EXPERT WITNESS, AND PUNITIVE DAMAGES**<br><br>**[Clerk's Docket Nos. 496, 497, 500 & 505]** |

### I.  INTRODUCTION

Plaintiff and Use Plaintiff North Star Terminal & Stevedore Company ("North Star")

submits this memorandum in opposition to the motions of defendant United States Fidelity &

Guaranty Company ("USF&G"), filed herein by and through their attorneys on the bad faith claim, the Law Office of Barokas Martin & Tomlinson. Those motions are filed at Clerk's Docket Nos. 496, 497, 500, and 505.

North Star first addresses USF&G's motion, memorandum, and related filings for summary judgment against North Star's state law claims based on statute of limitations (Clerk's Docket Nos. 497, 498 & 516). North Star next addresses USF&G's motion, memorandum, and related filings for summary judgment upon North Star's bad faith claim against USF&G (Clerk's Docket Nos. 500 & 502). Following that, North Star responds to USF&G's motion, memorandum, and related filings to bar the introduction of expert William Grant Callow's opinion, testimony, and report (Clerk's Docket Nos. 505, 506 & 516). Finally, North Star responds to USF&G's motion, memorandum, and related filings for summary judgment upon North Star's punitive damages claim against USF&G (Clerk's Docket Nos. 496 and 515).

In addition to opposing those motions, North Star cross-moves for summary judgment and the introduction of Mr. Callow's opinion, testimony, and report by separate cross-motion or, alternatively, for determinations of the law of the case on those subjects.

## II. DISCUSSION

### A. Response to USF&G's Motion for Summary Judgment Based on Statute of Limitations Defense

The first thing to be noted about USF&G's above-referenced motion is that it applies, and can apply, only to that bad faith claim stated only against USF&G appearing at paragraph 38 of North Star's Amended Complaint (Clerk's Docket No. 409). As has been explained elsewhere, that is the only claim in which Mr. Viergutz's law firm, the Law Office of Barokas Martin &

_____

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83670
Page 2 of 37

Tomlinson, can represent USF&G in this case, and that firm does not at all represent Nugget Construction ("Nugget") in this matter.  *See* explanation and governing Court Order at Clerk's Docket No. 418 (Court Order), No. 494 at p. 3, No. 534 at p. 2 nn.1 & 2, and No. 535 at p. 2 nn.1 & 2.

It should also be observed that before that withdrawal and substitution of counsel in November 2005 substituting Barokas Martin & Tomlinson for the law firm of Oles Morrison Rinker & Baker LLP, ***solely*** as to the bad faith claim, the Oles Morrison law firm represented both USF&G and Nugget entirely in this matter, as to all claims stated in the Amended Complaint.  In that capacity it did not assert any statute of limitations defense as to any of those claims, including the bad faith claim asserted against USF&G (s*ee* Clerk's Docket No. 412 at pp. 17-20), and it was given only until September 21, 2005 to state any affirmative defenses, by direct Court Order (Clerk's Docket No. 401).  Neither has the defense been properly pled by Barokas Martin & Tomlinson, or allowed to be pled by the Court.  *See* discussion at Clerk's Docket No. 494 at p. 3.[1]  It is improperly and untimely asserted in USF&G's instant motion.[2]  It is asserted contrary to the Order of this Court setting pleading guidelines in August of last year (Clerk's Docket No. 401 at p. 5), Federal Rule of Civil Procedure 15(a), Alaska USDC Local Rule 15.1, and, in the Court's discretion, Local Rule 1.3.

---

[1]    On or about December 8, 2005, the Law Office of Barokas Martin & Tomlinson did purport to lodge a tardy Notice of Forwarding Additional Affirmative Defense on behalf of USF&G (Clerk's Docket No. 420), but without seeking or obtaining leave of the court or lodging an amended answer as required by the governing court rules and this Court's Order.

[2]    It is also ironic that USF&G now moves for summary judgment based on an untimeliness argument, which is itself untimely and improperly raised.

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                           45-40 / #83670
Page 3 of 37

Discovery closed in this case on March 31, 2006, without any cognizable statute of limitations defense having been pled in this case.  It is too late in the course of this protracted case, which has already gone over eight years, to allow consideration of the claim now.  North Star and the other claimants would be prejudiced.  The court should reject USF&G's present motion on that basis alone. [3]

Should the Court consider USF&G's motion, the applicable summary judgment standard is stated in this Court's previous summary judgment Order, Clerk's Docket No. 310 at pp. 15-16. It is well established that summary judgment can only be demonstrated by specific facts supported by admissible evidence.  Conclusory, self-serving, or subjective representations, even by affidavit, are insufficient.  *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992, 996-97 (9th Cir. 2001).  When a motion for summary judgment is made, the court, following briefing, may grant it, in whole or in part, or grant summary judgment to the party opposing it in whole or in part.  Fed. R. Civ. P. 56.

North Star does not take issue with the standards for summary judgment consideration stated in USF&G's motion on this subject (and repeated in its motions on the other three subjects) — ***except*** to note that USF&G has the burden of proof backwards in relation to the present motion.  A defense that a statute of limitations bars a plaintiff's claim is an avoidance or affirmative defense on which the defendant pleading it bears the burden of proof.  *See* Fed. R. Civ. P. 8(c).  Accordingly, USF&G would have the burden of proof upon that issue at trial.  If

---

[3]    If the Court grants leave to USF&G to amend to state a statute of limitations defense at this late juncture, after discovery has closed in the case, of course the defense, and USF&G's present motion, could apply only to the bad faith claim stated against USF&G, in that it is only as to that claim that the law firm filing the motion, Barokas Martin & Tomlinson, represents USF&G in this matter.  Clerk's Docket No. 418.

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83670
Page 4 of 37

the Court allows USF&G to raise the issue now, at this late juncture, USF&G has the burden of proof on the defense, including on a motion for summary judgment. Thus, it is USF&G that bears the onus of the burdens of production and of proof, and of demonstrating the absence of any genuine issue of material fact, as to that defense under federal summary judgment procedures. *See, e.g., Anderson v. Liberty Lobby, Inc*., 106 S.Ct. 2505, 2512 (1986). In this case, USF&G has failed to do so. It produces only argument.

USF&G devotes a half page or so to policy "sound bites" regarding statutes of limitations in its memorandum for summary judgment on this subject. *See* Clerk's Docket No. 516 at pp. 4-5. However, throughout that discussion it makes no mention of the established line of Alaska Supreme Court cases disfavoring a strict application of statutes of limitations. *See, e.g.*, *Carter v. Hoblit*, 755 P.2d 1084, 1087 (Alaska 1988); *Greater Area Inc. v. Bookman*, 657 P.2d 828, 829-31 (Alaska 1982).

One of the applications of the courts' reluctance to apply statutes of limitations strictly is the "discovery rule" which is recognized toward the beginning of USF&G's discussion of the statute of limitations applicable to most tort claims in Alaska. Clerk's Docket No. 516 at p. 5. As USF&G notes, that rule is that the statute of limitations does not begin to run until the claimant discovers or reasonably should have discovered the existence of the ***elements essential*** to the cause of action, citing *Russell v. Municipality of Anchorage*, 743 P.2d 372 (Alaska 1987).

From there, USF&G leaps to the conclusion that there "exists undisputed facts" that "By Plaintiffs' own admissions, they were aware of the essential elements involved in the state law claims prior to August 7, 1997" and, therefore, "the Court must dispose of this question as a matter of law." *Id*. at 5-6.

_____

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 5 of 37                                            45-40 / #83670

There are several problems with that conclusion.  It is legally and factually incorrect in several respects.

First, as USF&G acknowledges in its memorandum, a statute of limitations is tolled when an action is "commenced".  *Id*. at 6.  As USF&G also acknowledges, Alaska Rule of Civil Procedure 3 (and Federal Rule of Civil Procedure 3 as well), which govern when a civil action is "commenced," state that "A civil action is commenced by filing a complaint with the court."  *Id*.

In this case, North Star commenced its civil action by filing its complaint on January 16, 1998.  Clerk's Docket No. 1.  Shoreside and Metco filed their complaints shortly thereafter.  Defendants' conduct underlying those complaints had occurred just a few months before, starting in the spring or early summer of 1997.  North Star provided its labor, equipment and services in connection with the Homer Spit project to Nugget and Spencer Rock Products in May and June 1997, on 30 days credit.  Defendants' nonpayment including Nugget's refusal to pay North Star occurred in June and July of 1997.  *See, e.g*., North Star's Complaint at Clerk's Docket No. 1 & Shoreside's Complaint at Clerk's Docket No. 9.  USF&G, as the surety on the payment bond, was a named defendant in those complaints, but there was no basis or evidence known to the claimants at that juncture to warrant asserting a bad faith dealing claim, or related negligence or misrepresentation or nondisclosure claims, against USF&G.  It is undeniable, however, that at that time an action had been timely commenced in accordance with the applicable court rules and any statute of limitations that might apply.

USF&G mistakenly states, as if it were fact, that "The only claims raised [when "Plaintiffs filed their Complaints in January, 1998"] were brought under the Federal Miller Act statutes."  Clerk's Docket No. 516 at p. 2.  That is not true.  North Star appreciates that

_____

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83670
Page 6 of 37

Mr. Viergutz's law firm is new to this case, but that does not allow it to get the facts that wrong. In fact, the complaints stated causes of action recognized both under the Miller Act and state law and, in addition to citing the Miller Act, cited this Court's supplemental or "pendent" jurisdiction over state law claims. *See, e.g.,* Clerk's Docket Nos. 1 & 9. Those complaints also included prayers for Alaska Rule of Civil Procedure 82 attorney fee awards, which can only apply by law to state law claims. In addition, the claimants formally identified themselves in those complaints as both use plaintiffs under the Miller Act[4] and regular plaintiffs "on their own behalf," also in relation to the state law claims. *Id.* Moreover, by December 1998, the parties had exchanged summary judgment motions. Those motions, the briefing which followed, and the Court's decision deciding at least those motions between North Star and Nugget and USF&G recognize that state law claims were being pursued. *See, e.g.,* Court Order at Clerk's Docket No. 124 at pp. 2-5. Accordingly, contrary to USF&G's representation, state law claims were clearly in play early on.

The protracted litigation and procedural history which followed the initial judgments in this case, including two appeals and remands (the last coming in March of last year), have been set out in sufficient detail in the parties' briefings to the court in relation to North Star, Shoreside, and Metco's motions to amend pleadings filed last summer and in this Court's Order addressing and granting those motions on August 12, 2005. *See* Clerk's Docket No. 401 (Order granting motions). *See also* North Star's motion and reply memoranda in support of leave to file

---

[4]    Miller Act claims are brought in the name of the United States of America, to whom the payment bond is given, expressly "for the use and benefit of" the named use plaintiffs, for whose use and benefit the payment bond posted with the United States Government exists. *See, e.g., K-W Industries v. National Surety Corp.*, 855 F.2d 640 (9th Cir. 1988); *Alvarez v. Insurance Co. of North America*, 667 F. Supp. 689 (N.D. Cal. 1987).

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                           45-40 / #83670
Page 7 of 37

amended complaint at Clerk's Docket Nos. 389 & 399.  Rather than repeat that history here, of which the Court is already aware, North Star incorporates those filings herein and requests the Court's consideration of them in opposition to USF&G's present motion.

As set out within those filings, including the Court's Order, and in the other filings by the parties on that subject, all considerations as to the amended claims were considered in detail. Insofar as "new", those claims simply state additional legal theories for recovery based upon the past transactions and conduct addressed in the initial complaints and developed through discovery and subsequent events.

Part of that consideration was application of the "relation back" rule provided in Federal Rule of Civil Procedure 15(c) to any newly stated legal theories set forth in the proposed Amended Complaints, including state law-based claims.  *See, e.g*., Clerk's Docket No. 389 at pp. 5-6 & No. 399.  That rule provides that the amendments relate back "to the date of the original pleading," (i.e., the date the action was "commenced").  *See* Fed. R. Civ. P. 15(c).

After due consideration, the Court granted leave to amend, subject to further specification of the asserted state law claims (Clerk's Docket No. 401).  Following that additional specification, the resubmitted Amended Complaints were filed.  There is no statute of limitations issue.  The additional legal theories for recovery, including plaintiffs' state law tort claims such as misrepresentation, fraud, and bad faith, relate back by law to the original complaints.  Fed. R. Civ. P. 15(c).  *See also* North Star's Motion and Memo to Amend, Clerk's Docket No. 389 at pp. 5-6.  As was noted there:

> In addition, all claims asserted in the amended complaint arise out of the conduct, transaction or occurrence set forth or attempted to be set forth in North Star's original pleading and therefore relate back to the date of that pleading, pursuant to Federal Rule of Civil Procedure 15(c).  *See e.g., United States ex. rel.*

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 8 of 37

45-40 / #83670

*McAmis Industries of Oregon, Inc. v. M. Cutter Co.*, 130 F.3d 440, 441 (9th Cir. 1997) (holding that it would be "entirely contrary to the purpose of the Miller Act and the spirit of the federal rules" to limit the plaintiff to the theory and measure of recovery alleged in its original complaint where the case on the merits warranted broader recovery); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259 n.29 (9th Cir. 1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234 (1983) (amendment adding fraud claim to anti-trust action related back to filing of original complaint); . . . *Security Insurance Co. of New Haven, Conn. v. United States ex rel. Haydis*, 338 F.2d 444 (9th Cir. 1964) (where "both the original and the amended complaint related to the same general conduct, transaction and occurrence," the amended claims related back to the original complaint, *citing and discussing, inter alia, Tiller v. Atlantic Coast Line Railroad Company*, 323 U.S. 574, 65 S.Ct. 421 (1945), and *Foman v. Davis*, 371 U.S. 178, 181-182, 83 S.Ct. 227, 230, which also pointed out that "It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided" on the basis of pleading technicalities); *see Corkin & Sons, Inc. v. Tide Water Associated Oil Co*., 20 F.R.D. 402, 404 (D. Mass. 1957) (plaintiff allowed to allege common law deceit after originally seeking relief on an oral rental agreement).

Whereas USF&G in the instant motion argues, without at all <u>showing</u>, that the state law claims specified in the amended complaints are "separate and distinct" and unrelated to the subject matter of the original complaints, that issue has already been addressed, and the Court has decided otherwise.

In the present motion, USF&G argues that it is "entitled to the entry of summary judgment in its favor as to ***all*** of" North Star's state law claims. Clerk's Docket No. 519 at p. 2 (emphasis added). It repeats that assertion by listing all of the state law claims specified in North Star's amended complaint, characterizing them (in USF&G counsel's opinion) as either tort-based or contract-based[5] and then claiming "As such, they all must be dismissed . . . by summary judgment." *Id.* at 6-7.

---

[5]    In fact, several of the claims are stated in equity and not subject to any statute of limitations at all. *See Carter v. Hoblit*, 755 P.2d 1084, 1088 (Alaska 1988).

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 9 of 37

45-40 / #83670

However, as previously noted, USF&G counsel on the instant motion represents and has been authorized by this Court and USF&G to represent USF&G only as to the bad faith claim. [6] Clerk's Docket No. 418.  The Law Office of Barokas Martin & Tomlinson has no business seeking summary judgment upon any other claim against USF&G because it does not represent USF&G as to any other claim.  The law firm of Oles Morrison Rinker & Baker does, and it has asserted no statute of limitations defense or made any motion for summary judgment on that basis.[7]  The Law Office of Barokas Martin & Tomlinson also has no business seeking summary judgment upon the state law claims asserted against Nugget because that law firm does not represent Nugget at all in this case.  Nugget, which is represented by Oles Morrison Rinker & Baker, has also not asserted a statute of limitations defense at all.  *Id.*

---

[6]    USF&G lists that claims as a "tort claim" at page 6 of its Memorandum.

[7]    *See* 9/21/05 Answer and Affirmative Defenses of Nugget & USF&G to North Star's Amended Complaint, Clerk's Docket No. 412 at pp. 17-20.

Indeed, it is baffling to the claimants that Oles Morrison Rinker & Baker still represents USF&G in this matter at all, as to any of the claims, including the Miller Act claims, where that law firm still represents (and has long represented) Nugget, the general contractor at the center of the subterfuge, coercion, deception, and self-dealing which are alleged to have occurred in this case and have triggered USF&G's duties under the payment bond.  It is established that USF&G's paramount duties under that bond are owed to these plaintiffs and use plaintiffs under Alaska and federal law.  *See, e.g., Loyal Order of Moose, Lodge 1392 v. International Fidelity Insurance Co.*, 797 P.2d 622, 626-28 (Alaska 1990) (recognizing these claimants' right to bring cause of action in tort against surety on payment bond for bad faith dealing and the "appositional" situation the bond surety's "split loyalties" between its principal on the bond and its insureds under the bond (the use claimants) can put that surety in, including the "inherent risk" that conflict of interest creates).  *See also K-W Industries v. National Surety Corp.*, 855 F.2d 640, 642-43 (9th Cir. 1988) (applying state law cause of action against surety for bad faith practices to Miller Act payment bond); *Alvarez v. Insurance Co. of North America*, 667 F. Supp. 689 (N.D. Cal. 1987) (same result and excellent discussion).  Application of that law and other law to facts supporting a bad faith dealing claim against USF&G in this case are set out and discussed more fully in North Star's Joinder in Shoreside and Metco's Motions for Summary Judgment and Determinations of Law Regarding USF&G (Clerk's Docket No. 519), which is incorporated by reference herein.

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                 45-40 / #83670
Page 10 of 37

That bad faith claim against USF&G should be the only claim to which USF&G's present motion should be allowed to apply, if it is allowed to apply at all.  In the present motion, USF&G further misstates the circumstances applicable to that claim.  For example, contrary to USF&G's assertion (Clerk's Docket No. 516 at p. 2), North Star does not at all agree that all conduct underlying the allegations for bad faith against USF&G occurred before August 7, 1997.  North Star's previous motion to compel reply memorandum, from which USF&G lifts excerpts at page 2 of its memorandum, clearly applied only to Nugget and to Nugget's offenses supporting the state law claims against Nugget—just as the motion to compel was directed only against Nugget. USF&G takes those comments out of their intended context.  *See* Clerk's Docket No. 399. USF&G's bad faith breaches, on the other hand, and the injury to the claimants resulting from them, have been of a continuing nature.

In addition, the "discovery rule" which applies to tort statutes of limitations (and under recent Alaska precedent, at least some contract causes as well), applies to that cause of action. Even when these claimants filed their bad faith claim against USF&G last summer, they did so without having discovered the existence of all of the elements and facts essential to that cause of action.  Indeed, North Star stated that claim very carefully, as follows: "*Upon information and belief, and subject to such further evidence as is disclosed by discovery*, USF&G is also liable to North Star, under Alaska law, for the bad faith nonpayment, nonsettlement and/or refusal to discuss settlement of North Star's claim previously brought under the Miller Act herein, of which USF&G was notified."  Clerk's Docket No. 409 at p. 24 ¶ 38.  The claimants were required to state that claim, if they were going to state it at all by amendment, at that time according to the deadline for such amendments set out in the Court's Order dated August 12,

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83670
Page 11 of 37

2005 (Clerk's Docket No. 401). The claim at that time was based on suspicions of a conflict of interest and bad faith stemming, in great part, from Nugget and USF&G's total lack of interest in settling the case over a long period of years and following multiple proceedings including two summary judgments against them, two appeals, and another totally unfruitful attempt at settlement with them during last summer's settlement conference ordered by this Court (Clerk's Docket Nos. 385 & 386).

After the second appeal in 2002, from judgment amounts which should have been very palatable to the defendants, and the second remand placing jurisdiction back in this Court in March of last year, the question arose as to why the defendants would be paying at least twice as much in attorney's fees and costs litigating this case as they could have originally settled it for. It became a pressing and increasingly troublesome issue to the claimants, who had spent over seven years and much expense by then litigating this matter. The situation didn't make sense. It was then that the claimants amended their complaint to state the bad faith claim, however cautiously, since they had their suspicions and doing so was necessary in order for them to seek the discovery which might support the claim.

They received some of that discovery in new documents produced by Oles Morrison Rinker & Baker on behalf of both Nugget and USF&G in November of last year, but many, many more documents were deliberately withheld. The documents that were produced were littered with many blue "privilege" sheets. Finally, after these claimants promised to file motions to compel discovery and Barokas Martin & Tomlinson entered the case for USF&G on the bad faith claim, some more USF&G documents previously withheld as privileged were produced, on or about January 10, 2006. *See* Exhibit 1 attached hereto (transmittal letter only).

---

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                          45-40 / #83670
Page 12 of 37

That discovery in November and January and subsequent discovery, including the deposition taken March 8, 2006 of Mr. Ferguson, an agent and broker for USF&G and Nugget in Alaska, lead to the evidence supporting the claim. Some of that evidence is set out, for example, in Shoreside and Metco's filings regarding USF&G liability at Clerk's Docket Nos. 508 and 510, North Star's filing at Clerk's Docket No. 519, and Mr. Callow's expert report referenced therein and incorporated herein by reference.

That evidence discloses an almost nine-year course of bad faith dealings, negligence and nondisclosures by USF&G toward North Star and the other claimants in relation to their claims. *Id*.

In *Carter v. Hoblit*, 755 P.2d 1084 (Alaska 1988), the Alaska Supreme Court was presented with a similar situation. In that instance, the plaintiff, claiming a 35-year course of mishandling, brought suit 35 years after the defendant breached an alleged agreement as to which parties title to the real property in question would be placed by recording the property deed in his name alone. 755 P.2d at 1086. The plaintiff alleged misrepresentation and fraud which, like bad faith, often involve nondisclosure, including undisclosed information uniquely in the possession of one side and not the other, as in this case. *Id*. at 1086-88. The defendant asserted the 10-year statute of limitations applying to the determination of a claim relating to real property. *Id*. at 1086. The court held that the plaintiff's bringing suit 35 years later upon discovery of the basis of the claim sufficed. *Id*. at 1087, 1089-90 (including concurring opinion).

In one of the decisions cited by USF&G in its memorandum, *Greater Area, Inc. v. Bookman*, 657 P.2d 828 (Alaska 1982), the court also held that the statute of limitations for professional malpractice, which has some similarities to bad faith dealing by professionals

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83670
Page 13 of 37

(including the existence of a fiduciary relationship), does not begin to run until the client discovers, or reasonably should discover, the existence of all of the elements of his cause of action, including actual damages (which in this case could including mounting attorney fees and other collection costs caused by USF&G's conduct). 657 P.2d at 829-30. The court determined that, whereas ordinarily it would remand such a statute of limitations issue to the trial court, "since it involves a question of fact," under the circumstances presented in that case the statute of limitations defense failed as a matter of law. *Id*. at 830-31.

In this instance, the defense also fails. It has not been properly pled. The Court set deadlines for any amendments which the plaintiffs and Nugget and USF&G met, without any statute of limitations defense having been alleged. Once the amended answer not stating that defense was filed, amendments to the pleadings closed, or at least could be reopened only by leave of the court, and that leave of court was never requested. Discovery has closed. The court should not now allow the issue to be raised to be raised.

The defense of statute of limitations is a factual issue. Should the court allow it to be raised at this late date, USF&G, which has the burden of proof on that issue, has not proved that no genuine issue of material fact exists and that it is entitled to summary judgment upon the issue. Summary judgment, if allowed, should be granted to North Star and the other claimants. As set out in previous filings (*see, e.g.,* Clerk's Docket Nos. 508, 510 & 519 incorporated herein by reference), USF&G's bad faith dealing has been of a continuing nature undisclosed to the claimants. USF&G owed a fiduciary duty of due care and fair dealing to those claimants. Instead, it turned over the entire defense of this matter, including USF&G's defense, to Nugget, which is like placing the fox in charge of the hen house. *Id*. No wonder the case did not settle

_____
North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83670
Page 14 of 37

early and has not settled to this date.  The conflict of interest and breaches of duty continue to this date.  North Star and the other claimants only recently discovered that breach or had the reasonable opportunity to discover that breach.  Furthermore, the action was already commenced in accordance with the court rules, and USF&G named as a party, eight years ago, thus tolling any statute of limitations.

USF&G should be denied summary judgment, and North Star granted summary judgment instead upon this issue.

### B.  Response to USF&G's Motion for Summary Judgment Based on Bad Faith Case

USF&G's argument for summary judgment upon this claim appears to be two-fold.  First, that the surety upon a Miller Act payment bond owes a duty of good faith and fair dealing only to its principal on the bond (in this case Nugget), to its separate indemnity agreement with that principal, and not at all to the laborers, suppliers and subcontractors for whose care and protection the payment bond is intended by law.  Second, that there is no evidence whatsoever in this case supporting a claim of bad faith against USF&G.

USF&G is terribly wrong on both points.  Indeed, its insistence that it owes no duty to North Star or the other intended beneficiaries of the payment bond in this case, as set out in its motion and memorandum on this point, becomes Exhibit A in this case against USF&G.  The positions that USF&G takes there, and also took in its recent deposition of plaintiffs' expert Grant Callow, demonstrates USF&G's misplaced priorities, bad faith dealing, and callous disregard toward the interests of the claimants, who are, after all, its assureds under the payment bond applicable to the project.

_____
North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83670
Page 15 of 37

Accordingly, USF&G should be denied summary judgment upon its motion, and North Star should be granted summary judgment upon the claim, or granted rulings at least upon the law applicable to the case as set out in this memorandum and previous memoranda.

### 1.  USF&G's Duty of Good Faith Dealing Toward North Star Most Assuredly Exists in this Case.

The applicable duty of good faith dealing owed by USF&G to North Star in this matter, and North Star's right under the payment bond to bring a tort claim of bad faith dealing against USF&G has already been addressed in North Star's Joinder in Shoreside and Metco's Motions for Summary Judgment and Determinations of Law Regarding USF&G (Clerk's Docket No. 519), in Shoreside and Metco's Motion and Memorandum for Summary Judgment and Determinations of Law Regarding USF&G (Clerk's Docket Nos. 508 & 510), and, most recently, in North Star's Memorandum in Support of Opposition and Cross-Motion to Nugget and USF&G's April 28, 2006 Motion for Summary Judgment Against North Star, in relation to the similar duty supporting a claim for negligence against USF&G (Clerk's Docket No. 535 at pp. 32-34).[8]

In *Loyal Order of Moose, Lodge 1392 v. International Fidelity Insurance Company*, 797 P.2d 622 (Alaska 1990), the Alaska Supreme Court recognized the right of the intended

---

[8]  As alluded to earlier, upon further consideration it is also becoming evident from the evidence that the nature of the duty USF&G owes toward the plaintiffs and use plaintiffs in this matter also supports the claims of negligent or intentional misrepresentation or nondisclosure by those parties against USF&G.

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 16 of 37

45-40 / #83670

beneficiaries under a payment or performance bond to bring a tort claim of bad faith dealing

against the surety on that bond.  797 P.2d at 626-28.[9]

In *K-W Industries v. National Surety Corporation*, 855 F.2d 640 (9th Cir. 1988), the

United States Ninth Circuit Court of Appeals held that such a cause of action under state law

applies to claimants like North Star having claims against the surety and its payment bond under

the federal Miller Act.  855 F.2d at 643.

> Indeed, the Congressional purpose of protecting suppliers of goods
> and services for federal projects is advanced if sureties are deterred
> by state tort law from bad faith practices in responding to claims
> on Miller Act payment bonds.

*Id.*  The purpose of the Miller Act is to protect persons supplying materials and labor for federal

projects.  *Id.* at 642-43.  That Act gives those intended beneficiaries a direct cause of action

against the surety and payment bond intended specifically "for the use and benefit" of those

protected persons.  *Id.  Accord, Alvarez v. Insurance Co. of North America*, 667 F. Supp. 689

(N.D. Cal. 1987).

The Alaska Supreme Court and Ninth Circuit courts are not alone in this position.  In

Shernoff, Gage & Levine, *Insurance Bad Faith Litigation*, § 5.44 entitled "Surety Bonds" (1991

---

[9]   In reaching that conclusion the Alaska court chiefly relied upon its previous holding in *State Farm
Fire & Casualty Co. v. Nicholson*, 777 P.2d 1152 (Alaska 1989), and the Arizona Supreme Court's
decision in *Dodge v. Fidelity & Deposit Co. of Maryland*, 778 P.2d 1240 (Ariz. 1989). *Id.*  The Alaska
court adopted the analysis from *Dodge*, which it quoted from as follows:

> Plaintiff's position is simple:  Sureties are insurers, insurers are subject to bad faith tort
> liability; therefore, sureties are subject to bad faith tort liability . . . . [T]his proposition is
> supported by our statutes, case law and sound policy reasons.

*Loyal Order of Moose*, 797 P.2d at 627.

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 17 of 37

45-40 / #83670

ed.), it is stated:[10]

A surety contract is similar to liability insurance in many ways, but they are not identical. In general, surety contracts are considered contracts of insurance and are construed according to the same rules as insurance contracts. The essential difference is that the promisor in an insurance contract undertakes to protect the insured against loss or damage through liability on the part of the insured to a third person, while the surety undertakes to protect the promissee against loss or damage through the failure of a third person to fulfill its obligation to the promise.

A California court of appeal has held that an obligee under a surety bond may maintain a cause of action against its surety for engaging in acts that violate the state's unfair claims settlement practices act. In so holding, the court relied primarily on the fact that under the California Insurance Code, surety is specifically included among the classes of insurance. The court also reasoned that obligees under surety contracts are as susceptible to unfair claims and settlement practices as claimants under insurance contracts, and that a high standard of good faith is particularly appropriate in some surety situations, such as construction completion bonds. The Montana Supreme Court found the California court's reasoning persuasive in a suit to establish the liability of a surety under Montana's unfair claims settlement practices law. The court in that case also held that the surety's liability is not restricted to the express terms of a surety contract when it commits an independent tort.   * * *

The Alaska Supreme Court has recognized a cause of action for bad faith in the context of surety and performance bonds, based on the disparity of financial resources between the typical surety and obligee and on the public interest in fulfillment of obligations under such bonds. The court held that as long as the surety acts reasonably in response to a claim made by its obligee, the surety does not risk bad faith tort liability. However, if the surety fails adequately to investigate the obligee's claims, or to remedy the principal's default or arrange for completion of the contract as required by the terms of the bond, the surety may be subject to tort liability. The surety's unquestioning reliance on the principal's representation that it has fully performed the construction contract, will not suffice to avoid bad faith liability [citing *Loyal Order of Moose, Lodge 1392 v. International Fidelity Insurance Company*, 797 P.2d 622, 628 (Alaska 1990)].

Because sureties are treated as insurers, courts will generally apply to sureties the same standard that is applied to insurers for determining liability for breach of

---

[10]   This source has been relied upon by the Alaska Supreme Court as authorative in its opinions on insurance law. *See, e.g.*, *Hillman v. Nationwide Mutual Fire Ins. Co.*, 855 P.2d 1321, 1324 (Alaska 1993).

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 18 of 37

45-40 / #83670

the duty owed to the insured. Thus, if insurers' liability for bad faith is
determined according to a negligence standard in the jurisdiction, the same
negligence standard will apply in actions against sureties.

Although the surety has an enforceable obligation of good faith toward its
principal, this obligation is not in irreconcilable tension with its duty to deal in
good faith with its obligee [citing *Dodge v. Fidelity & Deposit Co. of Md.*, 161
Ariz. 344, 778 P.2d 1240, 1243 (1989)]. As long as the surety acts reasonably in
response to a claim made by its obligee, the surety does not risk bad faith tort
liability. [*Id.*][11]

USF&G seeks desperately to ignore that law and its paramount duties toward these

claimants under that law, just as it has done for the past eight or nine years as relates to the

claims against the payment bond in this matter. It seeks to distinguish the holding in *Loyal*

*Order of Moose* by characterizing that case as involving a performance bond. *See* Clerk's

Docket No. 502 at p. 4. However, the case involved performance and payment bonds. USF&G

ignores that the question in that case to which the court responded was, as the court stated: "Does

Alaska recognize the tort of bad faith in the principal and surety context of a commercial

construction claim?" 797 P.2d at 626. USF&G also ignores the court's answer to that question:

"We conclude that an implied covenant of good faith and fair dealing exists between a surety and

---

[11]    This source on the prevailing law was provided to undersigned counsel by Alaska attorney William
Grant Callow, whom USF&G seeks to bar from testifying as an expert witness on behalf of the plaintiffs
and use plaintiffs herein. USF&G argues Mr. Callow is "unqualified" in a separate motion and
memorandum (Clerk's Docket Nos. 505, 506 & 517). There USF&G argues: "To demonstrate [Mr.
Callow's] lack of knowledge with respect to surety law, one need only look at his testimony on page 25
[of his deposition] that he considers sureties to be insurers, which is legally incorrect under Alaska law."
Clerk's Docket No. 506 at p. 10. Following that statement in that memorandum by USF&G, there is a
reference to a footnote 3, where one might expect some legal authority to be found, but in fact there is no
text for a footnote 3 provided in the memorandum. The footnotes instead skip from 2 to 4. *Id.* In other
words, USF&G has no authority for its position, which is actually incorrect under Alaska law (and Ninth
Circuit law, specifically as applied to Miller Act payment bonds). Looking at the actual applicable law,
which is the province of this Court, not USF&G, and comparing it to Mr. Callow's expert report and
opinions expressed at his recent deposition (*see* Shoreside and Metco's Opposition to USF&G's motions
being filed separately), it becomes evident that Mr. Callow is qualified and that USF&G is not.

---

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83670
Page 19 of 37

its obligee on **payment** and performance bonds." *Id.* (emphasis added.) [12]

USF&G in its memorandum then engages in a prolonged dissertation on whether the duty of good faith dealing it owes these claimants under the payment bond as held in *Loyal Order of Moose* and *K-W Industries* is a "fiduciary" duty.  The response is simple.  First, it does not have to be a "fiduciary" duty for the duty to exist.  Clearly, the Alaska Supreme Court has stated the duty exists.  Second, that court has also stated that the duty is a fiduciary one.  As the Alaska Supreme Court has stated several times, for example in *Alyeska Pipeline Service Co. v. H.C. Price Company*, 694 P.2d 782, 788 (Alaska 1985), the "fiduciary relationship inherent in every insurance contract gives rise to an implied covenant of good faith and fair dealing."  In *Loyal Order of Moose*, the Alaska Supreme Court added:

> In our view the relationship of a surety and its obligee – an intended creditor third-party beneficiary – is more analogous to that of **an insurer to its insured** than to the relationship between an insurer and an incidental third-party beneficiary.

797 P.2d at 628 (emphasis added).

It is also more than that.  As was discussed in detail in North Star's recent response to Nugget's motion for summary judgment, it is a statutory duty, to which both federal and state statutes and strong public policy considerations apply, including the Miller Act, the Federal Prompt Pay Act, and standards of fair dealing set out in AS 21.36.125 and related regulations.

---

[12]    The court immediately added:

> This conclusion is based in part on *Nicholson* [*see State Farm Fire & Casualty Co. v. Nicholson*, 777 P.2d 1152 (Alaska 1989)] and in part upon the persuasive reasoning of the Supreme Court of Arizona in *Dodge v. Fidelity & Deposit Co. of Md.*, 161 Ariz. 344, 778 P.2d 1240, 1243 (1989).

797 P.2d at 626.

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 20 of 37                                                                                    45-40 / #83670

*See* Clerk's Docket No. 535 at pp. 29-37, incorporated herein by reference.

In support of its mulish stand to the contrary set forth in its memorandum, USF&G discusses only some general, unrelated cases on what might constitute a "fiduciary," all of which is by way of diversion because the issue is settled as to this case. USF&G owes the claimants a paramount duty of due care, good faith and fair dealing, and it is a fiduciary duty.

USF&G then goes on to mischaracterize a surety's obligations on a payment bond as just a "credit transaction" wherein, according to USF&G, the surety's primary duties are toward its principal and the surety's own, separate agreement of indemnity with the principal intended to, above all else, protect the surety from risk (such as, by tendering the defense of any claim to its principal, in this case Nugget). Clerk's Docket No. 502 at 5-8. As with most of its memorandum, USF&G cites no legal authority for those arguments. Indeed, the only "authority" cited in the memorandum for the most significant, incorrect conclusions asserted there by USF&G is the notation, in capital letters, "(CITE)". *Id*. at 6. That is not legal authority; that is an absence of legal authority. It mirrors the absence of any consideration whatsoever by USF&G toward these claimants or their claims throughout this matter.

Quoting out of context from an older federal district court case, *Winston Corp. v. Continental Casualty Co.*, 36 F. Supp. 1023, 1030 (S.D. Ohio 1973), USF&G argues that "Law of surety's generally holds that a contract of suretyship must be strictly construed in the interests of the surety, and the surety cannot in law or equity, be bound further than the very terms of his contract." That mistaken view (again taken out of context) by which USF&G tries to justify its total disregard of these claimants and their claims for the past eight or nine years, is at odds with current Ninth Circuit law as specifically applied to the Miller Act. In *United States ex rel.*

_____

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 21 of 37

45-40 / #83670

*Walton Technology, Inc. v. Weststar Engineering, Inc*., 290 F.3d 1199 (9th Cir. 2000), the Ninth

Circuit Court stated:

> Although general rules of suretyship law apply to Miller Act cases, *Am. Cas. Co. of Reading v. Arrow Road Construction Co.*, 309 F.2d 923, 924 (9th Cir. 1962), defendants assume that coexistence liability between a surety and its principal is in every case defined and limited by the principal's contractual liability.  In the context of Miller Act cases, however, we must look beyond the principal's contractual liability to the Miller Act itself, in defining the limits of coextensive liability between a surety and its principal.  *  *  *  Thus, the liability of a surety and its principal on a Miller Act payment bond is coextensive with the contractual liability of the principal ***only to the extent that it is consistent with the rights and obligations created under the Miller Act.***

290 F.3[rd] at 1206 (emphasis added).  In other words, the surety's undertaking and duties toward

claimants under a Miller Act payment bond are not at all, as USF&G supposes in its

memorandum, "limited [just] by, the four corners of the bond", or by the surety and principal's

General Agreement of Indemnity, which is not even a part of the payment bond or of the Miller

Act (Clerk's Docket No. 502 at pp. 7-8).  Rather, those duties and obligations, especially as they

apply to the intended beneficiaries under the payment bond like these claimants, are defined by

the applicable statutes and law, including state law, which has been stated in this response.

That issue, as to USF&G's duties to these plaintiffs and use plaintiffs, is a question of law

which this Court can and should decide.

<div align="center">

**2.  There is Sufficient Evidence in This Case to Support
a Claim of Bad Faith Against USF&G And, Indeed, to
<u>Grant the Claimants Summary Judgment on the Basis of that Evidence.</u>**

</div>

North Star and USF&G can agree, as stated at page 8 of USF&G's memorandum on the

subject, that:

---

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                        45-40 / #83670
Page 22 of 37

"[U]nreasonable" conduct under the circumstances subjects a surety to a liability for breach [of the duty of good faith and fair dealing]. "So long as a surety acts reasonably in response to a claim made by its obligee, the surety does not risk bad faith tort liability." *Moose, supra*, at 629. *See also, Dodge v. Fidelity & Deposit Company of Maryland*, 778 P.2d 1240, 1241 (Ariz. 1989); and *Hillman v. Nationwide Mutual Fire Ins. Co*., 855 P.2d 1321 (Alaska 1993).

However, North Star does not agree that the indented quotation appearing at page 8 of that memorandum and attributed to "*Hillman, supra*, at 1324" and purporting to set out a two-step standard is the law of Alaska. Quite the contrary. Instead, in *Hillman* the Alaska Supreme Court cautioned:

We [have] had no occasion to comprehensively define the elements of the tort of bad faith in a first-party insurance context . . . nor do we do so now.

855 P.2d at 1323. During the course of a two-page discussion which followed regarding some times differing standards among courts, the Alaska Supreme Court identified one of those standards, which it did not adopt, as a "double requirement" standard "expressed by the Wisconsin Supreme Court in *Anderson v. Continental Insurance Co*., 85 Wis.2d 675, 271 N.W. 368 (Wis. 1978)". *That* "double standard" is the standard USF&G lifts out of context, both by type of case and by court of origin, from *Hillman* at 855 P.2d 1324 and page 8 of USF&G's memorandum.

As just noted, that is *not* the standard that the Alaska Supreme Court adopted. Rather, the Alaska Supreme Court applied a different standard to the case that "necessarily requires that

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                 45-40 / #83670
Page 23 of 37

the insurance company's refusal to honor a claim be made without a reasonable basis,"[13] *citing and quoting* from none other than *Loyal Order of Moose, Lodge 1392 v. International Fidelity Insurance Co.*, 797 P.2d 622, 628 (Alaska 1990), in the precise context of a surety's obligations, and also *Dodge v. Fidelity & Deposit Co. of Md.*, 778 P.2d at 627 n.8, which, the Alaska court stated:

> . . . uses language mirroring the rule of law employed in today's opinion: "So long as a surety acts reasonably in response to a claim made by its obligee, the surety does not risk bad faith tort liability."

*Hillman*, 855 P.2d at 1324 & n.7.

Later in *Hillman*, the Alaska Supreme Court again stated that the standard of bad faith being employed by it was "merely that where the insurer establishes that no reasonable jury could regard its conduct as ***unreasonable***, the question of bad faith need not and should not be submitted to the jury." 855 P.2d 1325 (emphasis added).[14]

---

[13]    In reaching that conclusion, the Alaska Supreme Court in *Hillman* relied upon and quoted from Shernoff, Insurance Bad Faith Litigation, § 5.02 [1] at pp. 5-6 (1992) as follows:

> In third party situations, an insured can be liable for an excess judgment when it has failed to settle a third party action against its insured. However, courts have not agreed on the standard for imposing such liability. Some courts impose liability for a negligent failure to settle the third party action; others apply a "bad faith" test that, in practical terms, ***amounts to a negligence test***; and a third group of courts [like in *Anderson*] applies a fairly strict requirement of subjective bad faith. *Hillman*, 855 P.2d at 1324 (emphasis added).

[14]    In *Hillman*, the Alaska Supreme Court held that that question need not have been presented to the jury because in an earlier decision on the same case [*Hillman I*, 758 P.2d at 1250], the Alaska Supreme Court had held that the insurer's application of the policy exclusion which the Hillmans argued amounted to bad faith was "the only reasonable interpretation" of the exclusion. *Id*. In other words, the issue rested solely upon a legal interpretation and the court sided with the insurer on that issue. There was no factual issue as is presented in this case.

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 24 of 37

45-40 / #83670

In short, USF&G continues to seek to justify its extreme conduct and positions taken in this case by relying upon "a fairly strict requirement of subjective bad faith" that has not been adopted by the Alaska Supreme Court.

The *correct* standard, which is stated in terms of the surety's "reasonableness" of action, akin to a negligence test, is the standard to be applied to USF&G's motion on this subject and the issue of whether there is sufficient evidence presented in this case, when considered in the light most favorable to the claimants, to defeat USF&G's motion for summary judgment. There is. Indeed, the evidence supports summary judgment for the plaintiffs and use plaintiffs in this case on that issue.

In his report previously submitted to the Court, Mr. Grant Callow notes some of the actions and inactions of USF&G amounting to a bad faith failure to properly and independently investigate, handle and settle the claims of the claimants. *See* Mr. Callow's report, Clerk's Docket No. 460, Exh. 1. He refers to documents first disclosed to these plaintiffs in November of 2005 and in a subsequent set of production through Mr. Viergutz's office on or about January 10 of this year. *Id. See* Exhibit 1 attached hereto. *See also* Exhibit 2 attached hereto, transcript pp. 3, 94-95, 108, & Exh. pp. 19-33.

More information was revealed through the deposition taken on March 8, 2006, of Mr. James Ferguson, wherein many of the same documents were used. Mr. Ferguson testified that he is the Alaska area surety manager for Willis of Alaska. *See* excerpts of James Ferguson's deposition transcript attached hereto as Exhibit 2, at tr. pp. 6-7. He also testified that he has been the agent and broker for both USF&G and Nugget in relation to the Homer Spit Repair and

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83670
Page 25 of 37

Revetment project herein pertinent. *Id*. at tr. pp. 11-12, 90. He confirmed that he was USF&G's attorney-in-fact listed on the payment bond for that project to whom notice regarding project claims and developments relating to the bond was to be addressed, at his address. *Id.* at tr. pp. 16-17, 60, 64, 67, 85, 89-90, 100-108.

Undisputed from that deposition and from the previous record established in this case is that USF&G knew, or at least had written notice, at least as early as August 1997, of North Star and the other claimants' claims and of Nugget's takeover of Spencer Rock's operations and interception of Spencer Rock's funds through a secret arrangement that none of the claimants or even the project owner Corps of Engineers had known about. *See, e.g.*, this Court's August 30, 2002 Order—Motions for Summary Judgment, Clerk's Docket No. 310 at 11-12 and record on file referenced there. *See also* discussion *infra*. USF&G knew or should have known at least by then, through such correspondence between Nugget and the U. S. Army Corps of Engineers and USF&G, that the Corps, which was the project owner, considered Nugget fully and directly responsible "for prompt payment to suppliers and subcontractors who contracted with Spencer Rock Products on this project" as a result of Nugget's assumption of those operations. *Id*. & attached Exhibit 2 at tr. pp. 89-90 & Exh. p. 29. That direct responsibility was the basis for liability echoed later in this Court's August 30, 2002 summary judgment Order. Clerk's Docket No. 310.

Because immediately copied with it, USF&G also had notice of the letter of September 19, 1997 from North Star's attorney to Nugget's attorney, Mr. Lukjanowicz, that North Star asserted Miller Act claims against Nugget partly on the basis of a direct relationship between North Star and Nugget, as confirmed later by this Court's August 30, 2002 Order. *See*

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                 45-40 / #83670
Page 26 of 37

Exhibit 3 attached hereto; Exhibit 1 tr. pp. 106-107.

As a result of the situation, USF&G should have known that a conflict of interest existed between it and Nugget, the principal on the bond, as regards the claimants' claims. Nevertheless, instead of independently investigating and handling those claims, and challenging Nugget regarding them, USF&G turned the matter over to Nugget to "handle" and keep USF&G "clean out of this." *See* Exhibit 2 at tr. pp. 100-101, 104-108 & Exh. p. 20. Furthermore, USF&G, once sued on those claims in mid-January 1998, immediately turned the entire defense of them over to Nugget, in February 1998, and with that USF&G's duties of good faith and fair dealing toward the bond's intended beneficiaries, the claimants, through a tender of defense which Nugget accepted. *Id.* at tr. pp. 63-64 & Exh. pp. 30-35. By doing so, USF&G acceded to the wishes of its principal, Nugget, and also saved itself the expense of defense, under a separate indemnity agreement it had with Nugget which was not part of the payment bond—a situation Mr. Callow in his report likened to "putting the fox in charge of the henhouse." *See* Clerk's Docket No. 460, Exh. 1 at 11.[15]

USF&G also ignored the representations in the March 12, 1998 letter and exhibits of J. Dennis Stacey, President of Chugach Rock Corporation, another claimant, which were sent

---

[15]    *In Loyal Order of Moose, Lodge 1392*, the Alaska Supreme Court emphasized the "appositional" situation such split loyalties can put the surety in, wherein the surety often finds it difficult to decide whether to accede to the demands of the claimant or abide by the position desired by the principal. 797 P.2d at 627-28 n.8.

>    Given the nature of a corporate surety's business, and its knowledge of the inherent risk it entails, it can have no real confidence that a "middle man" plea on its part . . . will find a favorable reception with the court.

*Id.*, quoting from Brumley, *Duty of A Shielded Surety to Investigate*, 17 Forum 266, 280 (1981), and *Dodge v. Fidelity & Deposit Co. of Md.*, 778 P.2d 1240, 1243-44 (Ariz. 1989).

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83670
Page 27 of 37

directly to USF&G's designated Surety Claims Specialist, attorney Jane Bennett Poling.  *See* Exh. 2 attached hereto at tr. pp. 109-113 & Exh. pp. 23-28.  That letter contained insider information detailing Nugget's takeover, control, and subterfuge bleeding Spencer Rock of funds and the ability to pay others.  *Id*.  That letter, which was only recently revealed to these claimants, is attached as an exhibit to Mr. Stacey's affidavit filed herein with Shoreside and Metco's separate motion for summary judgment against Nugget, at Clerk's Docket Nos. 508 and 514.  That letter was also received by USF&G in March 1998, as shown by its receipt stamp, but not produced to these claimants until November 2005, and used as an exhibit at Mr. Ferguson's deposition.  *See* Exhibit 2 attached hereto at tr. pp. 109-113 & Exh. pp. 21-23.

In that letter, Mr. Stacey gave clear, unmistakable warning of the ultimate facts and principles constituting USF&G's obligation to pay the claims in this case.  *Id*.  In that letter he notified Ms. Poling early on of key facts these plaintiffs have since had to ferret out through long, expensive discovery and litigation, but which USF&G already knew (and the claimants did not know USF&G knew), including:

> After Spencer began quarrying rock, its operations were taken over by Nugget (see enclosed Support Agreement).  At that point, Nugget became <u>directly</u> responsible for payment for all rock removed from the quarry for the prime contract. * * * <u>By its actions, Nugget implicitly accepted Spencer's obligations to pay for the rock it took to its job from the quarry</u> . . . .
>
> Nugget stepped into the sub-contractor's role in operating the quarry, and Nugget and its surety must accept the payment obligations for the quarry material shipped to the project.  Nugget has asserted offsetting claims against Spencer Rock and for this reason has not paid Spencer . . . .

*Id*. at Exh. pp. 23-24 (emphasis in original).

_____

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83670
Page 28 of 37

It is striking how much that notice by Mr. Stacey to USF&G's Surety Claims Specialist sounds like the material facts North Star and the other claimants herein were able to ultimately develop against Nugget and USF&G four years later, mostly as a result of information ultimately provided to them in 2002, not by Nugget or USF&G but by Spencer Rock and Robert LaPore. *See, e.g.*, Clerk's Docket Nos. 282, 399 at 7-8 & 17-18 & 401 at 2-4.  Mr. Stacey's notice also sounds very much like that notice the Corps of Engineers gave USF&G in correspondence on August 26, 1997 which USF&G received.  *See* Exhibit 2 attached hereto at tr. pp. 104-107 & Exh. p. 29.  It sounds very much like the ultimate findings of this Court in its August 30, 2002 Order (Clerk's Docket No. 310), of which USF&G also obviously had notice, and in the conclusion last year of the Ninth Circuit Court of Appeals finding evidence of Nugget's control and subterfuge in this matter.  (Clerk's Docket No. 383 at 6.)

Thus, USF&G has known for almost nine years of the basis of the present claims and has not yet undertaken to fulfill its duties.  It has instead turned the interests of these claimants, its insured beneficiaries under the payment bond, over to Nugget entirely to "handle."  It did so in those words, as correspondence between Mr. Ferguson and his principal, USF&G, confirms. Exhibit 2 at tr. pp. 100-101, 104-108 & Exh. p. 20.

Other recently produced correspondence addressed by Mr. Callow and at Mr. Ferguson's deposition reveals that USF&G questioned Nugget's defenses and yet, throughout this matter, blindly accepted the representations of Nugget and Nugget's attorneys, also representing USF&G, that they were "unable" to settle the claims brought against Nugget and USF&G by these claimants.  *See, e.g.,* Clerk's Docket No. 460, Exh. 1 at 5, 7.  USF&G did so without ascertaining the truth (nor apparently seeking the truth) that Nugget and its attorneys had in fact

_____
North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                          45-40 / #83670
Page 29 of 37

made no offers to settle, at least until their first offer in June 2005 (of only $35,000 to settle all claims). Until then, they also ignored the claimants' own repeated settlement efforts. Exhibit 2 at tr. pp. 124-125.

North Star understands that additional evidence of USF&G's bad faith is being presented by counsel for claimants Shoreside and Metco in opposition to USF&G's motions, including USF&G's motion to bar the introduction of Mr. Callow's opinions, testimony, and report (*see* Clerk's Docket Nos. 505, 506 & 516). That evidence being presented to the Court by Shoreside and Metco and consisting chiefly of excerpts from Mr. Callow's deposition taken in March 2006, should also be considered as further evidence of USF&G's bad faith conduct in opposition to the present USF&G motion. North Star incorporates that evidence, and Shoreside and Metco's filings regarding it, by reference herein. It is strong evidence on the subject and admissible.

For its argument that no evidence exists to support the plaintiffs' allegations of bad faith, USF&G contends only as follows: (1) that the claimants failed to provide requested documents to USF&G concerning their claims, and (2) that brief questioning by Mr. Viergutz of them did not support the claims. See Clerk's Docket No. 502 at pp. 9-12.

As to the first argument, North Star provided all requested, necessary documentation. It also provided additional documentation and information during the course of this litigation. Whereas, USF&G contends that North Star did not fill out a "proof of claim" on a particular proof of claim form which was sent to it in late 1997 by USF&G's Surety Claims Specialist Jane Bennett Poling, the fact is that North Star provided all of that information, maybe just not on that form. Notably, the letter from Ms. Poling to North Star denying its claim, "subject to further correspondence" to her, is dated January 28, 1998. By then, North Star's complaint in federal

_____
North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                 45-40 / #83670
Page 30 of 37

court naming USF&G had been filed, on January 16, 1998. It had been served upon USF&G on

January 22, 1998, and Oles Morrison had already entered a formal joint appearance in the suit for

USF&G and Nugget on January 27, 1998. Full documentation of the claim (invoices, etc.) had

also already been provided by North Star through its legal counsel in correspondence copied to

USF&G in September 1997, and then again as attachments to North Star's Complaint filed in

court on January 16, 1998. Presumably Ms. Poling knew all of that and had that information, as

is also reflected by her correspondence attached as part of Exhibit 2 hereto tendering USF&G's

defense to Nugget about the same time as her pretextual letter to North Star dated January 28,

1998 (Clerk's Docket No. 500 Exh. C at 1). Understandably, legal counsel for North Star was

not going to correspond with Ms. Poling at that juncture, after a formal lawsuit had commenced

and the Oles Morrison law firm had formally entered its appearance for USF&G in the matter.

USF&G cites no law requiring that a claimant complete a surety's particular proof of

claim form, especially where that form asks for the same description of claim and documentation

that North Star and the Corps of Engineers had already clearly provided to USF&G in prior

correspondence. All of that, of which Ms. Poling and USF&G had notice, was the "proof of

claim." Anything else North Star did not know about yet.

As to the second argument, contrary to USF&G counsel's characterization (Clerk's

Docket No. 502 at p. 10), none of the claimants' designees, including North Star's president Jeff

Bentz, were designated as "bad faith 'experts'". Furthermore, USF&G omits important portions

of that testimony. For example, at Mr. Bentz's Rule 30(b)(6) deposition taken on November 21,

2005, Mr. Viergutz commenced his questioning as follows:

> Q: *I don't want any legal conclusions. I just want your understanding, your*
> *own personal understanding as a layman. If I sue you in business – you are a*

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                    45-40 / #83670
Page 31 of 37

> ***businessman***.  If I sue you, do ***you*** have a right to go to trial, or do you have to settle that case?

*See* Exhibit F, tr. p. 209 (Clerk's Docket No. 500) (emphasis added).

The Court is requested to read the entire nine pages of questions and answers which follow that line of questioning (*id.* at Exh. F, tr. pp. 209-218), rather than the only one page of selective excerpts from those pages of deposition transcript which USF&G chooses to repeat at page 11 of its memorandum.  Upon doing so, it will become evident to the Court that Mr. Viergutz was in fact asking the witness to give legal conclusions, which were objected to on that and other bases, and that USF&G was mixing apples and oranges in its questions.  USF&G's duties as a surety are ***not*** the same as any "layman".  In addition, USF&G leaves out particularly pertinent portions of Mr. Bentz's "layman" testimony on the subject of bad faith, as follows:

> Q:  What is your understanding of bad faith nonpayment?  A:  Depends on the circumstances.  Q:  In this circumstance.  A:  What's meant by this?  Q:  Yes.  A:  From a layman's terms, from me?  Q:  Yeah.  A:  I believe that USF&G was probably fairly aware that there was a problem with their customer at the time that they were bonding Nugget because of the various correspondence that was going on, and they absolutely nothing and I believe that that was negligent.  * * *  Q:  Do you know the difference between negligence and bad faith?  A:  Depending on the circumstances, yeah.  MR. SEWRIGHT:  Are you calling for a legal conclusion now?  MR. VIERGUTZ:  No, just his understanding.  A:  What do you mean?  Q:  The difference between negligence and bad faith.  A:  I think they're kind of similar on this particular circumstance, in my own mind.  I mean, I'm not a lawyer so I don't write legal language, and I know that things can be interpreted different depending on the words you use.  But USF&G's failure in this particular case, in my opinion, ***was the fact that they did nothing.  They didn't step in [at all]***.  * * *

Exhibit F, tr. pp. 209-212 (emphasis added).  Throughout the rest of his deposition testimony on that subject, Mr. Bentz explained what he meant by his statements.  *Id.* at 212-219.

Obviously, as set out above, Mr. Bentz's brief testimony on that subject, in which he was not testifying as an "expert", is not all of the evidence of USF&G's bad faith conduct in this

_____

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83670
Page 32 of 37

case.  There is much, much more.

When USF&G should have independently investigated and seriously considered paying the claims, its records demonstrate that it breached and disregarded its duties toward the claimants instead.

Accordingly, summary judgment should also be denied USF&G on this issue.  The jury should be allowed to hear and decide the evidence.  Alternatively, North Star should be granted summary judgment upon the issue, or granted determinations of law on the case as set out previously herein.

### C.  Response to USF&G's Motion to Bar the<br>Introduction of Mr. Callow's Opinion, Testimony and Report

For its response to this motion by USF&G (as set out in USF&G's filings at Clerk's Docket Nos. 505, 506 & 516), North Star adopts the response and the cross-motion to bar the testimony of USF&G's professed expert, Mr. George, being filed by Shoreside and Metco.  In order to save paper and the court's reading time, Shoreside and Metco's response and cross-motion on those subjects are incorporated herein in their entirety by reference and adopted by North Star.

In addition, North Star makes the following observations.

Whereas expert testimony that only states an opinion on the current status of the law on a particular subject is normally excluded, because it is a province of the court to state the law and therefore such testimony is not normally "helpful to the jury," testimony on certain mixed questions of law and fact is allowed, "particularly when complex areas of law are involved such as *insurance*, tax, or patent law.  *Hagen Insurance, Inc. v. Roller*, Alaska S.Ct. Slip Op. 5975, 2006 Alaska Lexis 4 at *18-19 (Alaska January 20, 2006).

> . . . [A]lthough witnesses "generally should not be permitted to give their opinions on questions of . . . law, *this rule does not apply where the legal issue is raised in such a manner that it becomes an operative fact to be proven within the case*."

*Id*. (citations omitted) (emphasis added).

Mr. Callow's report and opinions stated there, as well as many of the opinions stated at his deposition, address operative facts in this case relating to USF&G's breach of duty. At Mr. Callow's deposition, counsel for USF&G also asked him several threshold questions on the subject of whether USF&G owed a duty of good faith dealing and due care to these claimants including North Star and the standard of conduct which should be applied to that conduct. That was Mr. Viergutz's doing. The impressive thing is that Mr. Callow answered all of those questions correctly, in accordance with prevailing Alaska and Ninth Circuit law on those subjects, as set out previously in this memorandum. The amazing thing is that USF&G, in its stated understandings of the applicable law in its memoranda and deposition questioning, so grossly misunderstands that law and its responsibilities.[16]

For the foregoing reasons, including those incorporated and adopted herein, USF&G's motion on this subject to bar Mr. Callow should be denied and the claimants' cross-motions to preclude the opinions, "report" and any testimony of Mr. George should be granted. Mr. George's short letter does not satisfy the disclosure requirements for retained expert witnesses provided for in Federal Rule of Civil Procedure 26. Furthermore, the brief, conclusory opinions he gives in that letter relate only to the issue of USF&G's duty of fair dealing and due care,

---

[16]     With that, USF&G also grossly misunderstands, and has long misunderstood, its legal duties to the claimants.

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83670
Page 34 of 37

which is a question of law for this Court, according to the established law set out previously in this memorandum.  Mr. George should not be allowed to testify, as set out in his letter, that USF&G has no duty when in fact, by law, it does, or that USF&G's paramount responsibilities are toward its principal on the bond and their separate side indemnity agreement, when those opinions are clearly contrary to established law.

### D.  Response to USF&G's Motion for Summary Judgment Upon Punitive Damages Claims

For its response to this argument for summary judgment by USF&G, North Star incorporates the statements of law and facts regarding punitive damages, as applied to the punitive damage claims against USF&G and Nugget, previously set out at pages 46-49 of North Star's Memorandum in Support of Opposition and Cross-Motion to Nugget and USF&G's April 28, 2006 Motion for Summary Judgment Against North filed at Clerk's Docket No. 535. North Star also adopts and incorporates the presentation of evidence of USF&G's outrageous behavior set out previously in this memorandum, in Shoreside and Metco's previous memoranda on file and their memoranda being filed today, and in North Star's Joinders previously filed herein at Clerk's Docket Nos. 518 & 519.

The main argument USF&G seems to make in its Memorandum in Support of Motion for Summary Judgment on Plaintiffs' Claims for Punitive Damages (Clerk's Docket No. 515) seems to be that there can be no claim for punitive damages in this case because "USF&G submits that this case is entirely a breach of contract action, and nothing more."  (Clerk's Docket No. 515 at p. 5.)  As has been demonstrated, that position is incorrect as a matter of law.  North Star and the other claimants' bad faith claim against USF&G, which is the only claim on which the Law Office of Barokas Martin & Tomlinson represents USF&G, is a tort.  According to the law cited

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83670
Page 35 of 37

by USF&G in its memorandum, punitive damages can be awarded where based upon a tort.  *Id*.

That is the established law.

USF&G next makes the argument in its memorandum on this subject that "As a matter of

law, the conduct alleged by the plaintiffs does not rise to the level where punitive damages are

warranted."  *Id*. at 6.  However, USF&G does not at all discuss the evidence there.  Previously

set forth evidence, including (1) USF&G's belief and insistence for the past eight or nine years

that it does not even owe the claimants a duty of good faith dealing, (2) its complete lack of

independent investigation, plus (3) its turning the entire claims issue over to Nugget as the "fox

in the hen house," constitutes sufficient evidence of outrageous behavior and reckless

indifference toward the claimants' justifiable interests under the payment bond and other

applicable law to constitute at least sufficient evidence to defeat a motion for summary judgment

upon this claim.  North Star should be granted summary judgment instead.

### III.  <u>CONCLUSION</u>

USF&G's motions disclose extreme, desperate positions and arguments directly contrary

to the law, facts, and responsibilities of a surety applicable to this case.  Those motions should be

denied.  North Star's cross-motions should be granted.

Dated at Anchorage, Alaska, on May 19, 2006.

<div style="margin-left: 50%;">

s/ Michael W. Sewright
Burr, Pease & Kurtz
810 N Street
Anchorage, Alaska 99501
Phone: (907) 276-6100
Fax: (907) 258-2530
E-mail: bpk@bpk.com
Alaska Bar No. 7510090

</div>

_____

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 36 of 37

45-40 / #83670

<u>CERTIFICATE OF SERVICE</u>

I certify that on the 19th day of May, 2006, a
copy of the foregoing NORTH STAR'S
OPPOSITION IN RESPONSE TO USF&G'S
MOTIONS REGARDING STATUTE OF
LIMITATIONS, BAD FAITH, EXPERT
GRANT CALLOW, AND PUNITIVE
DAMAGES was served electronically to:

    Steven S. Shamburek, Esq.
    Traeger Machetanz, Esq.
    Paul D. Stockler
    Herbert A. Viergutz
    C. Patrick Stoll, Esq.

    s/ Michael W. Sewright

North Star's Opposition in Response to
USF&G'S Motions Regarding Statute of Limitations,
Bad Faith, Expert Witness, and Punitive Damages
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                    45-40 / #83670
Page 37 of 37