Steven J. Shamburek
Alaska Bar No. 8606063
LAW OFFICE OF STEVEN J. SHAMBUREK
425 G Street, Suite 630
Anchorage, Alaska 99501
(907) 522-5339 Direct
(907) 522-5393 Fax

Attorney for Plaintiffs
Shoreside Petroleum, Inc.,
d/b/a Marathon Fuel Service
and Metco, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>      Plaintiffs,<br><br>  and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, on its own behalf,<br><br>      Intervening Plaintiffs,<br><br>  and<br><br>METCO, INC.,<br><br>      Intervening Plaintiff,<br><br>  vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>      Defendants. | **SHORESIDE'S AND METCO'S OPPOSITION TO USF&G'S MOTIONS REGARDING BAD FAITH, PUNITIVE DAMAGES, AND STATUTE OF LIMITATIONS**<br><br><br><br><br><br>3:98-cv-0009-TMB |

1

COMES NOW Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service ("Shoreside") and Metco, Inc. ("Metco"), by and through counsel, and file this Opposition To USF&G's Motions Regarding Bad Faith, Punitive Damages, and Statute of Limitations.[1] Shoreside and Metco join in and incorporate the arguments in North Star's Opposition to these motions.

### Introduction

Whether there is a cause of action for bad faith against a Miller Act surety is the pivotal issue that resolves the three related motions filed by USF&G. There is no doubt that the cause of action for bad faith against a surety exists as a matter of settled law in the state of Alaska. In addition, the cause of action is properly brought and maintained in a Miller Act case filed in a district court in the Ninth Circuit. USF&G did not and does not even acknowledge the duties.

Alvarez v. Insurance Co. of North America, 667 F.Supp. 689, 696 (N.D. Cal. 1987), and K-W Industries v. National Surety Corp., 855 F.2d 640 (9th Cir. 1988) are the two applicable cases. Title 31 C.F.R. Section 223.18 and the related provisions are among the applicable federal regulations. Loyal Order of Moose, Lodge 1392 v. International Fidelity Ins. Co., 797 P.2d 622 (Alaska 1990), and State Farm Mutual Automobile Insurance Co. v. Weiford, 831 P.2d 1264 (Alaska 1992) are two of the applicable state cases. Alaska Statute 21.36.125 addressing "Unfair claim

---

[1] This pleading addresses the motions and memorandums filed by USF&G at Docket Entry Nos. 496, 497/498 and 500/502.

settlement practices" and AS 21.90.900(24) and (26) are among the applicable state laws. Title 3 AAC 26.010 - .070 are among the applicable state regulations. These cases, statutes and regulations are discussed and the arguments developed in other pleadings.

USF&G maintains that it did not and does not need to do anything more than take direction from its principal Nugget. USGF&G has not even argued in the alternative that it complied with the duties. USF&G's willful and wanton failure even to acknowledge its duties warrants an award of significant punitive damages. Finally, USF&G continues to breach its duties even as the parties focus more attention on it. USF&G has not changed its behavior in almost eight years and thus the statute of limitations has not even begun to run.

## Discussion

These issues are discussed in other pleadings filed by the claimants. Those discussions and the previous references to the record are also incorporated by reference. In the first Supreme Court decision to construe the Miller Act after it was passed on August 24, 1935, <u>Fleisher Co. v. United States</u>, 311 U.S. 15, 17 (1940), the Court holds that: "In construing the earlier Act, the Heard Act, for which the Miller Act is a substitute, we observed that it was intended to be highly remedial and should be construed liberally." (Citations omitted). The Court also holds that "in determining whether a provision is of that character the statute must be liberally construed so as to accomplish its purpose. 'Technical rules otherwise protecting sureties from

3

liability have never been applied in proceedings under this statute.' . . . The same principle should govern the application of the Miller Act." (Citation omitted).

### Claimants' Additional Concerns

A surety must weigh the obligations to its principal and the intended beneficiaries and always tip the balance in favor of the obligees. USF&G has not fulfilled its duties to independently investigate the claims and pay valid claims promptly.

The Expert Report prepared by Mr. Callow states that the fox was put in charge of the hen house when Nugget was allowed to handle the defense of USF&G.[2] Despite protestations from the claimants that Oles Morrison cannot objectively represent USF&G based on positions the law firm has taken in the past, Oles Morrison still to this day represents USF&G except for the bad faith causes of action.[3] However, USF&G has remained aligned with Nugget in coordinating the defense of the claims. The claimants contended and contend that USF&G tendered defense of this matter inappropriately to Nugget and refuses to this day to revoke the tender of defense or to assume the defense of the claims against USF&G.

In addition, in a line of questioning at Mr. Callow's deposition, USF&G through counsel suggests that USF&G did not need to investigate the claims because it was not paying

---

[2] Docket Entry No. 460, Exh. 1, p. 11.

[3] At times, Oles Morrison appears to represent USF&G for all purposes and at some times just for the claims other than those for bad faith.

attorney's fees to defend the claims.[4]  Mr. Viergutz asks:  "On page 12 [of Mr. Callow's Expert Report[5]], you talk about economic coercion.  Is it your position USF&G is guilty of that despite they weren't paying any attorney fees in this litigation?"  In response, Mr. Callow states:

> A.  Well, it's my position that it is economically coercive for USF&G not to have investigated and paid a valid claim for these claimants.  That itself is economic coercion.  It is the whole purpose of the Miller Act to make sure that claimants get paid and in a timely fashion for valid claims.
>
> And so to the extent that USF&G failed to fulfill its obligations and forced these obligees not only to litigate, but to forgo the income, that is economically coercive, absolutely.
>
> And I think if you look at the applicable statutes and the Miller Act itself and that CFR that I was telling you about, that is precisely the purpose for why there are these duties.
>
> And all those -- all those State statutes and the applicable CFRs are incorporated by reference in the -- in the surety contract itself.

Docket Entry No. 545, Exh. 1, p. 82, ll. 19 - p. 83, l. 11. USF&G's duties are unrelated to whether it is paying the costs of its own defense or not.

---

[4]   Docket Entry No. 545, Exh. 1, p. 82, ll. 15 - 18.
[5]   Docket Entry No. 460, Exh. 1, p. 12.

The claimants contended and contend that Judge Holland's order dated June 3, 1999 was a correct interpretation of the applicable Supreme Court precedent regarding the relationship between Nugget and Spencer Rock.[6] The two pivotal cases advanced by the claimants and relied on by Judge Holland are <u>MacEvoy Co. v. United States ex rel. Tomkins Co.</u>, 322 U.S. 102 (1944) and <u>F.D. Rich Company, Inc. v. United States ex rel. Industrial Lumber Company, Inc.</u>, 417 U.S. 116 (1974). Judge Holland discusses and relies on these two decisions.[7] He also references and discusses the Ninth Circuit decision in <u>United States ex rel. Conveyor Rental & Sales Company v. Aetna Casualty & Surety Company</u>, 981 F.2d 448 (9th Cir. 1992).[8] In recent discovery, the claimants determined that USF&G's records indicate that USF&G agreed with the claimants and Judge Holland that the matter was governed by these two Supreme Court decisions rather than a Ninth Circuit decision. (Exhibit 1, USF&G 001640 - 001646).[9] In USF&G's files, USF&G included a discussion of the decisions in <u>MacEvoy</u> (Exhibit 1, USF&G 001643 - 44) and in <u>F.D. Rich</u> (Exhibit 1, USF&G 001644 - 001645). Claimants contend that after that decision by Judge Holland in 1999, USF&G should have considered discussing settlement with the claimants as part of its duties to the claimants. Instead, USF&G provided bonding for the appeal and joined with Nugget in the appeal. The claimants admit that

---

[6]    Docket Entry No. 124.
[7]    <u>Id.</u> at pp. 10 - 11.
[8]    <u>Id.</u> at p. 12.
[9]    The references are to the USF&G reference numbers.

the district court decision was reversed by the Ninth Circuit on the basis of the Ninth Circuit decision in <u>Aetna Casualty</u>. Nonetheless, USF&G further breached its duties to the claimants by not at least discussing resolution with them after the district court decision rather than requiring them to expend more resources litigating the case.

Representatives of the claimants addressed the bad faith causes of action in written disclosures and discovery and during their depositions. The defendants have elected to disregard those facts. Some colloquy not previously discussed in pleadings is presented below. Both depositions referred to below were taken before USF&G provided what had previously been deemed privileged documents to the claimants.

### A. **Shoreside's Additional Concerns**

Mr. Lechner with Shoreside states in his deposition:

> Q   Shoreside's amended complaint at paragraph 38 -- and I'll read it to you, if I could: "Claimant realleges and incorporates the other allegations herein. Upon information and belief and subject to further evidence as is provided by disclosure and in discovery, USF&G is also liable to claimant under Alaska law for the bad faith nonpayment, nonsettlement, and/or refusal to discuss settlement of claimant's claims brought under the Miller Act and Stateline [sic] herein of which USF&G was notified. USF&G has repeatedly failed to address payment to the claimant for the goods and services despite demand. Claimant is

7

entitled to recover such damages plus interest and attorney fees from USF&G." And that's paragraph 38.

Is it your position that the nonpayment of your invoices is the bad faith nonpayment that's referred to in this paragraph?

MR. SEWRIGHT: Object as to form.

THE WITNESS: We do feel either way, either through nonpayment by Nugget or USF&G, they're similarly -- feel the same.

BY MR. VIERGUTZ:

Q   And other than the nonpayment, has USF&G committed any other act of bad faith that you're aware of? You personally.

MR. SEWRIGHT: Continuing objection as to form of the question. Also calls for legal conclusions.

THE WITNESS: It certainly -- as it relates to this, we felt with all the disclosure, through everything that's on the table, that there should have been more representation by the bondholder if the general contractor was not taking action. And with the information that we had and what has been put in front of everyone, we certainly felt and still feel that, through the acts of some of the officers of Nugget Construction that were tied in with Spencer Rock somehow through this [Sup]port [A]greement [changed by deponent], we certainly felt that there is that issue, I guess.

BY MR. VIERGUTZ:

Q    You're not aware personally of any communications between USF&G and Nugget, correct?

A    No.

Q    You don't have any idea what communications existed or didn't exist between those entities; is that correct?

A    That is --

MR. SHAMBUREK:  I would just observe that all of those documents were marked as privileged, so none of them would be available.  But he can answer from there.

THE WITNESS:  No.

BY MR. VIERGUTZ:

Q    And USF&G was not, to your knowledge, on site and on the project; is that correct?

A    That's correct.

Q    So what they did not do properly is pay you?

A    That is correct.

Q    And you were here for the other depositions, Mapco and North Star, correct?

A    Yes, I was.

Q    And you heard me ask the same questions I'm going to ask you, that, if I sue you, you do not have to settle that case; isn't that correct?

A    It's, I guess, your prerogative.

Q    And if you choose not to settle that case, that's entirely your decision; isn't it?

9

    MR. SEWRIGHT:  Continuing objection as to form.

    THE WITNESS:  It certainly could be, yes.

    BY MR. VIERGUTZ:

    Q    And if you choose not to discuss settlement with me, is that also your choice?

    A    That could be, but that's not our choice.

    Q    In this case?

    A    Yes.

    Q    But it's my choice; is that correct?

    A    Yes, it can be your choice.

Exh. 482, p. 61, l. 23 – p. 64, l. 19.  Mr. Lechner refers to the disclosures provided by Shoreside to the parties in support if its claims.  *Id.* at p. 62, l. 25.  He also states:

    Q    And were you aware from your review of the pleadings if the defendants challenged whether or not this was a federal project?

    A    Yes.

    Q    Were you aware that this was a federal project?

    A    Yes, I was.

    Q    And do you view that as an act of bad faith?

    A    Yes, I do.

    Q    And is it your understanding that Shoreside made a number of attempts to settle this case?

    A    Many.  Yes, I'm --

    MR. MACHETANZ:  Leading.  And also irrelevant.

    THE WITNESS:  Yes, I was aware.

    BY MR. SHAMBUREK:

    Q    And are you aware if USF&G actually ever initiated any settlement conferences with -- settlement conferences with Shoreside?

    MR. MACHETANZ:  Same objections.

    THE WITNESS:  I'm not aware of any.

Id. at p. 66, l. 18 - p. 67, l. 11.  Mr. Lechner also incorporated all of the prior responses of Shoreside Petroleum to prior discovery requests.  Id. at p. 79, ll. 3 - 7.  Shoreside carefully prepared detailed responses to the discovery requests propounded by the defendants.

### B.  Metco's Additional Concerns

    Ms. Dieckgraeff testified:

    Q.    Do you believe that Nugget ever defrauded you?

    A.    You mean on this whole thing?

    Q.    Yes.

    A.    I kind of feel they didn't hold up to their responsibility.

    Q.    Because they didn't pay - because the bond hasn't been paid you and Nugget hasn't paid you?

    A.    Yes.

    Q.    Is there any - other than them not holding up to their responsibility, is there any other reason or basis that you have for believing that Nugget's defrauded your or misrepresented facts to you?

    MR. SEWRIGHT:  Objection to the form.

    Q.    You may answer.

    A.    The rock comes from inland and it was going to

>Homer and how was it going to get there?  It had to be - Seward was the ideal spot to bring it and load it onto the barge.  They needed the rock for the project.  And I feel that they had a responsibility to make sure that all these little steps were taken and were covered.  That's just how it goes.  I mean, you weren't going to truck it all the way to Homer, so that's - it was all part of the same job, it was loaded on the Nugget barge.  Nugget got the rock and they used the rock in the project.

Exh. 478, p. 35, l. 9 - p. 36, l. 7.  She also testified:

>Q.  In other words, if you say there is money owed and I disagree with you, is it wrong for me to continue to not pay you because I believe I don't owe you the money?
>
>A.  Well, you see how we bill.  We bill when they do the work and it's very cut and dried and we never overcharge, we never bill for something we didn't do.  And so when I bill it, I expect to be paid for it.
>
>Q.  I'm not talking about this specific instance.
>
>A.  No, I understand that.
>
>Q.  What I'm saying is more of just a general proposition.  If you were sued and you believed you had legitimate defenses, do you believe you had a right to raise those defenses in the lawsuit?
>
>MR. SEWRIGHT:  Object to the form of the question.
>
>A.  I suppose you could put your cards on the table,

> too.
>
> Q.  And would you agree with me that by asserting those defenses, I'm not acting in bad faith.
>
> MR. SEWRIGHT:  Pending objection.
>
> A.  No, but there is a certain responsibility that someone has when the take on a job and that – the previous lawsuit was a fellow who didn't finish the job and didn't want to pay us for what we had done.  And we had a meeting with the judge and the judge said he has to pay and he paid.

Id. at p. 38, l. 15 – p. 39, l. 16.

### Statute of Limitations

USF&G has not properly or timely raised the statute of limitations defense.  In addition, USF&G has not even moved for leave to assert the defense at this late date.

The statute of limitations does not begin to run until all elements of the offense are complete.  USF&G hid its inaction.  By diligent effort including motion practice in this court to force the production of documents, the claimants have been able to determine that USF&G failed to honor its duties as a surety.  USF&G continues to fail to honor those duties and thus continues to breach its duties.

### Conclusion

There is a cause of action for bad faith against a surety in the state of Alaska.  That cause of action can be brought and maintained in a Miller Act case in this court.  USF&G does not even recognize its duties under the applicable decisions,

13

statutes and regulations. USF&G did not fulfill its duties and does not claim to have fulfilled its duties to the claimants. The statute of limitations to assert the cause of action has not begun to run. The court should find on the current record that the claimants' individual requests for one million in punitive damages against a corporation with assets that far exceed one billion is more than justified and appropriate.

For these reasons, the three motions brought by USF&G should be denied. The motion filed by Shoreside and Metco and joined by North Star against USF&G related to the bad faith causes of action should be granted.

DATED this 19th day of May, 2006 at Anchorage, Alaska.

THE LAW OFFICE OF STEVEN J. SHAMBUREK
Attorney for Plaintiffs
Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service and Metco, Inc.

s/ Steven J. Shamburek
By:_____
Steven J. Shamburek
Alaska Bar No. 8606063
LAW OFFICE OF STEVEN J. SHAMBUREK
425 G Street, Suite 630
Anchorage, Alaska 99501
(907) 522-5339 Direct
(907) 522-5393 Fax
shamburek@gci.net
shamburekbank@gci.net

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 19th day of May, 2006, a copy of the foregoing was served by the Electric Case Filing.

s/ Steven J. Shamburek
_____
Steven J. Shamburek