# THE MECHANIC'S LIEN IN VIRGINIA

The Basics of Mechanic's Liens for Contractors,
Subcontractors, Suppliers, Builders, Developers,
Owners, Sureties, Lenders, Realtors, Architects and Lawyers

By

Gerald I. Katz, Esquire
Robert F. Flinn, Esquire

WICKWIRE, GAVIN & GIBBS, P.C.
8230 Boone Boulevard
Fourth Floor
Vienna, Virginia 22180
(703) 790-8750

© 1984 by Gerald I. Katz

USF&G 001640

I.  THE MILLER ACT

    A.  History and Purpose of the Act.

        The Miller Act, 40 U.S.C. §270a et seq. was enacted by Congress in 1935 and requires prime contractors for federal construction projects exceeding $25,000 in value to furnish the government with a performance and payment bond. The payment bond must be executed by a surety company, and subcontractors, suppliers and materialmen have a right to sue on the bond if they are not paid.

        Mechanics liens cannot attach to government property. The Miller Act, therefore, was designed to provide an alternative remedy to the mechanic's liens which are available on private construction projects.

        The entirety of the Act is reprinted starting at page 27.

    B.  Where to Obtain Copies of the Bond.

        The Act requires the Comptroller General to provide a copy of the bond to any person who supplies labor and material to the project covered by the bond and so certifies in writing. 40 U.S.C. §270c.

USF&G 001641

A sample written request, supported by affidavit, is set forth at page 31. In most cases, a copy of the bond can be secured from the Owner's Contracting Officer or Project Manager. The Bond itself is a two page standard form document, a sample of which is set forth at pages 32-33.

C. Claimants Covered by the Act.

The Act protects only persons who have a contract with the prime contractor (all first-tier subcontractors, suppliers, materialmen, etc.) and persons who have a contract with a subcontractor. Third-tier subcontractors and others who have a more remote relationship from the prime contractor and his subcontractors are not covered. The diagram at page 34 indicates those persons who are protected by the bond.

1. Third-tier Claimants. The case of J. W. Bateson Co. v. United States ex rel. Board of Trustees of the National Automatic Sprinkler Industry Pension Fund, 434 U.S. 586 (1978) provides a good example of remote claimants not covered by the Act. Bateson had a mechanical subcontract for a large hospital project with Pierce who in turn subcontracted the sprinkler work to Colquitt. Colquitt was required to withhold amounts from its employees wages for union dues and contribute to the union's pension fund. When Colquitt

*[Handwritten margin note: Hospital ↓ Bateson ↓ Pierce ↓ Colquitt]*

-2-

USF&G 001642

failed to pay, the union sued on the payment bond. The Supreme Court held that the union was not covered by the bond because the party with whom it had a contract, Colquitt, was not a subcontractor of Bateson.

2. Claimants With Contracts With a Person Who is Not a "Subcontractor." As previously established, the Act only protects those who have a contract with the prime contractor and those who have a "direct contractual relationship with a subcontractor." The term "subcontractor" in the Act has been given a narrow interpretation by the courts so as to exclude materialmen even though they have contracts with the prime contractor. As a result, persons supplying labor and material to a mere materialman are not protected. The case of Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tompkins Co., 322 U.S. 102 (1944) is the leading case on this point. MacEvoy, the prime contractor for some military housing, entered into a contract with Miller to supply certain building materials for the project. Miller, in turn, entered into a contract with Tompkins to supply some of the materials. When Miller failed to pay Tompkins, Miller sued on the Miller Act payment bond. The United States Supreme Court held that Tompkins

-3-    USF&G 001643

was not a "subcontractor" as that term was used in the Miller Act, but instead, only a supplier or materialman. As a result, Miller did not have a contract with a "subcontractor" and was not covered by the Act. The term "subcontractor" was interpreted by the court to mean "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract." MacEvoy, supra at 109. The court declined to adopt the broader definition of "subcontractor" to include anyone who has a contract to furnish labor and material to the prime contractor.

In F. D. Rich Company v. United States ex rel. Industrial Lumber Company, 417 U.S. 116 (1974), the Supreme Court elaborated upon the definition of "subcontractor" by holding that the test for whether one is a subcontractor is "the substantiality and importance of his relationship with the prime contractor." F. D. Rich, the prime contractor for a federal housing project, entered into two contracts with Cerpac, one to select and install the custom millwork and one to supply all exterior plywood. Cerpac ordered the exterior plywood from Industrial. When Cerpac failed to pay for the plywood, Industrial

-4-

USF&G 001644

sued on the payment bond. The surety on the bond argued that Industrial was not covered by the bond because Cerpac was merely a materialman under its plywood contract, not a "subcontractor." The Supreme Court rejected this argument. It looked at the <u>total relationship</u> between F. D. Rich and Cerpac, not just the contract to supply exterior plywood, to determine whether Cerpac was a subcontractor. Since Cerpac also had a contract to select and install all custom millwork, it took over a substantial part of the prime contract itself and therefor qualified as a "subcontractor."

In <u>Miller Equipment Co. v. Colonial Steel & Iron Co.</u>, 383 F.2d 669 (4th Cir. 1967), a supplier of structural steel to a prime contractor for a federal bridge project in Virginia was held to be a subcontractor. Thus, the fabricator of the steel for the supplier was permitted to recover on the bond. The Court based its conclusion that the supplier was a subcontractor rather than a materialman on the fact that the supplier's purchase order constituted ① <u>15%</u> of the prime contractor's contract amount, that struc- ② tural steel was a <u>key and integral component</u> of the bridge, and that the steel was ③ <u>custom</u>

USF&G 001645

-5-

fabricated for the project. Miller Equipment Co., supra at 674.

Whether a party with a direct contract with the prime contractor is a "subcontractor" within the Supreme Court's definition depends upon the facts of each case. In reaching a decision, the courts have considered the following factors: (1) whether the person takes on responsibility for a specific part of the original contract; (2) whether the material or labor furnished is a substantial [15%] part of the work; (3) whether the material furnished is custom manufactured; (4) whether a payment or performance bond was required; (5) whether retainage was withheld; and (6) whether shop drawings were submitted.

D. The Act's Three Limitation Periods.

The Act has three limitation periods which claimants must satisfy in order to recover:

1. 90 Day Waiting Period. You must wait 90 days from the date you last furnished the labor or material for which you are claiming. If you sue before 90 days elapses, your suit is premature and subject to dismissal.

2. 90 Days Written Notice. If you have a direct contract with a subcontractor, but no contract with the prime contractor, you can recover on

USF&G 001646

-6-