Steven J. Shamburek
Alaska Bar No. 8606063
LAW OFFICE OF STEVEN J. SHAMBUREK
425 G Street, Suite 630
Anchorage, Alaska 99501
(907) 522-5339 Direct
(907) 522-5393 Fax

Attorney for Plaintiffs
Shoreside Petroleum, Inc.,
d/b/a Marathon Fuel Service
and Metco, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| and | )<br>) |
| UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, on its own behalf, | )<br>) **SHORESIDE'S**<br>) **OPPOSITION TO NUGGET'S**<br>) **MOTION REGARDING**<br>) **MILLER ACT CLAIMS**<br>)<br>) |
| Intervening Plaintiffs, | )<br>) |
| and | )<br>) |
| METCO, INC., | )<br>) |
| Intervening Plaintiff, | ) 3:98-cv-0009-TMB |
| vs. | )<br>) |
| NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

1

COMES NOW Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service ("Shoreside") and Metco, Inc. ("Metco"), by and through counsel, and file this Opposition To Nugget's Motion Regarding Miller Act Claims.[1]

### Introduction

Nugget challenges the request for payment of the first delivery of unpaid fuel that was undisputedly for the use and benefit of the Homer Project. The claim is developed in previously filed pleadings as noted below. Nugget previously admitted that it was operating the Quarry in late March, 1997 and thus is obligated for the sum. Those pleadings are incorporated by reference.

### The Miller Act

Mechanics' liens are ordinarily available on private construction projects. However, a lien cannot attach to Government property. Congress provided protection for persons supplying labor or materials on a federal construction project by requiring contractors to provide a payment bond. The Heard Act, passed on August 13, 1894, allowed laborers and materialmen to bring an action in the name of the United States against the surety bond posted by the contractor when they were unpaid. On August 24, 1935, Congress passed the Miller Act to expand the alternative remedy to the mechanics' liens ordinarily available on private construction projects. The statute and its

---

[1] This pleading addresses the motion and memorandum at Docket Entry No. 501 regarding Shoreside's Miller Act claim for the

legislation history are short and simple. In the first Supreme Court decision to construe the Miller Act, <u>Fleisher Co. v. United States</u>, 311 U.S. 15, 17 (1940), the Court holds that: "In construing the earlier Act, the Heard Act, for which the Miller Act is a substitute, we observed that it was intended to be highly remedial and should be construed liberally." (Citations omitted).

### Shoreside's Miller Act Claim

Nugget filed a motion challenging the request for payment for one of the deliveries of fuel for the use and benefit of the Homer Project. Shoreside's right to payment for the delivery of fuel is discussed in the Memorandum at Docket Entry No. 508 and the Opposition at Docket Entry No. 525 in particular at p. 10 and at n. 14.

Judge Holland's order dated June 3, 1999 addressed only the relationship between Nugget and Spencer Rock.[2] After remand from the first appeal, the district court focused on the Support Agreement and only allowed claims that arose after the document was formally signed. On appeal, Shoreside challenged the court's decision to adopt a bright line test and noted that even Nugget admitted that it had taken over the Quarry before the first unpaid delivery of fuel from Shoreside.[3]

---

first unpaid shipment of fuel.

[2] Docket Entry No. 124.

[3] Contrary to Nugget's allegations, Shoreside challenged the holding in its cross-appeal to the Ninth Circuit. The Civil Appeals Docketing Statement is in the record. The holding was challenged in the brief which stated the issue as follows:

Shoreside notes the statements of Randy Randolph, the central individual who worked with Nugget, Spencer and Trecon. He admitted: "The [Support] Agreement was a consensual agreement between Nugget and SRP, and SRP was free to disavow it at any point during the project. The Agreement lasted a limited duration, **specifically between April and July 1997**, and SRP did not disavow the Agreement during that duration." (ER 325, Affidavit of Lynn D. ("Randy") Randolph dated May 14, 2002, p. 2, para. 2 (Emphasis added)).

In addition, Nugget frankly admits this undisputed fact in an Opening Brief filed with the Ninth Circuit in 2003. **"Thus, in March or April 1997 (ER 107), Nugget began providing support services to Spencer Rock pursuant to a Support Agreement formally executed on April 15, 1997. (ER 7-10.)"** (Emphasis added). Nugget Opening Brief, p. 11 at ll. 9 – 11.

In addition, the deposition referenced by Nugget in Nugget's Opening Brief in the Ninth Circuit refers to the deposition of Randy Randolph taken on October 30, 1998. He stated:

> Q. Was Nugget Construction providing Nugget employees and/or equipment to Spencer Rock in the Spencer Quarry prior to April 23, 1997, which is the date of this support agreement?

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 1

**I. THE DISTRICT COURT'S SUBSTANTIVE DECISION WAS CORRECT AND SHOULD BE AFFIRMED, ALTHOUGH THE ENTIRE SUM SOUGHT BY APPELLANT SHORESIDE SHOULD BE AWARDED    1**

The Brief is in the court file. The Ninth Circuit never reached the issue.

    A.    Yes

    Q.    And when did that type of cost to Nugget first occur?

    A.    Late March, early April.

(ER 107, p. 121, ll. 1 – 7 (Emphasis added))

In addition, the Court found that Mr. Randolph was involved with both Nugget and Spencer. The Court found:

> Other significant undisputed facts in the record show that Nugget was ideally situated to take over operations at the Spencer quarry. For five years preceding his position as Nugget's project manager, Lynn D. Randolph worked as the project manager and job estimator in the Spencer quarry under its previous owner, Trecon (for whom Nugget's general manager and corporate secretary Greg Poyner also worked as a general manager). Randolph also worked as senior engineer, bid estimator, and project manager for Spencer after Robert LaPore purchases the quarry in 1994. In fact, prior to the Homer Spit project, Randolph worked for Nugget as a consultant, bid estimator, and project manager at the same time he worked for LaPore at Spencer. According to Randolph and LaPore, most of the calculations resulting in Spencer's pricing to Nugget on the Homer Spit bid were prepared by Randolph as a bid estimator and consultant for Spencer (while he also worked as a project manager for Nugget).

(ER 334 at l. 11 – 335, l. 6).

In an earlier pleading, North Star notes:

> This request [for the Court to add the principal/agent by control theory for recovery as an additional, alternative basis for liability, prior to a likely appeal] also gives added support to Shoreside Petroleum's recent motion for reconsideration. As Randy Randolph testified by deposition and as the detailed ledger entries prepared by Nugget upon which Nugget based its "support" expense claims against Spencer disclose, Nugget commenced its "support" of Spencer for which it sought recovery from Spencer at least as early as April 8, 1997, which was the same day as the second petroleum shipment was delivered by

> Shoreside to the Spencer quarry site for subsequent consumption and over two weeks before the so-called "support" arrangement was memorialized in writing on April 23, 1997. See, e.g., North Star's 4/8/02 S.J. Memo. (Docket No. 282) at p. 8 n. 8, including the citations to the record contained there.

Motion and Memorandum for Reconsideration dated September 9, 2002 at pp. 4 - 5 at n. 4.[4]

Since remand from the second appeal, the case has expanded to examine the subterfuge and fraud of Nugget and the arguments involving the use of a straw man and collusion in addition to the state law causes of action. The parties have undertaken discovery regarding the activities of Nugget and USF&G in much greater detail. Nugget and USF&G took the depositions of representatives of Shoreside and Metco. Based on all those pleadings and supporting evidence, Nugget is clearly obligated for payment of the first unpaid delivery of fuel.

### Conclusion

For the reasons set forth in the Memorandum and in the record, Nugget is responsible for payment for the delivery of fuel on April 8, 1997. Any statements to the contrary are a misrepresentation of the record in this case.

DATED this 19th day of May, 2006 at Anchorage, Alaska.

THE LAW OFFICE OF STEVEN J. SHAMBUREK
Attorney for Plaintiffs
Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service and Metco, Inc.

By: s/ Steven J. Shamburek
_____
Steven J. Shamburek
Alaska Bar No. 8606063
LAW OFFICE OF STEVEN J. SHAMBUREK

---

[4] Docket Entry No. 315.

```
                    425 G Street, Suite 630
                    Anchorage, Alaska 99501
                    (907) 522-5339 Direct
                    (907) 522-5393 Fax
                    shamburek@gci.net
                    shamburekbank@gci.net
```

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 19th day of May, 2006, a copy of the foregoing was served by the Electric Case Filing.

s/ Steven J. Shamburek
_____
Steven J. Shamburek