Michael W. Sewright
BURR, PEASE & KURTZ
810 N Street
Anchorage, AK  99501-3293
Telephone:    (907) 276-6100
Fax No.:    (907) 258-2530
Attorneys for North Star

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>        Plaintiffs,<br><br>    and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf,<br><br>        Intervening Plaintiffs,<br>    and<br><br>METCO, INC.,<br><br>        Intervening Plaintiff,<br>    vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>        Defendants. | Case No. 3:98-cv-009-HRH<br><br><br>**MEMORANDUM IN REPLY TO USF&G'S OPPOSITION TO SHORESIDE AND METCO'S MOTION AND MEMORANDUM FOR SUMMARY JUDGMENT AND DETERMINATIONS OF LAW REGARDING USF&G JOINED IN BY NORTH STAR** |

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 1 of 26

45-40 / #83805

## I.  INTRODUCTION

Plaintiff and Use Plaintiff North Star Terminal & Stevedore Company ("North Star") joined in Shoreside's and Metco's Motion for Summary Judgment and Determination of Law Regarding USF&G filed at Clerk's Docket Nos. 509 & 510.  *See* North Star Joinder at Clerk's Docket No. 519.  As was noted in that Joinder, the grounds for Shoreside and Metco's motion also apply to North Star.[1]  *Id*.  In addition, in its recent Opposition to that motion (Clerk's Docket No. 527), USF&G makes arguments and allegations particularly within North Star's knowledge, some of which North Star has previously addressed.[2]  North Star replies to that Opposition as follows.

## II.  THE CLAIMANTS HAVE PROVIDED ENOUGH FACTUAL BASIS FOR THEIR CLAIMS.

USF&G's first argument is that the claimants, of which North Star is one, have provided no factual basis for their claims against USF&G.  Clerk's Docket No. 527 at p. 2.  USF&G is entirely incorrect in that assertion.  Presumably, counsel representing USF&G upon the present Opposition intends to refer only to the plaintiffs and use plaintiffs' claims for bad faith against

---

[1]     USF&G has moved to strike North Star's above-referenced Joinder.  Clerk's Docket Nos. 523 & 524.  North Star's opposition to that motion to strike, which is due May 30, 2006, will be filed separately.  There it will be shown, *inter alia*, that the motion to strike should be denied as poorly taken and mooted by subsequent events, including North Star's Opposition in Response to USF&G's Motions Regarding Statute of Limitations, Bad Faith, Expert Witness and Punitive Damages filed May 19, 2006 (Clerk's Docket No. 547).  In that Opposition memorandum, the content of North Star's previous Joinder (Clerk's Docket No. 519) is repeated and USF&G's duty of good faith dealing toward the claimants in this case and evidence in this case supporting the claim of bad faith against USF&G are addressed.  *See* Clerk's Docket No. 547, especially at pp. 16-30 thereof.  USF&G still has an opportunity to respond on those subjects.  Indeed, North Star recently nonopposed USF&G's request for additional time to respond.  *See* Clerk's Docket Nos. 556 & 559.  The Joinder is proper and USF&G has not been prejudiced by it.

[2]     *See* foregoing discussion at footnote 1.  *See also and compare, e.g*., Clerk's Docket Nos. 519 & 547.

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83805
Page 2 of 26

USF&G, including their claims for punitive damages based on that bad faith, as those are the only claims upon which that counsel, the law firm of Barokas Martin & Tomlinson, represents USF&G.[3]

As to those claims, as well as the other claims brought against USF&G, solid factual bases and supporting evidence have been given by the claimants.  All of those grounds and evidence, whether presented by North Star, Shoreside or Metco or whether presented in the past month in relation to the presently pending motions or previously during the past eight years of this protracted litigation, are a matter of record in the court file and incorporated herein. Presumably Shoreside and Metco will address USF&G's efforts to avoid and misstate the grounds and evidence they have presented.  Grounds for the claims and evidence supporting them which has been presented by North Star, now and in the past, has been recently addressed and incorporated at, for example, Clerk's Docket Nos. 494-495, 504, 518-519, 521, 535 & 547. Those grounds and evidence supporting them are also found in previous findings and Orders of this Court, such as at Clerk's Docket Nos. 124, 165 and 310, as well as in the unpublished Memorandum Decision of the Ninth Circuit of Appeals relating to this case at Clerk's Docket No. 383.  Given North Star's belief and understanding that the tribunal to which this matter has recently been reassigned will review and make itself familiar with those filings and previously submitted evidence as part of its efforts to familiarize itself with this case prior to ruling upon

---

[3]    That law firm's limited representation of USF&G in this matter is established by Court Order in this case and has been previously addressed in detail.  *See, e.g.*, Clerk's Docket No. 418 (Court Order), No. 547 at pp. 2-3, No. 494 at p. 3, No. 534 at p. 2 nn.1 & 2, & No. 535 at p. 2 nn.1 & 2.  Oles Morrison Rinker & Baker still represents USF&G as to all other claims.  *Id.*

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                    45-40 / #83805
Page 3 of 26

pending motions, North Star will forego repeating[4] what is contained in those portions of the record, including North Star's and the Court's filings demonstrating grounds and admissible evidence going back eight years (and incorporated by reference from the record just noted).

Aside from arguing that it is "confused," USF&G in its present Opposition first seems to argue that evidence and prior findings of this Court of wrongdoing by Nugget and its Project Manager at the center of this case, Randy Randolph, "in no way relate to any conduct of USF&G." *See, e.g.*, Clerk's Docket No. 527 at pp. 3-5. However, as USF&G well knows, or should know, the conduct of Nugget and Randolph, including the evidence of subterfuge, deliberate deception, coercion, and takeover control previously found by this Court, helps define the level of treatment and response USF&G should have given to this matter and the unpaid claims of the claimants. It owed them a high duty of care and good faith dealing under the project payment bond intended for their, not Nugget's, protection. USF&G pledged itself to that bond and those responsibilities. Through that pledge, and through USF&G's adoption later of Nugget's position in the case, USF&G undertook responsibility for Nugget and Randolph's conduct.

As has been previously shown by the ***evidence***, USF&G also had notice and knowledge, even in 1997 and early on in 1998, of Nugget and Randolph's secretive arrangements and takeover of Spencer Rock during the course of the project amounting to a pattern and practice of outright deception and deceit apparently intended to avoid payment and responsibility under the

---

[4]    *See, e.g.*, Alaska USDC Local Rule 10.1(h)(1) ("Where practical, reference to other portions of the same pleadings or other papers [on file] should be made to avoid repetition.") That rule should apply particularly to the court file in this case, which is already enormous.

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                      45-40 / #83805
Page 4 of 26

payment bond for services provided to the project by the laborers, suppliers and subcontractors such as these claimants intended to be protected under that bond and the Miller Act.  USF&G knew or should have known of such questionable conduct and activities by Nugget and Randolph from, among other things, being copied with correspondence from the U. S. Army Corps of Engineers, which was the Federal Government's contract administrator and owner representative for the project, and by being copied with the correspondence and claims of the present claimants and other claimants such as Spencer Rock Products (Robert LaPore) and Chugach Rock Corporation (Dennis Stacey) addressing that conduct and activities.  It has been proven that USF&G was cross-copied with that correspondence sent to the attention of USF&G 's Bill Wells in care of James Ferguson and the Willis Corroon office in Anchorage, which was USF&G's listed agent and attorney-in-fact on the payment bond to whom notice of claims and default were to be given.  *See, e.g*., Clerk's Docket No. 519 at pp. 2-8 & attached Exhs. 1 & 2, repeated at Clerk's Docket No. 547 pp. 25-29.  *See also* Exhibit 1attached hereto (signed payment bond).[5]

It has also been shown that some claimants, such as Chugach Rock Corporation's Dennis Stacey, even wrote directly to attorney Jane Bennett Poling, USF&G's Surety Claims Specialist, alerting her to inside knowledge regarding Nugget and Randolph's schemes, deceptions, conflicts of interest, and other wrongful conduct and control applicable to these claims.  *See, e.g.,* Clerk's Docket No. 547 at pp. 27-29 & Exh. 2 at pp. 21-24 attached thereto.  She was specifically advised that that conduct and activities rendered Nugget and USF&G <u>directly</u> responsible to the claimants (emphasis in original Stacey correspondence to Poling).  *Id.*

---

[5]    An unsigned copy of the bond is also attached as Exhibit C to USF&G's Opposition, Clerk's Docket No. 527.

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83805
Page 5 of 26

Notably, the Corps of Engineers, the federal agency charged by law with administering that federal contract and project in accordance with the law, including the Miller Act and Prompt Pay Act, had reached the same conclusion, as early as August 1997, that Nugget was "fully responsible" to the claimants (and USF&G responsible under the bond) and had informed both Nugget and USF&G of that in writing. *Id.* at pp. 26-29. *See also* Exhibit 2 attached hereto (Corps of Engineers correspondence previously submitted and relied upon by the Court in this case).

Whatever USF&G might now claim it did not know about regarding Nugget and Randolph's pattern and practice of misdealing and deception toward these claimants and others, including the Federal Government, it had sufficient notice of to find out about, together with a duty to independently investigate and discover the bases. Had USF&G done so, it would have found out what this Court eventually found in factual findings based on that evidence in, for example, its Order of August 30, 2002 (Clerk's Docket No. 310), and the Ninth Circuit Court also acknowledged in its March 3, 2005 decision (Clerk's Docket No. 383). It would not have forced these plaintiffs and use plaintiffs, as it did, to do their own investigation and discovery during the course of this long protracted litigation, at great expense to themselves, while facing great unnecessary resistance from USF&G and Nugget throughout. If USF&G had done its duty to any reasonable degree, rather than turn the entire "investigation" over to Nugget and Mr. Randolph having obvious conflicts of interest, USF&G should have found out what these claimants and the Court eventually found out. Among other things, much of that information had been spelled out in Mr. Stacey's letter to Ms. Poling in March 1998, which these claimants only found out about in recent months!

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                  45-40 / #83805
Page 6 of 26

The evidence previously presented is that USF&G abandoned these claimants, to whom its paramount responsibilities lay according to long-established Alaska and Ninth Circuit law, and that it did so just to save itself the time and effort of doing its own investigation or incurring any expense of its own, including attorney fees.  Instead it cast upon these claimants the onerous burden of incurring great time, effort, expense, and attorney fees while fighting Nugget and USF&G's attorneys at every turn for years.[6]

_____

[6]    As this Court previously stated, at Clerk's Docket No. 165 p. 5:

> . . . Nugget and its surety throughout these proceedings took a "contest everything" approach.  They asserted positions as regards North Star's claim which were predictably weak.  North Star was required to address the full panoply of defenses brought forth by Nugget.  There is no doubt but that the litigation posture taken by Nugget and its attorneys substantially increased the cost of this litigation—and it continues to do so.

As the Court again observed, at Clerk's Docket No. 401 p. 4:

> . . . Defendants primarily argue that they will be substantially prejudiced if the motions to amend are granted because plaintiffs are adding new claims and new legal theories which will require additional discovery.  Defendants contend that taking discovery at this point, some eight years after the events in question, would be difficult because witnesses' memories will have faded and witnesses may be hard to locate.  *  *  *  The passage of time in this instance is, for the most part, the result of tactical decisions defendants made.  They will not now be heard to complain that they will be prejudiced because so much time has passed.  Plaintiffs have not delayed in bringing their motions to amend either.  North Star first brought up the subject of amendment in 2002 but was dissuaded at the status conference from bringing a motion to amend at that time.  Plaintiffs then raised the possibility of amendment at the next available opportunity.

Again, the Court concluded, at Clerk's Docket No. 430 p. 3:

> Were discovery so restricted [as the defendants propose], defendants could keep plaintiffs embroiled in protracted litigation such as this while the defendant business wastes away, by accident or design, to the great detriment to the civil justice system that depends substantially upon the willingness and ability of parties to make reasonably full disclosures of their respective situations such that intelligent judgments as regards how and when cases should be settled may be made.

_____

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                              45-40 / #83805
Page 7 of 26

Rather than deal fairly and carefully with these claimants with whose protection it was charged, USF&G threw them to the wolves, i.e., Nugget and Randolph, knowing or at least having notice that they were the wolves.  Rather than deal fairly and carefully with these claimants, USF&G put the foxes in the hen house.  Rather than fulfilling its obligations under the law and the payment bond posted for the protection of these claimants, USF&G turned these claimants' "protection" over to Nugget and Randolph and their attorneys, who had absolutely no interest in these claimants other than to do them wrong.

The evidence strongly supports the inference that Nugget did so in order to avoid doing anything itself and chiefly to save itself money by avoiding payment to the claimants and making its principal, Nugget, pay the expense of litigation under a tender of defense USF&G insisted Nugget accept.  The evidence more than supports the conclusion that USF&G did so solely to protect itself and its principal on the bond, Nugget, and to protect its own interests and avoid all responsibility through its separate General Agreement of Indemnity with Nugget.  In reality the wrongdoing of Nugget and Randolph can and should be imputed to USF&G as a result of USF&G's own conscious conduct and deliberate decisions to ensure that it "saw no evil, heard no evil".  *See further discussions, e.g.*, at Clerk's Docket Nos. 535 & 547.  Such evidence also constitutes clear and convincing evidence in the record for the conclusion that USF&G acted toward these claimants with reckless indifference or callous disregard of their interests, whereas USF&G was sworn by its undertaking to protect and handle those interests carefully, faithfully, and fairly.  *Id.*

_____
North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83805
Page 8 of 26

USF&G also knew or should have known—or must be held accountable for not knowing if it did not, since it turned its representation in this matter over to Nugget and its attorneys—that this Court made several significant findings during the course of this case regarding Nugget and Randolph's misconduct, engaged in presumably to avoid the Miller Act and their and USF&G's payment bond responsibilities. *See, e.g*., Court's Summary Judgment Order dated August 30, 2002 (Clerk's Docket No. 310). Presumably Nugget or Oles Morrison Rinker & Baker supplied that Court Order and findings to USF&G, or USF&G must have demanded them when USF&G through its affiliated companies posted the supersedeas bond to support it and Nugget's appeal from that decision. *See* Clerk's Docket No. 312 (Judgment) & Nos. 318-320, 334 (Nugget and USF&G Notice of Appeal, Motion for Stay on Appeal and for Approval of Supersedeas Bond, and Court Order granting motion for stay and approval of bond). Certainly Nugget knew, or should have known, that the total judgment entered in North Star's favor against USF&G through March 4, 2003 based upon that Court decision was only $161,414.01, and only about $27,000 in favor of Shoreside and $39,000 in favor of Metco, including prejudgment interest, costs and attorney fees. USF&G decided to appeal from that judgment and post the bond rather than try to settle those claims at that time.

Likewise, USF&G certainly knew or should have known that it and Nugget also had the opportunity to settle this matter with North Star for the sum of $219,000 offered by North Star on October 8, 1999, in correspondence to Oles Morrison Rinker & Baker, also representing USF&G at the time. USF&G must also have known that that offer was not accepted, and no counteroffer

_____
North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83805
Page 9 of 26

made by Nugget or USF&G at that time, in any amount,[7] and that North Star instead received a judgment in this case in its favor against them in the amount of $264,524.77 a few months later. *See* Clerk's Docket No. 192.

In addition, USF&G knew or should have known and must be held accountable for Nugget and USF&G's only settlement offer made to North Star during the first eight years of this litigation. That was in the amount of just $20,000 in June 2005, after the case was remanded to this Court by the Ninth Circuit Court in March 2005. Certainly, USF&G is also aware of its subsequent written offer made just two months ago, lowering that amount to just $1.00, as to all claims made by North Star against USF&G as a result of North Star's Amended Complaint filed September 1, 2005, including North Star's Miller Act claims.[8] USF&G must know that absolutely no further settlement offers have been made to North Star by either it or Nugget in this matter whatsoever.[9]

USF&G next argues in its present Opposition that the correspondence from the Corps of Engineers in August 1997 previously relied upon the claimants including North Star and in the decisions of this Court going back to 1998 is "inadmissible heresay [sic]". Clerk's Docket No.

---

[7]   The correspondence between counsel supporting these evidentiary representations can be provided to the Court, under seal if necessary, and is being proffered at this time in relation to this issue, as it will also be at trial. In this regard, *see* Fed. R. of Evid. 408, providing that evidence of offers to compromise become admissible "when the evidence is offered for another purpose," such as in support of the independent claim of bad faith handling and non-settlement of claims.

[8]   Proof of that offer, which was made through Barokas Martin & Tomlinson, is also proffered as further evidence upon the issue of USF&G's bad faith conduct and will be produced at trial if not previously requested by the Court in relation to the present motion practice.

[9]   If either USF&G or Nugget believe they have made some other settlement offer to North Star, let them produce it.

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83805
Page 10 of 26

527 at p. 3. However, that is not the case and that evidence, previously admitted and relied upon by this Court, has not previously been objected to by any of the defendants including USF&G. Any objection was waived long ago, and USF&G's present counsel making that assertion should not be excused for ignoring that. Although new to the case, that counsel has the responsibility to become familiar with the record.

It is a matter of record in this case that that correspondence from the Corps of Engineers to Nugget and USF&G setting out Nugget's improper progress payment practices and assumption of full responsibility "for prompt payment to suppliers and subcontractors who contracted with Spencer Rock Products on this project" including North Star was introduced and admitted into evidence, without objection, in relation to summary judgment proceedings in this case at least early as December 7, 1998. *See, e.g.*, Clerk's Docket No. 69, North Star's Motion and Memo for Summary Judgment, Exhibits 14 and 15. That signed correspondence, as also filed at Clerk's Docket No. 321, is attached hereto for the Court's convenience as Exhibit 2.

Furthermore, it and similar correspondence from the Corps to Nugget copied to USF&G regarding Metco and Shoreside's claims cannot be considered hearsay where introduced for the operative fact of notice to Nugget and USF&G of the Corps' views in the matter as Administrative Contracting Officer. *See, e.g*., Corps of Engineers' correspondence dated August 21 and 26, 1997 attached hereto as Exhibit 2 and signed by the "Administrative Contracting Officer" for the Department of the Army, U. S. Army Engineering District, Alaska, Richardson Resident Office. *See also* Fed. R. of Evid. 801(c). Although any objection has been waived, that correspondence is also admissible for the truth of the matter stated therein, at least under Federal Evidence Rules 803(6) and 803(8) (exceptions to hearsay rule apply where the documents

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                          45-40 / #83805
Page 11 of 26

consist of records of regularly conducted activity and public records and reports).

Also applicable is the established rule in the federal courts giving great deference to the interpretation and determinations of an agency charged with the administration of federal contracts and law, such as the Corps of Engineers in this case which even has its own resident legal office. *See Chevron USA, Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837, 104 S.Ct. 2778 (1984); *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792 (1965). The Alaska District Office of the Corps of Engineers was charged with the administration of the Federal Government project and contract to which that correspondence and this case relate. That included administering the law applicable thereto such as the federal Miller Act and the federal Prompt Pay Act previously addressed in this matter. *Id.*

Furthermore, Mr. Randolph and Mr. Greg Poynor, Nugget's General Manager, both testified at their depositions in 1998 that Nugget received that correspondence, which they considered authentic and which has all the indicia of authentication. *See* Fed. R. of Evid. 901-903. In addition, if need be North Star can demonstrate that that correspondence was found in Nugget and USF&G's records and in the records of Willis of Alaska, USF&G's agent for the payment bond, but requests its costs and expenses in that event, similar to the procedure which applies to a denied request for admission since USF&G now seems to be changing its position as to a matter settled long ago about which the claimants could have propounded requests for admission if they had been alerted to that change before this late date, after the close of discovery. North Star can also have the documents authenticated through the Corps of Engineers, either before or at trial, if the Court really considers that necessary as to such

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 12 of 26

45-40 / #83805

obviously genuine evidence.[10]

USF&G also takes the position, on two occasions in its Opposition, that "[t]he fact that USF&G and/or Willis Coroon were copied on letters [including the correspondence from the Corps of Engineers] is proof of ***nothing***."  Clerk's Docket No. 527 at p. 6 (emphasis added).  USF&G purports to support that brash statement by twice noting that Bill Wells, USF&G's employee who USF&G chose to list as its representative on the payment bond, is in USF&G's underwriting department in Seattle, Washington.

However, as previously noted, it was USF&G which provided the payment bond for the protection of those doing work in connection with the project, pursuant to the Miller Act.  It was USF&G who chose to name Mr. Wells (together with USF&G's attorney-in-fact and agent in Alaska at Willis Coroon, James Ferguson) upon that bond for purposes of all contact and claims at Willis Coroon's office address in Anchorage at 4220 "B" Street, which USF&G had listed on the bond.  *See also* Exhibit 1 attached hereto.  One cannot fault the Federal Government or the claimants for sending their correspondence and claims to the person at the address provided by USF&G for that very purpose.  One can only fault USF&G, not so much for providing that contact information ***but*** for now trying to take the position that its own representations to the Federal Government and the bond's intended beneficiaries somehow should serve to shield it from responsibility and that properly addressed communications in accordance with its own instructions mean "nothing".

---

[10]    On the other hand, the Court could treat USF&G's tardy assertion on this subject as being frivolous and untimely to the point of warranting sanctions.  *Cf., e.g.,* Fed. R. of Civ. P. 11 and Alaska USDC Local Rule 1.3.  *See also* prior Court comments regarding Nugget and USF&G's litigation tactics at note 6 *supra*.

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83805
Page 13 of 26

In addition, USF&G lifts out of context and misapplies Shoreside and Metco's past assertion that "Nugget may have withheld and/or deliberately concealed some of this information [regarding the problems Nugget was creating with respect to the claimants in this case in the Summer of 1997] and its secretive arrangements with Spencer Rock from USF&G much like it did the claimants and the Corps of Engineers."  Clerk's Docket No. 527 at p. 5.  Citing that passage, USF&G argues that "it constitutes an admission that USF&G neither knew or had reason to know anything" and "totally destroys Plaintiff's claim for punitive damages against USF&G."  *Id.*

However, that is not at all the case.  Although that previous assertion made by Shoreside and Metco acknowledges the possibility that Nugget withheld and/or deliberately concealed information from USF&G just as it did others, in that same statement Shoreside and Metco assert that USF&G "knew or should have known of the problems Nugget was creating with respect to the claimants in this case in the Summer of 1997."  That assertion was also made in November of last year in this case, before much of the evidence regarding the true extent of USF&G's bad faith conduct had become known.

If USF&G had been doing its job, it could and should have made arrangements with its principal, Nugget, to alert it to all significant changes in the work arrangements for the project USF&G had bonded, even that spring and summer.  If USF&G had done so, it would have become alerted to the very material changes in the scope of work, absolute control, and interception of funds imposed by Nugget over Spencer Rock Products.  It would have become aware of the consequences those changes could have on laborers and suppliers like North Star intended to be protected under the payment bond supplied by USF&G.  It could have taken steps

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83805
Page 14 of 26

to ensure that those laborers and suppliers would be protected and paid, such as by requiring Nugget to make payment to those companies or ensure that any payment made to Spencer Rock was by check also listing those unpaid companies as payees.

Moreover, at least by August of 1997 USF&G had received notice of Nugget's irregularities through the correspondence from the Corps of Engineers.

Furthermore, it is North Star's position that the claimants' case against USF&G stems not as much from what USF&G failed to discover about Nugget's surreptitious takeover conduct, non-payments, and related activities during April through July of 1997 as it does from USF&G's failure to become actively and independently involved with the claimants' claims once alerted to that irregular situation through the correspondence of the Corps of Engineers.  Given that broader context, together with the limited context of Shoreside and Metco's statements which USF&G takes out of context, those statements do not constitute any sort of "admission" that USF&G "neither knew or had reason to know anything."  Quite the contrary is true.  Likewise, nothing in the limited context of those statements "destroys" a claim for punitive damages against USF&G (and certainly not North Star's claim).

In purported support of its misconceptions to the contrary, USF&G again misrepresents the holdings and standard of proof for a bad faith claim stated in *Hillman v. Nationwide Mutual Fire Insurance Company*, 855 P.2d 1321 (Alaska 1993).  As set out recently in some detail in North Star's Opposition in Response to USF&G's Motions Regarding Statute of Limitations, Bad Faith, Expert Witness and Punitive Damages (*see* Clerk's Docket No. 547 at pp. 23-25), USF&G seriously misrepresents the standard to be applied in Alaska.  Rather than correctly state the Alaska standard, which is based solely upon the "reasonableness" of the insurer's conduct,

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83805
Page 15 of 26

USF&G states a more rigid, extreme "double requirement" standard from another jurisdiction quoted, but clearly not applied, by the Alaska Supreme Court in *Hillman*.  *See* full discussion at Clerk's Docket No. 547 at pp. 23-25.  In short, as was noted there, "USF&G continues [after all these years] to seek to justify its extreme conduct and positions taken in this case by relying upon 'a fairly strict requirement of subjective bad faith' that has not been adopted by the Alaska Supreme Court."  *Id*. at 25, *referencing Hillman*, 855 P.2d at 1324, & Shernoff, Insurance Bad Faith Litigation, § 5.02[1] at p. 506 (1992), relied upon and quoted from in *Hillman*.  That misapplication by USF&G is both incorrect and deceptive.

Next, USF&G desperately seeks to excuse the absence of admissible evidence that it reasonably and faithfully discharged its duty to deal fairly and in good faith with the claimants by twice asserting, quite incorrectly, that these plaintiffs and use plaintiffs "chose not to take any depositions of USF&G personnel."  *See* Clerk's Docket No. 527 at p. 7 n.3 and p. 6 n.6.  According to USF&G, without taking those depositions plaintiffs "have no idea whatsoever what USF&G did do or may have done" and "have never established, nor will they establish, that USF&G simply sat on its hands and did nothing."  *Id*.

USF&G is again incorrect in its assertions.

First, it can be demonstrated that USF&G's counsel deliberately and actively prevented the claimants from taking any depositions of "USF&G personnel," including a Rule 30(b)(6) deposition of USF&G specifically ordered by this Court.  *See* Clerk's Docket Nos. 414 and 415.  Instead of allowing any USF&G personnel, past or present, to be deposed, Mr. Viergutz repeatedly took the position that those persons, who all reside out of state, were unavailable when he was available or allegedly available only when he was unavailable.  He expressly

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83805
Page 16 of 26

refused, in writing and orally, to allow any of those depositions to be taken unless he was available to travel (which he never was if the witness might be available), or if it did not suit the witness's schedule (as represented by him).  Meanwhile, he also refused to allow any contact of those witnesses except through him.  The result is that none of those depositions were permitted to be taken, despite earnest efforts by the claimants to do so.  *See, e.g.*, Clerk's Docket No. 460 at p.11 & Exh. 7 attached thereto.  *See also* Clerk's Docket No. 447 (USF&G's Witness List, giving no witness addresses or phone numbers and specifying that witnesses be contacted only "c/o Barokas Martin & Tomlinson").

Second, the claimants have already established on the record that USF&G did nothing, unless "something" is turning its entire responsibilities toward the claimants over to Nugget and Nugget's attorney having a direct conflict of interest in the matter.  The claimants have also set out admissible fact and proffers of evidence, in this memorandum and elsewhere (*see, e.g.*, Clerk's Docket Nos.519, 535 & 547), establishing that USF&G has totally misplaced what should be its paramount loyalties to the claimants in this matter to serve its own ends instead, stubbornly and in bad faith and irrespective of the law and facts.  The claimants have demonstrated why USF&G has done what it has done (and failed to do), all in its own self-interest.  *Id.*  That evidence supports both the claim of USF&G's bad faith in this matter and its reckless disregard of the claimants' interests in doing so.

Third, having demonstrated a prime facia case through the undisputed facts and applicable legal standards so far presented, together with the proffered report and deposition testimony of expert witness William Grant Callow, North Star, Shoreside, and Metco need not depose past and present USF&G personnel, particularly where USF&G has gone to such efforts

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83805
Page 17 of 26

to hide them.  If USF&G wanted to use the testimony of those persons in its camp to try to show "what USF&G did do or may have done" rather than "USF&G simply sat on its hands and did nothing" (as the evidence presently shows), then it was USF&G's responsibility to obtain that testimony and to present it, which it has not done.  Discovery has closed.  USF&G has presented no evidence through those witnesses and has failed to disclose other pertinent information.  Rather than disclose that information and make those witnesses available, including its Rule 30(b)(6) designees, USF&G has chosen to act contrary to the Orders of this Court and the Rule 26 disclosure provisions.  It has prevented those disclosures, and the "self-effectuating" remedy for that is preclusion should USF&G later attempt to present those witnesses or use undisclosed information.  *See, e.g.*, Fed. Rs. Civ. P. 37(b)(2) and (c), together with Advisory Committee Notes, <u>Federal Civil Judicial Procedure & Rules</u>, at pp. 182-184 (2006 ed.).

Furthermore, USF&G misconstrues the passage which it lifts from one of Shoreside or Metco's November 2005 discovery responses and reprints at the middle of page 6 of its Opposition.  It may be granted that the first opinion of the Ninth Circuit Court in this case back in 2001 was to the effect that Spencer Rock is not technically a "subcontractor" under the Miller Act and also that that is, at least presently, the law of this case on that one point (however mistaken).  However, that one opinion on that one point, which left the claimants' other Miller Act claims unresolved and their state law claims untouched, "does not relieve Nugget of paying all the subcontractors and suppliers pursuant to the contract as construed by the agency charged with administering the contract."  That is all that it appears that Shoreside and Metco assert.  Indeed, this Court determined in its August 30, 2002 Summary Judgment Order (Clerk's Docket No. 310) that the claimants have a very strong Miller Act cause of action against Nugget and

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83805
Page 18 of 26

USF&G based on Nugget's deceptive conduct and takeover activities which, in the opinion of

the Court, created a "strawman" situation and "telescoped" into a direct relationship between

Nugget and the claimants as a matter of law.  The second panel of the Ninth Circuit Court, which

addressed only that cause of action, also found strong, but not "conclusive," evidence supporting

that claim, thus resulting in this remand for resolution of that and these claimants' other claims.

Clerk's Docket No. 383.

### III.  USF&G EFFECTIVELY ADMITS THAT THERE IS NO FACTUAL BASIS TO SUPPORT ITS AFFIRMATIVE DEFENSES.

As USF&G acknowledges, this portion of its argument is chiefly addressed at North

Star's Motion [and Memorandum] for Summary Judgment Against USF&G Upon its

Affirmative Defenses (Clerk's Docket No. 494), which USF&G has separately opposed (Clerk's

Docket No. 522).  USF&G argues that in that separate Opposition it "provides a basis for this

Court to deny that Motion."  It goes on to state that "[a]s a result, USF&G will not spend time

within the instant Motion arguing what has been the subject of a separate Motion brought by a

companion Plaintiff."  *See* Clerk's Docket No. 527 at p. 8.

However, following that, USF&G goes on to argue for two pages in its instant Opposition

what it states it already argued in the separate Opposition and "will not spend time" arguing

again.  *Id*. at 8-9.

North Star will do as USF&G said it will do but does not do.  North Star's separate

motion and memorandum on that subject (Clerk's Docket No. 494), together with its supporting

Affidavit and Exhibits (Clerk's Docket No. 495) and its recently filed Reply Memorandum on

that subject (Clerk's Docket No. 567), demonstrate that USF&G has provided neither sufficient

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83805
Page 19 of 26

factual basis for its affirmative defenses in response to North Star's discovery requests nor

admissible evidence in response to North Star's motion for summary judgment.  As a result,

USF&G effectively "admits" that there is no factual basis.  As shown in those recent filings,

North Star is entitled to summary judgment against USF&G upon its affirmative defenses.  *See*

Clerk's Docket Nos. 494, 495 & 567.

### IV.  USF&G'S LIABILITY ON ITS PAYMENT BOND IS GOVERNED BY THE APPLICABLE LAW, INCLUDING THE MILLER ACT, AND IS NOT LIMITED TO THE PAYMENT BOND TERMS NOR LIMITED OR AFFECTED WHATSOEVER BY USF&G'S SEPARATE INDEMNITY AGREEMENT WITH NUGGET WHICH USF&G INAPPROPRIATELY SEEKS TO USE AS AN IMPROPER EXCUSE TO AVOID ITS RESPONSIBILITIES.

USF&G's arguments in this portion of their instant Opposition have already been

addressed, for the most part, in North Star's previous Opposition to USF&G's several motions

for summary judgment, as found at Clerk's Docket No. 547 at pp. 16-22.  The bottom line is that

Alaska law and Ninth Circuit law governing the obligations of a surety on a Miller Act payment

bond are quite different than what USF&G stubbornly argues the law to be according to itself

and (it represents) one federal district court decision from the Southern District of Ohio in 1973.

USF&G even takes that one decision from Ohio out of context.  Moreover, although

USF&G represents that decision was "reversed on other grounds" (Clerk's Docket No. 527 at p.

10), the Sixth Circuit Court of Appeals actually had the following to say about that district

court's interpretation of Georgia law on the subject for which USF&G cites that one decision:

> We believe that the Georgia Supreme Court, if it were deciding this case, would follow recent authority and refuse to apply the outmoded *stricti juris* rule that some Georgia courts have stated is applicable to compensated sureties.

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                             45-40 / #83805
Page 20 of 26

*Winston Corp. v. Continental Casualty Co.*, 508 F.2d 1298, 1304 (6th Cir. 1975).  Paraphrasing

one of USF&G's favorite arguments, USF&G's reliance on that one district court decision is

really "nothing".[11]

As to USF&G's next argument, North Star can agree that there is presently no Miller Act

judgment or any other judgment entered in this case.  However, both the summary judgment

Order of this Court entered on August 30, 2002 (Clerk's Docket No. 310) and the second opinion

of the Ninth Circuit Court remanding that matter (Clerk's Docket No. 383) demonstrate that

strong evidence exists in this case on which to base Nugget's liability and the liability of its

surety, USF&G.  As has been previously demonstrated, that liability is not limited to USF&G's

bond, but instead becomes defined by other law applicable to that bond including but not limited

to the Miller Act, and also by state law claims that have been brought against USF&G including

the claim for bad faith.  *See, e.g.*, Clerk's Docket No. 547 at pp. 21-22.

As has also been previously demonstrated, USF&G is entirely wrong in its assumption

that "[u]ntil such time as liability against the principal is established, if at all, . . . then and only

then does USF&G have any obligation to discharge."  To the contrary, USF&G has the duty to

independently investigate, handle, and, where reasonable, to settle valid claims brought against it

and the bond.  Clearly, it is USF&G's view that it does not have the duties that the Alaska

Supreme Court and Ninth Circuit Court have ruled sureties on payment bonds have.  That refusal

to accept responsibility is part of the problem.

USF&G should also be more careful before demanding sanctions regarding disclosure of

---

[11]     North Star understands that Shoreside and Metco are also addressing this point in their reply
memorandum to USF&G's Opposition.

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                           45-40 / #83805
Page 21 of 26

its recent $1.00 settlement offer.  First, that offer was made only pursuant to the Alaska Rules of

Civil Procedure and an Alaska statute, and not the federal rules which apply instead.  For that

reason, it is invalid.  *Home Indemnity Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1332 (9th

Cir. 1995).  USF&G cannot be relying upon the federal rules for its interpretation.

Furthermore, as earlier noted, Federal Rule of Evidence 408 regarding settlement offers

provides that they can be offered as evidence for another purpose, such as evidence of bad faith

where the surety's bad faith dealing is an issue.  The only prohibition is that they not be

introduced to prove liability upon the underlying claim, which in this case is the claim against

the surety's bond.  USF&G should not be allowed to argue, as a matter of summary judgment,

that there is no evidence of its bad faith and, at the same time, exclude from the court some of the

best evidence of that bad faith.  In any event, the present posture of the case is motion practice.

USF&G's $1.00 offer has not yet been presented to the trier of fact.[12]

## V.  PLAINTIFFS' BAD FAITH CLAIM HAS MERIT.

Most all of USF&G's arguments on this subject have already been soundly refuted in

North Star's Opposition in Response to USF&G's Motions Regarding Statute of Limitations,

Bad Faith, Expert Witness, and Punitive Damages located at Clerk's Docket No. 547 pp. 16-34

and related cross-Motion (Clerk's Docket No. 548) and in Shoreside and Metco's Opposition to

USF&G's Motion to Bar Testimony of William Grant Callow and cross-Motion to Preclude the

---

[12]     In a footnote, USF&G also argues that Nugget, a separate defendant, recently forwarded higher
offers of judgment to Shoreside and Metco.  Clerk's Docket No. 527 at p. 11 n.7.  It would appear a
Nugget offer presents an issue other than USF&G's good faith.  In any event, North Star has received no
offer of judgment from Nugget, in any amount.  It has received only USF&G's $1.00 offer.

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83805
Page 22 of 26

Testimony of John L. George, at Clerk's Docket Nos. 545 & 546.[13]  In this portion of its

Opposition, USF&G notes that it has filed a Motion for Summary Judgment on Plaintiff's Bad

Faith Claim and requests that that motion be granted for the reasons "articulated therein."

Likewise, North Star notes the above-referenced filings in response to USF&G's motions it,

Shoreside, and Metco have filed and incorporates them in their entirety in response to USF&G's

present arguments on that subject on its Opposition.

Next, USF&G argues that the Alaska Unfair Claims Settlement Practices Act,

AS 21.36.125, cannot be considered as evidence of bad faith investigation in handling the

settlement of the claim in the instant case.  USF&G claims it was held in *O.K. Lumber Company*

*v. Providence Washington Insurance Company*, 759 P.2d 523 (Alaska 1988), that the Act did not

create a private right of action for damages.  USF&G is correct as to the holding in *O.K. Lumber*,

such as it is, but North Star and the other claimants are not relying on creation of a private cause

of action created through the statute.  *O.K. Lumber* did ***not*** hold that the standards of conduct set

out in AS 21.36.125 (or the regulations promulgated thereunder) do not apply to a private right

of action for damages otherwise created by law.

As has been previously demonstrated, the Alaska Supreme Court has recognized a private

right of action arising in tort for damages for bad faith dealing against a surety on a payment

bond.  *See, e.g.*, discussion at Clerk's Docket No. 547 at pp. 16-21 and Clerk's Docket No. 535

at pp. 29-37.  The statutory standards of conduct ***do*** apply to that common law cause of action.

*Id.  See also State Farm Mutual Automobile Insurance Co. v. Weiford*, 831 P.2d 1264, 1269

---

[13]    North Star has joined in Shoreside and Metco's cross-Motion to preclude the testimony of John L.
George.  *See* Clerk's Docket No. 563.

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83805
Page 23 of 26

(Alaska 1992) and discussion at Clerk's Docket No. 535 pp. 34-35 *incl.* nn.27 & 28.  As

previously addressed there, the rule in *Weiford* permitting application of those standards is not

unlike other situations under Alaska and federal law where the statute or regulation expressing a

rule of conduct does not create a private cause of action in the plaintiff, such as traffic laws or

fire codes or OSHA violations.  Nevertheless, a violation of those statutory or regulatory

standards applies if the claimant is within the class of persons intended to be protected by that

statute or regulation.  Violation of those statutory standards can constitute breach of the duty

owed  *per se,* or at least constitute relevant evidence bearing on the issue of a breach.  *See*

Clerk's Docket No. 535 at p. 35 *especially* n.28.

　　　　Therefore, USF&G is incorrect as to that point as well.

## VI.  THE PLAINTIFFS AND USE PLAINTIFFS MAY
## BE GRANTED SUMMARY JUDGMENT UPON THEIR CLAIMS.

　　　　In this section of its Opposition, USF&G appears to misstate Shoreside and Metco's

motion for summary judgment against it, in which North Star has joined.  North Star understands

that Shoreside and Metco are addressing that point.  Certainly that motion seeks summary

judgment against USF&G upon the claimants' bad faith claims against it.[14]

　　　　North Star has also cross-moved for summary judgment upon that claim, in response to

USF&G's motion for summary judgment on that issue referenced by USF&G in its instant

Opposition.  *See* Clerk's Docket No. 527 at p. 13.  *See also* North Star's Opposition in Response

---

[14]　　　　To the extent it goes farther and seeks summary judgment upon the claimants' Miller Act claims,
Barokas Martin & Tomlinson is not counsel of record for USF&G authorized to respond.

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83805
Page 24 of 26

to USF&G's Motions Regarding Statute of Limitations, Bad Faith, Expert Witness, and Punitive

Damages, and Cross-Motion thereon located at Clerk's Docket Nos. 547 & 548.

Accordingly, an issue has clearly been presented on which each side claims it is entitled

to summary judgment.  However, only the claimants have submitted admissible evidence and the

correct law to be applied to the issue, as set forth in this memorandum and previous memoranda

such as those found at Clerk's Docket Nos. 494, 495, 508, 510, 519, 535, 547 & 567.

North Star is entitled to summary judgment against USF&G on the claim.  At the very

least, it and the other claimants herein have presented more than sufficient evidence to defeat

USF&G's motion for summary judgment upon that claim including punitive damages.

## VII.  CONCLUSION

For the foregoing reasons and any others the Court finds applicable, North Star and the

other plaintiffs and use plaintiffs herein should be granted summary judgment or supportive

determinations on the law of the case on the issues addressed.

Respectfully submitted at Anchorage, Alaska, on May 25, 2006.

s/ Michael W. Sewright
Burr, Pease & Kurtz
810 N Street
Anchorage, Alaska 99501
Phone: (907) 276-6100
Fax: (907) 258-2530
E-mail: bpk@bpk.com
Alaska Bar No. 7510090

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83805
Page 25 of 26

<u>CERTIFICATE OF SERVICE</u>

I certify that on the 25th day of May, 2006, a copy of the foregoing MEMORANDUM IN REPLY TO USF&G'S OPPOSITION TO SHORESIDE AND METCO'S MOTION AND MEMORANDUM FOR SUMMARY JUDGMENT AND DETERMINATIONS OF LAW REGARDING USF&G JOINED IN BY NORTH STAR was served electronically to:

    Steven S. Shamburek, Esq.
    Traeger Machetanz, Esq.
    Paul D. Stockler
    Herbert A. Viergutz
    C. Patrick Stoll, Esq.

    s/ Michael W. Sewright

North Star's Memorandum in Reply to USF&G's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding USF&G Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                        45-40 / #83805
Page 26 of 26