Steven J. Shamburek
Alaska Bar No. 8606063
LAW OFFICE OF STEVEN J. SHAMBUREK
425 G Street, Suite 630
Anchorage, Alaska 99501
(907) 522-5339 Direct
(907) 522-5393 Fax

Attorney for Plaintiffs
Shoreside Petroleum, Inc.,
d/b/a Marathon Fuel Service
and Metco, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>      Plaintiffs,<br><br> and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, on its own behalf,<br><br>      Intervening Plaintiffs,<br><br> and<br><br>METCO, INC.,<br><br>      Intervening Plaintiff,<br><br> vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>      Defendants. | **SHORESIDE'S AND METCO'S REPLY TO OPPOSITION TO MOTION AND MEMORANDUM FOR SUMMARY JUDGMENT AND DETERMINATION OF LAW REGARDING USF&G**<br><br><br><br><br><br>3:98-cv-0009-TMB |

1

COMES NOW Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service ("Shoreside") and Metco, Inc. ("Metco"), by and through counsel, and file this Reply to Opposition to Motion and Memorandum For Summary Judgment And Determination Of Law Regarding USF&G.[1]

### Introduction

The defendants propounded extraordinary discovery requests to the claimants that greatly exceeded the limitations in the Civil Rules. However, the discovery requests provided an organized means to present and develop the claimants' factual discussion first to the defendants and ultimately to this court. The factual allegations against Nugget and USF&G are intertwined. USF&G is obligated to stay informed of the facts and developments involving Nugget because it is the surety for the Homer Project. The claimants are filing a Reply to Opposition to the Motion[2] involving Nugget/USF&G in the next few days that summarizes all the factual allegations presented in the earlier pleadings.

The claimants (North Star, Shoreside and Metco) and others (such as Chugach Rock Corporation and Spencer Rock) are outraged that at the same time they were laboring to build the Homer Project in 1997, Nugget was conspiring to build a paper parapet to deny and then endeavor to defeat payment of their claims. Judge Holland found that the three claimants in this case fully

---

[1] This pleading addresses the opposition at Docket Entry No. 527.

[2] Docket Entry No. 507/508.

and timely provided goods and performed services for the use and benefit of the Homer Project. They were not paid by Nugget, the paymaster for the Homer Project.

The claimants are also outraged that USF&G was on notice of the existence of the claimants; the nature of the goods provided and services performed; the dollar amounts of the claims; Nugget's scheming to defraud the claimants, the Corps' insistence that Nugget pay the suppliers and subcontractors pursuant to express terms in the Nugget/Corps contract, the Corps' insistence that Nugget not request progress payments unless it intends to pay the suppliers and subcontractors; Nugget's takeover of the Spencer Quarry; Nugget's efforts to hide its takeover from the Corps and the claimants; Nugget's failure to require Spencer to obtain a payment bond; and other facts. As the case progressed, USF&G did nothing to stop Nugget from filing frivolous motions designed to wear down the claimants such as the motion to hold that this federal project was not a federal project. USF&G's recently disclosed records suggest that it agreed with the three claimants and Judge Holland that the business relationship between Nugget and Spencer was determined by analyzing two Supreme Court decisions. USF&G did nothing to undertake its duties toward the claimants for the undisputed reason that USF&G maintained and still maintains that it has no obligation to do anything to investigate and/or pay the claims promptly.

USF&G complains that the claimants have waited too long to bring the claims. Judge Holland addressed this matter in his decision regarding the motions to amend the complaints as

follows: "The passage of time in this instance is, for the most part, the result of tactical decisions defendants made. They will not now be heard to complain that they will be prejudiced because so much time has passed."[3] All the claims against USF&G are timely and supported in the record.

## Factual Basis

Nugget and USF&G propounded substantial discovery requests to and received exhaustive and detailed responses from the claimants. In the face of detailed responses, USF&G and Nugget simply disregard the responses and attempt to create confusion by asserting that they are confused. USF&G is confused about its duties and tries to confuse this court. All of the evidence propounded in support of the claims is admissible and relevant.

USF&G made it impossible to take the depositions of the USF&G personnel other than Mr. James Ferguson, Nugget's agent and broker, with Willis of Alaska. If a USF&G witness was potentially available, then counsel for USF&G was not available. When counsel for USF&G was allegedly available, the witness was not available according to USF&G counsel. The claimants were whip-sawed throughout the discovery process. The claimants asserted and continue to assert that USF&G did nothing when it was obligated to do something. USF&G does not disagree. In fact, USF&G agrees. In the final analysis, additional depositions of USF&G personnel were not critical to establish undisputed facts. North Star develops this discussion in its

---

[3]   Docket Entry No. 401, p. 4.

4

Reply memorandum.

 USF&G contends that it can assert a "Rule 37" defense to a Rule 56 motion. However, there is no basis in the Civil Rules or case law to assert a Rule 37 defense to a Rule 56 motion. Throughout this case and with only a few exceptions, the defendants did not respond to the discovery requests of the claimants other than to cut and paste pages of objections and point to a room of boxes. Regarding a few critical areas, the claimants undertook their "meet and confer" obligations and then moved to compel. The defendants now state that the claimants could have "met and conferred" even more often before the defendants would have reaffirmed their absolute refusal to respond to the requests. Then, according to the defendants, the claimants could have moved to compel responses which would have been met by protracted and strident oppositions by the defendants. The efforts suggested by the defendants are futile. The law does not require a party to pursue a futile course of action.

 The claimants have a limited budget that has long ago been exceeded to collect on these claims. The defendants have an unlimited budget to defend and delay the adjudication of these claims. At the deposition of Mr. Callow, Mr. Viergutz asks: "On page 12 [of Mr. Callow's Expert Report[4]], the second line, you talk about economic coercion. Is it your position USF&G is guilty of that despite they weren't paying any attorney fees in

---

[4] Docket Entry No. 460, Exh. 1, p. 12.

5

this litigation?"[5]  USF&G tendered defense of the claims and washed its hands and to this day ahs not revoked the tender of defense.  USF&G is guilty because it has forced the claimants to spend an extraordinary amount of money and wait now almost a decade to collect on undisputed claims.  As noted above, Judge Holland found that all the goods were provided to and the services were performed for the benefit of the Homer Project.

### Legal Basis

USF&G does not challenge the legal basis under the Miller Act or state law for payment of the Shoreside, Metco and North Star claims.  USF&G does not challenge the bad faith causes of action except by citing two cases.[6]

USF&G cites only one case which is from outside the Ninth Circuit in support of its position that it fulfilled its legal duties, did not act in bad faith and should not be subject to a punitive damage judgment.  However, USF&G miscites and misrepresents the one case it offers.  In <u>Winston Corp. v. Continental Casualty Co.</u>, 361 F.Supp. 1023, 1030 (S.D. Ohio

---

[5]   Docket Entry No. 545, p. 82, ll. 15 – 18.

[6]   <u>Alvarez v. Insurance Co. of North America</u>, 667 F.Supp. 689, 696 (N.D. Cal. 1987), and <u>K-W Industries v. National Surety Corp.</u>, 855 F.2d 640 (9th Cir. 1988) are the two applicable cases. Title 31 C.F.R. Section 223.18 and the related provisions are among the applicable federal regulations.  <u>Loyal Order of Moose, Lodge 1392 v. International Fidelity Ins. Co.</u>, 797 P.2d 622 (Alaska 1990), and <u>State Farm Mutual Automobile Insurance Co. v. Weiford</u>, 831 P.2d 1264 (Alaska 1992) are two of the applicable state cases.  Alaska Statute 21.36.125 addressing "Unfair claim settlement practices" and AS 21.90.900(24) and (26) are among the applicable state laws.  Title 3 AAC 26.010 - .070 are among the applicable state regulations.  These cases, statutes and regulations are discussed and the arguments developed in other pleadings.

1973), the court states: "Under Georgia law, a 'contract of suretyship must be strictly construed in the interest of the surety.'" USF&G printed the proposition but deleted the reference "Under Georgia law." However, on appeal in <u>Winston Corp. v. Continental Casualty Co.</u>, 508 F.2d 1298, 1304 (6th Cir. 1975), the court states:

> We believe that the Georgia Supreme Court, if it were deciding this case, would follow recent authority and refuse to apply the outmoded <u>stricti juris</u> rule that some Georgia courts have stated is applicable to compensated sureties.

USF&G misstates that the decision was reversed on other grounds. The district court decision was reversed on grounds that are tangentially relevant to this case. The Sixth Circuit is likely in line with the Ninth Circuit. USF&G's brief does not even mention applicable Alaska authority noted in the footnote above.

<u>Hillman v. National Mutual Fire Ins. Co.</u>, 855 P.2d 1321, 1324 (Alaska 1993), is inapposite. USF&G misrepresents the standard of care actually adopted by the Alaska Supreme Court. North Star discusses the holding in this case in more detail.

USF&G asserts at page 10 of it Opposition as follows: "The nature of a surety's undertaking to its obligee is to ensure that the job is completed." This is a mistaken description of basic surety law. The "performance bond" is posted to guarantee that the job is completed. The "payment bond" is posted to guarantee that the claimants are paid for their goods and services. The claimants are bringing claims against the "payment bond." There is only one payment bond posted by USF&G for the Homer Project because Nugget did not require Spencer to post a payment bond.

The payment bond answers for all claims against Nugget/Spencer Rock. In another pleading, USF&G challenged Mr. Callow's understanding of surety law, yet USF&G fails to appreciate one of the fundamental doctrines of surety law.

### Corps of Engineers Interpretation

Throughout this case, the claimants have reminded the defendants that the Army Corps of Engineers expects Nugget to pay the three claims. The United States government through the Corps is the owner of the Homer Project and charged with the administration of the contract. In a long line of settled cases, the United States Supreme Court holds that the interpretation of a provision by the agency charged with its administration is entitled to deference by the courts. Udall v. Tallman, 380 U.S. 1 (1965); Chevron v. Natural Resources Defense Council, 467 U.S. 837 (1984). The interpretation of the Corps/Nugget Contract by the Corps of Engineers is entitled to deference by this court. The letters between and among the parties are already part of the record.[7]

---

[7] Copies of the letters and attachments provided by the defendants are attached again for the record.

RRO/33 with attachments. NUGGET 001583 – 001586. Metco claim.

RRO/38 with attachments. NUGGET 001563 – 001565. North Star claim.

RRO/40. NUGGET 001561. All claims.

RRO/40. USF&G 001093. All claims.

RRO/44 with attachments. NUGGET 001554 – 001555. Shoreside claim.

RRO/48 with attachments. NUGGET 001545 – 001548. Spencer Rock claim.

Exhibit 1. The copies from the files of Nugget include a "RECEIVED" stamp in the lower right corner of each respective

Mr. Walter D. Wood, P.E., Administrative Contracting Officer with the Corps, states in correspondence to Nugget (RRO/33 regarding Metco) that Nugget was obligated "not to request for progress payments that which you intend to withhold from a subcontractor or supplier." Nugget, however, withheld payments from the three claimants (and others such as Spencer Rock and Chugach Rock Corporation) who were either subcontractors and/or suppliers. In addition, Nugget continued to request progress payments from the Corps of Engineers in complete disregard of this contract requirement. Nugget's strained rationalization of its decisions to withhold payment is inadequate to excuse its failure to pay because it is contrary to the clear interpretation of the contract by the agency charged with its administration. USF&G had no reasonable basis to accept Nugget's strained rationalization rather than the Corp's clear interpretation. USF&G's internal files indicate that it also believed that Spencer was a "subcontractor" as that term is defined by the two relevant Supreme Court cases.[8]

Mr. Thomas A. Johnson, P.E., Administrative Contracting Officer with the Corps who took over administrative contracting duties from Mr. Wood, reaffirms in correspondence to Nugget (RRO/38 - North Star) that Nugget is not to request progress

---

letter and initials of members affiliated with Trecon/Spencer Rock/Nugget. Both Shoreside and Nugget refer expressly to these documents in their discovery responses and as part of their motions for summary judgment as follows: "Documents from the Corps noted as RRO/33, RRO/38, RRO/40, RRO/44, RRO/48 and Nugget documents 611-11, 611-21, 611-25, 611-30 and 611/33 are also responsive." Docket Entry No. 478, pp. 4 - 6 (Metco) and Docket Entry No. 482, pp. 5 - 6 (Shoreside).

payments if it intends to withhold payment to a "subcontractor or supplier."

Mr. Johnson with the Corps acknowledges that the Corps considered Nugget's explanation of events and concludes in one of its letters to Nugget (RRO/40) as follows:

> We acknowledge receipt of [Nugget's] Serial Letter 611-19, dated August 6, 1997 and [Nugget's] Serial Letter 611-21, dated August 11, 1997. We do not necessarily agree that Spencer Rock Products is only a "vendor" for Miller Act purposes.
>
> Based on the supporting costs that you outlined in Serial Letter 611-21, it appears that Nugget Construction has assumed full responsibility for operations at Spencer Quarry for the subject project. Therefore, as primary operator at Spencer Quarry, we believe Nugget Construction is responsible for prompt payment to suppliers and subcontractors who contracted with Spencer Rock Products on this project.

This letter was sent to "Bill Wells" with "United States Fidelity and Guarantee Co." As of August, 1997, Nugget and USF&G were on notice that:

1) The Corps does "not necessarily agree that Spencer Rock Products is only a 'vendor' for Miller Act purposes."

2) "Nugget Construction has assumed full responsibility for operations at Spencer Quarry for the subject project."

3) "Nugget Construction is responsible for prompt payment to the suppliers and subcontractors who contracted with Spencer Rock Products on this project."

---

[8] The argument is developed at Docket Entry No. 549, p. 6.

As the surety for the Homer Project, USF&G had a duty to investigate and pay the claims promptly when Nugget refused to pay. The duty to pay promptly is further grounded in the Prompt Pay Act and the regulations governing the Miller Act such as Title 31 CFR Section 223.18.

Mr. Johnson with the Corps in a letter to Nugget (RRO/44-Shoreside) demands: "We request an immediate explanation of why Shoreside Petroleum, Incorporated has not been paid for the services that they have provided to the Homer project."

Mr. Johnson with the Corps in a letter to Nugget (RRO/48 – Spencer Rock) demands an explanation of the inconsistencies in the statements that Nugget provided the Corps in response to Spencer Rock's claim. Mr. Johnson also states: "Additionally, we are still awaiting your response to Serial Letter RRO/40."

The letters between and among the Corps, Nugget and the claimants referred to and incorporated by the claimants are part of the record. Their admissibility has not been challenged in the past. Judge Holland previously relied upon the letters in reaching decisions.

The United States of America does not bring and maintain the causes of action against the responsible parties and the surety under the Miller Act. Each claimant brings and maintains the claim in the name of the United States and in its own name and thus is described as both a "use plaintiff" and a "plaintiff." Although the Corps of Engineers is not involved as a party in a Miller act case, the interpretations of the Corps regarding the Corps/Nugget Contract are entitled to deference in this court.

### Settlement Offers

The claimants cite the USF&G offer of judgment of one dollar ($1.00) as further evidence of bad faith. The USF&G offer of judgment is fatally defective on its face because 1) it is made to multiple plaintiffs and 2) cites the Alaska Rules of Civil Procedure as authority. In addition, USF&G does not cite Rule 408 of the Federal Rules of Evidence or otherwise request that the offer be treated as confidential pursuant to some authority.

By contrast, the claimants do not cite Nugget's offers of judgment as further evidence of bad faith at this time. The offers are fatally defective on their face because they 1) are made on behalf of multiple defendants, 2) use the wrong principal sums, 3) use the wrong interest rate, and 4) miscalculate attorney's fees. However, Nugget does cite Rule 408 of the Federal Rules of Evidence and thus the claimants are treating the offers as confidential at this time.

USF&G continues its "bull in a china shop" litigation tactics. USF&G discloses confidential information for no apparent reason while decrying the disclosure of non-confidential information by claimants.

### Expert Reports

The Expert Report of William Grant Callow is not itself admissible.[9] However, claimants are making an offer of proof at this time in support of their contention that the bad faith causes of action against USF&G are well-founded. In addition, the expert report provides additional authority for the requests

12

for punitive damages. The admissibility of the reports of both Mr. Callow and Mr. John George are addressed in separate pleadings.

## Punitive Damages

The test for punitive damages is discussed by North Star and in other pleadings filed by the claimants. USF&G does not dispute that it did not do anything other than send out some form letters seeking information that it then did not address. The one detailed letter that was produced for the first time at Mr. Callow's deposition does not evaluate the strength of Shoreside's claim and instead details the arguments to be asserted by Oles Morrison to challenge the claim.

As a matter of settled law and undisputed fact, USF&G "evidenced reckless indifference to the interest of another person." This court can determine that USF&G engaged in bad faith as a matter of law which warrants an award of punitive damages. At most, only the quantum of damages must be presented to the trier of fact. However, the court should find on the current record that the claimants' individual requests for one million in punitive damages as expressly requested in the three Amended Complaints against a corporation with assets that far exceed one billion are more than justified and appropriate.

## Conclusion

The Introduction and the Conclusion sections of the Motion seek the same relief as the title of the motion states. In the Conclusion, the claimants state:

---

[9]   Docket Entry No. 460, Exh. 1.

This Court should enter summary judgment against USF&G and in favor of Shoreside Petroleum, Inc. in the sum of $53,501.01 with interest and in favor of Metco, Inc. in the sum of $36,785.27 with interest. The Court should also allow the claimants to move for and develop the claim for attorney's fees.

North Star's principal sum is $176,751.14, consisting of $124,724.98 for unpaid work North Star did in May and June of 1997 and $51,927.16 for lost profits on work Nugget took away from North Star with interest at 1.5 per cent a month contractual late payment charge[10] or 10.5% per annum prejudgment interest, and attorney's fees and costs.

These are the sums that the claimants have claimed in their complaints, disclosures, discovery responses, etc. In the face of USF&G's admission in the Opposition that it did nothing to fulfill its duties, the court should further determine that the duties were breached by USF&G. The court should find on the current record that the claimants' individual requests for one million in punitive damages against a corporation with assets that far exceed one billion is more than justified and appropriate. The only possible reason to assemble a jury is to determine the amount of the punitive damages against USF&G.

DATED this 25th day of May, 2006 at Anchorage, Alaska.

        THE LAW OFFICE OF STEVEN J. SHAMBUREK
        Attorney for Plaintiffs
        Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service and Metco, Inc.

---

[10]    Docket Entry No. 165.

```
                     s/ Steven J. Shamburek
          By:_____
                     Steven J. Shamburek
                     Alaska Bar No. 8606063
                     LAW OFFICE OF STEVEN J. SHAMBUREK
                     425 G Street, Suite 630
                     Anchorage, Alaska 99501
                     (907) 522-5339 Direct
                     (907) 522-5393 Fax
                     shamburek@gci.net
                     shamburekbank@gci.net
```

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 25th day of May, 2006, a copy of the foregoing was served by the Electric Case Filing system.

s/ Steven J. Shamburek
_____
Steven J. Shamburek