1   Traeger Machetanz, Esq.
    Thomas R. Krider, Esq.
2   OLES MORRISON RINKER & BAKER, LLP
    745 Fourth Avenue, Suite 502
3   Anchorage, AK  99501-2136
    Telephone:  (907) 258-0106
4   Telecopier:  (907) 258-5519

5
    Attorneys for Nugget Construction Co.,Inc.,
6   and USF&G, Defendants

7                   IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF ALASKA AT ANCHORAGE
8
    UNITED STATES OF AMERICA for the     )
9   use of NORTH STAR TERMINAL &         )
    STEVEDORE COMPANY, d/b/a NORTHERN    )
    STEVEDORING & HANDLING, and NORTH    )   No. A98-009 CIV (TMB)
10  STAR TERMINAL & STEVEDORE COMPANY,   )
    d/b/a Northern Stevedoring &         )
11  Handling, on its own behalf,         )
                                         )
12                  Plaintiffs,          )
                                         )
13         and                           )
                                         )
14  UNITED STATES OF AMERICA for the     )
    use of SHORESIDE PETROLEUM, INC.,    )
15  d/b/a Marathon Fuel Service, and     )
    SHORESIDE PETROLEUM, INC., d/b/a     )
16  Marathon Fuel Service, on its own    )
    behalf,                              )   MEMORANDUM IN SUPPORT
                                         )   OF NUGGET CONSTRUCTION,
17                  Intervening Plaintiffs,  )   INC.'S AND UNITED STATES
           and                           )   FIDELITY & GUARANTY CO.,
18                                        )   INC.'S OPPOSITION AND
    METCO, INC.,                         )   REPLY AGAINST NORTH STAR
19                                        )   TERMINAL & STEVEDORE
                    Intervening Plaintiff,   )   CO.'S OPPOSITION AND
20                                        )   CROSS-MOTION TO NUGGET
           vs.                           )   AND USF&G'S APRIL 28, 2006
21                                        )   MOTION FOR SUMMARY
    NUGGET CONSTRUCTION, INC.; SPENCER   )   JUDGMENT AGAINST NORTH STAR
22  ROCK PRODUCTS, INC.,; UNITED         )
    STATES FIDELITY AND GUARANTY         )
23  COMPANY; and ROBERT A. LAPORE,       )
                                         )
24                  Defendants.          )
    ─────────────────────────────────   )
25

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Pursuant to Federal Rule of Civil Procedure 56, Defendant Nugget Construction, Inc. ("Nugget") respectfully files herewith its Opposition and Reply to Intervening Plaintiff/Use-Plaintiff North Star Terminal & Stevedore Co.'s ("North Star") Cross-Motion and Opposition to Nugget and USF&G's April 28, 2006 Motion for Summary Judgment Against North Star. For the reasons set forth in Nugget's Motion for Summary Judgment Against North Star ("Nugget's Motion") and as further discussed herein, Nugget is entitled to summary judgment on all of North Star's claims asserted under Alaska state law in North Star's August 31, 2005 Amended Complaint, and North Star's cross-motion seeking summary judgment on several of its Alaska state law claims should be denied because North Star is not entitled to summary judgment as a matter of law on those claims.

<u>INTRODUCTION</u>

In order to defeat Nugget's motion for summary judgment, North Star shoulders the burden of going beyond the bare allegations in its August 31, 2005 Amended Complaint and setting forth facts with sufficient particularity to establish genuine issues of material fact, or otherwise showing that Nugget was not entitled to summary judgment as a matter of law. Rather than undertake this burden, as it should have if it wished to prevail, North Star instead asks the Court to review its earlier filings relating to motions for summary judgment that have no bearing on the disposition of the Alaska state law claims that are the subject of Nugget's Motion. Then, without adequate references to the current record and, in most instances, without legal

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 1 of 49

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

support contradicting that offered by Nugget, North Star asks the Court to deny Nugget's motion, resting upon what is essentially a reiteration of the bare allegations set forth in North Star's Amended Complaint.

Despite the unfortunate consequence of North Star's Opposition, which was to needlessly complicate matters by blurring the distinction between its federal and state law claims and burden both the Court and Nugget with numerous references to prior filings that are not germane to the resolution of North Star's claims under Alaska state law, two things are certain:  first, North Star did not identify any genuine issue of material fact, from either the earlier or the more recent record, on which Nugget's Motion is based, and, second, North Star did not offer any legal authority on which Nugget's Motion should be denied, or on which North Star's partial cross-motion should be granted.

A brief review of the procedural history of this case will shed much-needed light upon the significance (or, more precisely, the insignificance) of the earlier filings on which North Star so strenuously relies.  Significantly, there have been two orders issued by Judge Holland which were subsequently appealed to the Ninth Circuit, which also issued two Orders.  In both instances, the Ninth Circuit reversed and remanded Judge Holland's prior holdings.

Judge Holland's first Order that was appealed to the Ninth Circuit was issued on June 3, 1999 ("June 3, 1999 Order").  This Order addressed North Star's motion for summary judgment seeking relief

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106  Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 2 of 49

under two principal theories.  Under the first theory, North Star alleged what it described as "direct claims" against Spencer Rock Products, Inc. ("Spencer Rock"), Spencer Rock's then President, Robert A. LaPore, and Nugget.  North Star contended that "Spencer Rock entered into an actual or implied in fact contract with North Star for the stevedoring services which were performed, and Robert LaPore personally guaranteed those services."  North Star's December 7, 1998 Motion for Summary Judgment at 17.  North Star also contended that "Nugget is liable to North Star both under contract, express and/or implied, and under plaintiff's remedies in quantum meruit, since Nugget clearly stepped into Spencer Rock's shoes, primarily to benefit itself and secure its source of stone necessary for the Homer Spit Project."  *Id.* at 18-19.  North Star neither cited any legal authority for its "direct claims," which constituted only two pages of its 32 page motion, nor identified whether these claims were being made under federal or state law.

Under its second theory, which constituted the bulk of its motion, North Star contended that "[a]t the very least, North Star is entitled to recovery against Nugget and USF&G, Nugget's surety, under the Miller Act."  *Id.* at 19.  North Star's recovery under the Miller Act turned on the issue of whether Spencer Rock was a subcontractor or material supplier to Nugget.  If deemed a subcontractor, Miller Act liability could be construed to extend from Nugget to North Star, which would not be so if Spencer Rock were deemed a material supplier.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 3 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Judge Holland concluded that North Star was "not entitled to summary judgment on its contract [direct] claims," reasoning that (i) "it is just not clear whether North Star took on Spencer Rock, or Nugget Construction, or both of them as a direct customer for its stevedoring service," and (ii) "as to the North Star <u>quantum</u> <u>meruit</u> claim, the other contract disputes between the parties are sufficiently convoluted that it is simply not possible to say at this time whether or not one or both of Spencer Rock or Nugget Construction might ultimately be in a position of having been unjustly enriched by reason of the stevedoring services which North Star provided."  June 3, 1999 Order at 4-5.

Regarding North Star's Miller Act claims, Judge Holland determined that "Spencer Rock was subcontractor to Nugget and, therefore, North Star and Shoreside Petroleum could properly claim under the Miller Act for payments herein involved."  *Id.* at 14.

On appeal, the Ninth Circuit agreed with Nugget that Spencer Rock was a material supplier, and not a subcontractor.  After considering the various factors set forth in *United States v. Aetna Casualty & Surety Co. (Conveyor Rental)*, 981 F.2d 448 (9th Cir. 1992) supporting a finding of subcontractor status, the Ninth Circuit held that:

> Of the thirteen listed factors, most of the factors clearly do not support such a finding as to Spencer Rock Products (SRP). Although SRP supplied almost all the rock and its contract with [Nugget] represented over 40% of [Nugget's] total contract cost, these factors simply do not counterbalance the others.  Most notably, SRP was not involved in any portion of NCI's overall contract and the product supplied was in no way unique or complex-it was merely material.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply Against North Star -- Page 4 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*United States of America d/b/a North Star Terminal & Stevedore Co., et al. v. Nugget Construction, Inc., et al.*, 19 Fed. Appx. 705 (9th Cir. 2001). The Ninth Circuit also commented on the consequence of the Support Agreement executed between Nugget and Spencer Rock:

> The Support Agreement does not affect our analysis. [Nugget] agreed to provide help to SRP so that SRP could complete the contract. In so doing, NCI may have exposed itself to direct suit by SRP's suppliers (we express no opinion on this issue because it is not before us). The agreement did not, however, change SRP's involvement in the project, nor require it to do any more than it had originally agreed to do. SRP continued to be a materialman.

*Id.*

On August 30, 2002, Judge Holland issued what could reasonably be construed to be the second significant Order in these proceedings. In it, Judge Holland considered plaintiff Shoreside's motion for summary judgment and Nugget's and USF&G's opposition and cross-motion, as well as Nugget's and USF&G's motion for summary judgment on all claims brought by North Star and intervening plaintiff Metco, and North Star's and Metco's opposition thereto and cross-motions. The substance of these motions related exclusively to claims brought by North Star, Shoreside and Metco under the Miller Act, as evidenced by the first sentence of Judge Holland's order, which succinctly begins: "This is a Miller Act case." August 30, 2002 Order at 2. Judge Holland further clarified the scope of the Court's inquiry: "The Ninth Circuit, in <u>dicta</u> to its opinion reversing this court, noted that Nugget, by entering into a support agreement with Spencer and by helping Spencer complete its contract, may have exposed itself to

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 5 of 49

direct suit from Spencer Rock's suppliers. . . .  The Ninth Circuit's decision has left this court with the serious question as to whether there are any surviving Miller Act claims." *Id*. at 3-4.

In considering whether there were any surviving Miller Act claims, Judge Holland focused on "whether there is an implied contractual relationship for purposes of the Miller Act," and, specifically, whether "a direct contractual relationship with [Nugget] can be implied from [Nugget's] acts despite the existence of an intermediary entity [Spencer Rock] which is found to be nothing more than a straw man." *Id*. at 18-19.  Judge Holland concluded that "[a]lthough at the time of the contract with plaintiffs Spencer was not a 'paper' party, the terms of the support agreement, and Nugget's acts subsequent to it, rendered it so.  By virtue of the support agreement and Nugget's own subsequent actions, Nugget stepped into the shoes of Spencer, acting from that point onward as its own material supplier, directly accepting and using the labor, equipment, and services provided by North Star, Shoreside and Metco." *Id*. at 19-20.

On appeal, as it had once before, the Ninth Circuit reversed Judge Holland's holding that Nugget was liable to North Star, Shoreside and Metco under the implied-in-fact contract, "telescoping" or "strawman" theory of recovery under the Miller Act.  The Ninth Circuit stated that:

> The appellees [North Star, Shoreside and Metco] never entered into express contracts with Nugget, and we have already held that Spencer Rock acted not as subcontractor but as a materialman on this project. . . .  The appellees contend they may nonetheless recover because they had

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 6 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

1    implied contracts with Nugget.  We apply federal law to
2    determine whether such implied contracts existed.

3    In order to determine whether such implied-in-fact contract existed

4    under federal law, the Ninth Circuit relied on the test set forth in

5    *Fidelity & Deposit Co. of Maryland v. Harris*, 360 F.2d 402 (9th Cir.

6    1966), explaining that:  "Under the Miller Act, we will look through

7    Spencer Rock, the materialman, and find an implied-in-fact, direct

8    contractual relationship between the appellees and Nugget, the primary

9    contractor, if appellees demonstrate 'subterfuge, collusion between

10   [Nugget and Spencer Rock] or circumstances indicating the

11   interposition of [Spencer Rock as a] strawm[an], presumably for the

12   purpose of insulating [Nugget and its surety company] from extensive

13   Miller Act liability."  The Ninth Circuit then held:

14   On the record before us, appellees [North Star, Shoreside
     and Metco] have presented sufficient evidence to create a
15   material issue of fact as to subterfuge or collusion.  The
     evidence, although not conclusive, tends to show that
16   Nugget secretly converted Spencer Rock into a strawman in
     its ongoing dealings with appellees.  The support agreement
17   with Spencer Rock on its face purports to insulate Nugget
     from Miller Act liability, yet Nugget directed Spencer Rock
18   to conceal the terms of this agreement and keep secret
     Nugget's arrangements with Spencer Rock relating to the
19   project.  Nugget also began performing some of Spencer
     Rock's functions at the quarry and interacted directly with
20   some of the appellees-the extent to which remains in
     dispute.  We therefore reverse the district court's grant
21   of summary judgment and remand for further proceedings to
     determine whether Nugget (and Spencer Rock) engaged in
22   conduct sufficient to create a direct contractual
     relationship between Nugget and appellees.

23   *United States of America d/b/a North Star Terminal & Stevedore Co., et*

24   *al. v. Nugget Construction, Inc., et al.*, 126 Fed. Appx. 348, 350-51

25
     *U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
     Case No. A98-009 CIV (TMB)
     Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
     Against North Star -- Page 7 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

1    (9th Cir. 2005).  The Ninth Circuit also affirmed a part of Judge

2    Holland's holding, explaining that "even if the fact-finder determines

3    that the appellees have implied-in-fact contracts based on

4    'telescoping,' that would not suffice to create terms providing for

5    attorneys fees."  *Id.* at 351.

6        Following the issue of this second decision from the Ninth

7    Circuit on March 3, 2005, Judge Holland allowed North Star to amend

8    its complaint to include the state law claims that are the subject of

9    Nugget's Motion, and reopened discovery for the purpose of

10   substantiating those claims, which North Star did vigorously pursue.

11       It is against this backdrop that Nugget filed its motions seeking

12   summary judgment on the state law claims asserted by North Star,

13   Shoreside and Metco.  Because the Ninth Circuit concluded that there

14   were issues of material fact involving North Star's claims under the

15   Miller Act's "strawman" or "telescoping" remedy, Nugget considered and

16   then declined to move for summary judgment on those claims, even

17   though the parties' recent discovery efforts have further confirmed

18   that there is no factual or legal basis for such recovery.  However,

19   the facts that are considered material for purposes of Miller Act

20   recovery are different from the facts that are considered material for

21   purposes of recovery under the various claims North Star has alleged

22   under Alaska state law, just as the legal framework for recovery under

23   the Miller Act is very different from the legal framework for recovery

24   under North Star's Alaska state law claims.  It is because of these

25

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 8 of 49

differences that Nugget concluded that North Star's Alaska state law claims were appropriate for disposition on summary judgment.

Nevertheless, despite these differences, North Star's Opposition makes continuing and countless references to its prior filings, from its introductory "Factual Response" through its final argument that punitive damages should not be dismissed, that, as shown above, have no bearing on the disposition of its Alaska state law claims. As discussed above, North Star's prior filings sought recovery under the federal Miller Act, and only the federal Miller Act, which the Ninth Circuit twice rejected upon the application of federal, not state, law. Moreover, North Star's facts and arguments provided to the Court in support of its Miller Act claims cannot be meaningfully applied to, nor do they support, its Alaska state law causes of action.[1] This is because the legal elements necessary to prove the existence of a strawman under the Miller Act are different from those necessary to prove the existence of an implied-in-fact contract under Alaska law and, further, because the Miller Act does not contemplate the other state law causes of action alleged by North Star, including its claims in negligence, tort, equity and its claim for punitive damages.

In sum, North Star's claims under Alaska state law are proper for summary judgment. Because North Star has not taken the steps necessary to either establish genuine issues of material fact or

---

[1] Although it is possible that North Star may have fortuitously supplied facts in support of its previous Miller Act motions that can now be used to establish its state law claims, a close reading of the affidavits and other supporting materials it references in its present Opposition demonstrates that they contain no facts that help North Star on that score.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 9 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

introduce legal authority establishing that Nugget is not entitled to summary judgment as a matter of law, Nugget's Motion seeking summary judgment on all of North Star's Alaska state law claims should be granted. For the same reason, North Star's cross-motion seeking partial summary judgment should be denied.

ARGUMENT

A.    <u>North Star's Opposition fails to adduce evidence or cite legal authority sufficient to withstand summary judgment</u>

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). As will be shown herein, North Star fails to adduce any evidence beyond the "mere allegations" set forth in its Amended Complaint. Consequently, Nugget is entitled to summary judgment as a matter of law.

B.    <u>There was no contract, express or implied-in-fact, between Nugget and North Star</u>

North Star does not identify facts or law to support its argument that there was an express and implied-in-fact contract between Nugget and North Star. Instead, North Star directs the Court's attention to its Amended Complaint and prior filings which, for the reasons discussed above, relate to its Miller Act cause of action and which do

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 10 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

not bear upon the presence of an express or implied-in-fact contract under Alaska law.

Under the Miller Act, a Court may "telescope" the relationship between prime contractor and second-tier subcontractor upon a finding of "subterfuge, collusion between the prime contractor and subcontractor or circumstances indicating the interposition of a straw man, presumably for the purpose of insulating the prime contractor and surety company from extensive Miller Act liability." *Harris*, 360 F.2d at 411. North Star seeks to have the Court ignore the fact that this test is wholly different from that prescribed under Alaska law for finding an implied-in-fact contract, which requires all of the elements of an express contract, including, significantly, an intent to be bound by both parties. *See Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1140 (Alaska 1996).

North Star's Opposition does not introduce any specific fact that establishes a meeting of the minds between Nugget and North Star or an intent to be bound to one another. Instead, harkening back to its Amended Complaint, North Star proclaims that "there are sufficient admissible facts and legal grounds to conclude that Nugget, by controlling, intercepting funds, taking over, and otherwise 'stepping into the shoes' of Spencer Rock, became bound by Spencer Rock's express contractual arrangements with North Star into which Nugget stepped." North Star's Opposition at 14. Specifically, North Star attempts to circumvent the requirement for a meeting of the minds by arguing that "direct mutual assent between Nugget and North Star is

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 11 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

entirely unnecessary to find Nugget liable to North Star under the legal principle of contract by agency through control," and that "[c]learly, there are exceptions to any requirement of 'mutual assent,' as demonstrated by the implied-in-fact analysis of this Court in relation to the federal telescoping cause of action." *Id.* at 15.

It may be true that mutual assent is not required to establish the sort of relationship necessary to impose liability under the federal Miller Act's telescoping or strawman remedy; however, under Alaska law, an implied-in-fact contract requires the presence of mutual assent or, in this case, a showing of an objective manifestation between Nugget and North Star that they intended to be bound to one another, a point that North Star does not dispute. *See Reeves*, 926 P.2d at 1140. For all of the specific facts set forth in Nugget's opening brief, there was no meeting of the minds between North Star and Nugget, which is confirmed by the absence of any evidence of an objective intent to be bound.

North Star quite rightly points out that one party's subjective intent will not defeat the existence of a contract if that subjective intent is belied by words and actions that objectively lead another to believe a contract had been entered. Yet, North Star fails to articulate a single specific fact evidencing such objective manifestation to be bound and instead, in the vague and conclusory fashion that defines its Opposition, declares that the evidence on which Nugget relies, "when seen in a different light," "together with consideration of the evidence previously presented and additional

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 12 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

evidence included within the most recent deposition testimony, permits the determination that there was mutual assent in the objective sense." North Star Opp. At 17. Such declarations, without more in the way of specific factual or legal support, cannot withstand summary judgment.

The Ninth Circuit previously held that North Star "never entered into express contracts with Nugget." *United States of America d/b/a North Star Terminal & Stevedore Co., et al. v. Nugget Construction, Inc., et al.*, 126 Fed. Appx. 348, 350-51 (9th Cir. 2005). This constitutes the standing law of the case. Moreover, North Star has not introduced any legal authority establishing that an implied-in-fact contract can be imposed in the absence of mutual assent, and has not introduced any fact to establish that there was mutual assent between Nugget and North Star. North Star's arguments inviting consideration of the strawman test under the federal Miller Act set forth in *Harris*, as well as its "contract by agency" arguments, are inapposite as unrelated to the legal requirements for express or implied-in-fact contract under Alaska state law. Accordingly, Nugget is entitled to summary judgment that Nugget never entered into an express or implied-in-fact contract with North Star.

C.   <u>North Star failed to offer any specific evidence or controlling Alaska law sufficient to withstand summary judgment against its promissory estoppel, detrimental reliance and misrepresentation and nondisclosure claims</u>

1.   <u>Promissory Estoppel</u>

In its opening brief, Nugget argued that it was entitled to summary judgment on North Star's promissory estoppel claim because

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply Against North Star -- Page 13 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Nugget did not make an actual promise to North Star that induced an action or forbearance in reliance thereon.  In support, Nugget introduced and applied the testimony of Mr. Randolph and Mr. Goodwill, both of whom collectively confirmed that Nugget never promised anything to North Star that induced North Star to either enter into a contract with Spencer Rock, or continue working under its contract with Spencer Rock, against the four factors necessary to establish promissory estoppel as set forth in *Brady v. State*, 965 P.2d 1 (Alaska 1998).

In opposition, North Star asserts, "[f]irst off, conduct or actions including directions or deliberate silence, especially under circumstances wherein one should speak up, can constitute a 'promise' on which others may reasonably rely."  North Star Opp. At 18 (citing *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274 (Alaska 1985) and *Reeves v. Alyeska Pipeline Service Co.*, 926 P.2d 1130 (Alaska 1996)). North Star then recites a quote from Judge Holland's overturned August 30, 2002 decision as proof of

> "sufficient evidence to create a material issue of fact" as to subterfuge, collusion, and the secret conversion of Spencer Rock into a "strawman" rendered unable, by that conversion, to pay the claimants, while at the same time Nugget induced these claimants, by its conduct and silence, to do the work that Nugget needed done in order to perform its contract with the Federal Government, get paid for that work, and thereby siphon off more money into its own pocket without paying Spencer Rock or the claimants.

North Star Opp. at 19.

First, neither *Zeman* nor *Reeves* stand for the proposition for which North Star relies on those cases.  In both *Zeman* and *Reeves*,

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 14 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

there were express promises in the form of oral contracts, agreements to agree and other direct communications, both written and oral, that passed between the litigants that the court found may have induced an action or forbearance sufficient create genuine issues of material fact rendering summary judgment inappropriate.  As discussed in Nugget's opening brief, there were no such promises, agreements, discussions, or inducements between Nugget and North Star, and North Star has not identified any.  Significantly, both *Zeman* and *Reeves* recite the same four factors for establishing promissory estoppel on which Nugget relies as set forth in *Brady*.  Further, neither case indicates that "deliberate silence" or an omission can constitute an actual promise.

Second, Judge Holland's overturned findings in connection with North Star's Miller Act claims do not constitute "evidence to support findings that Nugget, by action, word or conduct also 'influenced' the actions and legal relations of the claimants."  North Star Opp. at 20. The same is true of the North Star's many conclusory statements that are based on Judge Holland's findings that are not supported by specific facts in the current record.  For instance, North Star alleges:  "Nugget deliberately withheld that very material information from North Star, which depended upon Nugget for the truth and depended upon protection under the payment bond." *Id*. Regardless of the weight that the Court may assign to Judge Holland's prior findings, what remains true is that, nowhere in the language cited by North Star, or elsewhere in its papers, has North Star shown that Nugget made a

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 15 of 49

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

promise to North Star that induced an action or forbearance thereon to North Star's detriment.  Conclusions that Judge Holland may have drawn regarding Nugget's exposure under the Miller Act do not alter this conclusion, which is controlled exclusively by the application of Alaska state law.

North Star has failed to show that Nugget ever made a promise to North Star that induced any action or forbearance sufficient to sustain its promissory estoppel claim.  Indeed, North Star reconfirmed that it erroneously relied upon Nugget's payment bond, and not upon any word, action or omission by Nugget.  In the absence of controlling legal authority or specific facts establishing a genuine issue of material fact, Nugget is entitled to summary judgment as a matter of law that North Star's promissory estoppel is without merit.

2.    Detrimental Reliance

Again relying on its prior Miller Act filings and the prior decisions relating thereto, North Star summarily declares that: "Nugget, through its conduct and directions taking charge of Spencer Rock's operations and North Star's loading activities and by its surreptitious silence withholding the true relationship between it and Spencer, affirmatively portrayed a false and deceptive situation to North Star upon which North Star reasonably relied, obviously to its resulting prejudice."  *Id.* at 22.

North Star's recitation of its theories under the Miller Act with its repeated accusations of Nugget "controlling Spencer Rock" and "intercepting all funds otherwise due Spencer" are not sufficient to

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 16 of 49

withstand summary judgment on its detrimental reliance claim. In

order to withstand summary judgment, North Star would have needed to

establish specific facts establishing that Nugget made a promise by

action or word on which North Star relied to its detriment, per the

factors set forth in *Ogar v. City of Haines*, 51 P.3d 333, 335 (Alaska

2002), or otherwise show that Nugget was not entitled to summary

judgment as a matter of law. North Star failed to point to any

conduct – in the form of a statement, act or omission – attributable

to Nugget on which North Star detrimentally relied. As North Star was

clear to point out, it entered into its contract with Spencer Rock,

and continued its contract with Spencer Rock, on the erroneous belief

that North Star was covered by Nugget's bond, and it was this

misplaced reliance on the bond, and not on any conduct attributable to

Nugget, that North Star relied to its detriment. North Star does not

dispute that it must meet the elements set forth in *Ogar*, and it does

not dispute that it failed to satisfy those elements. Consequently,

Nugget is entitled to summary judgment dismissing North Star's

detrimental reliance claim.

   3.   <u>North Star fails to identify any duty under which Nugget
was required to disclose the legal and proper support
arrangement between Nugget and Spencer Rock</u>

   The essence of Nugget's motion for summary judgment on North

Star's misrepresentation and nondisclosure claims was grounded in the

legal conclusions that the Support Agreement was a completely legal

agreement, that the concept of backcharging Spencer Rock for work

Nugget performed on behalf of Spencer Rock under Spencer Rock's

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 17 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

contract with Nugget was neither illegal nor unusual, and that Nugget

was not bound by any statutory or common law duty to disclose the

Support Agreement to Nugget, or anyone else for that matter.

In response, North Star asserts that

> Randy Randolph had a duty to bring to the attention of
> North Star the unusual and undisclosed change in the
> relationship between Spencer Rock and Nugget, whereby
> Nugget insured its payment rather than payment to Spencer
> Rock or North Star for the work that North Star did.  The
> reasonable inference can be drawn that North Star, had it
> known the true circumstances withheld from it, would have
> taken the steps to make sure that Nugget and Spencer Rock
> very clearly bound themselves to pay for the work, likely
> by prepayment or payment immediately upon doing the work
> (rather than extend credit as North Star did).  Neither
> would North Star likely have followed Mr. Randolph's
> direction to just address the bills to Spencer Rock, had it
> been told the truth.

North Star Opp. at 25-26.  North Star draws these conclusions

following a discussion of several Alaska state law cases addressing

the law of misrepresentation, nondisclosure and constructive fraud.

The propositions for which these cases are cited are uncontroversial

on their own; however, the significant factual distinctions between

each of these cases and the instant case, which North Star fails to

disclose to the Court, leave the Court with a contorted and misleading

representation of their present application.

For instance, North Star relies on *Hagans Brown & Gibbs v. First

National Bank of Anchorage*, 810 P.2d 1015, 1019 (Alaska 1991), which

North Star advises is "analogous to this case," emphasizing that

negligent misrepresentation can arise upon "an omission where there is

a duty to disclose, such as 'when facts are concealed or unlikely to

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 18 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

be discovered because of the special relationship between the parties, the course of their dealings, or the nature of the fact itself.'" North Star Opp. at 24. *Hagans* involved alleged misrepresentations between parties whose course of dealing evidenced an attorney-client relationship. *See Hagans*, 810 P.2d at 1019. North Star fails to explain how the duties that run between a client and its attorney can meaningfully inform the relationship between a prime contractor and a second-tier vendor not in privity with one another, or how *Hagans* might otherwise be analogous, which it is not. This is most likely because North Star was unable to identify any authority establishing a duty running from Nugget to North Star that would require Nugget to make North Star aware of the contractual relationships into which Nugget enters.

Indeed, in view of the language set forth in *Hagans*, it is a reasonable conclusion that North Star does not mention any "special relationship" between North Star and Nugget because there is no special relationship between a prime contractor and a second-tier vendor. Similarly, North Star does not discuss the "course of dealing" between North Star and Nugget because North Star's corporate designee indicated that the course of dealing between Nugget and North Star was nothing out of the ordinary. And, finally, North Star does not discuss the "nature of the fact itself" because, quite literally, there is no fact in this case that was ever misrepresented to North Star by Nugget and because Nugget was never under any duty to disclose its Support Agreement with Spencer Rock to North Star or anyone else.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 19 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

The other cases cited by North Star relating to its misrepresentation and nondisclosure claims are equally inapposite because the facts of those cases involved affirmative misrepresentations, i.e., outright lies, and/or because the relationship between the parties required a duty to disclose information, such as a fiduciary relationship. *See Barber v. National Bank of Alaska*, 815 P.2d 857 (Alaska 1991) (involving affirmative and knowing misrepresentations made by mortgagee to mortgagor that resulted in foreclosure of mortgagor's property); *Carter v. Hoblit*, 755 P.2d 1084 (Alaska 1988) (involving breach of a fiduciary relationship by an individual who indicated to friend that he would purchase property on behalf of himself and his friend yet recorded deed in his name only); *Turnbull v. LaRose*, 702 P.2d 1331 (Alaska 1985) (involving affirmative and knowing misrepresentations made by seller of real property and seller's agent to purchaser that likely induced the purchaser's decision to purchase property); *Adams v. Adams*, 89 P.3d 743 (Alaska 2004) (standing for proposition that two parties involved in contract negotiation have duty to inform one another of changes to draft contract language made in the course of finalizing contract documents).

Nowhere in North Star's discussion of these cases or elsewhere in this section is there an allegation that Nugget affirmatively misrepresented any fact to North Star, nor is there any cited legal authority establishing a duty that would require Nugget to disclose the Support Agreement to North Star. As Nugget pointed out in its

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 20 of 49

opening brief, had Nugget publicized the Support Agreement, it may have exposed itself to suit from Spencer Rock on a theory of tortious interference with contract or economic relations.  Indeed, North Star concedes that, "[u]nder different circumstances it might be permissible for Nugget to keep its 'support' arrangements resulting in the control and takeover of Spencer Rock from others," but for the fact that Nugget "received a benefit of [North Star's] services."  North Star Opp. at 26-27.  These statements highlight the fundamental misstep in North Star's flawed logic chain, which is the presumption that Nugget somehow benefited in its dealings with Spencer Rock.

In fact, as Nugget discussed in its opening brief, Nugget would have been much better off had Spencer Rock been able to honor its original contract with Nugget.  The evidence in the record, including the recent record, establishes that there was no benefit conferred upon Nugget by virtue of North Star's services provided to Spencer Rock.  The value and benefit of that work, along with the work that Nugget was forced to perform in connection with the Support Agreement, was conferred upon Mr. LaPore and Spencer Rock without just compensation, and was then lost when Spencer Rock failed to honor its obligations.

North Star argues in closing that the prior decisions by Judge Holland and the Ninth Circuit establish "more than sufficient evidence of subterfuge, collusion, interposition of strawman, secret dealings, direction, and deliberate concealment of the true situation from the claimants to support that claim and thus to support North Star's state

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 21 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

law claims of misrepresentation and nondisclosure." North Star Opp. at 29. This statement captures and characterizes North Star's entire approach to its Opposition, namely that the prior decisions in this case establish a basis on which North Star may defeat summary judgment on its state law claims. This is not true. Nugget is not seeking summary judgment on North Star's federal Miller Act claims; Nugget is seeking summary judgment on North Star's Alaska state law claims. As stated before, proof of entitlement under the telescoping remedy through the federal Miller Act requires a different legal and factual showing from that required to prove misrepresentation and nondisclosure under Alaska state law.

Consequently, even if these prior decisions constituted evidence on which North Star could rely to defeat Nugget's motion, which they do not, (as both of Judge Holland's decisions were reversed), nowhere in these decisions is there a discussion of a duty that would compel Nugget to disclose its Support Agreement with Spencer Rock, and nowhere is there a finding that Nugget affirmatively misrepresented any fact to North Star. As Nugget pointed out in its opening brief, the concept of backcharging is not only a practice with which North Star has direct familiarity; backcharging has also been expressly sanctioned by the Alaska Courts as a perfectly legal practice. *See Howard S. Lease Constr. Co. & Assoc. v. Holly*, 725 P.2d 712 (Alaska 1986). Accordingly, Nugget is entitled to summary judgment on North Star's misrepresentation, nondisclosure and any other claim under Alaska law related thereto, including fraud and constructive fraud.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 22 of 49

D.   Nugget never owed North Star any duty of care, thus, North Star's negligence claims must fail

The essence of Nugget's motion for summary judgment on North Star's negligence claims was that Nugget did not owe North Star any duty of care – either at common law or by statute – that could give rise to claim in negligence.  The first step in the required analysis under Alaska state law is to examine the relationship between the parties to determine if a duty could exist.  *See Mesiar v. Heckman*, 964 P.2d 445 (Alaska 1998).  Nugget concluded, consistent with prevailing Alaska law, that there was no duty that could give rise to a negligence claim as between a prime contractor and second-tier vendor.

North Star first asserts that, by virtue of the federal Miller Act and federal Prompt Payment Act, "Nugget had a duty at law not to seek to circumvent or insulate itself or its surety from their affirmative responsibilities to secure payment and deal honestly, fairly and in good faith, and in a manner consistent with the [Miller] Act, toward persons like these claimants intended to be protected by the Act.  That is the purpose and policy behind, among other things, the 'telescoping' remedy provided for in [*Harris*], applied by courts to this case, *id.*, and in such other Ninth Circuit decisions."  North Star Opp. at 30-31.  North Star continues that "the Prompt Payment Act and Nugget's responsibilities under it referenced in the correspondence from the Corps of Engineers effectively served to amend

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 23 of 49

and supplement the Miller Act, particularly in its provisions for the prompt payment of suppliers and subcontractors."  Id. at 32.[2]

   As a threshold matter, Nugget was entirely within its right to receive progress payments from the Corps during the period that Nugget was required to assist Spencer Rock.  This is expressly permitted by the Prompt Payment Act.  *See* 31 U.S.C.A. § 3905(g) ("this section shall not limit or impair any contractual administrative, or judicial remedies otherwise available to a contractor or a subcontractor in the event of a dispute involving late payment or nonpayment by a prime contractor or deficient subcontractor performance or nonperformance by a subcontractor").[3]

_____

[2] North Star relies on *United States ex rel. Cal's A/C & Electric v. Famous Constr. Corp. & Capital Indemnity Corp.*, 34 F. Supp. 2d 1042 (W.D. La. 1999) for this proposition.  The essence of the court's holding in *Cal's A/C & Electric* was that the Miller Act does not preempt a claimant from bringing causes of action allowed by state law.  The court based its holding upon an amendment to the Prompt Payment Act, which the court concluded "served as an amendment or addendum to the Miller Act."  *Id.* at 1043-44.  Thus, *Cal's A/C and Electric* confirms only that state causes of action can coexist with a federal Miller Act cause of action, provided that such causes of action are permitted by state law; it does not support in any way North Star's contention that Nugget owed North Star a duty in negligence under Alaska state law.

[3] Regarding the Corps' correspondence on which North Star relies, North Star specifically asserts that:  "The Corps, as project administrator of the contract terms and applicable law, advised Nugget and USF&G that Nugget should not have sought or obtained progress payments from the Corps where Nugget withheld or intended to withhold payment from a supplier or subcontractor."  North Star Opp. at 31.  North Star's reliance upon this correspondence is misguided.  First, North Star conspicuously ignores the fact that Nugget was and is legally entitled to backcharge Spencer Rock for the work that Spencer Rock failed to perform.  Second, the conclusions drawn by the Corps in this correspondence were formulated based on the slanted assertions of the claimants and without full view of the facts regarding either the relationship between Nugget and Spencer Rock and Nugget and the claimants, or Nugget's activities at the Spencer Quarry.  This was confirmed by the Ninth Circuit's reversal of Judge Holland's August 30, 2002 decision,

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 24 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Further, for the same reasons discussed above, North Star's discussion of the "telescoping remedy" under the federal Miller Act in opposition to Nugget's motion for summary judgment on North Star's Alaska state law claims is entirely misplaced.  The federal common law construing the Miller Act creates a cause of action for parties such as North Star if it can be proven that a prime contractor interposed a strawman or paper party for the purpose of avoiding Miller Act liability.  *See Fidelity & Deposit Co. of Maryland v. Harris*, 360 F.2d 402 (9th Cir. 1966).  The mere existence of this cause of action under federal law has nothing to do with whether the Court should fashion, for what would be the first occasion in any reported case in American jurisprudence, a duty of care in negligence that runs between a prime contractor and a second-tier vendor.

The cases on which North Star relies, which are federal Miller Act cases, do not establish the existence of any such duty under

in which Judge Holland improperly afforded some weight to the Corps' erroneous conclusions that were clearly disputed by Nugget.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986) (stating that court should not weigh evidence at summary judgment phase but only determine if there are genuine issues as to material fact).  Third, the Corps' correspondence is not the product of an agency rulemaking or quasi-judicial process; indeed, this correspondence does not even reflect a formal or informal final decision of a contracting officer.  Consequently, this correspondence is not entitled to the sort of deference that North Star urges.  *See, e.g., Chevron USA, Inc. v. National Resource Defense Council*, 467 U.S. 837 (1984).  Fourth, as discussed above, neither the Miller Act nor the Prompt Payment Act precluded Nugget's receipt of progress payments from the Corps based on Nugget's support arrangement with Spencer Rock. In sum, neither North Star's misguided interpretation of the Prompt Payment Act nor its reliance upon the erroneous conclusions drawn by the Corps prior to being apprised of all relevant facts, has a bearing upon, much less supports, North Star's assertion that Nugget owed North Star a duty of care in negligence.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 25 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Alaska state law.  Perhaps most misplaced is North Star's reliance on *K-W Indus. v. National Surety Corp*, 855 F.2d 640 (9th Cir. 1988).  That case involved a subcontractor's bad faith claim against a surety under Montana state law, following a settlement of federal Miller Act claims.  The precise question before the court was whether the application of Montana law to sureties of Miller Act bonds is preempted by the Miller Act.  The court held that:  "[A]pplication of Montana's unfair insurance claims practices law to Miller Act sureties is not preempted by the federal Miller Act.  Accordingly, because K-W's action arises under state law, not under the Miller Act, the Montana state court in which this action was originally filed has subject matter jurisdiction."  *Id*. at 643-44.

   *K-W Industries* highlights the fundamental deficiency in North Star's briefing, which is its incessant reliance on its prior arguments relating to its claims under the federal Miller Act, the prior decisions issued by Judge Holland and the Ninth Circuit addressing its claims under the Miller Act, and the countless references to the early record in this case relating to its claims brought under the Miller Act, to defend against summary judgment on causes of action controlled exclusively by Alaska state law.  *K-W Industries* could not more clearly establish that claims under the federal Miller Act are distinct from claims under state law, even if such claims arise out of the same operative facts and circumstances. Stated another way, the court held only that federal Miller Act claims and state law claims are not mutually exclusive.  There is no

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 26 of 49

discussion in *K-W Industries* of negligence, either under Montana or Alaska law, and nowhere is there established or defined a state law duty that runs between a prime contractor and second-tier vendor involved in a federal construction project, which is precisely what North Star would have needed in order to withstand summary judgment on its negligence claim.

North Star's reliance on *Loyal Order of Moose, Lodge 1392 v. International Fidelity Ins. Co.*, 797 P.2d 622 (Alaska 1990), which held only that there is an implied covenant of good faith and fair dealing between a surety and its obligee on payment and performance bonds, is equally unhelpful to North Star.  North Star relies on this case to establish that "the Alaska Supreme court recognized the right of intended beneficiaries under a payment or performance bond to bring a tort claim of bad faith dealing against the surety on that bond." North Star Opp. at 32.  True as this statement may or may not be, the mere existence of such a right, and North Star's reference to it, is insufficient to withstand summary judgment on a negligence claim. Nowhere in *Loyal Order of the Moose* is there identified any duty, which, if breached, would permit North Star to recover against Nugget on a theory of negligence.  Further, North Star's unremarkable observation that it may bring a bad faith claim against Nugget's surety, USF&G, of which both Nugget and USF&G are already well-aware, also fails to establish the existence of such a duty as to Nugget.

North Star also notes that "under Alaska law, those persons [protected by the Miller Act] are within the class of persons intended

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 27 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

to be protected by the standards of conduct contained in the Alaska

Unfair Claims Settlement Practices Act, AS 21.36.125, as well as

regulations promulgated pursuant to that Act," citing *State Farm*

*Mutual Automobile Ins. Co. v. Weiford*, 831 P.2d 1264 (Alaska 1992)

North Star Opp. at 33.  *State Farm* involved a bad faith claim by an

insured, Weiford, against her insurance company, State Farm, for

injuries she sustained following an accident with an uninsured

motorist.  The court explained that Alaska Unfair Claim Settlement

Practices Act allowed Weiford a private cause of action against State

Farm and that "the covenant of good faith and fair dealing thus runs

to her from State Farm and is enforceable both in contract and in

tort."  *Id*. at 1269.  It is unclear how North Star draws the

conclusion that persons protected by the Miller Act are also protected

by AS 21.36.125 on the basis of *State Farm*, which had absolutely

nothing to do with the Miller Act, or why a case involving a bad faith

claim relating to nonpayment to an insured involving an automobile

accident advances North Star's negligence claim against Nugget.[4]

Regardless, there is nothing in *State Farm* that establishes a duty

between Nugget and North Star that can give rise to a claim in

negligence for economic loss against a general contractor.

---

[4] North Star has an independent claim against USF&G for bad faith that is the
subject of a separate motion. To the extent that North Star is alleging that
USF&G acted in bad faith, because it has not given in to North Star's
demands, North Star should be reminded that the Ninth Circuit has twice
determined that North Star's position as an obligee under the bond is either
non-existent or subject to serious issues of fact.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 28 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

It is at this point in North Star's opposition that the flawed analytical underpinnings to its argument are, once again, revealed:

> Given those definite relations between the parties and the strong statutory and other legal policies and standards governing them applicable to this case, it seems strange indeed that Nugget or USF&G would take the position that they owe claimants no legal duty of care. It also seems strange that Nugget and USF&G would take the position that there would not be evidence of the "lesser-included" concept of negligence in this case where the Court has already determined that there exists strong evidence of Nugget's subterfuge and deception and secretive interposition of a strawman in a manner harming the claimants, including North Star.

North Star Opp. at 34. North Star fails to cite a single authority, in Alaska or otherwise, in which there was established a duty supporting a claim in negligence in any way analogous to the one North Star seeks to impose upon Nugget. North Star's declaration that the negligence cause of action under Alaska state law is a "lesser included" concept within the common law strawman cause of action under the federal Miller Act, without a single legal authority to support such a proposition, reflects an inferential leap of unprecedented magnitude. In essence, North Star asks the Court to create a new state law cause of action under a negligence theory by imposing a duty between a prime contractor and a second-tier supplier that has never before existed. *United States ex rel. Allied Building Products Corp. v. Federal Insurance Co.*, 729 F. Supp. 477, 479 (D. Md. 1990) (court should avoid intermingling tort concepts with Miller Act claims).

Alternatively, North Star urges the Court to simply declare that the evidence sufficient to prevail on the common law strawman cause of

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 29 of 49

action under the federal Miller Act necessarily establishes liability under traditional state law concepts of negligence, again, without any legal authority to support such a proposition.  Making these arguments even more remarkable is that the "evidence" on which North Star relies to oppose summary judgment is essentially limited to the findings of Judge Holland that have twice been reversed by the Ninth Circuit.  It is a telling truth indeed that North Star chooses to rely time and again on "evidence" and arguments that were raised in connection with its Miller Act claims, now twice reversed, rather than anything from North Star's recent discovery efforts, which were permitted precisely so that North Star could substantiate its state law claims.  In truth, as Nugget demonstrates in its motion, the recent discovery belies North Star's state law claims.

As Nugget outlined in its opening brief, the threshold requirement for establishing a cause of action under negligence is the identification of a class of cases to which a court could apply a ruling and, also, that, "[i]n the first phase of duty analysis . . . duty is at heart a question of policy centering on the basic relationship between the parties rather than the nature of their conduct on a given occasion."  *Mesiar v. Heckman*, 964 P.2d 445, 448 (Alaska 1998).  Nugget argued that the relationship between Nugget and North Star was not one to which a court could apply a ruling or to which a duty could attach, as the only connection between them is that both worked on the same federal construction project at the same time, and that there was no privity of contract between them.

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply Against North Star -- Page 30 of 49

North Star failed to identify any class of cases to which the Court could apply a ruling. North Star's summary assertion that there is not a "'lack of privity' between Nugget and USF&G and North Star for purposes of imposing a duty of care," is unavailing, as is North Star's assertion that "more than sufficient evidence exists to permit the conclusion that North Star was a particular plaintiff within an identifiable class of plaintiffs at risk which Nugget and USF&G knew or reasonably should have foreseen under the rule adopted by the Alaska Supreme Court in *Mattingly v. Sheldon Jackson College*, 743 P.2d 356, 360-61 . . . and that ascertainable economic damages would ensue therefrom." Again, North Star makes these assertions without legal authority or specific references to the factual record.

The lack of contractual privity between Nugget and North Star is not disputed and was, in fact, affirmed in the Ninth Circuit's second order. This is an important fact because it is one among many facts establishing that the relationship between Nugget and North Star is not one to which a duty can or should attach. Moreover, North Star's inability to properly classify the relationship between Nugget and North Star as one to which a court could apply a ruling results from the fact that the relationship is not special and is, in fact, too attenuated for any duty to attach. As Nugget pointed out in its opening brief, that relationship is not bound by any duty under statute or common law or as a matter of public policy that gives rise to a cause of action in negligence.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply Against North Star -- Page 31 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

North Star's reliance on *Mattingly* is equally unavailing. In *Mattingly*, the Court established the rule that a plaintiff may recover for purely economic harm on a negligence theory. The court explained that: "In adopting a rule permitting recovery for purely economic losses, we emphasize the role of foreseeability as it relates both to the duty owed and to proximate cause." *Mattingly*, 743 P.2d at 360. North Star thus asserts that "Nugget was in a unique position to know, and did know, of Spencer Rock and LaPore's limited financial circumstances and the likely disastrous impact Nugget's onerous demands and chokehold on Spencer Rock would have on that company's ability to pay the claimants." North Star Opp. at 36-37.

Setting aside the significant factual differences between *Mattingly* and the instant case – not the least of which is the lack of contractual privity between North Star and Nugget, which existed between the parties in *Mattingly* – North Star overlooks the critical fact that it has failed to identify any duty that Nugget owed to North Star that gives rise to a cause of action in negligence. Nugget entered into a support agreement with Spencer Rock and, for the reasons discussed above, was not bound by any duty to disclose that support agreement. For this reason alone, North Star's negligence claim must fail.[5]

---

[5] North Star also relies on *In re Beverages International Ltd.*, 50 B.R. 273, 282 (U.S Bank Ct., D. Mass. 1985) for the proposition that: "Where a creditor has taken control of a debtor he assumes the fiduciary duties of management and a duty to deal fairly with other creditors." In that case the court held that a creditor was involved in "inequitable self dealing" because of the control and decision making authority over the debtor. This control and authority was evidenced by, among other things, the power to vote and

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 32 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

1    Moreover, the suggestion that, by virtue of this agreement,

2    Nugget could have foreseen that Spencer Rock would not honor its

3    contract with North Star is offered only as speculation and

4    supposition, and is not supported by any specific fact in the record.

5    North Star offers not a single fact establishing that Nugget had

6    particular knowledge of Spencer Rock's or Mr. LaPore's finances, or

7    that Nugget entered into the support agreement for the purpose of

8    placing a "chokehold" on Spencer Rock, or that Nugget had particular

9    or advance knowledge that Mr. LaPore's would fail to pay North Star.

     Because North Star failed to adduce any evidence or cite any

10   legal authority supporting its negligence claim, Nugget is entitled to

11   summary judgment on North Star's negligence claim as a matter of law.

12

13   E.   There is no legal or factual basis supporting North Star's claim
          that Nugget tortiously interfered with North Star's preexisting
14        business relations with Spencer Rock

15        North Star asserts in its Opposition that:

16        In *Mattingly*, the Alaska court reversed summary judgment
          against that plaintiff's negligence claim and held that the
17        plaintiff was entitled to proceed to trial upon his claim
          of negligently caused economic losses of business income,
18        profit, and increases in expenses.  743 P.2d at 361.  In
          this case, those losses would be measured in the same or
19        similar manner as North Star's previous calculation of
          losses due to Nugget's breach of contract or alternatively,
20        tortious interference of North Star's preexisting business
          relations with Spencer Rock.  There are two categories of
21        loss:  (1) non-payment under the contract or Nugget's
          tortious interference with Spencer Rock's ability to pay
22        for the five barge loads North Star did load; and (2)

23   _____
     control more than 20% of the debtor's stock, participation in board meetings,
24   "engineering the sales of inferior inventory," and delays in recording and
     assigning security agreements, demonstrating inequitable conduct wholly
     absent from the instant circumstances.

25   *U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
     Case No. A98-009 CIV (TMB)
     Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
     Against North Star -- Page 33 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

> breach of the rest of the contract or Nugget's tortious
> interference with Spencer Rocks' continuation of it due to
> Nugget's moving the loading work across Resurrection Bay to
> suit Nugget's own purposes and charges against Spencer
> Rock. . . .  Those losses, in the principal sums of (1)
> $125,000 and (2) $52,000 (lost profits), respectively,
> which are set out in prior discovery disclosures, also
> apply to North Star's negligence claims.

North Star Opp. at 36 n. 37.  These comments echo North Star's Amended
Complaint and, in particular, its claim for Tortious Interference of
North Star's Agreements and Prospective Economic Advantage and
Contractual or Business Opportunities.

As a threshold matter, North Star asserts in the introduction of
its Opposition that Nugget's opening brief does not address North
Star's tortious interference of business relations claim set forth in
paragraph 35 of North Star's Amended Complaint.  *See id.* at 1.  This
is not true.  The allegations offered in support of North Star's
tortious interference claim are addressed and countered throughout
Nugget's opening brief and, as Nugget stated in the very first
sentence therein, Nugget respectfully moved for summary judgment on
"all state law claims" alleged by North Star.  Nugget's arguments
herein offered in response to North Star's allegations in its
Opposition cited above further support Nugget's entitlement to summary
judgment on North Star's tortious interference claims.

As is true of the rest of North Star's Opposition, North Star
does not offer any specific facts in furtherance of the bald
assertions in its Amended Complaint that Nugget exerted control or
overreaching with respect to Spencer Rock, or that Nugget improperly

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 34 of 49

intercepted or rechanneled funds to itself, or that Nugget deliberately interfered with and removed the work for which North Star had contracted with Spencer and LaPore from North Star midway through the Homer Spit project. In the absence of such evidence and, specifically, evidence establishing that Nugget (i) intended to induce Spencer Rock to breach its contract with North Star, and (ii) engaged in conduct that induced such breach and, further, (iii) engaged in conduct that was improperly or maliciously motivated, North Star's tortious interference claims must fail. *See RAN Corp. v. Hudesman*, 823 P.2d 646, 648 (Alaska 1991) (setting forth elements of the tort of intentional interference with contractual relations); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-35 (1986) (non-moving party with the burden of proof at trial must present facts establishing the predicates to its cause of action in order to defeat summary judgment).

For the same reasons, North Star's allegation that "Nugget's tortious interference with Spencer Rocks' continuation of [the contract with Spencer Rock] due to Nugget's moving the loading work across Resurrection Bay to suit Nugget's own purposes and charges against Spencer Rock" is equally deficient. North Star Opp. at 36 n. 37. North Star makes this statement without any specific factual reference to the record sufficient to withstand summary judgment.

Finally, as Nugget expressly pointed out on page 20 of its opening brief, North Star's tortious interference claims are factually and legally inconsistent with, not only its federal Miller Act claims, but, also, the majority of its other state law claims, evidencing

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 35 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

1  North Star's penchant for asserting positions when convenient without

2  regard to their factual or legal validity.  There cannot be a tortious

3  inference claim among parties to the same contract.  *See Odom v. Lee*,

4  999 P.2d 755, 761 (Alaska 2000).  Yet, throughout its opposition,

5  North Star contends that there was an implied-in-fact contract between

6  Nugget and North Star, an implied-in-law contract between Nugget and

7  North Star, and a contract by agency between Nugget and North Star.

8  Because North Star failed to adduce any facts with sufficient

9  specificity to substantiate its tortious interference claims, Nugget

10  is entitled to summary judgment as a matter of law.

11  F.   Nugget was not unjustly enriched and North Star failed to
       introduce any specific evidence to the contrary

12  In support of its quantum meruit, unjust enrichment, quasi-

13  contract and contract implied-in-law allegations, North Star again

14  asks the Court to review its prior arguments made four years ago in

15  connection with its claims under the Miller Act, and then relies upon

16  Judge Holland's prior findings that were reversed by the Ninth

17  Circuit.  North Star makes no reference to the current record and does

18  not dispute with any specific fact that Nugget suffered significant

19  losses resulting from its dealings with Spencer Rock.

20  North Star does not dispute the existence of the Support

21  Agreement between Nugget and Spencer Rock, nor does North Star dispute

22  that Nugget performed work in connection with that Support Agreement.

23  Most significant, North Star does not dispute that the cost of

24  services performed by Nugget under the Support Agreement far exceeded

25

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 36 of 49

the cost or amount that Nugget originally agreed to pay Spencer Rock pursuant to the Material Contract between Nugget and Spencer Rock.

The essence of North Star's position is that Nugget was unjustly enriched because it backcharged Spencer Rock for the work Spencer Rock did not perform and that, had Nugget not backcharged Spencer Rock for this work and instead, paid Spencer Rock for the work that Nugget, in fact, performed, Spencer Rock would have paid North Star for services provided by North Star to Spencer Rock. Such a position is untenable. There is no theory under equity that would require Nugget to suffer the consequences of Spencer Rock's failure to perform under its contract, and then be forced to pay for Spencer Rock's debts to a third party whose only connection to Nugget is that it likewise suffered from Spencer Rock's failure to abide by its contractual obligations on the same construction project. North Star has not and cannot refute the simple and uncontroverted fact that Nugget lost substantial sums in connection with its dealings with Spencer Rock. Just as North Star provided services to Spencer Rock for which it was not compensated, so did Nugget, by performing the work that Spencer Rock was obligated to perform and at a cost far greater than Nugget's Material Contract with Spencer Rock. As stated earlier, Nugget's decision to backcharge Spencer Rock was entirely legal, reasonable and justified under the circumstances. Consequently, Nugget could not have been unjustly enriched.

North Star also fails to recognize, much less dispute with specific evidence, that the value and benefit of the services provided

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 37 of 49

by North Star were never conferred upon Nugget.  Nugget did not receive any service or good from Spencer Rock that was not accounted for either through direct payment to Spencer Rock or through an appropriate backcharge for the work that Spencer Rock failed to perform.[6]  North Star has not introduced any evidence that Nugget agreed to assume responsibility for Spencer Rock's debts to North Star.  Absent a benefit conferred upon Nugget by North Star, there can be no claim for quantum meruit or related claims in unjust enrichment.

Finally, North Star misunderstands Nugget's argument that a party to an express contract may not seek recovery on extra-contractual theories such as quantum meruit or implied contract.  North Star freely admits it had an express contract with Spencer Rock.  It is this contract, North Star's express contract with Spencer Rock, that precludes North Star from seeking recovery on extra-contractual theories.  *See Mitford v. de Lasala*, 666 P.2d 1000, 1006 n. 1 (Alaska 1983).  Nugget has never indicated, much less contended, that there was any kind of contract between Nugget and North Star.  If anyone here is engaging in sophistry, it is North Star, which, without any reservation, argues inconsistent and alternative theories of recovery.  *See* North Star's Opp. at 40-41 ("As we stated before, only in the

---

[6] North Star's opposition asserts that, among Nugget's representations that are "plain wrong," none of Nugget's payments to Spencer Rock were for North Star's barge loading.  North Star Opp. at 6.  North Star fails to consider that the Corps allowed pre-payment of rock after it was quarried, which payment included all of the cost of delivering the rock to Nugget's barge. Accordingly, Nugget's payments to Spencer Rock could have and should have been used to pay North Star, Shoreside and Metco.  The disbursement of these funds to Spencer Rock's bank rather than North Star is a question that should be directed to Spencer Rock and Mr. LaPore, not Nugget.

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 38 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

1  event that it is found after trial that the arrangement which Spencer

2  Rock made with North Star is not enforceable against Nugget, as

3  Spencer's principal or otherwise, would North Star seek to collect

4  upon these alternative claims based on quasi-contract.").

5      Accordingly, for the reasons above, Nugget is entitled to summary

6  judgment on North Star's quantum meruit, unjust enrichment,

7  restitution, quasi-contract and contract implied-in-law claims.

8  F.  <u>North Star fails to adduce any evidence in support of its
   equitable subordination or constructive trust claims</u>

9      North Star's Opposition to Nugget's motion on North Star's

10 equitable subordination and constructive trust claims is confined to a

11 single paragraph, yet North Star asserts that "Nugget's non-showing as

12 to these two claims now is far too thin a reed upon which to support

13 summary judgment in its favor."  North Star Opp. at 42.  North Star

14 again forgets that under *Celotex* it, and not Nugget, has the burden of

15 establishing the facts necessary to support its claims, which it has

16 not done.

17     In its opening brief, Nugget set forth the legal requirements for

18 both a constructive trust and equitable subordination claims.  Both of

19 these claims turn on a finding that one is unfairly or unjustly

20 holding or retaining the property of another.  As described above,

21 North Star failed to adduce any evidence establishing that Nugget is

22 unjustly holding the property of North Star.  It is not Nugget, but

23 Spencer Rock, that has unfairly retained North Star's funds.  Nugget

24 does not disagree with North Star that it was not paid for its

25 services; however, those services were provided under a contract with

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 39 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Spencer Rock.  Consequently, it is toward Spencer Rock that North Star should direct its efforts in recovering any funds.

As is true of North Star's other equitable claims, North Star has failed to identify any specific fact establishing that a constructive trust or the doctrine of equitable subordination should operate here in a manner requiring Nugget to pay for the debts of Spencer Rock. Accordingly, Nugget is entitled to summary judgment on these claims.

G.    North Star fails to offer any fact or law establishing that an agency relationship was formed between Nugget and Spencer Rock under Alaska law

The bulk of North Star's opposition to Nugget's motion for summary judgment on North Star's agency claim is devoted to establishing that Judge Holland incorrectly held that contracts entered into by an agent cannot be construed as binding on an undisclosed principal.

Judge Holland's holding here is a conclusion of law, not based on any fact in the prior record.  It is a holding that represents Judge Holland's interpretation of the law set forth in *Jensen v. Alaska Valuation Service, Inc.*, 688 P.2d 161 (Alaska 1984), and that represents the standing law of this case.  North Star believes that Judge Holland's interpretation of *Jensen* is wrong and that North Star's interpretation of a Minnesota state law case, *A. Gay Jensen Farms v. Cargill, Inc.*, 309 N.W.2d (Minn. 1981), "should apply to this case, both under state law and the Miller Act."  North Star Opp. at 45.

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 40 of 49

Significantly, Nugget's opening brief comprehensively set forth, with specific citations to the factual record, the reasons why an agency relationship never existed between Nugget and Spencer Rock under Alaska law. North Star does not respond to these arguments. Instead, North Star asserts that the specific evidence on which Nugget relies mischaracterizes the record, yet without explaining why, and then directs the Court to review "the fuller facts from [the prior record] and other summary judgment filings and Court decisions, as previously referenced and incorporated herein, going back to 1998." North Star Opp. at 45. North Star then rounds out its cross-motion in the same summary fashion that characterizes its entire brief by proclaiming that the prior record "amply support[s] North Star's position as to the existence of an agency relationship between Nugget and Spencer Rock as a result of Nugget's control of Spencer Rock's operations and funding."

North Star's continuing and unfocused references to the prior record regarding its federal Miller Act claims, which do not at all address the subject of Nugget's motion for summary judgment on North Star's agency cause of action under Alaska state law, are insufficient to withstand summary judgment, much less support a cross-motion for summary judgment. In order to oppose or prevail on a cross-motion for summary judgment, North Star would need to set forth controlling law and then, with specific citations to the record, establish that an agency relationship existed between Nugget and Spencer Rock. North Star failed to do this and, on this basis alone, its cross-motion

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 41 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

should be denied and Nugget's motion for summary judgment should be granted. This conclusion remains unchanged if the Court accepts North Star's interpretation of *Cargill*, which it should not. Even if the Court were to decide that contracts entered into by an agent can be construed as binding on an undisclosed principal, North Star fails to establish that Nugget was, at any time, Spencer Rock's principal, disclosed or undisclosed, and fails to refute the specific evidence supporting Nugget's motion that there was never an agency relationship between Nugget and Spencer Rock.

Finally, North Star urges that a "second basis for finding an agency relationship between Nugget and Spencer Rock, as a matter of law" exists. This argument rests on Mr. Randolph's statement that Mr. LaPore authorized Mr. Randolph to provide direction to North Star regarding the loading and scheduling of the barges. *See* North Star Opp. at 46. Notably, North Star cites no factual or legal authority to support this "second basis," or, specifically, how it is that an authorization given by Mr. LaPore to Mr. Randolph would render the former the agent of the latter. Such an argument is not only contrary to the law of agency, but is also contrary to common sense.

Equally untenable and inapposite is North Star's parting shot that Mr. LaPore's authorization demonstrates that Mr. Randolph "substituted himself and Nugget for Spencer Rock for that part of the work." *Id.* As North Star's Mr. Goodwill would agree, Mr. Randolph conducted himself appropriately regarding the loading and scheduling

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106  Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 42 of 49

1    of the barges, and in this case, in accordance with the Support

2    Agreement.

3         Because North Star has completely failed to support its cross-

4    motion for summary judgment with citations to the record or

5    controlling legal authority, its cross-motion should be denied. For

6    the same reason, and because North Star failed to refute the specific

7    facts or legal authority set forth in Nugget's opening brief, Nugget's

8    motion for summary judgment that there was never an agency

9    relationship between Nugget and Spencer Rock should be granted.[7]

     H.   <u>Nugget is entitled to summary judgment on North Star's bad faith
10        and punitive damages claim as there is no clear and convincing
          evidence in the record of bad faith or outrageous conduct.</u>
11
          In opposition to Nugget's motion on for summary judgment on North
12
     Star's bad faith and punitive damages claims, North Star goes beyond
13
     its repeated request for the Court to review the bulk of the prior
14

15   _____
     [7] On April 28, 2006, Nugget filed a motion for summary judgment on North
16   Star's state law agency cause of action.  Rather than wait to file an
     opposition and/or cross-motion, on May 1, 2006 North Star filed a motion for
17   summary judgment on its agency claims, which Nugget opposed on May 19, 2006.
     North Star then filed an opposition and cross-motion for summary judgment on
18   the same agency cause of action that was the subject of both Nugget's April
     28, 2006 motion and North Star's own May 1, 2006 agency motion.  Given the
19   fact that North Star incorporated by reference what amounts to the entire
     factual record in this case in support of its opposition and cross-motion to
20   Nugget's April 28, 2006 motion for summary judgment, Nugget is loath to
     further burden the Court with any further "incorporations by reference."
21   Unfortunately, North Star's approach to motions practice in this case, which
     has needlessly confused matters by requiring the parties to present the same
22   arguments relating to the same causes of action in motions for summary
     judgment pending at the same time, has rendered incorporation by reference of
23   Nugget's May 19, 2006 opposition to North Star's motion for summary judgment
     on its agency cause of action unavoidable.  Consequently, Nugget respectfully
24   requests that the Court review the arguments presented in its May 19, 2006
     opposition to North Star's motion for summary judgment on agency in further
25   support of the arguments raised herein.

     *U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
     Case No. A98-009 CIV (TMB)
     Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
     Against North Star -- Page 43 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

record and, incredibly, incorporates by reference "the future filings in response to USF&G's separate motion for summary judgment against punitive damages" filed by USF&G. North Star Opp. at 48. This improper manner of motions practice is nowhere permitted by law or this Court's rules. Should Nugget be expected to reply to an argument that has not been timely filed? As the answer is: no, North Star's improper incorporation of its "to be filed" brief should be stricken.

Again, without any specific reference to the factual record, North Star states that:

> With respect to evidence of Nugget's outrageous behavior, it can only be concluded that the evidence of Nugget's disregard toward Spencer Rock's interests, as part of a takeover including an apparent master plan to gain future rights to the quarry, together with subterfuge, secrecy, deception, interposition of a strawman in which Nugget engaged in its dealings with these claimants and others, including Chugach Rock Corporation . . . could support jury finding of outrageous conduct and punitive damages.

North Star Opp. at 48. North Star's opposition here again is woefully inadequate and fails to meet the standards sufficient to withstand summary judgment. There is no specific evidence of a master plan, or of a takeover attempt to gain future rights to the quarry, or of secrecy, subterfuge or deception. There are only North Star's bald and unsupported assertions of such claims. The comments of the court in *United States ex rel. Allied Building Products Corp. v. Federal Insurance Co.*, 729 F. Supp. 477, 479 (D. Md. 1990) are particularly incisive here. In that case, the court was confronted with a claim for punitive damages under tort theories that were introduced within

**OLES MORRISON RINKER & BAKER LLP**
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 44 of 49

1    the larger context of a Miller Act claim.  The court held:

2        The Court is convinced that there is no basis for the
3        assertion of a claim of punitive damages in connection with
         the alleged breach of contract, in the absence of any
         viable separate and independent tort.  Therefore, the
4        punitive damages claim will be disallowed as an amendment
         to the complaint . . . and it will be dismissed with
5        prejudice. . . .

6        Finally, the Court notes that the Miller Act was
         intended as a simple remedy for unpaid subcontractors on
7        federal building projects.  The essence of the Miller Act
         case is a breached contractual obligation.  To allow such a
8        case to turn into a tort case would frustrate the purpose
         of the Miller Act by complicating the litigation immensely.
9        Therefore, the Court would not, in the exercise of its
         discretion, entertain the sort of pendant claims sought
10       here to be asserted, even if they had merit *prima facie*.

11   *Id.; see also United States ex rel. Krupp Steel Products, Inc. v.*

12   *Aetna Ins. Co.*, 923 F.2d 1521 (11th Cir. 1991) (citing *Allied Building*

13   *Products Corp.*).

14       For all the reasons discussed herein, there was nothing improper

15   about the support arrangement between Nugget and Spencer Rock, and the

16   record is clear that this arrangement was precipitated only by Spencer

17   Rock's anticipated difficulty to perform under the Material Contract.

18   Further, North Star forgets that Nugget has twice prevailed in these

19   proceedings against North Star's unsubstantiated allegations and

20   misstatements of law.  Rightfully defending oneself against baseless

21   and invented claims is not an outrageous act or an act of bad faith.

22       In sum, there is no evidence in the record, much less clear and

23   convincing evidence in the record, of bad faith, recklessness,

24   outrageous conduct, or improper motive on the part of Nugget.  Nugget

25   conducted itself as would any prudent contractor faced with the

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 45 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

prospect of a material supplier failing to hold up its end of the bargain.  Nugget entered into the Support Agreement, resulting in significant additional expense to Nugget, to ensure that its contract with the federal government would be timely and adequately performed.

In the absence of any clear and convincing evidence of bad faith, or that would otherwise support North Star's entitlement to punitive damages, Nugget is entitled to summary judgment as a matter of law on North Star's bad faith and punitive damages claims.

### Conclusion

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-35 (1986).  "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 323.  "In such a situation, there can be 'no genuine issue as to a material fact,' since a complete failure of proof renders all other facts immaterial." *Id.* at 323-34.  Specifically, a properly supported summary judgment motion will not be defeated "without offering any significant probative evidence tending to support the complaint. . . .  Discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.  Instead, the [non-movant] must present affirmative evidence in order to defeat a properly supported motion for summary

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 46 of 49

judgment.  This is true even where the evidence is likely to be within

the possession of the defendant, as long as the plaintiff has had a

full opportunity to conduct discovery." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 256 (1986).  Further, a court has "no duty to comb

the record to find some reason to deny a motion for summary judgment."

*Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030-31 (9th

Cir. 2001).

North Star was afforded adequate time for discovery.  Indeed,

after it was established by the Ninth Circuit that issues of fact

precluded summary judgment on North Star's strawman claims, North Star

was allowed to amend its complaint to include its state law causes of

action that were not previously pled, and allowed ample time in

discovery to substantiate those state law claims.

North Star's opposition demonstrates a complete failure of proof,

in which North Star offers nothing more than the allegations set forth

in its Amended Complaint.  Instead of an opposition with citations to

its recent discovery efforts, North Star's opposition is replete with

vague and wholesale references to the prior record in support of its

Miller Act claims, which are claims unrelated to the state law claims

that are the subject of Nugget's motion.  The reasonable conclusion to

be drawn is that North Star resorts to the prior record because there

is nothing in the current record to support its state law claims,

which also explains why North Star offers only bare allegations upon

which North Star then builds inference upon unreasonable and

unsubstantiated inference in lieu of actual and specific facts.  It is

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 47 of 49

facts and evidence that North Star was required to adduce, and it is

the absence of such facts and evidence that requires that summary

judgment be granted in Nugget's favor on all of North Star's state law

claims.

Dated:  June 5, 2006          OLES MORRISON RINKER & BAKER LLP
                              Attorneys for Nugget Construction,
                              Inc., and United States
                              Fidelity and Guaranty Co.


                              By: s/Thomas R. Krider
                                 Thomas R. Krider
                                 krider@oles.com
                                 Washington Bar No. 29490
                                 745 West 4th Avenue, Suite 502
                                 Anchorage, AK 99501
                                 Phone: (907) 258-0106
                                 Fax:   (907) 258-5519

*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 48 of 49

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519

CERTIFICATE OF SERVICE

I hereby certify that on this 5th
day of June, 2006, a true and correct
copy of the foregoing was served

 electronically, via ECF on:

Michael W. Sewright, Esq.
mws@bpk.com
Burr, Pease & Kurtz
810 N Street
Anchorage, AK  99501

Steven J. Shamburek, Esq.
shamburek@gci.net
Law Office of Steven J. Shamburek
425 G Street, Suite 630
Anchorage, AK  99501-5872

Paul Stockler, Esq.
paulstockler@aol.com
1309 West 16th Avenue
Anchorage, AK  99501

Herbert A. Viergutz, Esq.
barmar@gci.net
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501

C. Patrick Stoll, Esq.
cps@hvslaw.com
Herrig Vogt & Stoll LLP
4210 Douglas Bay Blvd., Suite 100
Granite Bay, CA 95746-5902

OLES MORRISON RINKER & BAKER LLP


By:   s/Thomas R. Krider


P JAD Opp and Reply to North Star Opp and Cross MSJ 99310.0002.doc



*U.S. ex rel. North Star, et al. v. Nugget Construction, et al.*
Case No. A98-009 CIV (TMB)
Memorandum in Support of Nugget Construction, Inc.'s Opposition and Reply
Against North Star -- Page 49 of 49