Michael W. Sewright
BURR, PEASE & KURTZ
810 N Street
Anchorage, AK  99501-3293
Telephone:     (907) 276-6100
Fax No.:        (907) 258-2530
Attorneys for North Star

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf, <br><br> Plaintiffs, <br> and <br><br> UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf, <br><br> Intervening Plaintiffs, <br> and <br> METCO, INC., <br><br> Intervening Plaintiff, <br> vs. <br><br> NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE, <br><br> Defendants. | Case No. 3:98-cv-009-TMB <br><br><br> **MEMORANDUM IN REPLY TO NUGGET'S OPPOSITION TO SHORESIDE AND METCO'S MOTION AND MEMORANDUM FOR SUMMARY JUDGMENT AND DETERMINATIONS OF LAW REGARDING NUGGET CONSTRUCTION JOINED IN BY NORTH STAR** |

# I.  INTRODUCTION

Plaintiff and Use Plaintiff North Star Terminal & Stevedore Company ("North Star")
joined in Shoreside's and Metco's Motion for Summary Judgment and Determination of Law
Regarding Nugget Construction filed at Clerk's Docket Nos. 507, 508, and 514.  *See* North Star
Joinder at Clerk's Docket No. 518 & Errata at No. 521.  As was noted in that Joinder, the
grounds for Shoreside and Metco's motion also apply to North Star.  Clerk's Docket No. 518.
Nugget opposes that motion.  Clerk's Docket No. 538.  North Star replies to that Opposition as
follows.

## II.  NUGGET SEEKS TO CHANGE THIS CASE INTO SOMETHING OTHER THAN IT IS AND HAS BEEN.

In its above-referenced Opposition, Nugget seeks to ignore and recharacterize the present
posture and past history of this case, including prior court rulings.  Nugget seeks to turn it into a
different case than it actually is.

For example, Nugget represents "that there is no cause of action involving fraud even
alleged in this case."  Nugget Opp., Clerk's Docket No. 538 at p. 2.[1]  However, paragraph 33 of
North Star's Amended Complaint ordered filed by Judge Holland (Clerk's Docket No. 401)
clearly alleges that Nugget's "foregoing misrepresentations, non-disclosures, and omissions of
material fact to North Star … were made falsely, knowingly, deliberately, ***deceitfully and/or
fraudulently***, either actually or constructively . . . ."  *See* Clerk's Docket No. 409 at p. 20 ¶ 33
(emphasis added).  Shoreside and Metco's Amended Complaints are to the same effect.  Clerk's

---

[1]    References are to the Clerk's Docket page numbers, rather than to Nugget's different page numbers.

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83894
Page 1 of 24

Docket Nos. 406 & 407.  For substantial evidence of fraud and deceptive practices, it is enough

for now that this Court look at Judge Holland's August 30, 2002 Order and findings (Clerk's

Docket No. 310 at pp. 4-15 & 19-24), at the Ninth Circuit Court of Appeals' recognition of those

findings in its March 3, 2005 decision (Clerk's Docket No. 383),[2] at Mr. LaPore's April 4, 2002

affidavit located at Clerk's Docket No. 282, and at North Star's statements of fact supported by

admissible evidence contained, for example, at Clerk's Docket Nos. 69, 73-75, 282 and 300, also

previously relied on by the Court in its Order at Clerk's Docket No. 310.  These matters

including admissible evidence are discussed further in some detail (but in less detail than in those

previous filings) in North Star's recent Memorandum in Support of its Opposition and Cross-

Motion to Nugget and USF&G's April 28, 2006 Motion for Summary Judgment Against North

Star, found at Clerk's Docket No. 535 and incorporated herein by reference, and in other recent

filings by the claimants in this case.

---

[2]    As the Ninth Circuit Court of Appeals stated in that written decision, in response to Nugget's second
appeal:

> On the record before us, the appellees have presented sufficient evidence to create a
> material issue of fact as to subterfuge or collusion.  The evidence, although not
> conclusive, tends to show that Nugget secretly converted Spencer Rock into a straw man
> in its ongoing dealings with the appellees.  The support agreement with Spencer Rock on
> its face purports to insulate Nugget from Miller Act liability, yet Nugget directed Spencer
> Rock to conceal the terms of this agreement and keep secret Nugget's arrangements with
> Spencer Rock relating to the project.

*See* Clerk's Docket No. 383 at p. 6 & *North Star Terminal & Stevedore Co. ex rel., et al. v. Nugget
Construction, Inc., et al.*, 126 Fed. Appx. 348, 350-51, 2005 U.S. App. LEXIS 3589 (9th Cir. 2005)
(attached hereto as Exhibit 1).

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                        45-40 / #83894
Page 2 of 24

Nugget also opines that "[a]ll three plaintiffs erroneously believe that they were covered by the Miller Act … despite the Ninth Circuit *telling them years ago that they were wrong*." Clerk's Docket No. 538 at pp. 3-4 (emphasis added).  In fact, the Ninth Circuit Court did ***not*** hold that way.  It has never held that the claimants have no claim under the Miller Act.  The contrary is true.  On the first appeal, that panel of the Ninth Circuit Court did hold, in a brief five-paragraph unpublished decision, that Spencer Rock Products was not a subcontractor under the Miller Act.[3]  However, that court also opined that Nugget and USF&G could still be held liable under the Miller Act, and remanded the case for further proceedings.[4]  Furthermore, it did not consider any state law claims of the plaintiffs.  Although state law claims had been asserted, and this Court observed that they had been asserted, it had not granted summary judgment on them.  *See, e.g.*, Clerk's Docket Nos. 74, 76, 112, 123 at p. 3, and 124 at pp. 4-5 incl. n.6. Therefore, the Ninth Circuit Court did not consider them.  Instead, as just noted, it remanded all further proceedings to this Court, including the issue of liability under the Miller Act.

---

[3]    *See* Clerk's Docket No. 255 & *United States of America, for the use of North Star Terminal & Stevedore Co. ex rel., d/b/a Northern Stevedoring & Handling, et al. v. Nugget Construction, Inc., et al.,* 19 Fed. Appx. 705, 2001 U.S. App. LEXIS 21547 (9th Cir. 2001) (attached hereto as Exhibit 2).  The first Ninth Circuit panel's decision was less comprehensive than Judge Holland's decision on the same subject.  *See* Clerk's Docket No. 124 at pp. 10-15.  Nugget correctly perceives that North Star and the other claimants continue to believe that that Ninth Circuit decision reversing this District Court was incorrect, both in its holding and characterizations of the case.  North Star sought reconsideration from the appellate court on that basis and later copied this Court.  *See* Clerk's Docket No. 258.  However, Nugget is incorrect in its perception that North Star presently seeks to have this Court "overturn" that holding, despite subsequent findings in this Court's decisions and in the second Ninth Circuit panel's decision placing into question at least some of the characterizations contained in the first decision of the Ninth Circuit.

[4]    *See* Exhibit 2 at p. 3 ("by its actions [Nugget] may have exposed itself to direct suit by [Spencer Rock's] suppliers (we express no opinion on this issue because it is not before us.)  *  *  *  . . . [t]he cases are REMANDED for further proceedings.").

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                      45-40 / #83894
Page 3 of 24

That remand resulted in the second summary judgment decision of this Court also based solely on a Miller Act cause of action. *See* Clerk's Docket Nos. 310 & 315-317.[5] As noted above, that summary judgment ruling was considered and remanded by a second panel of the Ninth Circuit Court. That panel found that although the evidence "tends to show" that Nugget engaged in "subterfuge", "collusion", "concealment" and the "secret conversion" of Spencer Rock into a "straw man", the evidence was not "conclusive" enough for summary judgment. *See* footnote 2 *supra* and Exhibit 1 attached hereto. That endorsement of the Ninth Circuit Court acknowledging that these use plaintiffs have at least one viable claim[6] against Nugget and USF&G under the Miller Act is a far cry from telling them they have none or that they are "wrong."

Those decisions of the Ninth Circuit Court address only these claimants' Miller Act claims actually decided by the lower court and do not reach their state law claims at all. Therefore, contrary to Nugget's brazen assertions, those decisions do not tell the claimants they are "wrong" as to any of their other claims. Neither are any of those rulings at all to the effect "this matter should have ended" years ago. *See* Nugget Opp., Clerk's Docket No. 538 at p. 3. Instead, **all** of those rulings, together with Judge Holland's Order amending pleadings (Clerk's

---

[5]    As this Court noted in a subsequent Order dated January 22, 2003, "the judgment made by this court against Nugget was based solely on federal law; *state law claims were not considered*." Clerk's Docket No. 356 at p. 12 n.28 (emphasis added).

[6]    As set out in their Amended Complaints from last year and in their summary judgment filings from 2002, these claimants assert several bases for recovery against both Nugget and USF&G under the Miller Act which have not yet been decided, and new, very recent Nugget admissions support at least one more basis for recovery as set out in North Star's memorandum at Clerk's Docket No. 535 at pp. 7 & 47.

---

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83894
Page 4 of 24

Docket No. 401) are to the effect that the claimants have several viable claims remaining to be determined in this case *both under the Miller Act and under state law*.

For its assertion that the claimants' state law claims are "baseless," Nugget refers only to its own recent "Motions for Summary Judgment" on those issues. Clerk's Docket No. 538 at p. 2. In response, North Star refers the Court to its aforementioned Memorandum in Support of North Star's Opposition and Cross-Motion upon those state law claims (Clerk's Docket No. 535), together with its aforementioned Joinder and Errata (Clerk's Docket Nos. 518 & 521). As evidenced by those filings, by prior filings referenced and incorporated therein, and by prior rulings of this Court, these plaintiffs and use plaintiffs are neither "chasing windmills" nor "concocting conspiracy theories." The admissible evidence supports their claims. Nugget and USF&G's histrionics and rhetoric to the contrary and mischaracterizations of the record do not alter that.

Not to be outdone by its foregoing mischaracterizations, Nugget, through present counsel,[7] further ignores or misstates the established record in this case in fast and furious fashion with a series of "objections" to what it claims are "unsupported assertions". *See* Clerk's Docket No. 538 at pp. 7-10. Those "objections" are answered as follows, by using the same "bullet points" format used by Nugget in its memorandum:

- As already set out recently in a separate filing in response to a similar assertion made by USF&G (*see* Clerk's Docket No. 569 at pp. 10-12), Nugget's tardy "objection" now against considering the letters of the Corps of Engineers from August and September of

---

[7]  As was pointed in a previous filing (Clerk's Docket No. 508 at p. 2 n.1), Mr. Krider, who entered his appearance in this case barely four months ago, is about the eighth attorney from the Oles Morrison Rinker & Baker law firm to do so.

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                          45-40 / #83894
Page 5 of 24

1997 reminding Nugget and USF&G of their responsibilities to the Federal Government and these claimants on this project, is poorly taken. Those letters were admitted into evidence years ago, several times, and have been relied upon by the Court already without objection (*id*). *See also, e.g.*, Court's Summary Judgment Order, Clerk's Docket No. 310 at p. 12 (including footnote citations to the record). All of those letters have been found in Nugget and USF&G's files. *See, e.g.*, letters attached to Clerk's Docket No. 570 and Exhibit 3 attached hereto. All were clearly received by them according to previous deposition testimony.[8] All fit within exclusions and exceptions to the hearsay rule and are authentic and reliable. *See* Clerk's Docket No. 310 at p. 12 & No. 569 at pp. 10-12. Those letters and the opinions contained within them also come within the established rule that the interpretation of a matter by the federal agency charged with its administration, in this case the Army Corps of Engineers, Alaska District, through its Administrative Contracting Officer, is entitled to deference by the courts. *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984); *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792 (1965). *See also* discussion at Clerk's Docket No. 569 at p. 12. Any "objection" has been waived and is also without merit. The letters do support the claimants' positions in this matter, including their position that both Nugget and USF&G were alerted early on that, in addition to there being a "vendor/subcontractor" issue, the Corps of Engineers believed Nugget (and therefore USF&G) had "assumed full responsibility" for the operations of Spencer Rock "for the subject project" and is therefore "responsible for prompt payment to suppliers and subcontractors who contracted with Spencer Rock Products on this project." *See, e.g.*, Exhibit 3 attached hereto.

- Nugget's preoccupation with categorizing Spencer Rock as a "materialman" so as to ostensibly insulate itself from Miller Act liability is evidenced, among other things, by this Court's previous determinations on that subject at Clerk's Docket No. 310 together with the evidence which was presented supporting those determinations.[9] The Corps of Engineers' determinations regarding Nugget's conduct speak for themselves and have

---

[8]    If there is any question, the transcript pages, which are several, can be provided.

[9]    On the other hand, as has been previously demonstrated to this Court (and also to the appellate court), Mr. Randolph's true understanding of Spencer Rock's role and importance to the project is shown in his early approvals of Spencer Rock's invoices for payment through March 15, 1997, ***before*** Nugget became concerned about production and commenced its "support" and control of Spencer Rock's operations. On those early invoices, dated March 1 and March 15, 1997, and approved for payment by Mr. Randolph on March 15 and March 21, 1997, respectively, Mr. Randolph wrote and initialed, in his own handwriting, "Rock is good to go" and "Okay for payment," specifying in his own words **"PER SUBCONTRACT"**. *See* Clerk's Docket No. 69 North Star Memo. at Exh. 12 pp. 9-10 (invoices) & factual discussion *e.g*., at Clerk's Docket Nos. 69 (Memo) and 74 (Corrected Memo) at pp. 16 ¶ 20. Mr. Randolph admitted to doing so at his deposition. *See* Clerk's Docket No. 69 Memo. Exh. 5 at tr. pp. 179-180.

---

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83894
Page 6 of 24

already been addressed.  It is equally clear (as already noted) that the Corps as the federal agency charged with administering the project, and this Court and the Ninth Circuit Court in their prior decisions, do not see determination of the "subcontractor" issue as precluding these claimants' right to payment under the Miller Act—despite Nugget's wishful thinking to the contrary.

- The facts that Nugget is a large construction company and dictated the activities of Spencer Rock and Robert LaPore almost from the outset of the project are already established through admissible fact.  They have been shown, *inter alia*, through the deposition testimony of Robert LaPore and Randy Randolph, Mr. LaPore's affidavits, and Nugget records already of record and presented in much detail at Clerk's Docket Nos. 69, 73-75, 112, 124 (Court Order), 282, 300 & 310 (Court Order).  Whether Metco, Shoreside, or North Star were "privy" to or had "personal knowledge" of that relationship between Nugget and Spencer Rock at the time is not a good point for Nugget.  They did not, but the facts of that relationship have been developed nevertheless, albeit through difficult, expensive discovery over much resistance from Nugget and USF&G.  Indeed, a primary point is that the claimants were ***not*** "privy" to that relationship, including Nugget's stranglehold on Spencer Rock's ability to pay, when they should have been made aware.  They were not made aware because that information was deliberately and deceptively withheld from them by Nugget, so that they would not bill Nugget, while at the same time Nugget had them working for ***its*** benefit (for which ***Nugget*** was fully paid).

- Admissible, convincing evidence that "Nugget created a secret [so-called] Support Agreement that effectively gave Nugget complete control" over Spencer Rock and Robert LaPore in relation to the project, and indeed forced them into ruination, has been presented several times before in this protracted litigation.  *See* foregoing discussion and docket entry references.  Indeed, Nugget has presented no evidence to the contrary, unless one charitably considers Mr. Randolph's several self-serving, conclusory affidavits submitted over the years in this matter as "evidence" (albeit contradicted by his own deposition testimony).  *See* foregoing discussion.  *See also, e.g.*, Clerk's Docket Nos. 69, 73-75, 112, 124, 282, 300 & 310, including exhibits and docket entry references.

- The facts that Nugget deliberately kept the terms of that "support agreement" secret from the claimants and even the Corps of Engineers, directed Robert LaPore to keep them a secret, and even asked the Corps of Engineers to continue to keep them secret after finally forced by the Corps to disclose them (but only after these claimants had already done their work, had been stiffed by Nugget, and had complained to the Corps) have all been previously admitted into evidence in this case.  *See, e.g.,* Clerk's Docket Nos. 69 &

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                          45-40 / #83894
Page 7 of 24

73-74, S.J. Memo. Exh. 11 at p. 1;[10] Clerk's Docket No. 69, S.J. Memo. Exh. 5 (Randolph 10/30/98 Depo.) at tr. p. 117 (identifying and authenticating letter and his signature) and at tr. p. 123 (admitting that those terms had not been released to anybody prior to August 6, 1997, including North Star d/b/a Northern Stevedoring); Clerk's Docket Nos. 69 & 75 (North Star d/b/a Northern Stevedoring Operations Manager in Seward Jack Goodwill's 12/7/98 Aff. at p. 6 ¶ 11);[11] Clerk's Docket No. 282 (LaPore 4/4/02 Aff. at p. 6 ¶ 9).[12]   These are not allegations "without supporting facts" in the record either, as Nugget contends (Clerk's Docket No. 538 at p. 8), apparently without checking the record.

- It is also established in the evidence that Nugget surely knew that this was a federally bonded project.  It was the principal on the bond.  Representatives for all three claimants have testified that they understood it was a federally bonded project and that they provided their goods and services partly in reliance upon that fact and the incentive it provides for payment.  *See, e.g.*, Clerk's Docket No. 69 (Jack Goodwill Aff. at ¶¶ 3, 4, 9 &11)[13] and the deposition testimony of North Star, Shoreside and Metco representatives

---

[10]   This is the August 6, 1997 letter from Nugget Construction Project Manager L. D. Randolph to the Army Corps of Engineers submitting documents including "support agreement" for the first time and requesting that the Corps of Engineers treat that agreement as "confidential" and not disclose it to "anyone outside your office".

[11]   There Mr. Goodwill states:

   At no time while Northern Stevedoring was providing its stevedoring services to load the rock on Nugget's barge did Randy Randolph or Bob LaPore, or anyone else with Spencer Rock or Nugget, tell me that Nugget had a "support services" arrangement with Spencer Rock to work in the Spencer Quarry and backcharge Spencer Rock for that work, or that Nugget was ensuring that it was paid first for those backcharges from the money the Corps of Engineers paid Nugget, rather than pay suppliers for labor and services like Northern Stevedoring.

[12]   There Mr. LaPore states:

   Nugget, through Randy Randolph, also directed me in 1997 to keep Nugget's arrangements with SRP related to the project a secret.  That included the terms of the April 1997 "support" agreement between Nugget and SRP.  Randy Randolph told me not to disclose that information to anyone.

[13]   Mr. Goodwill testified there that, before doing any work, he was told that it was a federal government bonded project and that he "had no doubt Northern Stevedoring would be paid, if necessary from the payment bond, because I was dealing directly with the owner of Spencer Rock and project manager for Nugget Construction."

---

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83894
Page 8 of 24

that they relied upon the fact that it was a federally bonded project and, if necessary, they would get paid from the payment bond, as discussed and attached at Clerk's Docket Nos. 507, 508 & 518.

- In addition, it has been established in the record that any statements "Nugget or its representative, Randy Randolph" made expressing Nugget's belief that the claimants were not covered under the bond were made in August, September and perhaps as early as mid-July 1997, but in any event *after* the claimants had already provided their services to the project in the face of Nugget and Randolph's schematic silence and deception. As this Court previously found, Nugget structured its "support" agreement in such a way as to seek to "ostensibly [insulate] itself from liability" to North Star, Metco and Shoreside "by the terms of the support agreement and by those entities' appearance of remoteness in the Miller Act chain" while, at the same time, "it directly received the goods and services from" those entities. Clerk's Docket No. 310 at p. 20. Whereas the Ninth Circuit Court later determined that the evidence supporting those findings was not "conclusive," that powerful evidence nevertheless exists of record, and Nugget has presented nothing concrete or admissible to dispel it. Certainly, that evidence is much more than "pure conjecture," as Nugget irresponsibly asserts. Clerk's Docket No. 538 at p. 8.

- That Nugget owed a duty of care not to act negligently and carelessly in its dealings with and treatment of the three claimants is further supported in North Star's Opposition and Cross-Motion Memorandum at Clerk's Docket No. 535 at pp. 30-37, together with the rest of that memorandum.

- The representation that Nugget's "support" agreement with Spencer Rock commenced in late March 1997 and rapidly resulted in Nugget's control, takeover, and substitution of itself for Spencer is not "an allegation without supporting facts" either. At his deposition taken on October 30, 1998, Mr. Randolph testified:

> Q: Was Nugget Construction providing Nugget employees and/or equipment to Spencer Rock in the Spencer Quarry prior to April 23, 1997, which is the date of this support agreement?
> A: Yes.
> Q: And when did that type of cost to Nugget first occur?
> A: *Late March, early April*.

*See* Clerk's Docket No. 69, North Star's S.J. Memo. Exh. 5 (Randolph Depo.) at tr. p. 121, ll. 1-7 (emphasis added). As Robert LaPore also testified, by "mid-April 1997 Nugget had taken control of that work, including the rock production and loading operations, which Nugget had originally contracted to have SRP [Spencer Rock Products]

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83894
Page 9 of 24

do." *See* LaPore 4/4/02 Aff. at ¶ 3, Clerk's Docket Nos. 282 & 284.[14]  The subsequently written "support agreement" executed on April 23, 1997 simply memorialized the preexisting arrangement (and by then actual takeover).

• Although Nugget seeks to portray that "agreement" as an arm's-length transaction, Mr. LaPore has testified that he was forced into signing it.  Nugget would not pay him for the work which Spencer Rock had already done, unnecessarily created an "urgent" situation and accelerated work schedule serving itself, and took advantage of that situation to control, take over, and reap the benefits of the Spencer Rock operation[15] (including North Star's services under a preexisting credit arrangement extended to Spencer Rock).[16]  As

---

[14]     The full text of that Affidavit was also recently repeated at Clerk's Docket No. 583 at pp. 8-11.

[15]     *See* Clerk's Docket No. 282 at LaPore 4/4/02 Aff., & at S.J. Memo, Exhibit 1 attached thereto (LaPore 6/7/99 Depo.) at tr. pp. 70-73, 84-88, 90-102, 113-125, 141, 152, 158-164, 169-174, 183, 217, 221-227, 233-234, 248-251, 255-261 & 266-268 (including depo. exhibits attached thereto).  As Randy Randolph also testified at his deposition on October 30, 1998, Spencer Rock could have performed the work it contracted to do under the Nugget/Spencer Rock "materials contract" entered into on January 15, 1997, if it had been allowed more time to do so as allowed for the project under the Corps/Nugget contract, but Nugget didn't allow Spencer Rock that time.  *See* Clerk's Docket No. 69, Exh. 5 at tr. pp. 205-206.  Spencer Rock requested more time, both while their "material" contract was being developed and afterwards.  *See, e.g.,* Clerk's Docket No. 282 Memo. at Exh. 1 (LaPore Depo.), tr. p. 189 & Depo. Exh. 3 attached thereto.  Instead, Nugget decided to put Spencer Rock and LaPore's feet to the fire, squeeze him, ruin him, and deliberately place others like these claimants in the middle, facing a brick wall and protected litigation.

[16]     It has also been demonstrated before in this case that Nugget, which has a history of doing construction projects involving much rock and gravel, stood to benefit from a rock source like the Spencer quarry for itself, beyond the immediate needs of this project.  In addition, it was "ideally situated" to take over and operate the quarry from Spencer Rock, through Randy Randolph (who had worked for years at the Spencer quarry, both before and for Spencer Rock) and through Greg Poynor (Nugget's General Manager, who had also been General Manager for the Spencer quarry before Spencer Rock became the new owner in 1994).  *See* Clerk's Docket No. 310 (finding Nugget "ideally situated to take over operations at the Spencer quarry") & discussion and exhibits on those subjects at Clerk's Docket Nos. 69, 73-75, 112, 282 & 300.  *See also* LaPore's 6/7/99 Depo., Clerk's Docket No. 282 at transcript pp. listed above in footnote 15 & LaPore's 4/4/02 Aff. (Clerk's Docket No. 282) at ¶ 8, wherein he stated:

   During the period Nugget ran the Spencer quarry in 1997 it also produced substantial quantities of saleable rock which was not used for the Homer project.  This included over 10,000 cubic yards of riprap rock of a type SRP had produced before and sold to the Alaska Railroad.  Although the cost of producing that rock is included in Nugget's "costs" charged to SRP (*see* Exhibit 2), Nugget liened that rock, probably worth over $200,000, for itself.  In addition, Nugget produced many more thousands of cubic yards of saleable rock, which it spread out several feet deep over much of the Spencer quarry

---

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                         45-40 / #83894
Page 10 of 24

Mr. LaPore testified:

> [When Randy Randolph offered the "support"] I said, What I really need is to be paid, to get my money so I can pay down the credit line and recycle it like my schedule shows. But I never got paid.

LaPore 6/7/99 Depo., Clerk's Docket No. 282, at tr. p. 194, ll. 4-5. Mr. LaPore also testified that he had objections to what Nugget was doing, "but there was nothing I could do about it. I was over a barrel. I couldn't ask them to leave. Somebody brought that up one time, Why don't you just tell them to leave. Well, I could have, but how am I going to get the job done? I am out of money." *Id.* at tr. p. 195, l. 22 - p. 196, l. 2.

> A:    Earlier [before Nugget was already "about done" in the quarry as of June 1997] I never got to the point where I thought I couldn't get the job done. I always thought I could get the job done.
> Q:    Without Nugget's assistance?
> A:    Yeah.
> Q:    Then why didn't you ask Nugget to leave the quarry?
> A:    Because I didn't get paid. I didn't have any money. If he would have paid me, I could have kept doing it. * * * It's not that we couldn't do it. We never had a chance to go ahead and do it. * * * Nugget was going to do it. * * * No, we started having problems because they never did pay me. Never did pay me except one little payment. And they was supposed to go ahead and pay me. They kept promising to pay me all this time. They never did.

*Id.* at tr. p. 196, l. 11 - p. 197, l. 25. As Nugget concedes, that "one little payment" was not made until May 8, 1997, and it was only in the amount of $147,184.66—as compared to the $1,623,892.50 Spencer Rock should have otherwise received for the work originally contracted to it by Nugget under those parties' "material contract", even according to Nugget. *See* Clerk's Docket No. 490 (4/28/06 Aff. of Randy Randolph) at p. 4 ¶¶ 7-8. As testified to by Mr. LaPore, Nugget instead:

> . . . intercepted the federal funds it had contracted to pay SRP for that work, paying itself instead. The only payment SRP or I received from

---

work area. I understand that rock remains in the quarry. SRP lost its rights to that quarry in September 1997.

It is reasonable to infer from the evidence that Nugget had bigger plans for the Spencer quarry than the immediate project and that those plans influenced its conduct.

_____
North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83894
Page 11 of 24

Nugget for that work was $147,184.66 for filter, toe, and armor rock *produced by SRP from the quarry before April 1997* and delivered "FOB Railhead, Seward" *by April 15, 1997*.  That is also reflected in the documents attached as Exhibit 1 to this Affidavit, including Nugget's pay estimate no. 1 for that amount approved for payment by the Army Corps of Engineers on April 22, 1997.  *That all happened well before Northern Stevedoring ("North Star") loaded any of the rock for the project onto Nugget's barge at Seward.*  After that initial payment to SRP, Nugget only allowed SRP a few payroll draws for SRP's few remaining employees, and I had to beg Nugget for those.  Nugget allowed only seven such draws, starting June 27, 2997 and ending August 8, 1997, in the total sum of $45,000.  Nugget kept all of the rest of the money the federal government paid for the rock furnished to the Homer project from the Spencer quarry for itself.

Clerk's Docket No. 282, LaPore 4/4/02 Aff. at ¶ 3 (emphasis added) & affidavit exhibits attached thereto.[17]

Indeed, as Mr. LaPore has testified, he was not terribly concerned about the arrangement at first because Randolph had represented to him that Nugget "probably could do it cheaper than I was doing it" (Clerk's Docket No. 282, Memo. Exh. 1 (LaPore 6/7/99 Depo.) at tr. p. 194, ll. 6-7), he was promised payment, and an express provision was included in the written "support" agreement providing for "minimizing any impact on SRP funds for their payment of lines of credit."  *Id.* at Exh. 8 attached to LaPore's 6/7/99

---

[17]    Exhibit 1 to Mr. LaPore's affidavit supports his representation that Nugget's May 8, 1997 payment to Spencer Rock derived from work done by Spencer Rock and Nugget only through April 15, 1997, as submitted by Nugget for payment to the Corps of Engineers on April 16, 1997 as Pay Estimate [Request for Progress Payment] #1.  That amount was paid by the Corps to Nugget on April 22, 1997.  *See* LaPore Aff. at attached Exhibit 1, pp. 1-26.  *See also* same Exhibit 1, p. 27 (reflecting that as of September 1, 1997 Nugget had paid Spencer Rock a total of $192,184.66 consisting of the one May 8, 1997 payment and payroll "draws" of only $45,000 for the period June 27 through August 8, 1997, as compared to $1,623,892.50 of rock extracted from the quarry, leaving a balance of $1,426,777.84 which Nugget intercepted for itself).  These figures are to be compared to Nugget and Randolph's recent self-serving, conclusory representation *under oath* that the payment Nugget made to Spencer Rock in the amount of $147,184.66 on May 8, 1997 was "for the first two barge loads of rock".  *See* Aff. of L. D. "Randy" Randolph, ¶ 7 at Clerk's Docket No. 490.  In truth, *none* of that payment to Spencer Rock was for any of the work that North Star did.  It is established and uncontested that North Star did not do any of its work in relation to the project until the first week of May 1997.  *See, e.g.,* Clerk's Docket Nos. 69, 74-75, & 310 (Court Order) at pp. 11 & 25 and uncontested facts cited there.

---

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV
Page 12 of 24

45-40 / #83894

Depo.[18] It was only after Randolph told him "some time in June" that "we're not going to give you any money" that LaPore realized he had been betrayed by Nugget and his "good friend" and business associate Randy Randolph. *Id*. at tr. p. 195, ll 14-19.[19] Before then, Nugget had only reported a rosy picture of its "support costs" to date, in a June 13, 1997 letter found in Nugget records produced for the first time in November 2005 and attached hereto as Exhibit 4.[20] Only later, after telling Mr. LaPore that Spencer Rock would receive no payments, did Nugget pepper Spencer Rock with the cascade of subsequent cost figures and damages claims eventually amounting to over $2.7 million ***after*** deducting the $1,426,000 which Nugget had already intercepted away from Spencer

---

[18]     As has been noted before in this case, one of those lines of credit was the written Agreement extending credit to Spencer Rock into which it entered with North Star on January 28, 1997, in contemplation of North Star providing the dockside loading services to the project which Nugget in fact directed and took over ***after*** Spencer Rock had effectively been replaced by Nugget for that part of the project work. *See, e.g.,* Clerk's Docket No. 310 at pp. 7-10, 20-24. *See also* Randolph 4/28/06 Aff. at ¶ 9, Clerk's Docket No. 490 (confirming that Nugget took over that part of the work from Spencer Rock, allegedly by "authorization" from LaPore).

[19]     As previously found by this Court and supported by the evidence, including Randy Randolph's deposition testimony taken on October 30, 1998, Randy Randolph had close ties with Robert LaPore and Spencer Rock and the Spencer Quarry, having worked for LaPore and Spencer Rock for years, including preparing most of Spencer Rock's bid accepted by Nugget for the subject project. *See, e.g.*, Clerk's Docket No. 310 at pp. 7-8; Randolph 10/30/98 Depo. at tr. pp. 18, 20-27, 33, 35-36, 41-65, 98-99, 101, 167, 219 & 223 & previous submittals and discussion of that evidence, *e.g.*, at Clerk's Docket Nos. 69, 74, 75 at pp. 6-9, & Nos. 282 & 300.

[20]     That letter reads:

> Dear Bob,
>
> We have taken the liberty of printing a Cost Journal for Nugget Construction's itemized hard costs to date, as well as a Job Costs Totals report which summarizes the Journal.
>
> Given the current amount of material that has been transported from your quarry, we would be willing to bet that these costs fall well below your original budget. This, coupled with the current condition of the rock face, ***should make you a very happy fellow indeed.***
>
> Sincerely,
> Nugget Construction, Inc.
>
> Greg Poynor
> General Manager

*See* Exhibit 4 (emphasis added).

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                 45-40 / #83894
Page 13 of 24

Rock, and then subjected him to a long, expensive lawsuit for the remaining sum, as previously set forth in filings including evidentiary exhibits filed with this Court.  *See, e.g.*, Clerk's Docket Nos. 69, 74-75, 112, 282, 300.[21]

• As evidenced above and in previous filings with this Court listed above, the claimants have become "privy" to the relationship between Nugget and Spencer Rock previously withheld from them.  They have become aware and have shown by admissible evidence that Spencer Rock was tricked and coerced into Nugget's control and takeover of Spencer Rock's operations and purse strings and that Nugget then sued Spencer Rock and Robert LaPore into submission, much as Nugget and USF&G appear to be trying to do to North Star, Shoreside, and Metco.  These are not "allegations without supporting facts," as Nugget alleges (without supporting facts).  *See* Clerk's Docket No. 538 at p. 8.

• It has also been previously shown (*see, e.g.*, Clerk's Docket Nos. 69, 74-75, 112, 282, 300, 310, 507-510, 514, 517, 518 & 535), that Nugget was creating problems "with respect to the claimants in this case by the summer of 1997" and that "USF&G knew or should have known of the nature of those problems" if it had taken some responsibility for its obligations as surety on the payment bond such as requiring Nugget to report to it. Certainly sufficient evidence has been shown to permit the conclusion that Nugget "withheld and/or deliberately concealed" those problems "and its secretive arrangements with Spencer [from] the claimants and the Corps of Engineers."  Nugget should have informed USF&G.  Nugget had to know that there would be claims since it was not paying Spencer Rock and Spencer Rock had not paid the claimants.  These are not "purely speculative" inferences, as Nugget asserts.  Clerk's Docket No. 438 at p. 9. These are instead reasonable inferences based on admissible evidence, and Nugget fails to counter them.

• Neither can Nugget plausibly contend that Shoreside and Metco's representation that "Nugget appears to have structured all of its activities from the outset with the goal of using Spencer Rock as a shield to avoid paying North Star, Shoreside, and Metco" is "merely an allegation without any factual support."  *Id*.  Shoreside and Metco's representation is supported by, among other things, the previous findings of this Court precisely to that effect at Clerk's Docket No. 310 and the second opinion of the Ninth Circuit Court acknowledging that there is strong evidence supporting those findings. Nugget counters with no admissible evidence.

---

[21]    As he testified at his 1998 deposition, Mr. Randolph, rather than receive pay from Spencer Rock for the substantial amount of work he did for Spencer Rock, was instead granted 20 percent ownership in the company, which he did not report and denied "receiving" since he owed back taxes to the Internal Revenue Service.  *See* Clerk's Docket No. 69 Exh. 5, Randolph Depo., at tr. pp. 37-40, 225-226, 238.

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                          45-40 / #83894
Page 14 of 24

- The same holds true for the assertions repeated as "bullet points" by Nugget in the second half of Clerk's Docket No. 538 at p. 9 such as "[a]t the same time that Nugget was taking the Spencer Quarry from Spencer Rock, Nugget was using Spencer Rock as a strawman and a shield to attempt to avoid payment of obligations related to the completion of the Homer Project, had effectively merged with and acquired Spencer Rock by 'stepping into its shoes' (at least for this project), had rendered Spencer Rock 'little more than a captive entity' of Nugget, and that if 'Nugget did not have a meeting of the minds' with the claimants it was because Nugget sought to withhold material information from them by subterfuge and deception." Those assertions are not "unsupported" as Nugget claims. *Id.* To the contrary, they are supported by the previous findings of this Court and of the Ninth Circuit Court just referenced, and by the court file in this case.

In other words, borrowing from Nugget's own choice of words, there are actually ***many*** "kernels of admissible information" implicating Nugget in the wrongdoing as alleged by the claimants; indeed, there are "bushels" of it.

Nugget also takes the statement from this Court's August 30, 2002 Order and another statement from the Ninth Circuit Court's March 2005 Order out of context and gives those statements a different, broader meaning than is warranted. *See* Clerk's Docket No. 538 at p. 9.

First, Nugget seeks to reap undue advantage from the statement in this Court's August 30, 2002 Order that "It is undisputed ***at the time*** Spencer ***negotiated*** with each of these parties, Spencer acted completely on its own behalf. There are no facts in the record supporting the inference that Spencer acted as an agent of Nugget ***at the time*** Spencer ***hired*** North Star, Shoreside, or Nugget [sic]." *See* Clerk's Docket No. 310 (Court Order) at p. 5 (emphasis added). As the emphasized words show, the Court was referring to a particular time frame. As this Court has previously held, that particular time frame was before Nugget took over Spencer Rock and stepped into its shoes and its pre-established contractual arrangements. As has been previously shown, Spencer Rock made contractual arrangements for the work months before the actual

_____
North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                    45-40 / #83894
Page 15 of 24

loading began.  *See, e.g.,* North Star's Corrected S.J. Memo, Clerk's Docket No. 74 at pp. 7-8

and supporting exhibits.  As the Court held then:

> Spencer Rock undertook arrangements for a line of credit with North Star well in
> advance of the commencement of barge loading operations.  \*  \*  \*  However,
> by the time the first barge was loaded by North Star [in early May], the principals
> of both Nugget and Spencer were involved in the loading operations.

*See* Court's June 3, 1999 Order, Clerk's Docket No. 124 at p. 3.  Whereas the Court at that time

held that it was "not clear whether North Star took on Spencer Rock, or Nugget Construction, ***or***

***both of them*** as a ***direct customer*** for its stevedoring service,"[22] upon further consideration the

Court held in 2002 that "[b]y virtue of the support agreement and Nugget's own subsequent

actions, Nugget stepped into the shoes of Spencer, acting from that point onward as its own

material supplier, ***directly accepting*** and using the labor, equipment, and services provided by

North Star, Shoreside and Metco.[23]

The Court in that second Order applied a cause of action under the Miller Act

"telescoping" the "contractual relationship ***directly*** to the prime contractor," thereby creating a

"***direct contractual relationship*** with the prime contractor . . . from the prime contractor's acts

despite the existence of an intermediary entity which is found to be nothing more than a

strawman."  Clerk's Docket No. 310 at p. 19 (emphasis added).[24]

---

[22]    *Id*. at 4 (emphasis added).

[23]    *See* Clerk's Docket No. 310 at pp. 19-20 (emphasis added).

[24]    As has been previously noted, this basis for liability was also given in the Corps of Engineers'
correspondence to Nugget and USF&G in August of 1997 attached hereto as Exhibit 3.

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83894
Page 16 of 24

However, as the Court also acknowledged in that Order that ***direct contractual relationship***, or "privity" as Nugget likes to call it, can also be established under agency principles where one entity controls or takes over another entity and thereby becomes responsible for the contractual obligations of that other entity, as the evidence also supports in this case. *Id*. at 23-24 n.38. That "agency by control" rule of law, which also results in a ***direct contract*** between the principal in control (in this case Nugget) and the obligee (in this case North Star), is addressed most recently by North Star's Motion and Memorandum for Summary Judgment filed at Clerk's Docket No. 504 and in North Star's Memorandum in Support of Opposition and Cross-Motion to Nugget and USF&G's Motion for Summary Judgment filed at Clerk's Docket No. 535 at pp. 43-47. It was previously addressed four years ago in this case at Clerk's Docket Nos. 282, 300 & 315.

Recently, Nugget has made new representations, through Mr. Randolph's affidavit, resulting in a third basis for Nugget and USF&G's liability due to a direct contractual relationship between Nugget and North Star due to another agency principle. *See* discussion at Clerk's Docket No. 535 at pp. 7 & 47.

As also set out in North Star's Joinder at Clerk's Docket No. 518 and in its Opposition and Cross-Motion at Clerk's Docket No. 535 at pp. 14-18 (and in previous filings in this case), North Star has long taken the position, which is supported by the evidence, that owing to the circumstances of this case and as a result of Nugget's actions, words and conduct before and at the time the loading was actually done, North Star was in direct contract with Nugget (as well as

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83894
Page 17 of 24

Spencer), even without applying agency principles.  Nugget was the primary party for whom the work was actually being done.

However, as has been discussed before several times in this case, none of those bases for recovery or any other claim of North Star against Nugget or USF&G relies upon whether Spencer Rock was an agent of Nugget *at an earlier time*, *before* Nugget took over Spencer Rock's operations and contractual arrangements and operations in relation to the project.

As has also been noted before, *dicta* in the Ninth Circuit Court's March 2005 Order that the claimants never entered into "express" contracts with Nugget is not determinative of whether a direct contractual relationship existed between the claimants and Nugget.  Obviously, a direct contractual relationship results from the "telescoping" analysis embraced by the Ninth Circuit in that 2005 Order.  Furthermore, that brief statement was made solely in the context of an appeal from a decision of this Court not based on North Star's contract by agency analysis, or any other direct or express contract analysis presented by North Star.  Although in its August 30, 2002 Order this Court opined that it was "inclined under the circumstances to find that a principal/agent relationship existed between Nugget and Spencer by virtue of the support agreement and Nugget's subsequent control over Spencer," it instead based that summary judgment Order solely on its "telescoping" analysis.  Clerk's Docket No. 310 at pp. 19-24.  The appellate court also choose only to address that issue.  *See* Exhibit 1 attached hereto.  This Court's analysis should not now be limited by that one reference, taken out of context.  Instead, as has been previously demonstrated, a direct contract, express or implied, can be created by

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83894
Page 18 of 24

action, word, or conduct, objectively and reasonably construed.[25]  *See* North Star Opposition and Cross-Motion at Clerk's Docket No. 535 at pp. 14-17.

As set out in North Star's Amended Complaint, these claims, together with the claimants' claims in equity, arise both under the Miller Act and under Alaska state law (over which this Court has supplemental jurisdiction).  *See* Clerk's Docket No. 409.  *See also, e.g.*, Clerk's Docket No. 76 at p. 3, Nos. 315-317, and No. 544 Exhibit 1 (North Star Opening Brief to Ninth Circuit Court dated May 19, 2003) at exh. pp. 52-57 & 78-79.[26]  *Accord, United States ex rel. Leno v. Summit Construction Co.*, 892 F.2d 788, 790-91 (9th Cir. 1989); *Fidelity & Deposit Co. of Maryland v. Harris*, 360 F.2d 402, 411 (9th Cir. 1996).

For its conclusory argument that there is no "legal or factual basis" for any of the claimants' state law claims, Nugget simply incorporates the entirety of its own pending motions for summary judgment.  Clerk's Docket No. 538 at pp. 12-13.  Accordingly, in response, North Star incorporates the entirety of its Opposition, Cross-Motion, and Memorandum in Support of Opposition and Cross-Motion to Nugget's motion for summary judgment against it, as filed at Clerk's Docket Nos. 534, 535 & 537, together with this Reply and North Star's Joinder Regarding Nugget Construction filed at Clerk's Docket No. 518.  Those filings, together with previous filings incorporated within them, demonstrate a factual and legal basis for all of North

---

[25]    On the other hand, if by that brief reference to no "express" contract the appellate court intended to refer to the absence of an express written contract for the work ***actually signed*** by a Nugget representative and a North Star representative, then the characterization in that unpublished decision would appear to be correct.

[26]    The Opening Brief page numbers are different than the pages of the exhibit.

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83894
Page 19 of 24

Star's state law claims asserted against Nugget. Those filings also demonstrate that North Star's Joinder and its Cross-Motion for summary judgment upon its agency and quasi-contract, contract implied in law, restitution, and quantum meruit causes of action, which come both under the Miller Act and under state law, should be granted, and that there is also good reason for rulings to issue upon the law of the case applicable to those and other claims asserted against Nugget and USF&G.

Next, Nugget takes issue with North Star's Joinder. Nugget states it would have "no objection" if the filing had been a one-sentence statement of joinder without supporting facts. However, Nugget fails to note that the discussion of supporting facts in that Joinder is barely two pages long and that the brief excerpts from the depositions of Jeff Bentz and Jack Goodwill chiefly constituting that discussion and attached as exhibits to that Joinder were all already a matter of record in the more complete deposition excerpts for those same witnesses attached as exhibits to the Affidavit of Thomas R. Krider at Clerk's Docket No. 491. In any event, those few references are only submitted in support of North Star's long-standing positions that (1) Nugget created a direct, binding relationship between it and North Star by word, conduct, and action; (2) North Star, like Shoreside and Metco, relied upon this being a federally bonded project; and (3) North Star firmly believed that it would be paid. North Star presents those positions, together with others in greater detail, in other recent and past filings including North Star's Memorandum in Support of Opposition and Cross-Motion filed herein at Clerk's Docket No. 535 (also incorporating that Joinder). Any "objection" is therefore a matter of form over substance. For its substantive response to that Joinder, Nugget incorporates its motion, memorandum and

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83894
Page 20 of 24

accompanying affidavits for summary judgment against North Star filed at Clerk's Docket

Nos. 488-491. Likewise, North Star incorporates its opposition, cross-motion, and

accompanying memorandum and exhibits which are filed at Clerk's Docket Nos. 534, 535, &

537 in response to those summary judgment filings by Nugget. Those North Star filings

supplement and complement the brief points and evidentiary references contained in North Star's

Joinder at Clerk's Docket No. 518.[27]

## III. CONCLUSION

The history of this case, including Judge Holland's previous comments regarding it,

disclose that it is not the claimants who have engaged in unnecessary, protracted litigation.

Nugget and USF&G should look to themselves on that score. This Court should seriously

consider Nugget and USF&G's persistent, unproductive efforts, again and again, to

mischaracterize and reinvent this case. Nugget and USF&G's filings in the past several weeks

are prime examples.

In order to respond, North Star has been required, at great expense, to go back and

reestablish the record chiefly established and understood by the Court years ago. Contrary to

Nugget's assertions, the first decision of the Ninth Circuit Court did not hold that there is no

direct relationship between Nugget and the claimants; rather, it left the issue open and remanded

the case for further proceedings. Whereas the second decision of the Ninth Circuit Court found

that the evidence supporting a Miller Act telescoping cause of action was not "conclusive," it

acknowledged the strong evidence supporting that cause of action and in no way foreclosed the

---

[27]    *See also* the Errata to that Joinder at Clerk's Docket No. 521.

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83894
Page 21 of 24

plaintiffs and use plaintiffs from pursuing other legal theories for recovery under the Miller Act and state law.

All of those claims for recovery have been shown to have merit. This case is about law and morality. It is about standards of decency and justice. The business scandals and trials which have dominated the news over the past few years are reminders that in business, as in other human endeavors, there are standards of honesty, decency, and fairness toward others to which the courts and public expect adherence.

Certainly, we expect those standards to apply in Alaska. Knowingly taking advantage of the hard work and expenditures of Alaskan laborers and companies and deceiving them in the process and then hiring platoons of lawyers to defend the wrongdoing does not meet those standards. It is instead unconscionable and outrageous conduct. In this case, it resulted, among other things, in strong concerns being voiced by the Army Corps of Engineers and in an investigation for fraudulent behavior by Special Agents of the Department of the Army, Criminal Investigation Command, Fraud Field Office.[28]

Nugget and USF&G, on the other hand, seem to think there is nothing wrong with that behavior. Like the leaders of Enron and WorldCom, they are even quite adamant in saying so. According to them, it is simply doing business as usual.

---

[28]    *See* April 28, 2006 Affidavit of Thomas R. Krider, Clerk's Docket No. 491 at Exhibit 2 (11/21/05 Depo. of J. Bentz) tr. pp. 188-191. *See also* same deposition excerpts attached hereto and Exhibit 15 to that deposition (business cards of Special Agents Michael C. Curran and Wilbert M. Craig) attached hereto as Exhibit 5 for the Court's convenience.

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83894
Page 22 of 24

According to them, USF&G's attitude toward the unpaid, deserving claimants in this case mirrors that of its principal; it is also "business as usual".  To them, it does not matter "one iota" that USF&G has ignored its legal responsibilities toward these claimants, who it is supposed to treat as its intended beneficiaries entitled to protection under the payment bond.  To them, it does not matter that USF&G instead turned their protection over to Nugget, their adversary, and engaged in other outrageous conduct, setting them adrift and forcing them to litigate to the "ends of the Earth" at their great expense, while USF&G incurred no legal fees or costs itself.  To Nugget and USF&G, economic coercion is also "business as usual".[29]

This Court and a jury are entitled to disagree with Nugget and USF&G's assessment of what is proper conduct.  Mr. Randolph and USF&G may be "surprised" by the jury's verdict, but their level of surprise is not the standard.  Their conduct and actions support all of the claimants' claims against them in this case, including their claims for punitive damages.  The claimants are entitled to at least partial summary judgment, or determinations of law applicable to this case putting it in a proper posture for trial.

---

[29]    Likewise, it did not seem to matter to Nugget and USF&G that they had a chance to settle this case, prior to (and immediately after) the second round of summary judgment proceedings and judgment in this case, after claimants' counsel had alerted Nugget and USF&G's counsel that the claimants intended to amend their complaints to state additional claims including fraud if the matter was not resolved then.  *See* Clerk's Docket Nos. 389, 398-399 & 401 (Court Order granting leave to file Amended Complaints). Although it made all the sense in the world for them to try to settle the case at that time, they instead made the "tactical decisions" (*see* Court's Order at Clerk's Docket No. 401 p. 4) to not settle and to appeal instead and to post an appeal bond, resulting in the present posture of this case.

North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83894
Page 23 of 24

Respectfully submitted at Anchorage, Alaska, on June 6, 2006.

s/ Michael W. Sewright
Burr, Pease & Kurtz
810 N Street
Anchorage, AK  99501
Telephone:  (907) 276-6100
Fax:  (907) 258-2530
E-mail:  mws@bpk.com
Alaska Bar # 7510090

<u>CERTIFICATE OF SERVICE</u>

I certify that on the 6th day of June, 2006, a copy
of the foregoing MEMORANDUM IN REPLY
TO NUGGET'S OPPOSITION TO
SHORESIDE AND METCO'S MOTION AND
MEMORANDUM FOR SUMMARY
JUDGMENT AND DETERMINATIONS OF
LAW REGARDING NUGGET
CONSTRUCTION JOINED IN BY NORTH
STAR was served electronically to:

   Steven S. Shamburek, Esq.
   Traeger Machetanz, Esq.
   Paul D. Stockler
   Herbert A. Viergutz
   C. Patrick Stoll, Esq.

   s/ Michael W. Sewright

_____
North Star's Memorandum in Reply to Nugget's
Opposition to Shoreside and Metco's Motion and
Memorandum for Summary Judgment and Determinations
of Law Regarding Nugget Construction Joined in by North Star
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83894
Page 24 of 24