IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,

Plaintiffs,

and

UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, and SHORE PETROLEUM, INC., d/b/a Marathon Fuel Service, on its own behalf,

Intervening Plaintiffs,

and

METCO, INC.,

Intervening Plaintiff,

vs.

NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,

Defendants.

____________________________________/

No. A98-009 CIV (HRH)

DEPOSITION OF JEFFREY "JEFF" BENTZ
Pages 1 - 221 (inclusive)

November 21, 2005
8:33 a.m.

Taken at:
The Law Offices of Oles Morrison Rinker & Baker
745 West 4th Avenue, Suite 502
Anchorage, Alaska

Reported by: Leslie J. Knisley
Shorthand Reporter

A-P-P-E-A-R-A-N-C-E-S

For Plaintiffs:

MR. MICHAEL W. SEWRIGHT
Burr, Pease & Kurtz, PC
810 N Street
Anchorage, AK 99501
(907) 276-6100

For Shoreside Petroleum:

MR. STEVEN J. SHAMBUREK
Law Office of Steven J. Shamburek
425 G Street, Suite 630
Anchorage, AK 99501
(907) 250-0044

For Nugget Construction, Inc.:

MS. GLORIA Y. HO
MR. TRAEGER MACHETANZ
Oles Morrison Rinker & Baker, PC
745 West 4th Avenue, Suite 502
Anchorage, AK 99501-2136
(907) 258-0106

For USF&G:
MR. HERBERT A. VIERGUTZ
Barokas Martin & Tomlinson
1029 West 3rd Avenue, Suite 280
Anchorage, AK 99501
(907) 276-8010

Also Present:
MR. JOHN SMITHSON, Nugget Construction
MR. DOUG LECHNER, Metco, Inc.

Reported by:

LESLIE J. KNISLEY
Shorthand Reporter

I-N-D-E-X

JEFFREY "JEFF" BENTZ NOVEMBER 21, 2005

| EXAMINATION | PAGE |
|---|---|
| BY MS. HO | 6 |
| BY MR. VIERGUTZ | 209 |

| NUMBER | EXHIBITS | PAGE |
|---|---|---|
| 1 | Renotice of Deposition, 6 pages | 9 |
| 2 | North Star's Second Supplemental Disclosures, 7 pages | 35 |
| 3 | North Star's Responses to Defendant's First Set of Discovery Requests, 17 pages | 55 |
| 4 | Copy of four business cards, 1 page | 61 |
| 5 | North Star's Amended Complaint, 26 pages | 70 |
| 6 | Credit application and various documents, 9 pages | 71 |
| 7 | Affidavit of Jack Goodwill, 25 pages | 89 |
| 8 | Current rates and invoices, 9 pages | 93 |
| 9 | Daily notes of operations, 13 pages | 110 |
| 10 | Invoices and timecards, 34 pages | 115 |

I-N-D-E-X, continued

| | | |
|---|---|---|
| 11 | Material Contract, 4 pages | 143 |
| 12 | Support agreement, 1 page | 145 |
| 13 | Bill of sale, 1 page | 170 |
| 14 | Letter to Army Corps of Engineers, 8/4/97, 2 pages | 185 |
| 15 | Copies of two business cards, 1 page | 188 |
| 16 | Letter from U.S. Army Corps of Engineers, 8/21/97, 1 page | 194 |
| 17 | Letter to U.S. Army Corps of Engineers, 8/25/97, 3 pages | 196 |

Page 186

Q And this purports to be a North Star letter signed by Mr. Jack Goodwill, vice president at the time for North Star, dated August 4th, 1997 to the Army Corps of Engineers.
Do you disagree with that?
A Yes, I disagree with that.
Q In what way?
A He was vice president of Northern Stevedoring and Handling, not North Star.
Q Now, when Jack Goodwill wrote this letter on behalf of Northern Stevedoring and Handling, at the time that was the legal entity that was bringing suit against my client?
MR. SEWRIGHT: Object; calls for a legal conclusion.
A You characterized Mr. Goodwill as being the vice president of North Star.
BY MS. HO:
Q My prior statement, you have corrected me. But I'll have you correct that Mr. Jack Goodwill was vice president of Northern Stevedoring and Handling, according to this letter.
A That's correct.
Q And at that time, on August 4th, 1997,

Page 187

that particular company, Northern Stevedoring and Handling, was the one notifying the Corps of Engineers --
A That's correct.
Q Okay. Now, in the first paragraph it says, and you may read along, "Northern Stevedoring has been working for Spencer Rock Products, Inc. from May 1st to June 26th, 1997. In that time frame Northern loaded five barges of rock for the Homer Spit."
Do you disagree with that, sir?
A Do I disagree with what this says? No.
Q With what Mr. Goodwill wrote in his letter to the Army Corps of Engineers.
A Not so far.
Q Okay. And on page 2, in that last paragraph Mr. Goodwill wrote to the Army Corps of Engineers, "Northern Stevedoring did agree to direct the invoices for loading the rock to the ZB286 Nugget Construction barge, for the Army Corps of Engineers Homer Spit upgrade to Spencer Rock."
Do you disagree with that, sir?
MR. SEWRIGHT: Object, Counsel. Disagree with that's what was written or that --

Page 188

BY MS. HO:
Q That was what was presented by Mr. Goodwill at the time, who was the vice president of Northern Stevedoring and Handling, to the U.S. Army Corps of Engineers on August 4th, 1997.
A What you've read is what's on this letter, yes.
Q Okay. Do you disagree or -- strike that.
To your knowledge did North Star ever communicate to the U.S. Corps of Engineers about its nonpayment of stevedoring services on the Homer Spit project, other than this particular letter to the U.S. Corps of Engineers?
A When they sent their investigators up here.
Q Okay. Let me show you another exhibit.
(Exhibit 15 marked.)
BY MS. HO:
Q Take a moment to look at this Exhibit No. 15. This particular document was disclosed to me last Thursday when I was at Mr. Sewright's offices reviewing documents.
Having looked at this document, it

Page 189

appears to be copies of two business cards. One, Michael C. Curran, C-u-r-r-a-n, Special Agent, Department of the Army, Criminal Investigation Command, San Francisco Fraud Field Office. And it lists his address and telephone number. That's the first name written there.
Do you see that, sir?
A Uh-huh.
Q And then the second on the bottom part of the document says, Wilbert, W-i-l-b-e-r-t, M. Craig, C-r-a-i-g, Special Agent, Department of the Army, Criminal Investigation Command, and he is at 33 New Montgomery Street, Suite 1840, San Francisco, California 94105.
Is that what you see there too, sir?
A I see that.
Q Okay. Now, at any time did you or anyone at North Star have conversations with either Mr. Curran or Mr. Craig?
A Yes.
Q Do you recollect the time period of this communication?
A I don't. They actually came to my office.
Q They came to your office. You don't

Page 190

recollect the time period, but both these agents, Mr. Curran and Mr. Craig, came to your office at the same time or at separate times?
A I believe that both of them came at the same time, and I believe it was these two individuals.
Q Okay. Were there any other individuals from the Corps of Engineers, Criminal Investigation Command that came to you or North Star?
A Not that I can remember.
Q Do you recall if it was just one particular meeting or more than one meeting with these two agents?
A I can recall one meeting. Whether there was another one or not or whether they met with somebody else or not, I don't know.
Q In that one meeting who do you recall were present?
A Well, I know I was there and I know there were two agents there, and I believe Mike might have been there. And if memory holds me true, don't hold me on this, but I think Steve Brazier, who was my controller at the time, was there.

Page 191

Q Can you spell his last name, please?
A It's B-r-a-z-i-e-r.
Q And is Mr. Brazier still with North Star?
A No, he moved down south.
Q Do you happen to know his whereabouts?
A I don't currently.
Q Thank you.
A He was in Texas last I heard.
Q Now, do you have any knowledge of who might have instigated this criminal investigation?
A I don't recall all the facts behind it, no.
Q Was it perhaps somebody within North Star who would have contacted these agents?
A No, I don't believe -- we didn't start the agent thing. We wrote the one letter to the Corps and it was sometime after that, I recall, that these agents showed up.
Q Okay. To your knowledge, do you think somebody -- some representative from Metco might have called the special agents?
A I don't know.
Q Would anybody within North Star know?

Page 192

A I don't know.
Q Do you know if Mr. LaPore was made aware of these alleged investigations?
A I don't know.
Q What about Nugget? Are you aware that Nugget was made aware of these alleged criminal investigations?
A Only through reading the correspondence. At the time I would not have known.
Q Anybody else at North Star who might have known?
A Not that I can think of.
Q Okay. Did you or anyone at North Star receive any confirmation, either written or oral, that an alleged criminal investigation would be pursued after this meeting that you had with these two agents?
A No, they didn't tell us what their plan was.
Q Okay.
A I don't recall any specific comment coming from them in that regard.
Q So to your recollection there were no follow-up conversations with Mr. Curran or

Page 193

Mr. Craig?
A I'm not certain. This was a long time ago.
Q Now, were you or anyone at North Star ever made aware by the U.S. Corps of Engineers that it, the U.S. Corps of Engineers, did not know about the Support Agreement between Nugget and Spencer Rock?
A I'm sorry. Can you ask the question again?
Q Were you or anyone at North Star ever made aware by the U.S. Corps of Engineers or by anyone else that the U.S. Corps of Engineers did not know about the Support Agreement between Nugget and Spencer Rock? What I'm getting at --
MR. SEWRIGHT: Are you including correspondence from the Corps?
MS. HO: Yes, correspondence from the Corps.
A There's a letter that came back from the Corps to Jack Goodwill.
MS. HO: Okay. Let's see.
MR. SEWRIGHT: I think there was also correspondence between Nugget and the Corps, Ms. Ho.

Case 3:98-cv-00009-HRH Document 491 Filed 04/28/2006 Page 6 of 25

Page 218

Q You bet. Why can't they?
A They can.
Q Why is it bad faith if they make that choice?
MR. SEWRIGHT: Object to the form.
A I guess it depends how much knowledge they have about the case. Early on in this case, real early on, if I was USF&G, I might believe what you just suggested might be one of the possibilities, but I don't believe USF&G believes that today.
BY MR. VIERGUTZ:
Q And then it says, "and/or refusal to discuss settlement."
Again, you're a businessman. If you get sued, you don't have to settle; you and I have agreed on that, correct?
A Correct.
Q And so you don't even have to discuss settlement with me if I sue you, do you?
MR. SEWRIGHT: Object to the form.
A Don't have to.
MR. SEWRIGHT: Calls for a legal conclusion.
A I don't have to.

Page 219

Q No.
MR. VIERGUTZ: No further questions. Thanks for your time.
MR. SHAMBUREK: I don't have any.
MR. SEWRIGHT: I have no questions. We're done.
MS. HO: Right. Thanks for appearing.
(Proceedings concluded at 2:47 p.m.)

Page 220

WITNESS CERTIFICATE

JEFFREY "JEFF" BENTZ Taken November 21, 2005

I hereby certify that I have read the foregoing deposition and accept it as true and correct, with the following exceptions:

==============================================

| PAGE | LINE | CORRECTION |
|---|---|---|
| ___ | ___ | ___ |
| ___ | ___ | ___ |
| ___ | ___ | ___ |
| ___ | ___ | ___ |
| ___ | ___ | ___ |
| ___ | ___ | ___ |
| ___ | ___ | ___ |
| ___ | ___ | ___ |
| ___ | ___ | ___ |
| ___ | ___ | ___ |
| ___ | ___ | ___ |

___________ ___________
Date JEFFREY BENTZ

(Use additional paper to note corrections as needed, signing and dating each page.) (LK)

Page 221

REPORTER'S CERTIFICATE

I, LESLIE J. KNISLEY, Shorthand Reporter and Notary Public in and for the State of Alaska do hereby certify:

That the witness in the foregoing proceedings was duly sworn; that the proceedings were then taken before me at the time and place herein set forth; that the testimony and proceedings were reported stenographically by me and later transcribed under my direction by computer transcription; that the foregoing is a true record of the testimony and proceedings taken at that time; that the witness requested signature; and that I am not a party to nor have I any interest in the outcome of the action herein contained.

IN WITNESS WHEREOF, I have hereunto subscribed my hand and affixed my seal this 15th day of December, 2005.

___________________
LESLIE J. KNISLEY
Notary Public for Alaska
My Commission Expires: 12/31/06

45-40
9/18/97

Department of the Army
Criminal Investigation Command

MICHAEL C. CURRAN
Special Agent

San Francisco Fraud Field Office
33 New Montgomery St., Suite 1840
San Francisco, CA 94105-4511

TEL: (415) 744-0394
FAX: (415) 744-0402

Department of the Army
Criminal Investigation Command

WILBERT M. CRAIG
Special Agent

33 New Montgomery St., Suite 1840
San Francisco, CA 94105-4511

TEL: (415) 744-0393
FAX: (415) 744-0402

EXHIBIT
15
BENTZ

EXHIBIT 5
Page 6 of 6 Pages