Michael W. Sewright
BURR, PEASE & KURTZ
810 N Street
Anchorage, AK  99501-3293
Telephone:    (907) 276-6100
Fax No.:       (907) 258-2530
Attorneys for North Star

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>             Plaintiffs,<br>        and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf,<br><br>             Intervening Plaintiffs,<br>        and<br><br>METCO, INC.,<br><br>             Intervening Plaintiff,<br>        vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>             Defendants. | Case No. 3:98-cv-009-TMB<br><br>**REPLY TO NUGGET'S OPPOSITION TO NORTH STAR'S MOTION FOR SUMMARY JUDGMENT OR DETERMINATION OF LAW OF THE CASE AGAINST NUGGET CONSTRUCTION AND USF&G ON THE BASIS OF CONTRACT BY AGENCY** |

Plaintiff and Use Plaintiff North Star Terminal & Stevedore Company ("North Star") moved for summary judgment or, alternatively, for court determinations on the law of this case stemming from Nugget's obligations to North Star arising under agency law. Defendant Nugget Construction, Inc. ("Nugget") opposes.[1] Clerk's Docket No. 544. North Star respectfully submits its Reply. Its motion should be granted, as a matter of summary judgment or at least through appropriate Court determinations on the law in response to North Star's position on the law.

More than once, recently and in the past, North Star has pointed out that Nugget in its various arguments seeks to change this case into something other than it is and has been. This case has a history. Nugget misstates that history. Nugget ignores prior evidence and the court record established over the past eight years in this case. The Court is requested to revisit that history and that record and evaluate Nugget's credibility and representations as a result of that review.

For example, in its present memorandum, Nugget appears to seek to foreclose North Star from pursuing any cause of action under the Miller Act at all, or at least any cause of action under the Miller Act based on a direct relationship between North Star and Nugget created by agency principles of law. Nugget seeks to do so by mischaracterizing the proceedings so far in this case. Accordingly, North Star must correct the record as follows.

---

[1]  United States Fidelity & Guaranty Company's name appears in the heading of that Opposition memorandum, but the memorandum itself states only that "Defendant Nugget Construction, Inc. (Nugget) respectfully submits its opposition to North Star Terminal & Stevedore Co.'s Motion" and "Nugget respectfully requests that the Court deny North Star's motion". *See* Nugget Opp., Clerk's Docket No. 544 at p. 2. References to that document made herein are to the Clerk's Docket page numbers rather than to Nugget's different page numbers.

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                           45-40 / #83970
Page 1 of 22

First, it is not true that North Star is limited under the Miller Act to the "telescoping" remedy addressed and recognized by the second panel of the Ninth Circuit Court to consider this case, in *United States ex rel. North Star Terminal & Stevedore Co., et al. v. Nugget Construction Company, Inc., et al.,* 126 Fed. Appx. 348, 350 (9th Cir. 2005), attached hereto as Exhibit 1 and also filed at Clerk's Docket No. 383.  That is the implied-in-fact, direct contractual relationship arising out of subterfuge, collusion, or circumstances indicating the interposition of a strawman referred to by Nugget in its opposition memorandum.  *See* Clerk's Docket No. 544 at p. 2.  The fact that is the only Miller Act claim the appellate court addressed on appeal does not mean that is the only Miller Act claim the claimants, including North Star, have.  It just means that that telescoping remedy was the only one this Court chose to base its August 30, 2002 Summary Judgment Order on, as set forth in that Order.  *See* Clerk's Docket No. 310 at pp. 19-24. Likewise, that is the only basis for liability the Ninth Circuit Court considered on Nugget and USF&G's appeal from that summary judgment ruling.[2]  In fact, North Star's remaining claims for recovery under the Miller Act in this case are chiefly three-fold.  Quoting from North Star's Amended Complaint, they are:

(1)    the "telescoping" or "strawman" cause of action on which this Court and the Ninth Circuit Court most recently relied in this case;

---

[2]    North Star requested this Court, and then the appellate court, to consider and apply alternative bases for liability, both under the Miller Act and under state law, which had been presented by the claimants in the proceedings below, but both courts elected not to do so.  *See, e.g.*, Clerk's Docket Nos. 282, 300, 310 (Court Order) at pp. 23-24 n.38, 315-317 & 356 at p. 12 n.28.  *See also* North Star's 5/19/03 Opening Brief attached to Nugget's Opposition, Clerk's Docket No. 544 Exhibit 1 at exh. pp. 52-57 & 77-80 (same as Op. Br. pp. 31-36 & 56-59), & *North Star ex rel., et al. v. Nugget, et al.*, 126 Fed. Appx. 348 (9th Cir. 2005), attached hereto as Exhibit 1.  The fact that the courts chose not to reach those issues does not all mean that North Star or the other claimants are precluded from pursuing them herein.

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83970
Page 2 of 22

(2)    the agent/principal cause of action on which North Star also strongly relied during the second round of district court proceedings in this case;[3] and

(3)    other causes of action based on fraud, contract, implied contract, quasi-contract, restitution, and/or equitable subordination previously addressed in this case.

*See* North Star's Amended Complaint, Clerk's Docket No. 409 at p. 9 ¶ 18. *See also id.*, pp. 5-13 (addressing North Star's Miller Act claims in greater detail).

Neither is it the case, as incorrectly alleged by Nugget, that "the Ninth Circuit previously determined that North Star ***may not prevail*** against Nugget under the federal Miller Act 'strawman' cause of action because there was ***insufficient evidence*** to support North Star's assertion that Spencer Rock was a strawman of Nugget." Clerk's Docket No. 544 at p. 3 (emphasis added). As has been pointed out before, quite the contrary is true. Although the Ninth Circuit Court in that second decision held that the evidence supporting that claim was not "conclusive" enough to uphold the district court's summary judgment order relying solely upon that claim, at the same time the appellate court acknowledged that there is strong evidence supporting that claim, and certainly "sufficient evidence". The Ninth Circuit Court stated:

> On the record before us, the appellees have presented sufficient evidence to create a material issue of fact as to subterfuge or collusion. The evidence, although not conclusive, tends to show that Nugget secretly converted Spencer Rock into a straw man in its ongoing dealings with the appellees. The support agreement with Spencer Rock on its face purports to insulate Nugget from Miller Act liability, yet Nugget directed Spencer Rock to conceal the terms of this agreement and keep secret Nugget's arrangements with Spencer Rock relating to the project.

*See* Clerk's Docket No. 383 at p. 6 & Exhibit 1 attached hereto at p. 2.

---

[3]    As has been noted elsewhere, recent disclosures by Nugget and its Project Manager Randy Randolph have revealed another basis for recovery against Nugget and USF&G stemming from agency principles. *See, e.g.*, Clerk's Docket No. 535 at p. 47.

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83970
Page 3 of 22

It is also not the case that North Star's current motion setting forth a cause of action based on agency both under the Miller Act and state law is, as Nugget alleges, "no more than a recycled recitation of the Miller Act 'strawman' or 'telescoping' cause of action previously relied upon by this Court and addressed by the Ninth Circuit Court." Clerk's Docket No. 544 at p. 3. Although the two causes of action have "similarities" (*see, e.g.*, Clerk's Docket No. 310 at p. 24 n.38), they are not the same cause of action. Under the "agency by control" cause of action, the paramount element is one entity's (Nugget's) **control** over another (Spencer Rock), whether disclosed or undisclosed, and with or without subterfuge, collusion, or even needing to demonstrate the interposition of a "strawman". That has been demonstrated before, together with the applicability of the "agency by control" cause of action to this case. *See, e.g.*, Clerk's Docket Nos. 282, 300, 315-317 & 435 at pp. 43-47 & North Star's Opening Brief at Clerk's Docket No. 544 Exhibit 1 at exh. pp. 25-34, 39-44, 52-57 & 77-80.[4] In this case, it cannot be genuinely disputed that Nugget controlled and took over Spencer Rock's operations on the project, including its interaction with North Star. *Id.* How else can Nugget account for intercepting all but $192,000 of the $1,623,000 otherwise due Spencer Rock under those parties' "material" contract, then (according to Mr. Randolph's affidavit),[5] incurring another $1,664,000 in alleged costs and expenses attributable to Nugget's running Spencer Rock's operations, and then suing Spencer Rock for $2,789,000?[6] The proof of Nugget's control and substitution of

---

[4]     Those filings and factual showings are incorporated herein by reference.

[5]     Clerk's Docket No. 490 at ¶ 8.

[6]     *See* Clerk's Docket No. 282 at Exh. 2 p. 1 & Clerk's Docket No. 544 Exh. 1 at exh. p. 44.

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83970
Page 4 of 22

itself for Spencer Rock is in Nugget's own alleged operational costs attributable to that takeover. *Id*.[7] North Star's motion that it has a viable, demonstrated right of recovery directly against Nugget and USF&G under agency principles as applied to the Miller Act[8] should be granted.

It is also not the case, as Nugget contends (Clerk's Docket No. 544 at pp. 3-4), that this Court has previously ***held*** that under Alaska law contracts entered into by an agent cannot be construed as binding an undisclosed principal, that that is "the established law of the case," or that any of that precludes the granting of North Star's motion, either under Alaska state law or the Miller Act. Clerk's Docket No. 544 at pp. 3-4. In truth, as has been previously pointed out Judge Holland's opinion in that regard on Alaska law, which Nugget quotes out of context, was an opinion in the nature of *dicta* on an issue which the parties did not brief, nor were requested to brief, the Court. It was not a holding. To the contrary, Judge Holland specifically declined to reach or decide the agency basis for recovery asserted by North Star, stating that "questions remain unanswered" regarding it and electing to base its summary judgment ruling solely upon

---

[7]    Although that should be enough, Nugget's control over Spencer Rock has also been demonstrated by much more indisputable fact, including excerpts from Mr. Randolph's deposition testimony taken in the course of the state court litigation between Nugget and Spencer Rock and Robert LaPore wherein Mr. Randolph expressed Nugget's takeover of Spencer Rock in very paternalistic and derisive terms. *See* discussion and exhibits at Clerk's Docket Nos. 282 & 300.

[8]    As the federal courts, including this Court, have recognized, recovery under the Miller Act is extended to those who have a direct contractual relationship, express or implied, with the prime contractor or a subcontractor of the prime contractor. *See, e.g., North Star ex rel., et al. v. Nugget, et al*., attached hereto as Exhibit 1 at exh. p. 2. Accordingly, legal relationships which support a claim under state law may also state a claim coming within the Miller Act. *See, e.g., United States ex rel. Leno v. Summit Construction Co*., 892 F.2d 788, 790-91 (9th Cir. 1989); *Central Steel Erection Co. v. Will*, 304 F.2d 548, 551-52 (9th Cir. 1962) (finding an implied contract and entitlement to quantum meruit relief although "there was never any meeting of the minds of the parties upon any arrangement or system of compensating them" and also finding that implied direct relationships with the prime contractor come within the construction and purposes of the Miller Act "whether the theory is called implied-in-fact contract, quasi-contract or promissory estoppel").

---

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83970
Page 5 of 22

the "telescoping" remedy instead. Clerk's Docket No. 310 at p. 24, n.38. Indeed, the district court concluded that it was "inclined under the circumstances to find that a principal/agent relationship existed between Nugget and Spencer" by virtue of Nugget's control over Spencer, were it not for those "unanswered questions." *Id.*

In a motion for reconsideration requesting the district court to revise that part of its order and recognize this second basis for legal liability, North Star answered those questions, just as it has in its pending motion. It demonstrated that the district court had misconstrued the one Alaska case the court had cited, *Jensen v. Alaska Valuation Services, Inc.*, 688 P.2d 161, 165 (Alaska 1984), and that under both federal law and Alaska law the agency principle which the Court was otherwise inclined to find Nugget liable under should be applied to this case, as an alternative basis for liability. *See* Clerk's Docket No. 315. The District Court declined to grant reconsideration, however, determining instead that consideration of "an alternative theory upon which the use plaintiff might have prevailed" was unnecessary where it would not, in the Court's opinion, change "the outcome of this case" under which North Star had already prevailed. *See* Clerk's Docket No. 317 (Court Order). That was not a holding upon the merits of North Star's claim either. In any event, North Star cross-appealed to the Ninth Circuit Court on that issue (*see* Exhibit 1 attached to Nugget's Opp., Clerk's Docket No. 544 at exh. pp. 24 & 52-55), but the Ninth Circuit Court declined to address the issue. Therefore, there has been no ***holding*** on that issue and certainly none which precludes this Court from reaching the issue now.

Contrary to another of Nugget's unsupported assertions (Clerk's Docket No. 544 at p. 4), North Star has indeed established, through admissible fact established years ago and incorporated within North Star's motion, that Nugget became Spencer Rock's principal through

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83970
Page 6 of 22

its own control and takeover of Spencer Rock's operations, including the control and interception of Spencer Rock's income for itself. *Harris v. Keys*, 948 P.2d 460 (Alaska 1997), the only authority Nugget cites is inapplicable. That case and Restatement (Second) of Agency § 15 on which it relies relate only to the creation of an agency relationship intentionally created by mutual consent of the principal and agent, rather than the liability of principals created by other agency factors, such as in this case through control (*see* Restatement (Second) of Agency § 14 O) or apparent agency (*see* Restatement (Second) of Agency § 8). The control situation alleged in North Star's Amended Complaint and on which it based its present motion for summary judgment (and motion for summary judgment four years ago) is a different situation than that addressed by the Manifestations of Consent set out in Restatement (Second) of Agency § 15. Nugget is mixing apples and oranges.

Accordingly, North Star is entitled to summary judgment, or at least a court determination on the applicability of the cause of action to this case, under state law as well.[9]

Nugget next argues that the Ninth Circuit Court in its decision in this case in 2005 "specifically considered and rejected North Star's argument" contained at page 34 of North Star's Opening Brief to that court dated May 19, 2003 that the appellate court should "exercise its *de novo* review to uphold and enlarge upon the district court's grant of summary judgment to

---

[9]     In addition, as previously noted, North Star should receive summary judgment upon a different, additional principle of agency making the agent directly liable. *See* discussion, Clerk's Docket No. 535 at pp. 7 & 47. That separate basis for liability stems from Nugget's representation contained in Mr. Randolph's affidavit filed just over a month ago (Clerk's Docket No. 490) that Nugget was directing North Star's rock loading work at the dock instead of Spencer Rock, as the "agent" (according to Nugget) for Spencer Rock, without telling North Star. *Id.* The Court may apply this new evidence against Nugget as an amendment conforming to the evidence. *See* Fed. R. Civ. P. 15(b).

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                  45-40 / #83970
Page 7 of 22

North Star by applying this alternative [agency by control] basis to Nugget and USF&G's

liability." *See* Nugget Opp., Clerk's Docket No. 544 at p. 5.  However, nowhere in its decision,

attached hereto as Exhibit 1, did that court "consider and reject" that alternative basis for relief,

"specifically" or otherwise.  It is nowhere mentioned in that decision.  The Ninth Circuit Court

simply elected not to reach the issue, which is its discretionary right.  Clearly, it decided only to

address the issue on which this Court had based its summary judgment order, meaning the

"telescoping" remedy.  Nugget stretches the rubberband beyond the point of breaking by arguing

that, because the Ninth Circuit Court did not elect to reach or decide North Star's agency cause

of action as an alternative basis for recovery, it "effectively rejected" that alternative basis for

recovery, and "specifically [North Star's] interpretation of *Cargill*."[10]  Nowhere did the Ninth

Circuit Court do so.

      Neither is North Star's current motion based on that separate basis for recovery

"improper" because the Ninth Circuit Court decided not to uphold summary judgment upon the

separate "telescoping" basis for recovery.[11]  As noted earlier, although the control by agency

---

[10]    The reference is to the seminal case of *A. Gay Jensen Farms Company v. Cargill, Inc.*, 309 N.W.2d
285 (Minn. 1981) in which the Minnesota Supreme Court applied the Restatement (Second) of Agency
§§ 14 O and 208 under factual circumstances which this Court found "very similar" to this case.  *See*
Clerk's Docket No. 310 at pp. 23-24 n.38.

[11]    Nugget also seeks to confuse the issues by arguing that the summary of North Star's agency cause of
action contained in its present motion (Clerk's Docket No. 504) is virtually identical to North Star's
summary of that cause of action presented in its Opening Brief to the Ninth Circuit Court.  That is not
true, but if it were there is nothing wrong in that.  It is a decent summary of the cause of action as applied
to this case.  However, Nugget fails to mention that, in addition to that summary in its present motion,
North Star also specifically listed its previous substantive filings in this case on the subject at Clerk's
Docket Nos. 282, 300, 306 & 315, including the specific pages within those filings addressing the subject
and all exhibits and facts addressed there, and incorporated them in their entirety as support for the
motion.  *See* Clerk's Docket No. 504 at p. 2.

_____
Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83970
Page 8 of 22

cause of action bears similarities to the "telescoping" cause of action selected by this Court four years ago and addressed by the Ninth Circuit Court in its decision last year, it is not the same cause of action.  In the agency cause of action, the focal point is the degree of control, regardless of whether disclosed or undisclosed.  *See discussion*, North Star's Reply Memo, Clerk's Docket No. 300.  It is unnecessary under that agency cause of action to show subterfuge or collusion, secrecy or concealment, or even the interposition of a strawman, whether or not "presumably for the purpose of insulating" a prime contractor and its surety from Miller Act liability.  *Id*.  All that need be shown are the facts of ***control,*** which clearly exist in this case.  Despite the "factual similarities between this case and *Cargill*" (Clerk's Docket No. 310 at p. 24, n.35), the "telescoping" cause of action applied and addressed by this Court and the Ninth Circuit Court is not the same as the agency cause of action also alleged by North Star in this case.  Contrary to Nugget's oversimplistic analysis, rejection by the Ninth Circuit Court of summary judgment upon the telescoping cause of action does not mean that this Court should reject summary judgment upon the agency cause of action.[12]

---

[12]    Furthermore, as the Ninth Circuit Court acknowledged, there is at least sufficient evidence in this case to support the telescoping cause of action, meaning that there is also at least sufficient evidence in this case to support the separate agency cause of action.  Therefore, based on the law presented in this Reply and by North Star's previously filed motions and memoranda (including North Star's current motion and memorandum filed at Clerk's Docket No. 504), the Court should at least rule that the agency cause of action applies to this case.  Among other things, North Star has demonstrated that this Court previously misunderstood Alaska and federal law on the subject including the holding in *Jensen v. Alaska Valuation Service*, 688 P.2d 161 (Alaska 1984), because the Restatement (Second) of Agency including § 14 O, which expresses the modern view and is presently in effect, is commonly relied upon to determine agency principles by both the Alaska court and under federal law.  The *Cargill* analysis, which has also been applied in other cases should be applied to this case, both under state law and under the Miller Act.  *See also* discussion and citation of supporting authorities on this subject in North Star's Memorandum in Support of Opposition and Cross-Motion to Nugget and USF&G's April 28, 2006 Motion for Summary Judgment Against North Star, Clerk's Docket No. 535 at pp. 43-47, also incorporated herein by reference.

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                          45-40 / #83970
Page 9 of 22

Nugget argues that if this Court believed that the agency cause of action submitted by

North Star applies to this case, it would have indicated that much in either its August 30, 2002

Order or in its Order the next month denying reconsideration.  However, North Star has already

addressed those Orders and the circumstances under which they were entered.  Furthermore, in

its August 30, 2002 Order, the Court made it very clear that it favored application of that agency

cause of action.  After referencing North Star's argument and the *Cargill* decision, it concluded:

> This court is persuaded that the substantive principles behind finding an agency
> relationship from the facts in *Cargill* are very similar to [the federal telescoping]
> principle which the court adopts and applies in this instance.  Like Cargill in the
> Minnesota case, Nugget controlled Spencer Rock completely and to its own
> advantage.  Nugget took over virtually all aspects of the work that Spencer Rock
> had contracted with it to perform.  Moreover, the rock production and loading
> decisions made by Nugget and Randy Randolph after Nugget took over the
> Spencer quarry in April of 1997 were made to benefit Nugget and to the
> disadvantage of Spencer.  Nugget did what it wanted to do, and then simply
> charged the added cost to Spencer.  It did so in an apparent effort to meet its own
> deadline, but it acted in its own best interests, not in the interest of the party it was
> intended to "support".

Clerk's Docket No. 310 at p. 24, n.38.  In that decision four years ago, the Court also concluded

that "[Nugget] also put itself first in line as a creditor of Spencer, unbeknownst to and ahead of

the very same parties that it was accepting labor and services from in Spencer's stead."  *Id*. at 22.

In addition, the Court concluded that it was "intrigued with the factual similarities between this

case and Cargill, and ***inclined under the circumstances to find that a principal/agent***

***relationship existed between Nugget and Spencer by virtue of the support agreement and***

***Nugget's subsequent control over Spencer . . . .***"  *Id*. at p. 24, n.38 (emphasis added).  The Court

specifically declined to make that finding ***only*** because it considered Nugget an "undisclosed

principal" and considered it "unanswered" whether "contracts entered into by an agent [can] be

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                                    45-40 / #83970
Page 10 of 22

construed as binding an undisclosed principal" under Alaska or federal law. *Id.* In that context, the Court referred to its misunderstanding of the holding in *Jensen*. *Id.* The Court subsequently declined to grant reconsideration on that subject for procedural reasons. Clerk's Docket No. 317.

The present posture of this case is different. The issue now, including a correct interpretation of the holding in Jensen, can be decided now and decided correctly. Obviously, Nugget thought the issue was ripe for decision when it moved for summary judgment upon it just over a month ago (*see* Clerk's Docket No. 489 at pp. 42-47), relying upon its incorrect interpretation of *Jensen* and another Alaska agency case, *Vienna v. Scott Wetzel Services, Inc.*, 740 P.2d 447 (Alaska 1987) (*id.* at 46). At that time, Nugget raised none of the transparent obstacles it seeks to employ now in order to avoid a correct determination on the merits. The only thing that has changed since Nugget's motion is that North Star, in its Opposition and Cross-Motion to Nugget's motion, demonstrated Nugget's misapplication of those two cases and the strength of that cause of action against Nugget. *See* North Star's 5/17/06 Opposition and Cross-Motion, Clerk's Docket No. 535 at pp. 43-47. Now Nugget wants to "forget" and sidestep the merits of the issue by incorrectly arguing that the Ninth Circuit Court must have somehow "rejected" the issue, or that this Court in *dicta* four years ago "held" against the claim, or that an incorrect statement on the law within that *dicta* should now "represent the law of this case," however incorrect, and irrespective of the fact that Nugget succeeded in having that district court Order (upon which it now seeks to rely) reversed and remanded.

Nugget then has the audacity to suggest, at Clerk's Docket No. 544 at p. 9, that North Star's motion for summary judgment on this issue should be stricken pursuant to Fed. R. Civ. P. 12(f), as "redundant, immaterial, impertinent or scandalous matter," because filed two days after

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83970
Page 11 of 22

Nugget filed its 53-page motion and memorandum seeking summary judgment on the issue (in part). Nugget brazenly argues that North Star has "deliberately muddied the procedural waters" by filing its own motion, which it was already preparing and had every right to file.[13]

Following that, Nugget complains about North Star's opposition (Clerk's Docket No. 535 at pp. 43-46) to that part of Nugget's motion for summary judgment addressing North Star's agency claim. Nugget Opp., Clerk's Docket No. 544 at p. 10. Then Nugget, as the only substantive response to North Star's May 1 motion and memorandum on the issue (Clerk's Docket No. 504), merely incorporates its "arguments" at pages 39-44[14] of its own previous motion and memorandum. The Court might ask itself which party is really "confusing" the subject.

North Star asks the Court to decide the issue on the merits. It respectfully requests that this Court not be sidetracked by Nugget's specious arguments.

Considering the merits instead of the sidetracking leads to the inescapable conclusion that Nugget interjected itself into and controlled Spencer Rock's business, and thus became Spencer Rock's principal directly liable to North Star under the principles stated in the <u>Restatement (Second) of Agency</u> § 14 O and the case law applying that principle of law including the *Cargill* decision.

---

[13]    It also does not seem to matter to Nugget that North Star at the time did not know the contents of Nugget's own lengthy motion and memorandum for summary judgment, only part of which addresses the agency claim set out in North Star's Amended Complaint. In addition, it is a bit ironic, to say the least, that on the one hand Nugget seeks to strike North Star's motion for summary judgment filed by May 1, 2006, as being "scandalous" or "redundant" of Nugget's motion, while on the hand USF&G, which the law firm representing Nugget also represents, has moved to strike a cross-motion and a joinder in a motion by North Star after that date as "too late".

---

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83970
Page 12 of 22

That much is clearly shown by the undisputed evidence previously submitted in this case, including Nugget's own records and the testimony of its own personnel.  That includes the testimony of Nugget Project Manager Randolph and the detailed cost and claim records attached as Exhibit 2 to Mr. LaPore's Affidavit dated April 4, 2002 previously submitted in this case.  *See, e.g.*, Clerk's Docket Nos. 282 (including LaPore 4/4/02 Aff.) & 300.  As Mr. LaPore summarized in his Affidavit:

> 6.   In virtually every regard, the rock production and loading decisions made by Nugget and Randy Randolph after Nugget took over the Spencer quarry in April 1997 were made to benefit Nugget and disadvantaged SRP at greater expense to SRP.  After it gained control, Nugget did what it wanted to do and then simply charged the added cost to SRP and paid itself from the project funds to cover that cost instead of paying SRP.  For example, while Nugget ran the Spencer quarry it chartered many expensive plane flights in and out of the quarry and charged that added cost to SRP.  Nugget replaced SRP's longtime shooter in the quarry with Nugget's own shooter and placed its own supervisor, employees and equipment in the quarry.  From what I observed, Nugget used more equipment and paid its people more money to do work less efficiently than had been the case before, when SRP made the decisions.  Nugget used more people and equipment to increase overall production, but it was a less cost-efficient operation.  Nugget often used equipment ill-suited to the work and paid its people lots of overtime.  It did so in an apparent effort to meet its own, self-imposed accelerated production schedule which the federal contract for the project did not require.
>
> 7.   In my deposition and affidavit testimony previously given in the Nugget/SRP litigation I gave several other examples of Nugget's control and actions disadvantaging SRP and increasing the cost of the work SRP had originally agreed to do but Nugget did instead and charged SRP for.  In that dispute Nugget also listed its "costs" and "backcharges" allegedly incurred during the course of Nugget's takeover of the Spencer operations.  That documentation from Nugget is attached as Exhibit 2 to this affidavit.

Clerk's Docket No. 282.  As he explained in greater detail:

> 3.   The Nugget/SRP litigation resulted from the work SRP had contracted in January 1997 to do for Nugget in relation to the Homer Spit Repair and Extension

---

[14]    Actually, those are pages 42-47 of Clerk's Docket No. 489.

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                    45-40 / #83970
Page 13 of 22

Project and from Nugget's early takeover of that work.  In mid-April 1997 Nugget took control of that work, including the rock production and loading operations, which Nugget had originally contracted to have SRP do.  Nugget then intercepted the federal funds it had contracted to pay SRP for that work, paying itself instead.  The only payment SRP or I received from Nugget for that work was $147,184.66 for filter, toe and armor rock produced by SRP from the quarry before April 1997 and delivered "FOB Railhead, Seward" by April 15, 1997.  That is also reflected in the documents attached as Exhibit 1 to this Affidavit, including Nugget's Pay Estimate No. 1 for that amount approved for payment by the Army Corps of Engineers on April 22, 1997.  That all happened well before Northern Stevedoring ("North Star") loaded any of the rock for the project onto Nugget's barge at Seward.  After that initial payment to SRP, Nugget only allowed SRP a few payroll draws for SRP's few remaining employees, and I had to beg Nugget for those.  Nugget allowed only seven such draws, starting June 27, 1997 and ending August 8, 1997, in the total sum of $45,000.  Nugget kept all of the rest of the money the federal government paid for the rock furnished to the Homer project from the Spencer quarry for itself.

4.    Nugget, through its project manager Randy Randolph, also directed and controlled the loading of the rock by North Star from the Alaska Railroad Dock at Seward onto the Nugget barge docked there.  That work started in early May 1997.  Although I had understood I would continue to supervise that work, in fact Mr. Randolph directed it too.  He dealt directly with North Star.  I was pretty much reduced to driving a truck, transporting rock from where it had been dumped from the railcars adjacent to the ARR Dock onto the dock for loading by North Star's crane operator and stevedoring crew onto the barge.  If someone told North Star to send its bills for that loading work to "Nugget Construction c/o Spencer Rock Products", I think it would have been Randy Randolph.  I do not recall doing that.  I recall forwarding whatever bills I received from North Star to Nugget.  I am also pretty sure that I gave a copy of North Star's ratesheet to Randy Randolph early on, I believe during the project's bidding stage, way before North Star did any work.

5.    Randy Randolph and Nugget also made the decision to move the barge loading operation away from the ARR Dock and North Star, which were located on the Seward side of the bay, to the City Dock on the other side of the bay.  That switch occurred about halfway through the barge loading operation that summer, after North Star had already loaded about half the Nugget bargeloads of rock from the Spencer quarry.  When North Star didn't get paid for its work and advised it would cut off stevedoring services at the ARR Dock, which it operated, until paid, Randy Randolph moved the rock loading operation across Resurrection Bay rather than pay North Star.  That decision, like several other decisions Mr. Randolph made, greatly increased the expense of the work SRP had originally

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83970
Page 14 of 22

contracted with Nugget to do.  Nugget, however, then "backcharged" that added expense against SRP.  For example, after Nugget switched the loading operation to the other side of the Bay, we could no longer use SRP's trucks to transport the rock to the Nugget barge, because SRP's trucks were not approved for use upon the highway, which had to be used to travel to the dock on that side of the Bay. We had to use Nugget's trucks instead, at greater expense, and Nugget then backcharged SRP for that.  Nugget also backcharged SRP for other, additional equipment and damage to the Nugget barge related to that loading operation across the bay.  That Nugget-directed and controlled operation was a very different, more expensive one than the rock loading methods I had contemplated using and had based SRP's bid to Nugget on, using, in particular, the Alaska Railroad Dock and North Star.  If it had been left up to SRP, the rock loading operation would have remained at the ARR Dock using North Star.

*Id*.

The bottom line is this.  Even viewing the record in the light most favorable to Nugget, Nugget thought it could better perform Spencer Rock's work, and to "protect" its own interests (in Nugget's words) and "support" Spencer Rock (again in its words), Nugget took over Spencer Rock's work and operations ***by charging Spencer over $4 million for $1.6 million of work***. Nugget also ***intercepted, for itself, all but $192,000 of the $1,623,000*** otherwise due Spencer Rock for its rock.  Nugget proves that it was definitely in control.  That satisfies the principle of law stated in the Restatement (Second) of Agency § 14 O applied in *Cargill* and other decisions previously cited on the point in this case. [15]  Nugget proves North Star's case on this point.

This Court was correct four years ago in noting that the factual and legal similarities between *Cargill* and this case are striking.  Nugget, in its opposition, seeks to ignore *Cargill* and similar decisions decided by other courts and their striking similarities to this case.  They should not be avoided, as Nugget seeks.  Instead, they should be addressed, as North Star first did, in

---

[15]  *See,  e.g., Save Way Oil Co. v. Mehlman*, 496 N.Y.S. 2d 537 (N.Y. App. Div. 1985); *Indosuez v. Rush Farms*, 1996 W.L. 307, 120 (Ark. Ct. App. 1976) (unpublished decision).

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                      45-40 / #83970
Page 15 of 22

some detail, in its initial motion on the subject located at Clerk's Docket No. 282. As was discussed there, the plaintiffs in *Cargill* were several farmers who had sold and/or had contracts to sell grain to Warren Grain & Seed Company ("Warren"). *Cargill*, 309 N.W. 2d at 287-88. Warren operated a grain elevator and a seed business and as a result was involved in the purchase of grain and seed grain from local farmers. *Id*. Cargill had previously established a relationship with Warren whereby Cargill provided Warren with financing and various "support" services in exchange for the right of first refusal to purchase Warren's grain, a right Cargill increasingly exercised to the point it became Warren's main purchaser. *Id*. at 288-90. Cargill became increasingly involved in Warren's operations, in various ways. *Id*. at 288-93. It became an active participant in Warren's operations rather than simply a financier. *Id*. Indeed, when Warren began to suffer serious financial difficulties, Cargill stepped in to take control of Warren's operations. *Id*.

> Cargill's course of dealing with Warren was, by its own admission, a paternalistic relationship in which Cargill made the key economic decisions and kept Warren in existence.

*Id*. at 292-93. The court found it significant that, in addition to Warren's operation being financed by Cargill, Warren sold almost all of its grain to Cargill. *Id*. at 292.

> Thus, the relationship which existed between the parties was not merely that of buyer and supplier.

*Id*. As the court emphasized:

> . . . [T]he [main] reason for Cargill's financing of Warren was not to make money as a lender but, *rather, to establish a source of market grain for its business. As one Cargill manager noted, "We were staying in there because we wanted the grain."*

*Id*. at 293 (emphasis added).

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83970
Page 16 of 22

When Warren defaulted on its obligations to the supplier plaintiffs, the plaintiff-farmers sought payment on their contracts from Cargill. *Id*. at 288. The Court, relying on the Restatement (Second) of Agency § 14 O, agreed, concluding that Cargill had undertaken enough control over Warren to become Warren's principal. As such, Cargill was responsible to the farmers. *Id*. at 293. Among the Court's conclusions was that "Cargill became, in essence, the owner of the operation without the accompanying legal indicia." *Id*. at 292. Added the court:

> On the whole, there was a unique fabric in the relationship between Cargill and Warren which varies from that found in normal debtor-creditor situations.

*Id*. at 293.

Without doubt, the key to that Court's holding was the amount of control Cargill exercised over Warren. Such control also clearly existed in Nugget over Spencer in this case. Nugget unabashedly took over Spencer's operations in order to assure itself of a supply of the rock it needed at the price on which it had based its bid and according to the accelerated schedule it imposed, in order to make its own contract with the federal government most profitable to it. Nugget charged every increased cost and contingency to Spencer — to the point Nugget caused Spencer to become indebted not only to companies such as North Star but also to Nugget, eventually in an amount Nugget claimed against Spencer ***in excess of $2 million in addition to the over $1.4 million Nugget intercepted and paid itself from the project revenues which it had otherwise contracted to pay Spencer, in January 1997***. *See*, *e.g.*, Clerk's Docket No. 282, LaPore's 4/4/02 Aff. at ¶¶ 6-10 & Exh. 2 attached thereto. It did so pursuant to its so-called "support" agreement dated April 23, 1997 but entered into after the point Nugget had in fact

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83970
Page 17 of 22

*already taken control* of Spencer's operations and only source of revenue — *which was Nugget itself*.

Without question, Nugget did so to protect its own interests in that supply of rock. Like Cargill, it "stayed in there because it wanted" the rock.

It is also noteworthy to this case that the *Cargill* court went on to hold that the fact whether Cargill was a disclosed or undisclosed principal did not matter; it did not relieve Cargill of liability to the plaintiffs, similarly situated as is North Star, *even if Cargill had made payments to Warren and Warren then failed to pay the plaintiffs*. *Id*. at 293-94. In doing so, the *Cargill* court relied on the <u>Restatement (Second) of Agency</u> § 208, which does not allow a principal to escape liability from a third-party even by fulfilling payment obligations to the debtor-agent such as Spencer. *Id.*

> . . . [I]t is not necessary to decide whether Cargill was a disclosed or undisclosed principal. We believe that Cargill cannot avoid its liability to plaintiffs by payment to its agent even if it had operated as an undisclosed principal.

*Id*. at 293.

Although unnecessary to find the existence of a principal-agent relationship between Nugget and Spencer in this case rendering Nugget and its surety USF&G liable to North Star as a matter of law, the additional factors set out previously in this case which contributed to Spencer's financial difficulties and eventual collapse and Nugget's assumption of control in its self-interest as a result of that situation make an exceptionally compelling case.

Other courts have applied the same reasoning as *Cargill*. *See*, *e.g.*, *Save Way Oil Co. v. Mehlman*, 496 N.Y.S. 2d 537 (N.Y. App. Div. 1985); *Indosuez v. Rush Farms*, 1996 W.L. 307120 (Ark. Ct. App. 1996) (unpublished decision). As the court in *Save Way* noted, the key

———————————————————————————
Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                    45-40 / #83970
Page 18 of 22

issue is whether the party in the position of a "creditor" assumes *de facto* control over the business affairs of its debtor. 496 N.Y.S. 2d at 538. When it does, it becomes a principal, "whatever the terms of the formal contract with the debtor may be." *Id*.

Other courts have reached similar results in the bankruptcy context by applying the doctrine of equitable subordination of claims in the case of a creditor's control over a debtor resulting in inequitable conduct and injury to other creditors or an unfair advantage to the controlling creditor. *See*, *e.g.*, *In re Beverages International, Ltd.*, 50 B.R. 273 (Bankr. D. Mass. 1985); *In re American Lumber Co.*, 5 B.R. 470 (Bankr. D. Minn. 1980). In this case Nugget clearly controlled Spencer during the course of the revetment project to a point resulting in inequitable conduct and injury to other creditors, in particular North Star, and in unfair advantage to Nugget.

In this case it is established that Nugget, through Randy Randolph and otherwise, injected itself into Spencer's business operations very early in the project and had taken over virtually all aspects of the work Spencer had contracted to do for that project by at least mid-April. That was long before North Star performed any of its loading work, ostensibly for "Spencer" but in reality for Nugget. Nugget's control and direction of that loading work by North Star and Nugget's subsequent removal of that work from North Star when North Star sought payment is simply consistent with Nugget's true principal status. As a result, Nugget and North Star had a direct contractual relationship, and Nugget is obligated to pay North Star for the work it did, which actually benefited Nugget in all respects. *A. Gay Jensen Farms Co. v. Cargill, Inc.*, 309 N.W. 2d 285 (Minn. 1981).

_____

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                45-40 / #83970
Page 19 of 22

Nugget's reliance on *Jensen v. Alaska Valuation Service, Inc.*, 688 P.2d 161 (Alaska 1984), for the proposition that under Alaska law an undisclosed principal cannot be held liable for the acts of its agent, was addressed both at Clerk's Docket No. 315 and, more recently, in North Star's Memorandum and Opposition to Nugget and USF&G's motion for summary judgment dated April 28, 2006, wherein those defendants relied upon *Jensen* and the decision in *Vienna, supra*, for that proposition. As was pointed out in that Opposition, that is not what those cases hold. *Jensen*, which North Star addressed in its motion for reconsideration to this Court four years ago (Clerk's Docket No. 315), did not hold that way. Instead, the holding in *Jensen* was that an agent is liable for a contract he or she enters into unless the principal is disclosed at the time that the contract is formed. *Jensen*, 699 P.2d at 165. In that case, Mr. Jensen, the owner of an Alaska corporation named after him, sought to avoid personal liability on a contract which he made, claiming that he was merely acting as an agent for the corporation, although he did not timely disclose the corporation as principal to the claimant debtor. *Id*. at 163-65. The corporation was without funds. *Id*. In that case, Mr. Jensen was essentially seeking to hide behind the corporation, much like Nugget and USF&G seek to hide behind Spencer Rock (or what Nugget turned Spencer Rock into) in this case. *Id*. The Alaska court found Mr. Jensen liable. *Id*. The holding in that case is that an ***agent*** is also liable upon an agreement for a principal where the principal is not timely disclosed, ***not*** that the undisclosed principal is not liable. *Jensen* at 162-65.

The Alaska court's decision in *Vienna v. Wetzel Services, Inc.,* 740 P.2d 447 (Alaska 1987), which Nugget recently cited in its own motion for summary judgment, is to the same

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                45-40 / #83970
Page 20 of 22

effect.  *Vienna* held only that an agent is not personally liable when the principal *is* disclosed.

*Vienna* at 452-53.  It did **not** hold, as Nugget mistakenly added and argued there (Clerk's Docket

No. 489 at p. 46) that "when the principal is not disclosed, liability rests on the agent, not the

principal."

        In this case, the situation is quite different than in those cases.  Here it is not Spencer, as

agent, which is seeking to avoid liability.  Instead, Nugget, as the principal, is seeking to do so.

In this case, the rule which was applied in *Cargill*, that the principal is liable regardless of

whether undisclosed, applies instead.  309 N.W.2d at 293-94; Restatement (Second) of Agency,

§ 208 (1958) (*cited* and applied in *Cargill*).  *See also Poretta v. Superior Dowel Co*., 137 A.2d

361, 368 (Me. 1957), *cited* in *Cargill*.  As was noted in North Star's previous filings with this

Court, the effect of that rule is that the principal is liable to the claimant in North Star's situation

where the claimant remains unpaid—*even* (unlike this case) where the principal has mistakenly

paid its agent for the claimant's services.  *Id.*

        Because the Restatement (Second) of Agency, which expresses the modern view and is

presently in effect, is commonly relied upon to determine agency principles by both the Alaska

court and under federal law, the *Cargill* analysis, also applied in other cases, should be applied to

this case, both under state law and under the Miller Act. [16]

---

[16]     *See, e.g., Jensen*, 688 P.2d at 165 (*citing Restatement (Second) of Agency*); *Mullen v. Christiansen*,
642 P.2d 1345, 1350 n.5 (Alaska 1982) (same); *United States v. Everett Monte Cristo Hotel, Inc*., 524
F.2d 127, 140 (9th Cir. 1975) (same); *Solar Intern. Shipping Ag., Inc. v. Eastern Proteins Export, Inc*., 778
F.2d 922, 925 (2nd Cir. 1985) (same).

Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                                                                    45-40 / #83970
Page 21 of 22

Therefore, North Star is entitled to summary judgment against Nugget and its surety,

USF&G, on this point, or at least entitled to appropriate rulings on the application of that law to

North Star's Miller Act and state law claims.  Its motion should be granted.

Respectfully submitted at Anchorage, Alaska, on June 6, 2006.

s/ Michael W. Sewright
Burr, Pease & Kurtz
810 N Street
Anchorage, AK  99501
Telephone:  (907) 276-6100
Fax:  (907) 258-2530
E-mail:  mws@bpk.com
Alaska Bar # 7510090

CERTIFICATE OF SERVICE

I certify that on the 6th day of June, 2006, a copy
of the foregoing REPLY TO NUGGET'S
OPPOSITION TO NORTH STAR'S MOTION
FOR SUMMARY JUDGMENT OR
DETERMINATION OF LAW OF THE CASE
AGAINST NUGGET CONSTRUCTION AND
USF&G ON THE BASIS OF CONTRACT BY
AGENCY was served electronically to:

    Steven S. Shamburek, Esq.
    Traeger Machetanz, Esq.
    Paul D. Stockler
    Herbert A. Viergutz
    C. Patrick Stoll, Esq.

    s/ Michael W. Sewright

_____
Reply to Nugget's Opposition to North Star's Motion for
Summary Judgment and Determination of Law of the Case
Against Nugget and USF&G on the Basis of Contract by Agency
*North Star Terminal & Stevedore Co., et al v. Nugget Construction et al*
Case No. A98-009 CV                            45-40 / #83970
Page 22 of 22