Supreme Court of Nevada.
INSURANCE COMPANY OF THE WEST, a California Corporation, Appellant,
v.
GIBSON TILE COMPANY, INC., a Nevada Corporation; Thomas Gibson, an Individual; and Kelly Gibson, an Individual, Respondents.
No. 42343.
May 11, 2006.

**Background:** Surety brought indemnity action against principal for payments made on performance bond. Principal counterclaimed, asserting various causes of action arising from alleged oral contract for issuance of additional bonds. The Eighth Judicial District Court, Clark County, Jessie Elizabeth Walsh, J., entered judgment on jury's verdict for principal. Surety appealed.

**Holdings:** The Supreme Court, En Banc, Gibbons, J., held that:
(1) surety was entitled to bring its indemnity claim under the terms of the general indemnity agreement; (2) surety owed no fiduciary duty to the principal; (3) trial court's instruction that surety owed the principal a fiduciary duty was erroneous; and (4) there was no oral contract for issuance of additional bonds between the parties.

Reversed and remanded.

Maupin, J., concurred and filed opinion in which Becker and Hardesty, JJ., joined.


[1]

⌐309 Principal and Surety
    ⌐309V Rights and Remedies of Surety
        ⌐309V(B) As to Principal
            ⌐309k175 k. Contracts and Conveyances for Indemnity. Most Cited Cases

A surety is entitled, under a general indemnity agreement, to indemnity for costs incurred in defending an action brought against it on a bond, regardless of whether any payment is ultimately made by the surety.

[2]

⌐309 Principal and Surety
    ⌐309V Rights and Remedies of Surety
        ⌐309V(B) As to Principal
            ⌐309k175 k. Contracts and Conveyances for Indemnity. Most Cited Cases

Under terms of its general indemnity agreement, surety was entitled to bring action against principal for attorney fees and costs incurred in attempting to enforce the general indemnity agreement, regardless of fact that surety had not paid anything to principal's creditors and court approved principal's settlement with its creditors as being made in "good faith."

[3]

⌐379 Torts
    ⌐379V Other Miscellaneous Torts

⊐379k431 Bad Faith
⊐379k433 k. Contractual Relations; Implied Covenants. Most Cited Cases

Although every contract contains an implied covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only in rare and exceptional cases when there is a special relationship between the victim and tortfeasor, which is characterized by elements of public interest, adhesion, and fiduciary responsibility.

[4]

⊐309 Principal and Surety
⊐309I Creation and Existence of Relation
⊐309I(A) Between Individuals
⊐309k1 k. Nature of the Relation. Most Cited Cases

There was no special relationship between surety and its principal giving rise to a fiduciary duty as required to support principal's claim in tort for breach of implied covenant of good faith and fair dealing; parties occupied similar bargaining positions as principal conducted its bond business with surety through a bonding agent with over ten years' experience.

[4]

⊐379 Torts
⊐379V Other Miscellaneous Torts
⊐379k431 Bad Faith
⊐379k433 k. Contractual Relations; Implied Covenants. Most Cited Cases

There was no special relationship between surety and its principal giving rise to a fiduciary duty as required to support principal's claim in tort for breach of implied covenant of good faith and fair dealing; parties occupied similar bargaining positions as principal conducted its bond business with surety through a bonding agent with over ten years' experience.

[5]

⊐30 Appeal and Error
⊐30XVI Review
⊐30XVI(H) Discretion of Lower Court
⊐30k969 k. Conduct of Trial or Hearing in General. Most Cited Cases

The district court has broad discretion to settle jury instructions, and a district court's decision to give a particular instruction will not be overturned absent an abuse of discretion or judicial error.

[5]

⊐388 Trial
⊐388VII Instructions to Jury
⊐388VII(A) Province of Court and Jury in General
⊐388k182 k. Authority to Instruct Jury in General. Most Cited Cases

The district court has broad discretion to settle jury instructions, and a district court's decision to give a particular instruction will not be overturned absent an abuse of discretion or judicial error.

[6]

⬜30 Appeal and Error
   ⬜30X Record
      ⬜30X(M) Questions Presented for Review
         ⬜30k698 Instructions
            ⬜30k699 In General
               ⬜30k699(2) k. Necessity of Setting Forth Instructions in General. Most Cited Cases

⬜30 Appeal and Error
   ⬜30XII Briefs
      ⬜30k757 Statement of Case or of Facts
         ⬜30k757(4) k. Setting Out Instructions. Most Cited Cases

⬜30 Appeal and Error
   ⬜30XVI Review
      ⬜30XVI(J) Harmless Error
         ⬜30XVI(J)1 In General
            ⬜30k1032 Burden to Show Prejudice from Error
               ⬜30k1032(3) k. Instructions. Most Cited Cases

Appellant has the burden to show the prejudicial effect of an erroneous jury instruction, through either the trial transcript or a statement of the evidence.

[7]

⬜309 Principal and Surety
   ⬜309V Rights and Remedies of Surety
      ⬜309V(B) As to Principal
         ⬜309k190 Actions Against Principal
            ⬜309k190(9) k. Trial. Most Cited Cases

Trial court erred in instructing the jury that surety owed a fiduciary duty to its principal, at trial on principal's breach of covenant of good faith and fair dealing claim, given that surety had no special relationship with principal to give rise to a fiduciary duty, and principal referred to itself as surety's "insured" or "fiduciary" during trial and principal reminded jury of duties of an insurer during closing argument.

[8]

⬜309 Principal and Surety
   ⬜309I Creation and Existence of Relation
      ⬜309I(A) Between Individuals
         ⬜309k1 k. Nature of the Relation. Most Cited Cases

Although an insurer-insured relationship is fiduciary in nature, and a jury's finding of a breach of fiduciary duty may support the finding of bad faith, a surety is not held to owe the same fiduciary duty to its principal, because a surety's role in providing bonds on behalf of a principal is distinct from that of an insurance company providing a policy to protect its insured.

[9]

☐115 Damages
    ☐115V Exemplary Damages
        ☐115k87 Nature and Theory of Damages Additional to Compensation
            ☐115k87(1) k. In General. Most Cited Cases

☐115 Damages
    ☐115V Exemplary Damages
        ☐115k88 Injuries for Which Exemplary Damages May Be Awarded
            ☐115k89 In General
                ☐115k89(2) k. Breach of Contract. Most Cited Cases

Punitive damages are not awarded to compensate a party but are awarded for the sake of example and by way of punishing the defendant; further, the award of punitive damages cannot be based upon a cause of action sounding solely in contract.

[10]

☐309 Principal and Surety
    ☐309I Creation and Existence of Relation
        ☐309I(A) Between Individuals
            ☐309k10 k. Express Contracts. Most Cited Cases

☐309 Principal and Surety
    ☐309I Creation and Existence of Relation
        ☐309I(A) Between Individuals
            ☐309k30 Consideration
                ☐309k31 k. Necessity. Most Cited Cases

☐309 Principal and Surety
    ☐309I Creation and Existence of Relation
        ☐309I(A) Between Individuals
            ☐309k50 k. Modification. Most Cited Cases

There was no oral contract between surety and principal, who had a written agreement for a construction performance bond, for additional bonds for future projects, given that principal did not tender any additional consideration to surety to create a new contract or modify the existing written contract, and surety stated that it would consider issuing additional bonds only if principal performed its present duties according to the general indemnity agreement.

Alverson Taylor Mortensen Nelson & Sanders and David J. Mortensen and Christian Z. Smith, Las Vegas; Beckley Singleton, Chtd., and Heidi Parry Stern and Daniel F. Polsenberg, Las Vegas, for Appellant.

Hutchison & Steffen, Ltd., and Mark A. Hutchison and Michael K. Wall, Las Vegas; Orin G. Grossman, P.C., and Orin G. Grossman, Las Vegas; McCrea Martin Allison, Ltd., and Robert D. Martin, Las Vegas, for Respondents.

Lefebvre & Associates, Chtd., and Matthew J. Christian and Alan J. Lefebvre, Las Vegas, for Amicus Curiae The Surety Association of America.

Before the Court En Banc.

*OPINION*

GIBBONS, J.

Appellant Insurance Company of the West (ICW) entered into a surety contract with respondent **Gibson Tile** Company, Inc. (Gibson) to provide performance bonds on a construction project. Gibson settled with two suppliers who made claims against the bond and provided the defense on behalf of ICW. However, ICW brought an indemnity action against Gibson, arguing that ICW had incurred costs in enforcing the terms of the surety contract. Gibson counterclaimed, asserting various causes of action arising from an alleged oral contract for the issuance of additional bonds. After the jury found for Gibson on its counterclaims and awarded compensatory and punitive damages, the district court entered a judgment on the jury's verdict.

In this appeal by ICW, we conclude that the district court erred when it prevented ICW's claim for indemnity against Gibson from proceeding based on language in an order denying ICW's motion for reconsideration of Gibson's good-faith settlement with the two suppliers. Further, we conclude that, as a matter of law, an insurance bad-faith claim does not lie against a surety because there is no special relationship between a surety and its principal. As a result, the district court erred when it instructed the jury that a surety owes its principal a fiduciary duty. Furthermore, the award of punitive damages was improper because ICW could only be held liable for breach of contract. Finally, as a matter of law, the jury could not find that an oral contract for the issuance of additional bonds existed between the parties because Gibson did not tender any additional consideration to ICW for a new oral contract or a modification of the existing contract. Accordingly, we reverse the district court's judgment and remand for proceedings consistent with this opinion.

## FACTS

Gibson was a subcontractor on a McCarran International Airport construction project in Las Vegas. Perini Building Company, the general contractor on the project, required that Gibson provide the necessary bonds. Under NRS 339.025, the performance bonds are a standard requirement for public works projects.

Gibson contacted Rick Anniello, an authorized local agent transacting business with ICW, to obtain the bonds. Anniello then contacted ICW to discuss bonding the project. Subsequently, ICW and Gibson entered into a standard form "General Indemnity Agreement" (GIA). The GIA specified that ICW could seek indemnification from Gibson for any payments or expenses incurred as a result of Gibson's failure to perform on the construction project. The parties agreed in the contract that oral modifications to the existing GIA would not be valid. In February 1997, ICW issued a payment and performance bond in connection with Gibson's work on the airport project.

Gibson failed to pay its suppliers, asserting that it had received faulty materials. In addition, Gibson was waiting for Perini to release certain funds due. In 1998, a materials supplier sued Gibson and ICW for payment. In 1999, a second supplier sued Gibson and ICW. At ICW's request, Gibson hired an attorney to defend these two claims. Gibson was initially unable to satisfy the claims without first receiving payment from Perini. When Gibson finally received the money from Perini, it went directly into a trust account controlled solely by Gibson's counsel. The parties later stipulated that the funds be deposited into an account supervised by the district court.

In 2000, ICW sued Gibson to enforce the indemnity provisions of the GIA. ICW specifically asserted its right to a joint trust, under the GIA, to any money collected by Gibson from Perini to be used to satisfy the suppliers' claims. Gibson counterclaimed, alleging a breach of an oral contract for the issuance of additional bonds. Gibson based its counterclaim on the continuing interactions between Gibson and ICW during the years following the issuance of the original bond. Gibson alleged that ICW represented that it would issue additional bonds for various projects that Gibson was interested in bidding if Gibson either satisfied or defended the claims on the original bond.

In August 2001, Gibson settled with both suppliers. ICW was not present during the settlement negotiations and alleges that it was not informed of the settlement until a later date. ICW then filed a motion for reconsideration of the good-faith settlement agreement, arguing that the terms violated the express provisions of the GIA. ICW

contended that the money should have been placed into a trust account held jointly by Gibson and ICW. The district court denied the motion at a hearing held in September 2001.

However, ICW proceeded with its indemnity claim, believing that it had a right to recover attorney fees and costs incurred in attempting to enforce the provisions of the GIA. After ICW moved for partial summary judgment and bifurcation, the district judge denied the motion and stated that "this case needs to be tried."

Approximately sixteen months later, in January 2003, the district court signed an order submitted by Gibson's counsel based on the September 2001 reconsideration hearing. The order stated that "the Court accepts the settlement of the parties in this matter, and ORDERS that this case be closed save and except for the Counterclaim filed by **Gibson Tile,** Inc. against Insurance Company of the West which shall remain open pending trial." The district judge who subsequently took over the case relied on this order to allow only Gibson's counterclaim, and not ICW's indemnity claim, to proceed to trial. A jury heard Gibson's counterclaim against ICW. Anniello testified that he had spoken with ICW on numerous occasions about obtaining bonds on behalf of Gibson. Anniello testified that it was common to make requests and have bonds approved over the phone rather than in writing. However, except for one small bond, ICW never issued the remaining bonds allegedly requested by Gibson.

Gibson's sole shareholder, Thomas Gibson, testified regarding the damages his company incurred as a result of ICW's breach of the alleged oral contract for the issuance of additional bonds. He explained that general contractors did not ultimately select Gibson for many projects because of its failure to obtain the necessary bonding. It was also his understanding that ICW would write additional bonds if Gibson placed any money received from Perini in an escrow account or if Gibson sued Perini for the money. Although Gibson attempted to obtain bonds from other surety companies, Anniello testified that it was almost impossible to obtain bonding because other sureties viewed Gibson's involvement in a significant claim as too great a risk. Gibson's expert witness presented evidence of estimated lost profits as a result of Gibson's failure to bid successfully on a number of potential projects.

One of the instructions given to the jury, over ICW's objection, stated that a surety owes its principal a fiduciary duty. Ultimately, the jury found for Gibson, awarding compensatory damages of $1,585,000 and punitive damages of $4,270,552. The district court entered a judgment on the verdict, and this timely appeal followed.

## DISCUSSION

The district court erred in three ways during the proceedings below. First, the district court erred when it signed an order that effectively denied ICW an opportunity to pursue an indemnity claim permitted under the plain terms of the GIA. Second, because there is no special relationship between a surety and its principal, the district court erred when it instructed the jury on fiduciary duties stemming from a special relationship, thus allowing the jury to find ICW liable for a tortious breach of the covenant of good faith and dealing. Finally, because ICW and Gibson did not enter into an oral contract for the issuance of additional bonds, the jury's award of compensatory damages cannot stand.

*The district court erred when it denied ICW an opportunity to pursue its indemnity claim*

[1][2] As a surety company, ICW was entitled to pursue an indemnity claim against Gibson for costs incurred in enforcing the terms of the GIA. We have recognized that "[s]ureties, unlike insurers, profit solely from the premiums they collect. Indemnification rights guard against potential losses, help reduce the surety's risk, and keep premiums relatively low." [FN1] Further, we have noted that "the right to subrogation distinguishes suretyship from insurance, and such right is considered by the surety in arriving at the amount of bond premiums." [FN2] Therefore, a surety is entitled, under a GIA, to indemnity for costs incurred in defending an action brought against it on a bond, regardless of whether any payment is ultimately made by the

surety. [FN3] We conclude that the order signed by the district judge incorrectly dismissed ICW's indemnity claim for attorney fees and costs in conjunction with the dismissal of claims related to the good-faith settlement. [FN4]

ICW had the right to pursue its indemnification claim under the plain terms of the GIA. However, the district judge presiding over the hearing on ICW's motion for reconsideration erred when he concluded that because Gibson reached a good-faith settlement with the suppliers, ICW could no longer pursue an indemnity claim for attorney fees and costs. Even though ICW did not make any payment on the bond, it may have incurred costs in attempting to enforce the GIA's provisions. The district court should have allowed ICW's indemnity claim for these fees and costs to proceed to trial so that the jury could determine whether ICW was entitled to indemnification from Gibson and the type and extent of costs incurred. Therefore, the district court erred in dismissing ICW's indemnity claim against Gibson.

*A surety cannot be liable for the tortious breach of the covenant of good faith and fair dealing*

For ICW to be liable to Gibson for a tortious breach of the covenant of good faith and fair dealing, the parties had to be in a special relationship. We conclude, as a matter of law, that no such special relationship existed between ICW and Gibson.

[3] Although every contract contains an implied covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only "in rare and exceptional cases" when there is a special relationship between the victim and tortfeasor. [FN5] A special relationship is "characterized by elements of public interest, adhesion, and fiduciary responsibility." [FN6] Examples of special relationships include those between insurers and insureds, partners of partnerships, and franchisees and franchisers. [FN7] Each of these relationships shares "a special element of reliance" common to partnership, insurance, and franchise agreements. [FN8] We have recognized that in these situations involving an element of reliance, there is a need to "protect the weak from the insults of the stronger" that is not adequately met by ordinary contract damages. [FN9] In addition, we have extended the tort remedy to certain situations in which one party holds "vastly superior bargaining power." [FN10]

We have declined to extend tort liability to a surety for the breach of the good-faith covenant. [FN11] In *Great American Insurance v. General Builders*, we reasoned that the facts of the case did not raise the "same public policy concerns implicated where an insurance company refuses to compensate a policyholder for losses covered by the policy." [FN12] The principal did not take out an insurance policy with the surety in order to be protected against property damage or losses. Rather, the owner of the project required the bonds posted for its own security. Further, "the parties [were] both experienced commercial entities represented in the ... transaction by ... experienced agents" and thus stood in equal bargaining positions. [FN13]

[4] Similarly, in this case, the general contractor required that Gibson take out a bond on the project. Gibson also transacted most of its business with ICW through a bond agent with over ten years' experience in the industry. This agent, rather than Gibson's employees, conducted most of the negotiations with ICW over the issuance of bonds. The parties occupied similar bargaining positions. Consequently, as a matter of law, no special relationship existed between Gibson and ICW, and the district court therefore erred when it allowed Gibson to proceed in tort against ICW for the breach of the covenant of good faith and fair dealing.

*The district court erred when it instructed the jury on fiduciary duty*

[5][6] Because no special relationship existed between ICW and Gibson, the district court also erred in submitting an instruction on fiduciary duty to the jury. " 'The district court has broad discretion to settle jury instructions,' and a district court's decision to give a particular instruction will not be overturned absent an abuse of discretion or judicial error." [FN14] If an instruction is erroneous, it must also constitute prejudicial error for reversal to be warranted. [FN15] The burden is on the appellant to show, through the trial transcript or a statement of the evidence, the prejudicial effect of the erroneous instruction. [FN16]

[7][8] We conclude that the fiduciary duty instruction in this case was both erroneous and prejudicial. The insurer-insured relationship is fiduciary in nature, and a jury's finding of a breach of fiduciary duty may support the finding of bad faith. [FN17] Misrepresenting or concealing facts to gain an advantage over the insured constitutes a breach of fiduciary responsibility. [FN18] However, because a surety's role in providing bonds on behalf of a principal is distinct from that of an insurance company providing a policy to protect its insured, a surety is not held to owe the same fiduciary duty to its principal. The district court erred in instructing the jury that ICW owed a fiduciary duty to Gibson.

Further, ICW met its burden of establishing the prejudicial effect of the fiduciary duty instruction by pointing to numerous instances in the record where Gibson referred to itself as ICW's "insured" or "fiduciary." Gibson, in closing argument, also reminded the jury of the fiduciary duties of an insurance company. The district court erred as a matter of law when it allowed the instruction to go to the jury, and the instruction was unfairly prejudicial toward ICW because it could have supported the jury's finding of bad faith.

*Because ICW could not be liable in tort to Gibson, the jury could not award punitive damages*

[9] Since we conclude that there is no special relationship between a surety and its principal, Gibson was not entitled to an award of punitive damages. Punitive damages are not awarded to compensate a party but are awarded "for the sake of example and by way of punishing the defendant." [FN19] Further, the award of punitive damages cannot be based upon a cause of action sounding solely in contract. [FN20] An award of expected profits is adequate to compensate the aggrieved principal because it requires the surety to account for failing to provide the promised bonds and because it made the principal whole. [FN21] Therefore, as a matter of law, there was no basis for the jury's award of punitive damages.

*ICW and Gibson did not form an oral contract for the issuance of additional bonds*

[10] Finally, we conclude that the jury's award of compensatory damages cannot stand because ICW and Gibson did not enter into an oral contract for the issuance of additional bonds. Gibson did not tender any additional consideration to ICW in order to create a new contract or modify the existing contract between the parties. [FN22] ICW merely requested that Gibson perform its existing duties according to the terms of the GIA and represented that it would only *consider* issuing additional bonds. The communications between ICW and Gibson do not form the basis of a binding oral contract. [FN23] Because we conclude that ICW and Gibson did not enter into an oral contract for the issuance of additional bonds, no basis for compensatory damages exists. [FN24]

### CONCLUSION

The district court erred when it entered an order that dismissed ICW's indemnity claim, sixteen months after conducting a hearing on the matter. Further, because a suretyship relationship is not a special relationship giving rise to the tortious breach of good faith and fair dealing, there was no basis for the jury's award of punitive damages, and the district court erred when it instructed the jury that a surety owes a fiduciary duty to its principal. Finally, because ICW and Gibson did not form an oral contract for the issuance of additional bonds, ICW was not liable for any alleged damages incurred by Gibson. We therefore reverse the district court's judgment and remand for proceedings consistent with this opinion.

ROSE, C.J., DOUGLAS and PARRAGUIRRE, JJ., concur.


MAUPIN, J., with whom BECKER and HARDESTY, JJ., agree, concurring.
I concur in the result reached by the majority. First, I agree that no special relationship exists between a surety and a construction performance bond principal. Thus, the

district court erred in allowing the jury to decide whether appellant Insurance Company of the West (ICW), committed a tortious breach of a contractual covenant of good faith and fair dealing. Second, since no such tort was committed in these circumstances, the punitive damage award cannot stand. Third, no breach of an oral contract was proved below. Fourth, the trial judge's predecessor abused his discretion in dismissing ICW's express indemnity action. I write separately to amplify upon the errors committed in the dismissal of the indemnity claim.

ICW's indemnity claim arose from an express indemnity provision contained in the bonding agreement with Gibson. This provision gave ICW, as the surety, a right of reimbursement against Gibson for any performance monies paid and any costs and fees generated in the enforcement of the agreement. During the course of the litigation below, Gibson concluded a separate settlement with its suppliers, to which ICW was not a party, and which was approved by the district court as having been reached in good faith ostensibly under NRS 17.225 et seq. The good-faith order did not address ICW's indemnity action. When ICW moved for reconsideration of that approval, the district court, in an order drafted by Gibson's counsel, both denied the motion and dismissed the indemnity claim. As noted, we now reverse this particular order as part of our resolution of the instant appeal.

In my view, the order dismissing ICW's express indemnity claim suffers from two defects not addressed by the majority. First, the district court dismissed ICW's indemnity claim without formal application and without notice of any kind to ICW, thus violating important due process considerations. Second, as a matter of law, dismissal based upon Gibson's "good-faith" settlement with its suppliers completely ignored settled principles that a good-faith settlement between two parties never bars a claim by nonsettling parties for contractually based indemnity, *i.e.*, express indemnity, such as that pressed below by ICW. [FN1] In short, a good-faith settlement only immunizes the settling party from claims of contribution and noncontractual, *i.e.*, implied, indemnity. [FN2] Thus, while the order submitted by Gibson denying reconsideration of the good-faith ruling could properly dismiss any claim for implied indemnity without further application because such a result would have been compelled as a matter of law, the good-faith ruling could have no legal bearing upon ICW's express indemnity action.

To conclude, the district court should have granted partial summary judgment in favor of ICW on the remainder of Gibson's indemnity liability [FN3] and proceeded to trial on the amounts owed. [FN4]

BECKER and HARDESTY, JJ., concur.

> FN1. *Transamerica Premier Ins. v. Nelson*, 110 Nev. 951, 955, 878 P.2d 314, 317 (1994).

> FN2. *Id.*; see also *Federal Ins. Co. v. Toiyabe Supply*, 82 Nev. 14, 20, 409 P.2d 623, 626-27 (1966).

> FN3. *Nelson*, 110 Nev. at 955, 878 P.2d at 316.

> FN4. Gibson's counsel did not submit the proposed order until sixteen months after the hearing, violating Eighth Judicial District Court Rule (EDCR) 7.21.

FN5. *K Mart Corp. v. Ponsock,* 103 Nev. 39, 49, 732 P.2d 1364, 1370 (1987).

FN6. *Great American Ins. v. General Builders,* 113 Nev. 346, 355, 934 P.2d 257, 263 (1997).

FN7. *See Aluevich v. Harrah's,* 99 Nev. 215, 217, 660 P.2d 986, 987 (1983) (observing that there is "a cause of action in tort for the breach of an implied covenant of good faith and fair dealing where an insurer fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy").

FN8. *Id.*

FN9. *Ponsock,* 103 Nev. at 49, 732 P.2d at 1371.

FN10. *Aluevich,* 99 Nev. at 217, 660 P.2d at 987.

FN11. *Great American Ins.,* 113 Nev. at 355-56, 934 P.2d at 263.

FN12. *Id.* at 355, 934 P.2d at 263.

FN13. *Id.*

FN14. *Ringle v. Bruton,* 120 Nev. 82, 90, 86 P.3d 1032, 1037 (2004) (footnotes omitted) (quoting *Jackson v. State,* 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001)).

FN15. *Otterbeck v. Lamb,* 85 Nev. 456, 461, 456 P.2d 855, 859 (1969).

FN16. *Driscoll v. Erreguible*, 87 Nev. 97, 101, 482 P.2d 291, 294 (1971); *Truckee-Carson Irr. Dist. v. Wyatt*, 84 Nev. 662, 667, 448 P.2d 46, 50 (1968).

FN17. *Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, 701-02, 962 P.2d 596, 603 (1998).

FN18. *Id.* at 701, 962 P.2d at 603.

FN19. NRS 42.005(1).

FN20. See *id.*; *Amoroso Constr. v. Lazovich and Lazovich*, 107 Nev. 294, 298, 810 P.2d 775, 777 (1991).

FN21. *Great American Ins.*, 113 Nev. at 355, 934 P.2d at 263.

FN22. See *Zhang v. Dist. Ct.*, 120 Nev. 1037, 1042, 103 P.3d 20, 24 (2004) (reasoning that for a new agreement or a modification to be enforceable, there must be additional consideration).

FN23. We note that because ICW and Gibson did not form a valid oral contract, the statute of frauds does not apply as a bar to enforcement. See NRS 111.220(2) (stating that "[e]very special promise to answer for the debt, default or miscarriage of another" must be in writing in order to satisfy the statute of frauds).

FN24. See *Linebarger v. Devine*, 47 Nev. 67, 73, 214 P. 532, 534 (1923) (stating that, "when a contract is invalid or for any reason

unenforceable, it necessarily follows that no right of action exists for damages occasioned by the breach thereof").

FN1. See NRS 17.245; NRS 17.265; see also *Doctors Company v. Vincent*, 120 Nev. 644, 651, 98 P.3d 681, 686 (2004); *Medallion Dev. v. Converse Consultants*, 113 Nev. 27, 32, 930 P.2d 115, 118 (1997).

FN2. *Doctors Company,* 120 Nev. at 654, 98 P.3d at 688; *see also* NRS 17.225 *et seq.*

FN3. While Gibson has paid the underlying obligations secured by the bond, it is still subject to whatever costs and fees reasonably generated by ICW in the enforcement of the bonding agreement.

FN4. I realize that the judge who tried the matter below inherited her predecessor's erroneous ruling on the indemnity claim. However, the district court is empowered to correct erroneous rulings at any time prior to the entry of final judgment. *See* NRCP 54(b).

Nev.,2006.
Insurance Co. of the West v. **Gibson Tile** Co., Inc.
--- P.3d ----
END OF DOCUMENT