Michael W. Sewright
BURR, PEASE & KURTZ
810 N Street
Anchorage, AK  99501-3293
Telephone:    (907) 276-6100
Fax No.:    (907) 258-2530
Attorneys for North Star

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>     Plaintiffs,<br>  and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf,<br><br>     Intervening Plaintiffs,<br>  and<br><br>METCO, INC.,<br><br>     Intervening Plaintiff,<br>  vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>     Defendants. | Case No. 3:98-cv-009-TMB<br><br><br>**NORTH STAR'S RESPONSE TO NUGGET'S COMBINATION REPLY AND OPPOSITION TO NORTH STAR'S OPPOSITION AND CROSS-MOTION TO NUGGET AND USF&G'S APRIL 28, 2006 MOTION FOR SUMMARY JUDGMENT AGAINST NORTH STAR** |

# I.  INTRODUCTION

Defendant Nugget Construction, Inc. ("Nugget") has filed a combination Reply and Opposition[1] to the Opposition, Cross-Motion and supporting Memorandum of Plaintiff/ Use Plaintiff North Star Terminal & Stevedore Company ("North Star")[2] filed in response to Nugget and USF&G's Motion for Summary Judgment Against North Star.[3]  As set forth in North Star's aforementioned filings and as further discussed herein, Nugget's[4] motion for summary judgment should be denied upon all claims on which it sought summary judgment, and North Star should be granted summary judgment upon at least its (1) agency and (2) quasi-contract, contract implied-in-law, restitution and quantum meruit causes of action on which it cross-moved.[5]

---

[1]    Clerk's Docket No. 603 (hereinafter "Nugget Opposition").

[2]    Clerk's Docket Nos. 534, 535 & 537.  *See also* North Star's filings on related issues at Clerk's Docket Nos. 504, 604 & 605, incorporated herein by reference.

[3]    Clerk's Docket No. 488.

[4]    As previously noted, USF&G's involvement in Nugget's motion, if any, has been confusing.  *See, e.g.*, Clerk's Docket No. 535 at p. 2.  Nugget compounds that confusion in its present memorandum by placing USF&G's name in the heading but then immediately stating "Defendant Nugget Construction, Inc. ("Nugget") respectfully files herewith its Opposition and Reply."  Clerk's Docket No. 603 at p. 2.  Further, Nugget refers to North Star as an "Intervening" party.  *Id.*  Not that it should matter but North Star filed the initial complaint in this case and is not an intervening party.

[5]    Some introductory observations are in order.  Nugget addresses only six pages of its 50-page memorandum to opposing the two specific sets of claims upon which North Star cross-moved for summary judgment.  *See* Clerk's Docket No. 603 at pp. 37-40 (regarding unjust enrichment issues) & pp. 41-44 (agency issues).  How much of the rest of Nugget's memorandum is in "opposition" and how much is in "reply" is unclear, but its reply portion appears to exceed 25 pages.  Alaska USDC Local Rule 10.1(l) limits replies to 25 pages.  In its responsive memorandum Nugget also seeks summary judgment for the first time upon North Star's tortious interference of business relations claim, after having never addressed that claim in its initial motion and memorandum (Clerk's Docket Nos. 488 & 489) and without North Star having moved for summary judgment upon that claim (Clerk's Docket No. 535).  Nugget is being disingenuous in arguing otherwise (Clerk's Docket No. 603 at pp. 34-37), and North Star objects.  That matter is addressed later in this memorandum.  In addition, Nugget's Reply was filed a week late, without requesting court approval for an extension of time.  On the other hand, Nugget non-opposed North Star's request for a similar extension of time, which the Court granted (Clerk's Docket No. 598), so the parties are even enough on that score.  Finally, references made herein to Nugget's Opposition and to North Star's filings at Clerk's Docket Nos. 535, 604 & 605 are to the Clerk's Docket page numbers, which assigned page number 1 to the caption page which Nugget and North Star did not number on those filings.

---

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)
Page 1 of 25

45-40 / #84099

## II.  NUGGET MISSTATES THE CASE.

In its Opposition, Nugget misconstrues the purpose behind North Star's references to and incorporation of past filings in this case going back to 1998 and 2002, including previously admitted evidence, in its own recent filings.  It is correct to state that those previous statements of fact and evidentiary materials were submitted in past years in support of motions for summary judgment partially based on the Miller Act and partially based on state law claims.  However, it is incorrect to state, as Nugget does, that those key evidentiary materials should be ignored or have no bearing upon the present motions because summary judgment was not granted then on state law claims but granted instead upon Miller Act claims which have been remanded to this Court for further proceedings.  It is also incorrect for Nugget to take the position that those established facts have no relevancy to more recently pled state law claims based in part on those previously pled claims and partly upon additional, complementary legal theories stemming from the same set of operational facts as the previously pled claims for recovery—whether Miller Act based, state law based, or both.

As previously demonstrated, contract, equity and contract by agency claims for recovery recognized under state law can also form the basis for recovery under the Miller Act.  Much of the evidence is common to both types of claims.  *See, e.g.*, Clerk's Docket No. 605 at p. 6 incl. n.8 and No. 535 at pp. 14-50.  Accordingly, Nugget is incorrect in its unsupported assertion that the factual and legal bases for claims under the Miller Act and state law have nothing to do with each other.  Nugget is incorrect in arguing that these parties' factual and legal filings relating to motions for summary judgment filed and argued in 1998-1999 and 2002 "have no bearing" on the disposition of the Alaska state law claims that are the subject of Nugget's motion.  Contrary to Nugget's apparent new strategy, reassignment of this case to new counsel or a new tribunal

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)                45-40 / #84099
Page 2 of 25

should not result in disregarding the detailed factual and evidentiary record which became

established in this case prior to that.

As has been noted in recent filings, North Star and the other claimants' initial complaints,

subsequent summary judgment motions, cross-motions, and oppositions to Nugget and

USF&G's motions for summary judgment were based upon both the Miller Act and state law

claims both complementary to that Act and standing free on their own merits under state law.[6]

Plaintiffs' present claims for breach of express or implied contract, promissory estoppel,

quasi-contract, detrimental reliance, unjust enrichment and restitution, quantum meruit, equitable

subordination, constructive trust, and agency were also all addressed during two stages of

summary judgment filings in 1998-1999 and in 2002.  *Id.*  Application of the Miller Act can have

some unique characteristics, such as the "subcontractor" status issue and the "telescoping" or

"strawman" cause of action which have developed in connection with the Miller Act.  However,

contractual-type relationships and remedies in equity recognized under state law also provide

bases for recovery under the Miller Act.[7]

Likewise, evidence and factual findings supporting a claim under the Miller Act, such as

the telescoping cause of action, can also be used to support causes of action based in state law

---

[6]     *See, e.g.*, Clerk's Docket No. 535.  Both in its initial complaint and in subsequent summary judgment filings, North Star gave notice of its "claims brought under both state law and the Miller Act (including the reference to state law under the Miller Act where appropriate) against all defendants".  *See, e.g.*, North Star's Notice dated December 11, 1998, Clerk's Docket No. 76 at p. 3, and recent discussion at Clerk's Docket No 547 at pp. 6-7, 604, and No. 605 at p. 2 n.2.

[7]     *See, e.g., Central Steel Erection Co. v. Will*, 304 F.2d 548, 551-52 (9th Cir. 1962) (finding an implied contract and entitlement to quantum meruit relief although "there was never any meeting of the minds of the parties upon any arrangement or system of compensating them" and also finding that implied direct relationships with the prime contractor come within the construction and purposes of the Miller Act "whether the theory is called implied-in-fact contract, quasi-contract, or promissory estoppel").

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)                    45-40 / # 84099
Page 3 of 25

arising out of the same operative facts. In particular, previously admitted evidence and factual findings of overreaching, control, "subterfuge", "collusion", "concealment", and the "secret conversion" of Spencer Rock into a "straw man" in the Miller Act context—just as the district and appellate courts have found—can also support state law claims based on agency, intentional and/or negligent misrepresentation or nondisclosure including fraud, negligence, tortious interference of business relations, bad faith dealing, and punitive damages for outrageous behavior arising out of that same set of occurrences or transactions. Regardless of whether the evidence is "conclusive" (in the district court's eyes) or "sufficient" (in the eyes of the Ninth Circuit's second panel), it is enough to form the bases for at least defeating a motion for summary judgment against those state law based claims.

Nugget's own discussion belies its argument to the contrary. For example, Nugget recognizes that at least as early as December 7, 1998, North Star contended that "Nugget is liable to North Star both under contract, express and/or implied, and under plaintiffs' remedies in quantum meruit, since Nugget *clearly stepped into Spencer Rock's shoes, primarily to benefit itself and secure its source of stone necessary for the Homer Spit Project*." *See* Nugget Opp., Clerk's Docket No. 603 at p. 4 (quoting from North Star's 1998 Memo. for Summary Judgment, Clerk's Docket Nos. 69 & 74) (emphasis added). As Nugget also notes (Clerk's Docket No. 603 at p. 7), Judge Holland later agreed. Following additional evidence presented in summary judgment proceedings in 2002 and upon reconsideration of the evidence previously submitted, the Court concluded:

> Although at the time of contract with plaintiffs Spencer was not a "paper" party, the terms of the support agreement, and Nugget's acts subsequent to it, rendered it so. By virtue of the support agreement and Nugget's own subsequent actions, Nugget *stepped into the shoes of Spencer, acting from that point onward as its own material supplier, directly accepting and using the labor, equipment, and services provided by North Star, Shoreside, and Metco.*

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al. v. Nugget, et al.,* Case No. A98-009 CV (TMB)    45-40 / #84099
Page 4 of 25

Clerk's Docket No. 310 at pp. 19-20 (emphasis added).  Applying a Miller Act concept (and relying on the record established in 1998 and 1999 as well as the more recent record in 2002), Judge Holland agreed with North Star's contract-based contention.  As previously noted, he also found merit in North Star's agency cause of action based on the same facts and similar considerations.  Clerk's Docket No. 310 at pp. 23-24 n.38 & Clerk's Docket No. 504, No. 535 at pp. 13 & 43-46, & No. 605.

Admittedly, both of Judge Holland's summary judgment orders in 1999 and 2002 were based upon application of the Miller Act.  It is also true that in his second Order, he stated, among other things, "This is a Miller Act case".  However, those two observations do not support Nugget's quantum leap conclusion that the parties' previous motions and cross-motions "related exclusively to claims brought by North Star, Shoreside and Metco under the Miller Act." Clerk's Docket No. 603 at p. 6.  The record establishes that those motions and cross-motions addressed both Miller Act claims and state law claims, including Miller Act claims based in part on state law.  As North Star pointed out then, partly in response to Judge Holland's statement, this is a Miller Act case "and More" (*see, e.g.*, Clerk's Docket No. 315 at p.5 & No.316), and as Judge Holland acknowledged in response, he simply decided to base his determination on one Miller Act remedy rather than alternative remedies including the claimants' state law claims (Clerk's Docket No. 317 & No. 356 at p. 12 n.28).

His decision to do so at that time does not mean that evidence and facts supporting the Miller Act claims do not also support the claimants' state law claims.  The two are not mutually exclusive by any stretch.  It is not at all the case, as Nugget argues but does not show (Clerk's Docket No. 603 at p. 10), that "North Star's prior filings sought recovery under the federal Miller Act, and only the federal Miller Act" or that North Star's facts and arguments provided to the

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)                    45-40 / #84099
Page 5 of 25

Court in support of its Miller Act (and also its state law) claims cannot be meaningfully applied to or support its Alaska state law causes of action. Nugget's arguments to that effect, which are merely arguments, are both incorrect and illogical. If the admissible evidence and facts previously submitted to and found by this Court also support the claimants' state law claims, then it does not matter whether they were first submitted in support of Miller Act claims, state law claims, or both. In either event, those facts and findings exist and are sufficient to defeat Nugget's motion for summary judgment and to support North Star's partial cross-motion for summary judgment.

Of course, it might be wondered why Nugget is taking such great pains to avoid the previously established record in this case. The answer is simple. That record is unfavorable to it. Apparently, Nugget perceives it to be in its best interests to maneuver this Court away from those previous evidentiary showings and findings which have been so strongly in the claimants' favor, by whatever argument it can muster. As the old saying goes: "When the law is in your favor argue the law; when the facts are in your favor argue the facts; and when neither is in your favor, just argue." Nugget wishes to disregard those previously established facts, which support both the claimants' Miller Act and state law claims, for the very reason that they are "inconvenient" truths for Nugget (and USF&G). The fact that much of that evidence was obtained in the past, when the witnesses' memories were fresher and more reliable, should be held in North Star's favor, and not against it as Nugget argues. North Star and the other claimants are correct in relying upon that specific evidence and findings supporting their claims in their recent filings in opposition to Nugget and USF&G's motions and in support of their own motions and joinders. *See, e.g.*, Clerk's Docket Nos. 535, 604 & 605, incorporated herein by reference.

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al. v. Nugget, et al.*, Case No. A98-009 CV (TMB)                    45-40 / #84099
Page 6 of 25

That observation also relates to Nugget's misplaced argument that North Star and the other claimants do not rely on more "recent discovery" in this case.  For example, at one point Nugget argues that "North Star chooses to rely time and again on evidence and arguments that were raised in [the past] rather than anything from North Star's recent discovery efforts", which Nugget alleges, without any support, "were permitted precisely so that North Star could substantiate its state law claims."  *See* Nugget Opp., Clerk's Docket No. 603 at p. 31.

In fact, it was not the claimants who sought that additional discovery when amendments to pleadings were being considered last year.  In fact, North Star and the other claimants informed the Court that they did not believe additional discovery would be necessary, except perhaps into the defendants' respective financial conditions and the bad faith claim asserted against USF&G.  *See, e.g.*, North Star, Shoreside and Metco's reply memorandum regarding amendments filed at Clerk's Docket No. 398 at pp. 5-6 & No. 399 at pp. 17-23.[8]  To the contrary, it was Nugget and USF&G (at that time completely represented by the same law firm) that argued they wanted to engage in additional discovery, which Judge Holland allowed.  Clerk's Docket No. 401 at p. 4.

In fact, it was Nugget (and to a lesser degree USF&G) that then engaged in extensive discovery after the amendments were allowed, including taking depositions for the first time.  Before 2005, following those amendments, Nugget had taken no depositions in the case at any

---

[9]    . . .[W]hereas Nugget and USF&G may want to take advantage of a request to reopen discovery in relation to the purported "new" claims (***based in fact on evidence and uncontested facts already in the record***), it is North Star's opinion they do not need that discovery to meet the new legal theories based on existing fact.  * * *  If discovery is to be reopened, North Star is not the one requesting it.

Clerk's Docket No. 399 at pp. 19 & 22-23 (emphasis added).  As referenced in that quoted passage, there was also much discussion in those filings regarding amending pleadings about the overlapping interrelationship between that preexisting evidence and prior court findings in the context of the Miller Act, previously alleged state law claims, and newly alleged state law claims (which Nugget now chooses to ignore in its present arguments).  *See, e.g.*, Clerk's Docket No. 399 at pp. 17-24 & No. 398.

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)                                    45-40 / #84099
Page 7 of 25

time. It and USF&G had instead submitted a series of conclusory, self-serving affidavits from Mr. Randolph, Nugget's Project Manager.

On the other hand, North Star had conducted major discovery, including the depositions of Nugget's key personnel, back in 1998 and had submitted detailed affidavits and records then. Nugget took no depositions then. North Star also obtained additional discovery materials in 2002, including the detailed affidavit of Mr. LaPore, the transcripts of several depositions including of Nugget personnel taken in the state court litigation between Nugget and Spencer Rock, and key Nugget records, ***none*** of which had been provided to it by Nugget or USF&G.[9] North Star's discovery since the amended pleadings and supplemental disclosures of the parties following the most recent pretrial order in October 2005 has primarily been into the defendants' financial condition and insurance coverage, and then only following necessary assistance from the Court. *See* Order Compelling Discovery dated January 16, 2006 (Clerk's Docket No. 430).

Accordingly, Nugget is inclined to refer to "recent" discovery, including recent deposition statements taken out of context, whereas North Star and the other claimants rely more on the previously established record and discovery taken at a time when, as previously noted, the memories and events were fresher and more reliable.

In any event, North Star has identified specific facts and law to support its claims that there was an express and/or implied-in-fact contract between Nugget and North Star. *See, e.g.*, Clerk's Docket Nos. 535, 604 & 605. It has demonstrated that "mutual assent" is unnecessary in some contexts, such as with a principal acting through an agent, and furthermore that Nugget's direct conduct and actions toward North Star present at least sufficient evidence of the existence

---

[9]    As previously pointed out to the Court, that additional discovery had to come from sources other than Nugget. *See* North Star Reply, Clerk's Docket No. 399 at pp. 6-10.

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al. v. Nugget, et al.,* Case No. A98-009 CV (TMB)                    45-40 / #84099
Page 8 of 25

of a contractual relationship between Nugget and North Star objectively viewed. *Id.* Nugget simply argues that North Star has not and misconstrues North Star's position and showings in the course of that argument.

Nugget's repeated attacks upon Judge Holland's findings which the second panel of the Ninth Circuit Court found supported by the ***evidence*** in the case are also unjustified. The Ninth Circuit Court specifically ***found*** that the ***evidence*** supported and "tends to show" that Nugget had engaged in the wrongful acts of "subterfuge", "collusion", "concealment", and the "secret conversion" of Spencer Rock into a "straw man". Although that appellate court found that evidence not "conclusive" enough for summary judgment, nevertheless, it was, in the words of that court, "sufficient evidence" which "tends to show" those acts. As Judge Holland found, and the Ninth Circuit Court acknowledged, there is clearly evidence in the record to support at least the reasonable inference that Nugget, by action, word, or conduct, influenced the actions and legal relations of the claimants, including delaying them from asking for payment from Nugget while doing their work. *See, e.g.*, Clerk's Docket's No. 310 at pp. 7-9 and 19-24. Nugget interjected itself into Spencer Rock including intercepting Spencer Rock's ability to pay and did so secretively, thus creating an illusory, false situation while dealing directly with and directly deceiving the claimants. *Id.* Judge Holland's findings on this score, including the claimants' detrimental reliance, and the Ninth Circuit Court's conclusion that those findings were supported by at least "sufficient" evidence, have already been stated and do not need to be repeated just because Nugget disputes them. *See, e.g.*, Clerk's Docket Nos. 535, 604 & 605 incorporated herein.

Although pointed out before, Nugget also continues to ignore that this Court has previously denied Nugget summary judgment on those contractual, estoppel, and detrimental

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al. v. Nugget, et al.,* Case No. A98-009 CV (TMB)
Page 9 of 25

45-40 / #84099

reliance claims of the claimants, based on much the same arguments Nugget makes now. *See, e.g.*, Clerk's Docket No. 535 at pp. 3-4 (addressing prior Court decisions). Nugget does not show why it should be granted summary judgment now upon that which it has been denied summary judgment before. Even if one were to mistakenly accept Nugget's incorrect argument that those claims were made before solely in the context of the Miller Act, they were still contractual, promissory estoppel, and detrimental reliance-type claims.

Where there is sufficient evidence to result in "telescoping" the relationship and duties of the prime contractor (Nugget) directly to these claimants under Miller Act considerations, certainly there also exists sufficient factual indicia of misrepresentation, nondisclosure, direct fraud, and breached duties of honesty, forthrightness, and due care owed to these claimants at the same time under common law. Nugget worked directly with and alongside North Star in relation to Nugget's project. It did so day in and day out. North Star was no stranger to it. Nugget owed duties of honesty, fairness and due care to North Star. North Star was no "second-tier vendor" to Nugget. North Star was not a "vendor" at all. It provided equipment, equipment operators, and stevedore labor loading Nugget's rock upon Nugget's barge, for which Nugget got paid and ensured North Star did not get paid by intercepting the money for itself. North Star has already shown how the duties of reasonable disclosure and due care apply to this case under the circumstances. *See, e.g.*, Clerk's Docket Nos. 535, 547 at p. 16 n.8, 603 & 604.

The evidence reasonably construed in the light most favorable to North Star supports that conclusion. Evidence supporting "telescoping" the Nugget and North Star relationship also supports that conclusion. At best for Nugget, whether North Star was a "second" or "first" tier provider of men and equipment is an issue in this case, not a fact, as Nugget merely alleges, from which other duties allegedly flow according to Nugget. As best for Nugget, the existence of

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al. v. Nugget, et al.,* Case No. A98-009 CV (TMB)
Page 10 of 25

45-40 / #84099

"privity" is an issue, not a fact.  In any event, as has been shown before, when it comes to the recognition of legal duties and responsibilities toward others arising from public policy, it is not necessary to show contractual "privity".  *See, e.g.*, Clerk's Docket No. 535 at pp. 30-38.  A traffic victim, who is not in "privity" at all with the offending motorist, is still a foreseeable plaintiff, as was North Star to Nugget, to say the least.  *Id.*

Neither was there anything "improper" in Judge Holland's mentioning of the Corps of Engineers' early recognition of Nugget's direct responsibilities to the claimants, including the responsibility to pay them promptly, where Judge Holland's own review of the ***evidence*** supported his conclusions and findings similar to those initial determinations of the Federal Government.  Nugget argues, without showing, that Judge Holland "improperly" afforded "weight" to those early Corps' conclusions.  That is mere argument too.  North Star relies upon the ***evidence*** upon which the Corps' conclusions and Judge Holland's subsequent, separate conclusions were based.  That ***evidence*** is set out in the record and has been specified by North Star.  *See, e.g.*, Clerk's Docket Nos. 504, 535, 604 pp. 6-7, & 605.  The conclusions of the Corps of Engineers, of Judge Holland in his August 30, 2002 decision, and also of the Ninth Circuit Court in its March 3, 2005 decision, that there is at least sufficient evidence to hold Nugget responsible for prompt payment to North Star and the other claimants, are simply validations of that established ***evidence***.

At another point in its memorandum, Nugget argues that "a ***close reading*** of the affidavits and other supporting materials [North Star] references in its present Opposition [and Cross-motion] demonstrates that they contain no facts that . . . can now be used to establish [North Star's] state law claims."  Clerk's Docket No. 603 at p. 10 n.1.  North Star believes quite the contrary.  It welcomes the Court's ***very close reading*** of those previously submitted

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)
Page 11 of 25                                                                    45-40 / #84099

supporting materials (in addition to materials the claimants have more recently submitted), as specified and incorporated within that Opposition and Cross-Motion memorandum (Clerk's Docket No. 535) and in other recent filings submitted by the claimants on the subject of those state law claims, also incorporating previous filings.  *See, e.g.,* Clerk's Docket 547, 604 & 605.

Nugget's reliance for the first time in its Opposition upon the Maryland federal district court's opinion in *United States for the use and benefit of Allied Building Products Corp. v. Federal Insurance Company*, 729 F. Supp. 477 (D. Md. 1990), is also misplaced.  That case, which Nugget relies on at Clerk's Docket No. 603 at pp. 30, 45-46, was a very different case than this.

The procedural posture in that case was court consideration of the defendants' motions to dismiss previous claims for punitive damages apparently unsupported by any claim in tort and the plaintiffs' motions to amend their complaints, apparently to state tort claims.  729 F. Supp. at 478-79.  The posture in this case is quite different.  In this case, this Court already granted the amended pleadings last year (*see* Clerk's Docket No. 401), following much legal discussion by the parties including Nugget and USF&G's stringent opposition.[10]

---

[10]    S*ee* Clerk's Docket Nos. 389, 391, 393, 395, 398 & 399.  In *Allied Building*, the district court judge held that there was insufficient basis offered in that case for the delay in seeking the amendments to outweigh the prejudice to the defendants which would accompany the amended pleadings' allowance.  729 F. Supp. at 478.  On the other hand, Judge Holland, who was very familiar with this case at the time of his August 11, 2005 Order granting the claimants leave to amend their pleadings, reached the opposite conclusion.  As was stated in that Order:

> Defendants do not argue that amendment would be futile nor have plaintiffs previously sought to amend their complaints.  Defendants primarily argue that they will be substantially prejudiced if the motions to amend are granted because plaintiffs are adding new claims and new legal theories which will require additional discovery.  * * *   The court is not persuaded that defendants will be prejudiced if plaintiffs are given leave to amend.  No trial date has been set in this case, and the little, if any, additional discovery that will be required will not unduly delay this case.  The passage of time in this instance is, for the most part, the result of tactical decisions defendants made.  They will not now be heard to complain they will be prejudiced because so much time has passed.  Plaintiffs have not delayed in bringing their motions to amend either.  North Star first brought up the subject of amendment in 2002 but was dissuaded at the status conference from bringing a motion to amend at that time.  Plaintiffs then raised the possibility of amendment at the next available opportunity.

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)                                    45-40 / #84099
Page 12 of 25

In *Allied Building* the Maryland district court also concluded that, under the different circumstances of that case, there was no basis for the independent torts of fraud or "constructive fraud" (which that court noted was not even recognized under Maryland law). [11] *Id.* at 478-79. On the other hand, this case involves strong evidence of subterfuge, collusion, concealment, misrepresentation and the secret conversion of Spencer Rock into a strawman by the prime contractor, Nugget, as already determined by this Court and the Ninth Circuit Court. That type of evidence, which has been laid out in great detail before in affidavits, deposition testimony, and other documents on file, supports the separate and independent torts alleged in these claimants' amended complaints including misrepresentation, fraud, negligence, and tortious interference of business relations under Alaska law, in addition to supporting the telescoping cause of action under the Miller Act already recognized by this Court and the Ninth Circuit Court. Judge Holland was obviously aware of that interrelationship, ***as it relates to this case***.

In *Allied Building*, the court disallowed any punitive damages claim because it concluded there was no claim in tort to support it. 729 F. Supp. at 479. In this case, on the other hand, there are tort claims stated to support the punitive damages claim. This Court, unlike that court, has also already allowed the amendments after due consideration.

In addition, the court in *Allied Building* concluded that even if the pending claims sought to be asserted in that case had merit, that court would not "in the exercise of its discretion"

---

Plaintiffs' motions to amend are granted.

*See* Order, Motions to Amend, Clerk's Docket No. 401 at p. 4. *See also* Judge Holland's additional explanation at page 3 of that Order regarding prior proceedings.

[11]     Among other things, it has been previously demonstrated that Alaska, unlike Maryland, clearly recognizes the claim for constructive fraud applicable to this case. *See Adams v. Adams*, 89 P.3d 743 (Alaska 2004) & discussion of that and related causes of action in North Star's 5/17/2006 Memo, Clerk's Docket No. 535 at pp. 24-30, & Clerk's Docket Nos. 547 pp. 15-36 & 604.

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)     45-40 / # 84099
Page 13 of 25

entertain those pending claims.  *Id*.  In a passage Nugget particularly likes quoting and misconstruing, out of context, that court concluded that considering the tort claims would "complicate" the litigation beyond the normal Miller Act case.  *Id*.  In this case, however, the litigation is already complicated beyond the normal Miller Act case due to Nugget's wrongful conduct and the facts of this case and recognition of the applicability of the federal telescoping Miller Act remedy to this case involving many of the same elements of evidence supporting the independent tort claims which also exist in this case.[12]

Therefore, this is a much different case presenting different circumstances, conduct, facts, and much more viable independent tort claims, together with a much more viable claim for punitive damages, than was the case in *Allied Building*.  *See* prior discussion, incorporated herein, *e.g.*, at Clerk's Docket Nos. 535, 547 at pp. 15-36, 604 & 605.

Nugget also argues that "The lack of contractual privity between Nugget and North Star is not disputed" (Clerk's Docket No. 603 at p. 32), whereas in truth that is disputed.  The claimants have disputed it many times and supported that dispute, including recently.  *See, e.g.*, Clerk's Docket Nos. 518, 535 at pp. 14-18, 604 & 605.  As was noted for example at Clerk's Docket No. 604 at pp. 18-20, Nugget is incorrect in that assertion and reads too much into the characterization found in the second opinion of the Ninth Circuit Court that "appellees never entered into express contracts with Nugget".  Nugget's mere argument elsewhere in its

---

[12]     Not only that, since that district court decision in *Allied Building* in January 1990, the supplemental jurisdiction of this Court over related state law claims as those set forth in the amended pleadings has become mandatory with few exceptions by Act of Congress, 20 U.S.C. § 1367 enacted December 1, 1990, rather than "discretionary."  *Executive Software North America, Inc. v. U. S. District Court*, 24 F.3rd 1545, 1555-60 (9th Cir. 1994); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 447 (2nd Cir. 1998).  Jurisdiction of a case brought under the Miller Act is exclusively in the federal district court.  *United States ex rel Owens-Corning Fiberglass Corp. v. Brandt Constr. Co.*, 826 F.2d 643, 645-46 (7th Cir. 1987).  For that reason, federal supplemental jurisdiction over state law claims pled in connection with Miller Act claims filed in federal district court is especially appropriate.  *United States ex rel Chicago Bldg. Restoration, Inc. v. Tazzioli Constr. Co.*, 796 F. Supp. 1130, 1132 (N.D. Ill. 1992).

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.*,  Case No. A98-009 CV (TMB)                          45-40 / #84099
Page 14 of 25

Opposition that it and its Project Manager Randy Randolph had no knowledge of Spencer Rock's or Mr. LaPore's financial condition and could not have foreseen that Spencer Rock would not be able to pay North Star or others similarly situated if Nugget used its so-called "support" agreement to intercept all funds otherwise due Spencer Rock from that point onward is also powerfully belied by the factual evidence already considered by this Court.[13]

### III.  NORTH STAR'S CROSS-MOTIONS SHOULD BE GRANTED AND NUGGET'S TARDY MOTION UPON NORTH STAR'S TORTIOUS INTERFERENCE CLAIMS REJECTED.

#### A.  Nugget Should be Denied Summary Judgment and North Star Granted Summary Judgment Upon The Agency Claims.

On this point, Nugget argues, in very conclusory fashion, that North Star has not addressed Nugget's arguments for why an agency relationship did not exist between Nugget and Spencer Rock under Alaska law.  In fact, North Star did, in some detail, in its Opposition and Cross-Motion, Clerk's Docket No. 535 at pp. 7, 13, 15 & 43-47.  Among other things, it pointed

---

[13]    *See* specific discussions with references to the record on that subject at Clerk's Docket Nos. 535, 604 & 605. As Judge Holland previously found, "Randolph, who also worked as a senior engineer, bid estimator, and project manager for Spencer Rock, was especially familiar with that company and Mr. LaPore".  Clerk's Docket No. 310 at p. 7.  Among other things, the evidence indicates that he was also a 20% owner of Spencer Rock, although he did not want the IRS to know about that.  *See* discussion of the evidence at Clerk's Docket No. 604 pp. 11-15 incl. n.21. According to Mr. LaPore's affidavit and deposition testimony, Mr. Randolph and Nugget were especially aware of Spencer Rock and LaPore's tight financial situation, which they then took advantage of.  *Id.* at 10-15.  Otherwise, why would they enter into the so-called "support" agreement wherein they assured that Nugget was first paid among creditors?  As this Court also concluded, based on that and additional evidence:

> What is apparent to this court is that Nugget's acts far surpass what could be deemed mere "support" of Spencer in its role as a material supplier.  Nugget actually overtook Spencer . . . .  *  *  *  All the while Nugget did this, it directly received the goods and services from North Star, Metco and Shoreside in the furtherance of its own operation while ostensibly insulating itself from liability to those entities by the terms of the support agreement . . . .  *  *  *  Moreover, Nugget engaged in *subterfuge* in its desire to keep the terms of the support agreement *secret*.  Not only did Nugget [purport to] insulate itself from liability for payment to Spencer's labor and material suppliers under the terms of the support agreement, it also required Spencer to keep the terms of the support agreement *secret so as to prevent the parties from demanding payment directly from Nugget*.  Nugget, which by virtue of its position as prime contractor *controlled* the flow of money to Spencer *also put itself first in line as a creditor of Spencer, unbeknownst and ahead of the very same parties that it was accepting labor and services from in Spencer's stead.*

---

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al. v. Nugget, et al.,*  Case No. A98-009 CV (TMB)
Page 15 of 25                                                                                      45-40 / #84099

out that Nugget failed to address North Star's claim as actually alleged in its Amended

Complaint and the facts and law applicable to that claim. *Id.* North Star correctly stated its

claim for Nugget's liability under the agency by control principle of law recognized in the

Restatement (Second) of Agency commonly relied upon to determine agency principles by both

the Alaska courts and the federal courts. *Id.* North Star also reestablished, by specific

incorporation, the record that it had previously established in this case on that. *Id.* That agency

issue has also been briefed in detail in North Star's initial Motion and Memorandum for

summary judgment on the subject (Clerk's Docket No. 504) and, more recently, in North Star's

Reply to Nugget's Opposition to that motion (Clerk's Docket No. 605).[14]

　　　　Nugget's chief response to North Star's reestablishment of Nugget's liability under that

cause of action (both under state law and the Miller Act) is that Judge Holland's initial

interpretation of the "unanswered question" which the Court stated as *dicta* in its August 30,

2002 Order (to the effect that it appeared that contracts entered into by an agent cannot be

construed as binding on an undisclosed principal under Alaska law) represents "the standing law

of this case," however incorrect.[15]　Nugget Opp., Clerk's Docket No. 603, at p. 41.

---

Clerk's Docket No. 310 at pp. 20-22 (emphasis added).

[14]　　Nugget's distracting complaints and unjustified speculation contained in footnote 7 of its Opposition about
who filed what motion for summary judgment when and why has been addressed already by North Star at Clerk's
Docket No. 605 at p. 8 n.9 & pp. 12-13.  Not that it matters, but among other things North Star did not "then" file an
opposition and cross-motion after Nugget filed an opposition on May 19, 2006.  Rather, North Star filed its
opposition and cross-motion on May 17 and on May 19 Nugget then filed its separate opposition to North Star's
prior motion filed on May 1.  North Star's cross-motion filed on May 17 (Clerk's Docket Nos. 535 & 537) also
addressed the "second basis" for Nugget's liability under agency, previously addressed, which North Star could only
become aware of upon later examining Nugget's massive April 28, 2006 filings after May 1, including Mr.
Randolph's new affidavit providing that "second basis".

[15]　　Nugget also feebly argues, in highly conclusory fashion, that "even if the Court were to decide that contracts
entered into by an agent can be construed as binding on an undisclosed principal, North Star fails to establish that
Nugget was, at any time, Spencer Rock's principal, disclosed or undisclosed" (Clerk's Docket No. 603 at p. 43).
However, North Star has established that, by reference to the undisputed evidence in the record both in its
Opposition (Clerk's Docket No. 335) and in its own previous Motion for Summary Judgment on the subject (Clerk's

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al. v. Nugget, et al.,* Case No. A98-009 CV (TMB)
Page 16 of 25

45-40 / #84099

Notably, nowhere does Nugget contend or show that that "interpretation" reached four years ago without the benefit of briefing by the parties and challenged by North Star then (Clerk's Docket No. 317) and now is a ***correct*** statement of law.  Rather, Nugget seeks to cling to its tenuous position that that "interpretation," which is actually *dicta* in an Order which Nugget appealed and had reversed, is the "law of this case," however incorrect.  For reasons stated herein and previously, that is an untenable position elevating form over substance.  *See discussion* at Clerk's Docket No. 504 at pp. 3-6, No. 535 at pp. 44-46 & No. 605 at pp. 6-13 (North Star's Reply to Nugget's Opposition wherein Nugget first raised this argument).

In fact, as North Star has undeniably demonstrated in those filings and in prior filings, the Court's prior interpretation of the one Alaska case which it then cited, *Jensen v. Alaska Valuation Services, Inc*., 688 P.2d 161, 165 (Alaska 1984), was incorrect, just as Nugget's reliance on that interpretation is incorrect.  It was instead held in *Jensen* that an agent is liable upon an agreement with the principal where the identity of the principal is not timely disclosed, ***not*** that the undisclosed principal is not liable.  *Id.  See also Jensen, supra*, at 163, 165.[16] Nowhere in *Jensen* did the Alaska Supreme Court hold or suggest that the undisclosed principal, if in fact a principal, is not liable to the claimant, along with the agent.

For the reasons set forth in this response, in North Star's other above-referenced recent

---

Docket No. 504) and Reply regarding that Motion (Clerk's Docket No. 605).  It has established that Nugget controlled and took over Spencer Rock's operations and ability to pay others such as North Star to such a degree that Nugget became the principal of Spencer Rock responsible for Spencer Rock's obligations—much as this Court was inclined to find in its summary judgment Order four years ago (Clerk's Docket No. 310 at pp. 23-24 n.38).

[16]    As was stated in *Jensen*:

> An agent who attempts to avoid liability on a contract has the burden of proving that the agency relationship and the identity of the principal were in fact disclosed.  A third party with whom the agent deals is not required to inquire whether the agent is acting for another.

*Jensen* at 688 P.2d at 163 (citations omitted).

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)                    45-40 / #84099
Page 17 of 25

filings, and in the previous factual submittals such as at Clerk's Docket Nos. 282 & 300

referenced and incorporated therein and herein, North Star has set forth the controlling law and

facts with specific citations to the record establishing that Nugget and USF&G are liable to

North Star under the agency by control principle of law.

Nugget only briefly addresses North Star's "second basis for finding an agency

relationship between Nugget and Spencer Rock, as a matter of law" arising out of Mr.

Randolph's very recent representation, for the first time in his April 28, 2006 affidavit, that his

"direction to North Star regarding the loading and scheduling of the barges was expressly

authorized by Mr. LaPore and Spencer Rock, per the Support Agreement."  In response, Nugget

simply argues that North Star "cites no factual or legal authority" to support that claim.

However, the factual authority comes out of Nugget Project Manager Randolph's own mouth, in

his new affidavit which was submitted by Nugget and cited by North Star.  North Star also

specifically cited its legal authority for that proposition as "the rule in *Jensen v. Alaska Valuation

Service*, that an agent is liable where the principal is not timely disclosed."  North Star Memo.,

Clerk's Docket No. 535 at pp. 7 & 47.  North Star provides all of the authority that is necessary

to grant summary judgment on that basis, and it should be granted.[17]

---

[17]     Confusing matters, Nugget argues that is "contrary to common sense" to argue that "an authorization given by
Mr. LaPore to Mr. Randolph would render the ***former*** the agent of the latter." Clerk's Docket No. 603 at p. 43
(emphasis added).  North Star agrees that it would be contrary to common sense to make that argument, but that is
not North Star's argument; that is Nugget's misstatement of the argument.  North Star's argument, which is fully
supported by the holding in *Jensen*, is that Mr. LaPore's authorization given to Nugget renders the ***latter*** the agent of
the ***former*** for the barge loadings and that where that principal (Spencer Rock) is undisclosed as such, as in this case
to North Star, the agent (Nugget) is made personally liable.

   It also does not matter that North Star's Mr. Goodwill may have testified that Nugget's Mr. Randolph "did a good
job" directing the loading work or, as Nugget seeks to recharacterize the testimony, "conducted himself
appropriately regarding the loading and scheduling of the barges."  The fact is Nugget's Randolph did not make the
necessary disclosure.  Regardless of whether it was Nugget getting lost in its own shell game or the trickster being
caught by his own tricks, the liability exists as a matter of law.  Neither would Mr. Goodwill "agree", as Nugget
flippantly adds, that Nugget's Randolph conducted himself "appropriately . . . in accordance with the Support
Agreement."  Clerk's Docket No. 603 at pp. 43-44.  To the contrary, Mr. Goodwill has testified by affidavit and in

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)                                         45-40 / #84099
Page 18 of 25

## B.  North Star Is Entitled to Summary Judgment Upon Its Interrelated Claims for Quasi-Contract, Unjust Enrichment, Contract Implied in Law, And/Or Quantum Meruit.

With regard to the foregoing claims, Judge Holland noted seven years ago that:

Without taking any position on this matter one way or the other, the court really does not believe there is any realistic possibility of this situation evolving in a fashion which would leave North Star with no remedy except a claim for unjust enrichment . . . .

Court's June 3, 1999 Summary Judgment Order (Clerk's Docket No. 124) at pp.4-5 n.6.

North Star agrees.  However, it also believes it is entitled to summary judgment at least upon those interrelated claims.  It is true, as Nugget points out, that in that 1999 Order the Court concluded that it could not "say *at this time* whether or not one or both of Spencer Rock or Nugget Construction [was] unjustly enriched by reason of the stevedoring services which North Star provided."  *Id*. at p. 4 (emphasis added).  Accordingly, *at that time* Judge Holland declined "to grant summary judgment to anyone [including Nugget] on the quasi-contract claim of North Star."  *Id*. at 4-5 incl. n.6.

However, three years later, the Court had no difficulty determining which party had been unjustly enriched.  Although again determining that it was unnecessary to reach any of the claimants' claims for quasi-contract, unjust enrichment, contract implied in law, or quantum meruit, the Court in its Summary Judgment Order dated August 30, 2002, concluded, as a matter of fact:

Nugget actually overtook Spencer [and] [a]ll the while Nugget did this, it directly received the goods and services from North Star, Metco, and Shoreside in the furtherance of its own operation while ostensibly insulating itself from liability to those entities by the terms of the support agreement [it had with Spencer Rock].

That Nugget took over the quarry operation and not merely supported Spencer's efforts is evidenced by undisputed facts [which the Court then stated].  *  *  *  Nugget,

---

his recent deposition that he did not know about that "support" agreement when North Star did the loading work and does not know its contents now.  *See, e.g.*, Goodwill 12/7/98 Aff. at ¶ 11, Clerk's Docket No. 75.

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)                    45-40 / #84099
Page 19 of 25

> which by virtue of its position as prime contractor controlled the flow of money to Spencer, also put itself first in line as a creditor of Spencer, unbeknownst to and ahead of the very same parties that it was accepting labor and services from in Spencer's stead.  *  *  *  Once Nugget took over for Spencer as its own material supplier, North Star, Shoreside, and Metco directly supplied Nugget with labor, equipment, and services.

Clerk's Docket No. 310 at pp. 20-22.  Although the Ninth Circuit Court reversed and remanded the District Court's determination of summary judgment depending upon application of the Miller Act's telescoping rule, it did not disturb Judge Holland's findings which would support a simple quantum meruit claim, or the ample evidence which North Star presented in 2002 in support of that claim.  *See, e.g.*, Clerk's Docket Nos. 282 & 300.

Nugget's sole response to North Star's extensive presentation for summary judgment on that subject (*see, e.g.*, Clerk's Docket No. 535 at pp. 38-42 and No. 282 at pp. 38-41) is that it has not been shown that Nugget was unjustly ***enriched***.  To support that argument, Nugget argues that it is "undisputed" that Nugget "suffered significant losses resulting from its dealings with Spencer Rock".  Clerk's Docket No. 603 at p. 37.  In fact, that contention is disputed, at least as regards costs that were properly attributable to Spencer Rock rather than Nugget's own mismanagement, greed, and personal production and stockpiling of rock for future personal use, as has been disclosed through Mr. LaPore's April 4, 2002 Affidavit and June 7, 1999 deposition testimony, Mr. Randolph's own deposition testimony, and correspondence between Nugget and Spencer Rock — all of which has been detailed before, even recently.  *See, e.g.,* Clerk's Docket Nos. 535, 604 & 605.

However, that is not the pertinent inquiry, as regards this type of claim.  The pertinent inquiries are whether North Star's work benefited the project and its general contractor Nugget (which is not in dispute), whether Nugget got paid for that work by the Federal Government (which is also not in dispute), and whether Nugget took that money for itself (also undisputed).

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)                    45-40 / #84099
Page 20 of 25

That being the case, Nugget was **enriched** by North Star's services and **unjustly** padded its own pocketbook at North Star's expense. Nugget's secret "support" agreement with Spencer Rock whereby Nugget intercepted and "put itself first in line" as to all funds otherwise due Spencer Rock, rather than allow Spencer Rock decide who it would pay first, constitutes the unjust enrichment.[18]

### C. Nugget Is Not Entitled to Summary Judgment Upon North Star's Claims for Tortious Interference With Business Relations.

As previously observed in this Response, Nugget seeks summary judgment for the first time upon North Star's tortious interference with business relations claims in its reply memorandum filed last week. North Star objects. Nugget disingenuously suggests that it did move for summary judgment upon those claims by simply stating, at the beginning of its April 28 Memorandum (Clerk's Docket No. 489), that it was moving for summary judgment on "all state law claims" alleged by North Star. Nugget also argues **now** that it somehow "addressed and countered throughout its opening brief" the "allegations" related to North Star's "tortious interference claim," but **without** identifying where it ever did so in that brief or where it mentioned that claim by name in that brief. It did not. Examination of Nugget's two-page table

---

[18]    As has been established before, Nugget may complain now about its dealings with Spencer Rock, but the fact is that Nugget never would have even obtained the Homer Spit Repair and Revetment Project contract with the Federal Government but for the low, favorable pricing it received from Spencer Rock chiefly prepared by none other than Randy Randolph. *See* Clerk's Docket Nos. 69, 74, 112, 282 & 300. Without that favorable pricing, the job would have gone instead to Herndon & Thompson, a competitor to Nugget which had its own rock quarry, a situation Nugget envied. *Id.* Furthermore, Nugget's comment at footnote 6 of Clerk's Docket No. 603 at p. 39, that prepayment of rock the Corps allowed "included all of the cost of delivering the rock to Nugget's barge," is both wrong and totally unsupported by any citation to fact. In fact, the Corp allowed only a percentage as prepayment based solely on the value of the rock stockpiled prior to loading, delivery, or placement. Finally, Nugget, *citing Mitford v. deLasala,* 666 P.2d 1000 (Alaska 1983), suggests that North Star "misunderstands" Nugget's argument that a party to an express contract may not seek recovery on theories such as quantum meruit or implied contract, but in fact Nugget has raised and North Star has addressed that argument before. *See, e.g.*, Clerk's Docket No. 282 at Memo. p. 41. That principle only applies where, as in *Mitford*, one having an express contract with a party seeks to obtain quantum meruit or implied contract relief against that **same** party. *Id.* The principle does not apply where Nugget claims North Star cannot recover quantum meruit relief against Nugget due to preexisting contractual arrangements with Spencer Rock (into which Nugget, by the way, then affirmatively stepped into).

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al. v. Nugget, et al.,* Case No. A98-009 CV (TMB)                    45-40 / # 84099
Page 21 of 25

of contents at the beginning of that brief also makes it abundantly clear that Nugget did not address that claim. After totally ignoring that claim within its opening brief, Nugget now seeks to address it, in reply, by a separate heading, just as it did the ***other*** claims it ***did*** address in its opening memorandum.

In any event, the proof is in Nugget's own three-page Motion for Summary Judgment (Clerk's Docket No. 488). There, Nugget specifically states "North Star's Alaska state law" claims on which Nugget is moving for summary judgment, and North Star's tortious interference claim is ***nowhere*** listed among them.

For a party who likes to reference *Alice Through the Looking Glass* (*see* Clerk's Docket No. 558 at p. 12), it does seem "curiouser and curiouser" how Nugget slips into its discussion of that claim ignored by it in its own Motion. First, Nugget intimates that North Star perhaps opened the door to that topic by noting in a footnote to its May 17, 2006 Opposition (Clerk's Docket No. 535) that North Star's damages under the negligence cause of action (which Nugget did address) would likely be measured in the same or similar manner as North Star's previous calculation which had been provided to Nugget of losses "due to Nugget's breach of contract or, alternatively, tortious interference of North Star's preexisting business relations with Spencer Rock." Suggesting that those comments "echo" North Star's claims for tortious interference set forth in its Amended Complaint, Nugget then launches into an argument, for the first time, for summary judgment upon that claim. However, North Star's footnote observation was made solely in the context of measuring damages, as to a different cause of action. It was not made in response to anything Nugget had said about North Star's tortious interference claim, nor was it any type of cross-motion upon that claim. That is further shown by North Star's identification of the two subjects of its cross-motion in the Conclusion of that Opposition and Cross-Motion

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al. v. Nugget, et al.,* Case No. A98-009 CV (TMB)                    45-40 / #84099
Page 22 of 25

memorandum (Clerk's Docket No. 535).  North Star's tortious interference claim is not among those subjects.

Although it would be unjust enough to allow Nugget to orchestrate a backdoor ruling by such specious and transparent means, even more outrageous is its assertion, without any support whatsoever, that no findings or evidence exist in the record to either support that claim or that Nugget "exerted control or overreaching with respect to Spencer Rock or that Nugget improperly intercepted or rechanneled funds to itself, or that Nugget deliberately interfered with and removed the work . . . from North Star midway through the Homer Spit Project."  Clerk's Docket No. 603 at pp. 35-36.  In fact, as has been shown in the claimants' filings in the past few weeks and also in the evidentiary filings in this case in prior years (*see, e.g.*, Clerk's Docket Nos. 282 & 300), including Mr. LaPore's affidavits and deposition testimony and even in the deposition testimony of Randy Randolph, there is indeed overwhelming evidence that Nugget did all of that, deliberately and improperly.  As Judge Holland has previously concluded, based on that evidence:

> Also in July of 1997, Nugget, not Spencer, made the decision to move the barge loading operation away from the Alaska Railroad dock to the City dock on the other side of Resurrection Bay.  *  *  *  Nugget, rather than pay North Star directly, chose to move the loading operations to a separate dock and perform the operations itself. This move greatly increased the amount of expense for the work that Spencer had originally contracted with Nugget to perform.  For example, once Nugget moved operations to the other side of Resurrection Bay, Spencer's trucks could no longer be used to transport rock to the barges because those trucks were not approved for use on the highway.  Nugget's trucks had to be used instead, at a greater expense, which Nugget merely back-charged to Spencer.  *  *  *  Moving operations is unquestioningly a decision that Spencer would never have made on its own, since the move not only inconvenienced Spencer but also cost it far more that staying would have done.[19]

---

[19]    Robert LaPore also graphically testified to those facts, *e.g.*, in his April 4, 2002 Affidavit found at Clerk's Docket No. 282 ¶ 5 (which Nugget did not challenge) and also repeated recently at Clerk's Docket No. 605 pp. 15-16.

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)                    45-40 / #84099
Page 23 of 25

Court Order, Clerk's Docket No. 310 at pp. 8-9, 22.

Nugget also makes the meritless argument that North Star's tortious interference claims "are factually and legally inconsistent with" North Star's claim that Nugget contracted with it, because (Nugget asserts) there "cannot be a tortious inference [sic] claim among parties to the same contract". Clerk's Docket No. 603 at pp. 36-37. However, that is the accepted nature of pleading in the alternative, a concept with which Nugget counsel is presumably aware. North Star claims Nugget contracted with it, either expressly, impliedly, or by agency. Nugget denies that it did so, devoting reams of paperwork to that proposition. If that issue is eventually determined in Nugget's favor, which North Star doubts, then nevertheless Nugget is liable for tortious interference of the contractual and business relations Nugget claims North Star did have with Spencer Rock. As North Star president Jeff Bentz summarized, when questioned by Mr. Krider about that claim:

> A:    Well, we feel we had agreements with Nugget, but obviously that's why we are here. So if not on our assumption with our having contracts with Nugget, then interference with the contracts we had in place with Spencer.

*See* North Star's Joinder, Clerk's Docket No. 518 at p. 3 & J. Bentz 3/28/06 Depo. tr. p. 11, lines 3-10, attached as Exhibit 3 thereto.

There is no basis or excuse for Nugget's request for summary judgment on this point.

## IV.  CONCLUSION

During the course of the motion practice of the past few weeks, Nugget has shown an increasingly disturbing penchant for argument for the sake of argument and ignoring, misconstruing, and reinventing the factual and legal record in this case. Whereas North Star and the other claimants specify evidence upon evidence and show fact after fact, Nugget simply asserts, without support from any specific evidence or facts, statements such as "North Star

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)    45-40 / #84099
Page 24 of 25

offers only bare allegations upon which North Star then builds inference upon unreasonable and unsubstantiated inference"—as if merely saying so makes it so.  Clerk's Docket No. 603 at p. 48. Nugget chastises North Star for relying on the "prior record", *id.*, presumably because it does not want this Court to consider that record.

Nugget's misguided approach is not based on law, fact, reason, or the record.  It is certainly no basis for summary judgment in the defendants' favor.  Instead, North Star should receive summary judgment upon at least the limited grounds it has requested, or favorable rulings on the law of the case placing this case in a proper posture for trial.

Respectfully submitted at Anchorage, Alaska, on June 15, 2006.

s/ Michael W. Sewright
Burr, Pease & Kurtz
810 N Street
Anchorage, Alaska 99501
Phone: (907) 276-6100
Fax: (907) 258-2530
E-mail: bpk@bpk.com
Alaska Bar No. 7510090

CERTIFICATE OF SERVICE

I certify that on the 15th day of June, 2006, a copy of the foregoing NORTH STAR'S RESPONSE TO NUGGET'S COMBINATION REPLY AND OPPOSITION TO NORTH STAR'S OPPOSITION AND CROSS-MOTION TO NUGGET AND USF&G'S APRIL 28, 2006 MOTION FOR SUMMARY JUDGMENT AGAINST NORTH STAR was served electronically to Steven S. Shamburek, Esq., Traeger Machetanz, Esq., Paul D. Stockler, Herbert A. Viergutz, and C. Patrick Stoll, Esq.

s/ Michael W. Sewright

North Star's Response to Nugget's Combination Reply and Opposition
*North Star, et al.  v. Nugget, et al.,*  Case No. A98-009 CV (TMB)     45-40 / #84099
Page 25 of 25