IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, on its own behalf,<br><br>Plaintiffs,<br>and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a MARATHON FUEL SERVICE, and SHORESIDE PETROLEUM, INC., d/b/a MARATHON FUEL SERVICE, on its own behalf,<br><br>Intervening Plaintiffs,<br>and<br><br>METCO, INC.<br><br>Intervening Plaintiff,<br><br>vs.<br><br>NUGGET CONSTRUCTION, INC., SPENCER ROCK PRODUCTS, INC., UNITED STATES FIDELITY AND GUARANTY COMPANY, and ROBERT A. LAPORE,<br><br>Defendants. | Case No. 3:98-cv-9 TMB<br><br><br><br><br><br>ORDER DISPOSING OF PARTIES' BAD FAITH SUMMARY JUDGMENT MOTIONS |

Motions Presented

Both defendant United States Fidelity & Guaranty Company ("USF&G") (Docket No. 500) and Plaintiffs (Docket Nos. 509 and 519) have moved for summary judgment on Plaintiffs' bad faith claim against USF&G. Plaintiffs have opposed USF&G's motion (Docket Nos. 547

and 549), and USF&G has replied (Docket No. 597). USF&G has opposed Plaintiffs' motion (Docket No. 527), and Plaintiffs have replied (Docket No. 569 and 570).[1] USF&G has also moved for summary judgment on Plaintiffs' punitive damages claims against it (Docket No. 496). Plaintiffs have opposed USF&G's motion (Docket Nos. 547 and 549), and USF&G has replied (Docket No. 594). In addition, USF&G has moved for summary judgment on Plaintiffs' claims based on the statute of limitations (Docket No. 497). Plaintiffs have opposed (Docket Nos. 547 and 549), and USF&G has replied (Docket No. 599).[2] Plaintiffs' and USF&G's motions are considered below.

Applicable Standard

<u>Summary Judgment</u>

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The moving party always bears the burden of demonstrating the absence of a material issue of fact. <u>Celotex</u>, 477 U.S. at 323. The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact. <u>Id</u>. at 323-325. Once the moving party meets this burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue of material fact. <u>Anderson v.</u>

---

[1] USF&G has moved to strike North Star's joinder of Shoreside and Metco's motion for summary judgment (Docket No. 523). North Star has opposed USF&G's motion to strike (Docket Nos. 579 and 580). USF&G has replied (Docket No. 586). In an attempt to resolve the parties' substantive motions efficiently, the Court hereby denies USF&G's motion to strike and addresses USF&G and Plaintiffs' motions herein.

North Star has moved to strike a portion of USF&G's reply brief in connection with USF&G's motion for summary judgment (Docket No. 608). North Star claims certain information in that brief is misstated. The Court notes the misstatements, which USF&G admits, and otherwise denies North Star's motion.

[2] USF&G has requested oral argument on this summary judgment motion (Docket No. 600). North Star has requested that, if oral argument is granted on this motion, issues raised in the numerous other motions filed by the parties be heard at the same time (Docket No. 601). The Court does not deem oral argument necessary to resolve the motions considered herein.

Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant. Id. When the parties submit cross-motions for summary judgment on the same claim, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them. Fair Housing Council of Riverside Country, Inc. v. Riverside Two, 249 F. 3d 1132, 1135 (9th Cir. 2001)

Alaska Tort of Bad Faith Against Sureties

Alaska recognizes a cause of action for bad faith against a surety by obligees, such as Plaintiffs here. Loyal Order of Moose, Lodge 1392 v. International Fidelity Insurance Co., 797 P.2d 622, 626 (Alaska 1990). The Miller Act does not preempt state law claims of bad faith against a surety. K-W Industries v, National Surety Corp., 855 F.2d 640, 643-4 (9th Cir. 1988).

Under Moose Lodge, "an implied covenant of good faith and fair dealing exists between a surety and its obligee on payment and performance bonds." Moose Lodge, 797 P.2d at 626. "A surety may satisfy its duty of good faith to its obligee by acting reasonably in response to a claim by its obligee, and by acting promptly to remedy or perform the principal's duties where default is clear." Id. at 628. A "failure by a surety minimally to investigate its principal's alleged default may constitute bad faith if that investigation would confirm the obligee's allegations in material part." Id.

More recently, the Alaska Supreme Court has reiterated and reaffirmed its holding in Moose Lodge as follows:

> Our holding in Loyal Order of Moose addressed payment and performance bonds
> for construction contracts. We held that sureties on those bonds owe their obligees
> a duty of good faith and fair dealing, and that breach of that duty gives rise to an

action for bad faith. We reasoned that the surety owed its obligee a duty of good faith and fair dealing because the surety relationship involved there was like insurance, and insurers are subject to bad faith tort liability.

O'Connor v. Star Ins. Co., 83 P.3d 1, 5 (Alaska 2003).

Moose Lodge and O'Connor suggest that insurance cases may be instructive in the surety area. Id. at 628 ("In our view the relationship of a surety to its obligee - and intended beneficiary - is more analogous to that of an insurer to its insured than to the relationship between an insurer and an incidental third party beneficiary."); O'Connor, 83 P.3d at 5. Since Alaska law analogizes the surety-obligee relationship to the insurer-insured relationship, cases in which an insured seeks payment from an insurer for losses the insured sustained (known as "first-party insurance cases")[3] are instructive in defining the parameters of the bad faith tort against sureties.

In Alaska, insureds may bring bad faith tort claims against their insurers if the insurer refuses to settle a first-party claim. See State Farm Fire & Co. v. Nicholson, 777 P.2d 1152, 1157 (Alaska 1989). The Ninth Circuit has stated that, to prove a claim in Alaska that an insurer acted in bad faith, a plaintiff must establish "'the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.' Hillman v. Nationwide Mut. Fire Ins. Co., 855 P.2d 1321, 1324 (Alaska 1993) (quoting Anderson v. Continental Ins. Co., 85 Wis.2d 675, 271 N.W.2d 368, 376-77 (1978))." Ace v. Aetna Life Ins. Co., 139 F.3d 1241, 1249 (9th Cir. 1998).

The Hillman case cited by the Circuit, however, explicitly avoids precisely defining the elements of the tort of bad faith in the insurance context. The Hillman court states: "We had no

---

[3] First-party insurance cases are differentiated from so called "third-party" insurance cases, which are cases in which the insured sues its insurer for the way in which the insurer handles a third-party's claim against the insured (*e.g.* when an insurer unreasonably refuses to settle a third-party's claim against the insured for an amount that is within the policy limits and thereby exposes the insured to liability for amounts over the insurance limit). W. Shernoff, S. Gage & H. Levine, Insurance Bad Faith Litigation, § 3.01 at 3-3 (2006).

occasion to comprehensively define the elements of the tort of bad faith in a first-party insurance context in Nicholson; we have not done so in subsequent cases ...; nor do we do so now." Hillman, 855 P.2d at 1323. The only definition offered by the court is that "while the tort of bad faith in first-party insurance cases may or may not require conduct which is fraudulent or deceptive, it necessarily requires that the insurance company's refusal to honor a claim be made without a reasonable basis." Id. at 1324.

The most recent Alaska Supreme Court case addressing bad faith claims in the first-party insurance context similarly declines to expand upon the elements of the tort. It does, however, affirm Hillman's holding that the first step in a bad faith analysis is to determine whether the insurer had a reasonable basis for denying the claim. See Peter v. Progressive Corp., 2006 WL 438658 *1, 6 (Alaska, Feb. 22, 2006) ("The first requirement for a bad faith tort claim against a first-party insurer is that 'the insurance company's refusal to honor a claim be made without a reasonable basis.'" (quoting and citing Hillman)).

In Hillman, an insurer was found not to have acted in bad faith where it denied a claim based upon a reasonable interpretation of the insurance contract, despite the fact that the insured presented evidence showing that the insurer did not conduct any investigation and violated internal company guidelines. Hillman, 855 P.2d at 1325. The insured's reliance on its reasonable interpretation of the contract was sufficient to defeat the bad faith claim. Id. In Peter, an insured was held not to have acted in bad faith in denying insured's claim where based on a reasonable interpretation of the terms of the policy and the applicable Alaska statute and the fact that the relative fault of the insured had not yet been determined. Peter, 2006 WL 438658 at *6.

Discussion

I.   USF&G's Motion

A.   USF&G's Argument and Evidence

USF&G appears to argue first that there can be no bad faith claim against it because (i) it has no fiduciary duties to its obligees (ii) its duties are described by and limited to the four corners of the surety bond and (iii) a bad faith claim against sureties can only be asserted defensively (e.g., a principal can allege that the surety acted in bad faith in paying out to an obligee when the surety seeks indemnity from the insurer for such payment).[4] (Docket No. 502 at 4-7).   As described above, Alaska does recognize the tort of bad faith against sureties.  The Court is unpersuaded by USF&G's legal analysis.[5]

Next, USF&G argues that, even if a bad faith claim can be brought against it by Plaintiffs, Plaintiffs have here failed to establish facts sufficient to support their claim.  (Docket No. 502, 8).  USF&G claims that Plaintiffs failed to provide documentation supporting their claims for payment, while Nugget provided "sound and valid reasoning for USF&G not to pay the bonds." (Docket No. 502 at 9).[6]  USF&G also states that it acted reasonably in pursuing to

---

[4]   USF&G cites no authority for its assertion that bad faith claims can only be used defensively, and Moose Lodge itself was a case brought by an obligee against a surety (not a case in which a principal claims bad faith).

[5]   USF&G provides, at Docket No. 613, supplemental authority in support of this position.  The authority attached is a case from the Nevada Supreme Court in which that court found that there was no bad faith tort against sureties under Nevada law.  Whether Nevada recognizes a bad faith tort against sureties or not has little apparent relevance to this case.  It is clear that the tort is recognized under Alaska law, which governs here.

[6]   In a footnote (Docket No. 502 at 9, note 2) USF&G also argues, without citing to any authority, that Plaintiffs' bad faith claim does not include a claim that USF&G failed to investigate their claim.  An allegation of bad faith against a surety includes, by its very nature, the allegation that the surety did not adequately investigate the claim (thereby making its refusal to pay on the claim unreasonable).  Interpreting the pleadings liberally, the Court finds that Plaintiffs' allegations encompass the allegation that USF&G failed to adequately investigate their claims.

litigation its defenses against Plaintiffs.[7]

Although not clearly articulated in its pleadings, USF&G's basic argument for summary judgment is that there are no material facts at issue and that, based on the undisputed facts, no rational finder of fact could conclude that its denial of Plaintiffs' claims was made without a reasonable basis.

USF&G provides various pieces of correspondence in support of its position. From this correspondence between USF&G, Nugget Construction, Inc. ("Nugget") and the Plaintiff-claimants, the following facts emerge:

Shoreside Petroleum, Inc.:

Plaintiff Shoreside Petroleum, Inc. ("Shoreside") appears to have submitted its claim to USF&G for payment on the bond on or about November 26,1997. (Docket No. 500, Ex. C at 4). On or about December 3, 1997, USF&G sent Shoreside a letter acknowledging receipt of Shoreside's claim, requesting that Shoreside complete an enclosed "Proof of Claim" form, and stating that in the interim, USF&G will continue to investigate the claim, including obtaining the principal's side of the story. (Docket No. 500, Ex. C at 4). On or about April 7, 1998, USF&G sent Shoreside a letter denying its claim on the grounds that USF&G "was unable to identify any delivery tickets which relate to the above-referenced project" and therefore was unable to verify that the materials Shoreside delivered were in fact used in the Homer Spit project covered by the bond." (Docket No. 500, Ex. C at 5). The letter also invites Shoreside to submit further evidence if it "possesses additional information which may compel a decision in the alternative". Id.

North Star Terminal & Stevedore Company:

Plaintiff North Star Terminal & Stevedore Company ("North Star") appears to have submitted a claim to USF&G for payment on the bond sometime prior to October 28, 1997. (Docket No. 500, Ex. C at 1). USF&G appears to have acknowledged receipt of the claim and requested North Star to complete a "Proof of Claim" form. Id. On or about January 28, 1998, USF&G sent a letter to North Star denying its claim on the ground that USF&G had not yet received a "Proof of Claim" form from North Star and had not been provided with sufficient documentation and information to investigate North Star's claim. Id. The letter also states, "[i]f you believe, however, that review of additional documentation or information would alter our analysis, please provide same immediately

---

[7] In support of this argument, USF&G simply cites portions of deposition transcripts in which various Plaintiff deponents state that they think it is appropriate for parties to litigate disputed claims.

to the undersigned." Id.

Metco, Inc.:

USF&G provides no evidence of how it handled Metco, Inc.'s ("Metco") claim for payment under the bond. As discussed below, Metco also fails to provide any correspondence between it and USF&G.

Nugget:

On or around December 3, 1997, USF&G sent a letter to Nugget informing Nugget that Shoreside had made a claim against the bond and requesting that Nugget provide USF&G with its written position regarding the claim within fifteen days. (Docket No. 500, Ex. C at 6). On or around March 3, 1998, Nugget's attorneys, Oles Morrison & Rinker LLP, sent a letter to USF&G outlining Nugget's defenses to Shoreside's claims and requesting that USF&G deny Shoreside's claims on the payment bond in light of those defenses. (Docket No. 500, Ex. B).

B.   Plaintiffs' Argument and Evidence

In opposition to USF&G's motion (and in support of their own motion for summary judgment), Plaintiffs argue that USF&G acted in bad faith (and continues to act in bad faith) by denying Plaintiffs' claims and aligning itself completely with the bond principal, Nugget, because (a) USF&G knew or should have known that Nugget took over the operations of Spencer Rock Products, Inc. ("Spencer") and (b) USF&G failed to adequately investigate the claims (Docket Nos. 547 and 549).

Plaintiffs attach to their motions various pieces of correspondence that establish:

On or about August 26, 1997, the U.S. Army Corps of Engineers sent a letter to Nugget, copying USF&G, that stated the Corps does "not necessarily agree that Spencer Rock Products is only a 'vendor' for Miller Act purposes," that "it appears that Nugget Construction has assumed full responsibility for operations at Spencer Quarry for the subject project," and "therefore, as primary operator at Spencer Quarry, [the Corps believes] Nugget Construction is responsible for prompt payment to suppliers and subcontractors who contracted with Spencer Rock Products on this project."(Docket No. 547, Ex. 2 at 29).

On or about February 13, 1998, USF&G tendered its defenses to Nugget and reiterated Nugget's obligation to indemnify USF&G for any losses it might sustain. (Docket No. 547, Ex. 2 at 31-34).

On or about March 12, 1998, the President of Chugach Rock Corporation, another claimant under the surety bond, sent a letter to USF&G detailing it's observation of Nugget's activities at the Spencer Quarry and attaching (i) the Support Agreement between Nugget and Spencer and (ii) an assignment of stock agreement whereby Spencer granted Nugget manager L.D. Randolph a 20% interest in Spencer. (Docket No. 547, Ex. 2 at 23-28).

C.  Discussion

USF&G has presented evidence that it investigated Shoreside and North Star's claims.[8] It has presented evidence that it contacted Nugget as part of that investigation, and received from Nugget's attorneys a detailed explanation of Nugget's legal defenses to Plaintiffs' claims. USF&G has met its initial burden of demonstrating an absence of material issues of fact regarding Plaintiffs' bad faith claim: it has shown that it received the claims, received input from the obligee and the principal and made a determination.

Plaintiffs have provided evidence that shows that USF&G was aware that Nugget's position was hotly contested by Plaintiffs and other claimants (such as Chugach Rock Corporation) and questioned by the U.S. Army Corps of Engineers. Plaintiffs have not put forth evidence supporting their contention that USF&G failed to investigate their claims. The only evidence the Court has before it shows that USF&G did, at least minimally, investigate the claims. Considering the evidence presented by both USF&G and Plaintiffs, it is undisputed that USF&G was aware of both Nugget's position (that is not responsible for Spencer's debt to the Plaintiffs) and Plaintiffs' position (that Nugget is responsible for that debt). It is also undisputed that USF&G made at least minimal efforts to investigate Plaintiffs' claims. Plaintiffs have failed

---

[8] No evidence is adduced as to Metco's communications with USF&G. The only Metco communications presented in this motion are Metco's letter to the U.S. Army Corps of Engineers, dated July 31, 1997 (not copied to USF&G) and the U.S. Army Corps of Engineers forwarding of that letter to Nugget on August 6, 1997. (Docket No. 570-2 at 1-3). On the facts before this court, there are no disputed issues of material fact with respect to Metco, and summary judgment is appropriate.

to raise a material issue of fact.[9]

On the evidence before the Court, USF&G is entitled to summary judgment on Plaintiffs' bad faith claim as a matter of law. Sureties in Alaska are subject to bad faith claims by their obligees. If they act reasonably in denying obligees' claims, however, they cannot be held liable for bad faith. The Alaska Supreme Court analogizes the bad faith liability of sureties to that of insurers to their insureds. O'Connor, 83 P.3d at 5; Moose Lodge, 797 P.2d at 626. The court has not indicated that surety liability extends beyond that of an insurer to a insured. Id. The Alaska Supreme Court has clearly held that insurers act reasonably where they take a defensible legal position about the extent of their liability or the interpretation of the law. See, Hillman, 855 P.2d at 1325; Peter, 2006 WL 438658 at * 6 (Alaska, Feb. 22, 2006). Whether plaintiffs are legally entitled to claim payment from Nugget (and thus USF&G) is a question about which reasonable people can disagree. (The issue has been litigated and appealed to the 9th Circuit twice.) There is nothing unreasonable about USF&G adopting the view that Plaintiffs are not entitled to payment under the surety bond. Taking that position necessarily entails denying Plaintiffs claims. Here, USF&G has a reasonable basis to deny Plaintiffs' claims.

II.     Plaintiffs' Motion

The Court has considered Plaintiffs' motion for summary judgment on their bad faith claim. Plaintiffs set forth virtually the same evidence in support of their motion as they do in opposition to USF&G's motion. As discussed above, that evidence and argument principally

---

[9] The parties do dispute whether Plaintiffs submitted proper proofs of claim or provided USF&G with the evidence USF&G requested. (Docket No. 547 at 30-31). USF&G appears to have denied Shoreside and North Star's claims on the basis of a failure to provide adequate information (Docket No. 500, Ex. C, 1, 5). These denials, however, explicitly invite North Star and Shoreside to submit further evidence in support of their claim. Id. As the correspondence between Chugach and USF&G shows, a dialogue was possible. (Docket No. 500, Ex. C at 7-9). Regardless of its initially expressed reasons for denying the claims, USF&G acted (and is acting) reasonably in denying Plaintiffs' claims on the basis of the legitimate debate surrounding Plaintiffs entitlement to coverage under the Miller Act bond.

supports their case in chief against Nugget - namely that because of Nugget's actions with respect to Spencer, Spencer should be treated as a strawman or extension of Nugget, and Nugget and USF&G are liable to them under the Miller Act bond. None of this evidence shows USF&G's bad faith, nor does the fact that USF&G was aware of Plaintiffs' arguments at the time it initially evaluated the claims.

III.   USF&G's Statute of Limitation Motion

USF&G has moved for summary judgment on the ground that the Plaintiffs' bad faith claim against it is barred by the statute of limitations (Docket No. 497).[10] USF&G's motion is denied as moot in light of this Decision and Order.

IV.   USF&G's Motion for Summary Judgment on Punitive Damages Claim

USF&G has moved for summary judgment on Plaintiffs' punitive damages claim (Docket No. 496). The motion applies only to punitive damages associated with Plaintiffs' bad faith claim against USF&G. This Decision and Order dismisses Plaintiffs' bad faith claim. USF&G's motion is thus denied as moot.

---

[10] Plaintiffs oppose, arguing that (i) since USF&G has not asserted an affirmative defense based on the statute of limitations and has not moved the Court for permission to amend its pleadings, it cannot move for summary judgment on statute of limitations grounds (Docket No. 457 at 2-5); (ii) USF&G cannot move on behalf of Nugget, which it does not represent (and which has not joined USF&G's motion); and (iii) since the motion is made by USF&G's bad faith counsel, and not counsel representing USF&G (and Nugget) as to all other claims, the motion, if considered, should apply only to the bad faith claim. Nugget has not joined in USF&G's motion. The Court hereby limits USF&G's motion to a motion for summary judgment on Plaintiffs' bad faith claim against USF&G only.

<u>Conclusion</u>

For the foregoing reasons (i) the parties' motions for oral argument (Docket Nos. 600 and 601) are **DENIED**; (ii) USF&G's motion to strike North Star's joinder of Shoreside and Metco's motion for summary judgment (Docket No. 523) is **DENIED**; (iii) North Star's motion to strike a portion of USF&G's reply brief on USF&G's summary judgment motion (Docket No. 608) is **DENIED**; (iv) USF&G's motion for summary judgment on Plaintiffs' bad faith claim (Docket No. 500) is **GRANTED**; (v) Plaintiffs' motion for summary judgment on their bad faith claim against USF&G (Docket Nos. 509 and 519) is **DENIED**; (vi) USF&G's motion for summary judgment on statute of limitations grounds (Docket No. 497) is **DENIED AS MOOT**; and (vii) USF&G's motion for summary judgment on Plaintiffs' punitive damages claim (Docket No. 496) is **DENIED AS MOOT**.

Dated at Anchorage, Alaska, this 28th day of July, 2006.

/s/ Timothy Burgess
Timothy M. Burgess
United States District Judge