IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, on its own behalf, | Case No. 3:98-cv-9  TMB |
| Plaintiffs, | |
| and | |
| UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a MARATHON FUEL SERVICE, and SHORESIDE PETROLEUM, INC., d/b/a MARATHON FUEL SERVICE, on its own behalf, | ORDER DISPOSING OF PARTIES' STATE LAW SUMMARY JUDGMENT MOTIONS |
| Intervening Plaintiffs, | |
| and | |
| METCO, INC. | |
| Intervening Plaintiff, | |
| vs. | |
| NUGGET CONSTRUCTION, INC., SPENCER ROCK PRODUCTS, INC., UNITED STATES FIDELITY AND GUARANTY COMPANY, and ROBERT A. LAPORE, | |
| Defendants. | |

Motions Presented

Defendants Nugget Construction, Inc. ("Nugget") and United States Fidelity & Guaranty

Company ("USF&G") have moved for summary judgment on the state law claims asserted by

1

Plaintiffs North Star Terminal & Stevedore Company ("North Star"), Shoreside Petroleum, Inc. ("Shoreside") and Metco, Inc. ("Metco").[1]  Each Plaintiff has opposed.[2]  Defendants have replied.[3]

North Star has cross-moved for summary judgment on some of its state law claims.[4] Defendants have opposed.[5]  North Star has replied.[6]

Shoreside and Metco have moved for what appears to be summary judgment on all their claims.[7]  North Star has joined that motion.[8]  Defendants have opposed.[9]  Plaintiffs have replied.[10]

North Star, joined by Shoreside and Metco, has also moved for summary judgment against Defendants on the issue of contract by agency.[11]  Defendants have opposed.[12]  Plaintiffs

---

[1]  Docket Nos. 476, 480, 488.

[2]  Docket Nos. 535, 525.

[3]  Docket Nos. 603, 558.

[4]  Docket No. 534 and 537.

[5]  Docket No. 603.

[6]  Docket No. 614.

[7]  Docket No. 507.

[8]  Docket No. 518, 521.

[9]  Docket No. 538.

[10]  Docket No. 583.

[11]  Docket Nos. 504 (North Star's motion), 552 (Shoreside and Metco's joinder).

[12]  Docket No. 544.

have replied.[13]  USF&G has requested oral argument on this summary judgment motion.[14]  North

Star has requested that, if oral argument is granted on this motion, issues raised in the numerous

other motions filed by the parties be heard at the same time.[15]  Shoreside and Metco have

separately requested that oral argument be heard on all issues raised in the parties' many

motions.[16]

<u>Applicable Standard</u>

Summary judgment is appropriate if no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 323 (1986).  The moving party always bears the burden of demonstrating

the absence of a material issue of fact.  <u>Celotex</u>, 477 U.S. at 323.  The moving party need not

present evidence; it need only point out the lack of any genuine dispute as to material fact.  <u>Id</u>. at

323-325.  Once the moving party meets this burden, the non-moving party must set forth

evidence of specific facts showing the existence of a genuine issue of  material fact.  <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).  All evidence presented by the non-movant

must be believed for purposes of summary judgment, and all justifiable inferences must be

drawn in favor of the non-movant.  <u>Id.</u>  When the parties submit cross-motions for summary

judgment on the same claim, the court must consider the appropriate evidentiary material

identified and submitted in support of both motions, and in opposition to both motions, before

---

[13]    Docket No. 605.

[14]    Docket No. 529, 531.

[15]    Docket No. 533.

[16]    Docket No. 553.

3

ruling on each of them.  <u>Fair Housing Council of Riverside Country, Inc. v. Riverside Two</u>, 249

F. 3d 1132, 1135 (9th Cir. 2001).

Facts

The facts underlying this protracted litigation are thoroughly laid out in this Court's prior

summary judgment order at Docket No. 310 and in <u>North Star Terminal & Stevedore, Co.  et al.</u>

<u>v. Nugget Construction, Inc. et al.</u>, Slip Op. No. 02-35887 at 4 (9th Cir., March 3, 2005) (the

"Ninth Circuit Opinion").  Briefly, the following facts relative to these motions are undisputed:

- On or about September 28, 1996, Nugget contracted with the U.S. Army Corps of Engineers to extend a rock revetment along the Homer Spit Road in Homer, Alaska.

- On or about September 28, 1996, USF&G executed and delivered to the United States a Miller Act bond for the protection of all persons and companies supplying labor and materials in connection with the Homer Spit project.

- On or about January 15, 1997, Nugget entered into a contract with Spencer to provide stone material for the project.

- In the winter of 1996/97, Spencer entered into (i) a contract with North Star to perform stevedoring operations in loading the rock onto Nugget's barges and (ii) a contract with Shoreside to provide fuel and lubricant for Spencer's quarrying operation.

- In May 1997 Spencer entered into a contract with Metco to assist with unloading and stacking the rock at the dock so that North Star could load it onto the barges.

- On or about April 23, 1997, Nugget and Spencer entered into a support agreement wherein Nugget agreed to provide labor and equipment to Spencer to assist Spencer in meeting its obligations under its original contract with Nugget in exchange for monetary deductions from amounts Nugget owed Spencer for performance under the original contract.

- Nugget instructed Spencer to keep the support agreement secret, and North Star, Shoreside and Metco were not told about its existence.

- Nugget's employee, Lynn D. Randolph, directed the loading of rock onto

4

Nugget's barges.  Nugget also started performing some of Spencer's functions in operating Spencer's quarry.

•    Spencer was not paid for any services to Nugget after April 19, 1997.  Nugget withheld payments from Spencer in order to pay itself under the support agreement (these withholdings are known as "back charges").

•    Spencer did not pay North Star, Shoreside or Metco for the material and labor they supplied on the Homer Spit project.

•    Nugget did not pay North Star, Shoreside or Metco for the material and labor they supplied on the Homer Spit project.

Facts concerning the extent to which Nugget interacted directly with the Plaintiffs and the extent to which Nugget took over the operations of the Spencer quarry are disputed.  The Ninth Circuit has ruled that the facts in dispute prevent summary judgment on Plaintiffs' Miller Act claims.  Ninth Circuit Opinion at 6.

Discussion

The Court addresses below (i) Defendants' motion for summary judgment on Plaintiffs' state law causes of action; (ii) North Star's cross-motion for summary judgment on its unjust enrichment, quasi-contract and quantum meruit claims; (iii) Plaintiffs' motion for summary judgment on their contract by agency claim; and (iv) Plaintiffs' motion for summary judgment on all claims.

Express Contract:

Plaintiffs contend that an express contractual relationship existed between them and Nugget because of Nugget's alleged take-over of Spencer, with which Plaintiffs contracted.[17] Plaintiffs make this argument in a number of different pleadings.  They move for summary

_____

[17]    Docket Nos. 406 at 12, 407 at 11-12, 409 at 13-14; Docket Nos. 535 at 14, 525 at 24-25, 504 at 3.

5

judgment based on contract by agency[18] and oppose Defendants' motion for summary judgment

on their agency and express contract claims.[19]  Defendants' principal argument in support of their

motion for summary judgment is that the Ninth Circuit has held that Plaintiffs "never entered

into express contracts with Nugget."  Ninth Circuit Opinion at 4.[20]  Defendants make their

argument in a number of pleadings.  They themselves move for summary judgment on Plaintiffs'

express contract and agency claims[21] and oppose Plaintiffs' separate contract by agency

summary judgment motion.[22]

When read in context, the Ninth Circuit holding upon which Defendants' rely is simply

that Plaintiffs never expressly contracted directly with Nugget.  Plaintiffs' contention, however,

is that Spencer became an agent or extension of Nugget, and thus assumed Spencer's express

contractual obligations to third parties, including to Plaintiffs.  Although the issue appears not to

have been directly addressed by the Alaska Supreme Court, Alaska law, following the

Restatement (Second) of Agency, holds that an undisclosed principal is generally liable to third

parties with which its agent contracts.[23]  Thus, the viability of Plaintiffs express contract claim

---

[18]     Docket Nos. 504, 552.

[19]     Docket Nos. 525, 535.

[20]     Docket Nos. 477 at 15, 481 at 17, 489 at 18.  Defendants also argue that no express contract could have been formed because there was never a meeting of the minds between Nugget and Plaintiffs.  However, it is undisputed that Spencer and Plaintiffs entered into contracts.  As discussed herein, if there is an express contract between Nugget and Plaintiffs, it is because of the contracts between Plaintiffs and Spencer.

[21]     Docket Nos. 476, 480, 488.

[22]     Docket No. 544.

[23]     The parties make much of footnote 38 of this Court's Order at Docket No. 310, wherein the Court, in analyzing Plaintiffs' Miller Act claim, stated that while it was "inclined under the circumstances to find that a principal/agent relationship existed between Nugget and Spencer by virtue of the support agreement and Nugget's subsequent control over Spencer, the court is not convinced that deeming Nugget a principal establishes a direct contractual relationship between it and Spencer's suppliers."  Docket No. 310 at 24 n. 38.  This was because

against Nugget depends upon Nugget's relationship with Spencer.

"[I]n order for an agency relationship to exist, an agent must have a power to alter the legal relations between the principal and third parties. The principal, in turn, must have the right to control the conduct of the agent with respect to matters entrusted to him." Manes v. Coats, 941 P.2d 120, 123 (Alaska 1997) (citations and quotations omitted). "Under Alaska law, an agency relation exists only if there has been a manifestation of the principal to the agent that the agent may act on his account and consent by the agent to so act." Harris v. Keys, 948 P.2d 460, 464 (Alaska 1997). The question of whether an agency relationship exists is a question of fact. Id. at 465; Manes, 941 P.2d at 123. Here, material facts necessary to determine the existence of an agency relationship, namely the extent to which Nugget assumed control over Spencer, are in

_____

"[u]nder Alaska law ... contracts entered into by an agent cannot be construed as binding an undisclosed principal." Id. (emphasis supplied) Ultimately, the Court concluded that "those questions remain unanswered," and declined to rule on Plaintiffs' agency by control claim. Id. Defendants argue that these statements preclude Plaintiffs' argument that Defendants are liable for Spencer's contractual obligations to them. Defendants' argument is unavailing. This Court previously left the issue undecided.

    Alaska courts appear not to have directly addressed the issue of whether an undisclosed principal is liable to third parties with which its agent contracts. Defendants cite two cases in support of their contention that the Alaska rule is that undisclosed principals are not liable to third parties with whom their agents contract. Jensen v. Alaska Valuation Service, Inc., 688 P.2d 161, 163 (Alaska 1984) ("An agent who makes a contact for an undisclosed or partially disclosed principal will be liable as a party to the contract."); Vienna v. Scott Wetzel Servs., Inc., 740 P.2d 447, 452 (Alaska 1987) (agent is not contractually liable to third parties when principal is disclosed). Vienna is inapposite, and Jensen holds only that an agent is liable to third parties when acting on behalf of an undisclosed principal. Neither case holds that the undisclosed principal is not liable to the third party. Defendants have not pointed to any authority, other than this Court's statement in its Order at Docket No. 310, for their contention that undisclosed principals are insulated from liability to third parties with which their agents contract.

    The Alaska Supreme Court appears to follow the Restatement (Second) of Agency. See, e.g., Manes, 941 P.2d at 124; Harris, 948 P.2d at 464; Cummins, Inc. v. Nelson, 115 P.3d 536, 542 (Alaska 2005). The Restatement takes the position that "an undisclosed principal is bound by contracts and conveyances made on his account by an agent acting within his authority, except that the principal is not bound by a contract which is under seal or which is negotiable, or upon a contract which excludes him." Restatement (Second) of Agency § 186; see also, Restatement (Second) of Agency § 322, comment a ("an undisclosed principal as well as the agent, is liable upon a contract made on his account by an agent acting within his powers..."). This Court anticipates that, if faced with the issue, the Alaska Supreme Court would hold an undisclosed principal liable upon contracts made on its account by its agent. The undisputed fact that Nugget's relationship to Spencer was undisclosed to Plaintiffs thus does not, by itself, defeat Plaintiffs' express contract through agency claim against Nugget.

dispute.  <u>See</u>, Ninth Circuit Opinion at 6.  Summary judgment is thus precluded.[24]

<u>Implied-in-Fact Contract:</u>

Plaintiffs contend that an implied-in-fact contract exists between them and Nugget, either because of their direct interactions with Nugget or through Nugget's alleged take-over of Spencer, which had explicit contracts with each of the plaintiffs.[25]  Defendants' principal argument in support of their motion for summary judgment is that Plaintiffs cannot show that there was a meeting of the minds between the parties sufficient to infer an implied-in-fact contract.[26]

Under Alaska law, "[a]n 'implied in fact' contract is grounded on the intention of the parties to form a contract; the parties' assent thereto, although unarticulated, is inferred from the surrounding facts and circumstances."  <u>Nordin Const. Co. v. City of Nome</u>, 489 P.2d 455, 464 (Alaska 1971); <u>see also</u>, <u>Reeves v. Alyeska Pipeline Service Company</u>, 926 P. 2d 1130, 1140 (Alaska 1996).  Mutual assent is a requirement for a binding contract, however, a party "cannot rely on its subjective intent to defeat the existence of a contract if its words and actions objectively and reasonably led another to believe a contract had been entered."  <u>Zeman v. Lufthansa German Airlines</u>, 699 P.2d 1274, 1281 (Alaska 1985).

Material issues of fact remain in dispute as to (i) the collusion between Nugget and

---

[24]    For the reasons articulated above, Plaintiffs' motion for summary judgment on their agency by control claims are also denied.  North Star's additional motion for summary judgment based on the theory that <u>Nugget</u> acted as <u>Spencer's</u> agent in directing the loading of its barges, made at Docket No. 535 at 47, is also denied, because material issues of fact preclude summary judgment on this claim, as well.

[25]    Docket Nos. 406 at 12, 407 at 11-12, 409 at 13-14 (complaints); Docket Nos. 535 at 14-16, 525 at 24-25 (briefs).

[26]    Docket Nos. Nos. 477 at 15-19, 481 at 17-21, 489 at 21, 603 at 12.

Spencer and (ii) Nugget's direct interactions with Plaintiffs.  See, Ninth Circuit Opinion at 6.

Whether or not Nugget's (or Spencer's) words and actions created an implied-in-fact contract

between Nugget and the Plaintiffs depends on these hotly disputed issues of material fact.

Summary judgment is thus precluded.

Promissory Estoppel:

Plaintiffs base their promissory estoppel claim against Defendants upon Nugget's

conduct, which induced them to supply material and labor during the course the Homer Spit

project.[27]  Plaintiffs identify as promises inducing their reliance:  (i) Nugget's non-disclosure of

its support agreement with Spencer and (ii) Nugget's direction of the loading of its barges

(through Mr. Randolph).[28]  Defendants' principal argument in support of their motion for

summary judgment is that Plaintiffs have not adduced any evidence that Nugget made an <u>actual</u>

<u>promise</u> to Plaintiffs which could have induced reliance.[29]

"Under Alaska law, a promissory estoppel claim has four requirements: (1) The action

induced amounts to a substantial change of position; (2) it was either actually foreseen or

reasonably foreseeable by the promisor; (3) an actual promise was made and itself induced the

action or forbearance in reliance thereon; and (4) enforcement is necessary in the interest of

justice."  <u>Reeves v. Alyeska Pipeline Serv. Co.</u>, 926 P.2d 1130, 1142 (Alaska 1996).  Unlike

some other jurisdictions, Alaska requires that the "actual promise made" by the party sought to

be estopped be "very clear" and "precise".  <u>Simpson v. Murkowski</u>, 129 P.3d 435, 442-444

---

[27]        Docket Nos. 406 at 13; 407 at 12; 409 at 15.

[28]        Docket Nos. 535 at 18-21; 525 at 25-26.

[29]        Docket Nos. 477 at 19-26, 481 at 21-28, 489 at 23-25.

(Alaska 2006); see also, Brady v. State, 965 P.2d 1, 11 (Alaska 1998); Eufemio v. Kodiak Island

Hosp., 837 P.2d 95, 103 (Alaska 1992). Where the alleged promise is not expressed in

sufficiently precise language, the promissory estoppel claim fails. Id.

      In opposition to Defendants' motion, Plaintiffs first argue that Nugget's requirement that

Spencer keep the support agreement secret constitutes a promise to the Plaintiffs that induced

them to continue to supply material and labor to Spencer.[30] Nowhere does Plaintiff explain how

the suppression of the support agreement, or the subterfuge between Nugget and Spencer,

constitutes a promise, either as to the relationship between Nugget and Spencer or as to payment

and coverage under the Miller Act bond. Absent coherent explanation by Plaintiffs, it is not

clear to this Court how Nugget's actions can constitute a promise giving rise to a promissory

estoppel claim under Alaska law. Nugget's actions with respect to Spencer may give rise to

other causes of action, but, absent a clear and precise promise to Plaintiffs, they do not give rise

to a cause of action for promissory estoppel.

      Plaintiffs next argue that the statements and actions of Mr. Randolph constitute a promise

which induced their actions.[31] The evidence to which Plaintiffs point, however, fails to show any

"actual promise" to Plaintiffs:

- North Star shows that Mr. Randolph informed North Star when the Nugget barge would arrive, instructed North Star when to load the barge, and oversaw and directed the loading of the barge. There is no evidence showing that Mr. Randolph ever promised anything to North Star through these actions, however.[32]

---

[30]    Docket No. 535 at 18-20.

[31]    Docket No. 535 at 20-21.

[32]    In addition, North Star adduces evidence that Mr. Randolph instructed it to send its invoices to
Spencer. Docket No. 491, Ex. 1, Tr. p. 55. North Star followed those instructions and sent the invoices to "Nugget
Construction Barge & Owners, c/o Spencer Rock Products, Inc." Docket No. 75, Ex. 6. Nugget's instruction to

•   Shoreside adduces evidence that it delivered gas and lubricant to Spencer on three separate occasions - in February, April and May of 1997. Shoreside interacted with Mr. Randolph, but Mr. Randolph never promised that Nugget would pay for the deliveries Shoreside made to Spencer.[33] Nevertheless, Shoreside thought that it was covered under the Miller Act bond and that, should Spencer fail to pay, it would have recourse to Nugget or the payment bond.

•   Metco adduces evidence that it assisted in unloading rock at the Alaska Railroad dock during May and June 1997, for which it billed Spencer. Metco also interacted with Mr. Randolph, who encouraged Metco to continue providing services to Spencer. However, Mr. Randolph never promised that Nugget would pay for the services Metco was providing to Spencer. Nevertheless, Metco also thought that it was covered under the Miller Act bond and that, should Spencer fail to pay, it would have recourse to Nugget or the payment bond.

Plaintiffs' evidence shows only that they believed that they would be paid by Nugget or Spencer, and that they would be protected by the Miller Act bond. It does not show that Defendants made any representation or promise of such payment or coverage. In the absence of such a promise, this evidence does not adequately support Plaintiffs' promissory estoppel claim. Summary judgment in favor of Defendants is thus appropriate.

Detrimental Reliance:

Plaintiffs base their detrimental reliance claim against Defendants upon the same conduct upon which they base their promissory estoppel claim.[34] Defendants' principal argument in support of their motion for summary judgment is that Plaintiffs have not adduced any evidence

---

North Star to send invoices to Spencer does not constitute a "very clear" or "precise" promise of Nugget's and Spencer's relationship, payment by Nugget or coverage under the Miller Act bond.

[33]     In June, 1997, after the three deliveries at issue, Nugget contacted Shoreside and told Shoreside that Nugget, not Shoreside, would accept delivery of and pay for future deliveries by Shoreside. Those subsequent deliveries are not in dispute here.

[34]     Docket Nos. 406 at 14; 407 at 114-15; 409 at 17-18; 525 at 26; 535 at 21-23.

that Nugget made any promises to Plaintiffs.[35]

The elements of a detrimental reliance/equitable estoppel claim are "(1) assertion of a position by conduct or word, (2) reasonable reliance thereon, and (3) resulting prejudice." Ogar v. City of Haines, 51 P.2d 333, 335 (Alaska 2002); see also, Marathon Oil Co. v. ARCO Alaska, Inc., 972 P.2d 595, 604 (Alaska 1999); Municipality of Anchorage v. Schneider, 685 P.2d 94, 97 (Alaska 1984). The estoppel will be enforced only to the extent that justice requires. Id. The Alaska Supreme Court has explained that:

> The primary difference between promissory and equitable estoppels is that the former is offensive, and can be used for affirmative enforcement of a promise, whereas the latter is defensive, and can be used only for preventing the opposing party from raising a particular claim or defense. Despite this important difference, relevant analogies can be drawn between the two doctrines, since equitable estoppel involves proof of elements similar to the elements of a promissory estoppel claim.

> James v. State, 815 P.2d 352, 356 (Alaska 1991); see also, Simpson, 129 P.3d at 440, n.18.

Plaintiffs' claim for detrimental reliance/equitable estoppel appears to be the flip side of their promissory estoppel claim - the later seeks to enforce an alleged promise by Defendants that Plaintiffs would be paid, the former to prevent Defendants from now claiming that they are not required to pay Plaintiffs. As discussed above, Plaintiffs have failed to raise issues of material fact that Defendants asserted a position by conduct or words.[36] Nugget's visible involvement in the Homer Spit project - its direction of the loading of its barge and its activities at the Spencer quarry - do not, without more, indicate a promise that Nugget would pay Plaintiffs for their

---

[35]    Docket Nos. Nos. 477 at 19-26, 481 at 21-28, 489 at 24-30; 603 at 16-17.

[36]    Plaintiffs have not provided any authority suggesting that the promise required for an equitable estoppel/detrimental reliance claim need be any less precise or clear than that required for a promissory estoppel claim.

materials and labor or that Plaintiffs were covered under the Miller Act bond.  Summary

judgment for Defendants is appropriate on Plaintiffs detrimental reliance/equitable estoppel

claim.

Misrepresentation and Non-Disclosure:

      Plaintiffs base their misrepresentation and non-disclosure claims on Nugget's failure to

disclose the support agreement, the details of its relationship with Spencer, the reach of the

payment bond, and Nugget's back charges to Spencer.[37]  Defendants' argue in support of their

summary judgment motion that they were under no duty to disclose the existence of the support

agreement or the back charges they made to Spencer, and therefore cannot be liable for

misrepresentation or non-disclosure.[38]

      The elements of a cause of action for knowing misrepresentation under Alaska law, are a

false representation of fact, scienter, intention to induce reliance, justifiable reliance, and

damages.  Barber v. National Bank of Alaska, 815 P.2d 857, 862 (Alaska 1991) (citing

Restatement (Second) of Torts); Anchorage Chrysler Center, Inc. v. DaimlerChrysler Corp.,129

P.3d 905, 914 (Alaska 2006).  The elements of negligent misrepresentation under Alaska law are

that "(1) the party accused of the misrepresentation must have made the statement in the course

of his business, profession or employment, or in any other transaction in which he has a

pecuniary interest, (2) the representation must supply false information, (3) there must be

justifiable reliance on the false information supplied, and (4) the accused party must have failed

to exercise reasonable care or competence in obtaining or communicating the information."

---

[37]      Docket No. 406 at 16-17; Docket No. 407 at 16; Docket No. 409 at 20 [BRIEFS].

[38]      Docket Nos. 477 at 19-26, 481 at 21-28, 489 at 25-29; 603 at 16-17.

<u>Reeves v. Alyeska Pipeline Service Co.</u>, 56 P.3d 660 (2002), 670 -671 (Alaska 2002) (citations and quotations omitted).  An omission can constitute a false statement where there is a duty to disclose.  <u>Hagans, Brown & Gibbs v. First Nat. Bank of Anchorage</u>, 810 P.2d 1015, 1019 (Alaska 1991).  A duty to disclose may, as Plaintiffs contend, arise "when facts are concealed or unlikely to be discovered because of the special relationship between the parties, the course of their dealings, or the nature of the fact itself."  <u>Id.</u>[39]

    As discussed above in connection with Plaintiffs' promissory estoppel and detrimental reliance/equitable estoppel claims, Plaintiffs have failed to present any evidence that Defendants made affirmative false representations of fact.  Plaintiffs instead argue that Defendants' omissions constitute false statements, because Defendants had a duty to disclose the relationship between Nugget and Spencer, including the support agreement and the back charges.  That alleged duty stems from the fact that the relationship between the two was unlikely to be discovered because of (i) Plaintiffs' special relationship with Nugget, (ii) their prior course of

---

[39]    "The Restatement (Second) of Torts suggests that a duty to disclose will arise in five situations. Section 551(2) provides:

    One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

    (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
    (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
    (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
    (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
    (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

    <u>Matthews</u>, 746 P.2d at 472.

dealing with Nugget, or (iii) the nature of the fact itself.  First, Plaintiffs and Nugget did not

share a special relationship.  They were parties dealing at arms length in a business transaction.

"A duty to disclose is rarely imposed where the parties deal at arm's length."  Matthews v.

Kincaid, 746 P.2d 470, 472 (Alaska 1987) (citing Restatement (Second) of Torts); Valdez

Fisheries Development Ass'n, Inc. v. Alyeska Pipeline Service Co., 45 P.3d 657, 672 (Alaska

2002).  Second, Plaintiffs have failed to show that the parties' prior course of dealing created a

duty to disclose.  Third, Plaintiffs fail to articulate how the nature of the fact withheld, namely

the extent of Nugget's interaction with Spencer, itself created a duty to disclose, nor do they cite

authority suggesting that Alaska would impose such a duty here.  Since Plaintiffs have failed to

identify a false or misleading representation by Nugget, and have failed to identify a duty to

disclose the extent of the interactions between Nugget and Spencer, summary judgment for

Defendants on Plaintiffs' misrepresentation claim is appropriate.

Negligence:

     Plaintiffs claim that Defendants' owed them a duty of care, which they breached by

entering into the support agreement and taking over Spencer and by failing to disclose those

actions to Plaintiffs.[40]  Defendants argue in support of their summary judgment motion that they

do not owe Plaintiffs a duty of care, because their relationship to Plaintiffs is that of a prime

contractor to second-tier vendors.[41]

     "The initial step in deciding whether an action for negligence can be maintained is to

---

[40]     Docket No. 406 at 17; Docket No. 407 at 16; Docket No. 409 at 21.

[41]      Docket Nos. 477 at 26-32, 481 at 29-35, 489 at 30-35.

consider whether a duty exists." <u>Mesiar v. Heckman</u>, 964 P.2d 445, 448 (Alaska 1998).  The

Alaska Supreme Court has stated that "[i]n deciding whether a defendant owes a plaintiff a duty

of reasonable care, we first determine whether a duty is imposed by statute, regulation, contract,

undertaking, the parties' preexisting relationship, or existing case law." <u>McGrew v. State Dept.</u>

<u>of Health and Social Services, Div. of Family and Youth Services</u>, 106 P.3d 319, 322 (Alaska

2005).  If these sources do not resolve the issue, Alaska applies a multi-factor approach to

determine whether an actionable duty of care exists. <u>Id.</u>; <u>see</u>, <u>Kooly v. State of Alaska</u>, 958 P.2d

1106, 1108 (Alaska 1998).  These factors are: "[1] The foreseeability of harm to the plaintiff, [2]

the degree of certainty that the plaintiff suffered injury, [3] the closeness of the connection

between the defendant's conduct and the injury suffered, [4] the moral blame attached to the

defendant's conduct, [5] the policy of preventing future harm, [6] the extent of the burden to the

defendant and consequences to the community of imposing a duty to exercise care with resulting

liability for breach, and [7] the availability, cost and prevalence of insurance for the risk

involved." <u>Kooly</u>, 958 P.2d at 1108.

        Defendants argue that they did not owe Plaintiffs a duty of care.  In response, Plaintiffs

have failed to identify any statute or case law that imposes upon Nugget a duty of care toward

them.  Plaintiffs present no authority for their argument that Defendants' potential liability under

the Miller Act or the federal Prompt Pay Act itself <u>gives rise to</u> an Alaska state law cause of

action in negligence - the cases Plaintiffs cite stand only for the proposition that these federal

claims do not preclude state law claims. <u>See</u> <u>K-W Industries v. National Surety Corporation</u>,

855 F. 2d 640, 642-43 (9th Cir. 1988).  Plaintiffs also fail to identify any Alaska case law creating

a duty in this situation.[42]

Finally, the Court is not convinced that Alaska courts would impose a duty of care in the situation presented here.  The relationships between the parties here are governed, at bottom, by contract.  Nugget's liability to Plaintiffs, if any, arises from Spencer's contracts with Plaintiffs. Nugget may be liable to Plaintiffs under those contracts because it made Spencer its agent or strawman.  Plaintiffs' evidence of the subterfuge and collusion between Nugget and Spencer goes toward whether Spencer did, in fact, become an agent or strawman.  As the Alaska Supreme Court has stated, "[p]romises set forth in a contract must be enforced by an action on that contract."  Alaska Pacific Assur. Co. v. Collins, 794 P.2d 936, 946 -947 (Alaska 1990). Absent their contracts with Spencer, and Nugget's alleged take-over of Spencer, Plaintiffs would not have cause to seek recovery from Nugget.  Because Plaintiffs have failed to show that Nugget owed them a duty of care in tort, summary judgment for Defendants on Plaintiffs' negligence claim is appropriate.

This Court has held by separate decision and order that USF&G acted reasonably in denying Plaintiffs' claims for payment under the Miller Act bond.  Summary judgment for USF&G on Plaintiffs' negligence claim is thus also appropriate.

---

[42]     Plaintiffs cite to Mattingly v. Sheldon Jackson College, 743 P.2d 356, 360 (Alaska 1987), which held that a "defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury or property damage, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty."  Mattingly v. Sheldon Jackson College, 743 P.2d 356, 360 (Alaska 1987). Mattingly, however, stands for the proposition that a party that is only economically injured can nonetheless sue for negligence, so long as a duty exists.  It defines the parameters of an existing duty and does not, as Plaintiffs imply, impose a new duty where there otherwise would be none.

<u>Tortious Interference</u>

Plaintiff North Star alleges that Nugget tortiously interfered with its contract with Spencer by taking over control of Spencer and back charging the company.[43]  In support of their summary judgment motion, Defendants' argue that North Star has failed to adduce evidence to support its tortious interference claim.[44]

The elements of the tort of intentional interference with contractual relations are: "Proof that (1) a contract existed, (2) the defendant knew of the contract and intended to induce a breach, (3) the contract was breached, (4) defendant's wrongful conduct engendered the breach, (5) the breach caused the plaintiff's damages, and (6) the defendant's conduct was not privileged or justified.  The fourth, fifth, and sixth elements also apply to the related tort of intentional interference with prospective economic advantage."  <u>RAN Corp. v. Hudesman</u>, 823 P.2d 646, 648 (Alaska 1991) (citations and quotations omitted).  The sixth element of tortious interference has been defined in Alaska as follows: "where an actor has a direct financial interest, he is privileged to interfere with a contract for economic reasons, but not where he is motivated by spite, malice, or some other improper objective."  <u>Id.</u>

It is undisputed that a contract existed between Spencer and North Star, that Nugget knew about the contract, that the contract was breached, and that the breach damaged North Star. Material issues of fact surround the remaining two elements of North Star's tortious interference claim, namely whether Nugget's conduct caused Spencer's breach and whether Nugget's actions were privileged or justified.  Ninth Circuit Opinion at 6.  Both of these elements depend upon the

---

[43]     Docket No. 409 at 21-22.

[44]     Docket No. 603 at 33-36.

extent of the alleged subterfuge and collusion between Nugget and Spencer. Summary judgment
is thus precluded.

Unjust Enrichment, Quasi-Contract and Quantum Meruit Claims

Plaintiffs assert claims of unjust enrichment, quasi-contract and quantum meruit against
Defendants.[45] Defendants have moved for summary judgment, arguing that Plaintiffs have not
presented any evidence in support of their claims.[46] Plaintiff North Star has cross-moved for
summary judgment.[47]

The parties agree that Alaska law treats claims of unjust enrichment, quasi-contract and
quantum meruit claims similarly. Alaska Sales & Services, Inc v. Millet, 735 P.2d 743, 746 n.6
(Alaska 1987). The parties also agree on the elements of these claims: (1) a benefit conferred to
defendant, (2) appreciation by defendant of that benefit; and (3) inequity of allowing defendant
to retain the benefit without paying value therefor. Reeves v. Alyseka Pipeline Serv. Co., 926
P.2d 1130, 1143 (Alaska 1996).

Disputed material facts preclude summary judgment for either Defendants or North Star
on Plaintiffs' claims of unjust enrichment, quasi-contract and quantum meruit claims. Each of
the elements that make up the claims - Nugget's receipt of a benefit, Nugget's appreciation of
that benefit, and the inequity of allowing Nugget to retain the benefit - depend upon the
relationship between Nugget and Spencer. The nature of that relationship, in turn, depends upon
the extent of the alleged subterfuge and collusion between Nugget and Spencer. Those facts are

---

[45]       Docket Nos. 406 at 13, 15-16; 407 at 13-16; 409 at 16, 18-20.

[46]       Docket Nos. 477 at 32-35; 481 at 34-37489 at 35-38.

[47]       Docket No. 535 at 37-41.

in dispute.  Ninth Circuit Opinion at 6.  Consequently, summary judgment is unavailable.

Equitable Subordination and Constructive Trust:

Plaintiffs assert claims of equitable subordination and constructive trust.[48]  Defendants

have moved for summary judgment, arguing that Plaintiffs have not presented any evidence in

support of their claims.[49]

Equitable subordination, whereby a court alters the pre-existing priorities among

creditors, has been recognized in Alaska to apply outside of the bankruptcy context in situations

of "fraud, unfairness, or breach of the rules of 'fair play."  Nerox Power Systems, Inc. v. M-B

Contracting Co., Inc., 54 P.3d 791, 795 (Alaska 2002).  "In Alaska a constructive trust is

appropriate to prevent unjust enrichment, defined as the retention of property through unjust,

unconscionable, or unlawful means."  Rausch v. Devine, 80 P.3d 733, 744 (Alaska 2003); State

Farm Auto. Ins. Co. v. Raymer, 977 P.2d 706, 712 (Alaska 1999).

Disputed issues of material fact preclude summary judgment for Defendants on

Plaintiffs' claims of equitable subordination and constructive trust.  Resolution of the claims

depends upon the disputed material issues of fact surrounding the extent of the alleged

subterfuge and collusion between Nugget and Spencer.  Summary judgment is not available.

---

[48]        Docket Nos. 406 at 17-19; 407 at 17-18; 409 at 22-24.

[49]        Docket Nos. 477 at 32-35; 481 at 34-37, 489 at 35-38.

Agency

Defendant has moved for summary judgment on Plaintiffs' agency claims; North Star has cross-moved, and all Plaintiffs have filed a separate summary judgment motion on the issue.[50] As discussed above, disputed material issues of fact preclude summary judgment for either party.

Punitive Damages:

Plaintiffs assert claims for punitive damages in an amount of $1,000,000.[51] Defendants move for summary judgment on Plaintiffs' punitive damage claims, arguing that Plaintiffs have not put forth any factual allegations to support their punitive damages claims.[52]

Under Alaska law, a plaintiff seeking punitive damages must "prove by clear and convincing evidence that the defendant's conduct was outrageous, such as acts done with malice, bad motive, or reckless indifference to the interest of another." Lee Houston & Assocs. v. Racine, 806 P.2d 848, 856 (Alaska 1991). As Defendants' themselves acknowledge in their briefing, "whether malice is present is a question of fact, and the trier of fact is given broad discretion to grant or withhold punitive damages." Docket No. 489 at 46; Haskins v. Sheldon, 558 P.2d 487, 494 (Alaska 1976).

The Alaska Supreme Court has consistently held that punitive damages are not recoverable for breach of contract unless the conduct constituting the breach constitutes an independent tort. Lee Houston & Associates, Ltd. v. Racine, 806 P.2d 848, 856 (Alaska 1991)

---

[50]     Docket Nos. 489 at 39-44, 535 at 43-47, 504.

[51]     Docket Nos. 406 at 19-20; 407 at 19; 409 at 24.

[52]     Docket Nos. 477 at 41-45, 481 at 44-48, 489 at 44-47.

(citing <u>ARCO Alaska, Inc. v. Akers</u>, 753 P.2d 1150, 1153 (Alaska 1988)).  Plaintiffs advance three separate tort claims, namely negligence, misrepresentation and tortious interference.[53]  The Court herein grants summary judgment in favor of Defendants on Plaintiffs' negligence and misrepresentation claims.  North Star's tortious interference claim against Nugget, however, cannot be disposed of on summary judgment.

Whether Nugget's conduct was sufficiently outrageous or malicious to warrant punitive damages depends upon material issues of fact that remain in dispute - namely on the extent of the subterfuge and collusion between Nugget and Spencer.  Summary judgment on North Star's punitive damages claim is thus precluded.  Summary judgment on Metco and Shoreside's punitive damages claims is appropriate.

<u>Plaintiffs' Motion For Summary Judgment</u>

Plaintiffs have made a separate motion that appears to request summary judgment on their state law and Miller Act claims.[54]  With respect to Plaintiffs' state law claims, Plaintiffs' motion is denied for the reasons articulated above.  With respect to Plaintiffs' Miller Act claims, summary judgment is precluded by the previous Ninth Circuit opinions in this case and the fact that Plaintiffs have presented no new evidence in support of their summary judgment motion.

---

[53]    <u>See, also</u>, Docket No. 535 at 46 n. 39 (Plaintiffs limit punitive damages claims to their tort claims).

[54]    Docket No. 507.

<u>Conclusion</u>

For the foregoing reasons, (i) Defendants' motions for summary judgment on Plaintiffs' state law claims (Docket Nos. 476, 480 and 488) are **DENIED IN PART** and **GRANTED IN PART**; (ii) North Star's summary judgment cross-motion (Docket Nos. 534 and 537) is **DENIED**; (iii) Plaintiffs' motions for summary judgment on the issue of contract by agency (Docket Nos. 504 and 552) are **DENIED**; (iv) Plaintiffs' motions for summary judgment on all their claims (Docket Nos. 507, 518 and 521) are **DENIED**; and (v) the parties various motions for oral argument (Docket Nos. 529, 531, 533, 553) are **DENIED**.  Plaintiffs' remaining state law claims are: (i) express contract; (ii) implied-in-fact contract; (iii) unjust enrichment, quasi-contract and quantum meruit; (iv) equitable subordination and constructive trust; and (v) North Star's tortious interference claim.

Dated at Anchorage, Alaska, this 28th day of July, 2006.

/s/ Timothy Burgess
Timothy M. Burgess
United States District Judge
