Michael W. Sewright
BURR, PEASE & KURTZ
810 N Street
Anchorage, AK  99501-3293
Telephone:      (907) 276-6100
Fax No.:           (907) 258-2530
Attorneys for North Star

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>                    Plaintiffs,<br>       and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf,<br><br>                    Intervening Plaintiffs,<br>       and<br><br>METCO, INC.,<br><br>                    Intervening Plaintiff,<br>       vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>                    Defendants. | Case No. 3:98-cv-009-TMB<br><br><br><br><br><br>**NORTH STAR'S MOTION FOR RECONSIDERATION OF ORDER DISPOSING OF PARTIES' BAD FAITH SUMMARY JUDGMENT MOTIONS (DOCKET NO. 635)**<br>[D. Ak. L.R.  59.1] |

Plaintiff/Use Plaintiff North Star Terminal & Stevedore Company ("North Star") respectfully requests reconsideration of the Court's Order Disposing of Parties' Bad Faith Summary Judgment Motions (Docket No. 635). That Order granted summary judgment to defendant United States Fidelity & Guaranty Company ("USF&G") upon the plaintiffs' bad faith claims against USF&G. The Court is hereby requested to deny USF&G summary judgment upon that issue due to (1) material matters overlooked in the Court's decision and (2) the desirability of reserving judgment on the issue pending other developments material to its determination, including determination of the issue of whether USF&G is indeed liable to the use plaintiffs under the payment bond.

The Court's Order granting USF&G summary judgment upon these claims appears to be based upon the following assumptions: that a surety acts reasonably as a matter of law by discontinuing investigation of the bonded claim and denying that claim if it initially made inquiry, however minimal, and so long as USF&G, under the circumstances of this case, has some "defensible" basis for continuing to deny or fail to settle those claims even nine years later. Docket No. 635 at 9-10. The Court is requested to reconsider those assumptions and its Order based on them.

The Order relies in large part (*id.* at 5, 10) upon an Alaska Supreme Court memorandum decision, *Peter v. Progressive Corp.,* 2006 W.L. 438658 *1,6 (Alaska Feb. 22, 2006), which begins: **"THIS MEMORANDUM DECISION MAY NOT BE CITED FOR ANY PROPOSITION OF LAW, NOR AS AN EXAMPLE OF THE PROPER RESOLUTION OF ANY ISSUE."** It is respectfully submitted that memorandum decision should not be considered for purposes of determining summary judgment under Alaska law.

North Star has previously pointed out (Docket No. 547 at 24-25) that in the other Alaska case on which the Order chiefly relies the Alaska Supreme Court evidenced that the bad faith standard it favors "amounts to a negligence test" and that the question of bad faith should be withheld from the jury only "where the insurer *establishes* that no reasonable jury could regard its conduct as *unreasonable*". *Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1324-25 (Alaska 1993) (emphasis added). North Star does not contest this Court's interpretation that under *Hillman* "the first step in a bad faith analysis is to determine whether the insurer had a reasonable basis for denying the claim." Docket No. 635 at 5 (emphasis added). North Star does submit, however, that that "first step" does not end the inquiry into whether the surety/insurer

North Star's Mtn for Reconsideration of Order Disposing of
Parties' Bad Faith Summary Judgment Motions (Docket No. 635)
North Star v. Nugget, et al., Case No. 3:98-cv-009-TMB
Page 1 of 5                                                              45-40/ #85044

breached its continuing duty of good faith and fair dealing—such as by abrogating its duty to continue to act independently on its obligees' behalf by instead turning evaluation of the matter over to its principal on the bond after the surety's initial inquiry, as in this case, or by otherwise failing to act reasonably under all the circumstances.¹ North Star also disagrees that under Alaska law any "defensible" position will suffice to meet that burden, as a matter of law, against the totality of the circumstances and reasonable inferences drawn therefrom—such as USF&G's initial denial of claims over eight years ago based upon an <u>alleged</u> insufficiency of "documentation and information" actually provided to USF&G before or soon after the denial on that basis,² or where a reasonable jury could conclude that USF&G's continued denial over the

---

¹   *See* following discussion on Alaska law. *See also White v. Western Title Ins. Co.*, 710 P.2d 309, 316-19 (Cal. 1985) (holding, *inter alia*, that insurer's good faith duties continue throughout litigation against it and that bad faith liability "depends on the circumstances in each case"); *Loyal Order of Moose, Lodge 1392 v. International Fidelity Ins. Co.*, 797 P.2d 622, 627-28 n.8 (Alaska 1990) (noting the inherent conflict of interest created by a surety's split loyalties between its principal, on the one hand, and its obligees under the payment bond (these claimants), on the other hand, and emphasizing that the surety should expect little sympathy from the courts owing to that situation). Placing the principal and its attorneys in charge of the surety's case and settlement efforts, in a confidential, privileged relationship, would appear to be in conflict with the surety's independent duties toward the claimants under Alaska law. *Id.*

²   As the Court notes in footnote 9 of its Order, and as North Star demonstrated in its own recent memoranda (*e.g.*, Docket No. 547 at 25-33), it is at most disputed whether North Star provided USF&G all of the information USF&G requested in late 1997, either directly to USF&G or soon after to the Oles Morrison law firm which officially appeared for and in lieu of USF&G in January 1998. As has also been previously demonstrated, that appearance (Docket No. 6), which specified that all future communications be with that law firm, is dated **before** the denial letter to North Star dated January 28, 1998 from Ms. Poling, USF&G's claims representative stating that USF&G had not been provided with sufficient documentation and information to investigate North Star's claim. Docket No. 547 at 30-31 & No. 569 at 2-10. In fact USF&G had (and soon received much more information), just not on its "proof of claim" form. *Id.* There was also extensive production that summer of any remaining North Star documents, and cross-motions for summary judgment were filed in December 1998 containing North Star affidavits, invoices, price lists, etc. Docket Nos. 68-75. A reasonable jury could conclude that the initial correspondence between Ms. Poling and the claimants was pretextual and ceased being pertinent.

Furthermore, the evidence set out in detail in Mr. Callow's report (submitted by USF&G at Docket No. 517, Ex. A pp. 15-26), including USF&G's documented opinions and actions, and exhibits submitted in connection with Mr. Ferguson's deposition (Docket No. 547, Exh. 2), should not go unconsidered, especially upon court consideration of competing motions for

North Star's Mtn for Reconsideration of Order Disposing of
Parties' Bad Faith Summary Judgment Motions (Docket No. 635)
North Star v. Nugget, et al., Case No. 3:98-cv-009-TMB
Page 2 of 5                                                                                          45-40/ #85044

next eight years, although perhaps "defensible" in the strict sense, is **unreasonable** in the more practical or "reasonable" sense when weighed against the overall strength and merit of the claims and their value as ultimately determined by the jury and compared to the costs of the litigation to the claimants (in this case much) and to the surety (in this case little) which become incurred as a result of the surety's "defensible" position.[3]

Additional language in *Hillman* supports North Star's position on this point. Whereas the *Hillman* court stated that its bad faith inquiry "necessarily requires that the insurance company's refusal to honor a claim be made without a reasonable basis," it did not state that means **any** "defensible" basis. Instead, in a footnote to that statement the Alaska court explained its meaning in more general terms: "So long as a surety acts **reasonably** in response to a claim made by its obligee, the surety does not risk bad faith tort liability." 855 P.2d at 1324 & n.7 (emphasis added).

Furthermore, as this Court notes, in *Hillman* the material issue was whether the interpretation of the insurance contract the insurer had used to deny the Hillmans' claim was reasonable. Most notably, in making that determination both the trial court and the appellate court had the benefit already of a prior decision by the Alaska Supreme Court in that same case wherein that court had <u>agreed</u> with the insurer's interpretation of the contractual language and only failed to give it effect, by a 3 to 2 vote, "for statutory and public policy reasons." 855 P.2d at 1323, 1325-26. In other words, the relative merit of the basis for the insurer's denial of the claim had already been decided—much as would be the case if this Court allowed the jury to decide the underlying issues of (1) whether the claimants are entitled to payment under the surety bond and (2) the relative merit and "defensibility" of the position and actions of USF&G in continuing to deny those claims and refusing to settle them over the past eight years (in light of that finding), as compared to the impracticality, unreasonableness, and exorbitant expense to the claimants of those strategies decried, for example, in prior decisions of this Court in this case

---

summary judgment. Those documents and evidence, including those previously produced by USF&G (some of which are attached hereto as Exhibit 1), can certainly be admitted at trial by means other than that report determined otherwise inadmissible by the Court. Docket No. 621.

[3]   It is respectfully submitted that forcing the claimants to incur over $400,000 in legal fees and costs over the long course of nine years, after the surety could have settled the case for far less and while the surety's principal picks up the cost of the surety's defense, does not justify

North Star's Mtn for Reconsideration of Order Disposing of
Parties' Bad Faith Summary Judgment Motions (Docket No. 635)
North Star v. Nugget, et al., Case No. 3:98-cv-009-TMB
Page 3 of 5                                                    45-40/ #85044

which are a matter of public record previously brought to this Court's attention.  *See, e.g.,* Docket No. 569 at 7, n.6.  It is respectfully submitted that a reasonable jury considering that and the other evidence presented to this Court and reading all reasonable inferences therefrom in the claimant's favor, as is the test under summary judgment, could conclude that USF&G's conduct favoring protracted litigation at great expense to the claimants and abandoning its evaluation in this matter to its principal and principal's attorneys was not reasonable in the real-world sense that is the Alaska Supreme Court's standard.[4]

As the Alaska Supreme Court observed in *State Farm Fire & Casualty Co. v. Nicholson*, 777 P.2d 1152 (Alaska 1989), another decision cited in the Order, the duty of good faith and fair dealing USF&G owes these claimants arises from the "special relationship" between them and out of an awareness of "the insurer's unequal bargaining power as to the insured's claim and the insurer's interest in delaying payment in order to obtain a settlement" (or worse, an abandonment of the claim).  777 P.2d at 1156 & n.7.  In that case, as in this, it could be said that the insurer had a "defensible" basis both for at first denying the claim for over a year due to policy exclusion language and then by offering to settle the claim on the basis of an appraisal the insurer obtained which the jury ultimately found was less than the amount timely and rightly due the Nicholsons.  Notably, the issue of that "reasonableness" was presented to the jury, which awarded the Nicholsons an additional $105,700 in compensatory damages against the insurer for failure to promptly settle the claim.  777 P.2d at 1153-54, 1159.

In *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241 (9th Cir. 1998), the Ninth Circuit Court, although applying a different, stricter bad faith standard than actually applies in Alaska,[5] still

---

nonsettlement by the surety where the principal refuses to pay and could be found unreasonable.

[4]   That evidence and inferences and additional evidence and inferences which can be drawn in this case pertinent to the unreasonableness of Nugget's position, including its mulish refusal to even consider it has owed an actionable duty of good faith and fair dealing toward the claimants despite longstanding precedent to that effect, was recently presented in some detail, for example, at Docket No. 547 at 15-21 and Docket No. 569 at 15-24.  The Court is requested to reexamine that evidence.  That evidence supports the reasonable inference that USF&G's insistence that it owed duties only to its principal and not to these obligees is the real reason it has acted as it has.  *Id.*

[5]   *See* Court discussion at Docket No. 635 at 4-5 and North Star discussion at Docket No. 547 at 16-27.

North Star's Mtn for Reconsideration of Order Disposing of
Parties' Bad Faith Summary Judgment Motions (Docket No. 635)
North Star v. Nugget, et al., Case No. 3:98-cv-009-TMB
Page 4 of 5                                                          45-40/ #85044

upheld Judge Sedwick's submittal of the issue of Aetna's bad faith liability to the jury and upheld his denial of Aetna's motions for judgment notwithstanding the verdict. 139 F.3d at 1249. It agreed that there was sufficient evidence that Aetna, after initial inquiries, did not investigate the plaintiff's claim and instead shifted the burden of investigating to her, causing her damages, much as USF&G has essentially forced North Star and the other claimants to do during the course of the protracted litigation of this case.

In *K-W Industries v. National Surety Corp.*, 855 F.2d 640 (9th Cir. 1988), K-W Industries was permitted to bring a separate bad faith claim against the surety for refusing to pay K-W's claim and forcing it to bring a federal Miller Act action which the surety ultimately settled. K-W was allowed to bring the bad faith action after the surety settled with K-W on the claim against the payment bond. 855 F.2d at 641. The jury should also be allowed to determine that value in this case, where the surety continues to refuse to settle. The jury should be allowed under the law to gauge the reasonableness of that refusal in light of all the evidence and reasonable inferences which might be drawn therefrom, not just those listed in the Court's order.

This claim should be submitted to the jury for its consideration of the reasonableness of USF&G's entire actions and inactions under the total circumstances presented to the Court by the parties' motions. Among other things, if, after hearing all of the evidence, the jury finds liability on the underlying Miller Act claim and considers that liability strong, it may very well find unreasonable USF&G's unyielding position and conduct (including its offer of only $1 to all claimants upon all claims against it). It is respectfully submitted the jury should be allowed to do so, event by bifurcated trial if the Court chooses. *Cf., Ace,* 139 F.3d at 1246-47 (reversing Alaska federal district court's ruling granting judgment notwithstanding the verdict upon bad faith punitive damages claim brought under Alaska law); *White*, 710 P.2d at 317 (bifurcating issues).

Respectfully submitted at Anchorage, Alaska, on August 7, 2006.

s/ Michael W. Sewright
Burr, Pease & Kurtz
810 N Street, Anchorage, Alaska 99501
Phone: (907) 276-6100
Fax: (907) 258-2530
E-mail: bpk@bpk.com
Alaska Bar No. 7510090

North Star's Mtn for Reconsideration of Order Disposing of
Parties' Bad Faith Summary Judgment Motions (Docket No. 635)
North Star v. Nugget, et al., Case No. 3:98-cv-009-TMB
Page 5 of 5                                                          45-40/ #85044

<u>CERTIFICATE OF SERVICE</u>

I certify that on the August 7, 2006, a copy of the foregoing NORTH STAR'S MOTION FOR RECONSIDERATION was served electronically to Steven S. Shamburek, Esq., Traeger Machetanz, Esq., Paul D. Stockler, Herbert A. Viergutz, and C. Patrick Stoll, Esq.

s/ Michael W. Sewright

North Star's Mtn for Reconsideration of Order Disposing of
Parties' Bad Faith Summary Judgment Motions (Docket No. 635)
North Star v. Nugget, et al., Case No. 3:98-cv-009-TMB

45-40/ #85044