Steven J. Shamburek
Alaska Bar No. 8606063
LAW OFFICE OF STEVEN J. SHAMBUREK
425 G Street, Suite 630
Anchorage, Alaska 99501
(907) 522-5339 Direct
(907) 522-5393 Fax

Attorney for Plaintiffs
Shoreside Petroleum, Inc.,
d/b/a Marathon Fuel Service
and Metco, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>　　　　Plaintiffs,<br><br>　　and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, on its own behalf,<br><br>　　　　Intervening Plaintiffs,<br><br>　　and<br><br>METCO, INC.,<br><br>　　　　Intervening Plaintiff,<br><br>　　vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>　　　　Defendants. | **SHORESIDE'S AND METCO'S MOTION AND MEMORANDUM FOR RECONSIDERATION REGARDING BAD FAITH**<br><br><br><br><br><br><br><br><br><br><br><br><br><br>3:98-cv-0009-TMB |

1

COMES NOW Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service ("Shoreside") and Metco, Inc. ("Metco"), by and through counsel, and file this Motion For Reconsideration Regarding Bad Faith.[1]

Shoreside and Metco submit that federal and state law require a surety to do more that merely ask for information, sit passively on the sidelines, and pay a claim only if and when the principal either agrees to settle or ceases appealing the matter.[2] USF&G's exposition of what it regards as the applicable case law is revealing because USF&G states that a surety must do little more than take direction from its principal. A reasonable inference is that USF&G has done that for almost a decade. There are genuine issues of material fact whether USF&G breached the multiple duties set forth in both Alaska and federal case and statutory law. That final determination should be made by the jury, in conjunction with determining USF&G'S liability upon the bond. At that time whether USF&G acted reasonably in refusing to settle all these years can be put into proper perspective.

Although Mr. Callow will not be allowed to testify regarding his

---

[1] The Shoreside/Metco motion regarding bad faith sought summary judgment and/or a determination of law.

[2] The decision in K-W Industries v. National Surety Corp., 855 F.2d 640 (9th Cir. 1988) is revealing on this point. "Appellant K-W Industries ("K-W") alleges that after the general contractor refused to pay for materials K-W delivered for use on the Fort Peck project, K-W made a claim against National on the bond for payment. When National allegedly refused to pay the claim, K-W sued National in the United States District Court for the District of Montana. After K-W and National settled the federal court action, K-W instituted the present action against National in Montana state court. K-W alleges that National acted in bad faith in refusing to pay K-W's claim and in forcing it to bring the federal court action, and seeks compensatory and punitive damages under Montana's unfair insurance claims practices law." Id. at 641. The decision appears to control the viability of the cause of action and the two other related USF&G motions that were deemed moot. See also U.S., Walton Technology v. Westar Engineering, 290 F.3d 1199, 1206 (9th Cir. 2002) discussed at D. E. 510, p. 26. The Miller Act does not preempt state law; state law in turn requires an examination of duties under applicable state and federal law.

conclusions that USF&G acted in bad faith, his discussion in his report at D. E. No. 460 addresses additional acts of bad faith, references the record and cites the docket entry numbers of many pleadings and orders.  Some of that evidence bears on whether USF&G acted in good faith and should be considered.

The court states that Shoreside did not provide any delivery tickets in response to a request from USF&G on or about April 7, 1998.  Shoreside did provide all those tickets as an attachment to its proof of claim.  In addition, Shoreside intervened in this action on January 27, 1998 and attached some invoices to the complaint in intervention.  D. E. Nos. 4 and 9.  By that date, USF&G had allowed Oles Morrison to control the defense for both Nugget and USF&G and appears not to have reviewed the invoices it received.

The court states that Metco did not make its case because there is no evidence that it put USF&G on notice of its claim.  However, USF&G was aware of Metco's claim and did not even ask Metco to prepare and file a proof of claim.  For example, there is a copy of an e-mail from Jane Poling employed by USF&G dated 10/24/97 to Bill Wells/USFG with a courtesy copy to Bryan Martin of USFG, John Phinney/USFG with subject line: "Principal: Nugget Construction, Inc."

> Please be advised that I received a claim from underwriting on the above principal.  At this time there are the following claims:
>
>    (1)   Spencer Rock - $1,426,707.84
>    (2)   Northern Stevedoring - $124,724.98
>    (3)   Chugach Rock Corporation - $86,444.00
>    (4)   Shoreside d/b/a Marathon Fuel - $53,062.00
>    (5)   Metco — undisclosed amount
>
> **At this time, I would appreciate it if you could provide me with any information regarding whether this is an on-going account, because based on the information available to me at this time some of the defenses of the principal may be questionable**.  Also, please provide me with any status reports if you have any, and I will keep you advised of this matter as it progresses.

USF&G 001013.[3] (Emphasis added)  USF&G was aware of the Metco claim and should have requested a proof of claim.

The court also holds that North Star did not respond to the USF&G denial letter dated January 28, 1998.  By that date, however, North Star had filed its complaint in this court at D. E. No. 1 and Oles Morrison, which also represented Nugget, had already entered its appearance for USF&G on January 27, 1998, specifying that all future communications be with it.  D. E. No. 6.  North Star recently reminded the court of these facts.  D. E. No. 547 at pp. 30 - 31.  USF&G should have been concerned that a project with these many major unpaid subcontractors requires heightened attention and closer investigation.

There is nothing in the record to indicate that USF&G meaningfully reviewed the information in the proofs of claim or otherwise did anything with the substantial information in its possession.  USF&G does not state even in argument what it did or customarily does with the information it receives from a claimant.  USF&G made it difficult if not impossible to depose any of its witnesses.  Their testimony was primarily necessary on USF&G's behalf to explain what USF&G did other than summarily deny all claims and then ask for more information.

An attorney can always proffer a defense to even an air-tight claim.  The Oles Morrison letter discussing the claims presents only the arguments they intend to advance to the court in opposition to the claims.  USF&G did not require Nugget to provide any analysis of the strengths of the claims asserted by the claimants and Spencer Rock and Chugach Rock.

The Army Corps of Engineers, the agency charged with

---

[3]     A copy is attached by North Star.

4

administering the contract, provided its interpretation of the contract. Courts substantially defer to the interpretation of laws and statutes by the agency charged with administering them. By analogy, the agency interpretation of the contract should have been given more substantial weight by USF&G.[4]

The Prompt Pay Act is incorporated into the applicable case law. Title 31 CFR 223.18 requires prompt consideration and payment of Miller Act claims. The letters from the Corps of Engineers reinforce the requirement to pay claims promptly.

The August 6 and 17, 1997 letters from the Corps of Engineers remind Nugget not to request payments if it intends to withhold payments.[5] USF&G was aware of or should have been aware that Nugget was withholding payments to subcontractors while requesting progress payments from the government.

This case presents a unique fact pattern among Miller Act cases. The two recent orders do not fundamentally change the evidence to be presented at trial. The evidence to support the other Miller Act and state law claims also supports the claim of bad faith against USF&G. Shoreside and Metco believe that a rational finder of fact could conclude that USF&G's treatment and denials of North Star's, Shoreside's, Metco's, Spencer Rock's and Chugach Rock's claims were not made in good faith under the totality of the circumstances.[6]

---

[4] Shoreside and Metco discuss and develop this basis in a Reply to a Nugget Motion at D. E. 583, pp. 16 – 19 rather than in the pleadings directed at USF&G. This argument is intertwined with the liability issues involving both Nugget and USF&G.

[5] The letters state in pertinent part: "We remind you that under Contract Clause 1.55, <u>Payments Under Fixed-Price Construction Contracts</u>, you are not to request for progress payments that which you intend to withhold from a subcontractor or supplier."

[6] These claims should have been settled in 1997. Another appeal would be economically devastating. The court should allow the claimants to present the evidence to the jury. If the court remains convinced that there is insufficient evidence, the causes of action

71 years old on August 24, the Miller Act is construed liberally and provides prompt and certain relief to those providing goods and performing services. The surety plays an important role because it must independently evaluate and pay the claims in a timely manner when its principal does not. Any close call must be resolved in favor of the claimants. Allowing the surety to sit by passively is inconsistent with the duties under state and federal law and undermines one of the checks and balances in the federal construction law scheme.

DATED this 7th day of August, 2006 at Anchorage, Alaska.

>THE LAW OFFICE OF STEVEN J. SHAMBUREK
>Attorney for Plaintiffs
>Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service and Metco, Inc.
>
>By: s/ Steven J. Shamburek
>_____
>Steven J. Shamburek
>Alaska Bar No. 8606063
>LAW OFFICE OF STEVEN J. SHAMBUREK
>425 G Street, Suite 630
>Anchorage, Alaska 99501
>(907) 522-5339 Direct
>(907) 522-5393 Fax
>shamburek@gci.net
>shamburekbank@gci.net

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 7th day of August, 2006, a copy of the foregoing was served by the Electric Case Filing system.

s/ Steven J. Shamburek

---

can be dismissed and not submitted to the jury. If there is enough evidence, the jury should consider the causes of action. The Ninth Circuit may find that the dismissals of the bad faith causes of action (and the other state law causes of action) were inappropriate as a matter of law. A panel could hold that there is enough evidence presented in the almost 600 pleadings and at trial to support the claims and then remand with instructions to enter judgment accordingly. A panel could remand and require a rehearing or retrial of the matter. With the complex factual record in this case, the possible outcomes on appeal are unpredictable. The case may still be in the federal system in 2009 or 2010. One trial to resolve all issues seems most just, prudent and economical under the circumstances. See Rule 1 of the Federal Rules of Civil Procedure.


_____
Steven J. Shamburek