Steven J. Shamburek
Alaska Bar No. 8606063
LAW OFFICE OF STEVEN J. SHAMBUREK
425 G Street, Suite 630
Anchorage, Alaska 99501
(907) 522-5339 Direct
(907) 522-5393 Fax

Attorney for Plaintiffs
Shoreside Petroleum, Inc.,
d/b/a Marathon Fuel Service
and Metco, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf, <br><br>        Plaintiffs, <br><br>    and <br><br> UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Service, on its own behalf, <br><br>        Intervening Plaintiffs, <br><br>    and <br><br> METCO, INC., <br><br>        Intervening Plaintiff, <br><br>    vs. <br><br> NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE, <br><br>        Defendants. | **SHORESIDE'S AND METCO'S OPPOSITION TO MOTION FOR RECONSIDERATION** <br><br><br><br><br><br><br><br><br><br> 3:98-cv-0009-TMB |

COMES NOW Shoreside Petroleum, Inc., d/b/a Marathon Fuel Service ("Shoreside") and Metco, Inc. ("Metco"), by and through counsel, and file this Opposition To Motion For Reconsideration.

Nugget repeatedly states that the claimants never alleged proper facts and never made any allegations of agency. The claimants are compelled again to refer to the record.

A "Miller Act complaint" typically alleges a violation of the "Miller Act" and additionally asserts state law causes of action. <u>See</u> <u>e.g.</u> D. E. No. 9. There are many different theories of liability under the Miller Act and a variety of causes of action under state law. The theories of liability pursuant to the Miller Act usually emerge and develop in the initial and supplemental disclosures and during discovery. A court can find liability under one theory of the Miller Act and/or a cause of action under state law and enter judgment accordingly. The claimants have alleged that there was an agency relationship because Nugget assumed complete control and dominance of the Spencer Quarry by March, 1997.

The claimants were allowed to amend their complaints last August after exhaustive briefing of the issue.[1] Shoreside and Metco each served substantive Disclosures and detailed discovery responses on the defendants. Those responses are referenced and discussed at D. E. Nos. 478, Exh. 2; 510, Exhs. 1 and 2; and 554 and in other pleadings.[2]

---

[1]    Judge Holland discusses the history of this case in his order and directed the complaints to enumerate and discuss rather than list the state law causes of action. D. E. No. 401. The claimants put the defendants on notice of the claims in the three Amended Complaints at D. E. Nos. 406, 407, and 409.

[2]    The defendants were never required to file a motion to compel to obtain information or responses from Shoreside or Metco.

Shoreside entered into a written Credit Agreement contract with Spencer Rock and separately with Nugget Construction to provide fuel and lube for any project. Shoreside did not contract specifically to provide fuel and lube for the Homer Project.[3]    The Motion for Reconsideration filed on August 7 at D. E. No. 649 develops this issue. Shoreside had provided credit to both Spencer and Nugget by March, 1997. Shoreside continues to assert that it can look directly to Nugget Construction, USF&G, Spencer Rock, and Robert LaPore (by personal guaranty) for payment.

Judge Holland previously found that the fuel and lube provided by Shoreside and the services performed by Metco and North Star were for the use and benefit of the Homer Project not for other uses. There never was nor is any challenge to the timeliness or quality of the goods and services.

Judge Holland discusses the relationship of the parties and other entities (Trecon) in exhaustive detail at D. E. No. 310.[4]

---

[3]    The agreement with Spencer Rock is dated April 25, 1995 which is more than a year before contract between the Corps of Engineers and Nugget was executed for the Homer Project.

[4]    In addition, the Court found that Mr. Randolph was involved with both Nugget and Spencer as follows:

Other significant undisputed facts in the record show that Nugget was ideally situated to take over operations at the Spencer quarry. For five years preceding his position as Nugget's project manager, Lynn D. Randolph worked as the project manager and job estimator in the Spencer quarry under its previous owner, Trecon (for whom Nugget's general manager and corporate secretary Greg Poyner also worked as a general manager). Randolph also worked as senior engineer, bid estimator, and project manager for Spencer after Robert LaPore purchases the quarry in 1994. In fact, prior to the Homer Spit project, Randolph worked for Nugget as a consultant, bid estimator, and project manager at the same time he worked for LaPore at Spencer. According to Randolph and LaPore, most of the calculations resulting in Spencer's pricing to Nugget on the Homer Spit bid were prepared by Randolph as a bid estimator and consultant for Spencer (while he also worked as a project manager for Nugget).

In an earlier pleading, North Star discusses the agency argument in careful detail and notes in pertinent part:

> This request [for the Court to add the principal/agent by control theory for recovery as an additional, alternative basis for liability, prior to a likely appeal] also gives added support to Shoreside Petroleum's recent motion for reconsideration. As Randy Randolph testified by deposition and as the detailed ledger entries prepared by Nugget upon which Nugget based its "support" expense claims against Spencer disclose, Nugget commenced its "support" of Spencer for which it sought recovery from Spencer at least as early as April 8, 1997, which was the same day as the second petroleum shipment was delivered by Shoreside to the Spencer quarry site for subsequent consumption and over two weeks before the so-called "support" arrangement was memorialized in writing on April 23, 1997. See, e.g., North Star's 4/8/02 S.J. Memo. (Docket No. 282) at p. 8 n. 8, including the citations to the record contained there.

D. E. No. 315, pp. 4 – 5 at n. 4.[1]

The Ninth Circuit addressed only a Miller Act cause of action on appeal and found that there was sufficient evidence of subterfuge and the interposition of a strawman to go to trial. D. E. No. 383. There were no other Miller Act theories nor any state law causes of action considered by the court.

Nugget admitted in both deposition testimony and in its argument before the Ninth Circuit that Nugget had taken over operation of the Spencer Quarry by late March, 1997.[5] Nugget withheld payments ("back charges") to Spencer for Nugget's activities.

---

D. E. No. 310, p. 7 – 8.

[5]    In its Opposition to a Nugget motion, Shoreside and Metco noted at D. E. 550, pp. 5 - 7 as follows:

> Shoreside notes the statements of Randy Randolph, the central individual who worked with Nugget, Spencer and Trecon. He admitted: "The [Support] Agreement was a consensual agreement between Nugget and SRP, and SRP was free to disavow it at any point during the project. The Agreement lasted a limited duration, **specifically between April and July 1997**, and SRP did not disavow the Agreement during that duration." (ER 325, Affidavit of Lynn D. ("Randy") Randolph dated May 14, 2002, p. 2, para. 2 (Emphasis added)).

4

Nugget could have paid the claimants directly because it knew of their existence and then "back charged" Spencer pursuant to its Support Agreement. Shoreside and Metco noted this fact in their discovery responses attached to previous pleadings at D. E. No. 510, p. 10. Nugget did back charge Spencer and has not produced any evidence to show that it did not exercise its right to back charge Spencer for the sums owed the three claimants.

Shoreside provided the first unpaid delivery of fuel on April 8, 1997 at a time when Nugget had taken over control of the Spencer Quarry by its own admission.

Robert LaPore, the owner of Spencer Rock and an operator of the Quarry for a period of time, discusses the takeover of the Quarry by

---

In addition, Nugget frankly admits this undisputed fact in an Opening Brief filed with the Ninth Circuit in 2003. **"Thus, in March or April 1997 (ER 107), Nugget began providing support services to Spencer Rock pursuant to a Support Agreement formally executed on April 15, 1997. (ER 7-10.)"** (Emphasis added). Nugget Opening Brief, p. 11 at ll. 9 - 11.

In addition, the affidavit referenced by Nugget in Nugget's Opening Brief in the Ninth Circuit refers to the deposition of Randy Randolph taken on October 30, 1998. He states:

Q    Was Nugget Construction providing Nugget employees and/or equipment to Spencer Rock in the Spencer Quarry prior to April 23, 1997, which is the date of this support agreement?

A    Yes

Q    And when did that type of cost to Nugget first occur?

A    Late March, early April.

(ER 107, p. 121, ll. 1 - 7 (Emphasis added)).

---

A copy of the transcript of the deposition of Mr. Randolph is at D. E. 69, Exh. 5, p. 121, ll. 1 - 7. The references to the Excerpts of Record (ER) are to the Excerpts filed by Nugget Construction in its second appeal to the Ninth Circuit. Shoreside and Metco understand that the entire record on appeal has been returned to the District Court and is available for review. (Note: Nugget states in the above pleading that it formally executed the Support Agreement on April 15, 1997, although all parties agree that the date on the Agreement is "April 23, 1997.")

Nugget in his affidavit at D. E. Nos. 282 and 284 which is referenced at D. E. No. 583, pp. 8 - 11.

John Dennis Stacey, the owner of Chugach Rock and an operator of the Quarry for a period of time, discusses the takeover of the Quarry by Nugget and other matters in his affidavit at D. E. No. 508, pp. 1 - 2.

Nugget drove Spencer Rock/Robert LaPore out of the Quarry and took over control of the operations for its own purposes to include providing rock for the Homer Project and for other Nugget projects. Nugget does not even reference the detailed discussion by Mr. Stacey that discusses the history of Nugget's hostile takeover effort of the Quarry. Id.

All of these facts read together prove that there was an express contract between Shoreside and Nugget.

All of these facts read together prove that there was an express contract, by agency and otherwise, between Shoreside and Nugget, between Metco and Nugget, and between North Star and Nugget.

Neither Shoreside nor Metco nor North Star relies exclusively on the Support Agreement.   The claimants contend that the Support Agreement was written by Mr. Lukjanowicz with Oles Morrison and imposed by Nugget on Mr. LaPore with Spencer Rock.   The claimants believe that the evidence will show that the document was written as part of Nugget's effort to insulate itself from liability for the goods and services provided to the Homer Project.   The Agreement is just one of many documents in support of the claimants' requests for relief in this court.

The Ninth Circuit directed that there be a trial.   There is a common and intertwined nucleus of operative fact.

The motion for reconsideration should be denied.   These matters should be presented to the trier of fact.

DATED this 9th day of August, 2006 at Anchorage, Alaska.

THE LAW OFFICE OF STEVEN J. SHAMBUREK
Attorney for Plaintiffs
Shoreside Petroleum, Inc., d/b/a Marathon Fuel
Service and Metco, Inc.

s/ Steven J. Shamburek
By:_____
Steven J. Shamburek
Alaska Bar No. 8606063
LAW OFFICE OF STEVEN J. SHAMBUREK
425 G Street, Suite 630
Anchorage, Alaska 99501
(907) 522-5339 Direct
(907) 522-5393 Fax
shamburek@gci.net
shamburekbank@gci.net

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 9th day of August, 2006, a copy
of the foregoing was served by the Electric Case Filing system.

s/ Steven J. Shamburek
_____

Steven J. Shamburek