David W. Pease
BURR, PEASE & KURTZ
810 N Street
Anchorage, AK  99501-3293
Telephone:     (907) 276-6100
Fax No.:        (907) 258-2530
Attorneys for North Star

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>                    Plaintiffs,<br>  and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf,<br><br>               Intervening Plaintiffs,<br>  and<br><br>METCO, INC.,<br><br>              Intervening Plaintiff,<br>  vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>              Defendants. | Case No. 3:98-cv-009-TMB<br><br><br><br><br><br><br><br><br><br><br>**NORTH STAR'S OPPOSITION TO NUGGET AND USF&G'S MOTION FOR RECONSIDERATION OF COURT'S 7/28/06 ORDER** |

      Nugget and USF&G have moved for reconsideration of that portion of the Court's

July 28, 2006 Order denying Nugget's motion for summary judgment on the claims of North Star

and Shoreside based upon express contracts between Nugget and the plaintiffs.  Docket No. 641.

North Star's Oppo to Nugget's Mtn for Reconsideration
North Star v. Nugget, et al., Case No. 3:98-cv-009-TMB
Page 1 of 6                                                              45-40/ # 85036 v.3

The Court has requested an opposition to that motion. Docket No. 645. Nugget's motion is without merit. It is not supported by the facts, the Restatement (Second) of Agency, or applicable case law. Nugget's motion for reconsideration of the Court's holding that disputed issues of material fact exist as to whether Spencer became an agent of Nugget and Nugget assumed Spencer's express contractual obligations (Docket No. 636 at 5-8), should be denied.

Nugget acknowledges that North Star and Shoreside both had contracts in place with Spencer Rock by at least January of 1997. (Nugget's motion at Docket 641 at 3-4.) These agreements constituted express written contracts between the plaintiffs and Spencer. Nugget does not dispute that Metco also expressly contracted for work with Spencer in relation to the project. It is similarly undisputed that North Star and the other plaintiffs performed work in relation to Nugget's project according to the terms of their contracts with Spencer only after Nugget and Spencer entered into a secret support agreement on April 23, 1997. There is evidence Nugget then took over control of Spencer Rock, without disclosing the takeover to any of the plaintiffs.

By April 23, 1997, Nugget had taken over control of Spencer's operations, certainly for the benefit of Nugget, and for the purported benefit of Spencer. As of that date, Nugget assumed the obligations of Spencer for the formal contracts that existed at that time between Spencer and the plaintiffs. As has been previously detailed in this case, the actions of Nugget fit precisely within the parameters of Restatement of Agency, § 14 O. At least by April 23, 1997, an express contractual relationship existed between Nugget and the plaintiffs. The Court, in denying Nugget's motion for summary judgment on that issue, related that the viability of plaintiffs' express contract claim depends upon the facts developed regarding the relationship between Nugget and Spencer. (Order at 6-7) The Court's recognition of the presence of factual issues forms the basis for the denial of Nugget's motion for summary judgment on this point.

The court has correctly denied Nugget's motion for summary judgment on the express contract issue because of Nugget's support agreement with Spencer. The agreement and Nugget's subsequent actions, such as financing Spencer, controlling and directing the work of North Star and intercepting all of Spencer's funds, placed Nugget in the shoes of Spencer. Nugget's deliberate actions made it responsible for and subject to the terms, conditions, obligations, and responsibilities that Spencer owed to North Star and the other plaintiffs under their contracts.

North Star's Oppo to Nugget's Mtn for Reconsideration
North Star v. Nugget, et al., Case No. 3:98-cv-009-TMB
Page 2 of 6                                                                                          45-40/ # 85036 v.3

The legal doctrine under which Nugget's conduct in controlling Spencer created an express contract relationship between Nugget and the plaintiffs is set out in Restatement (Second) of Agency, § 14 O, which reads as follows: "A creditor who assumes control of his debtor's business for the mutual benefit of himself and his debtor, may become a principal, with liability for the acts and transactions of the debtor in connection with the business." Comment A to this Restatement section provides in applicable part as follows: "The point at which the creditor becomes a principal is that at which he assumes *de facto* control over the conduct of his debtor, whatever the terms of the former contract with his debtor may be." In *A. Gay Jensen Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285 (Minn. 1981), the *Cargill* court interpreted and applied Restatement (Second) of Agency, § 14 O and 208, under circumstances and principles this Court found similar to the present case. The *Cargill* court found that "Cargill became, in essence, the owner of the operation without the accompanying legal indicia." *Id.* at 292. This Court made a similar finding in this case:

> This court is persuaded that the substantive principles behind finding an agency relationship from the facts in *Cargill* are very similar to the principle which the court adopts and applies in this instance. Like Cargill in the Minnesota case, Nugget controlled Spencer Rock completely and to its own advantage. Nugget took over virtually all aspects of the work that Spencer Rock had contracted with it to perform. … Nugget did what it wanted to do, and then simply charged the added cost to Spencer.

Order, Docket No. 310 at 24 n.38. Nugget now seeks to avoid the legal obligations of Spencer's contracts that came with the assumption of control. The case law holds that Nugget was in a contractual relationship with the plaintiffs and the court accordingly correctly denied summary judgment on this issue.

Nugget cites to *Manes v. Coats*, 941 P.2d 120 (Alaska 1997) and *Harris v. Keys*, 948 P.2d 460 (Alaska 1997) as setting out the standard under Alaska law for when an agency relationship exists. This Court has already recognized that there is a dispute in the facts over the extent to which Nugget controlled Spencer. It is a resolution of those disputed facts by the finder of fact which will determine whether there were express contracts between Nugget and the plaintiffs. A determining factor for that is the extent of Nugget's control over Spencer, not whether Nugget actually signed a contract with any plaintiff. This is the standard as set out in Restatement (Second) of Agency § 14 O as quoted above. Nugget exerted full and complete

North Star's Oppo to Nugget's Mtn for Reconsideration
North Star v. Nugget, et al., Case No. 3:98-cv-009-TMB
Page 3 of 6                                                                                          45-40/ # 85036 v.3

control over Spencer's operations, and directed plaintiffs to perform the work that was the subject of the contracts between Spencer and the plaintiffs.

Nugget's support agreement with Spencer constitutes a change in the controlling party that the plaintiffs contracted with. This is analogous to the situation that exists when one construction company buys another, except that in the present case Nugget's control over Spencer was kept secret from the plaintiffs. "Nugget instructed Spencer to keep the support agreement secret, and North Star, Shoreside and Metco were not told about its existence." Order, Docket No. 636 at 4. Had Nugget and Spencer entered into an arms-length sales transaction whereby Nugget purchased Spencer, Nugget would have taken over control of Spencer subject to the terms and conditions of all contracts for ongoing or booked but not yet started work that existed at that time. This is the customary manner in which the sale of ongoing construction companies is handled. It is a fundamental principle of law that when one company purchases or otherwise takes control of another, it does so subject to the contracts that exist between the seller and any other entities. The purchaser is then in an express contractual relationship with subcontractors and suppliers of the seller, even though it has not physically executed a written contract with those entities. Nugget took over Spencer Rock under the same set of factual circumstances, but instead of openly purchasing Spencer Rock, Nugget <u>secretly</u> took control of that company and now seeks to avoid its responsibilities and obligations for Spencer Rock's contracts that it assumed as a matter of law when it took control of that company.

The California Court of Appeals in *Enterprise Leasing Corp. v. Shugart Corp.*, 231 Cal. App.3d 737 (1991 Cal. App.) addressed an issue very similar to that presented by the facts in this case and held that where there was a secret change in ownership, the purchasing company, which received benefits under the assumed contract, was responsible for and bound by the contract terms. Enterprise leased equipment to Applied Circuit Technology, Inc. The lease required Enterprise's written consent for its assignment. Shugart purchased the assets of Applied, and made rental payments on the equipment. Enterprise was unaware that Applied had assigned the lease to Shugart for over a year. Shugart then sold its assets to ACT and sought to avoid any obligations to Enterprise under the lease. The trial court granted Shugart summary judgment, but the appellate court reversed, stating in part as follows:

"Whether there has been an assumption of the obligations is to be determined by

North Star's Oppo to Nugget's Mtn for Reconsideration
North Star v. Nugget, et al., Case No. 3:98-cv-009-TMB
Page 4 of 6                                                                                           45-40/ # 85036 v.3

>the intent of the parties as communicated by the acts, the subject matter of the contract or their words." … (Citations omitted)  Assumption of obligations may be implied from acceptance of benefits under the contract.  (Citation omitted)  Further, "when an assignee takes over a going business, his intention to assume the obligations of a contract relating to the business may be found from his acquiescence in the terms of the contract."  (Citations omitted)

*Id.* at 744.  The *Enterprise* case is directly on point and applicable to the present case because, in both cases, there was a secret transfer of control where the newly controlling party proceeded under and received the benefits of an existing contract.  Under *Enterprise*, it is Nugget's actions which determine the express contractual relationship between it and the plaintiffs, not the absence of a signed contract.

There is significant and substantial evidence that Nugget took control of Spencer Rock under the guise and terms of the support agreement and Nugget's subsequent actions.  Nugget disputes the extent to which it took control over Spencer Rock, but as the court has stated in its order of July 28, 2006, those disputed issues of fact have to be resolved at trial.  The presence of those disputed issues of fact as identified by the court require that Nugget's motion for reconsideration be denied.  Resolution of the express contract and express contract by agency claims asserted by the plaintiffs against Nugget must await a determination of the extent of Nugget's agency relationship with Spencer, which this Court has held is the subject of disputed facts.  For the foregoing reasons, Nugget's motion for reconsideration on the issue of express contracts with the plaintiffs resulting from Nugget's takeover of Spencer Rock should be denied.

DATED:  August 9, 2006

>s/ David W. Pease
>Burr, Pease & Kurtz
>810 N Street
>Anchorage, Alaska 99501
>Phone: (907) 276-6100
>Fax: (907) 258-2530
>E-mail: bpk@bpk.com
>Alaska Bar No. 8706041

North Star's Oppo to Nugget's Mtn for Reconsideration
North Star v. Nugget, et al., Case No. 3:98-cv-009-TMB
Page 5 of 6                                                                                                  45-40/ # 85036 v.3

CERTIFICATE OF SERVICE

I certify that on the August 9, 2006, a copy of the foregoing North Star's Opposition to Nugget and USF&G's Motion for Reconsideration of Court's 7/28/06 Order was served electronically to Steven S. Shamburek, Esq., Traeger Machetanz, Esq., Paul D. Stockler, Herbert A. Viergutz, and C. Patrick Stoll, Esq.

s/ David W. Pease