David W. Pease
BURR, PEASE & KURTZ
810 N Street, Suite 300
Anchorage, AK  99501-3293
Telephone:     (907) 276-6100
Fax No.:         (907) 258-2530
Attorneys for North Star

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf, | |
| Plaintiffs, | |
| and | Case No. 3:98-cv-009-TMB |
| UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf, | |
| Intervening Plaintiffs, | **OPPOSITION TO MOTION IN LIMINE  RE: FUNDS WITHHELD FROM SPENCER** |
| and | |
| METCO, INC., | |
| Intervening Plaintiff, | |
| vs. | |
| NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE, | |
| Defendants. | |

I.    INTRODUCTION

On June 14, 2007, defendant Nugget Construction, Inc. filed a motion in limine seeking to exclude evidence that Nugget withheld funds from Spencer Rock Products under the Support Agreement between the parties.  Because this evidence is relevant and not prohibited by any evidence rules, the court should deny the motion.

II.    BACKGROUND

During performance on the Miller Act contract at question in this case, Nugget Construction, Inc. ("Nugget") admittedly withheld monies due and owing to its subcontractor or materialman, Spencer Rock Products ("Spencer"), under Nugget's interpretation of a Support Agreement prepared by Nugget's counsel and signed under protest by Spencer.  Spencer Rock disagreed with this interpretation, and continued to submit invoices to Nugget throughout Spencer's performance under the original contract.  (Ex. A)  Spencer even complained in writing to the Army Corps of Engineers regarding nonpayment from Nugget and requested that the Corps no longer release progress payments to Nugget.  (Ex. B & C)  Spencer also informed its suppliers regarding Nugget's nonpayment.  (Ex. D)  Spencer's suppliers and subcontractors ultimately complained in writing directly to the Corps regarding the situation with Nugget.

The Corps contacted Nugget directly to inquire as to why vendors had not been paid.  On August 21, 1997, the Corps requested "an immediate explanation as to why Northern Stevedoring has not been paid for work that has been paid by the Government."  (Ex. E)  The Corps also reminded Nugget that, "under Contract Clause I.55, <u>Payments Under Fixed-Price Construction Contracts</u>, you are not to request progress payments that which [sic] you intend to withhold from a subcontractor or supplier."  (Ex. E)

The clause that the letter referred to can be found in the Bidding Documents for the

Oppo to Mtn in Limine re Funds Withheld from Spencer
*North Star Terminal, et al v. Nugget, et al,* Case No. A98-009 CV
Page 2 of 9                                                                    45-40 / #90677

Homer Spit Repair and Extension Project.  Under I.55(c)(2), when requesting progress payments, the contractor was required to certify, "Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract requirements and the requirements of chapter 39 of Title 31, United States Code[.]"  (Ex. F at 1) Section I.55(d) required the contractor to inform the contracting officer if it failed to meet this obligation and pay an amount equal to interest on the unearned payments of the contract.  (Ex. F at 2)

III.    ARGUMENT

A.  The Evidence of Withheld Funds is Relevant

The evidence of withheld funds is relevant because Nugget was specifically prohibited from withholding funds from a supplier by its contract with the government.  It is also relevant for other reasons, including to show Nugget's control over Spencer.  The court should therefore admit the evidence.

Whether evidence is relevant is determined by state law, but whether relevant evidence is admissible is determined by the Federal Rules of Evidence. *See In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979.*[1]  Under Fed. R. Evid. 402, "[a]ll relevant evidence is admissible" unless it is prohibited by the evidence rules.  "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the

---

[1] 701 F.2d 1189, 1193, 1195 (7th Cir. 1983), *cert. denied*, 464 U.S. 866 (1983).

Oppo to Mtn in Limine re Funds Withheld from Spencer
*North Star Terminal, et al v. Nugget,  et al,* Case No. A98-009 CV
Page 3 of 9                                                                                           45-40 / #90677

determination of the action more probable or less probable than it would be without the evidence."[2]

    The evidence that Nugget withheld funds from Spencer Rock Products is relevant for several reasons. First, it is relevant to explain why Northern Stevedoring, along with all other vendors under the project, were not being paid by Spencer. Second, it is relevant, along with the secret Support Agreement, to illustrate the level of control that Nugget held over Spencer. Finally, it is relevant to illustrate that the Army Corps of Engineers ultimately concluded that Spencer Rock Products was a subcontractor based on the language in the Support Agreement.

    Nugget does not seem to argue that the evidence is not relevant. Rather, Nugget argues that the evidence should not be admitted because Nugget had a right to withhold the payments under the Support Agreement, citing to several authorities in support.[3]

    On their face alone, none of the cases cited by Nugget are even factually similar to the case at hand. Those cases involved the contractor suing the breaching party or the surety in court and recovering the replacement material or performance costs as damages. Here, Nugget had a pair of contracts whereby, when read together, Nugget contracted with Spencer for Spencer to provide rock where Nugget's personnel and equipment would do all of the work. Essentially, Nugget contracted to pay Spencer for work that Nugget did. Then, Nugget decided it would not

---

[2] Alaska R. Evid. 401; Fed. R. Evid. 401.

[3] *See National Union Fire Ins. Co. of Pittsburgh, Penn. v. D. & L. Constr. Co.*, 353 F.2d 169 (8th Cir. 1965) (when a sub-subcontractor defaulted on its contract, the subcontractor refused to complete the contract, forcing the contractor to complete the work); *Dale Benz, Inc., Contractors v. American Cas. Co.*, 303 F.2d 80 (9th Cir. 1962) (contractor filing suit against the bond surety to recover damages for subcontractor's failure to complete contract and seeking contract completion costs as damages); *Southern Roofing & Petroleum Co. v. Aetna Ins. Co.*, 293 F.Supp. 725 (E.D. Tenn. 1968) (finding that subcontractor abandoned contract and that contractor's claim of damages for replacement materials was allowed).

Oppo to Mtn in Limine re Funds Withheld from Spencer
*North Star Terminal, et al v. Nugget, et al,* Case No. A98-009 CV
Page 4 of 9                45-40 / #90677

pay Spencer for work that Spencer did not do, when the Support Agreement called for Spencer to

not do the work.  Nugget took over all the work and simply was not going to pay Spencer for the

work that Nugget did.  This is not a contract for support, but a complete assumption of control

over another party.

This is quite distinct from the authorities cited by Nugget, where the subcontractor

specifically defaulted on or breached the contract in question.  Rather than pursue those normal

remedies cited in Nugget's motion, Nugget decided to execute a second contract with Spencer,

whereby the original material contract was supplemented and superseded by a second contract,

the Support Agreement.  Nugget was *not* merely a contractor assuming the performance on a

breached contract, which was the example Nugget cited to in *Prince v. R.C. Tolman Constr. Co.*[4]

Additionally, the contract with the federal government, which incorporated the Prompt

Pay Act by reference, specifically prohibited Nugget from withholding any payments from

subcontractors or vendors.  None of the authorities cited by Nugget discuss a contract with any

such prohibition, nor does Nugget acknowledge this in its motion.

However, under the Prompt Pay Act, there is one instance where Nugget could have

withheld payments from Spencer.  Under 31 U.S.C. §3905(d)(2), a primary contractor can

include in its *subcontract* a provision which "permit[s] the contractor or *subcontractor* to make a

determination that part or all of the subcontractor's request for payment may be withheld in

accordance with the subcontract agreement" (emphasis added).  In two letters sent in August

1997, the Army Corps of Engineers demanded that Nugget "clarify what support and project

management services Nugget Construction provided to Spencer Rock Products" and informed

---

[4] 610 P.2d 1267, 1268 (Utah 1980).

Oppo to Mtn in Limine re Funds Withheld from Spencer
*North Star Terminal, et al v. Nugget,  et al,* Case No. A98-009 CV
Page 5 of 9                                                                              45-40 / #90677

Nugget that it could not withhold funds from subcontractors or vendors.[5]  Following receipt of

these letters, Nugget transmitted a copy of the Support Agreement to the Corps.[6]  The issue was

not raised again, and Nugget eventually was paid in full at the completion of the project.  Since

the Prompt Pay Act only permits the contractor to enter into an agreement with a *subcontractor*

for withholding of funds, the fact that the Corps read the Support Agreement and continued

progress payments leads to a strong inference that the Corps concluded that Spencer Rock

Products was a subcontractor, not a supplier or materialman.  This would allow the Corps to

conclude that North Star and other vendors working for Spencer would be protected under the

Miller Act, and thus the Corps could continue making progress payments to Nugget.

Thus, either Nugget was in violation of the Prompt Pay Act and its contract with the

United States by withholding payment from a vendor, or Spencer Rock Products was a

subcontractor and Nugget was entitled to withhold funds by virtue of the Support Agreement.

Either way, the evidence is highly relevant and probative to the key issues in this case.  If

Nugget's withholding of funds itself was proper, the evidence of withholding funds establishes

that the Army Corps of Engineers considered Spencer a subcontractor, thus ensuring that

Spencer's suppliers were protected under the Miller Act.[7]

_____

[5] Ex. (Aug. 21 and Aug. 26, 1997 letters)

[6] Ex. (?)

[7] Northern Stevedoring recognizes that the Ninth Circuit has previously concluded that Spencer Rock Products was a materialman.  *See* Docket No. __ at __ (2001 decision).  However, that analysis was based on a different standard and did not contemplate the contract's incorporation of the Prompt Pay Act and the legal standards associated with that Act.  **[cite pages]**  The Corps had an obligation under the Prompt Pay Act and the Miller Act to ensure that the primary contractor, Nugget, was fulfilling its obligations in order for it to receive progress payments.  In meeting that obligation, the Corps examined the Support Agreement and must have ultimately concluded that Spencer was a subcontractor.  That is the only way that the Corps

Oppo to Mtn in Limine re Funds Withheld from Spencer
*North Star Terminal, et al v. Nugget,  et al,* Case No. A98-009 CV
Page 6 of 9                                                                      45-40 / #90677

B.    The Evidence of Withheld Funds is Not Inadmissible

Despite Nugget's suggestion to the contrary, the evidence of its withholding of funds from Spencer is not the type of prejudicial evidence prohibited by the rules. It is pertinent and germane to the reasons why North Star did not get paid for its work and to the control that Nugget exerted over Spencer. The court should deny the motion.

Nugget seems to argue[8] that the evidence that it withheld funds from Spencer would be prejudicial evidence in violation of Federal Evidence Rule 403.[9] It is well settled that evidence is unfairly prejudicial only if it "will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented. . . ." *United States v. Medina*.[10] "Evidence that appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action may cause a jury to base its decision on something other than the established propositions in the case."[11] *This* is the type of

---

could continue to make progress payments because it knew that the Miller Act bond would protect those vendors who were not being paid by virtue of their relationship with the subcontractor, Spencer.

[8] Without citing Fed. R. Evid. 403 or any interpreting authority, Nugget states that it "did nothing inappropriate" and "any statements, testimony or evidence indicating to the contrary, would be unfounded and highly prejudicial to the jury." Docket No. 723 at 5.

[9] Fed. R. Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[10] 755 F.2d 1269, 1274 (7th Cir. 1985); *see also* Advisory Committee Note to Fed. R. Evid. 403.

[11] *Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir. 1986) (quoting 1 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 403[03], at 403-33-39 (1985).

---

Oppo to Mtn in Limine re Funds Withheld from Spencer
*North Star Terminal, et al v. Nugget, et al,* Case No. A98-009 CV
Page 7 of 9                                                                                    45-40 / #90677

evidence that Fed. R. Evid. 403 excludes as being unfairly prejudicial.[12]

The mere act of Nugget withholding payments from Spencer Rock Products is not the type of thing that is going to inflame a jury and cause it to decide the case on an improper, emotional basis.  It is a fact at the center of the dispute in this case.  It is not inflammatory or emotional.

In addition to not being prejudicial, the evidence is highly probative of Nugget's control over Spencer Rock Products and perhaps some of the best evidence in the case establishing that control.  Since the probative value of the evidence outweighs any potential prejudice, Fed. R. Evid. 403 does not preclude its admission.

IV.    CONCLUSION

For the foregoing reasons, the motion in limine should be denied.

> s/ David W. Pease
> Burr, Pease & Kurtz
> 810 N Street, Suite 300
> Anchorage, AK  99501
> Telephone:  (907) 276-6100
> Fax:  (907) 258-2530
> E-mail:  dwp@bpk.com
> Alaska Bar # 8706041

---

[12] *See United States v. Zeuli*, 725 F.2d 813, 817 (1st Cir. 1984).

Oppo to Mtn in Limine re Funds Withheld from Spencer
*North Star Terminal, et al v. Nugget,  et al,* Case No. A98-009 CV
Page 8 of 9                                                                45-40 / #90677

CERTIFICATE OF SERVICE

I certify that on the 2nd day of July, 2007,
a copy of the foregoing OPPOSITION TO
MOTION IN LIMINE  RE: FUNDS WITHHELD
FROM SPENCER was served electronically to:

    Steven S. Shamburek, Esq.
    Traeger Machetanz, Esq.
    Paul D. Stockler
    Herbert A. Viergutz
    C. Patrick Stoll, Esq.

    s/ David W. Pease

Oppo to Mtn in Limine re Funds Withheld from Spencer
*North Star Terminal, et al v. Nugget,  et al,* Case No. A98-009 CV
Page 9 of 9                                                                 45-40 / #90677