David W. Pease
BURR, PEASE & KURTZ
810 N Street, Suite 300
Anchorage, AK 99501-3293
Telephone: (907) 276-6100
Fax No.: (907) 258-2530
Attorneys for North Star

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>Plaintiffs,<br>and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf,<br><br>Intervening Plaintiffs,<br>and<br><br>METCO, INC.,<br><br>Intervening Plaintiff,<br>vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>Defendants. | Case No. 3:98-cv-009-TMB<br><br>**OPPOSITION TO MOTION IN LIMINE RESPECTING CLAIMS BY AND/OR SETTLEMENT WITH SECOND TIER VENDORS** |

## I. INTRODUCTION

Nugget Construction Company filed a motion in limine to exclude any and all evidence that there were other vendors who were not being paid during the performance of the Miller Act contract in question. Since this evidence is relevant, highly probative and not unfairly prejudicial, the court should deny the motion.

## II. BACKGROUND

During the performance of the Homer Spit Extension and Repair Project, Nugget Construction Company ("Nugget") contracted with Spencer Rock Products ("Spencer") to supply raw materials in the form of rock for the project. In turn, Spencer contracted with other parties to provide various services needed in the process of transporting rock from the Spencer Quarry to Seward and loading the rock on a barge for shipment. These parties included North Star Terminal & Stevedoring Company ("North Star"), Shoreside Petroleum, Inc., Metco, Inc., and the Alaska Railroad Corporation ("ARR"). The only party to be paid in full for its services was ARR, which was eventually paid directly by Nugget, not Spencer.

During the performance of the contract, Nugget received progress payments from the Army Corps of Engineers, but withheld funds from Spencer due to Nugget's interpretation of the Support Agreement between the parties. Under the Support Agreement, Nugget eventually assumed control of all Spencer obligations, bringing in its own personnel and equipment to excavate rock, ship it to Seward and load it onto a barge. Additionally, Nugget employee Randy Randolph also began to control and direct the operations of the other parties in Seward. As a result of Nugget's withholding of funds, North Star, Metco and Shoreside all went without payment. These parties eventually filed suit against Spencer and Nugget.

III. DOCUMENT

A. The Evidence is Highly Relevant

The authorities cited by Nugget in support of its motion concede that the evidence of the claims by Metco and Shoreside are relevant. The court should therefore deny the motion.

Whether evidence is relevant is determined by state law, but whether relevant evidence is admissible is determined by the Federal Rules of Evidence. *See In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*.[1] Under Fed. R. Evid. 402, "[a]ll relevant evidence is admissible" unless it is prohibited by the evidence rules. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[2]

Nugget's citation to *Bradbury v. Phillips Petroleum Co.*[3] illustrates one of the reasons why evidence of other claims is relevant to the controversies in this case. There, the court considered whether it was proper for the trial court to admit evidence of other claims to show a pattern of conduct by the defendant. The court referenced *Julander v. Ford Motor Co.*,[4] where the Tenth Circuit held that evidence of other acts must "bear similarity to the circumstances

---

[1] 701 F.2d 1189, 1193, 1195 (7th Cir. 1983), *cert. denied*, 464 U.S. 866 (1983).

[2] Alaska R. Evid. 401; Fed. R. Evid. 401.

[3] 815 F.2d 1356 (10th Cir. 1987).

[4] 488 F.2d 839 (10th Cir. 1973).

surrounding the accident which is the subject of the matter at trial."[5] While acknowledging that there were many differences when compared to the prior claims, the *Julander* court noted the "similarities were as striking as the differences."[6] The court later noted, "The question of similarity necessarily depends upon the nature of the case and the purpose for which the evidence is offered."[7] The court noted that this case involved examination of "a pattern of human conduct," concluding that there were sufficient similarities to meet the requirements of *Julander*.[8]

Here, the claims in question arise from the exact same pattern of conduct. All vendors or subcontractors under the Homer Spit Extension and Repair Project were not paid for the services they provided. The claims arose from the same project, all of the parties who were not paid provided their services to the same party, the vendors and subcontractors were all situated in the same geographic area (Seward), and all raised claims at the same time, first with the Army Corps of Engineers followed by the instant lawsuit.

There are two primary reasons why the evidence of these other claims is relevant to North Star's suit against Nugget. First, the evidence shows that North Star's experience was not an isolated incident or mistake, but a pattern of conduct exhibited against all Spencer Rock vendors and subcontractors (except for ARR) associated with this project. This would preclude the jury from the incorrect assumption that North Star was the sole unhappy party in this project.

---

[5] *Id.* at 847.

[6] *Bradbury*, 815 F.2d at 1364.

[7] *Id.* at 1365.

[8] *Id.*

Second, the evidence again is pertinent and relevant in illustrating the level of control that Nugget had over Spencer. The vendors and subcontractors on the project would have been paid but for Nugget's withholding of funds from Spencer, resulting in the various claims.

B. The Evidence is Not Prejudicial

It is well settled that evidence is unfairly prejudicial only if it "will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented. . . ." *United States v. Medina*.[9] "Evidence that appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action may cause a jury to base its decision on something other than the established propositions in the case."[10] *This* is the type of evidence that Fed. R. Evid. 403 excludes as being unfairly prejudicial.[11] Prejudice alone is insufficient; *unfair* prejudice is required.[12]

Nugget cites to *Yellow Bayou Plantation, Inc. v. Shell Chemical, Inc.*[13] in support of its argument that evidence of other claims would be unfairly prejudicial under FRE 403. There, the plaintiff sought to introduce evidence of complaints and lawsuits initiated by other parties, who were not involved in the plaintiff's case, against the manufacturer of an herbicide. The plaintiff sought to introduce the evidence to show that the manufacturer knew or should have known that

[9] 755 F.2d 1269, 1274 (7th Cir. 1985); *see also* Advisory Committee Note to Fed. R. Evid. 403.

[10] *Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir. 1986) (quoting1 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 403[03], at 403-33-39 (1985).

[11] *See United States v. Zeuli*, 725 F.2d 813, 817 (1st Cir. 1984).

[12] *See United States v. Bailleaux*, 685 F.2d 1105, 1111 & n.2 (9th Cir. 1982); *see also United States v. Layton*, 855 F.2d 1388, 1402 (9th Cir. 1988).

[13] 491 F.2d 1239 (5th Cir. 1974).

the herbicide was ineffective. The court found little probative value in the evidence because it would have merely shown that such complaints were raised "from time to time."[14] In contrast, the other parties in this case filed claims based on the same conduct arising out of the same transaction. Moreover, the treatment of the vendors and subcontractors by Nugget was different than that afforded the ARR, whose cooperation was essential as rock could only move from the quarry to Seward by rail, and only the ARR could perform that service. Thus, the *Yellow Bayou Plantation* reference is unavailing.

The Ninth Circuit's decision in *United States v. Skillman*[15] is an example of the high bar that must be met in order for evidence to run afoul of FRE 403. There, the defendant was charged with multiple criminal counts, including intimidating or interfering with a person's housing rights on account of "race" or "color." The government sought to introduce several references to Skillman's association with skinheads, despite a lack of evidence that Skillman was in fact a member of the skinheads. The trial court concluded that the evidence was relevant to show that Skillman would act on his racial beliefs. The Ninth Circuit held that the evidence was not overly prejudicial because it "tended to establish Skillman's racial animus and that he might act on his beliefs."[16] The court also held that it was not "'needless[ly]' cumulative" in light of the difficulty in establishing the requisite racial animus and Skillman's defense theory that he as an innocent bystander.[17]

---

[14] *Id.* at 1243. The court also indicated that the evidence held a "high potential for unfair prejudice" but did not elaborate as to *how* it would be prejudicial. *Id.*

[15] 922 F.2d 1370 (9th Cir. 1990).

[16] *Id.* at 1374.

[17] *Id.* at 1375.

That the court would hold that reference to skinheads in a racially charged case was *not* overly prejudicial illustrates why the evidence in *this* case is not overly prejudicial. It is not uncommon for parties to become embroiled in disputes over contracts, particular with regards to construction projects. That claims would be made based on those disputes is not going to arouse a sense of horror, inflame emotions, or instill in the jury a desire to wreak vengeance. Moreover, as illustrated previously, the evidence is highly probative of Nugget's control over Spencer and its contacts with the other parties. It also illustrates that Nugget's experience was not an isolated one, but rather, that there were other claims, thus illustrating a pattern of behavior by Nugget that impacted North Star. *Cf. Smith v. Allstate Ins. Co.*[18]

C. Evidence of Settlements is Admissible

Nugget argues that any evidence of the settlements by the other parties is inadmissible, citing to Federal Evidence Rule 408 for support. However, Nugget fails to acknowledge that the rule specifically allows for evidence of settlements to be admitted. The motion should therefore be denied for that reason.

Federal Evidence Rule 408 prohibits the admission of settlement evidence where it is used to prove or disprove either liability or the amount of the claim. *See* Fed. R. Evid. 408; *United States v. Contra Costa County Water Dist.*[19] However, that rule specifically *permits* the admission of settlement negotiation evidence when it is presented for a reason other than demonstrating liability, including but not limited to proving bias, prejudice of a witness, and

[18] 52 Fed.Appx. 349, 351 (9th Cir. 2002) (unpublished opinion) ("Evidence not directly related to Smith's particular claim is still relevant and admissible provided that it tends to establish a 'pattern of unfair practices' in handling the fraudulent engineering reports.").

[19] 678 F.2d 90, 92 (9th Cir. 1982).

negating a claim of undue delay.[20] The Ninth Circuit has also allowed the introduction of specific settlement offer amounts for the purpose of indicating the plaintiff's assessment of the value of a claim. *See Cohn v. Petsmart, Inc.*[21]

Nugget cites to *Manko v. United States*[22] for the proposition that evidence of a prior *civil* settlement is not relevant to a *criminal* defendant's present guilt or innocence. The court reasoned, "Because the IRS's doubt as to its likelihood of success at trial does not constitute an admission that the IRS had doubts as to whether the repurchase transactions were fictitious, I find that the civil settlement is not relevant to (or probative of) petitioners' guilt or innocence in their criminal trial."[23] Later, on appeal, the Second Circuit examined whether it was improper for the trial court to exclude the evidence of settlement. *See Manko v. United States*.[24] The circuit court affirmed, holding that the evidence of a settlement was inadmissible because it would have "delve[d] into the morass of a particularly messy negotiation in this case and into the IRS's complex policies of settlement and enforcement."[25]

---

[20] *See* Fed.R.Evid. 408; *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 484 (7th Cir. 2000), *cert. denied*, 531 U.S. 877 (2000); ("The rule [408] permits evidence. . . that is offered for a purpose other than establishing liability."); *U.S. v. Hauert*, 40 F.3d 197, 199-200 (7th Cir. 1994) (to show defendant's knowledge and intent); *Freidus v. First Nat'l Bank*, 928 F.2d 793, 795 (8th Cir. 1991) (for rebuttal); *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1362-66 (10th Cir. 1987) (to show a course of reckless conduct); *County of Hennepin v. AFG Indus., Inc.*, 726 F.2d 149, 153 (8th Cir. 1984) (for impeachment)

[21] 281 F.3d 837, 840 n. 3 (9th Cir. 2002).

[22] Nos. 95 Civ. 1611 (KMW), 96 Civ. 3667 (KMW), 1998 U.S. Dist. LEXIS 10521 (S.D.N.Y. July 13, 1998).

[23] *Id.* at *24-25.

[24] 63 Fed. Appx. 570 (2d Cir. 2003).

[25] *Id.* at 573.

While couched in terms of relevance by both the trial and appellate court, the *Manko* case illustrates the prohibition behind FRE 408. The trial court concluded that evidence of the settlement was not admissible because it would create the improper inference that liability was questionable. FRE 408 precludes evidence of settlements if used to prove liability or inadequacy of a claim. Although not discussed, that inference would also confuse the jury, who would be required to follow a burden of proof considerably higher in the criminal case than what the IRS faced in its civil proceeding. As such, the *Manko* case is not applicable.

Thus, North Star is permitted to introduce the evidence that Nugget has settled with the other parties so long as it is for a purpose other than to prove that Nugget has conceded liability by making settlement payments.

III. CONCLUSION

North Star acknowledges that evidence of the settlements themselves may be precluded if no other purpose for introducing them can be articulated other than to prove liability. However, the claims of those settled parties and the events leading up to those claims are clearly relevant and admissible. For the foregoing reasons, the motion in limine should be denied.

s/ David W. Pease
Burr, Pease & Kurtz
810 N Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 276-6100
Fax: (907) 258-2530
E-mail: dwp@bpk.com
Alaska Bar # 8706041

CERTIFICATE OF SERVICE

I certify that on the 2nd day of July, 2007, a copy of the foregoing OPPOSITION TO MOTION IN LIMINE RESPECTING CLAIMS BY AND/OR SETTLEMENT WITH SECOND TIER VENDORS was served electronically to:

Steven S. Shamburek, Esq.
Traeger Machetanz, Esq.
Paul D. Stockler
Herbert A. Viergutz
C. Patrick Stoll, Esq.

s/ David W. Pease