**PLAINTIFF'S WITNESSES**

To the extent that the witnesses listed below are unavailable in Anchorage for trial, they may be called by telephone.

1.     **Robert LaPore** - NOTE:  Mr. LaPore has health issues which may impact his ability to testify live at trial.  At present, his health is such that he expects to be able to travel to Alaska.  If his situation changes, it will be necessary to take a perpetuation deposition of Mr. LaPore.

Mr. LaPore will testify about his purchase of the Spencer quarry and the knowledge that Nugget employees Greg Poynor and Randy Randolph had about the quarry as a result of their employment for a past quarry operator.  Mr. LaPore will detail his reliance upon Randy Randolph for bidding quarry jobs and overseeing rock production operations.  He will explain the ownership arrangement with Randolph for Spencer Rock Products.  He will describe Mr. Randolph's involvement in bidding the Homer Spit rock job on behalf of Spencer Rock.

Mr. LaPore will describe the attempt by Nugget to compress a 2-year project into one year and its continued insistence on compression of the schedule in spite of a bid protest that delayed the start of the project and rock production significantly.  Mr. LaPore will describe contact with his bank and their refusal to loan additional funds as previously promised.  He will describe his attempts to back out of the contract with Nugget and assurances from Randolph and Poynor that Nugget would assist Spencer Rock in fulfilling the contract.

He will describe contracts that Spencer Rock entered into with the Alaska Railroad, North Star, Shoreside, and Metco for services to support Spencer Rock's operations.  Mr. LaPore will describe Nugget's take over of Spencer Rock's operations at the Spencer quarry and in Seward.  He will describe the support agreement Spencer Rock signed with Nugget and Nugget's

45-40/ # 90669

instructions and threats concerning not revealing the agreement to anyone. Mr. LaPore will detail the assurances he received from Randy Randolph and others at Nugget that Nugget would support and not take over Spencer Rock.

Mr. LaPore will describe Nugget's inefficiencies and waste in quarrying operations, loading of rail cars, handling of rock in Seward, and its use of the chartered barge. He will describe Nugget's direct control over and interaction with North Star concerning the loading of rock on the barge. He will describe the cost impact to Spencer of Nugget's shifting its loading operation away from the railroad dock as well as the impact of that shift on North Star.

Mr. LaPore will describe the attempts by Spencer Rock to get paid by Nugget and Nugget's refusal to do so. He will describe Spencer's inability to pay North Star because Nugget withheld all funds Spencer needed to pay vendors. He will describe Nugget's take over of Spencer Rock's obligations to the railroad, and Nugget's refusal to advance funds for Spencer Rock to meet any of its obligations. He will refute Nugget's support and back charges, and describe attempts to obtain payments on behalf of Spencer Rock and its suppliers from Nugget. He will describe how Nugget's actions put Spencer Rock out of business.

2. **Vernon Rush.** Mr. Rush will testify about the ownership of Spencer Rock, the purchase of the Spencer quarry by Spencer Rock, and Randy Randolph's extensive prior experience working on all aspects of the Spencer quarry operations. Mr. Rush will also describe how Spencer Rock relied upon Randolph for bidding of the Homer Spit rock supply contract and the determination of rock production rates and costs for that bid.

3. **Bob Fox.** This witness will testify concerning Nugget's operations in the Spencer quarry, and the use of Nugget equipment and personnel to produce rock from the Spencer quarry starting in April 1997. He will describe rock production and transportation.

4. **Greg Poynor.** He will testify concerning Nugget's take over of Spencer Rock's

45-40/ # 90669

operations, the preparation of the support agreement between Spencer Rock and Nugget, and the requirement that details of the support agreement be kept secret from North Star, Shoreside, and Metco. He will also describe Nugget's take over of the contractual obligations of Spencer Rock with respect to the Alaska Railroad. Mr. Poynor will describe the charges Nugget assessed against Spencer Rock Products.

     5.    **John Smithson.** This witness will describe the take over of Spencer Rock Products by Nugget and the assessment of support charges against Spencer Rock. He may also describe the secret support agreement and the modification of the Nugget/Spencer Rock contract to allow Nugget's assumption of all Spencer Rock's obligations to the Alaska Railroad.

     6.    **John Terwilliger.** He will testify concerning Nugget's bidding of the Homer Spit Project and its use of the Spencer Rock Products' bid as part of that bid. He will describe Randy Randolph's job duties at Nugget Construction. Mr. Terwilliger will describe the take over of Spencer Rock's quarrying operations by Nugget personnel. He will describe the support agreement and the subsequent charges assessed against Spencer Rock by Nugget. He will describe Nugget's refusal to pay Shoreside, Metco, or North Star and its refusal to provide Spencer with funds to pay these entities. He will describe how Nugget assumed Spencer Rock's financial obligations to the Alaska Railroad.

    Mr. Terwilliger will describe the involvement that Nugget had with the Corps of Engineers concerning payments due Spencer Rock, North Star, Shoreside and Metco.

    He will describe Nugget's interest in using the Spencer quarry prior to and after contracting with Spencer Rock.

     7.    **Randy Randolph.** This witness has knowledge of rock production at the Spencer quarry while working for Trecon and Spencer Rock Products. He will describe his work in bidding, blasting, rock removal, and other aspects of quarry operations. He will describe his

45-40/ # 90669

ownership interest in Spencer Rock Products and his bid work for Spencer Rock Products, including bidding the Homer Spit Project.  He will testify as to his familiarity with Spencer Rock's equipment, finances, and rock production rates and expenses.  He will describe his knowledge of Spencer Rock's needs if it were awarded the Homer Spit rock contract.

He will describe his work for Nugget Construction while also working for Spencer Rock.  He will describe Nugget's interest in operating the Spencer quarry.  He will detail his work on providing figures and quotes for Nugget's Homer Spit bid.  He will detail the bid protest and delay in the start of the contract.  He will testify about Spencer Rock's concern about the compressed time schedule for rock production and its need for financing from Northrim Bank.

He will testify about Nugget's involvement in the quarrying of rock at the Spencer quarry and the support agreement between Spencer Rock and Nugget which was to be kept secret from all others working on the Homer Spit Project.  He will describe how Nugget inspected and accepted the rock prior to shipment from the quarry to Seward.  He will detail Nugget's take over of the quarry.

He will testify about the insurance that Nugget required from North Star prior to loading rock on the barge.  He will testify about his interaction with North Star personnel and his direction of the barge loading operations in Seward.

He will describe the contracts modification between Nugget and Spencer Rock whereby Nugget paid for all railroad charges to move the rock.

He will describe the charges Nugget assessed Spencer Rock under the support agreement and Nugget's refusal to advise others working on the Homer Spit Project that Nugget was withholding funds from Spencer Rock.  He will describe how the support charges exceeded the value of rock produced each month and how at the end of the rock production, Nugget claimed that it was owed money, despite having withheld in excess of $1.3 million from Spencer Rock.

45-40/ # 90669

He will describe Nugget's refusal to pay Spencer Rock so that it could pay its suppliers. He will describe Nugget's refusal to pay certain of Spencer Rock's suppliers when payment was demanded. He will describe how Nugget Construction was in total control of Spencer Rock's funds from the Homer Spit Project. He will describe the correspondence with Spencer, North Star, Shoreside, Metco, and the Corps, concerning rock production, support charges, payments, withholding, and the Miller Act. He will testify about Nugget's repeated refusal to pay North Star, Shoreside, or Metco for work they performed for the benefit of the Homer Spit Project.

8.  **Jack Goodwill.** Mr. Goodwill will describe the operations of Northern Stevedoring in Seward. He will describe the contract entered into between North Star and Spencer to load rock onto the barge at the railroad dock in Seward. He will describe the direction of and interaction with North Star by Nugget concerning the loading of the barge and potential damage to the barge deck. He will detail Nugget's demand of insurance from North Star. He will describe the total control exerted by Randy Randolph over North Star and Spencer Rock's operations in Seward. He will describe Nugget's refusal to pay North Star or to pay Spencer Rock so that it could pay North Star. Mr. Goodwill will also testify that Randy Randolph used the same North Star crew to cast off the barge as was loading the barge, which was further evidence to North Star of Randolph's total control of the barge loading operation.

9.  **Karen Morrissey.** This witness will testify concerning the relationship between Spencer Rock, Nugget, and the Alaska Railroad. She will describe Nugget's assumption of Spencer Rock's obligations for past rock hauling charges and Nugget's agreement to pay all future rock transportation charges as well. She will also describe the relationship between railroad freight customers and cruise ships using the railroad dock and the requirement that accommodations be made by each for the other with respect to

45-40/ # 90669

the use of the railroad dock.

10. **Dennis Stacey.** This witness will testify concerning the relationship between Chugach Rock Corporation and Spencer Rock Products. He will describe the rock royalty arrangement between the two companies. He will detail Nugget's attempts to take over operation of the Spencer quarry over a period of years. He will describe his attempts to obtain royalty payments on behalf of Chugach Rock and Nugget's refusal to pay Chugach Rock royalty payments or to pay Spencer Rock so that it could pay Chugach. He will describe his dealings with Randy Randolph in his various capacities.

11. **Barbara Dieckgraeff.** This witness is expected to testify concerning the relationship between Metco Inc., Spencer Rock Products, and Nugget Construction. She will describe work performed by Metco in Seward under the direction of Randy Randolph. She will detail attempts to be paid for that work by Spencer Rock Products and then by Nugget. She will describe Nugget's continuous refusal to pay Metco. She will describe the lawsuit between Metco and Nugget, its protracted history, and its final resolution earlier this year.

12. **Ron Niebrugee.** He will testify concerning Shoreside/Marathon's contract with Spencer Rock, and Shoreside/Marathon's interaction with Nugget concerning provision of fuel for the Spencer Rock quarry and for equipment in Seward. Mr. Niebrugee will describe the refusal of Nugget to disclose the support agreement between Spencer Rock and Nugget, and Nugget's subsequent refusal to pay Shoreside/Marathon for fuel and lubricants provided in support of the Homer Spit Project.

13. **Doug Lechner.** He will testify concerning Shoreside/Marathon's dealings with Spencer Rock and Nugget on the Homer Spit Project. He will describe the relationship between Shoreside and Nugget and the direct contact that Nugget had with Shoreside concerning fuel for certain aspects of the Homer Spit Project. He will describe attempts to get paid by Spencer Rock

45-40/ # 90669

and Spencer Rock's inability to pay Shoreside because Nugget was withholding funds. He will describe attempts to be paid by Nugget and Nugget's refusal to do so. He will detail the lawsuit between Shoreside and Nugget over the past nine years and its final resolution early this year.

14.     **David Scott.**  This witness will testify about the Corps of Engineers' oversight of the Homer Spit Project, the purpose and requirement of bonding for the project, and correspondence between the Corps, Nugget, North Star, Shoreside, and Metco concerning payment for companies working on the project. He will discuss contract and regulatory provisions for payment such as the Prompt Payment Act and Miller Act. This witness will also discuss the relationship between Nugget and Spencer and contract requirements concerning prompt payment and the withholding of funds.

15.     **Doug Wood.**  This witness will testify about the Corps of Engineers' oversight of the Homer Spit Project, the purpose and requirement of bonding for the project, and correspondence between the Corps, Nugget, North Star, Shoreside, and Metco concerning payment for companies working on the project. He will discuss contract and regulatory provisions for payment such as the Prompt Payment Act and Miller Act. This witness will also discuss the relationship between Nugget and Spencer and contract requirements concerning prompt payment and the withholding of funds.

16.     **Thomas Johnson.**  This witness will testify about the Corps of Engineers' oversight of the Homer Spit Project, the purpose and requirement of bonding for the project, and correspondence between the Corps, Nugget, North Star, Shoreside, and Metco concerning payment for companies working on the project. He will discuss contract and regulatory provisions for payment such as the Prompt Payment Act and Miller Act. This witness will also discuss the relationship between Nugget and Spencer and contract requirements concerning prompt payment and the withholding of funds.

45-40/ # 90669

17. **Phil Santerre.** He will testify concerning the nature and scope of the dispute between Nugget and Spencer Rock, Shoreside, Metco, and North Star concerning payment for the services and materials they provided for the Homer Spit Project. Mr. Santerre will also discuss documents sent to or provided by the Corps concerning Nugget's dispute with Spencer Rock, Shoreside, Metco, Chugach Rock, and North Star.

18. **Jeff Bentz.** He will testify about North Star Terminal & Stevedore's operations in general, its business in Seward as Northern Stevedoring, its relationship with customers in general and with Spencer Rock Products and Nugget Construction in particular. Mr. Bentz will testify concerning the call out nature of the stevedoring business. He will describe the equipment and labor rates charged by North Star.

He will describe North Star's interaction with Nugget Construction concerning loading operations in Seward. He will describe the control and direction provided to North Star by Randy Randolph. He will describe the invoicing instructions that North Star received from Mr. Randolph. He will detail North Star's lack of knowledge of the support agreement and the fact that it was kept secret from North Star by Spencer Rock and Nugget upon instructions from Nugget.

Mr. Bentz will describe attempts undertaken by North Star to get paid from Spencer Rock and Nugget. He will describe Spencer Rock's inability to pay North Star because Nugget withheld all funds from Spencer Rock needed to pay vendors and suppliers. Mr. Bentz will also describe his attempts along with Shoreside and Metco to get payment from Nugget for work that benefited the Homer Spit Project.

He will detail North Star's damage claims for both work performed and work to be performed by North Star in the way of barge loading operations.

19. North Star may call witnesses to authenticate documents or in rebuttal as needed.

45-40/ # 90669

20. Any other witnesses listed on the defendant's witness list.

DATED: July 2, 2007

                                                    s/ David W. Pease
                                                   Burr, Pease & Kurtz
                                                   810 N Street, Suite 300
                                                 Anchorage, AK  99501
                                                 Telephone:  (907) 276-6100
                                                 Fax:  (907) 258-2530
                                                 E-mail:  dwp@bpk.com
                                                 Alaska Bar # 8706041