Traeger Machetanz, Esq.
Thomas R. Krider, Esq.
OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501
Phone: 907-258-0106
Fax: 907-258-5519

Attorneys for Nugget Construction Co.
Inc. and USF&G, Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, and NORTH STAR TERMINAL & STEVEDORING COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>Plaintiff,<br><br>and<br><br>UNITED STATE OF AMERICA for the use of SHORESIDE PETROLEUM INC., d/b/a Marathon Fuel Service, and SHORESIDE PETROLEUM INC., d/b/a Marathon Fuel Service, on its own behalf,<br><br>Intervening Plaintiffs,<br><br>and<br><br>METCO, INC.,<br><br>Intervening Plaintiff,<br><br>vs.<br><br>NUGGET CONSTRUCTION INC.; SPENCER ROCK PRODUCTS INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>Defendants. | No. 3:98-cv-00009-TMB<br><br>**NUGGET'S TRIAL BRIEF AND MEMORANDUM IN SUPPORT OF OBJECTIONS TO NORTH STAR'S PROPOSED JURY INSTRUCTIONS** |

## I. INTRODUCTION

In May and June 1997, pursuant to an express contract with Spencer Rock Products, Plaintiff North Star loaded rock onto a barge supplied by Nugget Construction for transport to Homer. North Star's work entailed five separate loadings of the barge over those two months. The rock was for incorporation into a revetment project Nugget was constructing for the Army Corps of Engineers. Nugget's project manager, Randy Randolph, was present in each instance for the loading of the barge to insure that the rock was properly placed on the barge. Mr. Randolph also worked with North Star to facilitate the arrival and load dates of the barge shipments. This is the only contact Nugget had with North Star during the period of North Star's performance on the project, and North Star (Jack Goodwill) admits Mr. Randolph's actions were typical of a vessel representative.

Because there is no basis upon which North Star can legitimately claim, much less prove, a direct contractual relationship between it and Nugget, and because the Ninth Circuit has determined that North Star is not covered under the Miller Act, North Star is left with having to establish that Spencer Rock's existence in the chain of privity is a charade embarked upon by Nugget and Spencer Rock for the purpose of insulating Nugget from Miller Act liability, or for some other improper purpose. *Fidelity & Deposit Co. of Md. V. Harris*, 360 F.2d 402, 410 (9th Cir. 1966). Otherwise, all of North Star's contractual (either federal or state) and/or equitable claims must fail.

Other than North Star's tort claim for interference with a contract, all other claims remaining in this litigation turn on the question of the nature and degree of Nugget's alleged control over Spencer Rock products. This is the law of the case as established by the Ninth Circuit's 2001 and 2005 decisions, this court's decision disposing of Nugget's motion for summary judgment on all of North Star's state law claims (Docket

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 2 of 15

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

No. 636), and in North Star's own statement of the issues left for trial in the Draft Pre-Trial Order (Docket No. 736).

However, despite this issue being the only substantive one before the court for the jury's consideration, North Star appears determined to continue arguing its case based on what was alleged in its complaint, rather than what has been decided in the interim. North Star's approach is apparent in the form of jury instructions it presented to Nugget for discussion and deliberation. Rather than acknowledge the common element tying together all of its contractual claims, North Star continues to try and parse each cause of action into separate instructions without reference to the necessity of finding an improper relationship between Nugget and Spencer as a precursor to any of those claims.

Primarily based on its reading of the court's July 28, 2006 Order Disposing of Parties' State Law Summary Judgment Motions (Docket No. 636), Nugget's position is that there are essentially only two basic instructions necessary to provide the jury with the correct law to decide the non-tort claims in this case: (1) one containing the federal law reflecting the standards for establishing Spencer Rock as a strawman in the chain of privity (Nugget's Proposed Jury Instruction No. 30); and (2) the other setting forth the state law regarding under what circumstances Nugget's alleged usurpation of Spencer Rock makes Nugget responsible to North Star for Spencer Rock's debt (Nugget's Proposed Jury Instruction No. 25). If, and only if, North Star prevails under either of these propositions, it prevails against Nugget. North Star's attempts to separately set out instructions for unjust enrichment, quasi-contract, quantum meruit, etc. is superfluous (North Star's Proposed Jury Instruction Nos. 31, 32, 33, 34, 35, and 36) and does not accurately reflect the law as previously established by the court, as each of its instructions ignores the relationship that must be found to be improper.

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 3 of 15

Put another way, despite North Star's attempts to "cover its bases" by including numerous separate causes of actions in its amended complaint, this case boils down to an all or nothing proposition – either the jury finds Nugget's actions sufficient to ignore Spencer Rock's presence or North Star loses. Similarly, with regard to North Star's tort claim, if the jury finds Nugget's actions in its dealing with Spencer Rock and North Star justified, North Star's tortious interference with contract claim must also fail.

## II.    LEGAL ISSUES IN DISPUTE

### A.    The Law of the Case

In its order disposing of the parties' competing motions for summary judgment on the state law claims, the court set forth the law of this case dealing with each of the claims that survived summary judgment. It is important to revisit the court's approach to those claims to fully understand Nugget's position with respect to why North's Star's proffered jury instructions do not reflect the realities of this case. In denying Nugget's motion for summary judgment, the court relied on the following disputed element with respect to each of the remaining claims:

> **Express Contract/Agency:**
>
> When read in context, the Ninth Circuit holding upon which Defendants' rely is simply that Plaintiffs never expressly contracted directly with Nugget. Plaintiffs' contention, however, is that Spencer became an agent or extension of Nugget, and thus assumed Spencer's express contractual obligations to third parties, including to Plaintiffs. Although the issue appears not to have been directly addressed by the Alaska Supreme Court, Alaska law, following the Restatement (Second) of Agency, holds that an undisclosed principal is generally liable to third parties with which its agent contracts. **Thus, the viability of Plaintiffs express contract claim against Nugget depends upon Nugget's relationship with Spencer.** … **Here, material facts necessary to determine the existence of an agency relationship, namely the extent to which Nugget assumed control over Spencer, are in dispute.**

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 4 of 15

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

**Implied-in-Fact Contract:**

Under Alaska law, "[a]n 'implied in fact' contract is grounded on the intention of the parties to form a contract; the parties' assent thereto, although unarticulated, is inferred from the surrounding facts and circumstances." … **Material issues of fact remain in dispute as to (i) the collusion between Nugget and Spencer and (ii) Nugget's direct interactions with Plaintiffs.**

**Tortious Interference:**

Material issues of fact surround the remaining two elements of North Star's tortious interference claim, namely whether Nugget's conduct caused Spencer's breach and whether Nugget's actions were privileged or justified. Ninth Circuit Opinion at 6. **Both of these elements depend upon the extent of the alleged subterfuge and collusion between Nugget and Spencer.**

**Unjust Enrichment, Quasi-Contract and Quantum Meruit:**

The parties agree that Alaska law treats claims of unjust enrichment, quasi-contract and quantum meruit claims similarly. … Each of the elements that make up the claims – Nugget's receipt of a benefit, Nugget's appreciation of that benefit, and the inequity of allowing Nugget to retain the benefit – depend upon the relationship between Nugget and Spencer. **The nature of that relationship, in turn, depends upon the extent of the alleged subterfuge and collusion between Nugget and Spencer.**

**Equitable Subordination and Constructive Trust:**

Equitable subordination, whereby a court alters the pre-existing priorities among creditors, has been recognized in Alaska to apply outside of the bankruptcy context in situations of "fraud, unfairness, or breach of the rules of 'fair play.'" … "In Alaska a constructive trust is appropriate to prevent unjust enrichment, defined as the retention of a property through unjust, unconscionable, or unlawful means." … **Resolution of the claims depends upon the disputed material issues of fact surrounding the extent of the alleged subterfuge and collusion between Nugget and Spencer.**

(Emphasis added and internal citations omitted.)

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 5 of 15

In North Star's statements relating to its claims and disputed facts set forth in the Draft Pre-Trial Order (Docket No. 736, erroneous titled "Trial Brief"), it acknowledges, in part, the limitations placed on these causes of actions in the court's summary judgment order. In the Draft Pre-Trial Order, North Star states that its Miller Act, Express Contract, Agency, Implied-in-Fact Contract, Unjust Enrichment, Quasi Contract, and Quantum Meruit claims all turn on the issue of control between Nugget and Spencer. Although North Star fails to recognize the court's position on the Equitable Subrogation and Constructive Trust Claims, there can be no dispute that the court has already determined that these claims rest on the relationship question. Finally, in its statement of disputed facts, North claims that "[t]he issues of fact to be determined are the manner and extent to which Nugget took control of Spencer Rock Products and all of the facts relating to Nugget's actions and inactions."

## B.     *Bendix Corp. v. Adams*

In addition to the dispute regarding whether all of the "subjective" contract claims can be distilled into a single instruction focused on the question of Nugget's alleged control over Spencer Rock, there is significant dispute as to the scope of the instruction(s) required for the Express Contract/Agency claim. North Star's proffered instructions are based on the supposition that, for want of a better term, there was an "express" agency relationship between Nugget and Spencer Rock (North Star's Proposed Jury Instruction Nos. 25, 26, and 27). However, there is no evidence in the record that Nugget and Spencer Rock ever intended to enter into an agency relationship, in which Spencer Rock was overtly acting as an agent on Nugget's behalf with regard to Spencer Rock's interactions with third-parties. Instead, the allegation in this case is that the actions of Nugget with respect to Spencer Rock were such that Nugget essentially took control of Spencer Rock's operations, and thereby, stepped into

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 6 of 15

Spencer Rock's shoes. This concept requires an entirely different instruction to the jury than the standard *respondeat superior*/agency instructions offered by North Star. The law in Alaska applicable to the circumstances presented by this case is found in the case of *Bendix Corp. v. Adams*, 610 P.2d 24 (Alaska 1980). *See* Nugget's Proposed Jury Instruction No. 25.

In *Bendix*, the plaintiff, Adams Barge Company ("Adams"), had entered into a contract with a former subsidiary of Bendix Corp., Marine Advisers, Inc. Adams had brought suit against Bendix for tortious interference[1] with the Adams – Marine Advisers contract and for breach of contract on the theory that Marine Advisers was acting as Bendix's agent. On appeal, there was no dispute that there was a valid agreement between Marine Advisers and Adams, or that Marine Advisors had breached that agreement. The only question on the charge of agency was whether Bendix had sufficient control over Marine Advisors to create an implied agency relationship. This is referred to by the court as the "instrumentality theory" of responsibility. The instrumentality theory necessarily became the basis of the claim, because there was no evidence of an "express" agency relationship between Bendix and Marine Advisers. *Id.* at 33. The same argument is essentially being made by North Star – Spencer Rock became a mere instrumentality of Nugget's during the course of performance.

Although Spencer Rock was not a subsidiary of Nugget's, and there was no other legal relationship between them except for the ones contractually created, North Star's claims against Nugget are akin to an attempt to pierce the corporate veil if Spencer Rock was legally related to Nugget. The effect of both theories is to eliminate the middle entity in the chain of privity to allow the plaintiff to recover against the "controlling" entity. In essence, North Star's claim is that Nugget took control over

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 7 of 15

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

Spencer as if it was not an independent legal entity, which is the same criterion that provides for a plaintiff to disregard the corporate structure of a subsidiary and go directly against the parent company.

However, the *Bendix* court found that for the parent to be responsible for the actions of the disregarded entity, the relationship must have been created to "defeat public convenience, justify wrong, commit fraud, or defend crime." *Id.*, at 32 (quoting *Jackson v. General Electric Co.*, 514 P.2d 1170, 1172-73 (Alaska 1973)). In the subsidiary context, the court holds that "piercing the corporate veil 'requires considerably more than mere control; it exists to prevent a party from obtaining an advantage through deceptive or manipulative practices.'" *Id.* (quoting *Elliott v. Brown*, 569 P.2d 1323 (Alaska 1977).

Even the case primarily relied upon by North Star to support its "control" agency theory, *A.Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285 (Minn. 1982), is little more than an "instrumentality" case. In that case, Cargill had assumed almost exclusive financial control of the agent's business over the period of many years. The level of control was so great that the court found that the agent was no longer acting as an independent entity – it had been defacto absorbed by Cargill. *Id.*, at 290-93. Thus, Cargill was essentially using the agent as if it was a wholly owned subsidiary, such that it was appropriate to "pierce" through the relationship and find Cargill directly liable to the agent's other debtors. It is important to first note that the actions undertaken by Cargill from 1964-1977 are wholly distinguishable, in breadth and in kind, from Nugget's attempts to support Spencer Rock's performance of a single material supply contract. In fact, Nugget's relationship with Spencer Rock falls squarely within the exception for a

---

[1] The case also provides the legal foundation for Nugget's justification defense regarding the alleged tortious interference claim. *Bendix*, at 29-32.

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 8 of 15

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

buyer-supply enterprise discussed in the *Cargill* case. *Id.*, at 291-92 (citing Restatement (Second) of Agency § 14K).

Regardless of the factual issues that may be disputed regarding whether Nugget's actions rise to the level of Cargill's to create an agency relationship under the Minnesota law established in that case, the law set forth in *Cargill* is not the law in Alaska for determining when one corporate entity becomes the "instrumentality" of another entity. That determination is governed by *Bendix Corp. v. Adams*, 610 P.2d 24 (Alaska 1980). As such, the jury instructions for this case must reflect the law as stated in *Bendix*, rather than the law of Minnesota. Nugget's Proposed Jury Instruction No. 25 provides the proper statement of the law concerning Nugget's purported control of Spencer Rock and should be given to the jury as provided.

### C.   Prompt Payment Act

In a bizarre attempt to revisit the Ninth Circuit's decision regarding Spencer Rock's status as a supplier to Nugget, for the first time in the long history of this case North Star has raised an issue surrounding the Prompt Payment Act ("PPA") and Nugget's justified withholding of payments from Spencer Rock. North Star first articulated this argument in its opposition to Nugget's Motion in Limine regarding the withholding of funds from Spencer Rock. North Star has not identified just how this plays a role in its current dispute against Nugget. There is no claim in the litigation asserting a PPA violation (and as discussed below, there cannot be one), nor is there an explanation regarding how the PPA affects any of the other claims in this litigation. Yet, North Star is insisting on proffering three separate jury instructions relating to the PPA, including one that defines "subcontractors." *See* North Star's Proposed Jury Instruction Nos. 28, 28A and 29. Although this issue is addressed in Nugget's reply to

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 9 of 15

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

the Motion in Limine, we will briefly revisit the issue and provide some additional authority supporting why the PPA is a non-issue in this case.

North Star's purpose for raising the PPA appears to center around the notion that Nugget's withholding of payments from Spencer Rock, although pursuant to the Support Agreement, was somehow in violation of the PPA, and therefore, wrongful. North Star relies on 31 U.S.C. § 3905(d) to argue that a prime contractor can only withhold funds from a subcontractor. North Star cites no legal authority for the proposition that a prime contractor cannot withhold funds from a supplier for which the prime contractor has incurred costs associated with the supplier's breach. Nugget has also found no such authority for this proposition, but such a narrow reading belies common sense, is inconsistent with the contemporaneous interpretation by the Corps of Engineers, and is not compatible with other provisions of the Act.

In § 3905(d), the Act states that payments may be withheld from a "subcontractor" under specified circumstances. North Star attempts to apply this term narrowly to mean only subcontractors as used under the Miller Act. However, within the PPA, a broader definition is used. Specifically, in § 3905 (b), the term "subcontractor" is modified to include "material supplier[s]." Furthermore, that the definition of "subcontractor" includes "material suppliers" is confirmed by the interpretation adopted in the Federal Acquisition Regulations ("FAR") relating to subcontracting policies and procedures used by the Corps of Engineers. Specifically, the FAR defines "subcontractor" as including "any supplier, distributor, vendor, or firm that furnishes supplies . . . to or for a prime contractor." 48 C.F.R. § 44.101. The FAR also includes the implementing clauses for the Prompt Payment Act for incorporation into federal contracts. 48 C.F.R. §§ 32.908, 52.231-27. Thus, North Star's reliance on the PPA to support its argument that Nugget's withholding of funds from Spencer was wrongful is

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 10 of 15

baseless. Because the PPA does not preclude Nugget's actions against Spencer Rock, an interpretation supported by the Corps of Engineer's decision to continue making payments to Nugget, there is no basis for including jury instructions relating to the PPA or to the definition of a subcontractor.

Alternatively, even if North Star's interpretation of the PPA is correct and suppliers are excluded from the withholding provision of §3905 (d), Nugget was nevertheless entirely justified in withholding money from Spencer Rock pursuant to § 3905 (j), which states that §3905 shall not impair the rights available to a contractor in dealing with the deficient performance of a subcontractor. Nugget's withholding of funds from Spencer Rock is, therefore, wholly justified under the Alaska UCC sections relating to the supply of goods. As stated in Arnavas, Government Contract Guidebook, Section 26.3 (3d ed. 2006):

> The "sales" article—Article 2—of the UCC sets forth the basic rules for contracts for the sale of goods. It is intended to be the sole statement of sales law for the points it actually covers. Therefore, Government subcontracts—to the extent that a particular point is not preempted by the federal procurement regulations—will be interpreted and enforced in accordance with the UCC.
>
> Section 45.02.717 of the Alaska version of the UCC provides:
> The buyer on notifying the seller of the intention to do so may deduct all or any part of the damages resulting from a breach of the contract from any part of the price still due under the same contract.

The Support Agreement clearly notified Spencer that deductions would be made to Spencer's supply contract, as did subsequent change orders and letters from Nugget to Spencer.

Finally, North Star cannot attempt to expand its new PPA theories to include a cause of action against Nugget based on an allegation that Nugget violated the PPA by not paying Spencer Rock. As an initial matter, no such cause of action has been plead, nor could one be inferred from any of the other causes of action in the latest amended

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 11 of 15

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106   Fax: (907) 258-5519

complaint. However, regardless of the status of the pleadings, the PPA does not afford a subcontractor/supplier (much less a second tier vendor) a private cause of action against a contractor for non-payment. *Virginia Beach Mechanical Services, Inc. v. SAMCO Construction Co.,* 39 F.Supp. 661, 676-78 (E.D. Vir. 1999). In *SAMCO*, the court found that § 3905 (i) specifically precludes the United States from being a party to claims for late payment and interest between a contractor and a subcontractor. § 3905 (i), states:

> A dispute between a contractor and subcontractor relating to the amount or entitlement of a subcontractor to a payment or late payment interest penalty under a clause included in a subcontract pursuant to section (b) or (c) of this section does not constitute a dispute to which the United States is a party. The United States may not be interpleaded in any judicial or administrative proceeding involving such a dispute.

Because a Miller Act claim is brought in the name of the United States, the *SAMCO* court held that claims for non-payment under the PPA cannot be brought in a suit involving the Miller Act. Given this holding, it is highly questionable whether North Star's present claims based on Nugget's non-payment to Spencer Rock (equitable subordination and unjust enrichment) are cognizable, as North Star's argument is that Nugget's withholding was wrongful under the PPA.

**D.   North Star's Tortious Interference Claim and Contract Claims Are Mutually Exclusive**

North Star has alleged alternative clauses of action against Nugget. First and foremost, North Star alleges that there was a direct contractual relationship, either express or implied, between it and Nugget. If such a relationship is found to exist, then North Star is entitled to breach damages from Nugget, which makes North Star whole with regard to its contract with Spencer Rock. However, if there is a direct contractual relationship between Nugget and North Star, Nugget could not be guilty of tortiously

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 12 of 15

interfering with its own contract.  *Transamerica Premier Ins. Co.. v State, Dept of Natural Resources*, 856 P.2d 766 (Alaska 1993) (breach claims sound in contract and not tort);  *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 703 (Alaska 2003) . Thus, if North Star prevails on its contractual claims, its tort claim necessarily fails.

Based on this, Nugget seeks the inclusion of an "either/or" sentence in the instructions to the jury on the Intentional Interference with Contracts claim (Nugget's Proposed Jury Instruction No. 37).  Nugget's proffered sentence reads: "North Star can only make this claim if you find that Nugget did not have an implied contract and is not legally responsible for the acts of Spencer Rock Products."  North Star has refused to accept such a sentence, although it acknowledges that the contract and interference with contract claims are mutually exclusive (North Star's Proposed Jury Instruction No. 37).  North Star may potentially recover against Nugget in contract or tort, but not both.  *Transamerica Premier Ins. Co. v State, Dept of Natural Resources*, 856 P.2d 766 (Alaska 1993).

There is also a disagreement regarding the proper instruction relating to when a party's actions justify interfering with a contract or a prospective economic advantage.  The problem with the pattern instruction is that it is vague with respect to the key issue to be decided – i.e., what is the legal interest being protected by the alleged interferer?  There is nothing in the pattern instruction, or in the Alaska cases discussing this issue, that requires a narrow definition of what legal interest is being protected.  *See Bendix v. Adams*, 610 P.2d 24 (Alaska 1980); *Alyeska Pipeline Service Co. v. Aurora Air Service, Inc.*, 604 P.2d 1090, 1094 (Alaska 1979).  The Comment to the pattern instruction explains that: "The type of interest that a defendant is justified to protect through interfering with another's contract, however, must be a "direct financial interest," as

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 13 of 15

distinguished from a commercial interest which the defendants may have in the contract of a competitor." Alaska Pattern Jury Instruction 19.03.

North Star's version of the instruction places the alleged contract between Nugget and North Star as the financial interests Nugget is entitled to protect (North Star's Proposed Jury Instruction No. 39). Nugget is not sure how this item plays into the question of whether Nugget was legally justified in moving the barge loading to another dock to mitigate its losses, which precluded North Star's continued efforts to load the barge. As indicated above, if there is a contract between Nugget and North Star, there can be no tortious interference. Nonetheless, Nugget's financial interests went beyond North Star's asserted interest.

It was the financial implications relating to Nugget's performance of the Homer Spit Revetment contract with the Corps of Engineers that Nugget was seeking to protect by mitigating the damages incurred by waiting for access to the Alaska Railroad dock. Alternatively, it could be stated that Nugget was looking out generally for the company's overall financial interest in attempting to mitigate the losses it was suffering due to Spencer Rock's breach. Thus, Nugget's interest in the financial performance of its contract with the Corps of Engineers is the type of "direct financial interest" covered by the pattern instruction (Nugget's Proposed Jury Instruction No. 39). *See* Restatement (Second) Torts § 767, comment (d) ("if there is no desire at all to accomplish the interference and it is brought about only as a necessary consequence of the conduct of the actor engaged in for an entirely different purpose, his knowledge of this makes the interference intentional, but the factor of motive carries little weight toward producing a determination that the interference was improper.")

Once a legally justified interest is identified, the only question is whether Nugget's motives were malicious. There is no evidence in this case that Nugget acted

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 14 of 15

for any purpose other than to mitigate its losses on the Homer Spit Revetment project. Nugget's proposed instruction properly sets forth the test for determining whether Nugget was legally justified in interfering with the Spencer Rock – North Star contract and should be given to the jury.

Dated: July 30, 2007

OLES MORRISON RINKER & BAKER LLP
 Attorneys for Nugget Construction Inc. and
 United States Fidelity and Guaranty Company

By: /s/ Thomas R. Krider
 Traeger Machetanz
 machetanz@oles.com
 Alaska Bar No. 8411127
 Thomas R. Krider
 Washington Bar No. 29490
 745 West 4th Ave., Suite 502
 Anchorage, AK 99501
 Phone: (907) 258-0106
 Fax:  (907) 258-5519

*U.S. ex rel. North Star et al. v. Nugget Construction et al.*
Case No. 3:98-cv-00009-TMB
Nugget's Trial Brief and Memorandum in Support of Objections
to North Star's Proposed Jury Instructions -- Page 15 of 15

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July, 2007, a true and correct copy of the foregoing was served electronically on:

David W. Pease
dwp@bpk.com
Burr, Pease & Kurtz
810 N Street
Anchorage, AK  99501

Steven J. Shamburek, Esq.
shamburek@gci.net
Law Office of Steven J. Shamburek
425 G Street, Suite 630
Anchorage, AK  99501-5872

Herbert A. Viergutz, Esq.
barmar@gci.net
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501

**Served by mail on:**

Robert LaPore
P.O. Box 640030
Beverly Hills FL 34464

OLES MORRISON RINKER & BAKER LLP


By: /s/ Thomas R. Krider


P-TRK Trial Brief (final) 073007 993100002.doc

OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501-2136
Tel: (907) 258-0106    Fax: (907) 258-5519