Traeger Machetanz, Esq.
Thomas R. Krider, Esq.
OLES MORRISON RINKER & BAKER LLP
745 West Fourth Avenue, Suite 502
Anchorage, Alaska 99501
Phone:  907-258-0106
Fax:  907-258-5519

Attorneys for Nugget Construction Co.
        Inc. and USF&G, Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a NORTHERN STEVEDORING & HANDLING, and NORTH STAR TERMINAL & STEVEDORING COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf, | ) ) ) ) ) ) ) | No. 3:98-cv-00009-TMB |
| Plaintiff, | ) ) | JOINT PROPOSED JURY INSTRUCTIONS |
| and | ) ) | |
| UNITED STATE OF AMERICA for the use of SHORESIDE PETROLEUM INC., d/b/a Marathon Fuel Service, and SHORESIDE PETROLEUM INC., d/b/a Marathon Fuel Service, on its own behalf, | ) ) ) ) ) ) | |
| Intervening Plaintiffs, | ) ) | |
| and | ) ) | |
| METCO, INC., | ) ) | |
| Intervening Plaintiff, | ) ) | |
| vs. | ) ) | |
| NUGGET CONSTRUCTION INC.; SPENCER ROCK PRODUCTS INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE, | ) ) ) ) ) | |
| Defendants. | ) ) | |

P-TNM 108 INS joint jury instructions-with objections-final-073007 993100002

## STIPULATED INSTRUCTION NO. 1
## DUTY OF JURY

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set throughout the trial to which to refer. This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, I will give you a final set of instructions. It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Authority:

Ninth Circuit Model Civil Jury Instruction No. 1.1A.

## DISPUTED INSTRUCTION NO. 2 OFFERED BY NORTH STAR CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

This dispute arises from the performance of a federal construction contract in 1997-98 known as the Homer Spit Repair & Extension Project. Nugget Construction Inc. was the prime contractor for that project, which was within the scope of a federal law known as the Miller Act. For one portion of this contract, Nugget entered into a contract with Spencer Rock Products to quarry certain types of rock from a quarry in the Chugach Mountains and transport that rock to Seward where Spencer Rock Products would have the rock loaded onto Nugget's barge for transport to Homer. North Star Terminal & Stevedore Company contracted with Spencer Rock Products to load rock onto Nugget's barges. North Star was never paid for the services it provided.

The plaintiff, North Star, claims that:

1.    Spencer Rock Products breached its contract with North Star by not paying for the services North Star performed on behalf of Spencer Rock Products.

2.    Robert LaPore breached his personal guarantee to North Star by not paying for the services North Star performed on behalf of Spencer Rock Products when Spencer Rock Products failed to make payment as required.

3.    Nugget breached an implied in fact contract it had with North Star by not paying for the services North Star performed on the Homer Spit Project.

4.    Nugget is legally responsible for Spencer Rock Product's debt to North Star because of Nugget's relationship with Spencer Rock Products.

5.    USF&G is responsible for Spencer Rock Products' debt to North Star because USF&G is Nugget's surety on the project.

6.    Nugget has been unjustly enriched by receiving the value of North Star's services without paying for them and North Star should therefore be fairly compensated.

7.    Nugget withheld funds properly due to North Star and should therefore be disgorged of those funds in favor of North Star.

8.    Nugget wrongfully interfered with the contract between North Star and Spencer Rock Products.

9.    North Star is entitled to recover compensatory damages for the work it performed or would have performed under the project for the above reasons.

10.    North Star is entitled to an award of punitive damages against Nugget for its interference with North Star's contract with Spencer Rock Products.

The plaintiff has the burden of proving these claims.

The defendant, Nugget, denies all of North Star's claims and also contends that:

1.    North Star has failed to mitigate its damages.

2.    Any interference by Nugget in the contract between North Star and Spencer Rock Products was justified.

The defendant, USF&G, claims that it does not owe North Star any money on its bond because:

1.     It is protected by the terms of the bond.

2.     It is protected by Nugget's contract with Spencer Rock Products.

3.     It is protected by the terms of the Miller Act.

Defendants Nugget and USF&G have the burden of proof on these affirmative defenses.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 1.2 (modified to include claims and defenses and a background narrative of the case).

# DISPUTED INSTRUCTION NO. 2 OFFERED BY NUGGET CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

This dispute arises from the performance of a federal construction contract in 1997-98 known as the Homer Spit Repair & Extension Project.  Nugget Construction Inc. was the prime contractor for that project, which was within the scope of a federal law known as the Miller Act.  For one portion of this contract, Nugget entered into a contract with Spencer Rock Products to quarry certain types of rock from a quarry in the Chugach Mountains and transport that rock to Seward where Spencer Rock Products would have the rock loaded onto Nugget's barge for transport to Homer.  North Star Terminal & Stevedore Company contracted with Spencer Rock Products to load rock onto Nugget's barges. North Star was never paid for the services it provided.

The plaintiff, North Star, claims that:

1.    Spencer Rock Products breached its contract with North Star by not paying for the services North Star performed on behalf of Spencer Rock Products.

2.    Robert LaPore breached his personal guarantee to North Star by not paying for the services North Star performed on behalf of Spencer Rock Products when Spencer Rock Products failed to make payment as required.

3.    Nugget breached an implied in fact contract it had with North Star by not paying for the services North Star performed on the Homer Spit Project.

4.      Nugget is legally responsible for Spencer Rock Product's debt to North Star because of Nugget's relationship with Spencer Rock Products.

5.      USF&G is responsible for Spencer Rock Products' debt to North Star because USF&G is Nugget's surety on the project.

6.      Nugget wrongfully interfered with the contract between North Star and Spencer Rock Products.

7.      North Star is entitled to recover compensatory damages for the work it performed under the project for the above reasons.

8.      North Star is entitled to an award of punitive damages against Nugget for its interference with North Star's contract with Spencer Rock Products.

The plaintiff has the burden of proving these claims.

The defendant, Nugget, denies all of North Star's claims and also contends that:

1.      North Star has failed to mitigate its damages.

2.      Any interference by Nugget in the contract between North Star and Spencer Rock Products was justified.

The defendant, USF&G, claims that it does not owe North Star any money on its bond because:

1.      It is protected by the terms of the bond.

2.      It is protected by Nugget's contract with Spencer Rock Products.

3.      It is protected by the terms of the Miller Act.

Defendants Nugget and USF&G have the burden of proof on these affirmative

defenses.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 1.2 (modified to include claims and
defenses and a background narrative of the case).

**STIPULATED INSTRUCTION NO. 3**
**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a

preponderance of the evidence, it means you must be persuaded by the evidence that

the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party

presented it.

Authority:

Ninth Circuit Model Civil Jury Instruction No. 1.3.

## STIPULATED INSTRUCTION NO. 4
## TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS

You should decide the case as to each party separately. Unless otherwise stated, the

instructions apply to all parties.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 1.5.

## STIPULATED INSTRUCTION NO. 5
## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits which are received into evidence; and

3.      any facts to which the lawyers have agreed.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 1.6.

## STIPULATED INSTRUCTION NO. 6
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.     Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

4.     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Authority:

Ninth Circuit Model Civil Jury Instruction No. 1.7 (modified as underlined in (1)).

**STIPULATED INSTRUCTION NO. 7**
**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose,
you must consider it only for that limited purpose and for no other.

[The testimony [you are about to hear] [you have just heard] may be considered only for
the limited purpose of [describe purpose] and for no other purpose.]

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 1.8.

**STIPULATED INSTRUCTION NO. 8**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 1.9.

## STIPULATED INSTRUCTION NO. 9
## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 1.10.

## STIPULATED INSTRUCTION NO. 10
## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness's memory;

3.    the witness's manner while testifying;

4.    the witness's interest in the outcome of the case and any bias or prejudice;

5.    whether other evidence contradicted the witness's testimony;

6.    the reasonableness of the witness's testimony in light of all the evidence; and

7.    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instructions No. 1.11.

## STIPULATED INSTRUCTION NO. 11
## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails. Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the [bailiff] [clerk] [law clerk] to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instructions No. 1.12.

## STIPULATED INSTRUCTION NO. 12
## NO TRANSCRIPT AVAILABLE TO JURY

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

Authority:

Ninth Circuit Model Civil Jury Instructions No. 1.13.

**STIPULATED INSTRUCTION NO. 13**
**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instructions No. 1.14.

## STIPULATED INSTRUCTION NO. 14
## BENCH CONFERENCES AND RECESSES

From time to time during the trial, it [may become] [became] necessary for me to talk

with the attorneys out of the hearing of the jury, either by having a conference at the

bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please

understand that while you [are] [were] waiting, we [are] [were] working. The purpose of

these conferences is not to keep relevant information from you, but to decide how

certain evidence is to be treated under the rules of evidence and to avoid confusion and

error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length

of these conferences to a minimum. I [may] [did] not always grant an attorney's request

for a conference. Do not consider my granting or denying a request for a conference as

any indication of my opinion of the case or of what your verdict should be.

Authority:

Ninth Circuit Model Civil Jury Instruction No. 1.18.

**STIPULATED INSTRUCTION NO. 15**
**OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement.

An opening statement is not evidence. It is simply an outline to help you understand

what that party expects the evidence will show. A party is not required to make an

opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-

examine. Then the defendant may present evidence, and counsel for the plaintiff may

cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the

case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 1.19.

## STIPULATED INSTRUCTION NO. 16
## STIPULATIONS OF FACT

The parties have agreed to certain facts [to be placed in evidence as Exhibit ___] [that

will be read to you]. You should therefore treat these facts as having been proved.


<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 2.2.

**STIPULATED INSTRUCTION NO. 17**
**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. [When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.]

The deposition of [witness] was taken on [date]. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

Authority:

Ninth Circuit Model Civil Jury Instruction No. 2.4.

## STIPULATED INSTRUCTION NO. 18
## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not received in evidence [may be] [have been] shown to

you in order to help explain the contents of books, records, documents, or other

evidence in the case. They are not themselves evidence or proof of any facts. If they do

not correctly reflect the facts or figures shown by the evidence in the case, you should

disregard these charts and summaries and determine the facts from the underlying

evidence.

Authority:

Ninth Circuit Model Civil Jury Instruction No. 2.12.

## STIPULATED INSTRUCTION NO. 19
## CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries [may be] [have been] received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 2.13.

## STIPULATED INSTRUCTION NO. 20
## EVIDENCE IN ELECTRONIC FORMAT

Those exhibits capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. (Alternatively, you may request a paper copy of an exhibit received in evidence by sending a note through the [clerk] [bailiff].) If you need additional equipment or supplies, you may make a request by sending a note.

In the event of any technical problem, or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Be as brief as possible in describing the problem and do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room [with [the clerk] [the bailiff] [me] present for the sole purpose of assuring that the only matter that is discussed is the technical problem.] When the court technician or any non-juror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to make sure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform me immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 2.14.

## STIPULATED INSTRUCTION NO. 21
## EXISTENCE OF DISPUTED TERMS

In this case, North Star and Spencer Rock Products agree that they entered into a contract. North Star claims that, under the contract, Spencer Rock Products promised that North Star would load on Nugget Construction's barges all rock that Spencer Rock Products supplied for Nugget Construction in connection with the Homer Spit Project. You must decide whether this promise was made as part of the contract. A promise may be implied from conduct or words. The law does not require that the conduct or words be in any special form.

To find that a promise was made as part of the contract you must decide that it is more likely true than not true that:

1.    Spencer Rock Products promised North Star that North Star would have the exclusive right to load Spencer Rock Products rock on Nugget's barge in connection with the Homer Spit Project; and

2.    Spencer Rock Products promise was made in exchange for something of value to be given or performed by North Star.

If you decide that both things are more likely true than not true, then the defendant's promise was part of the contract.

Otherwise, it was not part of the contract.

<u>Authority:</u>

Alaska Civil Pattern Jury Instruction No. 24.01C (modified to include names of parties and specify nature of promises).

# STIPULATED INSTRUCTION NO. 22
# BREACH OF CONTRACT

North Star claims that the Spencer Rock Products and Robert LaPore did not keep their respective promises to pay North Star.

For North Star to win on this claim, you must decide that it is more likely true than not true that Spencer Rock Products and/or Robert LaPore failed to keep their respective promises.  Otherwise, you must decide for Spencer Rock Products and Robert LaPore.

If you decide that it is more likely true than not true that Spencer Rock Products and/or Robert LaPore failed to keep their respective promises, then you must return a verdict for North Star and decide the amount of North Star's damages.  I will tell you how to do this in a moment.

<u>Authority:</u>

Alaska Civil Pattern Jury Instruction No. 24.03 (modified to include names of parties).

## STIPULATED INSTRUCTION NO. 23
## MILLER ACT LIABILITY—INTRODUCTION

Nugget was the prime contractor on the Homer Spit Repair & Extension Project. This was a federal construction project under the federal Miller Act, with USF&G posting a bond as required under the Miller Act. One of the claims raised by plaintiff North Star arises under the Miller Act.  The Miller Act establishes the general requirement of a payment bond to protect those who supply labor or materials to a contractor or subcontractor on a federal project.  The bond provided under the Miller Act ensures payment to those who had a contractual arrangement with the prime contractor or with a subcontractor.  The bond does not protect those who supply labor or materials to a party who is merely a supplier to a contractor.  It does protect those who supply labor and materials to a subcontractor of a contractor.  The maximum amount that North Star can recover against Nugget and USF&G on the Miller Act bond is the amount Spencer Rock Products owes North Star.    For Nugget and USF&G to be liable to North Star under the Miller Act you must determine whether there was a contractual relationship between Nugget and North Star.

I will instruct you separately on how to determine if Nugget is legally responsible for the acts of Spencer Rock Products and how to determine if Nugget entered into an implied-in-fact contract with North Star

Authority:

*F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 121-22 (1974); *MacEvoy Co. v. United States ex rel. Tomkins Co.*, 322 U.S. 102, 109-11 (1944);.*Fidelity and Deposit Co. of Maryland v. Harris*, 360 F.2d 402, 410-11 (9th Cir. 1966).

## STIPULATED INSTRUCTION NO. 24
## AGENCY – CONTRACT LIABILITY – PRINCIPAL SUED ALONE

The plaintiff, North Star, claims that it was damaged because Spencer Rock Products broke a promise to it, and that the defendant, Nugget, is legally responsible for the damage, because of its relationship with Spencer Rock Products.

The first thing you must decide is whether the defendant, Nugget, is legally responsible for the acts of Spencer Rock Products.  If your answer is yes, then North Star is entitled to recover the same amount from Nugget as it is entitled to recover against Spencer Rock Products.  If your answer is no, you should return a verdict for the defendant.

I will now explain how you decide if Nugget is legally responsible for the acts of Spencer Rock Products.

Authority:

Alaska Civil Pattern Jury Instruction No. 23.01C (modified to include names of parties).

**DISPUTED INSTRUCTION NO. 25 OFFERED BY NUGGET
NUGGET'S RESPONSIBILITY TO NORTH STAR—EXPRESS
CONTRACTUAL LIABILITY**

I will now tell you how to decide whether Nugget Construction is legally responsible for the acts of Spencer Rock Products.  Nugget Construction is legally responsible if you decide that it is more likely than not true that:

1.     Spencer Rock Products negotiated and signed its contract with North Star on behalf of Nugget Construction, and not as Spencer Rock Products.  In deciding this issue, consider only whether Spencer Rock Products was acting on behalf of Nugget Construction when the agreement was made and not whether Spencer Rock Products later acted on behalf of Nugget Construction, or

2.     Nugget Construction used Spencer Rock Products for the purpose of defeating public convenience, justifying wrong, committing fraud or defending crime.

Unless you find any of these things to be more likely than not true, Nugget Construction is not legally responsible for the actions of Spencer Rock Products.

<u>Authority:</u>

*Bendix Corp. v. Adams*, 610 P.2d 24, 32-34 (Alaska 1980).

**DISPUTED INSTRUCTION NO. 25 OFFERED BY NORTH STAR AGENCY AND RESPONDEAT SUPERIOR RELATIONSHIPS**

I will now tell you how to decide whether Nugget is legally responsible for the acts of Spencer Rock Products.  Nugget is legally responsible if you decide that it is more likely than not true.

1.    Spencer Rock Products agreed to do something for Nugget; and

2.    under a modification of that agreement, Nugget had the right to control the actions of Spencer Rock Products whether or not Nugget used its control.

I do not think that you will have difficulty understanding how to decide whether Spencer Rock Products agreed to do something for Nugget.  The other question you must decide might be more difficult.  I will offer some additional explanation to help you.

If you decide there was an agreement in which Spencer Rock Products agreed to do something for Nugget you will then decide whether under the modification of that agreement, referred to as the Support Agreement, Nugget had the right to control the actions of Spencer Rock Products.  You should know that Nugget had the right to control the actions of Spencer Rock Products if Nugget reserved or exercised the authority to make final decisions on how the work was to be done and how the agreement was to be carried out, whether or not Nugget used its control.  Nugget did not have the right to control the actions of Spencer Rock Products if Spencer Rock Products had the authority to make final decisions on how all the work was to be done or the agreement was to be carried out and could ignore Nugget's ideas or recommendations, even if Nugget received reports from Spencer Rock Products or

periodically inspected its work.

If you decide that it is more likely than not that there was an agreement by Spencer

Rock Products to do something for Nugget, and that under the modification of the

agreement Nugget had the right to control the actions of Spencer Rock Products, then

Nugget is legally responsible for the actions of Spencer Rock Products.  If you find all of

these things to be more likely than not true, Nugget is legally responsible for the actions

of Spencer Rock Products.

<u>Authority:</u>

Alaska Civil Pattern Jury Instruction No. 23.03 (modified to add party names and
relevant facts and to remove instructions regarding whether Spencer Rock Products
exceeded the scope of employment, which is not an issue in dispute)

## NUGGET'S OBJECTION TO
## DISPUTED INSTRUCTION NO. 25
## AGENCY AND RESPONDEAT SUPERIOR RELATIONSHIPS –
## DEFINITIONS – OFFERED BY NORTH STAR

The bases for finding Nugget responsible on a respondeat superior basis under Alaska Law are set forth in Nugget's Disputed Instruction No. 25. As to agency, absent ratification (which is not an issue in this case), the agreement between North Star and Spencer Rock Products must have been made when Spencer Rock Products was acting on behalf of Nugget. *Bendix v Adams*, 610 P2.d 24, 32-34 (Alaska 1980). North Star's disputed jury instructions relating to agency do not include this element.

Moreover, the Support Agreement is wholly irrelevant to the agency instructions since that occurred after Spencer Rock Products had entered into its agreement with North Star. If North Star contends Spencer Rock Products was Nugget's agent before Spencer Rock Products entered into its agreement with North Star (which lacks any factual basis that Nugget is aware of), then ACPJI 23.03 should be utilized.

The appropriate inquiry for control after Spencer entered into its agreement with North Star is whether Spencer Rock Products' corporate entity should be disregarded, and that test as utilized in Alaska is set forth in Nugget's proposed instruction 25. *See Bendix Corporation v Adams*, 610 P.2d 24, 32-34 (Alaska 1980).

## DISPUTED INSTRUCTION NO. 26 OFFERED BY NORTH STAR AGENCY – LIABILITY OF UNDISCLOSED PRINCIPAL

North Star claims that Spencer Rock Products was acting as an agent under the control Nugget, making Nugget liable on the contract. Nugget asserts that no such relationship existed.

In the law of agency there is a concept referred to as an undisclosed principal. This is a principal who has an agency relationship with another party, but chooses to not disclose that relationship to third parties. In this case, it is undisputed that Nugget took steps to prevent disclosure to all other parties of the existence of the Support Agreement between Nugget and Spencer. An undisclosed principal is bound by contracts made or performed on its account by an agent acting within its authority.

In order for an agency relationship to exist under these circumstances, an agent must have the power to alter the legal relationship between the principal and third parties. The principal, in turn, must have the right to control the conduct of the agent with respect to the matters entrusted to him.

For purposes of this instruction, I instruct you that you merely need to determine if Nugget exercised sufficient control over Spencer Rock Products. Refer to my previous instruction regarding agency and respondeat superior liability. If you find that Nugget sufficiently controlled Spencer Rock Products, then you have found that Spencer Rock Products was an agent of Nugget.

Authority:

Restatement (Second) of Agency §§186; *Indiana Gas Co. v. Home Ins. Co*., 141 F.3d

314, 319 (7th Cir. 1998); *North Star Terminal & Stevedore Co. v. Nugget Constr., Inc*., 445 F.Supp.2d 1063 (D. Alaska 2006); *United States v. Everett Monte Cristo Hotel, Inc.*, 524 F.2d 127, 140 (9th Cir. 1975); *Manes v. Coats*, 941 P.2d 120 (Alaska 1997).

**NUGGET'S OBJECTION TO
DISPUTED INSTRUCTION NO. 26
AGENCY – LIABILITY OF UNDISCLOSED PRINCIPAL
OFFERED BY NORTH STAR**

See Nugget's Objections to Disputed Instruction No. 25 offered by North Star.

## DISPUTED INSTRUCTION NO. 27 OFFERED BY NORTH STAR AGENCY – CREDITOR ASSUMES CONTROL

A creditor who assumes control of his debtor's business, for the mutual benefit of himself and his debtor, may become a principal, with liability for the acts and transactions of the debtor in connection with the business.

If the creditor takes over management of the debtor's business either in person or through an agent, and directs what contracts may or may not be made, he becomes the principal, liable as any principal for the obligations incurred thereafter in the normal course of business by the debtor who has now become the creditor's general agent. The point at which the creditor becomes the principal is that at which he assumes de facto control over the conduct of his debtor, regardless of what the terms of the formal contract with his debtor may be.

Nugget can be found to be a principal under this theory if you find that it is more likely true than not true each of the following:

1.      Nugget was a creditor to Spencer Rock Products

2.      Nugget assumed control over any aspect of Spencer Rock Products' business, including any contracts made with Spencer; and

3.      Nugget assumed control over Spencer Rock Products to benefit either Nugget or Spencer.

If you find these factors proven by a preponderance of the evidence, then you have found that Nugget was acting as a principal in control over Spencer.  As such, Nugget is

liable for any obligations incurred by Spencer following the moment that Nugget took

control.  Otherwise, you must return a verdict in favor of Nugget on this theory.

<u>Authority:</u>

Restatement (Second) of Agency § 14O; *A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285, 290-93 (Minn. 1981); *Buck v. Nash-Finch Co.*, 78 S.D. 334, 102 N.W.2d 84, 89-91 (S.D. 1960).

**NUGGET'S OBJECTION TO
DISPUTED INSTRUCTION NO. 27
AGENCY- CREDITOR ASSUMES CONTROL – OFFERED BY NORTH
STAR**

See Nugget's Objections to Disputed Instruction No. 25 offered by North Star.

## DISPUTED INSTRUCTION NO. 28 OFFERED BY NORTH STAR
## PROMPT PAY ACT

One of the contractual provisions governing the federal construction project known as the Homer Spit Repair & Extension Project incorporated a federal law known as the Prompt Pay Act. Under this law, a contractor on a federal construction project is entitled to receive what are called progress payments throughout the contractor's work on the project.

In order to receive these payments, however, the contractor is required to certify to the federal government two things: (1) that payments to subcontractors and suppliers have been made from previous progress payments, and (2) that timely payments will be made from the proceeds of the payment covered by the certification.

There is one exception to this requirement. A contractor may withhold payment from a subcontractor if the contract between the two parties includes a provision permitting the contractor or subcontractor to make a determination that part or all of the subcontractor's request for payment may be withheld in accordance with the agreement between the parties. This exception also allows the contractor to withhold funds if it gives notice to the subcontractor of its intent to withhold funds and such notice is given to the federal government.

You must determine if Nugget was justified in withholding payments from Spencer Rock Products under the Support Agreement between those parties. In order to make this determination, you must find the following by a preponderance of the evidence:

1.      that Spencer Rock Products was a subcontractor;

2.      that the Support Agreement provided that Nugget could withhold funds from

Spencer Rock Products;

3.      that Nugget gave written notice to Spencer Rock Products of its intent to withhold

funds; and

4.      that Nugget gave written notice to the Army Corps of Engineers that it was

intending to withhold funds from Spencer Rock Products.

If you find each of these facts by a preponderance of the evidence, then you have found

that Nugget was justified in withholding funds from Spencer and can therefore not be

held liable for Spencer's breach of contract.  If you do not, then you have found that

Nugget was not justified in withholding funds from Spencer under that claim.

<u>Authority:</u>

31 U.S.C. §§3903, 3905; Bidding Documents, Homer Spit Repair & Extension Project,
Section I.55(c)(2).

**NUGGET'S OBJECTION TO
DISPUTED INSTRUCTION NO. 28
PROMPT PAY ACT – OFFERED BY NORTH STAR**

North Star's proposed jury instruction is based on an erroneous reading of the
Prompt Payment Act, 31 U.S.C. § 3901, *et seq*., and the contract documents.  At the
outset, the Prompt Payment Act does not form a basis for recovery by North Star
against Nugget; it defines relationships involving the Government, Nugget and Spencer.
North Star has cited no law which allows the Prompt Payment Act as a basis for
recovery against Nugget nor has such a claim been plead in this matter.  *U.S. ex rel.
Virginia Beach Mechanical Services, Inc. v SAMCO Const. Co*., 39 F. Supp. 2d 661,
675-78 (E.D. Va. 1999).

Moreover, North Star relies on § 3905(d) to argue that a prime contractor can
only withhold funds from a subcontractor.  Because North Star's reading of the statute is
incorrect, it is left with no other basis for asserting that Nugget's actions in withholding
funds were wrongful.  North Star cites no legal authority for the proposition that a prime
contractor cannot withhold funds from a supplier for which the prime contractor has
incurred costs associated with the supplier's breach.  Nugget has also found no such
authority for this proposition, but such a narrow reading belies common sense, and is
not compatible with other provisions of the Act.  Moreover, it is inconsistent with the
Corps of Engineers' own interpretation of the statute, as reflected by the Corps of
Engineers' decision to continue releasing payments to Nugget following notice from
Spencer Rock Products of Nugget's withholding.

In § 3905(b), the Act requires the prime contactor to include certain clauses in its contracts "entered into by the prime contactor and a subcontractor (**including a material supplier**) for the purposes of performing such construction contract – " (emphasis added). The operative section cited by North Star (§ 3905(d)), states that "[t]he clauses required by subsection (b) and (c) of this section shall not be construed to impair the right of the prime contractor or subcontractor at any tier to negotiate, and to include in their subcontract," provisions that allow for the withholding of funds for non-performance. Under North Star's reading of the provision, the court must ignore the parenthetical in paragraph (b), broadening the definition of subcontractor to include material supplier, when reading paragraph (d). This is not a reasonable or logical reading of the statute, as it renders the parenthetical meaningless in the overall context of the Act. Such an interpretation would create a situation where the prime contractor would have a remedy against a subcontractor in breach, but not a supplier. Nothing in the Act supports this result.

Importantly, that the definition of "subcontractor" includes "material suppliers" is confirmed by the interpretation adopted in the Federal Acquisition Regulations ("FAR") relating to subcontracting policies and procedures used by the Corps of Engineers. Specifically, the FAR defines "subcontractor" as including "any supplier, distributor, vendor, or firm that furnishes supplies . . .  to or for a prime contractor."  48 C.F.R. § 44.101. The FAR also includes the implementing clauses for the Prompt Payment Act for incorporation into federal contracts. 48 C.F.R. §§ 32.908, 52.231-27. Thus, the contract clause cited by North Star in its Opposition is based on the FAR, which defines "subcontract" as inclusive of suppliers. This means Nugget's withholding of funds from

Spencer Rock Products was done in accordance with the Prompt Payment Act, as

implemented by the FAR, and was not wrongful.

The Support Agreement between Nugget and Spencer Rock Products comports

with the requirements of paragraph (d), and as such, is completely proper within the

strictures of the Prompt Payment Act.  Moreover, it is consistent with ordinary breach of

contract principles reflected in Nugget's cited cases in its motion in limine relating to this

matter.  Consequently, no jury instructions relating to the Prompt Payment Act should

be given.

Alternatively, if the Prompt Payment Act doesn't include suppliers, then Nugget

was entirely justified in withholding money from Spencer Rock Products pursuant to the

UCC sections relating to the supply of goods.  As stated in Arnavas, Government

Contract Guidebook, Section 26.3 (3d ed. 2006):

> The "sales" article—Article 2—of the UCC sets forth the basic rules for
> contracts for the sale of goods.  It is intended to be the sole statement of
> sales law for the points it actually covers.  Therefore, Government
> subcontracts—to the extent that a particular point is not preempted by the
> federal procurement regulations—will be interpreted and enforced in
> accordance with the UCC.

Section 45.02.717 of the Alaska version of the UCC provides:

> The buyer on notifying the seller of the intention to do so may deduct all or
> any part of the damages resulting from a breach of the contract from any
> part of the price still due under the same contract.

The Support Agreement clearly notified Spencer that deductions would be made to

Spencer's supply contract, as did subsequent change orders and letters from Nugget to

Spencer.

## INSTRUCTION NO. 28A
## PROMPT PAY ACT (ALTERNATIVE)

One of the contractual provisions governing the federal construction project known as

the Homer Spit Repair & Extension Project incorporated a federal law known as the

Prompt Pay Act.  Under this law, a contractor on a federal construction project is entitled

to receive what are called progress payments throughout the contractor's work on the

project.

In order to receive these payments, however, the contractor is required to certify to the

federal government two things: (1) that payments to subcontractors and suppliers have

been made from previous progress payments, and (2) that timely payments will be

made from the proceeds of the payment covered by the certification.

There is one exception to this requirement.  A contractor may withhold payment from a

subcontractor if the contract between the two parties includes a provision permitting the

contractor or subcontractor to make a determination that part or all of the

subcontractor's request for payment may be withheld in accordance with the agreement

between the parties.  This exception also allows the contractor to withhold funds if it

gives notice to the subcontractor of its intent to withhold funds and such notice is given

to the federal government.

However, I instruct you that it has already been determined as a matter of law that

Spencer Rock Products was not a subcontractor, but a supplier to Nugget for purposes

of the Miller Act.  Therefore, I instruct you that, under the Prompt Pay Act, Nugget was

not justified in withholding any funds from Spencer Rock Products, despite the Support

Agreement between Nugget and Spencer.

<u>Authority:</u>

31 U.S.C. §§3903, 3905; Bidding Documents, Homer Spit Repair & Extension Project, Section I.55(c)(2).

## NUGGET'S OBJECTION TO
## DISPUTED INSTRUCTION NO. 28A
## PROMPT PAY ACT (ALTERNATE) – OFFERED BY NORTH STAR

See Nugget's objections to Disputed Instruction No. 28, Prompt Pay Act –

Offered By North Star

## INSTRUCTION NO. 29
## DEFINITION OF "SUBCONTRACTOR"
## [to be used if Instruction No. 28A not used]

I will now define "subcontractor" for you.  A subcontractor is someone who performs for and takes from the prime contractor a specific part of the original contract.  In addition, the contractor must be in a position to protect itself with the Miller Act bond through this relationship.  If there are a relatively few number of parties who act as a subcontractor, then these parties are well known to the primary contractor.  It is thus easy for the primary contractor to identify these parties and secure against any liability by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractors.

If you find by a preponderance of the evidence that Spencer Rock Products took over a specific part of the Homer Spit contract and it was one of a few parties in a direct contractual relationship with Nugget, then you have found that Spencer Rock Products was a subcontractor.  If you do not so find by a preponderance of the evidence, then you have not found that Spencer Rock Products was a subcontractor.

Authority:

*MacEvoy Co. v. United States ex rel. Tomkins Co.*, 322 U.S. 102, 109-11 (1944).

**NUGGET'S OBJECTION TO**
**DISPUTED INSTRUCTION NO. 29**
**DEFINITION OF "SUBCONTRACTOR" – OFFERED BY NORTH STAR**

See Nugget's objections to Disputed Instruction No. 28, Prompt Pay Act –

Offered By North Star

## STIPULATED  INSTRUCTION NO. 30  IMPLIED CONTRACT

Alternatively, I will instruct you on how Nugget and USF&G can be liable to North Star under the Miller Act based on an implied contractual relationship between North Star and Nugget.  In order to find such a contract, you must decide that it is more likely than not true that during the course of the project:

1.     Nugget engaged in subterfuge or colluded with Spencer Rock Products, or inserted Spencer Rock Products for the purpose of insulating Nugget and its surety from Spencer Rock Products' suppliers, or

2.     Nugget used Spencer Rock Products for purposes of public convenience, justifying wrong, committing fraud, or defending crime.

<u>Authority:</u>

*Fidelity and Deposit Co. of Maryland v. Harris*, 360 F.2d 402, 410-11 (9th Cir. 1966).

## DISPUTED INSTRUCTION NO. 31 OFFERED BY NORTH STAR
## IMPLIED-IN-FACT CONTRACT

Alternatively, I will instruct you on how Nugget and USF&G can be liable to North Star under the Miller Act based on an implied-in-fact contract between North Star and Nugget.

An implied-in-fact contract arises under circumstances which, according to the ordinary course of dealing and common understanding of people, show a mutual intention to contract.

A contract is implied in fact where the intention is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction.  A party may not rely on its subjective intent to defeat the existence of a contract if its words and actions objectively and reasonably lead another to believe that a contract has been entered into.

If you find that North Star and Nugget, through their words or actions, entered into an implied-in-fact contract, then you must find in favor of North Star on its Miller Act claim. Otherwise, you must enter a verdict in favor of Nugget and USF&G on this claim.

Authority:

*Brigdon v. Lamb*, 929 P.2d 1274, 1278 (Alaska 1997).; *Reeves v. Alyeska Pipeline Svc. Co.*, 926 P.2d 1130, 1140 (Alaska 1996); *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1281 (Alaska 1985).

**NUGGET'S OBJECTION TO
DISPUTED INSTRUCTION NO. 31
IMPLIED IN FACT CONTRACT – OFFERED BY NORTH STAR**

This is a case involving federal law.  Federal law sets forth the standard for an implied in fact contract in cases involving the Miller Act.  That law is set forth in Nugget's proposed jury instructions on implied contracts and should be used in lieu of North Star's Disputed Instruction No. 32.  If this instruction is given, then it should be clear that a finding of implied liability under this instruction does not create Miller Act liability for USF&G.

## DISPUTED INSTRUCTION NO. 32 OFFERED BY NORTH STAR
## QUASI-CONTRACT

Plaintiff North Star claims that even if there was no express or implied contract with Nugget, it is entitled to recover under the law of quasi-contract.  Quasi-contracts are not true contracts but are obligations to do justice created in the law.  Consequently, the right of a party to recover that arises in quasi-contract is not based upon any agreement between the parties, objective or subjective.  Recovery is based on the equitable principle that one person should not be unjustly enriched to the detriment of another.

In order for the plaintiff to recover on this claim, you must find each of the following facts proven by a preponderance of the evidence:

1.      a benefit conferred upon Nugget by North Star;

2.      appreciation by Nugget of such benefit; and

3.      acceptance and retention by the Nugget of such benefit under such circumstances that it would be inequitable for it to retain it without paying the value thereof.

The key theme running through these factors is that Nugget cannot "get something for nothing."  If you find these three factors to be more likely true than not true, then you must return a verdict in favor of the plaintiff on this claim.  Otherwise, you must return a verdict in favor of Nugget.

### Authority:

*Alaska Sales & Serv. v. Millet*, 735 P.2d 743, 746 (Alaska 1987).

## NUGGET'S OBJECTION TO
## DISPUTED INSTRUCTION NO. 32
## QUASI-CONTRACT – OFFERED BY NORTH STAR

This is an equitable remedy that the court indicated in its July 28, 2006, order depends on the relationship between Nugget and Spencer. *Id*. at 20-21. That relationship is adequately addressed in Nugget's proposed jury instructions so this instruction should not be given.

Moreover, the parties do not dispute that there was a contract between Spencer Rock Products and North Star for the stevedoring services for which North Star now seeks quantum meruit recovery from Nugget for. Applicable law provides that if the services are covered by a contract, then extra-contractual remedies such as quasi-contract are unavailable. *See Mitford v. de Lasala*, 666 P.2d 1000, 1006, n.1 (Alaska 1983); *Fairbanks North Star Borough v. Kandik Const. Inc. and Assoc.*, 795 P.2d 793, 799 (Alaska 1990), opinion vacated in part on rehearing on other grounds, 823 P.2d 632 (Alaska 1991); *see also Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392 (9th Cir. 1996); 66 Am. Jur. 2d Restitution and Implied Contracts (2002), stating "[t]here cannot be an express and an implied contract for the same thing existing at the same time."

Finally, the court has indicated the unjust enrichment, quasi-contract and quantum meruit claims are treated similarly under Alaska law. *Id*. at 20. Consequently, only a single instruction should be given, if an instruction is given, as stated in North Star Disputed Instruction 33, which mirrors the elements set forth in the court order at page 19.

## DISPUTED INSTRUCTION NO. 33 OFFERED BY NORTH STAR
## QUANTUM MERUIT

Plaintiff North Star claims that Nugget should not be entitled to retain payments it earned under the Homer Spit contract because Nugget would be unjustly enriched and is entitled to recovery under a theory of quantum meruit.

In order to find for North Star on this claim, you must find each of the following facts proven by a preponderance of the evidence:

1.      North Star conferred a benefit to Nugget;

2.      Nugget appreciated that benefit; and

3.      It would be inequitable for Nugget to retain that benefit without paying for it.

If you find these facts to be more likely true than not true, than you must return a verdict in favor of North Star on this claim.  Otherwise, you must return a verdict in favor of Nugget.  If you return a verdict in favor of North Star, I will instruct you separately on how to measure damages under quantum meruit.

<u>Authority:</u>

*Parliment v. Yukon Flats Sch. Dist.*, 760 P.2d 513, 518 (Alaska 1988).

**NUGGET'S OBJECTION TO
DISPUTED INSTRUCTION NO. 33
QUANTUM MERUIT – OFFERED BY NORTH STAR**

See Nugget's objections to Disputed Instruction No. 32, Quasi-Contract – Offered

By North Star.

## DISPUTED INSTRUCTION NO. 34 OFFERED BY NORTH STAR
## UNJUST ENRICHMENT

Plaintiff North Star claims that Nugget should not be entitled to retain payments it earned under the Homer Spit contract because Nugget would be unjustly enriched. Unjust enrichment is defined as the receipt or retention of money or property through unjust, unconscionable, or unlawful means. Unjust enrichment exists where a party has received a benefit from another and it would be unfair for that party to retain the benefit without compensating the other party for its value.

In order to find for North Star on this claim, you must find each of the following facts proven by a preponderance of the evidence:

1.     North Star conferred a benefit to Nugget;

2.     Nugget valued or received value from that benefit; and

3.     It would be inequitable for Nugget to retain that benefit without paying for it.

If you find these facts to be more likely true than not true, than you must return a verdict in favor of North Star on this claim.  Otherwise, you must return a verdict in favor of Nugget.

### Authority:

*Rausch v. Devine*, 80 P.3d 733 (Alaska 2003); *Sparks v. Gustafson*, 750 P.2d 338 (Alaska 1998); *Reeves v. Alyeska Pipeline Svc. Co.*, 926 P.2d 1130, 1143 (Alaska 1996).

**NUGGET'S OBJECTION TO
DISPUTED INSTRUCTION NO. 34
UNJUST ENRICHMENT – OFFERED BY NORTH STAR**

See Nugget's objections to Disputed Instruction No. 32, Quasi-Contract – Offered

By North Star.

## DISPUTED INSTRUCTION NO. 35 OFFERED BY NORTH STAR
## EQUITABLE SUBORDINATION

During the performance of the Homer Spit project, both North Star and Nugget were creditors of Spencer Rock Products.  That is, under the express contracts and/or modified contracts between the parties, Spencer Rock Products owed money to both North Star and Nugget.  Plaintiff claims that it is entitled to a higher priority as creditor and to recover from Nugget for services that North Star provided to Spencer Rock Products under a theory of equitable subordination.

Under this doctrine, if a particular claim position of a creditor would produce injustice or unfairness to other creditors, you may offset or undo that creditor's claim position.  A need for equitable subordination arises in situations of fraud, unfairness, or breach of the rules of fair play.

Thus, in order for North Star to prevail on this claim, you must find the following proven by a preponderance of the evidence:

1.      Nugget's giving itself priority as a creditor of Spencer Rock Products produced injustice or unfairness to other creditors; and

2.      Nugget engaged in conduct amounting to fraud, unfairness, or a breach of fair play with regard to North Star or any other creditor of Spencer Rock Products.

If you find these factors to be more likely true than not true, than you must return a verdict in favor of North Star on this claim.  Otherwise, you must find for Nugget.

<u>Authority:</u>

*Nerox Power Sys. v. M-B Contr. Co*., 54 P.3d 791, 795 (Alaska 2002).

**NUGGET'S OBJECTION TO
DISPUTED INSTRUCTION NO. 35
EQUITABLE SUBORDINATION – OFFERED BY NORTH STAR**

See Nugget's objections to Disputed Instruction No. 32, Quasi-Contract – Offered

By North Star.

## DISPUTED INSTRUCTION NO. 36 OFFERED BY NORTH STAR
## CONSTRUCTIVE TRUST

Plaintiff claims that Nugget's withholding of funds from Spencer Rock Products created a constructive trust in North Star's favor.  A constructive trust is a relationship with property subjecting the person holding the property to a duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.  For purposes of this instruction, "property" refers to money retained by Nugget.

In order for North Star to prevail on this claim, you must find it to be more likely true than not true that Nugget is holding a property interest that it retains by reason of unjust, unconscionable, or unlawful means.

If you find by a preponderance of the evidence that a constructive trust exists, then you must restore to North Star the property of which it has been unjustly deprived and to take property from Nugget, the retention of which would result in a corresponding unjust enrichment to Nugget.  You should refer to my prior instruction on unjust enrichment in reaching this determination.  In other words the effect is to prevent a loss to the plaintiff and a corresponding gain to the defendant, and to put each of them in the position in which it was before the defendant acquired the property.

### Authority:

*McKnight v. Rice, Hoppner, Brown & Brunner*, 678 P.2d 1330, 1335 (Alaska 1984); Restatement (First) of Restitution§ 160, cmt. b; Restatement (Second) of Trusts § 1, cmt. e.

**NUGGET'S OBJECTION TO
DISPUTED INSTRUCTION NO. 36
CONSTRUCTIVE TRUST – OFFERED BY NORTH STAR**

See Nugget's objections to Disputed Instruction No. 32, Quasi-Contract – Offered

By North Star.

## DISPUTED INSTRUCTION NO. 37 OFFERED BY NUGGET
## INTENTIONAL INTERFERENCE WITH CONTRACTS—ELEMENTS

In this case North Star claims that Nugget Construction intentionally interfered with an agreement between North Star and Spencer Rock Products.  North Star can only make this claim if you find that Nugget did not have an implied contract and is not legally responsible for the acts of Spencer Rock Products.  In order for North Star to prevail on this claim, you must decide that it is more likely true than not true that the following six things happened:

1.     North Star had a valid agreement with Spencer Rock Products to load all of the rock Spencer supplied on Nugget's barges;

2.     Nugget knew about the agreement;

3.     Nugget intended to interfere with the agreement;

4.     the agreement was breached by Spencer Rock Products;

5.     the breach was caused by Nugget's wrongful or unjustified conduct; and

6.     North Star suffered damages as a result of the breach.

If you decide it is more likely true than not true that these six things happened, you have decided that Nugget interfered with North Star's agreement with Spencer Rock Products, and you must decide whether Nugget's conduct was legally justified.  I will tell you how to determine whether Nugget's conduct was legally justified in a moment.  Otherwise, you must return a verdict for Nugget.

<u>Authority:</u>

Alaska Civil Pattern Jury Instruction No. 19.01 (modified).

## DISPUTED INSTRUCTION NO. 37 OFFERED BY NORTH STAR
## INTENTIONAL INTERFERENCE WITH CONTRACTS - ELEMENTS

In this case the plaintiff North Star claims that the defendant Nugget intentionally interfered with an agreement between the plaintiff and Spencer Rock Products.

For purposes of this claim, I instruct you that the following facts have been determined as a matter of law: A contract existed between North Star and Spencer Rock Products, Nugget knew about that contract, the contract was breached, and that breach damaged North Star.

However, there are two more things that North Star must prove in order to prevail on this claim. You must decide that it is more likely true than not true that the following things happened:

1.    The breach of the contract between North Star and Spencer was caused by Nugget's wrongful or unjustified conduct; and

2.    North Star suffered damages as a result of the breach.

I will define "intent" for you in a moment. If you decide it is more likely true than not true that these six things happened, you have decided that Nugget interfered with North Star's agreement with Spencer Rock Products. [Sometimes, however, such interference may be legally justified. You must decide whether the defendant's conduct was legally justified.] I will tell you how to determine whether the defendant's conduct was legally justified in a moment. Otherwise, you must return a verdict for the defendant.

<u>Authority:</u>

Docket No. 636 at 18; Alaska Civil Pattern Jury Instruction No. 19.01 (modified to include party names and specify conduct in No. 3)

## STIPULATED INSTRUCTION NO. 38
## "INTENT" DEFINED

A person acts with intent if the person desires the results of the person's actions or believes the results are substantially certain to follow from those actions.  A person's act may be intentional even though it is neither malicious nor produced by hostile feelings toward another person.

Corporations can only act through their agents or employees.

<u>Authority:</u>

Alaska Civil Pattern Jury Instruction No. 19.02; *Ollice v. Alyeska Pipeline Serv. Co*., 659 P.2d 1182, 1188 (Alaska 1983).

## DISPUTED INSTRUCTION NO. 39 OFFERED BY NUGGET
## INTENTIONAL INTERFERENCE WITH CONTRACTS—JUSTIFICATION

In response to North Star's claim that Nugget Construction intentionally interfered with

North Star's agreement with Spencer Rock Products, Nugget claims that the

interference was legally justified.  In order for Nugget to prevail on this defense, you

must decide if it is more likely true than not true that:

1.      Nugget's predominant purpose for interfering with the agreement was to protect

        Nugget's own financial interests from being impaired or destroyed, rather than to

        act maliciously or with the specific intent to injure North Star; and

2.      The means employed by Nugget were not improper.

If you find that it is more likely true than not true that these elements have been

established, you must return a verdict for Nugget.  Otherwise, Nugget's conduct was not

legally justified.

### Authority:

Alaska Civil Pattern Jury Instruction No. 19.03 (modified).

## DISPUTED INSTRUCTION NO. 39 OFFERED BY NORTH STAR
## INTENTIONAL INTERFERENCE WITH CONTRACTS – JUSTIFICATION

In response to North Star's claim that the Nugget intentionally interfered with the North Star's agreement with Spencer Rock Products, the defendant claims that the interference was legally justified.  In order for the defendant to prevail on this defense, you must decide if it is more likely true than not true that:

1.    Nugget's predominant purpose for interfering with the agreement was to protect a direct financial interest from being impaired or destroyed, rather than to act maliciously or with the specific intent to injure the plaintiff; and

2.    The means employed by the defendant were not improper.

A "direct financial interest" for purposes of this instruction is Nugget's financial interest in the contract between North Star and Spencer Rock Products.  Nugget's interference is justified if it was acting to protect an investment in Spencer that was being impaired by the contract between North Star and Spencer.

If you find that it is more likely true than not true that these elements have been established, you must return a verdict for Nugget.  Otherwise, Nugget's conduct was not legally justified.

### Authority:

Alaska Civil Pattern Jury Instruction No. 19.03 (modified to include party names and provide supporting facts in No. 1); *Bendix Corp. v. Adams*, 610 P.2d 24, 30 (Alaska 1980).

## STIPULATED INSTRUCTION NO. 40
## DAMAGES FOR BREACH OF CONTRACT

If you find in favor of the plaintiff, North Star, against either or both Spencer Rock

Products or Nugget, you must then decide how much money would fairly compensate

North Star for each defendant's breach of contract.  In order to fairly compensate North

Star, your award should put the North Star in the same position that North Star would

have been in if the defendant had not breached its contract.

To make an award for any loss claimed by North Star, you must find that:

1.     North Star has shown the amount of the loss with reasonable certainty; and

2.     when the contract was made, the defendant had reason to know North Star's

       loss would be a probable result if the defendant breached the contract.  A

       defendant has reason to foresee that a loss would be a probable result if either

       (a) the loss follows in the ordinary course of events from a failure to keep the

       promise, or (b) the loss follows from special circumstances which the defendant

       had reason to know about when the promise was made.

Now I will explain to you how to measure damages requested by North Star so that

North Star will be in the same position that North Star would have been in if the

defendant had kept its promise.

1.     the loss in the value to North Star caused by the defendant's failure or deficiency

       of performance, minus

2.     any cost or other loss that North Star has avoided by not having to perform.

USF&G is responsible to North Star for the same amount of damages as Nugget is to

North Star for breach of contract damages.


<u>Authority:</u>

Alaska Civil Pattern Jury Instruction No. 24.09A and Use Note (modified to include party
names).

**STIPULATED INSTRUCTION NO. 41**
**DAMAGES FOR INTENTIONAL INTERFERENCE WITH CONTRACT**

If you decide in favor of North Star on the intentional interference claim against Nugget

Construction, you must then decide how much money, if any, will fairly compensate

North Star.  I will list for you th items of loss claimed by the plaintiff.  You may not

assume because I list an item of loss or explain how to measure a particular loss that

you are required to make an award for that loss.  For each item of loss you must decide

that it is more likely true than not true that:

1.      North Star had such a loss, and

2.      the loss was legally caused by the conduct of Nugget Construction.

I will now define "legal cause" for you.  A legal cause of harm is an act or failure to act

which is a substantial factor in bringing about the harm.  An act or failure to act is a

substantial factor in bringing about harm if it is more likely true than not true that:

1.      The act or failure to act was so important in bringing about the harm that a

        reasonable person would regard it as a cause and attach responsibility to it; and

2.      the harm would not have occurred but for the act or failure to act.

If both of these things are more likely true than not true, you must then decide how

much money will fairly compensate North Star for that item of loss.  If you do not

conclude that both of these things are more likely true than not true for a particular item

of loss, you may not make an award for that loss.

The item of loss claimed by North Star is the following:

Loss of profit from the termination of North Star's contract with Spencer Rock Products before all Spencer-supplied rock was loaded.

In measuring these damages, North Star is entitled to be placed as nearly as possible in the position it would have occupied had it not been for Nugget's intentional interference with North Star's contract with Spencer Rock Products.

<u>Authority:</u>

Alaska Civil Pattern Jury Instruction No. 20.01A (modified to include party names and case-specific items).

## STIPULATED INSTRUCTION NO. 42
## SPECULATIVE DAMAGES

You may not award damages that are speculative. When I refer to speculative

damages, I am referring to compensation for loss or harm that, although possible, is

conjectural or not reasonably certain. You must have a reasonable basis upon which to

assess damages with a fair degree of certainty.


<u>Authority:</u>

*K&K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702 (Alaska 2003); *City of Fairbanks v. Nesbett*, 432 P.2d 607 (Alaska 1967).

**STIPULATED INSTRUCTION NO. 43**
**DUTY TO MITIGATE DAMAGES**

Plaintiff North Star is not entitled to be paid for any loss or for part of any loss it could

have avoided with reasonable efforts and without undue risk, hardship or

embarrassment, even though the loss originally resulted from an act or omission for

which the defendant is legally responsible.  If you decide that it is more likely true than

not true that North Star could have avoided any loss or part of any loss with reasonable

efforts and without undue risk, hardship or embarrassment, you may not require the

defendant to pay the amount the plaintiff could have reasonably avoided.

Authority:

Alaska Civil Pattern Jury Instruction No. 20.18A (modified to remove optional language
referring to contributory negligence).

**STIPULATED  INSTRUCTION NO. 44**
**PUNITIVE DAMAGES**
**(Actions Accruing on or after June 11, 1986, and**
**before August 7, 1997)**

North Star has requested that you award it a separate amount of money in order to punish Nugget Construction and to deter Nugget and others from repeating similar acts of contract interference.  You may award North Star such an amount of money only if you decide that Nugget interfered with North Star's contract with Spencer Rock Products and that Nugget's conduct which forms the basis of your finding was outrageous.  Nugget's conduct was outrageous if it was the result of maliciousness or hostile feelings toward North Star, or was undertaken with reckless indifference to the interests, rights or safety of others.

North Star must prove the outrageousness of Nugget's conduct by clear and convincing evidence.  I will now define what it means to prove something by clear and convincing evidence.  An alleged fact is established by clear and convincing evidence if the evidence induces belief in your minds that the alleged fact is highly probable.  It is not necessary that the alleged fact be certainly true or true beyond a reasonable doubt or conclusively true.  However, it is not enough to show that the alleged fact is more likely true than not true.

The law provides no fixed measure as to the amount of such damages, but leaves it to you to decide an amount that will fairly accomplish the purposes of punishment and deterrence.  In assessing such damages you may consider the magnitude and flagrancy of Nugget's offense, the importance of the policy violated, the wealth of Nugget, and the amount of compensatory damages.

Authority:

*Lamb v. Anderson*, 126 P.3d 132 (Alaska 2005); Alaska Civil Pattern Jury Instruction No. 20.20 (modified to add party names, remove instruction on clear and convincing evidence, and add definition of reckless)

**STIPULATED INSTRUCTION NO. 45**
**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your

presiding juror. That person will preside over the deliberations and speak for you here in

court.

You will then discuss the case with your fellow jurors to reach agreement if you can do

so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have

considered all of the evidence, discussed it fully with the other jurors, and listened to the

views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.

Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each

of you can do so after having made your own conscientious decision. Do not change an

honest belief about the weight and effect of the evidence simply to reach a verdict.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 3.1.

## STIPULATED INSTRUCTION NO. 46
## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may

send a note through the [marshal] [bailiff], signed by your presiding juror or by one or

more members of the jury. No member of the jury should ever attempt to communicate

with me except by a signed writing; I will communicate with any member of the jury on

anything concerning the case only in writing, or here in open court. If you send out a

question, I will consult with the parties before answering it, which may take some time.

You may continue your deliberations while waiting for the answer to any question.

Remember that you are not to tell anyone—including me—how the jury stands,

numerically or otherwise, until after you have reached a unanimous verdict or have

been discharged. Do not disclose any vote count in any note to the court.


Authority:

Ninth Circuit Model Civil Jury Instruction No. 3.2.

## STIPULATED INSTRUCTION NO. 47
## RETURN OF VERDICT

A verdict form has been prepared for you. [Any explanation of the verdict form may be given at this time.] After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

<u>Authority:</u>

Ninth Circuit Model Civil Jury Instruction No. 3.3.

# DISPUTED SPECIAL VERDICT FORM OFFERED BY NUGGET

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
AT ANCHORAGE

| | |
|---|---|
| NORTH STAR TERMINAL & STEVEDORE COMPANY, et. al.<br><br>            Plaintiffs,<br><br>v.<br><br>NUGGET CONSTRUCTION, INC., et al.,<br><br>            Defendants. | Case No. A98-009 CIV (TMB) |

SPECIAL VERDICT

We, the jury in the above-entitled case, find the following special verdict submitted to us in the above-captioned case:

BREACH OF CONTRACT—SPENCER ROCK PRODUCTS

As to North Star's claims against Defendant Spencer Rock Products:

(1)    Did Spencer Rock Products breach its contract with North Star?

Answer "yes" or "no."  Answer: _____

If you answered this question "no" then proceed to the next section; if you answered this question "yes" then proceed to question #2 in this section.

(2)    Did Spencer Rock Products' breach of its contract with North Star damage North Star?

Answer "yes" or "no."  Answer: _____

If you answered this question "no" then proceed to the next section; if you answered this question "yes" then proceed to question #3 in this section.

(3)    What amount of damages did Spencer Rock Products' cause?

$_____

BREACH OF CONTRACT—ROBERT LAPORE

As to North Star's claims against defendant Robert LaPore:

(1)    Was defendant Robert LaPore legally responsible for Spencer Rock Products' debt to North Star?

Answer "yes" or "no."  Answer: _____

If your answer to question #1 was "no," then proceed to the next section. However, if your answer to question #1 was "yes," answer question #2.

(2)    For what amount of North Star damages is Robert LaPore responsible?

$_____


RESPONDEAT SUPERIOR—NUGGET CONSTRUCTION

(1)    Was defendant Nugget Construction legally responsible for Spencer Rock Products' debt to North Star?

Answer "yes" or "no."  Answer: _____

If your answer to question #1 was "no," then proceed to the next section. However, if your answer to question #1 was "yes," then fill in question #2 with the number you entered above for damages caused by Spencer Rock Products.

(2)    For what amount of North Star damages is Nugget Construction (and USF&G) responsible?

$_____

If you found that Nugget was legally responsible for Spencer Rock Products' debt to North Star, then you shall ignore the remaining questions, and the foreperson shall sign and date this verdict form.  Otherwise, please proceed with the remaining questions.


BREACH OF CONTRACT—NUGGET CONSTRUCTION

As to North Star's claims against Defendant Nugget Construction:

(1)    Did North Star and Nugget enter into an implied contract?

Answer "yes" or "no."  Answer: _____

If you answered "no" to the above question, go on to the next section.

However, if you answer "yes" to question No. 1, then answer question No. 2.

(2)    Did Nugget breach its implied contract with North Star?  Answer "yes" or "no."
Answer:  _____

If your answer to question #2 was "no," then proceed to the next section.  However, if your answer to question #2 was "yes," answer question #3.

(3)    For what amount of North Star damages is Nugget responsible?

       $_____

If you found that Nugget had an implied contract with North Star, then you shall ignore the remaining questions, and the foreperson shall sign and date this verdict form.  Otherwise, please proceed with the remaining questions.


INTENTIONAL INTERFERENCE—NUGGET CONSTRUCTION

(1)    Did Nugget Construction intentionally interfere, without justification, with Spencer Rock Products' contract with North Star?

       Answer "yes" or "no."  Answer:  _____

       If your answer to question #1 was "no," do not answer question #2.  Instead, the foreperson should sign and date this verdict form.  However, if your answer to Question No. 1 was "yes." answer Question No. 2.

(2)    Was the intentional interference of defendant Nugget Construction a legal cause of injury to North Star?

       Answer "yes" or "no."  Answer:  _____

       If your answer to questions #1 and #2 were both "yes," proceed to answer Question No. 3.  However, if the answer to either Question #1 or #2 was "no," you can forego the remainder of the questions and the foreperson should sign and date this verdict form.

(3)    What are the total damages, if any, to North Star that were legally caused by Nugget's intentional interference?

       $_____

PUNITIVE DAMAGES—NUGGET CONSTRUCTION

This section should only be filled out if you answered "yes" to question #1 and question #2 in the section above. If you answered either of those questions "no," then the foreperson should date and sign this verdict form.

(1)    Was Nugget's conduct in interfering with North Star's contract with Spencer Rock Products proven to be outrageous by clear and convincing evidence?

Answer "yes" or "no." Answer: _____

If your answer to question #1 is "yes," then you must answer question #2. If your answer to question #1 is "no," then the foreperson should date and sign this verdict form.

(2)    What amount will punish and deter Nugget from engaging in similar conduct in the future?

$_____

DATED at Anchorage, Alaska, this _____ day of _____, 2007.


_____
Foreperson of the Jury

# DISPUTED SPECIAL VERDICT FORM OFFERED BY NORTH STAR

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use of NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, and NORTH STAR TERMINAL & STEVEDORE COMPANY, d/b/a Northern Stevedoring & Handling, on its own behalf,<br><br>    Plaintiffs,<br> and<br><br>UNITED STATES OF AMERICA for the use of SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, and SHORESIDE PETROLEUM, INC., d/b/a Marathon Fuel Services, on its own behalf,<br><br>    Intervening Plaintiffs,<br> and<br><br>METCO, INC.,<br><br>    Intervening Plaintiff,<br> vs.<br><br>NUGGET CONSTRUCTION, INC.; SPENCER ROCK PRODUCTS, INC.; UNITED STATES FIDELITY AND GUARANTY COMPANY; and ROBERT A. LAPORE,<br><br>    Defendants. | Case No. A98-009 CIV (TMB)<br><br>**DISPUTED SPECIAL VERDICT FORM OFFERED BY NORTH STAR** |

**DISPUTED SPECIAL VERDICT FORM OFFERED BY NORTH STAR**

We, the jury in the above-entitled case, find the following special verdict submitted to us in the above-captioned case:

(1)     Did Spencer Rock Products breach its contract with North Star? Answer "yes" or "no."  Answer: _____

Now answer Question No. 2.

(2)     Did Nugget assume control over Spencer Rock Products and subject Nugget to respondeat superior liability?

Answer "yes" or "no."  Answer: _____

If you answer "no" to the above question, go on to Question No. 3.  However, if you answer "yes" to Question No. 3, then go on to Question No. 10.

(3)     Was Nugget an undisclosed principal of Spencer Rock Products? Answer "yes" or "no."  Answer: _____

If you answer "no" to the above question, go on to Question No.4.  However, if you answer "yes" to Question No. 3, then go on to Question No. 10.

(4)     Did Nugget as a creditor assume control over Spencer Rock Products?

Answer "yes" or "no."  Answer: _____

If you answered "no" to the above question, go on to Question No. 5.

However, if you answer "yes" to Question No. 4, answer Question No. 10.

(5)     Did North Star and Nugget enter into an implied contract? Answer "yes" or "no."  Answer: _____

If you answer "no" to the above question, go on to Question No. 7.  However, if you answer "yes" to Question No. 5, then go on to Question No. 10.

(6)     Did Nugget breach its implied contract with North Star? Answer "yes" or "no."  Answer: _____

If you answered "no" to the above question, go on to Question No. 7.

However, if you answer "yes" to Question No. 6, answer Question No. 10.

(7)     Is North Star entitled to recover from Nugget under quasi-contract, quantum meruit or unjust enrichment?

Answer "yes" or "no."  Answer: _____

If you answered "no" to the above question, go on to Question No. 8. However, if you answered "yes" to Question No. 7, then answer Question No. 10.

(8)     Is North Star entitled to recover from Nugget under a theory of equitable subordination?

Answer "yes" or "no."  Answer: _____

If you answered "no" to the above question, go on to Question No. 9.

However, if you answer "yes" to Question No. 8, then answer Question No. 10.

(9)     Is North Star entitled to recover from Nugget under a theory of constructive trust?

Answer "yes" or "no."  Answer: _____

Go on to Question No. 10.

(10)     Did Nugget intentionally interfere with the contract between North Star and Spencer Rock Products?

Answer "yes" or "no."  Answer: _____

If you answered the above question "no", go on to Question No. 12.

However, if you answer "yes" to Question No. 10, then answer Question No. 11.

(11)     Was North Star justified in its intentional interference with the contract between North Star and Spencer Rock Products?

Answer "yes" or "no."  Answer: _____

Go on to Question No. 12.

(12)     If you answered "yes" to Question Nos., 2, 3, 4, 6, 7, 8, or 9, , then answer Question No. 13.  If you answered "yes" to Question No. 10 and "no" to Question

No. 11, answer Question No. 14.  Otherwise, your foreperson should date and sign this verdict.

(13)    What are the damages suffered by North Star as a result of the acts or omissions of Nugget?

Damages for services rendered:          $_____

Damages for lost profits:               $_____


Answer the following question only if you answered "yes" to Question No. 10 *and* "no" to Question No. 11:

(14)    What are the damages suffered by North Star as a result of Nugget's tortuous interference with contract?

Damages for lost profits:               $ _____

(15)
Is North Star entitled to an award of punitive damages?  Answer "yes" or "no."  Answer: _____

Amount of damages:                      $_____


DATED at _____, Alaska, this _____ day of _____, 2007.

_____
Foreperson of the Jury

Dated:  July 30, 2007

OLES MORRISON RINKER & BAKER LLP
Attorneys for Defendants Nugget Construction
   Inc. and United States
   Fidelity and Guaranty Co

By: s/  Traeger Machetanz
   Traeger Machetanz
   machetanz@oles.com
   Alaska Bar No. 8411127
   Thomas R. Krider
   krider@oles.com
   Washington Bar No. 29490
   745 West 4th Ave., Suite 502
   Anchorage, AK 99501
   Phone: (907) 258-0106
   Fax:  (907) 258-5519

CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July, 2007, a true
and correct copy of the foregoing was served
electronically on:

David W. Pease
dwp@bpk.com
Burr, Pease & Kurtz
810 N Street
Anchorage, AK  99501

Steven J. Shamburek, Esq.
shamburek@gci.net
Law Office of Steven J. Shamburek
425 G Street, Suite 630
Anchorage, AK  99501-5872

Herbert A. Viergutz, Esq.
barmar@gci.net
Barokas Martin & Tomlinson
1029 West Third, Suite 280
Anchorage, AK 99501

**Served by mail on:**

Robert LaPore
P.O. Box 640030
Beverly Hills FL 34464

OLES MORRISON RINKER & BAKER LLP

By: s/Traeger Machetanz